**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| REENA S. MATHEW, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:23-cv-01494-N |
| | § | |
| SANTANDER CONSUMER USA INC., | § | |
| | § | |
| *Defendant.* | § | |

# DEFENDANT'S APPENDIX IN SUPPORT OF ITS
# EMERGENCY MOTION FOR CONTINUANCE

## <u>TABLE OF CONTENTS</u>

| Document | Page(s) |
|---|---|
| Plaintiff's Initial Discovery Protocol Responses (Sep. 11, 2023) | APP001–APP007 |
| Plaintiff's Amended Answers to Defendant's First Set of Interrogatories (Apr. 1, 2024) | APP008–APP017 |
| Plaintiff's Amended Response to Defendant's First Set of Requests for Production (Apr. 1, 2024) | APP018–APP027 |
| Excerpt from the Deposition of Reena Mathew (Aug. 8, 2024) | APP028–APP041 |
| E-mail message exchange between M. Hurst and D. Uloth (Aug. 9 and 12, 2024) | APP042-APP044 |

Respectfully submitted,

HALLETT & PERRIN, P.C.
1445 Ross Avenue, Suite 2400
Dallas, Texas 75202
214.953.0053
(f) 214.922.4142


By:    *Monte K. Hurst*
       Monte K. Hurst
       State Bar No. 00796802
       Monte.Hurst@hallettperrin.com

       Clayton S. Carter
       State Bar No. 24120750
       CCarter@hallettperrin.com

       *Counsel for Defendant*
       *Santander Consumer USA Inc.*


## CERTIFICATE OF SERVICE

I hereby certify that, on August 14, 2024, I served the foregoing document on Plaintiff's counsel, as follows, electronically or by another manner authorized by Rule 5(b)(2) of the Federal Rules of Civil Procedure:

Mr. Donald E. Uloth
DONALD E. ULOTH, P.C.
18208 Preston Road, Suite D-9 # 261
Dallas, Texas 75248
Don.Uloth@uloth.pro


*Monte K. Hurst*
Monte K. Hurst

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REENA S. MATHEW, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 3:23-cv-01494-N |
| | § | |
| SANTANDER CONSUMER USA INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S INITIAL DISCOVERY RESPONSES**

TO:    Defendant Santander Consumer USA Inc., through its attorney, Monte K. Hurst, Hallett
& Perrin, P.C., 1445 Ross Ave., Suite 2400, Dallas, TX 75202.

Pursuant to the Court's Initial Discovery Order for Employment Cases, Plaintiff provides

the following documents and information.

**Documents that Plaintiff must produce to Defendant**

a.    All communications concerning the factual allegations or claims at issue in this
lawsuit between the plaintiff and the defendant.

Plaintiff is producing all such documents contemporaneously with the service of this
document.

b.    Claims, lawsuits, administrative charges, and complaints by the plaintiff that rely
upon any of the same factual allegations or claims as those at issue in this lawsuit.

Plaintiff is producing all such documents contemporaneously with the service of this
document.

c.    Documents concerning the formation and termination, if any, of the employment
relationship at issue in this lawsuit, irrespective of the relevant time period.

Plaintiff is producing all such documents contemporaneously with the service of this
document.

d.      Documents concerning the terms and conditions of the employment relationship at issue in this lawsuit.

Plaintiff is producing all such documents contemporaneously with the service of this document.

e.      Diary, journal, and calendar entries maintained by the plaintiff concerning the factual allegations or claims at issue in this lawsuit.

Plaintiff has no documents responsive to this category.

f.      The plaintiff's current resume(s).

Plaintiff is producing all her current resume contemporaneously with the service of this document.

g.      Documents in the possession of the plaintiff concerning claims for unemployment benefits, unless production is prohibited by applicable law.

Plaintiff is producing all such documents contemporaneously with the service of this document.

h.      Documents concerning: (i) communications with potential employers; (ii) job search efforts; and (iii) offer(s) of employment, job description(s), and income and benefits of subsequent employment.

Plaintiff is producing all such documents contemporaneously with the service of this document.

i.      Documents concerning the termination of any subsequent employment.

Plaintiff has no documents responsive to this category.

j.      Any other document(s) upon which the plaintiff relies to support the plaintiff's claims.

Plaintiff has no such documents to produce at this time.  Plaintiff is likely to obtain records from one or of the health care providers listed below as persons having knowledge of relevant facts.

**Information that Plaintiff must produce to Defendant**

a.     Identify persons the plaintiff believes to have knowledge of the facts concerning the claims or defenses at issue in this lawsuit, and a brief description of that knowledge.

Reena Mathew
1355 Valley Vista Dr.
Irving, TX 75063
Phone number: 214-417-0821

Mathew is the Plaintiff, and she has knowledge of her performance, the work-related events relevant to this claim, and her economic and non-economic damages.

Phillip Mathew
1355 Valley Vista Dr.
Irving, TX 75063
Phone number: 214-417-0818

Phillip is Plaintiff's husband, and he has knowledge of how Plaintiff's experiences at work affected Plaintiff.

Yessica Adriano
Address unknown
Phone number unknown

Adriano worked with Plaintiff in HR and should be familiar with Plaintiff's performance and the adverse actions taken against Plaintiff, including her termination.

Pamela Blackburn
Address unknown
Phone number unknown

Blackburn should have knowledge of being contacted by Plaintiff in December 2015 about being put on a performance improvement plan, and knowledge of putting Plaintiff in touch with Stephen Shafer to discuss the issues.

Sabrina Boyd
Address unknown
Phone number unknown

Boyd worked in HR with Plaintiff and should be familiar with Plaintiff's performance.

Stephanie Elad
Address unknown
Phone number unknown

Elad worked in HR with Plaintiff and should be familiar with Plaintiff's performance.

Angelina Hullum
Address unknown
Phone number unknown

Hullum worked in HR with Plaintiff and should be familiar with Plaintiff's performance.

Mitzie Jefferson
Address unknown
Last known phone number: 817-832-8561

Plaintiff worked with Jefferson on HR matters, and he should have knowledge of her performance in connection with these matters.

Christopher Mays
Address unknown
Phone number unknown

Mays should have knowledge of his emails with Plaintiff and the need for documentation before placing an employee on a performance improvement plan.

Tina Mohan
Address unknown
Phone number: 469-571-8912

Mohan was a coworker and friend of Plaintiff's who should have knowledge of how Plaintiff's experiences at work affected Plaintiff.

Demetrice Patton
Adress unknown
Phone number: 972-946-4112

Patton was a coworker and friend of Plaintiff's who should have knowledge of how Plaintiff's experiences at work affected Plaintiff.

Tensya Perez
Address unknown
Phone number: 469-826-0079

Perez worked in HR with Plaintiff and should be familiar with Plaintiff's performance.

Stephen Shaffer
Address unknown
Phone number unknown

Plaintiff communicated with Shaffer to oppose being placed on two performance improvement plans, so he should be familiar with these communications and with the adverse actions taken against Plaintiff, including her termination.

Jason Tomancak
Adress unknown
Last known phone number: 512-619-5164

Tomancak worked in HR with Plaintiff and should be familiar with Plaintiff's performance.

Greg Vinson
Address unknown
Last known phone number: 817-709-6923

Plaintiff worked with Vinson on HR matters, and he should have knowledge of her performance in connection with these matters.

Dr. Radha Kambhampati
Baylor Scott and White Medical Center,
1901 N. MacArthur Blvd.
Irving, TX 750612220
Phone number: 254-724-2585

Dr. Kambhampati provided health care for Plaintiff's depression

Las Colinas Medical Center (now known as Medical City)
6800 N MacArthur Blvd.
Irving, TX 75039
Phone number: 972-969-2000

This is where Plaintiff had her baby in 2016.

Kroger Pharmacy
7505 N MacArthur Blvd
Irving TX 75063
Phone number: 972-373-8158

This is Plaintiff's pharmacy and should have records indicating expenses Plaintiff paid out of pocket for things that would have been covered by her insurance if she had not been terminated.

b.      Describe the categories of damages the plaintiff claims.

Plaintiff seeks all categories of damages available based on the claims she has asserted, including back pay, lost benefits of employment, compensatory and punitive damages, interest, costs of court, and a post-trial award of attorney fees if Plaintiff is the prevailing party in this case.

c.      State whether the plaintiff has applied for disability benefits and/or social security disability benefits after the adverse action, whether any application has been granted, and the nature of the award, if any. Identify any document concerning any such application.

Plaintiff has not applied for disability benefits and/or social security disability benefits.

/s/ Donald E. Uloth
Donald E. Uloth
Texas Bar No. 20374200
Donald E. Uloth, P.C.
18208 Preston Road, Suite D-9 # 261
Dallas, Texas 75252
Phone: (214) 725-0260
Fax: (866) 462-6179
Email: don.uloth@uloth.pro
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on September 11, 2023, I served the foregoing document to Monte Hurst, counsel for Defendant, by email to Monte.Hurst@hallettperrin.com.

/s/ Donald E. Uloth

Donald E. Uloth

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REENA S. MATHEW, | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 3:23-cv-01494-N |
| | § | |
| SANTANDER CONSUMER USA INC., | § | |
| Defendant | § | |

**PLAINTIFF'S AMENDED ANSWERS TO**
**DEFENDANT'S FIRST SET OF INTERROGATORIES**

TO:   Defendant Santander Consumer USA Inc., through its attorney, Monte K. Hurst, Hallett & Perrin, P.C., 1445 Ross Ave., Suite 2400, Dallas, TX 75202.

Pursuant to the Federal Rules of Civil Procedure, Plaintiff Reena S. Mathew answers

Defendant's First Set of Interrogatories as follows.

**INTERROGATORY NO. 1:**
Please state the following for each person or company by whom you have been employed over the last 10 years:

(a)    Dates of employment;
(b)    Name, address and telephone number of employer;
(c)    Position(s) held;
(d)    Rate(s) of pay;
(e)    Supervisor(s); and
(f)    Reason(s) you separated from that employment.

**ANSWER:**

(a)    Dates of employment:  2/1/11 – 4/19/16
(b)    Name, address and telephone number of employer: Santander Consumer USA Inc., Lewisville, TX
(c)    Position(s) held: Senior HR Generalist, HR Business Partner
(d)    Rate(s) of pay: Started at $56,000 annual salary.  Annual salary at the time of termination was approximately $74,000.00.
(e)    Supervisors: Dana Cooper, Jason Tomancak, Angelina Hullum, Yessica Adriano.
(f)    Reason(s) you separated from that employment.  Wrongful termination.

APP008

**INTERROGATORY NO. 2:**

Please state the following for each instance or stint you provided services for renumeration over the last 10 years (including, but not limited to, as a sole proprietor or independent contractor):

      (a)     Date(s) you provided the services;
      (b)     Name, address and telephone number of person/company you provided services on behalf of;
      (c)     Position(s) held;
      (d)     Description of services you provided;
      (e)     Rate(s) of pay;
      (f)     Amount of money you were paid;
      (g)     Supervisor(s);
      (h)     Reason(s) you ceased performing services.

      **ANSWER:** None other than Santander.


**INTERROGATORY NO. 3:**

Please provide the following for each source of money or financial support you have received since January 1, 2016:

      (a)     Date(s) you received the money/financial support;
      (b)     Amount of money/financial support;
      (c)     Person or entity that paid the money; and
      (d)     Reason the money was paid to you.

      **ANSWER:**    Other than small cash gifts from relatives and ongoing spousal support such as access to joint accounts, none.


**INTERROGATORY NO. 4:**

Please state your gross and net income for every year from 2015 to present and identify the source(s) of same.

      **ANSWER:** Plaintiff's only income for this period was from Santander.


**INTERROGATORY NO. 5:**

Please state the name, address and telephone number of all doctors, psychologists, psychiatrists, counselors, therapists, and any and all medical care professionals that you have seen within the last 10 years.

      **ANSWER:** Plaintiff saw a psychiatrist, Dr. Radha Kambhampati, for depression she began to experience while still employed by Santander and she will provide the information requested for this provider only.  His address and telephone number are 1901 N. MacArthur Blvd, Irving, TX 75061, (972) 579-8100.

2

Beyond that, Plaintiff objects to this interrogatory because it is overly broad, it seeks information that is not relevant and not proportional to this case, and it seeks information that is protected by the doctor-patient privilege.


**INTERROGATORY NO. 6:**

Please describe in detail each communication that you have had with anyone other than your attorney relating to the subject matter of this Lawsuit (e.g., in person; over the telephone; by e-mail/text/instant messages; by another form of electronic communication; etc.). Your answer shall include, but not be limited to, the following with regard to each such communication:

    (a)     Date;
    (b)     Persons involved;
    (c)     Method of communication; and
    (d)     Description of conversation.

    **ANSWER:**    On or about December 3, 2015, I went to Greg Vinson's office.  He and Mitzie Jefferson were in his office.  I told them Yessica Adriano placed me on a PIP.  I said I did not have any prior issues, and the PIP came out of nowhere.  Vinson said he was not shocked, as the company had prior questionable practices.  He told me to keep my head up and continue to do my job and not give them any reason to have any issues with my performance.  Both Vinson and Jefferson told me to not stress too much since I was pregnant and the health of the baby came first.

    On or about December 23, 2015 I spoke to Greg Vinson and Mitzie Jefferson in person.  I said I had not heard anything negative back from Yessica. It seemed to be ok since Yessica hadn't followed up with me regarding any issues during that timeframe. I told them it looked like things were going good and I should probably be off of the PIP.

    On or about December 3, 2015 I met with Tensya Perez and told her Yessica placed me on a PIP.  Perez said she was surprised because she knew my work ethic and that I didn't deserve to be on something so harsh. She said she was surprised Yessica would do that to me especially since I was pregnant. She also told me to take care of myself and do my best, and said she had faith that I would complete the PIP with no issue.

    On or about December 4, 2015 I spoke to Demetrice Patton in person.  I told her I had been placed on a PIP.  She encouraged me to stand tall and to do my best while on the PIP.  She said giving a PIP with no documentation was not a practice or policy that was ok, that Santander HR always emphasized documentation for any type of write up, especially a PIP. She said she would keep me in her prayers and said she was there for me.

    On or about January 19, 2016 I spoke to Greg Vinson in his office.  I said they gave me a second PIP after I had completed the first one with no issue. He said he was shocked and upset for me because everyone knows (especially those in HR/Management) that any type of write up had to include documentation. I informed him they came up with a bogus timeline.  Vinson said he was not shocked at all how the company had a double standard in enforcing their policies and we had seen all the time that some employees were treated harsher/unfairly than others based on who you knew. I told him I would continue to work to the best of my ability but that I felt harassed with every little thing I did.

**INTERROGATORY NO. 7:**

Please describe in detail all efforts you made after your separation from Santander, to obtain gainful employment or attain any other type of arrangement through which you could earn money.  Your answer shall include, but not be limited to, the following with regard to each such effort:

- (a)     Person/company at which you sought employment or other arrangement;
- (b)     Date(s) you sought to obtain employment or other arrangement;
- (c)     Person(s) with whom you communicated in your effort;
- (d)     Descriptions of communications pertaining to your effort;
- (e)     Responses pertaining to any efforts;
- (f)     Descriptions of all documents pertaining to your effort; and
- (g)     Date ranges between the time of your separation from Santander up to today when you would not have been able to work (e.g., medical reasons).

      **ANSWER:**     Plaintiff is not seeking back pay, so this information is not relevant.


**INTERROGATORY NO. 8:**

Please identify each job search engine/website at which you have, since your separation from Santander (a) created an account, (b) searched for employment/work, or (c) posted a résumé or otherwise submitted information about yourself.

      **ANSWER:** LinkedIn.


**INTERROGATORY NO. 9:**

Please state with particularity each fact that you would contend supports your allegation that "Santander company policies required supervisors to document performance deficiencies and criticisms," as alleged in Plaintiff's Original Complaint. Your answer shall include, but not be limited to, identification of the subject company policy(ies).

      **ANSWER:** Section 5.1 of Santander's Associate Handbook refers to the company's Progressive Discipline Policy.  This policy requires Santander to keep a record of any coaching, whether formal or informal.  It also requires Santander to keep a record of verbal warnings in each associate's personnel file.  Other documents include comments made by Santander employees about the need for documentation before placing an employee on a Performance Improvement Plan.  *See* SC 000663; Mathew 034.


**INTERROGATORY NO. 10:**

Please describe in detail the communication you allege in Plaintiff's Original Complaint to have had with Yessica Adriano in which you told her you were pregnant. Your answer shall include, but not be limited to, the following:

- (a)     Date;
- (b)     Location;
- (c)     Persons present;
- (d)     Description of conversation; and

4

(e)     Identity of any written communication/documentation pertaining to the conversation.

**ANSWER:**

(a)     Date:  October 30, 2015
(b)     Location:  Yessica Adriano's office
(c)     Persons present:  Reena Mathew and Yessica Adriano
(d)     Description of conversation:  Mathew told Adriano that she was pregnant.  Adriano said she was happy for Mathew.  Adriano asked when the baby was due, and asked Mathew what her plans were for after the baby was born.  Mathew answered that she did not know.
(e)     Identity of any written communication/documentation pertaining to the conversation: Mathew is not aware of anything in writing about this conversation.


**INTERROGATORY NO. 11:**
Please state with particularity each fact that you would contend supports your allegation in Plaintiff's Original Complaint that your workload increased after Yessica Adriano became your supervisor in September 2015.

      **ANSWER:**     Plaintiff objects to this interrogatory because it mischaracterizes the Complaint.  The Complaint does not allege that Plaintiff's workload increased after Adriano became her supervisor in September 2015. Rather, the Complaint alleges that Plaintiff's workload increased starting in July 2015, when she was assigned to provide HR support at a second office location. The opening clause in paragraph 13, "Despite the increased workload" refers back to the workload increase in July 2015.  Defendant is therefore asking Plaintiff to state the facts supporting an allegation she did not make.


**INTERROGATORY NO. 12:**
Please state with particularity each fact that you would contend supports your allegation that Santander discriminated against you because of your sex/pregnancy. Your answer shall include, but be not limited to, the date, time and exact location of any such occurrence, the identity of the individual(s) engaged in the conduct, the identity of each other individual present during such an occurrence, and the substance of any conversations before, during or after any such occurrence.

      **ANSWER:** Plaintiff objects to the part of this request asking for "the substance of any conversations before, during or after any such occurrence."  This expands the scope of the answer requested beyond a description of the facts supporting Plaintiff's contention and thus seeks irrelevant information.  Plaintiff will provide the information necessary to identify the facts supporting her contention.

      Reena Mathew was an experienced HR professional.  She did her job well, and she consistently received favorable performance reviews.  Before December 1, 2015, there were no documented criticisms of Mathew's performance, attendance, or other work-related issues.

APP012

On October 30, 2015, Mathew told Yessica Adriano she was pregnant. In this same conversation, Adriano asked Mathew what her plans were for after the baby was born. Mathew replied that she would not know until closer to the due date.

Adriano then began assembling information to try and justify disciplinary action against Mathew. Adriano contacted Mathew's previous supervisor, Angelina Hullum, and obtained a list of things that were all so minor, Hullum had not even mentioned most of them to Mathew at the time, and none of them resulted in a coaching or verbal warning. Mathew's performance had not suddenly changed when she became pregnant, the only thing that had changed was the fact Adriano now knew Mathew was pregnant. If Adriano legitimately believed Mathew was having performance and attendance problems, then logically Adriano would have said something to Mathew. Instead, Adriano covertly began documenting minor issues and non-issues without raising them with Mathew as they arose.

For example, on one or more occasions Mathew asked to modify her work hours to attend a doctor's appointment or to leave early, and Adriano approved without any comment or criticism concerning the amount of prior notice given. Later, Adriano used Mathew's request as a basis for placing Mathews on a performance improvement plan, falsely claiming that Mathew failed to give adequate prior notice and that she "continually asks to leave early and struggles to adhere to her work schedule."

On December 1, 2015, Adriano placed Mathew on a performance improvement plan (PIP). At the time, there was no documentation in Mathew's file of any prior coachings or verbal warnings. The PIP cited no specifics to justify the disciplinary action, just vague generalizations followed by a parenthetical stating: "See Addendum for specifics." However, there was no Addendum attached to the PIP.

It appears that Santander rescinded the PIP because Adriano's superiors recognized it was unjustified, but Adriano was undeterred. She took the list of the trivial matters reported by Hullum, added her own input regarding Mathew's alleged deficiencies (*i.e.* the things she had been noting for her files rather than addressing with Mathew so she could improve) and created an Addendum – Timeline of Events. Adriano prepared a second PIP, and this time she attached the Addendum. On January 15, 2016, Adriano placed Mathew on a second PIP that was primarily based on things that Santander had already deemed to be insufficient to justify the first PIP. The Addendum included 32 points, and only three of these were things that happened after December 1, 2015 (the day the first PIP was issued). Like the first PIP, this second PIP was unjustified and motivated by Adriano's dissatisfaction with Mathew's pregnancy.

Mathew resolved to meet the expectation in the PIP and the 90 Day Action Plan that was presented along with it, and she met the only objective criteria stated in the PIP (give 48 hours' notice when requesting time off, and to submit a weekly time study). Santander faulted Mathew for failing to meet expectations that it had not set or communicated. For example, Adriano commented on the number of disciplinary actions she entered into WorkDay indicating it was too low, without having said how many would be enough. If she had communicated an expectation, Mathew would have met it just as she met the expectation to give 48 hours' for future schedule changes. Santander did not use the PIP as a tool to improve performance. Santander used the PIP as a pretext for discrimination and retaliation, ultimately terminating her for failing to meet expectations that were never spelled out.

APP013

**INTERROGATORY NO. 13:**

Please state with particularity each fact that you would contend supports your allegation that Santander retaliated against you for engaging in protected activity. Your answer shall include, but is not limited to, the date, time and exact location of any such occurrence, the identity of the individual(s) engaged in the conduct, the identity of each other individual present during such an occurrence, and the substance of any conversations before, during or after any such occurrence.

**ANSWER:** Plaintiff objects to the part of this request asking for "the substance of any conversations before, during or after any such occurrence." This expands the scope of the answer requested beyond a description of the facts supporting Plaintiff's contention and thus seeks irrelevant information. Plaintiff will provide the information necessary to identify the facts supporting her contention.

After being put on a PIP, Mathew engaged in protected activity by complaining that the PIP was because of her pregnancy. This was on more than one occasion, starting in December 2015. Her complaints were reiterated in a January 29, 2016 letter from Mathew's attorney to Santander.

The facts indicating a retaliatory motive overlap with those indicating pregnancy discrimination, described above. In addition, rather than conducting an objective investigation, Santander began posturing to defend against future litigation. In an email dated December 31, 2015, Stephanie Elad talked about a strategy that would "stack up in our favor in Arbitration or open hearing." *See* SC000014. After getting the January 29, 2016 letter from Mathew's attorney, Santander referred the matter to its outside trial attorneys for handling rather than conducting an objective investigation.

Santander also retaliated by holding Mathew to a higher standard and excessively criticizing her. For example, Adriano and Shaffer deemed meeting recaps deficient even though they had not previously said they wanted an extremely detailed recap as opposed to a concise summary. *See* SC000279 and SC001005. Mathew's supervisors criticized for failing to use available resources to get things done, while simultaneously criticizing her for using those resources (such as using Sabrina Boyd to enter disciplinary actions into WorkDay).

Compared to the way she had been treated before her pregnancy and complaints of pregnancy discrimination, and compared to the way she saw other HRBPs being treated, Santander's treatment of Mathew changed. Mathew worked at the same location as Adriano and Stephanie Elad, and their demeanors changed. Before the first PIP both were pleasant, supportive, and helpful. After, both were standoffish and avoided interaction, and instead of offering help they criticized Mathew for asking or needing help.

**INTERROGATORY NO. 14:**

Please identify each internet-based social networking site that you have used during the past 10 years (e.g., Facebook; YouTube; Instagram; Tik Tok; Snapchat; X/Twitter; Pinterest; LinkedIn; Tinder; Hinge; Bumble; eharmony; etc.). For each such site identified, please provide the name and address of the account holder, your user name or avatar, the URL where the account was/is available, and the dates during which you used the account.

7

**ANSWER:** Mathew has a Facebook account, the URL is
https://www.facebook.com/reena.mathew.77?mibextid=LQQJ4d
June 2007 to the present.

Mathew also has a LinkedIn account, and the URL is
https://www.linkedin.com/in/reena-mathew-phr-8994993/

## INTERROGATORY NO. 15:

Please describe in detail and itemize all damages you are seeking to recover in this Lawsuit.

**ANSWER:** Plaintiff is seeking all damages and remedies available for her Title VII claims except for backpay. The damages recoverable are listed in 42 U.S.C. § 2000e-5(g)(injunction, reinstatement), 42 U.S.C. § 2000e-5(k) (attorney fees), and 42 U.S.C. § 1981a (compensatory and punitive damages).

For compensatory and punitive damages, precise dollar amounts cannot be calculated. Plaintiff therefore intends to present her evidence to a jury and let the jury decide the amounts to be awarded.

## INTERROGATORY NO. 16:

Please describe by category and location all documents, data compilations, and tangible things in your possession, custody, or control that are relevant to disputed facts alleged with particularity in the pleadings.

**ANSWER:** Plaintiff objects to this interrogatory as an improper request under the Federal Rules. The request is overly broad because, rather than asking for specific relevant and nonprivileged information, Defendant seeks to flip the burden to Plaintiff to identify the relevant categories of information.

## INTERROGATORY NO. 17:

Please list all steps which have been taken to identify and preserve any electronically-stored information relating to your allegations in this Lawsuit (e.g., documents stored on any type of computer, e-mail messages; text messages; instant messages; magnetic storage; solid state device; remote/cloud storage—including all social media and other information stored on the internet or accessible from websites, etc.).

**ANSWER:** Plaintiff objects to this as an improper interrogatory that does not seek to discover relevant and nonprivileged information.

## INTERROGATORY NO. 18:

Please state the date on which you first hired an attorney to represent you in this matter, and identify each attorney who has represented you in this matter.

**ANSWER:**     December 8, 2015. Spielberger Law Group, and Donald E. Uloth.

APP015

/s/ Donald E. Uloth
Donald E. Uloth
Texas Bar No. 20374200
Donald E. Uloth, P.C.
18208 Preston Road, Suite D-9 # 261
Dallas, Texas 75248
Phone: (214) 725-0260
Fax: (866) 462-6179
don.uloth@uloth.pro
Counsel for Plaintiff

CERTIFICATE OF SERVICE

I certify that on April 1, 2024, I served the foregoing document to Monte K. Hurst by email to Monte.Hurst@hallettperrin.com.

/s/ Donald E. Uloth
Donald E. Uloth

9

## VERIFICATION

1.      My name is Reena S. Mathew.  I am over twenty-one (21) years of age, and I am competent to make this sworn Verification.  I have personal knowledge of the facts set forth herein, and they are all true and correct.

2.      I declare under penalty of perjury that the foregoing interrogatory answers are all true and correct.

Executed on March 21, 2024.

_____
Reena S. Mathew

10

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF TEXAS
DALLAS DIVISION

REENA S. MATHEW,    §
    Plaintiff    §
        §
v.    §    Civil Action No. 3:23-cv-01494-N
        §
SANTANDER CONSUMER USA INC.,    §
    Defendant    §

**PLAINTIFF'S AMENDED RESPONSE TO DEFENDANT'S
FIRST SET OF REQUESTS FOR PRODUCTION**

TO:    Defendant Santander Consumer USA Inc., through its attorney, Monte K. Hurst, Hallett
    & Perrin, P.C., 1445 Ross Ave., Suite 2400, Dallas, TX 75202.

    Pursuant to the Federal Rules of Civil Procedure, Plaintiff Reena S. Mathew provides the

following responses to Defendant's First Set of Requests for Production.

**REQUEST NO. 1:**
Please produce all reports, data, calculations, handwritten notes or other tangible evidence and
documents reviewed, relied upon, prepared by and/or at the direction of or for the use of any
expert that you intend to call at trial, whether by live testimony or by deposition.  If a report has
not been prepared, then a request is hereby made that a report be prepared and produced.

    **RESPONSE:**  Plaintiff has no documents responsive to this request to produce.

**REQUEST NO. 2:**
Please produce all documents, investigation reports, notes, simulations, recreations, calculations
or analysis, concerning any incident relevant to this Lawsuit made or prepared by any person or
entity who has done any investigations relating to the occurrences in question, including, but not
limited to, any governmental or private entities. This request is not seeking production of
documents prepared in anticipation of litigation and whose work product has *not* been reviewed
in whole or in part, by any testifying expert.

    **RESPONSE:**  Plaintiff has previously produced the documents she obtained from the
EEOC in response to her FOIA request, and she has no other documents responsive to this
request to produce.

**REQUEST NO. 3:**
Please produce all documents prepared by or at the direction of any person who may testify in this Lawsuit as an expert witness, including, but not limited to, records, notes, memoranda, charts, reports, studies or exhibits.

 **RESPONSE:**  Plaintiff has no documents responsive to this request to produce.

**REQUEST NO. 4:**
Please produce all documents reviewed by or relied upon by an expert witness who you have hired, consulted, or contacted to testify as an expert witness.

 **RESPONSE:**  Plaintiff has no documents responsive to this request to produce.

**REQUEST NO. 5:**
Please produce all documents relating to, referring to, or regarding documents reviewed or relied upon by an expert witness who has been hired, consulted, or contacted by you to testify as an expert witness.

 **RESPONSE:**  Plaintiff has no documents responsive to this request to produce.

**REQUEST NO. 6:**
Please produce any photographs or pictures which relate in any way to the subject matter of this Lawsuit.

 **RESPONSE:**  Plaintiff has no documents responsive to this request to produce.

**REQUEST NO. 7:**
Please produce any video which relates in any way to the subject matter of this Lawsuit.

 **RESPONSE:**  Plaintiff has no documents responsive to this request to produce.

**REQUEST NO. 8:**
Please produce any audio recordings which relate in any way to the subject matter of this Lawsuit.

 **RESPONSE:**  Plaintiff has previously produced audio recordings she obtained from the EEOC in response to her FOIA request, and she has no other documents responsive to this request to produce.

**REQUEST NO. 9:**
Please produce any newspaper or magazine articles, television video or any other media coverage that relate in any way to the subject matter of this Lawsuit.

 **RESPONSE:**  Plaintiff has no documents responsive to this request to produce.

**REQUEST NO. 10:**

Please produce any correspondence, memoranda and/or other transcribed documentation between Santander and any other party, entity or individual, including but not limited to you, regarding this Lawsuit.

**RESPONSE:** This request appears to seek day-to-day communications about the Lawsuit, as opposed to other requests which ask about the subject matter of the Lawsuit. The request therefore appears to be asking for things like communications with court reporters about depositions, rather than seeking information about the underlying facts of the case. Because communications about Civil Action Number 3:23-cv-01494 are not relevant or discoverable, Plaintiff objects to the relevance of the request.

**REQUEST NO. 11:**

Please produce all documents relating to, referencing or regarding other lawsuits to which you have been a party.

**RESPONSE:** Plaintiff has no documents responsive to this request to produce.

**REQUEST NO. 12:**

Please produce any non-privileged statements made by you or any of your agents, attorneys, representatives and/or employees as it may pertain to this Lawsuit.

**RESPONSE:** Plaintiff has no documents responsive to this request to produce.

**REQUEST NO. 13:**

Please produce all documents in your possession, custody, or control relating to, referencing or regarding communications between you and/or your agent and Santander or any agent, representative, personnel or employee of Santander.

**RESPONSE:** Plaintiff objects to this request because it is overly broad and is not limited to matters relevant to this case.

**REQUEST NO. 14:**

Please produce any statements made by Santander or any agent, attorney, representative or employee of Santander, including but not limited to you, as such statement may pertain to this Lawsuit.

**RESPONSE:** Plaintiff has no documents responsive to this request to produce.

**REQUEST NO. 15:**

Please produce all documents indicating, reflecting, memorializing, or constituting any settlement agreement of any kind (whether oral, written or otherwise) made by you, on behalf of you or any other person regarding any of the claims or causes of action concerning the events at issue in this Lawsuit.

**RESPONSE:**  Plaintiff has no documents responsive to this request to produce.

**REQUEST NO. 16:**
Please produce all photographs, charts or exhibits that you intend to use at trial of this matter.

**RESPONSE:**  Plaintiff objects to this request because it conflicts with the timing for the exchange of such materials stated in the Court's Scheduling Order.  Plaintiff will comply with the Scheduling Order and will provide Defendant with any materials to be shown to the jury on or before September 7, 2024.

**REQUEST NO. 17:**
Please provide a copy of any indemnity agreement between any party to this case and non-party that is relevant to the events made the basis of this suit.

**RESPONSE:**  Plaintiff has no documents responsive to this request to produce.

**REQUEST NO. 18:**
Please provide copies of all criminal convictions that you intend to use at trial to impeach any witness.

**RESPONSE:**  Plaintiff has no documents responsive to this request to produce.

**REQUEST NO. 19:**
Please produce all documents obtained by you by subpoena or by deposition upon written questions in this Lawsuit.

**RESPONSE:**  Plaintiff has no documents responsive to this request to produce.

**REQUEST NO. 20:**
Please produce all documents exchanged between you and the U.S. Equal Employment Opportunity Commission.

**RESPONSE:**  Plaintiff has previously produced the documents she obtained from the EEOC in response to her FOIA request, and she has no other documents responsive to this request to produce.

**REQUEST NO. 21:**
Please produce all documents exchanged between you and the Texas Workforce Commission.

**RESPONSE:**  Plaintiff has previously produced the documents she obtained from the Texas Workforce Commission in response to her Public Information Act request, and she has no other documents responsive to this request to produce.

**REQUEST NO. 22:**
Please produce all documents exchanged between you and the Texas Workforce Commission Civil Rights Division.

**RESPONSE:** Plaintiff has previously produced the documents she obtained from the Texas Workforce Commission in response to her Public Information Act request, and she has no other documents responsive to this request to produce.

**REQUEST NO. 23:**
Please produce your retainer agreement with your lawyer.

**RESPONSE:** Plaintiff objects to this request because it seeks information that is not relevant to the issues to be tried in this case; attorney fee issues are handled post-trial. Plaintiff further objects that the terms of the fee agreement are not relevant to the factors to be considered by the Court when awarding attorney fees, except for the fact that Plaintiff's attorney is handling the case on a contingent fee basis. Plaintiff's attorney will receive forty percent (40%) of all money and other things of value recovered, and money saved or value obtained through offset or forgiveness of any obligation in connection with the representation.

**REQUEST NO. 24:**
Please produce all documents, income statements, expenses, statements, bills and/or invoices which reflect in any way damages you are seeking to recover in this Lawsuit.

**RESPONSE:** Plaintiff objects to this request because it seeks information that is not relevant to the issues to be tried in this case; attorney fee issues are handled post-trial.

**REQUEST NO. 25:**
Please produce all documents identified in your answers to Santander's First Set of Interrogatories.

**RESPONSE:** The only documents identified in the interrogatory answers are documents that have been Bates numbered and produced in this case, so there is nothing additional to produce in response to this request for production.

**REQUEST NO. 26:**
Please produce all documents and communications regarding your efforts to obtain gainful employment or attain any other type of arrangement through which you could earn money, from your last day of work at Santander to the present, including, but not limited to, employment applications, résumés submitted, cover letters, offer letters, and rejection letters.

**RESPONSE:** Plaintiff is not seeking back pay, so this information is not relevant.

**REQUEST NO. 27:**
Please produce all documents evidencing your employment from your last day of work at Santander to the present, including, but not limited to, paystubs, company correspondence and memoranda, company handbook and policy manuals, and company benefits.

**RESPONSE:** Plaintiff has no documents responsive to this request to produce.

**REQUEST NO. 28:**

Please produce all documents evidencing any instance or stint in which you provided services for renumeration from your last day of work at Santander to the present, including, but not limited to, paystubs, company correspondence and memoranda, company handbook and policy manuals, and company benefits.

**RESPONSE:** Plaintiff has no documents responsive to this request to produce.

**REQUEST NO. 29:**

Please produce all documents that you would contend supports your allegation that "Santander company policies required supervisors to document performance deficiencies and criticisms," as alleged in Plaintiff's Original Complaint.

**RESPONSE:** Plaintiff has produced all documents she has that are responsive to this request. *See* Mathew 34 and 45-46.

**REQUEST NO. 30:**

Please produce all documents that you would contend supports your allegation in Plaintiff's Original Complaint that you communicated to Yessica Adriano that you were pregnant.

**RESPONSE:** This was an oral communication, and Plaintiff therefore has no documents responsive to this request to produce.

**REQUEST NO. 31:**

Please produce all documents that you would contend supports your allegation in Plaintiff's Original Complaint that your workload increased after Yessica Adriano became your supervisor in September 2015.

**RESPONSE:** The Complaint does not allege that Plaintiff's workload increased after Adriano became her supervisor in September 2015. Rather, the Complaint alleges that Plaintiff's workload increased starting in July 2015, when she was assigned to provide HR support at a second office location. The opening clause in paragraph 13, "Despite the increased workload" refers back to the workload increase in July 2015. Because Plaintiff did not make the contention Defendant describes in this request, Plaintiff has no documents responsive to this request to produce.

**REQUEST NO. 32:**

Please produce all documents that you would contend supports your allegation that Santander discriminated against you because of your sex/pregnancy.

**RESPONSE:** Plaintiff will produce these documents.

**REQUEST NO. 33:**

Please produce all documents that you would contend supports your allegation that Santander retaliated against you for engaging in a protected activity.

**RESPONSE:** Plaintiff will produce these documents.

**REQUEST NO. 34:**
Please produce all documents supporting your claim for the following damages: suffering, mental anguish, inconvenience, loss of personal status and dignity, and loss of enjoyment of life, as alleged in the Complaint.

    **RESPONSE:**  Plaintiff will produce these documents.

**REQUEST NO. 35:**
Please produce all documents supporting your claim for the following damages: all economic losses, lost past and future income and benefits of employment, as alleged in the Complaint.

    **RESPONSE:**  Plaintiff will produce these documents.

**REQUEST NO. 36:**
Please provide a true and correct copy of all e-mail messages between you and a current or former Santander employee between January 2015 and the present.

    **RESPONSE:**  Plaintiff has previously produced all such documents.  Plaintiff is producing Mathew 333 – 359 along with this response.  These are Facebook Messenger messages with current or former Santander employees.  Plaintiff has no more emails or Facebook Messenger messages with current or former Santander employees to produce.

**REQUEST NO. 37:**
Please provide a true and correct copy of all text messages between you and a current or former Santander employee between January 2015 and the present.

    **RESPONSE:** Plaintiff has no documents responsive to this request to produce.

**REQUEST NO. 38:**
Please provide a true and correct copy of all instant messages between you and a current or former Santander employee between January 2015 and the present.

    **RESPONSE:** Plaintiff has no documents responsive to this request to produce.

**REQUEST NO. 39:**
Please provide a true and correct copy of all e-mail messages between you and any person other than your attorney relating to the subject matter of this Lawsuit.

    **RESPONSE:**  Plaintiff has no documents responsive to this request to produce.

**REQUEST NO. 40:**
Please provide a true and correct copy of all text messages between you and any person other than your attorney relating to the subject matter of this Lawsuit.

    **RESPONSE:** Plaintiff has no documents responsive to this request to produce.

**REQUEST NO. 41:**
Please provide a true and correct copy of all instant messages between you and any person other than your attorney relating to the subject matter of this Lawsuit.

      **RESPONSE:** Plaintiff has no documents responsive to this request to produce.

**REQUEST NO. 42:**
Please provide a true and correct copy of all posts and/or communications that you made on or submitted to a social media platform, pertaining to the subject matter of this Lawsuit.

      **RESPONSE:** Plaintiff has no documents responsive to this request to produce.

**REQUEST NO. 43:**
Please produce a copy of your résumé.

      **RESPONSE:** Plaintiff has produced her résumé.  *See* Mathew 200-202.

**REQUEST NO. 44:**
Please provide copies of the front and back of your driver's license.

      **RESPONSE:** Plaintiff objects to this request because it seeks irrelevant information.

**REQUEST NO. 45:**
Please produce all federal income tax returns filed by you from 2015 to current.

      **RESPONSE:** Plaintiff objects to this request based on her right to privacy and because the request is overly broad, seeking information that is not relevant or discoverable.

**REQUEST NO. 46:**
Please produce any and all federal income tax returns, Forms W-2 and Forms 1099 filed by you from 2015 to current.

      **RESPONSE:** The only W-2 forms for this period were issued to Plaintiff by Defendant, so Defendant already has them and there is no need for Plaintiff to produce copies.  Plaintiff has no 1099 forms responsive to the request.  As for tax returns, Plaintiff objects to producing them based on her right to privacy and because the request for tax returns is overly broad, seeking information that is not relevant or discoverable.

**REQUEST NO. 45:**
Please complete, sign and return the attached Form 4506 (Request for Copy of Tax Return).

      **RESPONSE:** Plaintiff objects to this request based on her right to privacy and because the request is overly broad, seeking information that is not relevant or discoverable.

**REQUEST NO. 46:**
Please complete, sign and return the attached Authorization to Disclose Protected Health
Information.

     **RESPONSE:**  Plaintiff will complete, sign, and return an authorization form directed to
Dr. Radha Kambhampati, a psychiatrist she saw for depression she began to experience while
still employed by Santander.

     Plaintiff otherwise objects to this request because it is overly broad, it seeks information
that is not relevant and not proportional to this case, and it seeks information that is protected by
the doctor-patient privilege.


**REQUEST NO. 47:**
Please complete, sign and return the attached Authorization for Release of Personnel and Payroll
Records.

     **RESPONSE:**  Plaintiff will sign and return this document.

**REQUEST NO. 48:**   Plaintiff will sign and return this document.
Please complete, sign and return the attached Request Form for Texas Workforce Commission
(TWC) Records.

     **RESPONSE:**  Plaintiff will sign and return this document.

**REQUEST NO. 49:**
Please complete, sign and return the attached Consent to Release Cellular Phone Records.

     **RESPONSE:**  Plaintiff objects because the discovery being requested is overly broad,
rather than describing a category of relevant and discoverable information with reasonable
particularity.

**REQUEST NO. 50:**
Please produce any applications for disability benefits that you have submitted to the Social
Security Administration or a private insurance company since April 19, 2016.

     **RESPONSE:**  Plaintiff has no documents responsive to this request to produce.

/s/ Donald E. Uloth
Donald E. Uloth
Texas Bar No. 20374200
Donald E. Uloth, P.C.
18208 Preston Road, Suite D-9 # 261
Dallas, Texas 75248
Phone: (214) 725-0260
Fax: (866) 462-6179
don.uloth@uloth.pro
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on April 1, 2024, I served the foregoing document to Monte K. Hurst by email to Monte.Hurst@hallettperrin.com.

/s/ Donald E. Uloth
Donald E. Uloth

```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF TEXAS
                    DALLAS DIVISION

REENA S. MATHEW,              )
                             )
            Plaintiff,        )
                             )
VS.                           ) CIVIL ACTION
                             )
SANTANDER CONSUMER USA        ) NO. 3:23-CV-01494-N
INC.,                         )
                             )
            Defendant.        )
                             )



        -----------------------------------

           ORAL AND VIDEOTAPED DEPOSITION OF

                  REENA S. MATHEW

                  AUGUST 8, 2024

        -----------------------------------
```

ORAL AND VIDEOTAPED DEPOSITION OF REENA S. MATHER produced as a witness at the instance of the Defendant, and duly sworn, was taken in the above-styled and numbered cause on August 8, 2024, from 9:36 a.m. to 5:48 p.m., before Nita G. Cullen, CSR in and for the State of Texas, reported by machine shorthand, at the law offices of Hallett & Perrin, P.C., 1445 Ross Avenue, Suite 2400, in the City of Dallas, County of Dallas, State of Texas, pursuant to the Federal Rules of Civil Procedure.

Page 2

```
 1              A P P E A R A N C E S

 2

 3    FOR THE PLAINTIFF:

 4         MR. DONALD E. ULOTH
           DONALD E. ULOTH, P.C.
 5         18208 Preston Road
           Suite D-9 #261
 6         Dallas, Texas 75248
           214.989.4396
 7         don.uloth@uloth.pro

 8
      FOR THE DEFENDANT:
 9
           MR. MONTE K. HURST
10         HALLETT & PERRIN, P.C.
           1445 Ross Avenue
11         Suite 2400
           Dallas, Texas 75202
12         214.953.0053
           214.922.4142 Fax
13         monte.hurst@hallettperrin.com

14
      ALSO PRESENT:
15
           MR. JOSEPH McDERMOTT, VIDEOGRAPHER
16         MS. CEICILI MORALES
           MR. PHILIP MATHEW
17         MS. YESSICA PEREZ

18

19

20

21

22

23

24

25
```

1                          INDEX

2                                                    PAGE

3    Appearances....................................... 2

4    Stipulations...................................... 5

5    REENA S. MATHEW
         Examination by Mr. Hurst...................... 5
6        Examination by Mr. Uloth....................296

7    Signature and Changes............................299

8    Reporter's Certificate...........................301

9

10                        EXHIBITS

11   NO.  DESCRIPTION                                PAGE

12   Exhibit  1    2015 Mid-Year Review (Non-Managers)....51
     Exhibit  2    LinkedIn Profile.......................69
13   Exhibit  3    E-mail dated 90 Sep 2015 to Yessica
                   Adriano from Reena Mathew.............110
14   Exhibit  4    E-mail dated 18 Jan 2016 to Stephen
                   Shaffer from Reena Mathew.............119
15   Exhibit  5    Event: One on One, 2015-09-14........133
     Exhibit  6    E-mail dated 10 Mar 2016 to Reena
16                 Mathew from Yessica Adriano,
                   Subject: FW: Investigation Summary-
17                 Jacqueline M. Smith...................189
     Exhibit  7    Declaration of Sabrina Boyd...........213
18   Exhibit  8    Declaration of Tina Mohan.............217
     Exhibit  9    Plaintiff's Amended Answers to
19                 Defendant's First Set of
                   Interrogatories.......................223
20   Exhibit 10    Activity at a Glance..................254
     Exhibit 11    E-mail dated 05 Nov 2015 to yadriano
21                 from YouEarnedIt......................258
     Exhibit 12    E-mail dated 3 Mar 2015 to Angeline
22                 Hullum from Reena Mathew, Subject:
                   RE: Annette Williams..................260
23   Exhibit 13    E-mail dated 09 Apr 2015 to Angelina
                   Hullum from Reena Mathew, Subject:
24                 RE: March Recap.......................263

25

Page 4

| 1  | Exhibit 14 | E-mail dated 18 May 2015 to Angelina Hullum from Reena Mathew, Subject: |
|    |            | April Recap...........................264 |
|    | Exhibit 15 | E-mail dated 02 Jul 2015 to Hortensia Perez from Yessica Adriano, Subject: |
| 3  |            | RE: Associate Cedric Phillips.........266 |
| 4  | Exhibit 16 | E-mail dated 12 Aug 2015 to Jeffrey Wiener from Reena Mathew, Subject: |
| 5  |            | RE: Follow Up........................268 |
|    | Exhibit 17 | E-mail dated 02 Nov 2015 to Yessica Adriano from Stephanie Elad, Subject: |
| 6  |            | Bereavement Documentation.............270 |
| 7  | Exhibit 18 | E-mail dated 18 Nov 2015 to Yessica Adriano from Angeline Hullum, Subject: |
| 8  |            | RE: Reena and Sabrina Annual Review...272 |
|    | Exhibit 19 | E-mail dated 24 Nov 2015 to Pamela Blackburn from Stephanie Elad, Subject: |
| 9  |            | Reena Mathew - Confidential...........274 |
| 10 | Exhibit 20 | E-mail dated 24 Nov 2015 to Yessica Adriano from Stephanie Elad, Subject: |
| 11 |            | RE: Reena: Workload...................275 |
|    | Exhibit 21 | E-mail dated 08 Dec 2015 to Stephanie Elad from Yessica Adriano, Subject: |
| 12 |            | FW: Reena.............................278 |
| 13 | Exhibit 22 | E-mail dated 08 Dec 2015 to Yessica Adriano from Jeffrey Wiener, Subject: |
| 14 |            | Summary of HR Conversation............281 |
|    | Exhibit 23 | E-mail dated 10 Dec 2015 to Stephanie Elad from Yessica Adriano, Subject: |
| 15 |            | FW: Leave Early Requests..............283 |
| 16 | Exhibit 24 | E-mail dated 22 Dec 2015 to Stephanie Elad from Stephen Shaffer, Subject: |
| 17 |            | RE: RM................................285 |
|    | Exhibit 25 | E-mail dated 29 Mar 2016 to Holly Hanes from Stephanie Elad, Subject: |
| 18 |            | FW: Attendance Recognition Program....290 |
| 19 | Exhibit 26 | E-mail dated 14 Apr 2016 to Stephanie Elad from Stephen Shaffer, Subject: |
| 20 |            | RE: Reena Mathew......................293 |

21

22

23

24

25

 1              P R O C E E D I N G S

 2              VIDEOGRAPHER:  All right.  We are now on

 3    the record.  Today's date is August the 8th, 2024, and

 4    the time on the video monitor is 9:36 a.m.  This is the

 5    videotaped deposition of Reena Mathew in the action

 6    titled Reena Mathew versus Santander Consumer USA Inc.

 7    for the U.S. District Court for the Northern District of

 8    Texas, Dallas Division.

 9              Counsel may identify themselves at this

10    time; afterwards, the Court Reporter will swear in the

11    witness.

12              MR. HURST:  Monte Hurst for Defendant,

13    Santander Consumer USA.

14              MR. ULOTH:  Don Uloth for the Plaintiff,

15    Reena Mathew.

16                    REENA S. MATHEW,

17    having been first duly sworn, testified as follows:

18                       EXAMINATION

19    BY MR. HURST:

20         Q.  Can you please state your full name?

21         A.  Reena Sara Mathew.

22         Q.  Is that "Sara" with an "H"?

23         A.  No "H".  S-A-R-A.

24         Q.  Thank you.

25         A.  Yes.

Page 231

```
1        A.  Okay.  Yes.  I just wanted to make sure.  Yes.

2        Q.  (By Mr. Hurst)  You are claiming that you

3   suffered mental anguish damages.

4        A.  Yes.

5        Q.  As a result of Santander's conduct, correct?

6        A.  Yes.  Absolutely, categorically, yes.

7        Q.  Have you sought counseling or therapy as a

8   result of the mental anguish that you claim to have

9   suffered?

10       A.  Yes.

11       Q.  Okay.  When did you start seeking counseling or

12  therapy?

13       A.  Gosh.  Probably August of 2016.  So, shortly

14  after.

15       Q.  Shortly after you were terminated.

16       A.  Yes.

17       Q.  What medical care or healthcare provider did

18  you go to?

19       A.  It was my primary -- primary OB/Gyn, and then I

20  did have postpartum depression, so psychiatrist.

21       Q.  Okay.  Who is your primary care physician?

22       A.  I'm sorry.

23       Q.  Take your time.

24       A.  No, because it was really such a difficult time

25  in my life.  And, honestly, I wouldn't even do this
```

1  if -- like I just don't want anyone else going through

2  it.  No one should be treated this way.  And, honestly,

3  I -- even seeing her earlier today, I told Don, that was

4  hard.  And someone like that shouldn't get away with

5  this kind of behavior.  Probably August.  My primary's

6  Julie, Julie Parekh.

7       Q.  How do you spell that?

8       A.  J-U-L-I-E, Parekh is P-A-R-E-K-H.

9       Q.  And you said August was when you saw Dr. Parekh

10 for --

11      A.  Yes.

12      Q.  Your mental --

13      A.  I just told her I wasn't feeling like myself.

14      Q.  And did you continue treating under Dr. Parekh

15 for your mental anguish resulting from Santander's

16 treatment of you?

17      A.  Yes, uh-huh.

18      Q.  From August 2016 to when?

19      A.  I think I felt better by February.

20      Q.  Of 2017?

21      A.  Yeah.  But there was still just -- I don't even

22 know how to explain it.  I don't know if it's just part

23 of postpartum, but it lasted a while.

24      Q.  Okay.

25      A.  But I think whatever they have prescribed took

1    care of the main stuff.

2         Q.  So, I want to make sure I understand.  I

3    apologize for dwelling on what's clearly a sensitive

4    topic, and my intent is not to spend any more time on it

5    than we need to.  Were you seeing Dr. Parekh for

6    postpartum depression and/or for what you believe to be

7    mental anguish damages resulting from Santander's

8    treatment of you?

9         A.  I think they're interrelated, both.  I couldn't

10   tell you which one.  That kind of level of stress no one

11   should have to go through, and worrying about if you're

12   going to, you know, maybe lose a child.  That's not

13   right.  And she's just sitting there like nothing

14   happened.  That's not right.

15             I honestly wouldn't even pursue something

16   like this if it wasn't that bad.  But to make someone

17   suffer their whole pregnancy, that's not okay.  I'm

18   trying to do everything right, and she's just -- I

19   can't -- this is why I say, I really can't believe

20   someone can lie like this.  That is scary.

21             And, no, I wasn't going to offer up my

22   personal information in front of someone like that.  I

23   don't know if something's wrong with that kind of

24   person, but no, I don't feel safe.

25        Q.  What other doctors or healthcare providers have

1  you seen because of what you believe to be mental

2  anguish resulting or as a result of how Santander

3  treated you?

4      A.  I mean, I had to see that psychiatrist for a

5  while.

6      Q.  That Radha --

7      A.  Yes.  Kambhampati, yes.

8      Q.  And when did you start seeing Dr. Rahda?

9      A.  Yeah.  Probably October.

10     Q.  Of 2016?

11     A.  I believe.  It's such a big blur, to be honest,

12 it was just so much going on.  They threw me out like a

13 dog.

14     Q.  Your interrogatory answers say that you started

15 seeing Dr. Rahda for depression that you began to

16 experience while you were still at Santander.

17     A.  I'm sorry.  Say that one more time.

18     Q.  Sure.  Your interrogatory answers, you have

19 them right in front of you, No. 5.

20     A.  Yes.

21     Q.  That you started to see Dr. Rahda for

22 depression that you began to experience while you were

23 still employed by Santander.

24     A.  Yes.  Well, that was more anxiety, but the

25 postpartum depression, that all started postpartum, and

1   it just continued.

2       Q.  When did you first start seeing Dr. Rahda?

3       A.  Gosh, I don't -- December of -- probably right

4   around that PIP.  Yeah.  I would say --

5       Q.  December of '15?

6       A.  December, January, yeah.  December 2015,

7   January '16, so --

8       Q.  Are you still under Dr. Radha's care?

9       A.  No.

10      Q.  When did you stop seeing Dr. Rahda?

11      A.  Like, you know, I mentioned it cleared up in

12  like '15, but still -- I mean, something lingered.

13      Q.  February of 2017?

14      A.  Yes.  But that doesn't mean I was okay.

15      Q.  I wasn't asking.  In fairness, I'm really just

16  asking about healthcare providers and medical care

17  providers with whom you've treated for damages you're

18  claiming to have suffered because of Santander.

19      A.  Sure.

20      Q.  And you have identified two medical care

21  providers whom you have seen because of what you're

22  claiming to be mental anguish resulting from your time

23  at Santander.

24      A.  Yes.

25      Q.  Are there any other medical care providers that

Page 236

1   you have seen resulting or because of mental anguish

2   that you claim is from your time at Santander?

3       A.  I'm trying to think.  No.  I know I mentioned

4   it to my OB/Gyn, but she didn't really treat anything.

5       Q.  Are you talking about Dr. Parekh?

6       A.  No, that was my -- just my primary, but my

7   OB/Gyn, like after the baby, I did like mention some

8   stuff, but I wasn't treated by her.

9       Q.  Did you discuss --

10      A.  Postpartum?

11      Q.  You're calling it postpartum, and I appreciate

12  it.  I'm looking at who you have seen or discussed your

13  alleged mental anguish with that resulted from your time

14  at Santander.

15      A.  Definitely OB/Gyn then, yes.

16      Q.  So what is his or her name?

17      A.  Kristen Carmichael.

18      Q.  Carmichael?

19      A.  Yes.

20      Q.  C-A-R?

21      A.  Uh-huh, C-A-R, and then Michael.

22      Q.  And how long were you visiting with Dr.

23  Carmichael about issues that you believe arose at

24  Santander or because of your employment at Santander?

25      A.  For her, not very long.  It was just post --

1    you know, after the baby, so I would say till August.

2    August, September, but --

3         Q.  Say that again.

4         A.  Probably August, September.  So, my baby was

5    born in June, and then I think by August, September.

6    Like I had mentioned it in our follow-up appointments

7    but --

8         Q.  When did you start discussing with Dr.

9    Carmichael your feeling mental anguish or anxiety

10   resulting from your time at Santander?

11        A.  She knew earlier on.  She knew the situation.

12        Q.  Because you told her.

13        A.  Yes, because I told her.

14        Q.  When did you tell her?

15        A.  That was at one of my appointments.  I would

16   say -- I would say probably around December, as well,

17   December 2015.  Because I really thought I was going to

18   have to be on FMLA or -- it was miserable.

19        Q.  And you know you could have asked to be on

20   FMLA.

21        A.  I did, but, you know, then I thought I didn't

22   want to lose my benefits, you know, I was just scared.

23        Q.  Why would you lose your benefits, if you went

24   out on FMLA?

25        A.  I thought they would retaliate somehow.  That

Page 301

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
 2                     DALLAS DIVISION

 3   REENA S. MATHEW,              )
                                   )
 4        Plaintiff,               )
                                   )
 5   VS.                           ) CIVIL ACTION
                                   )
 6   SANTANDER CONSUMER USA        ) NO. 3:23-CV-01494-N
     INC.,                         )
 7                                 )
          Defendant.               )
 8                                 )

 9

10         -----------------------------------

11               DEPOSITION CERTIFICATE

12                 REENA S. MATHEW

13                 AUGUST 8, 2024

14         -----------------------------------

15

16            I, Nita G. Cullen, Certified Shorthand

17   Reporter in and for the State of Texas, hereby certify

18   to the following:

19                 That the witness, REENA S. MATHEW, was

20   duly sworn by the officer and that the transcript of the

21   oral deposition is a true record of the testimony given

22   by the witness;

23                 I further certify that pursuant to FRCP

24   Rule 30(f)(1) that the signature of the deponent:

25                 ____ was requested by the deponent or a
```

Page 302

1    party before the completion of the deposition and is to

2    be returned within 30 days from date of receipt of the

3    transcript.  If returned, the attached Changes and

4    Signature Page contains any changes and the reasons

5    therefor;

6                ___ was not requested by the deponent or a

7    party before the completion of the deposition.

8                I further certify that I am neither

9    attorney or counsel for, nor related to or employed by,

10   any of the parties or attorneys to the action in which

11   this deposition was taken.  Further, I am not a relative

12   or employee of any attorney of record in this case, nor

13   am I financially interested in the outcome of the

14   action.

15               Subscribed and sworn to on this 12th day of

16   August, 2024.

17

18

19               _____

                 NITA G. CULLEN, Texas CSR #1563

20               Expiration Date:  08-31-2024

                 BRADFORD COURT REPORTING, L.L.C.

21               Firm Registration No. 38

                 7015 Mumford Street

22               Dallas, Texas  75252

                 (214) 931-2799

23

24

25

**From:** don.uloth@uloth.pro <don.uloth@uloth.pro>
**Sent:** Monday, August 12, 2024 4:01 PM
**To:** Monte K. Hurst <Monte.Hurst@hallettperrin.com>
**Cc:** Ceicili S. Morales <cmorales@hallettperrin.com>; Clayton S. Carter <ccarter@hallettperrin.com>;
Emma N. Sanchez <esanchez@hallettperrin.com>
**Subject:** RE: Mathew vs. Santander

Monte:

When I learned Reena may have talked to her GP and ObGyn about facts relevant to
compensatory damages, I decided to ask for their records and supplement the
interrogatory answers with their names and contact information.  I thought I had
supplemented the interrogatories.  During Reena's deposition I checked and realized I had
not, which was my mistake.

Plaintiff has no documents from the doctors' records that might relate to
compensatory damages, so she has nothing to produce.  We provided an authorization so
Santander could seek records from her psychiatrist, and as far as I know, they never did.  It
seems unlikely Santander would have done any different with respect to Carmichael and
Parekh if these had been disclosed sooner.

If you want to ask them for medical records now, I can ask Reena to sign two more
authorizations.  I have no objection to extending the discovery deadline as far out as
necessary for purposes of these records only.  For all other matters, the deadline would
remain August 30, 2024.  The full names and contact information for these doctors is:

> Julie Sharad Parekh, MD
> Baylor Scott & White Dallas Diagnostic Association - Plano
> 4716 Alliance Blvd , Plano, TX, 75093
> (469) 800-6000
>
> Kristen Richeson Carmichael, MD
> Baylor Scott & White Obstetrics & Gynecology - Frisco
> 4461 Coit Rd Suite 205, Frisco, TX 75035
> (972) 817-1249

That said, I don't think there are any records out there to be had.  I requested the
records through a third-party service that Baylor Scott & White uses to respond to records
requests, and in response I got faxes back saying there are no records responsive to my
request.  The faxes are attached to this email.

I'll supplement the interrogatory answers with the names and contact
information.  Please let me know if you'd like me to get authorization forms for Carmichael
and Parekh.

Donald E. Uloth
Law Office of Donald E. Uloth
18208 Preston Rd. Suite D-9 #261
Dallas, TX 75252
Phone: (214) 989-4396
Email: don.uloth@uloth.pro
www.uloth.pro

---

**From:** Monte K. Hurst <Monte.Hurst@hallettperrin.com>
**Sent:** Friday, August 9, 2024 6:12 PM
**To:** don.uloth@uloth.pro
**Cc:** Ceicili S. Morales <cmorales@hallettperrin.com>; Clayton S. Carter <ccarter@hallettperrin.com>;
Emma N. Sanchez <esanchez@hallettperrin.com>
**Subject:** Mathew vs. Santander
**Importance:** High

Don, we are still reviewing and processing Reena Mathew's deposition testimony yesterday.  Of an urgent nature, I am writing to discuss Ms. Mathew's testimony regarding her healthcare providers.  We were disappointed to learn from her sworn testimony that she had seen two doctors—Julie Parekh, M.D. and Kristen Carmichael, M.D.—for her purported mental anguish caused by Santander, who had not been disclosed in discovery.  These two doctors should have been disclosed at the outset of this case under the Court's Initial Discovery Protocols.  Ms. Mathew should have identified these two doctors in her answer to Santander's Interrogatory No. 5, requesting her to identify all medical care professionals that she had seen in the last 10 years.  She should have produced these doctors' medical records in response to Santander's Request for Production No. 34, seeking production of documents supporting her claim for suffering, mental anguish, inconvenience, loss of personal status and dignity, and loss of enjoyment of life (as alleged in her complaint).  And Ms. Mathew should have included these two doctors in her authorization to obtain her medical records, in response to Santander's Request No. 46.

Ms. Mathew objected to Santander's Interrogatory No. 5 and its Request for Production No. 46, asserting that identification of doctors, and production of records for doctors other than Dr. Radha Kambhampati, was irrelevant and overbroad.  Ms. Mathew's testimony clearly contradicts these objections.  Regardless, Ms. Mathew did not even assert an objection in response to Santander's Request for Production No. 34.

We need these doctors' records at once, so that we can better evaluate Ms. Mathew's claim for mental anguish damages.  Please amend your responses to the foregoing discovery requests and produce responsive documents immediately.  While obtaining these records is our top priority at this moment, we are also considering what Santander must do to preserve its rights, including seeking a continuance of our current trial setting and demanding that we continue Ms. Mathew's deposition after we have obtained the records.

Please let me hear from you.

Thanks,
Monte

---

MONTE K. HURST
Shareholder

HALLETT&PERRIN
D 214.922.4111| F 214.922.4142 | monte.hurst@hallettperrin.com
1445 Ross Ave., Suite 2400 | Dallas, Texas 75202
Disclaimer

---



**LABOR AND EMPLOYMENT LAW**

| Client Advisory | Effective January 1, 2024, the Corporate Transparency Act requires U.S. businesses to report their beneficial ownership information to the Financial Crimes Enforcement Network (FinCEN). If you are a Hallett & Perrin client and would like more information, please contact our firm or visit this link. |
|---|---|