## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **REENA S. MATHEW,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 3:23-CV-01494-N** |
| | § | |
| **SANTANDER CONSUMER USA INC.,** | § | |
| | § | |
| *Defendant.* | § | |

## DEFNDANT'S APPENDIX IN SUPPORT OF
## <u>ITS MOTION FOR SUMMARY JUDGMENT</u>

# TABLE OF CONTENTS

| DOCUMENT | PAGE(S) |
|---|---|
| **Declaration of Yessica Perez** | APP1–APP14 |
| **Declaration of Sabrina Boyd** | APP15–APP19 |
| **Declaration of Stephanie Elad** | APP20–APP28 |
| **Declaration of Tina Mohan** | APP29–APP31 |
| **Declaration of Fatma Rizvan** | APP32–APP33 |
| **Declaration of Nicole Prior** | APP34–APP36 |
| **Declaration of Christina Stout** | APP37–APP39 |
| **Declaration of Whitney Andres** | APP40–APP42 |
| **Deposition Excerpts of Reena Mathew** | APP43–APP63 |
| **US EEOC Charge of Discrimination** | APP64 |
| **Excerpts of Santander 2013 Associate Handbook of Discrimination** | APP65-APP70 |
| **Santander Tenure Audits** | APP71–APP108 |
| **Instant Message Exchange Between Mathew and Ms. Perez (September 5, 2013)** | APP109–APP110 |
| **Instant Message Exchange Between Mathew and Ms. Turilli (February 14, 2014)** | APP111 |
| **Instant Message Exchange Between Mathew and Ms. Perez (March 13, 2014)** | APP112 |
| **Instant Message Exchange Between Mathew and Ms. Turilli (November 21, 2014)** | APP113 |
| **Instant Message Exchange Between Mathew and Mr. Vinson (December 1, 2014)** | APP114 |
| **E-mail Exchange Between Ms. Elad and Ms. Turilli (January 22, 2015)** | APP115–APP116 |
| **E-mail Exchange Between Mathew and Ms. Turilli (January 22, 2015)** | APP117–APP118 |
| **Addendum Timeline of Mathew Events** | APP119–APP123 |
| **Instant Message Exchange Between Mathew and Ms. Hullum (April 1, 2015)** | APP124 |

| DOCUMENT | PAGE(S) |
|---|---|
| E-mail Exchange Between Ms. McDonnell and Ms. Hullum (April 5, 2015) | APP125–APP126 |
| E-mail Exchange Between Mr. Holt and Ms. Hullum (April 3, 2015) | APP127–APP131 |
| E-mail Message From Ms. Andres to Ms. Hullum (April 6, 2015) | APP132–APP133 |
| E-mail Exchange Between Mathew and Ms. Hullum (April 9, 2015) | APP134–APP135 |
| E-mail Exchange Between Mathew and Ms. Hullem (April 9, 2015) | APP136–APP137 |
| E-mail Message From Mathew to Ms. Hullum (May 18, 2015) | APP138 |
| E-mail Exchange Between Ms. Hullum and Ms. Lagunes (December 17, 2015) | APP139 |
| E-mail Exchange Between Mathew and Ms. Hullem (July 10, 2015) | APP140–APP141 |
| E-mail Exchange Between Mathew and Mr. Wiener (August 12, 2015) | APP142–APP144 |
| E-mail Message From Mathew to Ms. Hullum (August 13, 2015) | APP145–APP146 |
| E-mail Exchange Between Ms. Perez and Ms. Malone (February 15, 2015) | APP147-APP149 |
| Mathew Outlook Calendar Invites to Ms. Perez | APP150–APP157 |
| E-mail Message From Ms. Perez to Ms. Boyd, Mathew, and Ms. Perez  (September 9, 2015) | APP158 |
| Ms. Hullum's 2015 Mid-Year Review of Reena Mathew | APP159–APP170 |
| Instant Message Exchange Between Mathew and Ms. Perez (September 17, 2015) | APP171 |
| E-mail Message From Ms. Perez to Ms. Elad (September 25, 2015) | APP172 |
| E-mail Message From Ms. Perez to Ms. Elad (October 29, 2015) | APP173 |
| Instant Message Exchange Between Mathew and Ms. Perez (October 29, 2015) | APP174 |

| DOCUMENT | PAGE(S) |
|---|---|
| **E-mail Message From Ms. Elad to Ms. Perez (November 2, 2015)** | APP175 |
| **Instant Message Exchange Between Mathew and Ms. Perez (November 16, 2015)** | APP176 |
| **Instant Message Exchange Between Mathew and Mr. Dieckmann (November 20, 2015)** | APP177 |
| **E-mail Exchange Between Mathew and Ms. Boyd (November 20, 2015)** | APP178–APP179 |
| **E-mail Message From Ms. Crouch to Ms. Kelch (November 21, 2015)** | APP180–APP181 |
| **E-mail Exchange Between Ms. Elad and Ms. Perez (November 24, 2015)** | APP182 |
| **E-mail Message From Ms. Elad to Ms. Blackburn (November 21, 2015)** | APP183 |
| **E-mail Exchange Between Ms. Elad and Ms. Whatley (November 24, 2015)** | APP184 |
| **E-mail Exchange Between Ms. Elad and Ms. Perez (November 24, 2015)** | APP185–APP186 |
| **E-mail Exchange Between Ms. Elad and Ms. Hanes (November 25, 2015)** | APP187–APP188 |
| **Santander Consumer USA, Inc. Performance Improvement Plan** | APP189–APP192 |
| **E-mail Exchange Between Ms. Perez and Ms. Elad (December 8, 2015)** | APP193–APP194 |
| **E-mail Message From Ms. Elad to Ms. Blackburn (December 10, 2015)** | APP195–APP196 |
| **E-mail Message From Ms. Hullum to Ms. Elad (December 10, 2015)** | APP197-APP198 |
| **E-mail Message From Ms. Perez to Ms. Elad (December 15, 2015)** | APP199–APP201 |
| **E-mail Exchange Between Mr. Shaffer and Ms. Elad (December 22, 2015)** | APP202–APP203 |
| **E-mail Exchange Between Mathew and Ms. Perez (December 28, 2015)** | APP204–APP206 |
| **E-mail Exchange Between Ms. Blackburn and Ms. Elad (December 31, 2015)** | APP207–APP208 |

| DOCUMENT | PAGE(S) |
|---|---|
| **E-mail Exchange Between Ms. Perez and Ms. Elad (January 13, 2016)** | APP209 |
| **Santander Consumer USA, Inc. 90 Day Performance Improvement Plan** | APP210–APP218 |
| **E-mail Exchange Between Ms. Elad and Ms. Perez (January 18, 2016)** | APP219–APP220 |
| **E-mail Message from Mathew to Mathew (January 27, 2016)** | APP221–APP227 |
| **E-mail Exchange Between Mathew and Mr. Shaffer (January 27, 2016)** | APP228–APP233 |
| **Mr. Shaffer Final Report of Reena Mathew** | APP234–APP243 |
| **E-mail Message from Mathew to Ms. Perez (February 1, 2016)** | APP244 |
| **Addendum Timeline of Events - Mathew** | APP245–APP249 |
| **E-mail Exchange Between Ms. Elad and Mathew (February 23, 2016)** | APP250–APP255 |
| **E-mail Exchange Between Ms. Elad and Ms. Hanes (March 29, 2016)** | APP256–APP258 |
| **E-mail Exchange Between Mr. Shaffer and Ms. Elad (April 14, 2016)** | APP259–APP263 |
| **Instant Message Exchange Between Mathew and Ms. Perez (November 24, 2015)** | APP264 |
| **E-mail Exchange Between Ms. Perez and Ms. Elad (March 28, 2016)** | APP265-APP266 |
| **E-mail Exchange Between Ms. Perez and Ms. Hanes (March 21, 2016)** | APP267-APP268 |
| **Santander Consumer USA, Inc. Progressive Discipline Policy 2013** | APP269-APP275 |
| **E-mail Exchange Between Ms. Hullum and Ms. Elad (January 18, 2016)** | APP276-APP278 |

Respectfully submitted,

HALLETT & PERRIN, P.C.
1445 Ross Avenue, Suite 2400
Dallas, Texas 75202
214.953.0053
(f) 214.922.4142


By:  *Monte K. Hurst*
Monte K. Hurst
State Bar No. 00796802
Monte.Hurst@hallettperrin.com

Clayton S. Carter
State Bar No. 24120750
CCarter@hallettperrin.com

*Counsel for Defendant
Santander Consumer USA Inc.*

## CERTIFICATE OF SERVICE

On August 23, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served Plaintiff's counsel of record, as follows, electronically, as authorized by Rule 5(b)(2) of the Federal Rules of Civil Procedure:

Mr. Donald E. Uloth
DONALD E. ULOTH, P.C.
18208 Preston Road, Suite D-9 # 261
Dallas, Texas 75248
Don.Uloth@uloth.pro


*Monte K. Hurst*
Monte K. Hurst

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **REENA S. MATHEW,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 3:23-cv-01494-N** |
| | § | |
| **SANTANDER CONSUMER USA INC.,** | § | |
| | § | |
| *Defendant.* | § | |

## DECLARATION OF YESSICA PEREZ

I, Yessica Perez, declare that the following statements are true and correct, based on my

personal knowledge:

1. My name is Yessica Perez. I am over 18 years of age, of sound mind, and have never been convicted of a felony. I am personally acquainted with the facts stated herein and I affirm the following is true and correct. I previously went by the name Yessica Adriano.

2. From January 2015 until June 2017, I was employed with Santander Consumer USA Inc. ("Santander") as an HR Manager. As an HR Manager, I served as a liaison between employees and management. I managed a team of Employee Relations Consultants (formerly "HR Business Partners"), and I was involved in employee disciplinary actions, employee relations issues, and terminations.

3. Santander is a consumer finance company focused on vehicle finance and third-party servicing. Santander is headquartered in Dallas, Texas.

4. Santander is an equal opportunity employer, committed to providing equal opportunity to all persons regardless of race, color, sex, creed, gender (including identity and expression), religion, national origin or ancestry, ethnicity, age, marital status, registered domestic partner status, sexual orientation, disability, physical or mental disability, medical condition including genetic characteristics, veteran status or any other legally-protected basis. *See* Santander Consumer USA Inc. Associate Handbook, 5–6 (2013) ("Associate Handbook").

-1-

5.     In addition to equal opportunity policies, Santander has an Anti-Harassment and Anti-Discrimination Policy. *See* Associate Handbook, 10–12. The policy prohibits unlawful discrimination or harassment of any kind. Furthermore, the policy outlines a complaint procedure for associates who feel they have experienced job-related harassment. If an associate feels that he/she has been treated in an unlawful, discriminatory manner, he/she should promptly report the incident to his/her manager and/or Human Resources. Managers are required to immediately report any such claims to Human Resources as well. Human Resources then investigates the matter, takes the appropriate action if necessary, and is mindful to keep complaints confidential to the extent possible, consistent with Santander's need to conduct the investigation and take any necessary action. If an associate feels that he/she is experiencing any job-related harassment from a member of Human Resources, he/she is instructed to go immediately to Santander's Legal Department.

6.     Santander's Anti-Harassment and Anti-Discrimination Policy also specifically states that retaliation is prohibited by Santander's policies and the law. Associates are informed that if they think they have been retaliated against, they may file a complaint with the appropriate agency and that the nearest office can be located at www.eeoc.gov.

7.     HR Business Partners and HR Generalists would report to HR Managers. Each HR Manager reported to a Director, Human Resources, which was my role. Each Director, Human Resources reported to the VP Human Resources. The VP Human Resources reported to the Executive VP of Human Resources.

8.     Reena Mathew ("Mathew") worked as an HR Business Partner in Santander's HR department at the Lewisville office. In this role, Mathew was responsible for, among other things, managing employee relations issues, processing employee disciplinary actions, and conducting investigations into employee conduct as necessary.

9.     During the relevant time periods, Mathew reported to HR Manager Angelina Hullum then to me. I then reported to Stephanie Elad, Director, Human Resources. Ms. Elad then reported to Stephen Shaffer, VP Human Resources. Mr. Shaffer then reported to Pam Blackburn, Executive VP of Human Resources.

10.     On September 8, 2015, I met with my new team to discuss my expectations for the team and what our schedules would be. I emphasized that we should be working together as one, which would include sharing the workload and helping each other out. I also emphasized the importance of working full days and being productive while at the office so that we could maintain a

APP002

healthy work-life balance.  *See* e-mail message from me to Sabrina Boyd, Mathew and Hortensia Perez ("Tensya") on September 9, 2015.

11.   When I took over as Mathew's supervisor, I learned from Ms. Hullum some of Mathew's specific performance deficiencies.  Specifically, Ms. Hullum shared with me the following incidents in which Mathew's performance was either brought into question or failed to meet expectations:

- **April 9, 2015:** Mathew submitted her March recap to Ms. Hullum four days late, and only after Ms. Hullum followed up with her. Mathew's monthly recap reflected significantly less meetings with business personnel than her HR Business Partner counterparts, and failed to quantify the meetings with business leaders as was requested by Ms. Hullum.  The recap reflected that Mathew had participated in only two side-by-side meetings with managers and only four jumpstarts during the month.  Mathew also failed to indicate the number of meetings she had that month with business leaders. Although I was not working with Mathew in April 2015, I could appreciate why Ms. Hullum identified these deficiencies. From my perspective, an HR Business Partner should participate in significantly more than two side-by-side meetings with managers over the course of a month.

- **May 18, 2015:** Mathew submitted a monthly recap which reflected the fact that she did not attend *any* jumpstarts for the month, did not conduct *any* trainings, and the number of meetings with business leaders was again not included.

- **July 1, 2015:** Mathew asked for permission to leave work early that day for a doctor's appointment, of which she had not previously advised.

- **July 10, 2015:** Ms. Hullum asked Mathew to support a department at another Santander office location due to a staff shortage and an unbalanced workload identified among the HR department, to which Mathew asked for assistance, noting that she felt overwhelmed with her current duties.

- **August 13, 2015:** Mathew's monthly recap reflected that she held *only one* side-by-side meeting, attended three jumpstarts, and she had over 10 meetings with business leaders, and recapped only one training that she had with a manager.

- **July-August 2015:** Ms. Hullum asked Mathew to complete a time study to determine what she was spending her time on, in light of her insistence that her workload was too heavy.  Ms. Hullum had to

APP003

ask Mathew to complete the study twice because Mathew's first attempt did not meet her expectations.  The time study reveals inefficiencies, such as Mathew spending 3 hours and 15 minutes to draft the "July Recap," which was an e-mail message consisting of less than one page.

12.     Despite Mathew's history of poor performance, I wanted to give her a clean start under my leadership.  For that reason, shortly after I began to supervise her, I met with Mathew one-on-one to discuss her 2015 Mid-Year Review and assess how I could help her in reaching her goals and improving.  As a result, I set up weekly one-on-one coaching meetings with Mathew.  *See* Outlook calendar appointments for my one-on-one meetings with Mathew.

13.     During these one-on-one meetings, I coached Mathew on areas she was performing poorly and provided guidance on how Mathew could improve.  *See* my handwritten notes taken during each one-on-one meeting with Mathew.

14.     Mathew's performance did not improve after I began to supervise her, despite my efforts to coach her.  Rather, Mathew regularly failed to meet performance expectations, as demonstrated in the following incidents:

- **September 17, 2015:** Mathew again provided me with last-minute notification that she was going to leave early, this time informing me that she needed to leave early that same day.  *See* Instant Message conversation between Mathew and me on September 17, 2015.

- **September 28, 2015:** Mathew informed me that she felt overwhelmed with her workload.  I informed her that the HR Business Partner role requires a high level of efficiency.  *See* my handwritten notes taken during my one-on-one meeting with Mathew on September 28, 2015.

- **October 29, 2015:** Brad Denetz, the Site Director, came to my office to discuss having approximately 10 disciplinary actions outstanding that he needed as soon as possible.   When I asked Mathew about those disciplinary actions, she stated that she would have them to Mr. Denetz by that Friday.  *See* Instant Message conversation between Mathew and me on October 29, 2015.

- **October 29, 2015:** Mathew again provided last-minute notification that she would miss work.  Specifically, she informed me in the late afternoon that she has a doctor's appointment in the morning.  This late notice required me to rearrange my schedule to provide

-4-

coverage at the office. *See* e-mail message from me to Ms. Elad on October 29, 2015.

- **November 2, 2015:** Ms. Elad overheard Mathew and Ms. Boyd spend an inappropriate amount of time on a bereavement request. Ms. Elad sent an e-mail message to me discussing her concern that Mathew's and Ms. Boyd's time could have been better spent on more productive matters. *See* e-mail message from Ms. Elad to me on November 2, 2015.

- **November 16, 2015:** Mathew sends me an instant message at 9:53 a.m. asking if she could leave at 3:00 p.m. that day, providing same day notification. *See* Instant Message conversation between Mathew and me on November 16, 2015.

- **November 20, 2015:** Mathew informed me that she felt she was extremely busy and needed help with her workload. She asked me if another HR Business Partner, Hortensia Perez ("Tensya"), could assist her with her workload. I granted her request, and Tensya took over a pending investigation that was originally assigned to Mathew. *See* Instant Message conversation between Mr. Dieckmann and Mathew on November 20, 2015.

- **November 23, 2015:** Despite receiving an employee's notice of resignation on Saturday, November 21, 2015, Mathew failed to process the termination timely. Upon my review, it came to my attention that the employee who resigned had previously filed a complaint against her manager, which Mathew had investigated. Upon reviewing the investigation, I learned that the complaining employee alleged that she could not trust her Assistant Vice President ("AVP") because the AVP was good friends with the manager about whom the complaining employee was making allegations. When Mathew had assumed the responsibility of conducting the investigation, she obviously ignored the employee's allegation, demonstrated by the fact that Mathew interviewed the complaining employee and the AVP together. Mathew then concluded that none of the complaining employee's complaints were substantiated.

  After learning about the inadequacies of the initial investigation conducted by Mathew, I conducted my own investigation, which resulted in substantiating some of the allegations made by the complaining employee. When discussing the situation with her, Mathew informed me that she (1) did not read the e-mail message sent by the complaining employee in its entirety, and (2) did not believe the complaining employee during the investigation. In

APP005

response, I reprimanded Mathew, informing her that she must always investigate complaints with an open and fair mind.

- **November 24, 2015:**  Mathew sent me an instant message at 11:19 a.m. informing me that she would be taking a long lunch to go to a doctor's appointment, providing same day notification.  *See* Instant Message conversation between Mathew and me on November 24, 2015.

- **November 24, 2015:**  Mathew again complained about her workload, asking that someone assist her with a pending project. When I explained the rest of the busy workloads of the rest of the team members and asked what Mathew had going on, she says she overwhelmed and had to leave to go to a doctor appointment.  *See* e-mail message exchange between Ms. Elad and me on November 24, 2015.

15.    Due to my ongoing concerns with Mathew's performance, in November 2015, I consulted Ms. Elad to assist in formally addressing Mathew's poor performance.  I forwarded an instant message I received from Mathew stating that Mathew was overwhelmed by the number of compliance e-mail messages she had to complete.  Ms. Elad expressed that she did not believe compliance e-mail messages should take very long.  *See* e-mail message exchange between Ms. Elad and me on November 24, 2015.

16.    Ms. Elad then consulted with her supervisor, Pamela Blackburn, Executive Vice President of HR.  Although Ms. Elad recommended that Santander explore the possibility of offering Mathew a severance agreement to leave, Ms. Blackburn denied that recommendation.  Rather, Ms. Blackburn suggested that we place Mathew on a Performance Improvement Plan ("PIP") to provide her with another opportunity to improve her performance.  Santander determined that, based on Mathew's poor performance in a number of categories, a PIP was the appropriate mechanism by which to manage her performance, as a written warning on her poor performance on a specific category would not capture the bigger picture of how she needed to improve her performance in a number of categories.

17.    On December 1, 2015, I met with Mathew to discuss her poor performance and provide her with the 30-day PIP.  Despite being placed on a PIP, Mathew's poor performance continued, as demonstrated in the following incidents:

- **December 8, 2015:** Scott Dieckmann (SVP Loan Servicing, Consumer Lending) wrote to me, expressing his concerns with Mathew's performance as his department's HR Business Partner.

Specially, he described Mathew's behavior as "bullying," complained that Mathew did not involve management in areas in which he believed management should have been involved, and explained why he believed her investigation into an employee complaint was flawed. In particular, in the instance he described, Mathew had told a manager that she was "sure" an event that the complaining employee described occurred, despite having found no corroborating evidence, and in fact being told by witnesses that the event alleged by the complaining employee did not occur.

- **December 28, 2015:** Santander experienced a payroll issue that required an HR professional from every location to assist in resolving the issue. I asked Mathew to work on this issue. Mathew was unable to complete this task on her own, resulting in me having to ask Sabrina Boyd, the HR Generalist, to assist with the payroll issue. Ms. Boyd worked to find a resolution without difficulty.

18.    Accordingly, on January 15, 2016, Ms. Elad and I placed Mathew on a 90-day PIP, and provided her with a 90-day action plan. In this PIP, we identified performance standards for her job, along with a description of how her performance to date had failed to meet those standards. The 90-day action plan indicated three areas of focus: attendance; time management/effective work habits; and consulting. We then provided her with tasks associated with each of these areas of focus, along with a description of any support or resources that were available to assist her in making the necessary improvements to her performance. For example, we offered to provide Mathew with additional training on a number of topics, and asked her to request the training by February 5, 2016. Additionally, in light of Mathew's continual complaints that her workload was too heavy to handle, we reassigned the work associated with Santander's 8585 location to another member of the team. Finally, we informed Mathew that she would have biweekly reviews with me to discuss her performance in each of the areas of focus. *See* Mathew's 90-day PIP and 90-day action plan.

19.    On January 18, 2016, I sent Ms. Elad an e-mail message summarizing our January 15, 2016, meeting with Mathew. Ms. Elad had minimal comments to add and expressed that I accurately captured the meeting. *See* E-mail message exchange between Ms. Elad and me on January 18, 2016.

20.    On January 29, 2016, I met with Mathew to discuss her performance at our first biweekly follow-up meeting. I noted that she had been properly providing me with 48 hours'-notice before taking time off, which met my expectations as to the focus area of attendance. We then discussed her time study, in which she had documented what she did throughout the day and how much time she devoted to each item. I reminded her that when she received a project, it was important to respond timely. Further, if she found

-7-

herself unable to complete an assignment on time, she needed to provide an update or explanation of what occurred, along with a new estimated time of completion. *See* E-mail message from Mathew to me on February 1, 2016.

21.    During the January 29, 2016, meeting, I asked Mathew if she would like to attend any type of class to assist her in meeting her PIP objectives, and I asked her to identify any courses she would like to attend no later than February 5, 2016. She responded by telling me that if she came across any classes she wanted to take, she would let me know. *See* E-mail message from Mathew to me on February 1, 2016.

22.    During the course of the next two weeks, Mathew failed to fully meet my expectations in completing her work on a timely basis, and in following instructions. For example, in one instance, Ms. Elad had instructed Mathew to eliminate specific information from an investigation report. Yet, the investigation report submitted by Mathew contained the very information that Ms. Elad had asked her to not include. Additionally, the deficient report was submitted late.

23.    Accordingly, on February 17, 2016, Ms. Elad and I met with Mathew to further discuss her performance during our second biweekly follow-up meeting. In this conversation, Ms. Elad and I conveyed our observations that she was still not completing her work on a timely basis, and that she had failed to follow instructions regarding employee investigations. Ms. Elad and I coached Mathew regarding our expectation that she timely complete her work and that she follow instructions when completing employee investigations. We then further analyzed Mathew's recent failure to follow instructions when she submitted the report containing the very information that Ms. Elad asked her to eliminate. We also pointed out that she submitted the (deficient) report after the deadline. *See* E-mail message exchange between Ms. Elad, Mathew and me between February 17–22, 2016.

24.    Also at the February 17, 2016 meeting, Ms. Elad and I asked Mathew to provide us with more detail when identifying for us how she was utilizing her time. In particular, we asked that she identify the number of disciplinary actions and investigations that she completes each week, the process that she follows to intake disciplinary actions, and descriptions of other tasks that she completes throughout the week. This was necessary because Mathew continued to complain, in the meeting, that her workload was too heavy, despite the fact that she had one of the lightest, if not *the* lightest, workload of any of Santander's HR Business Partners. *See* E-mail message exchange between Ms. Elad, Mathew and me between February 17–22, 2016.

-8-

25.     After our February 17, 2016 meeting, I asked Mathew to provide me with a written summary detailing our meeting.  I made this request to ensure that Mathew understood and grasped the key takeaways from our meeting.  This practice is not uncommon when administering a performance improvement plan.  *See* E-mail message exchange between Ms. Elad, Mathew and me between February 17–19, 2016.

26.     Mathew provided to me a very cursory outline of our conversation, which fell below my expectations.  This outline did not even note the extensive coaching that Ms. Elad and I provided to her regarding timeliness of her work and following instructions when conducting an investigation.  *See* E-mail message exchange between Ms. Elad, Mathew and me between February 17–19, 2016.

27.     Despite the coaching that Ms. Elad and I provided regarding timely submitting projects, Mathew continued to untimely meet deadlines.  This untimeliness was not only burdensome to me; but also, it impacted the business clients whom we serve.

28.     I also found that, while Mathew was continuing to work on employee investigations as instructed, she was asking me to direct her in her own investigations far more frequently than someone at her level should have been.  While I appreciated that she was trying to ensure that she did not make any mistakes, I was constantly interrupted by Mathew, each time taking me away from whatever I was working on, to answer questions about investigations that I had expected her to know.  I was overwhelmed by these unnecessary interruptions.  As a result of these interruptions, I was far less productive than I could otherwise be in my job duties.

29.     On February 26, 2016, Ms. Elad and I met with Mathew to provide her with a 30-day review.  In this meeting, Ms. Elad and I again focused on Mathew's need to improve on her time-management and effective work habits.  In doing so, we discussed a recent instance when Mathew failed to submit the information requested of her by the deadline, and how her untimeliness impacted the business that we serve.

30.     Also at this February 26, 2016 meeting, Ms. Elad and I discussed with Mathew that she needed to take more initiative when conducting investigations.  In particular, we discussed how Mathew had needlessly interrupted me in my work, prior to performing each of the four investigations that she conducted over the past 30 days.  Ms. Elad and I told her that we expected her to demonstrate more proficiency and confidence in conducting these investigations, and that I would remain available for consultation as needed.  We further noted that, consistent with her PIP, we had offered her training opportunities, in which she had not expressed any interest.

-9-

31.     Unfortunately, Mathew did not grasp our instruction that she should demonstrate more proficiency and confidence in conducting investigations. Rather, she continued to come to me seeking guidance at what seemed like to me every juncture during her ongoing investigations.

32.     Accordingly, on March 8, 2016, during Ms. Elad and my third biweekly follow-up meeting with Mathew, we noted that Mathew asked for guidance from me every step of the way while conducting investigations. We told her that it was our expectation that she would be able to make sound judgment calls on her own, and that she would begin to move toward managing her investigations on her own without constantly asking me for guidance. In this meeting, we also recognized that Mathew had made some improvements in handling administrative tasks and in being more thorough in investigations.

33.     Three days later, on Friday, March 11, 2016, Mathew engaged in behavior which I believe exemplified her poor time-management skills and called into question her integrity. Specifically, Mathew was working on a project related to rewarding perfect attendance for Santander associates. As part of that project, Mathew sent an e-mail message to Ms. Elad at 4:28 p.m., in which she told Ms. Elad that she was "partnering" with another department, HRIS, to obtain specific data related to the project. In this e-mail message, Mathew told Ms. Elad that she wanted to provide Ms. Elad with a "status update" before leaving for vacation that same day. Mathew asked Ms. Elad if it was okay if she sent Ms. Elad the requested data when she returned from her vacation. Ms. Elad responded to this e-mail message minutes later, asking if Mathew could get the data to her earlier, as she wanted to get the data to their business client the next week if possible. Ms. Elad and I later learned that Mathew had not actually "partnered" with HRIS to get the data, as Mathew had represented in her e-mail message. Rather, Mathew did not request the data from HRIS until *after* she received Ms. Elad's e-mail message requesting her to get the data to her by the next week.

34.     In addition to her poor time-management, I found that Mathew did not improve in conducting and managing her own employee investigations. Rather, despite our continued instruction that she begin to manage her investigations on her own, Mathew continued to constantly seek my assistance.

APP010

35.     On March 23, 2016, Ms. Elad and I met with Mathew for our fourth biweekly meeting.  In this meeting, we expressed our continued expectation that, as an HR Business Partner, she make independent judgment calls when handling investigations.  We informed Mathew that we expected her to formulate a plan at the beginning of an investigation, and to then make a recommendation to me at the end of the investigation.  We explained to her that, at this point, she was still seeking my guidance more than we expect for someone at her level.

36.     At the March 23, 2016 meeting, Ms. Elad and I also addressed the situation in which Mathew communicated to Ms. Elad that she had "partnered" with HRIS, when in fact she had not yet contacted them.  When we pointed this discrepancy out to Mathew, she did not accept responsibility for her poor time-management or her misleading communication.  Instead, Mathew blamed HRIS for not getting the data to her as quickly as she would have liked.

37.     Despite my continued counseling and coaching, Mathew's performance simply did not improve.  Rather, Mathew continued to seek my guidance more than was appropriate, failed to timely submit work, and I received negative feedback from our business clients regarding her work for them.

38.     On April 15, 2016, Ms. Elad and I met with Mathew to provide her with her 90-day review.  During this meeting, we discussed with Mathew her overall performance for the past 90 days, focusing on the three areas of focus that were identified in her 90-day action plan: attendance; time management/effective work habits; and consulting.  We informed Mathew that we felt she met expectations as to attendance; but, she failed to meet expectations as to time management/effective work habits and consulting.  We identified Mathew's failure to perform in the following areas: (1) providing detail in the work she submitted; (2) submitting accurate work product; (3) meeting deadlines; (4) timely following up when working on a project; (5) providing thorough and quality work product; and (6) contributing to the team by completing administrative tasks as needed.  We also informed her that we felt she did not meet expectations in her consulting, as exemplified by her (1) failure to push back on the business when necessary to complete her job, (2) demonstrating a lack of accountability for her own behaviors, and (3) inappropriately addressing the business clients after they provided me with negative feedback regarding her performance, by challenging the feedback the business clients provided to me.

-11-

39. We concluded our April 15, 2016 meeting by providing Mathew with some feedback we received from the business clients regarding her performance, which included the following:

- Limited interactions, but it has been better since January. I'd rather just go to someone else on the HR team to get it done right. They are always helpful and on point.
- I am getting [disciplinary actions] within 2 days. I never get it within 24 hours though, which is what I thought the expectation was.
- I enjoy working with her but notice that with difficult conversations she is timid and struggles. She asked me to sit in on a conversation and when it got difficult she said that I would take over. This wasn't my Associate and I was unprepared.
- She doesn't like making decisions without checking with her manager. She isn't confident when dealing with issues. She is scared to make decisions.
- I had to sit in on a term that [Mathew] was supposed to handle. [Mathew] got flustered and turned it back to me to handle. It's obvious that she can't handle conflict.
- She has had to ask for an extension (beyond 2 days) for a [disciplinary action].
- I'm much more comfortable and confident working with others on the HR team because they respond timely and are confident in their decision making process.
- She is very nice. Just don't ask her for anything.

Throughout this meeting, Mathew was defensive and claimed that she was getting picked on for every mistake. Rather than accept responsibility for any of her actions, she blamed me, stating that I was a bad manager. She said that I failed to check her work before sending it to Ms. Elad, did not ensure she met her deadlines, and did not help her or remind her of things enough.

40. As a result of Mathew's ongoing performance issues and her inability to improve her performance despite receiving a 90-day action plan and PIP, Ms. Elad, Stephen Shaffer (VP Human Resources Business Partners), and I decided to terminate Mathew's employment.

41. Mathew's complaints that she felt that she was being treated unfairly were not considered in the decisions made with regard to her employment, including the decision to terminate her employment. Likewise, Mathew's sex and pregnancy were not considered in the decisions made with regard to her employment, including the decision to terminate her employment. Indeed, any allegation that we considered Mathew's sex or pregnancy in our employment decisions would seem preposterous to me, as both Ms. Elad and I have been pregnant and are mothers ourselves! Furthermore, I did not

even know that Mathew was pregnant until November 2015, at which point I had already identified and had started to document her ongoing performance deficiencies.

42.     On April 19, 2016, Ms. Elad and I met with Mathew to inform her that her employment with Santander was terminated because of her ongoing performance issues.

43.     Mathew was replaced by Ms. Boyd, who had been promoted from the position of HR Generalist. Ms. Boyd has consistently met my expectations as an Employee Relations Consultant (formerly "HR Business Partner").

-13-

Docusign Envelope ID: 7C0779E9-64D8-4821-A25C-C8AD697325AB

My name is Yessica Perez.

My date of birth is    Yessica Perez
       _____.

My address is      06/05/1979
       _____

       560 lockton ln, 75078
       _____

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in ___Collin_____ County, State of Texas, on the __22__ day of August, 2024.

*Yessica Perez*
C8D64CC0CF9F480...
_____
YESSICA PEREZ

-14-

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REENA S. MATHEW, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:23-cv-01494-N |
| | § | |
| SANTANDER CONSUMER USA INC., | § | |
| | § | |
| *Defendant*. | § | |

## DECLARATION OF SABRINA BOYD

I, Sabrina Boyd, declare that the following statements are true and correct, based on my

personal knowledge:

1.    My name is Sabrina Boyd.  I am over 18 years of age, of sound mind, and have never been convicted of a felony.  I am personally acquainted with the facts stated herein based on my employment with Santander Consumer USA Inc. ("Santander"), and my review of the business records of Santander related to Reena Mathew ("Mathew"), and I affirm that the following is true and correct.

2.    I began my employment with Santander in November 2004, as a Front End Account Manager.  From 2004 until 2011, I held three roles in Santander's Servicing Department, including Front End Manager and Customer Service Manager.  In October 2011, I transitioned to Santander's Human Resources ("HR") Department, as a Training Specialist III.  In July 2013, I transitioned to the role of HR Generalist.  In May 2016, I was promoted to the role of HR Business Partner to replace Mathew.  In July 2016, my job title changed to Employee Relations Consultant.  This is the position I hold today.

3.    Santander is a consumer finance company focused on vehicle finance and third-party servicing.  Santander is headquartered in Dallas, Texas.

4.    Santander is an equal opportunity employer, committed to providing equal opportunity to all persons regardless of race, color, sex, creed, gender (including identity and expression), religion, national origin or ancestry, ethnicity, age, marital status, registered domestic partner status, sexual orientation, disability, physical or mental disability, medical condition including genetic characteristics, veteran status or any other legally-

-1-

protected basis.  *See* Santander Consumer USA Inc. Associate Handbook, 5–6 (2013) ("Associate Handbook").

5.    In addition to equal opportunity policies, Santander has an Anti-Harassment and Anti-Discrimination Policy.  *See* Associate Handbook, 10–12.  The policy prohibits unlawful discrimination or harassment of any kind. Furthermore, the policy outlines a complaint procedure for associates who feel they have experienced job-related harassment.  If an associate feels that he/she has been treated in an unlawful, discriminatory manner, he/she should promptly report the incident to his/her manager and/or Human Resources.  Managers are required to immediately report any such claims to Human Resources as well.  Human Resources then investigates the matter, takes the appropriate action if necessary, and is mindful to keep complaints confidential to the extent possible, consistent with Santander's need to conduct the investigation and take any necessary action.  If an associate feels that he/she is experiencing any job-related harassment from a member of Human Resources, he/she is instructed to go immediately to Santander's Legal Department.

6.    Santander's Anti-Harassment and Anti-Discrimination Policy also specifically states that retaliation is prohibited by Santander's policies and the law.  Associates are informed that if they think they have been retaliated against, they may file a complaint with the appropriate agency and that the nearest office can be located at www.eeoc.gov.

7.    HR Business Partners and HR Generalists would report to HR Managers. Each HR Manager reported to a Director, Human Resources.  Each Director, Human Resources reported to the VP Human Resources.  The VP Human Resources reported to the Executive VP of Human Resources.

8.    During the relevant time periods in 2015 and 2016, I worked as an HR Generalist at Santander's Lewisville location.  The HR team at the Lewisville location at that time consisted of Stephanie Elad (Director, Human Resources), Yessica Perez (HR Manager), Mathew (HR Business Partner), and myself.  Ms. Perez supervised both Mathew and me, and Ms. Elad supervised Ms. Perez.

9.    As the HR Generalist, I was responsible for the day-to-day administrative tasks in the HR department.  I was also given the opportunity to expand my work and did some work that would be more typically associated with Mathew's role as the HR Business Partner.  For example, I would draft disciplinary actions, have conversations with business leaders about their HR concerns, and offer recommendations on how to handle HR related issues.

APP016

10.     My desk at that time was at a cubicle in the HR office at Santander's Lewisville location.  Mathew's office was approximately 10 steps further into the HR office past my cubicle.

11.     I was not always aware of what Mathew did on a daily basis, as we each had our own responsibilities.  Of course, Mathew and I would speak frequently about work and our personal lives.

12.     Sometime in late 2015, Mathew shared with the department that she was pregnant. From my perspective, everyone in the office, including Ms. Elad and Ms. Perez, was very happy for Mathew and her pregnancy.  I never saw anyone discriminate against Mathew or otherwise treat her poorly because of her pregnancy.  To the contrary, Ms. Perez and I planned to throw Mathew a baby shower.  We never had the opportunity to throw the shower because Mathew's employment with Santander ended.

13.     Mathew never complained to me about being mistreated at Santander.  She never told me that she felt she was being treated differently because of her pregnancy.

14.     I understand that Mathew testified that I was "coasting."  But, that is not true.  In reality, Mathew often asked me to handle tasks that had been assigned to her, including asking me to prepare disciplinary actions that had been assigned to her and/or entering disciplinary actions into the system. For example, on November 20, 2015, Mathew asked me, at the end of the workday, to follow up with a business partner who had reached out to her that morning to prepare a disciplinary action.  *See* e-mail message from Mathew to me on November 20, 2015.

15.     I appreciate working in a team environment, which is one of the reasons I like HR so much.  With that, I am happy to take on additional tasks as a willing team player.  But, the way in which Mathew asked me to handle tasks that had been assigned to her, and the frequency of those requests, made me feel like she regarded me as her assistant, and not her teammate. There seemed to be disconnect between Ms. Perez's instructions that we all help each other out on drafting and entering disciplinary actions, and Mathew's perspective that drafting and entering disciplinary actions was beneath her.

16.     I was pregnant and had a child while working at Santander, albeit several years prior to Mathew's pregnancy.  I never felt as though anyone at Santander treated me poorly or discriminated against me because of my pregnancy.

17.    Multiple other women within the Human Resources department were pregnant at or around the time that Mathew was pregnant in 2016.  Based on what I have personally observed over the past 20 years at Santander, I have never witnessed anyone in Santander's HR department or elsewhere being mistreated because of her pregnancy.  To the contrary, based on my personal experience being pregnant at Santander and my observations of how other pregnant employees have been treated, I have nothing but positive things to say about how I and those other expecting mothers were treated by Santander, both during and after our pregnancies.

18.    Each of the documents included in Defendant's Appendix in Support of Its Motion for Summary Judgments, pages APP063–APP278, were made and kept in the regular course of Santander's business.  It was the regular practice of Santander to make each record.  Each record was made at or near the time of the event it records.  Each record was made by, or from information transmitted by, a person with knowledge acting in the regular course of Santander's business.

Docusign Envelope ID: 9636B72F-5FFB-4A0C-BB5B-DF2426EC4EE9

My name is Sabrina Boyd.

My date of birth is       March 11, 1980.

My address is             3125 Dawn Oaks Drive.

                          Denton, Texas 76208.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in _Denton_____ County, State of Texas, on the __22__ day of August, 2024.

Signed by:

*Sabrina Boyd*
F023D26C561A49F...
SABRINA BOYD

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **REENA S. MATHEW,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| V. | § | **CIVIL ACTION NO. 3:23-cv-01494-N** |
| | § | |
| **SANTANDER CONSUMER USA INC.,** | § | |
| | § | |
| *Defendant*. | § | |

## DECLARATION OF STEPHANIE ELAD

I, Stephanie Elad, declare that the following statements are true and correct, based on my

personal knowledge:

1.  My name is Stephanie Elad.  I am over 18 years of age, of sound mind, and have never been convicted of a felony.  I am personally acquainted with the facts stated herein and I affirm the following is true and correct.

2.  From October 2014 until March 2019, I was employed by Santander Consumer USA Inc. ("Santander") as Director, Human Resources.  As Director, Human Resources, I was responsible for Human Resources ("HR") related risk management and compliance processes for Santander.  In this role, I advised Santander's HR professionals and senior business leaders regarding employment policies and processes.  I was also responsible for developing and managing HR strategies, programs, systems, policies and processes.  Additionally, I was involved in escalated employee relations issues and reductions in force.

3.  HR Business Partners and HR Generalists would report to HR Managers. Each HR Manager reported to a Director, Human Resources, which was my role.   Each Director, Human Resources reported to the VP Human Resources.  The VP Human Resources reported to the Executive VP of Human Resources.

4.  Reena Mathew ("Mathew") worked as an HR Business Partner in Santander's HR department at the Lewisville office.  In this role, Mathew was responsible for, among other things, managing employee relations issues, processing employee disciplinary actions, and conducting investigations into employee conduct as necessary.

-1-

APP020

5.     During the relevant time periods, Mathew reported to HR Manager Angelina Hullum then to HR Manager Yessica Perez.  Ms. Perez then reported to me, Director, Human Resources.  I then reported to Stephen Shaffer, VP Human Resources.  Mr. Shaffer then reported to Pam Blackburn, Executive VP of Human Resources.

6.     In January 2015, I learned that Mathew did not process a termination timely. As this had been an ongoing issue, Jessica Gleason, another Santander Director, Human Resources, and I made the decision to have Melissa Lawson, an HR Generalist, process all terminations going forward.  I advised Mathew's supervisor, Ms. Hullum, of this and suggested that she have a conversation with Mathew about this.  *See* e-mail message exchange between Ms. Hullum and me on January 22, 2015.

7.     In August 2015, I received a call from Scott Dieckmann (SVP Loan Servicing, Consumer Lending), because Mathew sent one of his associates an e-mail message requesting that she acknowledge her receipt and understanding of Santander's Security Policy.  Mr. Dieckmann was upset because Mathew's request was interpreted by the business and associate as if the associate had done something wrong.  In reality, the issue was related to a gap in Santander's processes.  I coached Mathew on this and stated that you have to think critically to evaluate situations and not blindly follow process.  I had to go over this several times with Mathew.

8.     In September 2015, Ms. Perez took over as HR Manager for Santander office in Lewisville, Texas.

9.     I was aware that Ms. Perez had concerns about Mathew's performance and productivity and that she met with Mathew to discuss these deficiencies. On September 25, 2015, I asked Ms. Perez if we could discuss how her meeting with Mathew went.  *See* e-mail message exchange between Ms. Perez and me on September 25, 2015.

10.    On November 2, 2015, I coached Mathew and Sabrina Boyd, an HR Generalist, on the way they were handling an employee's bereavement request.  I found that they spent an excessive amount of time researching this employee and trying to determine if the documentation submitted was valid.  I was concerned that their time could have been better spent on more productive matters.  I advised Ms. Perez of the discussion I had with Mathew and Ms. Boyd so that we could discuss how to quickly address this issue.  *See* e-mail message from me to Ms. Perez on November 2, 2015.

-2-

11.    While she kept me apprised of her ongoing concerns with Mathew's performance, in November 2015, Ms. Perez asked me to assist in formally addressing Mathew's poor performance.  Ms. Perez also forwarded an instant message she received from Mathew stating that Mathew was overwhelmed by the number of compliance e-mail messages she had to complete.  I expressed to Ms. Perez that I did not believe compliance e-mail messages should take very long.  *See* e-mail message exchange between Ms. Perez and me on November 24, 2015.

12.    On November 24, 2015, I presented my concerns about Mathew's ongoing performance deficiencies and recommended to Ms. Blackburn that we begin discussing Mathew's separation from Santander.  *See* e-mail message from me to Ms. Blackburn on November 24, 2015.

13.    On December 3, 2015, I met with Mathew, at her request.  In this meeting, Mathew expressed her concerns about the Performance Improvement Plan and was adamant that she was never coached.  I explained to Mathew that Ms. Perez, Ms. Hullum and I had each coached her on several different occasions.  During this meeting, Mathew assumed no responsibility for her performance deficiencies and was wholly unreceptive to the feedback being given.  I explained my observation to Mathew and stated that her behavior in this meeting is consistent with Ms. Perez and Ms. Hullum's struggles in coaching her.  *See* my December 10, 2015, notes from the December 3, 2015, meeting.

14.    In early December 2015, I asked Ms. Hullum to provide her notes regarding the performance discussions she had with Mathew.  *See* December 10, 2015, e-mail message from Ms. Hullum to me attaching her notes regarding Mathew's performance.

15.    On December 22, 2015, I received an e-mail message from Ms. Hullum recapping a situation where an AVP approached her in the Lewisville office regarding Mathew.  The AVP advised Ms. Hullum that Mathew approached them and asked why the AVP "told on her."  After speaking with Ms. Hullum and Ms. Perez on this situation, I forwarded this recap to Mr. Shaffer so that he was aware of the situation.  *See* e-mail message exchange between Mr. Shaffer and me on December 22, 2015.

APP022

16.     In late December 2015, Mr. Shaffer requested to meet with Ms. Perez, Ms. Hullum and me to discuss his findings with regard to his investigation of Mathew's claims.  I requested that Mr. Shaffer and I discuss his findings privately, before bringing Ms. Perez and Ms. Hullum into the conversation. I felt that I would feel more comfortable sharing my thoughts to Mr. Shaffer outside the presence of my direct reports.  I advised Ms. Blackburn of this, and she agreed with my approach.  Ms. Blackburn also let me know that she and Mr. Shaffer had already discussed his findings and ultimately agreed on the appropriate approach to take.  *See* e-mail message from Ms. Blackburn to me on December 31, 2015.

17.     On January 15, 2016, Ms. Perez and I met with Mathew to place her on a PIP and to provide her with a 90-day action plan.  In this PIP, we identified performance standards for her job, along with a description of how her performance to date had failed to meet those standards.  The 90-day action plan indicated three areas of focus: attendance; time management/effective work habits; and consulting.  We then provided her with tasks associated with each of these areas of focus, along with a description of any support or resources that were available to assist her in making the necessary improvements to her performance.  For example, we offered to provide Mathew with additional training on a number of topics and asked her to request the training by February 5, 2016.  Additionally, in light of Mathew's continual complaints that her workload was too heavy for her to handle, we reassigned the work associated with Santander's 8585 location to another member of the team.  Finally, we informed Mathew that she would have biweekly reviews with Ms. Perez to discuss her performance in each of the areas of focus.  *See* Mathew's PIP and 90-day action plan.

18.     On January 18, 2016, Ms. Perez sent me an e-mail message summarizing our January 15, 2016, meeting with Mathew.  I felt that Ms. Perez accurately captured the meeting, and I sent Ms. Perez a few additional points to include.  *See* e-mail message exchange between Ms. Perez and me on January 18, 2016.

19.     On February 19, 2016, Mathew sent me an e-mail message complaining that Ms. Perez was unhappy with Mathew's recap of their meeting due to its lack of detail and accuracy.  I informed Mathew that I had the same reaction to Mathew's recap that Ms. Perez had, and that the recap did not meet expectations.  I reminded Mathew that the whole purpose of Mathew sending these meeting recaps is to ensure she is understanding the direction and feedback we are providing.  *See* e-mail message exchange between Mathew and me on February 19, 2016.

20.     After receiving feedback from Mathew that the weekly time study task assigned to her was "insulting" and not a good use of time, I made the decision to make the time study optional.  However, I still believed that the

-4-

time study was a valuable exercise that could assist Mathew in identifying where her time was being spent.  *See* e-mail message from me to Mathew and Ms. Perez on February 23, 2016.

21.     In March 2016, Mathew represented that she was "partnering with HRIS to assist but wanted to give [me] a status update before [she] left."  This was not true.  Mathew did not reach out to the HRIS team until after I informed her that we need the information sooner.  *See* e-mail message from me to Holly Hanes forwarding the e-mail message exchange between Mathew and me in March 2016.

22.     As a result of Mathew's ongoing performance issues and her inability to improve her performance despite receiving a 90-day action plan and PIP, Ms. Perez, Mr. Shaffer, and I decided to terminate Mathew's employment.  *See* e-mail message exchange between Mr. Shaffer and me on April 14, 2016.

23.     On April 15, 2016, Ms. Perez and I met with Mathew to provide her with her 90-day review.  During this meeting, we discussed with Mathew her overall performance for the past 90 days, focusing on the three areas of focus that were identified in her 90-day action plan: attendance; time management/effective work habits; and consulting.  We informed Mathew that we felt she met expectations as to attendance; but, she failed to meet expectations as to time management/effective work habits and consulting.  We identified Mathew's failure to perform in the following areas: (1) providing detail in the work she submitted; (2) submitting accurate work product; (3) meeting deadlines; (4) timely following up when working on a project; (5) providing thorough and quality work product; and (6) contributing to the team by completing administrative tasks as needed.  We also informed her that we felt she did not meet expectations in her consulting, as exemplified by her (1) failure to push back on the business when necessary to complete her job, (2) demonstrating a lack of accountability for her own behaviors, and (3) inappropriately addressing the business clients after they provided Ms. Perez with negative feedback regarding her performance, by challenging the feedback the business clients provided to Ms. Perez.  *See* Mathew's 90 Day Review.

APP024

24.     We concluded our April 15, 2016, meeting by providing Mathew with some
feedback we received from the business clients regarding her performance,
which included the following:

- "Limited interactions, but it has been better since January.
  I'd rather just go to someone else on the HR team to get it
  done right.  They are always helpful and on point."

- "I am getting [disciplinary actions] within 2 days.  I never
  get it within 24 hours though, which is what I thought the
  expectation was."

- "I enjoy working with her but notice that with difficult
  conversations she is timid and struggles.  She asked me to sit
  in on a conversation and when it got difficult she said that I
  would take over.  This wasn't my Associate and I was
  unprepared."

- "She doesn't like making decisions without checking with
  her manager.  She isn't confident when dealing with issues.
  She is scared to make decisions."

- "I had to sit in on a term that [Mathew] was supposed to
  handle.  [Mathew] got flustered and turned it back to me to
  handle.  It's obvious that she can't handle conflict."

- "She has had to ask for an extension (beyond 2 days) for a
  [disciplinary action]."

- "I'm much more comfortable and confident working with
  others on the HR team because they respond timely and are
  confident in their decision making process."

- "She is very nice.  Just don't ask her for anything."

Throughout this meeting, Mathew was defensive and claimed that she was
getting picked on for every mistake.  Rather than accept responsibility for
any of her actions, Mathew blamed Ms. Perez, stating that Ms. Perez was a
bad manager.  Mathew said that Ms. Perez failed to check her work before
sending it to me, did not ensure she met her deadlines, and did not help her
or remind her of things enough.

-6-

APP025

25. Mathew's complaints that she felt that she was being treated unfairly were not considered in the decisions made with regard to her employment, including the decision to terminate her employment.  Likewise, Mathew's sex and pregnancy were not considered in the decisions made with regard to her employment, including the decision to terminate her employment.  Indeed, Mathew's allegation that we considered her sex or pregnancy in our employment decisions seems preposterous to me, as both Ms. Perez and I have been pregnant and are mothers ourselves.

26. On April 19, 2016, Ms. Perez and I met with Mathew to inform her that her employment with Santander was terminated because of her ongoing performance issues.

-7-

My name is Stephanie Elad.

My date of birth is          _____.

My address is              _____

                          _____

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in _____ County, State of Texas, on the _____ day of August, 2024.


                                    _____
                                    STEPHANIE ELAD

APP027

Docusign Envelope ID: 5A27E5AE-9844-419D-9B7A-220497D94DFA

My name is Stephanie Elad.

My date of birth is ___July 5, 1970___.

My address is ___15251 Camden Lane___

___Frisco, TX 75035___

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in __Collin__ County, State of Texas, on the __22__ day of August, 2024.

Signed by:

*Stephanie Elad*

D99B25A1E8954E4...

STEPHANIE ELAD

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REENA S. MATHEW, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:23-cv-01494-N |
| | § | |
| SANTANDER CONSUMER USA INC., | § | |
| | § | |
| *Defendant*. | § | |

## <u>DECLARATION OF TINA MOHAN</u>

I, Tina Mohan, declare that the following statements are true and correct, based on my personal knowledge:

1. My name is Tina Mohan.  I am over 18 years of age, of sound mind, and have never been convicted of a felony.  I am personally acquainted with the facts stated herein and I affirm that the following is true and correct.

2. I have been a Human Resources professional for over 20 years and have served in this capacity.  I am currently employed as a Senior Human Resources Generalist at Texas A&M University.  From June 2013 until July 2016, I was employed at Santander Consumer USA Inc. ("Santander") as a Human Resources Business Partner in the Talent Management department.

3. In late 2015, I learned that I was pregnant.  I was due to have my child in July 2016.  Early in my pregnancy, I informed my colleagues at Santander that I was pregnant.  My colleagues in the Talent Management department treated me with kindness and compassion during my pregnancy.  In any instance when I was not feeling well or had a doctor's appointment, my team was very accommodating and supported me.  There were times during my pregnancy when I felt stress from my job.  The stress was due to the pressure associated with the HR position itself, and not from any of my colleagues.  The work I was assigned at Santander, both before and during my pregnancy, was a fair amount based on my qualifications and experience.

-1-

4.      After my baby was born, Santander continued to be very accommodating and compassionate toward me and my needs.  My son was born approximately three months premature, and I could not be happier with how I was treated by Santander during that stressful time.

5.      I met Reena Mathew when we worked together in Santander's Human Resources department.  Reena and I had much in common.  We were pregnant at Santander at the same time.  I still consider Reena a friend.

6.      I worked under Yessica Perez, Human Resources Manager, for a brief period of time at Santander.  Yessica is one of the best people I have ever worked with, and given the opportunity, I would love to work with her again.  I found Yessica to be a strong HR professional who is kind, passionate, and cares for the growth of those she supervises—both professionally and personally.

7.      I understand that Reena is claiming that Yessica discriminated against her because of her pregnancy and/or retaliated against her because she complained about pregnancy discrimination.  I was not involved in conversations between Reena and Yessica, so I cannot say what was discussed between them.  But, I can say that the idea that Yessica would discriminate against someone because of her pregnancy or retaliate against her because she complained about pregnancy discrimination is not in alignment with my experiences with Yessica.

8.      When I was pregnant at Santander, Steve Schaeffer was VP Human Resources Business Partner.  My last boss at Santander, Jonathan Morse, as well as Yessica reported to a Director, Human Resources, who reported to Steve.  I found Steve to be a strong HR professional who is kind and understanding.  Steve was compassionate and kind to me when we remained in communication after I went out on leave during my difficult pregnancy.

9.      I ultimately made the decision to resign from Santander after having my son, so that I could stay home and care for his needs.  My decision to resign was based solely on my son and family's needs at the time.

10.     Multiple other women within the Talent Management department were pregnant during my employment with Santander.  Based on what I personally observed, I never witnessed any of those women being mistreated because of her pregnancy.  To the contrary, based on my personal experience being pregnant at Santander, I have nothing but positive things to say about how I was treated by Santander, both during and after my pregnancy.

Docusign Envelope ID: 76E14A19-5574-430D-A7F1-826660DDFD9E

My name is Tina Mohan.

My date of birth is    November 8, 1981.

My address is       7010 Statford Drive

                Rowlett, Texas 75089, USA

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in Dallas County, State of Texas, on the $\underset{\text{22}}{\underline{\hspace{1.5cm}}}$ day of August, 2024.

TINA MOHAN

## DECLARATION OF FATMA RIZVAN

I, Fatma Rizvan, declare that the following statements are true and correct, based on my personal knowledge:

1. My name is Fatma Rizvan.  I am over 18 years of age, of sound mind, and have never been convicted of a felony.  I am personally acquainted with the facts stated herein based on my employment with Santander Consumer USA Inc. ("Santander") and I affirm that the following is true and correct.

2. From October 2014 until July 2017, I was employed at Santander as a Human Resources Generalist in the Talent Management department.

3. In 2016, I learned that I was pregnant.  Early in my pregnancy, I informed my colleagues at Santander that I was pregnant.  My colleagues in the Talent Management department treated me with kindness and compassion during my pregnancy.  In any instance when I was not feeling well or had a doctor's appointment, my team was very accommodating and supported me.

4. After my baby was born, Santander continued to be very accommodating and compassionate toward me and my needs.  After taking maternity leave, I returned to work at Santander.

5. I ultimately made the decision to resign from Santander in 2017, solely because I had found a position with a company that was closer to my house.  My decision to resign from Santander was based solely on my commute and family's needs at the time.

6. Multiple other women within the Talent Management department were pregnant at or around the time that I was pregnant.  Based on what I personally observed, I never witnessed any of those women being mistreated because of her pregnancy.  To the contrary, based on my personal experience being pregnant at Santander, I have nothing but positive things to say about how I was treated by Santander, both during and after my pregnancy.

SC000165
APP032

My name is Fatma Rizvan.

My date of birth is ___12/12/1990___.

My address is        537 Seminole Trail

                     Murphy, Texas 75094 USA

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in Collin County, State of Texas, on the __2__ day of March, 2022.

*Fatma Rizvan*
<span style="font-size:small;">Fatma Rizvan (Mar 2, 2022 07:55 CST)</span>
_____
FATMA RIZVAN

SC000166
APP033

## <u>DECLARATION OF NICOLE PRIOR</u>

I, Nicole Prior, declare that the following statements are true and correct, based on my personal knowledge:

1.      My name is Nicole Prior.  I am over 18 years of age, of sound mind, and have never been convicted of a felony.  I am personally acquainted with the facts stated herein based on my employment with Santander Consumer USA Inc. ("Santander") and I affirm that the following is true and correct.

2.      I began working for Santander in 2012 as a Recruiting Coordinator.  In October 2016, I moved into the Human Resources department as a Human Resources Business Partner ("HRBP").  I remain in a similar role now, although the name of the position has changed overtime.

3.      In late 2016, I learned that I was pregnant.  I was working as an HRBP at the time.  I shared that I was pregnant with my colleagues at Santander in approximately November 2016.

4.      All of my colleagues at Santander were wonderful, celebrated my pregnancy with me, and treated me very well during my pregnancy.  My supervisor was very supportive and flexible when I needed to be out of the office due to my pregnancy.

5.      After my baby was born, Santander continued to be very accommodating and compassionate toward me and my needs.  I returned to my position in the Human Resources department after taking maternity leave.

6.      In late 2018, I learned that I was pregnant with my second child.  I shared that I was pregnant with my colleagues at Santander.  My colleagues and supervisor were, just as they were with my first pregnancy, very accommodating and wonderful.

7.      Based on my positive experiences working at Santander while pregnant and after returning from my first maternity leave, I returned to work at Santander after taking my second maternity leave.  I continue to work at Santander now, while mothering two young children.

8.      Multiple other women within the Human Resources department were pregnant at or around the time that I was pregnant in 2016 and 2017.  Based on what I have personally observed over the past decade, I have never witnessed anyone at Santander being mistreated because of her pregnancy.  To the contrary, based on my personal experience being pregnant at Santander, I have nothing but positive things to say about how I was treated by Santander, both during and after my pregnancy.

-1-

SC000210
**APP034**

My name is Nicole Prior.

My date of birth is      March 11, 1983.

My address is      7901 Trixie Trail Drive.

McKinney, Texas 75070.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in ___Dallas___ County, State of Texas, on the _7_ day of March, 2022.

*Nicole Prior*
Nicole Prior (Mar 7, 2022 08:53 CST)
_____
NICOLE PRIOR

-2-

SC000211
**APP035**

# Nicole Prior Declaration

Final Audit Report                                                         2022-03-07

| | |
|---|---|
| Created: | 2022-03-04 |
| By: | Ceicili DiMarco (cdimarco@hallettperrin.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAKvHBXnPWWAGpSeH6jhrOaAFdVGPb031t |

## "Nicole Prior Declaration" History

Document created by Ceicili DiMarco (cdimarco@hallettperrin.com)
2022-03-04 - 9:18:55 PM GMT- IP address: 67.78.115.106

Document emailed to Nicole Prior (nprior@santanderconsumerusa.com) for signature
2022-03-04 - 9:19:52 PM GMT

Email viewed by Nicole Prior (nprior@santanderconsumerusa.com)
2022-03-07 - 2:52:57 PM GMT- IP address: 97.107.126.36

Document e-signed by Nicole Prior (nprior@santanderconsumerusa.com)
Signature Date: 2022-03-07 - 2:53:36 PM GMT - Time Source: server- IP address: 97.107.126.36

Agreement completed.
2022-03-07 - 2:53:36 PM GMT

 Adobe Sign

## <u>DECLARATION OF CHRISTINA STOUT</u>

I, Christina Stout, declare that the following statements are true and correct, based on my personal knowledge:

1.  My name is Christina Stout.  I am over 18 years of age, of sound mind, and have never been convicted of a felony.  I am personally acquainted with the facts stated herein based on my employment with Santander Consumer USA Inc. ("Santander") and I affirm that the following is true and correct.

2.  I began working for Santander in 2013 as a Human Resources ("HR") Clerk. Over the past several years, I have been promoted to other roles within the HR department, including Document Specialist, and Senior Specialist Immigration and Mobility, the latter of which is the position I hold today.

3.  In late 2015, I learned that I was pregnant.  I shared that I was pregnant with my colleagues at Santander shortly after I learned that I was pregnant.

4.  I had numerous complications throughout my pregnancy, one of which resulted in me spending several days in the hospital.  My colleagues at Santander were amazing and very supportive.  My supervisor made it possible for me to work from home when I needed to do so due to my pregnancy-related complications.

5.  After my baby was born, Santander continued to be very accommodating and compassionate toward me and my needs.  I returned to my position in the Human Resources department after taking maternity leave.  As a mother of a small child, I have, of course, had days that I have had to take unexpected absences to care for my child's needs.  I have never felt uncomfortable asking about taking time off to care for my child.  To the contrary, I feel everyone at Santander has always been very kind and accommodating of my needs.

6.  Multiple other women within the Human Resources department were pregnant at or around the time that I was pregnant in 2016.  Based on what I have personally observed over the past decade, I have never witnessed anyone at Santander being mistreated because of her pregnancy.  To the contrary, based on my personal experience being pregnant at Santander, I have nothing but positive things to say about how I was treated by Santander, both during and after my pregnancy.

-1-

SC000203
**APP037**

My name is Christina Stout.

My date of birth is January 31, 1989.

My address is  5601 Andalusia Trail, Arlington, Texas 76017.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in ___Tarrant___ County, State of Texas, on the _7th_ day of March, 2022.

*Christina Stout*
Christina Stout (Mar 7, 2022 15:12 CST)
_____
CHRISTINA STOUT

-2-

SC000204
**APP038**

# Christina Stout Declaration

**Final Audit Report**                                                          2022-03-07

| | |
|---|---|
| Created: | 2022-03-07 |
| By: | Ceicili DiMarco (cdimarco@hallettperrin.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAJZTybEVs0gL1YZlZgqnbY7uZmVvV1lEa |

## "Christina Stout Declaration" History

📄 Document created by Ceicili DiMarco (cdimarco@hallettperrin.com)
   2022-03-07 - 6:06:05 PM GMT- IP address: 67.78.115.106

📧 Document emailed to Christina Stout (cstout@santanderconsumerusa.com) for signature
   2022-03-07 - 6:06:25 PM GMT

📄 Email viewed by Christina Stout (cstout@santanderconsumerusa.com)
   2022-03-07 - 6:07:11 PM GMT- IP address: 97.107.126.36

✒ Document e-signed by Christina Stout (cstout@santanderconsumerusa.com)
   Signature Date: 2022-03-07 - 9:12:46 PM GMT - Time Source: server- IP address: 97.107.126.36

✅ Agreement completed.
   2022-03-07 - 9:12:46 PM GMT

 Adobe Sign

## DECLARATION OF WHITNEY ANDRES

I, Whitney Andres, declare that the following statements are true and correct, based on my personal knowledge:

1. My name is Whitney Andres. I am over 18 years of age, of sound mind, and have never been convicted of a felony. I am personally acquainted with the facts stated herein based on my employment with Santander Consumer USA Inc. ("Santander") and I affirm that the following is true and correct.

2. I began working for Santander in May 2013 as a HR Generalist in the Human Resources department. I have worked for Santander for nearly nine years. In addition to the HR Generalist role, I have also worked as a Human Resources Business Partner ("HRBP") and as an Employee Relations Consultant.

3. In February 2016, I learned that I was pregnant. I was working as an HRBP at the time. I shared that I was pregnant with my colleagues at Santander, all of whom treated me with kindness and compassion during my pregnancy. In any instance when I was not feeling well or had a doctor's appointment, my team was very accommodating and supported me.

4. My supervisors in 2016 were Angelina Hullum and Kristen Lagunes. Both Angelina and Kristen were very supportive of me through-out my pregnancy.

5. After my baby was born, Santander continued to be very accommodating and compassionate toward me and my needs. I returned to my position in the Human Resources department after taking maternity leave. I continue, to this day, to work in Santander's Human Resources department.

6. Multiple other women within the Human Resources department were pregnant at or around the time that I was pregnant. Based on what I have personally observed over the nearly past nine years, I have never witnessed anyone at Santander being mistreated because of her pregnancy. To the contrary, based on my personal experience being pregnant at Santander, I have nothing but positive things to say about how I was treated by Santander, both during and after my pregnancy.

SC000167
APP040

My name is Whitney Andres.

My date of birth is ___07/24/1986___.

My address is ___154  Oak Grove Dr___

___Rhome, TX 76078___.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in ___Wise___ County, State of Texas, on the ___7th___ day of March, 2022.

_Whitney Andres_
Whitney Andres (Mar 7, 2022 11:27 CST)
_____
WHITNEY ANDRES

-2-

# Whitney Andres Declaration

**Final Audit Report** 2022-03-07

| | |
|---|---|
| Created: | 2022-03-04 |
| By: | Ceicili DiMarco (cdimarco@hallettperrin.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA8z3Oq6UKB9SGm9Y7ypGCGTBglWjuJERo |

## "Whitney Andres Declaration" History

📄 Document created by Ceicili DiMarco (cdimarco@hallettperrin.com)
2022-03-04 - 9:47:56 PM GMT- IP address: 67.78.115.106

📧 Document emailed to Whitney Andres (wandres@santanderconsumerusa.com) for signature
2022-03-04 - 9:48:27 PM GMT

📄 Email viewed by Whitney Andres (wandres@santanderconsumerusa.com)
2022-03-07 - 5:25:49 PM GMT- IP address: 97.107.126.36

🖊 Document e-signed by Whitney Andres (wandres@santanderconsumerusa.com)
Signature Date: 2022-03-07 - 5:27:21 PM GMT - Time Source: server- IP address: 97.107.126.36

✅ Agreement completed.
2022-03-07 - 5:27:21 PM GMT

 Adobe Sign

ORAL AND VIDEOTAPED DEPOSITION OF REENA MATHEW

## Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

REENA S. MATHEW,    )
    )
    Plaintiff,    )
    )
VS.    ) CIVIL ACTION
    )
SANTANDER CONSUMER USA    ) NO. 3:23-CV-01494-N
INC.,    )
    )
    Defendant.    )
    )

-----------------------------------

ORAL AND VIDEOTAPED DEPOSITION OF
REENA S. MATHEW
AUGUST 8, 2024

-----------------------------------

ORAL AND VIDEOTAPED DEPOSITION OF REENA S. MATHER
produced as a witness at the instance of the Defendant,
and duly sworn, was taken in the above-styled and
numbered cause on August 8, 2024, from 9:36 a.m. to 5:48
p.m., before Nita G. Cullen, CSR in and for the State of
Texas, reported by machine shorthand, at the law offices
of Hallett & Perrin, P.C., 1445 Ross Avenue, Suite 2400,
in the City of Dallas, County of Dallas, State of Texas,
pursuant to the Federal Rules of Civil Procedure.

## Page 2

```
1        A P P E A R A N C E S
2
3   FOR THE PLAINTIFF:
4     MR. DONALD E. ULOTH
      DONALD E. ULOTH, P.C.
5     18208 Preston Road
      Suite D-9 #261
6     Dallas, Texas 75248
      214.989.4396
7     don.uloth@uloth.pro
8
9   FOR THE DEFENDANT:
10    MR. MONTE K. HURST
      HALLETT & PERRIN, P.C.
11    1445 Ross Avenue
      Suite 2400
12    Dallas, Texas 75202
      214.953.0053
13    214.922.4142 Fax
      monte.hurst@hallettperrin.com
14
15  ALSO PRESENT:
16    MR. JOSEPH McDERMOTT, VIDEOGRAPHER
      MS. CEICILI MORALES
16    MR. PHILIP MATHEW
17    MS. YESSICA PEREZ
18
19
20
21
22
23
24
25
```

## Page 3

```
1              INDEX
2                        PAGE
3   Appearances......................................... 2
4   Stipulations........................................ 5
5   REENA S. MATHEW
       Examination by Mr. Hurst......................... 5
6      Examination by Mr. Uloth.......................296
7   Signature and Changes..............................299
8   Reporter's Certificate.............................301
9
10             EXHIBITS
11  NO. DESCRIPTION                          PAGE
12  Exhibit 1    2015 Mid-Year Review (Non-Managers)....51
    Exhibit 2    LinkedIn Profile......................69
13  Exhibit 3    E-mail dated 90 Sep 2015 to Yessica
                 Adriano from Reena Mathew.............110
14  Exhibit 4    E-mail dated 18 Jan 2016 to Stephen
                 Shaffer from Reena Mathew.............119
15  Exhibit 5    Event: One on One, 2015-09-14.........133
    Exhibit 6    E-mail dated 10 Mar 2016 to Reena
16               Mathew from Yessica Adriano,
                 Subject: FW: Investigation Summary-
17               Jacqueline M. Smith...................189
    Exhibit 7    Declaration of Sabrina Boyd...........213
18  Exhibit 8    Declaration of Tina Mohan.............217
    Exhibit 9    Plaintiff's Amended Answers to
19               Defendant's First Set of
                 Interrogatories.......................223
20  Exhibit 10   Activity at a Glance..................254
    Exhibit 11   E-mail dated 05 Nov 2015 to yadriano
21               from YouEarnedIt......................258
    Exhibit 12   E-mail dated 3 Mar 2015 to Angeline
22               Hullum from Reena Mathew, Subject:
                 RE: Annette Williams..................260
23  Exhibit 13   E-mail dated 09 Apr 2015 to Angelica
24               Hullum from Reena Mathew, Subject:
                 RE: March Recap.......................263
25
```

## Page 4

```
1   Exhibit 14   E-mail dated 18 May 2015 to Angelina
                 Hullum from Reena Mathew, Subject:
2                April Recap...........................264
    Exhibit 15   E-mail dated 02 Jul 2015 to Hortensia
3                Perez from Yessica Adriano, Subject:
                 RE: Associate Cedric Phillips.........266
4   Exhibit 16   E-mail dated 12 Aug 2015 to Jeffrey
                 Wiener from Reena Mathew, Subject:
5                RE: Follow Up.........................268
    Exhibit 17   E-mail dated 02 Nov 2015 to Yessica
6                Adriano from Stephanie Elad, Subject:
                 Bereavement Documentation.............270
7   Exhibit 18   E-mail dated 24 Nov 2015 to Yessica
                 Adriano from Angeline Hullum, Subject:
8                RE: Reena and Sabrina Annual Review...272
    Exhibit 19   E-mail dated 24 Nov 2015 to Pamela
9                Blackburn from Stephanie Elad, Subject:
                 Reena Mathew - Confidential...........274
10  Exhibit 20   E-mail dated 24 Nov 2015 to Yessica
                 Adriano from Stephanie Elad, Subject:
11               RE: Reena: Workload...................275
    Exhibit 21   E-mail dated 08 Dec 2015 to Stephanie
12               Elad from Yessica Adriano, Subject:
                 FW: Reena.............................278
13  Exhibit 22   E-mail dated 08 Dec 2015 to Yessica
                 Adriano from Jeffrey Wiener, Subject:
14               Summary of HR Conversation............281
    Exhibit 23   E-mail dated 10 Dec 2015 to Stephanie
15               Elad from Yessica Adriano, Subject:
                 FW: Leave Early Requests..............283
16  Exhibit 24   E-mail dated 22 Dec 2015 to Stephanie
                 Elad from Stephen Shaffer, Subject:
17               RE: RM................................285
    Exhibit 25   E-mail dated 29 Mar 2016 to Holly
18               Hanes from Stephanie Elad, Subject:
                 FW: Attendance Recognition Program....290
19  Exhibit 26   E-mail dated 14 Apr 2016 to Stephanie
                 Elad from Stephen Shaffer, Subject:
20               RE: Reena Mathew......................293
21
22
23
24
25
```

ORAL AND VIDEOTAPED DEPOSITION OF REENA MATHEW

Page 45

1  when you were working at Santander?
2  **A. I'm sorry. Are you -- in regards to salary?**
3  Q. In other words, under the FLSA, was it
4  professional exemption?
5  **A. Professional exemption. And, I'm sorry,**
6  **Santander, I was always exempt. It was only Neiman's I**
7  **started out at non-exempt.**
8  Q. I understand.
9  **A. Okay.**
10  Q. And you have no issue with your having been
11  designated as exempt.
12  **A. No.**
13  Q. In fact, based on what you know of the
14  applicable law, that was well suited for you.
15  **A. Yes.**
16  Q. How many hours a week were you usually working
17  as an HR business partner at Santander, let's say in
18  2015?
19  **A. 2015? Roughly, I would say, gosh, between**
20  **45 -- 45 hours a week.**
21  Q. On average?
22  **A. On average, yes.**
23  Q. All at the facility.
24  **A. Yes. Correct. I do take that back. The last**
25  **year, they did work from home, I would say probably for**

Page 46

1  **the last year-and-a-half, they did do like a pilot for**
2  **work from home.**
3  Q. And you were a part of it?
4  **A. Yes.**
5  Q. So, it doesn't change your answer that you
6  believe in 2015 you worked an average of 45 hours a
7  week, but some of that was working from home.
8  **A. Correct.**
9  Q. Then, in 2016, how many hours a week do you
10  believe you were working?
11  **A. 2016? Boy. I mean, that's when Yessica was**
12  **there. They had me working like a dog. Probably, I'd**
13  **say 50. I was being pregnant, and she didn't care.**
14  MR. HURST: I'm going to object as
15  nonresponsive.
16  Q. (By Mr. Hurst) Were you working 50 hours a
17  week before you were pregnant in 2015?
18  **A. No. Like on average, 45.**
19  Q. So only after you were pregnant did you start
20  working or were you asked to work 50 hours a week?
21  **A. Yes. And they piled on the work with no**
22  **conscience.**
23  Q. Who piled on the work?
24  **A. Yessica.**
25  Q. Did anyone else pile on the work or just

Page 47

1  Yessica?
2  **A. Mainly, Jessica and Angelina.**
3  Q. Angelina piled on the work, as well?
4  **A. Not so much. Not so much. Yessica was the**
5  **main one. Angelina actually tried to work with me. She**
6  **was a great manager. It's when Yessica started all**
7  **these issues happened.**
8  Q. Okay. You weren't pregnant when you were
9  working under Angelina, correct?
10  **A. Correct.**
11  Q. So let's make sure the record's clear here.
12  Were you or were you not being asked to work 50 hours a
13  week when you were under Angelina?
14  **A. No. She was very accommodating. She's a**
15  **great -- great manager. I think she was just trying to**
16  **make a head count even. So she kind of moved a couple**
17  **of responsibilities.**
18  Q. From you?
19  **A. She added a little bit, which turned out to be**
20  **a little bit more than I wanted or could, you know,**
21  **could probably take on at the time. But she -- I think**
22  **with her it was more head count.**
23  Q. You believe she had good intentions in trying
24  to move the work around, though.
25  **A. Yes, I do.**

Page 48

1  Q. You don't think she was mistreating you or
2  anybody else and doing the best she could to move work
3  around.
4  **A. That's right.**
5  Q. I understand your testimony to be that she --
6  strike that.
7  -- that you still felt like you were
8  working a significant amount while you were still under
9  Angelina?
10  **A. Towards the end, yes. And I made her aware,**
11  **yes.**
12  Q. And her response to it was what?
13  **A. Her response was, she did make some**
14  **adjustments. You know, she made adjustments. You know,**
15  **she -- that's when I was given the -- so, I was at**
16  **Lewisville, then that's when she added the 8585 piece,**
17  **and I told her it was a lot of -- you know, it seemed to**
18  **be a lot, you know, and she did take away -- I don't**
19  **remember what part. She did take away a piece, so she**
20  **tried to work with me.**
21  Q. What did Angelina take away?
22  **A. That's the -- I don't remember exactly what.**
23  **She gave me credit cards at 8585, which was a specific**
24  **group, but then -- oh, she took away funding. And I**
25  **don't know if that was after Yessica had started, but**

ORAL AND VIDEOTAPED DEPOSITION OF REENA MATHEW

Page 49

1  funding was taken away at some point.
2      Q.  It's fair to say that you believe Lina -- as
3  you probably called her --
4      A.  Yes.
5      Q.  -- treated you well.
6      A.  Yes.  For the most part, yes.
7      Q.  So, when you say, "for the most part", when did
8  Lina not treat you well?
9      A.  When Yessica started.
10     Q.  So up until -- strike that.
11         When you say, "when Yessica started",
12  you're talking about when Yessica started to supervise
13  you.
14     A.  When she joined the company, in September of
15  2015.
16     Q.  And Lina was still involved?
17     A.  Transitioning, yes.
18     Q.  So you believed that Lina treated you well, and
19  y'all had a great relationship up until around
20  September 1st of 2015, when Yessica started.
21     A.  No.  It was still good.  You know, there were
22  probably -- you know, just like any manager/employee
23  relation, maybe a few issues here and there.  Never had
24  a coaching.  Never had a disciplinary.  In my whole
25  career, I've never had a disciplinary nothing.

Page 50

1      Q.  And when you say a disciplinary, you're talking
2  about a written disciplinary warning.
3      A.  Not even a coaching.
4      Q.  When you say, not a coaching, you're talking
5  about Lina never told you verbally that she identified
6  some challenges with regard to your work performance?
7      A.  No.  I've never.  And the only time I did was
8  during our review.  That was it.
9      Q.  I'm sorry?
10     A.  During our annual review, that was it.
11     Q.  Is when you heard Lina say, here are some
12  challenges --
13     A.  Yes.
14     Q.  -- that I would like to see you do better on.
15     A.  That's right.
16     Q.  And it wasn't just an annual review, it was
17  also a mid-year review, correct?
18     A.  Correct.  That's correct.
19     Q.  All right.  So, what challenges did Lina
20  identify during your review or -- your annual review or
21  mid-year review, if you recall?  And by the way --
22     A.  Yes.
23     Q.  -- you were under Angelina for three years,
24  right?
25     A.  Yes.

Page 51

1      Q.  Okay.  So what challenges, growth areas,
2  concerns did she communicate to you --
3      A.  Uh-huh.
4      Q.  -- at the time of your reviews, twice a year?
5      A.  Twice a year?  Typically, you know, attend
6  meetings with our business partners.  We had a project
7  that we were trying to get up and running, which was a
8  recognition type project.  Spending more time on the
9  floor, and getting additional training possibly outside
10 of work, within and outside of work, so external and
11 internal.
12         (DEPOSITION EXHIBIT 1 MARKED.)
13     Q.  (By Mr. Hurst)  I'm going to hand to you what
14 has been marked as Exhibit No. 1 to your deposition.
15         I apologize --
16     MR. MATHEW:  No, you're good.
17     MR. HURST:  Four copies of each.
18     MR. MATHEW:  I'm just -- I'm here.
19     Q.  (By Mr. Hurst)  You've seen this document
20 before, haven't you?
21     A.  Yes.
22     Q.  It's your 2015 Mid-Year Review that was done by
23 Angelina Hullum, correct?
24     A.  Correct.
25     Q.  And this was performed or conducted prior to

Page 52

1  your being supervised by Yessica.
2      A.  Correct.
3      Q.  And we don't have to go through the whole
4  thing, but I want to point out some items, and you can
5  tell me if those are the types of things that Angelina
6  would have given you guidance on.
7      A.  Uh-huh.
8      Q.  And the first is her overall comment on the
9  first page that says, "Continue to push herself to be
10 better.  Look for ways to make the LEW site more
11 efficient, train the new managers, and look for trends
12 in the GITK."  Do you see that?
13     A.  Uh-huh.
14     Q.  What's the GITK by the way?
15     A.  "Get In The Know."
16     Q.  I'm sorry?
17     A.  "Get In The Know."
18     Q.  What does that mean?
19     A.  Just get in the know as far as what the
20 business is doing and what we could do to partnership
21 and make things better.
22     Q.  Now, had she previously told you that that was
23 a growth area for you, to Get In The Know?
24     A.  It was a very new concept.  We had just talked
25 about it earlier that year, yes.

APP045

Page 81

1    A. I'm so sorry. No.
2    Q. This is funny?
3    A. Categorically, no. It's not funny, it's --
4  it's a slap in the face.
5    Q. Do you recall her visiting with you about how
6  there is a new leadership, and it requires a higher --
7  or a high level of efficiency?
8    A. No.
9    Q. Do you recall her discussing with you the box?
10   A. No.
11   Q. Do you know what the box is?
12   A. I have no clue what the box is. I would
13  actually like to know what the box is.
14   Q. The box in which you guys set your disciplinary
15  actions?
16   A. I know what that is. I don't know what this
17  means, though, in regards to the box.
18   Q. It means that everyone should be responsible
19  for making certain that they're tending to the box, not
20  just wanting Sabrina to do it.
21   A. No.
22   Q. No, she didn't discuss that with you?
23   A. No. Individually, no.
24   Q. You do agree that all of you guys would be
25  responsible for making certain that the box doesn't get

Page 82

1  stacked up.
2    A. Primarily, it was a coordinator responsibility.
3  If there was help that was needed, they would -- the
4  coordinator would ask if they could get assistance. It
5  was not a responsibility of the business partner.
6    Q. Unless the supervisor says it is, right?
7    A. But she did not.
8    Q. Okay. But you would agree that had your
9  supervisor, whoever that was, said, I need your help
10  with the box, to make certain that we're keeping it
11  down, you would honor that request, would you not?
12   A. I always honor my managers.
13   Q. Okay. So there would have been nothing wrong
14  with Yessica asking you, hey, let's make certain that
15  you are getting to the box.
16   A. If she did, but she did not.
17   Q. I understand you're denying it, but there
18  wouldn't have been anything wrong with her asking you to
19  do so, correct?
20   A. If the coordinator needed help.
21   Q. And who was Yessica reporting to?
22   A. Stephanie Elad.
23   Q. And what was her position?
24   A. HR director.
25   Q. When you worked under Angelina, who else did

Page 83

1  Angelina supervise?
2    A. Tensya Perez and Sabrina. Sabrina Boyd.
3    Q. Thank you.
4    A. Yes.
5    Q. And is that the same with Yessica, when she
6  took over, was she supervising Sabrina and Tensya?
7    A. Yes, that's correct.
8    Q. And Sabrina's position was HR generalist?
9    A. Generalist and coordinator, yes.
10   Q. Same with Tensya?
11   A. Tensya, no, she was HR generalist. I'm sorry.
12  HR business partner.
13   Q. Same level as you.
14   A. Yes. Correct.
15   Q. And was Tensya in Lewisville, as well?
16   A. She split her time between 8585 and Lewisville.
17   Q. And you and Tensya worked closely, correct?
18   A. Very close.
19   Q. And is Tensya someone for whom you have
20  respect?
21   A. Yes.
22   Q. So, as far as -- strike that.
23      So, you identified the ones who you worked
24  in Lewisville with.
25   A. Uh-huh.

Page 84

1    Q. Obviously, Tensya, Yessica and Sabrina.
2    A. Correct. And Stephanie was also there.
3    Q. Was Stephanie there full time?
4    A. Yes, correct.
5    Q. And you also collaborated and worked with other
6  members of the HR department of Santander, correct?
7    A. Yes.
8    Q. Who would those be?
9    A. Gosh. It's been a while. But North Richland
10  Hills. There was a team in North Richland Hills, then
11  Colorado, and then 8585.
12   Q. So, let's identify individuals, if you're able
13  to, please.
14   A. Okay.
15   Q. So, who at -- let's start with North Richland
16  Hills. Who did you work with or collaborate with, just
17  say in the last couple of years of your employment?
18   A. Last couple of years, there was Tina.
19   Q. Tina Mohan?
20   A. Tina Mohan. Whitney.
21   Q. Whitney Andres.
22   A. Yes. Gosh, I can't think. There was such high
23  turnover there, they were constantly losing people and
24  then hiring people, but those were the two main ones.
25   Q. At NRH?

ORAL AND VIDEOTAPED DEPOSITION OF REENA MATHEW

Page 105

1  Santander --
2      **A. Yes, I liked the position.**
3      Q. -- because the people with whom you
4  collaborated.
5      **A. Yes. Early on.**
6      Q. I'm sorry?
7      **A. Early on. Not towards -- not towards 2015 and**
8  **'16.**
9      Q. You worked there for five-and-a-half years,
10  correct?
11      **A. Yes.**
12      Q. When you say, "early on", what does that mean,
13  first five years, first five months?
14      **A. Early on would be --**
15          MR. ULOTH: Try to wait and not talk over
16  each other.
17      **A. Early on would be prior to -- when everything**
18  **started happening, it was when I received that first**
19  **PIP.**
20      Q. December 1st. So up until what, five months
21  before your termination, you actually thought the people
22  at Santander with whom you had been working were good
23  people, true or not true?
24      **A. No.**
25      Q. Okay. When did you start feeling like these

Page 106

1  were not good people?
2      **A. "Good" is very subjective. I can't tell you**
3  **whether a person is good or not.**
4      Q. I'm using your term. Did you not say, "good
5  people"?
6      **A. Meaning the business. I liked working with the**
7  **business.**
8      Q. Okay. Do you have any criticisms of anybody on
9  the business side with whom you worked?
10      **A. On the business side? I got along with**
11  **everyone. No.**
12      Q. There was not one person on the business side
13  who you believe said something dishonest or mistreated
14  you in any way.
15      **A. Up until Yessica started speaking to people,**
16  **no.**
17      Q. And that was what -- when did Yessica start
18  speaking to people on the business side?
19      **A. After the PIP.**
20      Q. After December 1st.
21      **A. Meaning, because I had never received any type**
22  **of negative feedback prior to the PIP she gave me.**
23      Q. Okay. So, is your testimony then, you felt
24  like you worked with nothing but good people, both in
25  the HR department, as well as the business side of

Page 107

1  things, until December 1st, 2015?
2      **A. I wouldn't -- I disagree with the word "good".**
3  **Did we get the work done? Yes.**
4      Q. Did you enjoy working with people up until
5  December 1st, 2015? I'm talking about the HR
6  department --
7      **A. I wouldn't say "enjoy" or "good". I don't want**
8  **those to be part of my verbiage. I mean, did I get --**
9  **we get work done? Yes.**
10      Q. Did you enjoy your job at Santander, yes or no?
11      **A. Until -- like overall?**
12      Q. Yeah. Overall.
13      **A. Or for a specific -- like until date?**
14      Q. Did you enjoy your job at Santander until at
15  some point you didn't?
16      **A. For the most part, yes.**
17      Q. Okay. That's what I'm asking you.
18      **A. Yes.**
19      Q. When did you stop enjoying your job at
20  Santander?
21      **A. Well, I would say the main -- I mean, there**
22  **were little things here and there after Yessica started,**
23  **and then the PIP was probably the big -- probably the**
24  **big catalyst.**
25      Q. Did you have an issue working with anybody

Page 108

1  prior to December 1st, 2015?
2      **A. No. Okay. But I don't want that on record as**
3  **far as not Yessica, not Stephanie. Like I said, there**
4  **were little things that I started to observe and**
5  **behaviors.**
6      Q. In Yessica or Stephanie or both?
7      **A. Both.**
8      Q. Okay. So, there were little things that you
9  started seeing in Yessica and Stephanie when, sometime
10  between September 1st and December 1st, 2015?
11      **A. After I had let Yessica know I was pregnant.**
12      Q. So you didn't have any issue with Yessica, from
13  September 1st until the time you told her you were
14  pregnant.
15      **A. We got the work done.**
16      Q. I didn't ask you that.
17      **A. Any issues? What was your question, sir?**
18      Q. Did you think she was a good manager between
19  the time that you started working under her,
20  September 1st, and the time that you told her that you
21  were pregnant, which I believe was what, October 30 or
22  November 1st?
23      **A. Yes, October 30. I wouldn't say good. Like I**
24  **said, the consensus was people thought she was**
25  **incompetent.**

ORAL AND VIDEOTAPED DEPOSITION OF REENA MATHEW

Page 145

1  up.
2      A. Categorically made up, yes.
3      Q. Okay.  What else?  Anything else you can think
4  of?
5      A. There were a couple of conversations I notice
6  in the Bates documents.  The latest one was, I couldn't
7  believe she said toward the end, in May, that I was
8  anemic, completely made up, and I even told my husband
9  that evening, I said, look at this, this lady made this
10  up.  I never had this conversation with her.  And that
11  to me says, you know, I'm dealing with someone more than
12  just -- this is like pathological.
13      Q. Let me shift gears for a moment.  In your
14  complaint, you claim that in July of 2015, you were
15  assigned to provide HR support at a second office,
16  right?
17      A. Yes.
18      Q. And are you referring to 8585?
19      A. Yes.
20      Q. With the credit team?
21      A. Yes.
22      Q. And you were assigned by Angelina --
23      A. Uh-huh.
24      Q. -- to go there once a week.
25      A. Yes.

Page 146

1      Q. Do you -- was it a particular day of the week?
2      A. I don't recall.
3      Q. Okay.  Was anyone else besides you assigned to
4  cover a particular area outside of their primary area?
5      A. No.  Not that I know of.
6      Q. And you were doing the same thing over there
7  that you were doing at Lewisville during the week,
8  correct?
9      A. Yes.
10      Q. Basically, just boots on the ground, available
11  to people with HR needs?
12      A. Yes.
13      Q. Investigations?
14      A. Yes.
15      Q. Supporting the business side?
16      A. Yes.
17      Q. You said it made your workload substantially
18  heavier, is that right?
19      A. Yes.
20      Q. So, when you say, "workload", does that mean
21  the amount of work, or does that mean the amount of
22  hours that you were required to work?
23      A. Both.
24      Q. All right.  So, at the time that you were -- or
25  at the time that you were assigned to this 8585, how

Page 147

1  many hours a week were you working?  45?
2      A. I mean, I can't give a definitive answer.
3  That's just round about.  I can't quantify in a
4  numerical.  If that's the question, I can't quantify.
5      Q. Sure.  Were you working over 40 hours a week
6  prior to your being assigned at 8585?
7      A. Yes, there were definitely some weeks, yes.
8      Q. I'm sorry?
9      A. There were definitely weeks, yes, over 40.
10      Q. Were there weeks under 40, as well?
11      A. No.  No.
12      Q. So somewhere over 40 hours is how much you were
13  working before being asked to go to 8585 once a week.
14      A. That's -- I don't think that's accurate
15  because --
16      Q. That's why I'm asking you.
17      A. Yeah.
18      Q. So, can you say how much you were working
19  before and how much you were working afterwards?
20      A. Okay, generally speaking, 40 hours a week
21  before.  After 8585, I would say that was the 45, if not
22  more.
23      Q. Okay.  So, generally speaking, you went from 40
24  hours a week to 45 hours a week all while you were still
25  under Lina.

Page 148

1      A. Yes.
2      Q. And what made it more work for you to do?  Were
3  you actually at the facility longer than you would have
4  been had you been working at Lewisville, or did it take
5  you longer to get to and from that 8585?
6      A. It was more commuting, more head count, more
7  work because of the head count.
8      Q. What time of the day were you leaving?
9      A. I don't recall.  It's definitely more head
10  count and more workload, yes.
11      Q. Were you leaving at different times of the day,
12  or were you leaving at around the same time of day?
13      A. I couldn't tell you that.  I don't know.
14      Q. What I'm trying to understand is how it would
15  have increased your workload, if you were working 8:30
16  to 5:00 in Lewisville and you just started working 8:30
17  to 5:00 at 8585 once a week.
18          I certainly get that the commute itself may
19  cause more time.  I don't know if you made it back with
20  regard to what time you were actually getting to 8585 or
21  what time you were leaving, but I can understand, if
22  that's what you're saying, that the commute itself
23  caused another 30 minutes going there, 30 minutes on the
24  way back, on average.  Are you saying that?
25      A. Yes.  Commute, but also it took me away from my

ORAL AND VIDEOTAPED DEPOSITION OF REENA MATHEW

Page 149

primary location, which was Lewisville.  So it took me
away from the workload there.  So it is extra work
because you're at a different location, you still have
to service all -- there wasn't another HRBP.
Q.  So were you working longer hours to continue to
service Lewisville because of the one day that you were
not in Lewisville?
A.  Yes.
Q.  When would you do that work?
A.  For myself, I'm a -- I'm not trying to say --
brag or anything, but I am a fast worker, so it meant
for me less breaks, constant just this with no break.
Q.  While you were in Lewisville.
A.  Lewisville and 85.
Q.  I'm talking about the work that you say you
were missing out on from Lewisville because you're
spending one day a week at 8585.
A.  Well, I mean, you could still handle some
things remotely.  Not everything.  Obviously,
investigations you got to do face to face.  There were
some things I could do from there, some things I can't.
Q.  So, were you working more hours when you went
to 8585?
A.  I would say -- I can't quantify the numbers,
but it was this all day without a break.

Page 150

Q.  You're saying you were working harder during
the course of the day than you were working prior to
having to go to 8585 each day --
A.  Absolutely.  Meaning no breaks, I don't know if
I used the restroom, did I take a lunch, I'm pregnant,
it was stressful.
Q.  Do you recall a day where you did not take a
lunch?
A.  There were plenty, I'm sure.  I don't recall
the exact date, but yes.  Yes.
Q.  Do you think there was anyone at Santander that
would not want you and did not need you to take a
lunch --
A.  I don't believe they wanted that, that's why I
went to them and said, I need a less crazy workload, and
that was brought up several times.
Q.  Okay.  And so it wasn't necessarily reflected
in the number of hours you were working, it was more
reflected in how hard you were working when you were on
the clock, so to speak,
A.  Correct.
Q.  Or when you were actually at work.
A.  And pregnant.  When you're pregnant, you need
more breaks.
Q.  We talked a little bit this morning about your

Page 151

relationship with Angelina Hullum and whether she was
giving you guidance about either mistakes or ways to
improve other than the evaluations that she would give
you twice a year.  Do you recall that?
A.  Your question is, additional?
Q.  Additional.  Besides the two evaluations a
year.
A.  Not specifically, no.  Meaning specific issues,
no, we never did.  Something I did wrong, never.
Q.  So let's go back to this timeline of events,
Exhibit No. 4.
A.  Yes.
Q.  Do you see on the first page the April 9?
A.  Yes.
Q.  On April 9, do you see that?
A.  Yes.
Q.  And do you believe that this was Lina that
submitted this --
A.  Yes.
Q.  -- with regard to your March recap?
A.  Yes.
Q.  Do you disagree with it, or you don't even know
what it means?
A.  I don't know why she brought it up.
Q.  Isn't she saying that she was disappointed that

Page 152

you had only participated in two side-by-side meetings
with managers and only four jumpstarts during the entire
month of March?
A.  Why would a manager only tell you the next year
about something that they were upset about?
Q.  So, do you think Lina made it up?
A.  I'm not saying she made it up, but if you're
upset, why wouldn't you tell me in 2015 versus the next
year?
Q.  So, your point is, it may have happened, she
may have been upset about it, but I should have known
about it before then.
A.  Correct.
Q.  Okay.  And I presume you would say the same
thing about May 18, 2015.
A.  Correct.
Q.  So, you believe that she very well may have
been disappointed by your not having attended any
jumpstarts of the month and not conducting any trainings
and the number of business meetings with leaders was
also not included in it, but she should have told you
earlier.
A.  That's right.
Q.  And your testimony is that she did not tell you
any of these things.

ORAL AND VIDEOTAPED DEPOSITION OF REENA MATHEW

Page 153

1    A. That's correct. And, you know, when I did
2  submit it, it was always, okay, thank you, in 2015, when
3  it was submitted. So, to see this a whole year later,
4  anyone would be dumbfounded, like where is this coming
5  from?
6    Q. Is there anything in here that -- just so we
7  can save time -- is there anything in here with regard
8  to Lina or that pursuant to your time with Lina that you
9  agree with and that she talked to you about?
10    A. So, before September?
11    Q. Yes.
12    A. I doubt it, because there's red on all of them,
13  so no.
14    Q. Okay. You said "no"?
15    A. Can you repeat that question one more time?
16    Q. Yeah, sure, sure, sure. With regard to all of
17  these items on the timeline, when you were being
18  supervised by Angelina, are there any that you think are
19  accurate and you recall you and Angelina visiting about
20  it?
21    A. No. No.
22    Q. So your testimony is, for each thing that
23  Angelina or whomever else put on here regarding
24  something you did or didn't do during your time where
25  you're supervised with Angelina either isn't accurate or

Page 154

1  something that Angelina spoke with you about.
2    A. That's correct. Yes. And just for the record,
3  I was going to say, I noticed even July 1st, "request to
4  leave half day to attend doctor's appointment, same day
5  notification." Again, if you're telling me things are
6  okay, how would anyone know that's an issue and you're
7  bringing it up a year later?
8    Q. Your point is, you asked Lina for a half day to
9  attend a doctor's appointment, and she must have said it
10  was okay.
11    A. Yes, correct.
12    Q. Because you wouldn't have gone, if she didn't
13  say it was okay, right?
14    A. Exactly.
15    Q. Okay. Let's go to the bottom of the page. You
16  were complaining that your workload was heavy, right?
17    A. Yes.
18    Q. And that was after you were spending time at
19  8585?
20    A. Correct.
21    Q. And you were asked by HRM, human resources
22  manager?
23    A. Yes, correct.
24    Q. That would be Lina at the time, correct?
25    A. Yes.

Page 155

1    Q. To provide a time study.
2    A. Yes.
3    Q. So that Lina could pinpoint how you were
4  allocating your time.
5    A. Correct, yes.
6    Q. Now, this was the first time that anyone had
7  asked you to do a time study?
8    A. Uh-huh, yes.
9    Q. Are you familiar with the concept?
10    A. At the time, no, I didn't even know what that
11  entailed but, you know, I had to do it, so --
12    Q. How did Lina introduce it to you?
13    A. So the way -- so, you know, as I had previously
14  mentioned, Lina and I, our relationship was a pretty
15  good working relationship. I'm not going to use good
16  friend anything, it was a working relationship, we had a
17  good one.
18       And, you know, when she -- when I had come
19  to her, she was always helpful, always tried to work
20  with me, unlike Yessica. And, you know, when she
21  mentioned the time study, I truly believed she didn't
22  know, like quantifying, you know, what I had going on.
23       And I think she was coming from a good
24  place, just trying to get to know what I was doing, but,
25  yeah, so I -- to me, it was she just wanted to quantify

Page 156

1  in case she could do something for me. So, it wasn't
2  like a punitive thing.
3    Q. It was good intentions.
4    A. I feel like it was good intention, yes.
5    Q. Was she asking you, I don't know what you're
6  doing with the time that you're here? I know you're
7  here because I see you here, but I don't know what
8  you're doing in light of what work I'm assigning to you
9  that's not getting done?
10    A. It was never that. It was more of, show me
11  what you're doing, and if you do have a heavier
12  workload, let me see what I can do for you.
13    Q. You think that's what a time study would show?
14    A. Yes.
15    Q. Wouldn't a time study require you to indicate
16  what you worked on each day and how long it took you?
17    A. Yes. Yes.
18    Q. And that was -- was or was not in relation to a
19  conversation that Lina was having with you about why you
20  were not getting the work done during the course of the
21  business day.
22    MR. ULOTH: Objection, mischaracterizes
23  testimony.
24    Q. (By Mr. Hurst) That's the points of the
25  question.

ORAL AND VIDEOTAPED DEPOSITION OF REENA MATHEW

Page 161

1  doing wrong only after she learned that you were
2  pregnant.
3      A.  Yes.
4      Q.  That is, would you agree with me, one way that
5  you believe that you were discriminated against because
6  of your pregnancy.
7      A.  Yes.
8      Q.  And we'll call it the PIP, and you believe that
9  she did this PIP, issued on December 1st, 2015, for no
10  reason other than learning that you were pregnant.
11      A.  Correct.  And, again, I think I've mentioned it
12  before, and I don't even think in my career, I've never
13  had any disciplinary action, not even a coaching.  So,
14  yes, I do believe it.
15      Q.  Well, let's talk about your career.  You worked
16  at Neiman's before Santander.
17      A.  Uh-huh.
18      Q.  Right?
19      A.  Yes.
20      Q.  You remember when?
21      A.  2003 to 2009.
22      Q.  Okay.  And then, where did you work before
23  Neiman's?
24      A.  Before Neiman's?  College and grad school, and
25  so after that, I did an internship.  I had one year of

Page 162

1  employment in Austin.
2      Q.  Where did you work in Austin?
3      A.  Crossroad Systems and then a place called
4  Everyday Wealth, and I did HR for them.
5      Q.  How long were you at Everyday Wealth?
6      A.  Everyday Wealth for a year.  My internship
7  was --
8      Q.  Your internship was before or after Everyday
9  Wealth?
10      A.  Before.  Crossroad Systems.  That was the name
11  of the company.  Crossroad Systems was before Everyday
12  Wealth.  That was for -- that was probably about a year
13  or two, ten months to a year.
14      Q.  Okay.  So you weren't written up during your
15  internship with Crossroads internship.
16      A.  No.
17      Q.  You weren't written up or coached at Everyday
18  Wealth.
19      A.  No.
20      Q.  You weren't coached at Crossroads internship.
21      A.  No.
22      Q.  You weren't ever written up or even coached at
23  Neiman's?
24      A.  Absolutely not.
25      Q.  What do you consider coached, by the way?

Page 163

1      A.  Coached to me is you're not performing, you're
2  making egregious mistakes, they need you to do something
3  other than what you're currently doing.
4      Q.  Does it have to be an egregious mistake for a
5  manager to coach?
6      A.  It doesn't have to be egregious, but it has to
7  be something substantial to where an employee
8  understands, this is not the right the right way to do
9  things.  Something -- it can't just be, you know, I made
10  a mistake entering, you know, I mistyped something, it's
11  got to be something -- something substantial, yeah.
12      Q.  Well, what's it called when a manager speaks to
13  a subordinate about something that they would recommend
14  they do better?  What's that called?
15      A.  That -- I mean, something they have to do
16  better and change, that's coaching, yes.
17      Q.  Don't necessarily have to, maybe a
18  recommendation.
19      A.  Yes, but it should be on the basis that
20  something was done wrong first.
21      Q.  Done in a manner that the manager thought could
22  be done better, right?
23      A.  To me, coaching would be something was done
24  wrong to begin with.
25      Q.  And your point is, you have never done anything

Page 164

1  wrong to warrant a coaching for any of the places where
2  you've worked.
3      A.  Coaching that's formally documented or in
4  e-mail, no.
5      Q.  I asked you, you have never done anything wrong
6  that would warrant someone giving you some coaching.
7      A.  But then, it's two different.  That's not
8  apples to apples, to me.
9      Q.  I don't know what you're saying.
10      A.  Well --
11      Q.  Have you done anything wrong that you believe
12  would warrant coaching?
13      A.  That would aren't coaching?  Coaching, to me,
14  is you're -- coaching to me is continuous.  Telling a
15  person, hey, you did this, and you got to, you know,
16  right the wrong, that's fixing a mistake.  Coaching is
17  continuous.
18          MR. HURST:  Okay.  Objection,
19  nonresponsive.  Can you please read the question back?
20          (THE RECORD WAS READ BACK.)
21      A.  No.  Not in my definition of coaching, no.  We
22  have two different definitions of coaching.
23      Q.  (By Mr. Hurst)  What's my definition?
24      A.  Your definition is telling someone you've got
25  to do this.  This is how you can be better.  My

ORAL AND VIDEOTAPED DEPOSITION OF REENA MATHEW

Page 165

1  definition is, you made a mistake, we need you to do
2  this, and it's continuous.  The premise for me is the
3  continuous part.
4      Q.  Have you ever made a mistake in your employment
5  history?
6      A.  Of course I have.  I'm human.
7      Q.  Sure.  So can you name one mistake you've ever
8  made?
9      A.  I probably put it -- like a piece of paper in
10 the wrong file.
11     Q.  When was that?
12     A.  Maybe when I was an intern.
13     Q.  Have you put a piece of paper in the wrong file
14 since you were an intern?
15     A.  Well, now everything's digital, so no.
16     Q.  So that was just that one time.
17     A.  I'm not saying it's one, but it could have
18 happened, you know, something like that.
19     Q.  Can you think of any other mistake you've made
20 in your employment history?
21     A.  I'm sure I could.  I'm human.  So of course
22 there's mistakes, but nothing that warrants coaching.
23     Q.  Can you think of any other mistake you've ever
24 made in your employment history, other than maybe
25 putting a piece of paper in the wrong file?

Page 166

1      A.  Major mistakes?  No.  Mistake?  I can't think
2  of any now, I'm sure there were plenty of small ones
3  along the way, but nothing to warrant coaching or
4  disciplinary action.
5      Q.  Nothing that you can even think of at this time
6  regardless of how big or small, right?
7      A.  That's not what I'm saying.
8      Q.  What are you saying?
9      A.  What I'm saying is, if it's something that
10 warrants coaching, I've never made that kind of mistake.
11     Q.  I'm not even using the word "coaching", because
12 you wanted to split hairs about that.  What I'm trying
13 to say is, can you remember any instance where you've
14 made a mistake, a big one or a small one, in your work
15 history?
16     A.  Not that I can remember.  I'm very particular
17 about the way I work.  No.
18     Q.  Thank you.  So, we've talked about the first
19 instance or one of the instances where you believe you
20 were subjected to pregnancy discrimination is when
21 Yessica made up all these things to put in a Performance
22 Improvement Plan that was issued to you on December 1st.
23     A.  Yes.
24     Q.  That was as a result of pregnancy
25 discrimination.

Page 167

1      A.  Yes.
2      Q.  What else do you believe is evidence or is an
3  instance of your being discriminated against because of
4  your pregnancy?
5          MR. ULOTH:  I'll object to the part of the
6  question that calls for evidence, but the way it was
7  asked, I think you can go ahead and answer it, to the
8  extent you can.
9          MR. HURST:  Well, that's all right.  I
10 don't want you to not like my question.
11     Q.  (By Mr. Hurst)  Name me, please, another
12 instance in which you believe you were subjected to
13 pregnancy discrimination.
14     A.  The second PIP.  That's not the process of
15 Santander.
16     Q.  Okay.
17     A.  We've never had back to back PIPs, and that is
18 why I say, when I go a whole month without any coaching
19 for a 30-day PIP, and then you turn around and put me on
20 another one, that's discriminatory to me because that is
21 not the process there.
22     Q.  Okay.  So you're on your first PIP, December 1.
23     A.  Uh-huh.
24     Q.  And it's supposed to go for how long?
25     A.  December 30th, end of the month.

Page 168

1      Q.  And when was your second PIP issued?
2      A.  January 16th -- or 15th.  15th or 16th.
3      Q.  Now, wasn't the first PIP issued, and you
4  complained that 30 days wasn't enough?
5      A.  Absolutely not.  Made up.
6      Q.  Okay.  But you did see that written somewhere,
7  it was just something that Yessica or somebody else made
8  up.
9      A.  Say that one more time.
10     Q.  You did see it was written that 30 days wasn't
11 going to be enough.
12     A.  I -- who would want a longer PIP?  Why would
13 anyone complain about that?  That's ridiculous.
14     Q.  To give you more time to --
15     A.  No.  People are trying to get off of PIP, not
16 stay on one.
17     Q.  You did not ask for more time, then.
18     A.  Absolutely, categorically, no.
19     Q.  Is it your understanding that you finished out
20 the first PIP without any incident?
21     A.  Yes.  Because we had no coachings.
22     Q.  Okay.
23     A.  And there's no documentation.
24     Q.  So, you finish out your first PIP, then Yessica
25 writes you up on a second PIP.

Page 177

1   PIP.
2       Q.   Sometime in January?
3       A.   Yeah.  And I don't know when it closed.
4       Q.   Okay.  So, January 2016 was the end of your
5   having to go to 8585, and it started in July.  So, there
6   was a six-month period that your workload had
7   substantially increased as a result of that, and you
8   felt like or you feel like that was a way that Santander
9   was discriminating against you based on your pregnancy?
10      A.   I'm sorry.  Say it one more time.
11      Q.   You feel like that higher workload that you had
12  for a six-month period is a way that Santander was
13  discriminating against you because of your pregnancy?
14      A.   It was a way of -- yeah, indirect
15  discrimination, yes, by trying to make me over -- you
16  know, just overworked, and I believe they wanted me to
17  resign.
18      Q.   Now, Angelina was the one who initially
19  assigned you 8585, correct?
20      A.   Uh-huh.
21      Q.   Is that right?
22      A.   Yes.
23      Q.   And that was well before you were pregnant,
24  correct?
25      A.   That is true, yes.

Page 178

1       Q.   Okay.  So how many months were there where you
2   were not even pregnant and you were working 8585?
3       A.   Well, I can't just say it was 8585.  It was
4   giving me more assignments after I was pregnant at 8585,
5   making me look into different things.  It's not just a
6   matter of, you know, going to 8585, it's the matter of
7   what they assign me, these time studies, you know, the
8   time studies themselves took time, right?
9       Q.   But what you believe Lina did with the best of
10  intentions to help you --
11      A.   She did, yes.
12      Q.   -- to try to get you to identify what was
13  taking you particular amount of time on projects, right?
14      A.   Yes.  But that was earlier in the year.  I'm
15  not sure you know, Monte, also, Yessica had me do one.
16      Q.   I'm aware.
17      A.   You're aware of that.
18      Q.   Sure.
19      A.   So that was punitive in nature.
20      Q.   I think, in fairness, Yessica asked you to
21  continue doing them.
22      A.   Incorrect.
23      Q.   So how many did you do for Lina?
24      A.   It was a matter of, I think, like a week or two
25  weeks, and it stopped.

Page 179

1       Q.   Wasn't it your understanding that she wanted
2   you to do it monthly?
3       A.   Not that I recall, no, it was for a short
4   period of time.  Yessica had me do it for -- I can't
5   recall exactly how long, but a substantial amount of
6   time, and that itself took a long time.  I even told
7   her, if I feel overworked, you know, and I have a -- you
8   know, a lot on my plate, why would you then make me
9   continue with this time study?  That was one of the
10  questions.
11      Q.   Okay.  So, do you feel like the time study that
12  Lina initially assigned to you was pregnancy
13  discrimination?
14      A.   No.
15      Q.   Couldn't have been, because you weren't
16  pregnant.
17      A.   I wasn't pregnant.
18      Q.   But you feel like the time study that Yessica
19  assigned to you was pregnancy discrimination.
20      A.   Absolutely.
21      Q.   Did she assign it to you before or after you
22  let her know that you were pregnant?
23      A.   After.
24      Q.   All right.  So, your third instance of
25  pregnancy discrimination is you were held to a higher

Page 180

1   standard.
2       A.   Yes.
3       Q.   You believe nobody was working as much as you.
4       A.   Not working as well, I do believe that, but
5   also the mistakes that I would make were held to a
6   very -- a very high standard of, you know, consequences,
7   whereas --
8       Q.   So you were making mistakes.
9       A.   No.  That's not what I'm saying.
10      Q.   I thought that's what you said.
11      A.   Well, the mistakes in their eyes.
12      Q.   Gotcha.  So things that wouldn't be mistakes to
13  other people.
14      A.   That's correct.
15      Q.   Okay.  So you're using air quotes when you say
16  your mistakes was something they made a big deal out of,
17  which they wouldn't even be seen as mistakes for
18  somebody else.
19      A.   Correct.
20      Q.   And who was making a big deal out of your
21  quote-unquote "mistakes"?
22      A.   Yessica.
23      Q.   Anyone else?
24      A.   I think Yessica filtered it to Stephanie, but
25  mainly Yessica.

Page 181

1    Q.  Okay.
2    A.  And the problem I have -- the main problem I
3  have is, she would, in front of my face, tell me, oh,
4  you're doing a good job.  There's even e-mail exchanges
5  where Reena should get praise for this and that.  This
6  is, I believe before my telling her I was pregnant, but
7  Reena should get praise for this project, she's doing a
8  great job.  After pregnancy, it all stopped.
9    Q.  So she never praised you after you told her you
10  were pregnant?
11    A.  No.  That's -- the PIP happened shortly after.
12    Q.  So she did praise you beforehand.
13    A.  She did.  She did.  And that's in the
14  documentation.  And that was to other HR managers.  And
15  there is an e-mail she sent to -- specifically, to our
16  managers.  If I was doing so bad, why would you brag
17  about me to other HR managers?  And the other HR
18  managers are, way to go Reena, great job, this is a
19  great job.
20    Q.  Because you had done a good job on it, that's
21  why.
22    A.  Right.  So my point is, if I was so bad for all
23  these months, why am I getting such positive feedback?
24    Q.  But don't you think that -- don't you think
25  that Jessica would say because it was case by case

Page 182

1  basis, and Reena did a great job on this.  She's not
2  doing well on some other things, but I'm not afraid to
3  praise her when she does a good job.
4    A.  No.  The problem is, there was no issues before
5  the PIP.
6    Q.  There was no praise after the PIP is your
7  point.
8    A.  No praise after the PIP, and no issues that I
9  was aware of before the PIP that would have had me
10  understand, whoa, I need to make some changes or I need
11  to correct some behaviors.  It was -- my mid-year review
12  was good, I'm getting praised by this current manager,
13  you know, I had no reason to believe I had issues.
14    Q.  Okay.  So, held to the higher standard is
15  number three.
16    A.  Uh-huh.
17    Q.  What is another way that you believe you were
18  discriminated against, based on your pregnancy?
19    A.  Time.  Yessica, for one, she took time off all
20  the time, all the time.
21    Q.  Okay.  You weren't allowed to take time off?
22    A.  She would say it was fine, but then would say
23  on these, you know, little write-ups that she took time
24  off, you know, the same day or didn't give enough -- you
25  know, enough time for approval or, you know, whatever it

Page 183

1  was, but she took time all the time.
2    Q.  Yessica did.
3    A.  Yessica did.  And when I asked her for time
4  off, I'm very careful with my job, I'd give her, you
5  know, as -- you know, the notice that we're required to
6  do, 24 to 48 hours, she would tell me it's fine, but
7  then it would show up, you know, after the fact.
8    Q.  Wasn't the issue that you were weren't getting
9  the work done, even though you were taking time off,
10  leaving early, coming in late?
11    A.  No.
12    Q.  You never talked to her about that?
13    A.  No.
14    Q.  Or you did after --
15    A.  After the PIP.
16    Q.  After the PIP.
17    A.  Yes.
18    Q.  Okay.
19    A.  But never an issue before, no.
20    Q.  Okay.  Even if it hadn't been an issue before,
21  is that a conversation that you guys had, that you
22  weren't getting the work done that the department needed
23  to get done, you weren't catching up on it.
24    A.  No.
25    Q.  In fact, didn't you say to Yessica in at least

Page 184

1  one instance, my family time is my family time and --
2    A.  No.
3    Q.  -- I'm not -- I'm not going to do work at home.
4    A.  Oh, my God, I can't even -- no.  Categorically,
5  no.
6    Q.  Because you did do work at home?
7    A.  If I needed -- you can ask my husband.
8    Q.  I'm not going to ask him.  This is your
9  deposition.
10    A.  Okay.  Fair.  If I have to get stuff done, I
11  get it done, period.
12    Q.  So you would work from home when you didn't get
13  the work done that was expected of you for that day?
14    A.  Of course I would.
15    Q.  Did you have a laptop computer from Santander?
16    A.  Towards the end, yes.
17    Q.  When was that, January of '16?
18    A.  When we started the work from home stuff, yes.
19    Q.  How would you work from home prior to getting a
20  laptop computer from Santander?
21    A.  Meaning I had a laptop probably in the last
22  year, year-and-a-half, when we started a pilot program.
23  But categorically, no, did I ever say that.
24    Q.  Okay.  What's another instance or example of
25  your being discriminated against because of your

ORAL AND VIDEOTAPED DEPOSITION OF REENA MATHEW

Page 189

1  someone can lie like that, that's scary.  I don't know
2  if it's pathological.  I don't know.  I'm not a doctor,
3  but that's scary, and I don't want her knowing anything
4  about me.
5          MR. ULOTH:  I could use a break now.
6          MR. HURST:  Sure.
7          VIDEOGRAPHER:  Off the record at 2:27 p.m.
8          (OFF THE RECORD FROM 2:27 TO 2:36 P.M.)
9          VIDEOGRAPHER:  Back on the record at
10  2:36 p.m.
11          (DEPOSITION EXHIBIT 6 MARKED.)
12      Q.  (By Mr. Hurst)  Ms. Mathew, I'm handing you
13  what has been marked as Exhibit No. 6 to your
14  deposition.  I will represent to you, ma'am, that this
15  is an e-mail string that includes you and Yessica and,
16  prior to that, Yessica and Stephanie.
17      A.  Uh-huh.
18      Q.  Have you seen this?
19      A.  No.  If this is from 2016, this?
20      Q.  Yes, ma'am.
21      A.  No.
22      Q.  But you're impressed by it, aren't you?
23      A.  If it was true, yes.
24      Q.  You think this is a fake document?
25      A.  I don't remember seeing this.  This is the year

Page 190

1  that I got -- let me see.
2      Q.  The point here is that Yessica is telling you,
3  "nice work, Reena", right?
4      A.  Yeah.
5      Q.  Skeptical, huh?
6      A.  Skeptical.
7      Q.  Okay.
8      A.  Very.
9      Q.  You don't remember receiving it.
10      A.  I don't remember receiving any compliments
11  after the second PIP, no.
12      Q.  Okay.  Do you think it's fake or do you think
13  that -- you just don't recall receiving it?
14      A.  Honestly, I don't know what to make of it.
15      Q.  You'd agree that what it shows is that Yessica
16  was giving you a compliment sometime in March of 2016,
17  which is well after she had known that you were pregnant
18  and well after she had written a PIP or two about you,
19  and still complimented you, right?  I'm not trying to --
20      A.  I don't recall.  If it's --
21      Q.  I understand you don't recall, and I'm not --
22  I'm not going to try to talk you into it being real, if
23  you don't think it's real, there's nothing I can pull
24  out to show you the meta data right now --
25      A.  Uh-huh.

Page 191

1      Q.  -- in this deposition.  But you would agree
2  that this shows that Yessica was paying you a compliment
3  in March of 2016, even after you had testified just a
4  little while ago that Yessica had never complimented you
5  after she had issued a PIP in December of 2015.
6      A.  Not that -- a compliment that I don't recall,
7  correct, yes.
8      Q.  Everything I said was correct.
9      A.  Well, compliment that I recall.  That's what --
10  that's my statement.  So, again, even if this was -- I
11  don't recall this, if it was, it would have been, you
12  know, lost in the abyss with about 20 other complaints.
13      Q.  She had far more complaints about your work
14  than she did compliments.
15      A.  Correct.  And just scrutinizing every single
16  day, everything I did, so no, I wouldn't remember
17  something like this.
18      Q.  Okay.
19      A.  I don't think I could have breathed right,
20  properly.
21      Q.  You don't think what?
22      A.  I could breathe properly in her eyes.  If I was
23  breathing, it was the wrong way.
24      Q.  That's how you felt.
25      A.  That's how I felt, yes.

Page 192

1      Q.  So let's go back to the instances of
2  discrimination for your pregnancy, and we were on the
3  fifth, which was Yessica requiring you to do a time
4  study in December.
5      A.  Uh-huh.
6      Q.  We'll find the one that shows that you and
7  Stephanie had a conversation about it, but your point
8  is, you think it was -- that was just another way that
9  Yessica was discriminating against you because you were
10  pregnant.
11      A.  Being punitive with the workload and making
12  me -- subject me to show -- I mean, that's condescending
13  for one, but I don't see other people being asked to do
14  this, and I don't think I knew of anyone else who did
15  this.
16      Q.  Wouldn't Yessica say that you were the one
17  struggling the most with your time management?
18      A.  It's not time management, it is workload and
19  the fact that she didn't believe me and, you know, that
20  that was the issue right there.  It's not that I'm lying
21  about my workload, it's a person who just doesn't want
22  to believe me, and it was discriminatory, yes.
23      Q.  Okay.  What about the next one?  How else do
24  you feel like you were discriminated against because of
25  your pregnancy?

Page 193

1  A. What have I mentioned so far?  Attendance.
2  Q. Let's see.  The first PIP, the second PIP.
3  A. Yeah.
4  Q. The held to a higher standard or assigned more
5  work.
6  A. Attendance.
7  Q. Yeah.  Attendance.  That's No. 4.  No. 5 was
8  the time study.
9  A. And the time study.  And I think that's all I
10  can think of.
11  Q. And your termination.
12  A. Yeah.
13  Q. Or the decision to terminate your employment.
14  A. Yes.
15  Q. So your termination decision was made by -- so
16  they say --
17  A. Yeah.
18  Q. -- Yessica, Stephanie and Stephen.
19  A. Uh-huh.
20  Q. Is that your understanding, as well?
21  A. I would say Yessica with the buy-in of Stephen
22  and Stephanie.
23  Q. Exactly where I was going to go.  So, from your
24  perspective, Yessica made the decision or part of that
25  decision based on your pregnancy.

Page 194

1  A. Yes.
2  Q. Stephen and Stephanie went with Yessica's
3  decision because they wanted to help cover up a mistake
4  of her writing you the way she had, but they themselves,
5  you don't believe were discriminating against you based
6  on your pregnancy.
7  A. Correct.  Correct.  And, you know, I think it
8  was -- you know, I think they were just so new, they
9  just blindly went along with everything and said
10  deficiencies, because they're not the ones meeting with
11  me, it's her, and then her reporting back, and reporting
12  back with things that weren't true.
13  Q. And you think they believed her, or do you
14  think that they wanted to help cover up what they saw
15  was a problem?
16  A. I think honestly both, a little bit of both.
17  Q. You don't think either one of them did their
18  own investigation?
19  A. No.  I don't.  And that's what I was saying,
20  that last e-mail that showed -- that Don had showed me
21  where it said I went to her and I said I was anemic.
22  First of all, I was never anemic during my pregnancy, I
23  don't know where she got that.  Secondly, she said
24  something like I was anemic and I was thinking about
25  leaving earlier.  She said, I wouldn't be surprised if

Page 195

1  she left in May.  I'm not sure if you recall this.  But
2  that never happened.  I never -- I wasn't even anemic.
3  I told my husband, I was like, this lady was making up
4  stories all the time.
5  Q. She says that you said you were anemic?
6  A. Yes.  I never had that conversation.  Why would
7  I tell a person who was on me, first of all, my medical
8  information, secondly, give her ammo for terminating.
9  Q. You know, part of your complaint, you mention
10  that when you told Yessica that you were pregnant,
11  number one, you said she was happy for you.  I can't
12  remember if that was through your interrogatory answers
13  or your complaint, but she did express happiness on your
14  behalf, correct?
15  A. Sure.  I'm not sure if it was acting, but sure.
16  Q. You're not sure if it was acting, but for
17  purposes of how she acted.
18  A. Yes.
19  Q. But you sounded critical that she would ask,
20  then, do you know your plans after your pregnancy?
21  A. Yes.
22  Q. Are you critical of that?
23  A. In the sense, from an HR perspective, yes,
24  because this is -- that's like HR 101, you don't ask
25  someone who just announced that their pregnant what your

Page 196

1  plans are, because that could be looked at as
2  discriminatory.  So for me, when she asked, yes, that's
3  a little strange.
4  Q. But that's an HR issue, isn't it?  I mean, we
5  have all been taught the business side.
6  A. Uh-huh.
7  Q. You can't ask something like that.
8  A. Uh-huh.
9  Q. But HR side can because HR's responsible for
10  filling roles and making certain that there's enough
11  horses to do the work.
12  A. Are they, though?  I mean, if we're going to --
13  if we're going to practice what we preach, I would think
14  HR would be the first one not to do that kind of stuff.
15  I wouldn't ask someone, if they told me they were
16  pregnant, what are your plans?
17  Q. So I don't know about the day you find out, but
18  you have to know what the plans are because otherwise
19  you have to staff up, and you don't know whether
20  someone's FMLA, to the extent that it's paid, would be
21  covered.  So, I'm challenging you on that, from one HR
22  person to another that you may not have liked how she
23  said it, you may not have liked the person who asked,
24  and you certainly may not have liked how she treated you
25  after, but was the question in and of itself really an

ORAL AND VIDEOTAPED DEPOSITION OF REENA MATHEW

Page 201

1  Absolutely.
2      Q.  Okay.  Look at that, we come to an agreement on
3  something.  Any other ways you felt -- feel like
4  Santander discriminated against you because of your
5  pregnancy?
6      A.  Just -- I mean, just those double PIPs.
7      Q.  We got those.
8      A.  Yeah, we got those.  Other than the stuff that
9  I mentioned, I can't think of anything.
10      Q.  Can you identify anyone at Santander who was
11  not pregnant and you believe was treated more favorably
12  than you?  Someone who was in a similar position to you?
13      A.  Similar position?  I mean, I honestly, because
14  we were just Lewisville, I mean, the only person I saw
15  every day was Yessica and Sabrina.  Sabrina was treated,
16  you know, and that's where a lot of my issues came,
17  because I was, you know, she was making me do admin, you
18  know, administrative stuff.
19      Q.  Yessica was.
20      A.  Yessica was.  And that was Sabrina's job.  And
21  Sabrina was kind of coasting while I felt like I was
22  getting the brunt of all the work.
23      Q.  So, what administrative work do you say that
24  you were being made to do?
25      A.  Those were the e-mails that I had asked about,

Page 202

1  those compliance e-mails.  That's totally
2  administrative.  Checking an HR box.  That's
3  administrative.
4      Q.  Checking what?
5      A.  Checking the HR box.  We had an HR box outside
6  of HR, you know, with like letters.  You know, it's
7  like, if I'm here to strategize, why am I checking a
8  mailbox?
9      Q.  So, checking the HR box.  What else did you say
10  before that?
11      A.  Compliance e-mails, which were very time
12  consuming.  We had to go back and forth with our legal
13  department and, you know, just as far as like -- I don't
14  even know how to put it in words, but just compliance.
15      Q.  How about disciplinary actions?
16      A.  Disciplinary actions, entering those in.  She
17  was asking me to do that.  Disciplinary actions that was
18  primarily a function of where the business would come to
19  the HR business partner, we would partner, look at
20  everything, I would write up the DA, get it back to the
21  business, have them sign it, and then they would return
22  it, put it in that HR box.
23      Q.  Then somebody had to input it into the
24  computer.
25      A.  Somebody had to enter it, and she was asking me

Page 203

1  to do that, when Sabrina all along was doing that.
2      Q.  Were there so many that it couldn't get done
3  just with one person?
4      A.  No.  No way.
5      Q.  Is that right?
6      A.  And I saw the number in that e-mail that was
7  incorrect.  They said something like 4,000.  We had
8  3,500 employees, how could that even be?
9      Q.  A lot of people complaining.  So, Yessica would
10  say that she didn't ask anyone to do anything that she
11  wasn't doing herself, all hands on deck kind of thing.
12  Do you disagree?
13      A.  Categorically, yes.
14      Q.  So, you claim that you were asked to enter the
15  DAs into the computer.
16      A.  (Witness nods head affirmatively.)
17      Q.  Was she entering DAs in the computer?
18      A.  Possibly a handful, just to show that she was
19  doing something, but when I tell you, I don't know what
20  she did, I don't know what she did all day except
21  scrutinize me.
22      Q.  Sabrina was, you say, coasting, what does that
23  mean?
24      A.  Meaning, you know, she had a good gig, because
25  here I am having to help her with her own job, and it's

Page 204

1  like I'm begging for a break being pregnant.
2      Q.  You saw a lot of those things as Sabrina's
3  responsibilities.
4      A.  Yes.
5      Q.  And were you asked to do them because Sabrina
6  just wasn't as efficient as you, from your perspective?
7      A.  Possibly.  And I think that's what backfires
8  for a lot of employees.  If you're efficient, you get
9  more work.
10      Q.  Is Sabrina not efficient?
11      A.  I believe she's efficient, but, you know, we
12  have a very demanding business, and if they want things
13  now, they want things now, there's no excuses.
14      Q.  Okay.  So, would you say that Sabrina was
15  treated more favorably than you?  I mean, I know y'all
16  weren't in the same position.
17      A.  Yes.
18      Q.  And you gave me the example of that.
19      A.  Yes.
20      Q.  Anyone else in HR that you believe was treated
21  more favorably than you that was in a similar position?
22      A.  I mean, we were the only ones that reported to
23  Yessica, so I couldn't tell you.  But from what I saw,
24  who was reporting to her, yes, Sabrina.
25      Q.  Okay.  Now, multiple women in the HR department

ORAL AND VIDEOTAPED DEPOSITION OF REENA MATHEW

Page 221

1    A. Stephanie.  I sent her an e-mail.
2    Q. And did Stephanie dignify it?  Did she say,
3  hey, no, it's not because of that?
4    A. She responded, and then, you know, again spoke
5  to Yessica, and I think, based on what Yessica said, you
6  know, I'm not sure -- I can't speak for her of if she
7  looked into it or not, but she certainly went by
8  Yessica's word.
9    Q. Okay.  Have you told me as best as you could
10 about all of the reasons why you believe you were
11 discriminated against because of your pregnancy and
12 retaliated against?
13   A. Yes.  I'm trying to make sure I didn't forget
14 anything, but I believe so, yes.
15   Q. Do you believe that any other Santander
16 employee was discriminated against because of her
17 pregnancy?
18   A. Not that I know of.
19   Q. Do you believe that there is anyone at
20 Santander who feels that she was mistreated because of
21 her pregnancy, other than you?
22   A. No.  Not that I'm aware of, no.
23   Q. The people, person who you feel discriminated
24 against you because of your pregnancy is Yessica.
25   A. Ultimately, yes.

Page 222

1    Q. I understand your testimony that you believe
2  Stephen Shaffer, Stephanie Elad and --
3    A. Lina.
4    Q. -- Lina, Angelina Hullum, went along with
5  Yessica's decision to discriminate against you based on
6  your pregnancy because they want to support Yessica
7  and/or they want to help cover up something that they
8  saw that was bad.
9    A. That's what I believe, yes.
10   Q. But you don't believe those three people
11 actually chose to discriminate against you because of
12 your pregnancy.
13   A. Correct.
14   Q. Do you have any reason as to why Yessica would
15 discriminate against you based on your being pregnant?
16   A. No idea.  None.  I honestly thought it was a
17 personal like vendetta.  It was so strange.
18   Q. Do you think it was a personal vendetta and
19 that it didn't have anything to do with your pregnancy?
20   A. Say that one more time.
21   Q. Do you think it was a personal vendetta and
22 didn't have anything to do with your pregnancy?
23   A. No, because then when I started connecting the
24 dots, then it was pregnancy.
25   Q. Do you believe Santander as a whole does not

Page 223

1  like pregnant people or this was a Yessica thing?
2    A. Yessica thing.
3    Q. Do you know anyone at Santander other than
4  Yessica who you believe doesn't like pregnant people?
5    MR. ULOTH:  Never mind.  I was going to
6  object, but I'm not.
7    A. No.
8    Q. (By Mr. Hurst)  We asked you in one of the
9  interrogatories, and I'm happy to put it in front of
10 you, Exhibit No. 9.
11   (DEPOSITION EXHIBIT 9 MARKED.)
12   Q. (By Mr. Hurst)  We asked you in Interrogatory
13 No. 6 for you to identify -- for you to describe in
14 detail each communication you've had with anyone other
15 than your attorney relating to the subject matter of
16 this lawsuit, and we identified the categories of
17 information that we were seeking in this answer, and
18 you've provided a substantial answer.
19   My question to you is, have you visited
20 with anyone about the subject matter relating to this
21 lawsuit, in addition to those whom you've identified?
22   A. No.
23   Q. If I've asked you this already, my apologies.
24 Where is Greg Vinson, now?
25   A. I don't know.  I really don't know.

Page 224

1    Q. Where is Mitzie Jefferson?
2    A. I couldn't tell you.  Yeah, it's -- I think
3  everyone's just parted ways.  I think Tensya's no longer
4  there.  Demetrice is no longer there.  Greg's definitely
5  not there.  Mitzie, I'm not sure about.
6    Q. And you haven't spoken to any of these people
7  in seven, eight, nine years.
8    A. Demetrice and even Tensya, I do keep in touch
9  with, but to your question, as far as if anyone knows
10 about this lawsuit, no one knows.
11   Q. So you have nothing to add to this particular
12 interrogatory answer?
13   A. No.
14   Q. When I asked you earlier about why you didn't
15 say something to Lina about your belief that you felt
16 you were being discriminated against based on your
17 pregnancy, or felt like you were getting picked on
18 unwarrantedly, you said it wouldn't have done any good
19 and you didn't want to tell anyone else, but yet, you
20 told Greg Vinson and Mitzie Jefferson two days after you
21 were written up, and they weren't even in HR, were they?
22   A. No.
23   Q. So why is it that you told Mitzie and Greg but
24 you didn't tell Lina, someone who is in HR?
25   A. Because at that time, because Jessica had

APP058

ORAL AND VIDEOTAPED DEPOSITION OF REENA MATHEW

Page 225

1  mentioned things saying Lina also said that, so then I
2  was like, oh, no.
3       Q.  Like the ship's already sailed with Lina or the
4  well's already poisoned.
5       A.  Yes, exactly.
6       Q.  But why would you go to Greg and Mitzie?  Were
7  you just blowing off steam, or did you think they were
8  going to help you?
9       A.  They were two people that just from a work
10  perspective, there was a level of trust there, so --
11  and, you know, Greg was a little bit older, so he always
12  gave really good advice on different topics, so -- but,
13  yeah, I was just really -- honestly, just really lost at
14  the time and just didn't know, you know, does it happen
15  to anyone else?  And, you know, what I could do about
16  it.
17       Q.  Do you have notes from these conversations?
18       A.  These conversations?  Just what I put in here
19  from --
20       Q.  How did you remember those conversations from
21  nine, eight years ago?
22       A.  It honestly is that fresh.  I mean --
23       Q.  You got the dates right, also?
24       A.  Yes.
25       Q.  You don't have any notes from it?

Page 226

1       A.  Date?  I mean -- I mean, those are, you know,
2  as best as I could recall.
3       Q.  You're getting dates, the exact date.
4       A.  As best as I could recall it, yes.  Yes.  Those
5  are the dates I remember.
6       Q.  Okay.  But you don't have any notes from any of
7  these conversations?
8       A.  No.  No.  It was kind of in passing.
9       Q.  Like, how would you remember on or about
10  January 19th of 2016.
11       A.  When something like this happens, you do tend
12  to remember dates.  When something is -- you know, when
13  something substantial happens in your life and add some
14  trauma to it, yeah, you do remember.
15       Q.  So, Greg tells you in that January 19 call that
16  some employees were treated harshly and unfairly and
17  others, based on who you knew.  You see that?
18       A.  Uh-uh.
19       Q.  Was he saying that people who are popular or
20  people who are friendly with managers get away with more
21  than those who are not as tight with the managers?
22       A.  We had seen some things by then where, you
23  know --
24       Q.  And that's what he's saying, right?
25       A.  Yes.

Page 227

1       Q.  You don't think that that is what happened
2  here.  I mean, you think what happened here is Yessica
3  discriminated against you based on your pregnancy.
4       A.  Correct.
5       Q.  But Greg, in his wisdom, was offering food for
6  thought of, could be one of those deals that you weren't
7  well connected enough or part of the club.
8       A.  So, it was more of he's not surprised because
9  of some of the things that had happened that we had
10  witnessed.  Whether they be favoritism, nepotism, all
11  the isms, you know, he wasn't surprised is what that
12  meant, not in my situation.
13       Q.  Interrogatory No. 7 -- strike that.  I'll get
14  back to it.
15            What current or former Santander employees
16  have you spoken with over the last two years?
17       A.  The last two years?  Demetrice, Tensya and
18  Jason, and spoke meaning in person?
19       Q.  No.  Called, text.
20       A.  Call, text.
21       Q.  E-mail.
22       A.  I mean, there were a couple of messages through
23  Facebook, but, I mean, just random.  I don't remember
24  exactly every which -- you know, but there were a couple
25  of just -- the last two years --

Page 228

1       Q.  Go ahead.
2       A.  Lisa.  There's a person, HR, Lisa Mir, she just
3  asked for -- if I had any leads on a position, you know,
4  any positions that were open.
5       Q.  Meer, M-E-E-R?
6       A.  M-I-R.  Lisa Mir.
7       Q.  When did you last speak with Lisa Mir?
8       A.  It's probably a couple months ago.  She was
9  just asking if I knew of any leads for a position, maybe
10  like December.
11       Q.  What about Jason, when did you last speak with
12  him?
13       A.  Jason, that was maybe three months ago.
14       Q.  April, May?
15       A.  If it's August, probably May.
16       Q.  And what did y'all talk about?
17       A.  Just family, catching up.
18       Q.  He didn't ask about this lawsuit?
19       A.  He doesn't know, yeah.  No.
20       Q.  What about Tensya, when did you last speak with
21  her?
22       A.  Tensya?  That was a month ago.
23       Q.  What did y'all talk about?
24       A.  Same thing.  Catching up.  Latest.  Latest
25  news.

Page 249

1    **A. Yes.**
2    Q. And this particular version has handwriting on
3  it that you don't necessarily recognize as being
4  Yessica's, then there's some notes attached to it that I
5  asked you if you recognized those to be Yessica's
6  handwriting, you didn't know one way or another.  You
7  also questioned whether or flat out stated as a matter
8  of fact that if Yessica's representing these to be her
9  notes, they she just created these, she wasn't -- there
10  weren't meetings that actually happened between you
11  guys, and so these had to have been manufactured.  Is
12  that a fair characterization of your testimony?
13    **A. Yes.**
14    Q. There is no doubt that you were issued the PIP,
15  the first PIP on December 1st, 2015, right?
16    **A. Uh-huh.**
17    Q. And you felt you were being picked on.
18    **A. For the December 1, yes.**
19    Q. So, let's go to Bates label 1492, please.  And
20  you see at the top of that page, it says, "Reena
21  12/1/2015"?
22    **A. Uh-huh.**
23    Q. You don't know what -- whose handwriting that
24  is, correct?
25    **A. No idea.**

Page 250

1    Q. And if I told you that it was Yessica's, you
2  would tell me the same thing, that maybe it is, maybe it
3  isn't, but you know that these notes probably were
4  manufactured.
5    **A. That's -- yes.**
6    Q. Okay.
7    **A. And honestly, I mean, really even the 3rd, that**
8  **never happened.  That's like --**
9    Q. Okay.  So, I was going to ask you about that.
10  So no doubt you guys did meet on December 1st, 2015,
11  when she gave you the PIP, correct?
12    **A. Uh-huh.**
13    Q. You did say, why are y'all doing this to me,
14  which is accurately recorded there.
15    **A. Uh-huh.**
16    Q. You did speculate that, is it because I'm
17  pregnant?  Because I'm brown?
18    **A. No.**
19    Q. You never said, "because I'm brown"?
20    **A. No.**
21    Q. Okay.  I'm going -- did you say, "I'm going to
22  take it higher"?
23    **A. Yes.**
24    Q. So, which part of the first paragraph do you
25  think is not accurate, the "because I'm brown"?

Page 251

1    **A. Yes.  I never said -- yes.  I never said that.**
2    Q. Okay.  Did you say the other things that are
3  indicated in these notes?
4    **A. I never said, "I'm truly the busiest".**
5    Q. Did you say you were the busiest?  Maybe not
6  the "truly" part?
7    **A. Yeah, not the "truly".  That's way too**
8  **definitive.  I would never say that.**
9    Q. Maybe an adverb for emphasis.
10    **A. Yes, exactly.  Never had -- you never got --**
11  **yeah.  That's all good.**
12    Q. Yeah, I guess the point I'm making is, did
13  these notes have any credibility to you, in that they do
14  memorialize most of what you and Yessica had discussed
15  on those particular days?
16    **A. I mean, yes, but, I mean, she's adding things,**
17  **again, that are just not true.  I can't believe I'm**
18  **brown?  I would never say that.  Then -- and she's of**
19  **Latin descent.  Why would I tell a Latin person that?**
20  **That makes absolutely no sense.**
21    Q. Because she's also brown.
22    **A. She's also considered brown.**
23    Q. I thought about it.
24    **A. And then the one she said, "I can't work after**
25  **hours, I have a family".  I would never tell a superior**

Page 252

1  that.  My children are older and those aren't true
2  statements.  This is what I've had the problem with all
3  along with her.  She doesn't -- she's not truthful.
4    Q. So there are certain things in there, most of
5  what she has recorded in there was indeed exchanged
6  between the two of you.  Some of those things you are
7  certain were never discussed between the two of you.
8    **A. Certain, categorically, yes.  And I even**
9  **answered e-mails from my phone.  We did go on a trip.**
10  **Who does that?  I never said, "who does that?"  I'm not**
11  **even a disrespectful person like that, like I would**
12  **never say those things.**
13    Q. So most of that was accurate, though, you did
14  say, "I even answered e-mails on my phone when I was out
15  of town".
16    **A. That's kind of what I was saying earlier.  I'm**
17  **the type of person, if someone gives me a project, if**
18  **someone gives me something to do, I'm going to do it.**
19  **Like I don't care what it takes, I'm going to get it**
20  **done.  Especially with my work ethic.  That's how I've**
21  **always been.**
22    **But if I do feel overwhelmed, and, you**
23  **know, I'm not able to do something, on the flip side, I**
24  **don't want to submit something that isn't what I feel is**
25  **my best or, you know, my typical -- what's the word I'm**

ORAL AND VIDEOTAPED DEPOSITION OF REENA MATHEW

Page 285

1    A.  Yes, I do remember this, yeah, but never in
2  conversation would I tell her that.  Never.
3        (DEPOSITION EXHIBIT 24 MARKED.)
4    Q.  (By Mr. Hurst)  Exhibit No. 24 is an e-mail
5  exchange between Stephanie Elad and Stephen Shaffer on
6  December 22nd, 2015.  Have you seen this exchange?  And,
7  actually, it starts with an e-mail message from Lina to
8  Stephanie Elad on December 22nd.
9    A.  Yes.  And this -- yeah, I have seen this, it's
10  Jorge Munoz, Yessica's good friend.
11    Q.  So you think this was a setup?
12    A.  Yes.  Absolutely.  A hundred percent.
13    Q.  So Jorge was -- was inspired by Yessica --
14    A.  Yes.
15    Q.  -- to go to Angelina.
16    A.  Uh-huh.  And honestly, I think George is -- you
17  know, it's Jorge, but we all called him George, George
18  was the type, very jokey, very jovial, very
19  approachable, and I know I did go to him, and I just, I
20  remember saying, hey, George, you know, if ever there's
21  a problem, just, you know, let me know.  And that was
22  it, you know?
23        It wasn't like, you can't do this.  You got
24  to always come to me, like keep it secret, that's what
25  they're making it sound like.  It was never that.  And I

Page 286

1  know George, he's so jokey, he probably went to Yessica,
2  for a fact I know this is probably what happened, but he
3  probably went to Yessica and said, hey, you know, Yessica
4  just had a concern, and she probably flipped the script
5  into making this whole big mountain out of a mole hill,
6  which was her MO always, when you look at all this
7  stuff.
8    Q.  So when -- do you believe -- strike that.
9        Do you believe that Jorge Munoz said to
10  Lina that Reena told them not to mention the
11  conversation to Lina or Yessica or it would only get her
12  into more trouble?
13    A.  Absolutely not.  I would never say that.  That
14  would be putting his job in jeopardy.  I would never say
15  that.
16    Q.  So, then, Lina -- so Lina sends it to
17  Stephanie.  Stephanie sends an e-mail to Stephen Shaffer
18  who's her boss at the time, in December of '15.
19    A.  Uh-huh.
20    Q.  And Stephanie says, I was clear with her when I
21  spoke to her a few weeks ago that she was not to discuss
22  the feedback in her PIP with the business.  Now, do you
23  recall having a meeting with Stephanie in December?
24    A.  In December?  I'm sorry.  Where is this?
25    Q.  It's the second sentence.  Stephanie writes,

Page 287

1  I'm concerned that Reena is choosing to speak with at
2  least one AVP at Lewisville about the late DA issue.
3  You were late on DAs, right?
4    A.  There was one time.
5    Q.  Okay.  And so, Stephanie was expressing her
6  concern that you were going to an AVP, at least one AVP
7  at Lewisville about the late DA issue, and Stephanie had
8  been -- says that she had been clear with you when she
9  spoke with you a few weeks earlier that you were not to
10  discuss the feedback in her PIP with the business.
11    A.  No.
12    Q.  Did you try to discuss the feedback that you
13  were given in your PIP with anyone in the business?
14    A.  The feedback from the PIP?
15    Q.  Which says that you had that DA issue.  You
16  don't recall.
17    A.  Well, I mean, I don't recall, but like I said,
18  you know, when I was blind-sided by what -- how Yessica
19  was treating me, you know, Greg and I spoke, but never
20  to the extent of, you can't -- and plus, he would never
21  say that.  So, no.
22    Q.  So I'm trying to understand your testimony.
23  Did you or did you not go to the business side to find
24  out whether it had been reported the way that you
25  understood from Stephanie?

Page 288

1    A.  Absolutely not.  I would never.  Never.  No.
2    Q.  Stephanie writes to Stephen, I'm concerned
3  about Reena's judgment in advising this AVP to delay
4  addressing an issue.  First of all, the AVP didn't need
5  HR's involvement about speaking to associate about a
6  dress code violation.  Then the last two sentences are
7  as follows in that paragraph.  Furthermore, she, as in
8  Reena, didn't bring Yessica in the loop on this, at
9  least she hadn't by 2:00 p.m. today, when I last spoke
10  with her.  As far as Reena knows, the business could
11  still be waiting on her to respond, not being aware that
12  the AVP reached out to Lina and followed her counsel.
13  Any truth to that?
14    A.  No.
15    Q.  So Stephen, getting this from Stephanie --
16  again, Stephanie is your boss' boss at this time,
17  correct?
18    A.  Uh-huh, yes.
19    Q.  And Yessica's not even on this e-mail, right?
20    A.  I want to make sure I'm looking at the right
21  part of the e-mail.  Is this -- so this -- I mean, you
22  know, as far as that 2:00 p.m. or -- what paragraph are
23  you on, right now?  Oh.
24    Q.  What we were just looking at was Stephanie's
25  e-mail to Stephen.

ORAL AND VIDEOTAPED DEPOSITION OF REENA MATHEW

Page 289

1    A. Oh, she didn't bring Yessica in the loop.  This
2  is -- let's see.  And I love how it's always -- besides
3  the Jeff and Scott thing, again, Yessica was very close
4  friends with them, everything else is always hearsay.
5  It's never a document from the actual business.
6       So, that's also what I have concerns with.
7  So, do I believe, yes, by this time, this is
8  December 22nd, when all this has all, you know, taken
9  place and has become a big ordeal.  Did I -- do I
10 believe, yes, they were conspiring?  Absolutely.  And
11 no, I would never tell any business partner to any of
12 this.
13      Q. Who was in the conspiracy?
14      A. You know, as I had previously mentioned,
15 Jessica was the --
16      Q. The ring leader.
17      A. -- the catalyst, yes, the ring leader.  And
18 unfortunately, she, you know, dragged in Lina and
19 Stephanie.  Lina because she needed documentation on me.
20 I think she just asked her for anything that she could
21 come up with, and that's why it was previous year stuff.
22      Q. Just name the people.
23      A. Okay.  So --
24      Q. Who is in the conspiracy to allow Yessica to
25 discriminate against you based on your pregnancy?  Who's

Page 290

1  part of the cover-up?
2       A. The cover-up, I believe Stephen, Lina and
3  Stephanie.
4       Q. Anyone else?
5       A. Some of the business partners, Jorge Munoz, who
6  she was very close to, who Jeff and Scott, yes, she was
7  very good friends with all of them.
8       Q. Do you think the business people knew why,
9  according to you, Yessica was trying to manipulate them
10 into saying bad things about you?
11      A. No clue.  It's the same thing she did to me.
12 No clue.  You know, it's like she'll be very nice and
13 affable in front of your face, and then flip the script.
14          (DEPOSITION EXHIBIT 25 MARKED.)
15      Q. (By Mr. Hurst)  Here's Exhibit No. 25.  Folks,
16 I will have you know that this is the second to last
17 exhibit of this fine deposition.  Have you seen this
18 document before?
19      A. Yes, this I'm familiar with, yes.
20      Q. Okay.  I'll represent to you that this is an
21 e-mail string with a lot of people on it --
22      A. Uh-huh.
23      Q. -- that is from March of 2016.  And this is
24 another example in near the top where Stephanie Elad is
25 saying she thinks it could have been handled better by

Page 291

1  you, correct?
2       A. That's what she appears to say, yes.
3       Q. Do you know what she's referring to that she
4  thinks could have been handled better?
5       A. Yes, the recognition program.
6       Q. What could you have done better, in Stephanie's
7  eyes?
8       A. I think she wanted this project done ASAP,
9  whereas it was a brand new thing for all of us,
10 something new for me.  I even, you know, let them know
11 I'm not an Excel whiz, but I'll definitely try and
12 figure that out.  But it's not something that could have
13 been done as quickly as she was wanting it to be done.
14 And, again, I get penalized for -- where's the grace for
15 me?  There is none.  And it's funny, all these issues
16 are after December.
17      Q. Stephanie is claiming to Holly Hanes that you
18 misrepresented to her that the statement, she's
19 partnering with HRIS to assist, but wanted to give a
20 status update before you left.
21      A. Uh-huh.
22      Q. Do you see that?
23      A. Yes.
24      Q. And Stephanie says that, in reality, you hadn't
25 reached out to HRIS yet and did so shortly afterwards.

Page 292

1       A. That's not true.
2       Q. You had already reached out to HRIS?
3       A. Yes.  And maybe --
4       Q. Why would she think that you hadn't?
5       A. Because -- when was it?  It was one of those
6  projects that was in the works and, you know, we were
7  working with HRIS, and I know it was mentioned to them,
8  hey, this is something we're trying to do, this
9  recognition program, it's not going to be something that
10 happens quick but, you know, we are going to need to
11 pull numbers.  This was a huge undertaking, this isn't
12 something that you can do so quickly and just turn it
13 around in a couple of days.  But they had known I was
14 going to be out of the office.
15      You know, I thought I was doing the right
16 thing by letting them know, hey, I have looped them in,
17 this was previous conversations, not part of this
18 e-mail, but they may have forgotten.  I don't know.  I
19 can't speak for them.  But for sure it was mentioned to
20 them.
21      Q. Who were you partnering with over at HRIS?
22      A. Paula.
23      Q. So wouldn't Paula be the one to say whether you
24 had reached out to her or not?
25      A. Yes.

ORAL AND VIDEOTAPED DEPOSITION OF REENA MATHEW

Page 301

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE NORTHERN DISTRICT OF TEXAS
2         DALLAS DIVISION
3  REENA S. MATHEW,          )
                             )
4      Plaintiff,            )
                             )
5  VS.                 ) CIVIL ACTION
                             )
6  SANTANDER CONSUMER USA     ) NO. 3:23-CV-01494-N
   INC.,                 )
7                        )
       Defendant.        )
8                        )
9
10  ----------------------------------
11       DEPOSITION CERTIFICATE
12          REENA S. MATHEW
13          AUGUST 8, 2024
14  ----------------------------------
15
16       I, Nita G. Cullen, Certified Shorthand
17  Reporter in and for the State of Texas, hereby certify
18  to the following:
19          That the witness, REENA S. MATHEW, was
20  duly sworn by the officer and that the transcript of the
21  oral deposition is a true record of the testimony given
22  by the witness;
23          I further certify that pursuant to FRCP
24  Rule 30(f)(1) that the signature of the deponent:
25          ___ was requested by the deponent or a

Page 302

1  party before the completion of the deposition and is to
2  be returned within 30 days from date of receipt of the
3  transcript.  If returned, the attached Changes and
4  Signature Page contains any changes and the reasons
5  therefor;
6          ___ was not requested by the deponent or a
7  party before the completion of the deposition.
8          I further certify that I am neither
9  attorney or counsel for, nor related to or employed by,
10  any of the parties or attorneys to the action in which
11  this deposition was taken.  Further, I am not a relative
12  or employee of any attorney of record in this case, nor
13  am I financially interested in the outcome of the
14  action.
15          Subscribed and sworn to on this 12th day of
16  August, 2024.
17
18
19      _____
        NITA G. CULLEN, Texas CSR #1563
20      Expiration Date:  08-31-2024
        BRADFORD COURT REPORTING, L.L.C.
21      Firm Registration No. 38
        7015 Mumford Street
22      Dallas, Texas  75252
        (214) 931-2799
23
24
25

To:   Page 2 of 2                    2016-05-04 11:53:03 EDT                 18665807499 From: Spielberger Law Group 2

May.04.2016  07:59 AM Philip&Reena Mathew        9724011826              PAGE.  2/ 2

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

Charge Presented To:
[X] FEPA
[X] EEOC    450-2016-02634

**Texas Workforce Commission, Civil Rights Division**                        and EEOC
*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Reena Mathew** | (214) 417-0821 | 10/27/1976 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **1355 Valley Vista Dr.** | **Irving, TX 75063** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe
Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **Santander Consumer USA** | 1000+ | (888)-222-4227 |

RECEIVED

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **2701 Highpoint Oaks Dr.** | **Lewisville, TX 75067** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | MAY 04 2016 |

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
DALLAS DISTRICT

| Street Address | City, State and ZIP Code | |
|---|---|---|

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest — Latest |
| | 10/2015 — 04/19/2016 |

[ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[X] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] GENETIC INFORMATION
[X] OTHER (Specify) **Pregnancy**

[X] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**Statement of Harm:** Santander Consumer USA discriminated against me because of my sex and my
pregnancy and terminated my employment in retaliation for concerns I raised to Human Resources. On
October 30, 2015 I informed Santander Consumer USA HR Manager Yessica Adriano that I was pregnant.
Prior to informing Santander Consumer USA of my pregnancy, I had never received any poor work
performance evaluations nor had any disciplinary action levied against me. However, shortly thereafter, on
December 1, 2015, I was placed on a thirty-day performance improvement plan without any warning or
cause and raised my concerns in regards to the disparate treatment to Human Resources. I was initially
denied my merit increase and annual bonus and upon the expiration of my first performance improvement
plan, I was placed on a second, ninety-day performance improvement plan without cause. Subsequently, as
a result of my pregnancy and my concerns raised to Human Resources, I was subjected to increased
scrutiny as compared to other employees, in an effort to effectuate my termination.

**Statement of Discrimination:** I believe I have been discriminated against because of my sex in violation of
Title VII of the Civil Rights Act of 1964 (Title VII) and because of my pregnancy in violation of the Pregnancy
Discrimination Act of 1978 (PDA).

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT |
| 5/4/16          R S Mathew  Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |



# ASSOCIATE HANDBOOK

# REVISED 2013

Confidential

# 1.0   INTRODUCTION TO SCUSA

## 1.1   *BE MORE!*

Our success depends upon the relationships we build with our associates, customers, suppliers, vendors, and the general public. How we serve our customers influences their impressions of SCUSA and affects their interest and willingness to utilize our resources. Because of this, it is important to remember that all associates are an ambassador of Santander Consumer USA Inc. The more our associates are able to communicate and build relationships with our customers, the more SCUSA customers will feel valued, respected, and will appreciate our associates, company and products and services.

While our customers are a vital part of our success, our associates are the main ingredient. Therefore, we must also *BE MORE!* to each other. We must always respect one another and encourage each other to be inspired, involved, confident and driven. The following are several things associates can do to *BE MORE!*:

- Act competently and deal with customers in a courteous and respectful manner
- Communicate pleasantly and respectfully with other associates at all times
- Follow up on directives and questions promptly, provide business-like replies to inquiries and requests and perform all duties in an orderly manner
- Be ambitious and take pride in their work

As we continue to grow, we must never lose sight of the fact that our customers are the reason we are here. Whether we're explaining how a loan works or simply assisting them in making a payment, our customers depend on us to help them make the best decision for their situation. They are counting on us to do MORE than just answer their calls; they need us to do MORE on their behalf!

*BE MORE!* is about creating a positive customer experience with every interaction. How YOU interact with our customer is what that customer will remember about our entire organization. *BE MORE!* is a call to action, asking that we bring out the best in others by bringing out the best in ourselves. We are proud of your contribution to SCUSA's success and know that with you, we can be great, we can be pacesetters in the industry and we can *BE MORE!*

## 1.2   Associate Information Line

SCUSA has established an Associate Information Line at (866) 552-4650 or extension 2742 for associates to centrally contact many of the available SCUSA resources. Details about this line are listed in the Addendum to this Handbook.

- Closing and Delayed Openings: To listen to possible changes to business operating schedules due to weather or other conditions
- Help Desk: To report a new or existing IT equipment issue
- FMLA/Benefits: To leave a message for benefits if you have a pending or active Family Medical Leave (FML) claim
- Employee Assistance Hotline: To contact professional counselors for confidential assistance with personal issues
- Media Inquiries: To report media inquiries
- Departmental Attendance Call in Line (may be available; please contact your manager for more information)

## 1.3   Equal Employment Opportunity

SCUSA places a high value on providing equal employment opportunity and maintaining a diverse workforce. SCUSA works hard to comply with all applicable laws prohibiting discrimination and we strive

Page **5** of 47

to make our workforce reflect the rich diversity of our society and our customers. As a part of this effort, SCUSA recruits, hires and promotes equal treatment for all associates irrespective of race, color, sex, creed, gender (including identity and expression), religion, national origin or ancestry, ethnicity, age, marital status, registered domestic partner status, sexual orientation, disability, physical or mental disability, medical condition including genetic characteristics, veteran status or any other prohibited basis by law. We also prohibit unlawful discrimination based on the perception that anyone has any of those characteristics, or is associated with a person who has or is perceived as having any of those characteristics. All such discrimination is unlawful.

This commitment extends to every aspect of what we do, including hiring, compensation, promotions, benefits, transfers, layoffs, company-sponsored training, terminations, and social and recreational programs. We expect all associates to make a personal commitment to practice and enforce the principles of our equal employment opportunity policy.

## 1.4   Immigration Law Compliance

SCUSA is committed to employing only United States citizens and aliens who are authorized to work in the United States and does not unlawfully discriminate on the basis of citizenship or national origin. Each new associate, as a condition of employment, must complete all documents required by applicable laws and present documentation establishing identity and employment eligibility. SCUSA complies with all state law requirements related to E-Verify. Former associates who are rehired must also complete these forms if requested by us or required by law. Associates with questions or seeking more information on immigration law issues are encouraged to contact the Human Resources department. Associates may raise questions or complaints about immigration law compliance without fear of reprisal.

## 1.5   Employment At-Will

SCUSA associates are employed on an at-will basis. Employment at-will may be terminated or disciplined with or without cause and with or without advance notice at any time by the associate or SCUSA. Nothing in this Statement, *Associate Handbook*, personnel documents, benefit plans or in any other oral or written statement, shall limit the right to terminate at-will employment. No manager or associate of the Company has any authority to enter into an agreement for employment for any specified period of time or to make an agreement for employment on other than at-will terms. Only the CEO of SCUSA has the authority to make any such agreement, which is binding only if it is in writing.

With the exception of employment at-will, terms and conditions of employment with SCUSA may be modified at the sole discretion of SCUSA with or without cause or notice at any time. No express or implied contract concerning any employment-related decision or term or condition of employment can be established by any other statement, conduct, policy or practice. Examples of the types of terms and conditions of employment that are within the sole discretion of SCUSA include, but are not limited to, the following: promotion; demotion; transfers; hiring decisions; compensation; benefits; qualifications; discipline; layoff or recall; rules; hours and schedules; work assignments; job duties and responsibilities; production standards; subcontracting; reduction, cessation or expansion of operations; sale, relocation, merger or consolidation of operations; determinations concerning the use of equipment, methods or facilities; or any other terms and conditions that SCUSA may determine to be necessary for the safe, efficient and economic operation of its business.

## 1.6   Arbitration

All associates are required to sign an *Arbitration Agreement* as a condition of employment and continued employment at SCUSA. The agreement states that SCUSA and the Associate agree to submit to binding arbitration any dispute, claim, or controversy that may arise during the entire employment relationship.

## 1.7   Introductory Period

The first ninety (90) days of employment at SCUSA are considered an introductory period, and during that period associates may not accrue benefits described in this manual and company policies unless otherwise required by state law or detailed by position. This introductory period will be a time for

Confidential

SC000865

APP067

If associates disagree with established rules of conduct, policies, or practices, they can express their concern through the problem and complaint resolution procedure. No associate will be penalized, formally or informally, for voicing a complaint with SCUSA in a reasonable, business-like manner, or for using the problem and complaint resolution procedure. If a situation occurs when associates believe that a condition of employment or a decision affecting them is unjust or inequitable, they are encouraged to make use of the following steps.

- Associate presents problem or concern to immediate manager. If manager is unavailable or associate believes it would be inappropriate to contact that person, associate should contact the next manager in the chain of command.
- Manager responds to problem during discussion or after consulting with appropriate management, when necessary. Once the situation has been investigated, the associate will be provided a solution or explanation.
- If the problem or issue still has not been resolved to the satisfaction of the associate, they may contact the Human Resources Department.
- Human Resources Department counsels and advises associate, assists in putting problem in writing, and attempts to reach a reasonable resolution.

This procedure, which we believe is important for both the associate and The Company, cannot guarantee that every problem will be resolved to the associate's satisfaction. However, SCUSA values all observations, and associates should feel free to raise issues of concern, in good faith, without the fear of retaliation. So that SCUSA may investigate your complaint, The Company cannot guarantee complete confidentiality or anonymity.

**Suggestions**

Associates are encouraged to offer positive and constructive criticism. An anonymous suggestion box is located outside of each local Human Resources office. Additionally, the associate may also tell their manager or email Human Resources.

## 1.11   Unlawful Harassment and Discrimination

SCUSA is dedicated to maintaining a workplace free from harassment and discrimination based on race, color, sex, creed, gender (including identity and expression), religion, national origin or ancestry, ethnicity, age, marital status, registered domestic partner status, sexual orientation, disability, physical or mental disability, medical condition including genetic characteristics, veteran status, or any other category protected by law (prohibited behavior). This includes harassment by any associate, manager, co-worker, vendor, client, customer or any third party. We also prohibit unlawful harassment based on the perception that anyone has any of those characteristics, or is associated with a person who has or is perceived as having any of those characteristics. SCUSA has a "zero tolerance" policy for harassment of any kind.

With respect to harassment, SCUSA prohibits:

- Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual or otherwise offensive nature, especially where:
  - Submission to such conduct is made either explicitly or implicitly a term or condition of employment;
  - Submission to or rejection of such conduct is used as the basis for employment decisions affecting such individual; or
  - Such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment.
- Unwelcome and ongoing, pervasive or severe harassment that interferes with work performance and creates an intimidating, hostile or offensive work environment. Examples of prohibited behavior include, but are not limited to, the following:

- Verbal harassment: unwelcome offensive comments, jokes, innuendoes, and other statements
    - Examples: Lewd or off-color jokes about sex, sexual orientation, race, age, disability or ethnicity, profanity, foul or obscene language, name-calling, belittling, sexually explicit or degrading words to describe an individual, comments about an associate's anatomy and/or dress, questions about a person's sex life and/or sexual practices, use of patronizing terms or remarks, verbal abuse or graphic verbal commentaries about the body, or requiring or suggesting that an associate wear sexually suggestive clothing.
- Physical harassment: assault, impeding or blocking movement or any physical interference with normal work or movement, when directed at an individual
    - Examples: touching (such as rubbing or massaging) someone's neck or shoulders, stroking someone's hair, or intentionally brushing against another's body
- Visual harassment: offensive or sexually explicit material (whether electronic or paper)
    - Examples: Suggestive or sexually explicit posters, calendars, photographs, graffiti or cartoons, offensive email, defamatory/threatening or otherwise unlawful postings on social network sites, voice-mail messages, letters or any other written communication, leering, stalking
- Sexual favors: unwanted sexual advances or demands that condition an employment benefit upon an exchange of sexual favors (Quid Pro Quo)
    - Examples: continued requests for dates; promises of advancement or additional wages in exchange for sexual favors; any threat of demotion, termination or similar adverse job action if requested sexual favors are not given; making or threatening reprisals after a negative response to sexual advances or propositioning an individual
- Bullying (including cyber-bullying): any repeated written, verbal, or physical act, electronic expression or gesture or any combination thereof, directed at an individual causing physical or emotional harm, places the individual in reasonable fear of harm to himself/herself, or creates a hostile work environment,
    - Examples: Dehumanizing, intimidating, humiliating, threatening, degrading, taunting, malicious teasing, insulting, spreading rumors, manipulating social relationships, coercion, hitting, kicking, spitting, or damaging personal belongings
    - Examples of cyber-bullying: bullying through the use of information and communication technology such as telephones, cell/mobile phones, computers and the Internet, including email, instant messages, text messages, Internet postings on web pages or blogs.
- Any other conduct which has the purpose or effect of creating an intimidating, hostile or offensive working environment

Each associate is responsible for helping create an atmosphere free of unlawful discrimination and harassment, sexual or otherwise. Further, associates are responsible for reporting all harassment and discrimination cases as well as respecting the rights of their co-workers.

If an associate experiences any job-related harassment he/she should ask the individual to discontinue the behavior immediately.  If the associate is uncomfortable in doing so, he/she should escalate the matter to his/her manager and/or Human Resources. If an associate believes that he/she has been treated in an unlawful, discriminatory manner based on any of the protected categories listed above, he/she should promptly report the incident to his/her manager and/or Human Resources. Managers are also required to report claims to Human Resources immediately. Human Resources will investigate the matter, if required, and take appropriate action. Complaints will be kept confidential to the extent possible, consistent with SCUSA's need to conduct the investigation and take any necessary action. As part of the

Page **11** of **47**

SC000870
APP069

investigation, all parties will be required to sign the a confidentiality agreement. In the event an associate experiences any job-related harassment that violates this policy by a member of Human Resources, he/she should escalate to SCUSA's Legal Department.

Federal Equal Employment Opportunity Commission and the corresponding state agency (if applicable) investigate and prosecute complaints of prohibited harassment in employment. If an associate thinks they have been harassed or that they have been retaliated against for resisting or complaining, they may file a complaint with the appropriate agency. The nearest office can by located at www.eeoc.gov.

If the results of the investigation indicate that an associate has harassed another associate, disciplinary action may be taken against the offending associate, up to and including termination of employment.

SCUSA prohibits any form of retaliation against any associate for filing a bona fide complaint under this policy or for assisting in an investigation. Retaliation is also against the law. Behavior such as turning a cold shoulder, spreading rumors or avoiding someone who refuses to go along with the offensive behavior are all forms of retaliation. Regardless of the form it takes, retaliation is against company policy as well as the law.

Confidential

SC000871

APP070

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|------|------|------|------|------|------|------|------|------|------|
| 3/16/2015 | Jorge | Munoz | Reena Mathew | N | 300 | Excellence | Thank you for your help on everything you do! | public | award_points |
| 3/17/2015 | Gregory | Vinson | Reena Mathew | N | 25 | Respect | Thanks for all you do! It is appreciated. | public | award_points |
| 3/18/2015 | Kate | Gatlin | Reena Mathew | Y | 5 | Service | I wanted to take a moment out of my day to thank you for all of your hard work in ensuring our Lewisville events/initiatives are a success. You are often the go-to people for our business partners at our site, and you have incredible knowledge about the site culture. Your support and feedback helps ensure our success and also lets us continually improve on our processes.<br><br>All of you are an incredible asset to the engagement team! We appreciate you! | public | award_points |
| 3/20/2015 | Stephanie | Elad | Reena Mathew | N | 5 | | | | high_five |
| 3/20/2015 | Stephanie | Elad | Reena Mathew | N | 5 | | | | high_five |
| 3/20/2015 | Peggy | Rolston | Reena Mathew | N | 5 | Our People | I can't thank you enough for sharing your knowledge and experience with me.  You are always there when I need you. | public | award_points |
| 3/30/2015 | Mitzie | Jefferson | Reena Mathew | N | 100 | Service | Thank you for all you do! | private | award_points |
| 3/31/2015 | Orland | Fitzsimmons | Reena Mathew | N | 150 | Our People | Thanks for all that you do. I appreciate your assistance and collaboration with everything HR! | private | award_points |
| 4/2/2015 | Dion | Gage | Reena Mathew | N | 500 | Our People | Thank you so much for all your help yesterday. We greatly appreciate everything you do to go above and beyond to help everyone here. | public | award_points |
| 4/6/2015 | Stephanie | Elad | Reena Mathew | N | 5 | | | | high_five |
| 4/8/2015 | Joseph | Burda | Reena Mathew | N | 500 | Service | Thanks for always being willing to help me out when i need it. | public | award_points |
| 4/20/2015 | Stephanie | Elad | Reena Mathew | N | 500 | Service | Reena - Thank you for your assistance with the merit spreadsheets on Friday! I know Sabrina appreciated it also. Your willingness to pitch in is greatly appreciated. | public | award_points |
| 5/4/2015 | Marlene | McNemar | Reena Mathew | N | 10 | Excellence | Thanks for helping me with my goals and for all the assistance you give with our benefits team as well. | public | award_points |
| 5/5/2015 | Tara | Stewart | Reena Mathew | N | 100 | Our People | Thank you for supporting my LEW team!!!! | public | award_points |
| 5/9/2015 | Gregory | Vinson | Reena Mathew | N | 1000 | | Thank you for your assistance | public | award_points |
| 5/11/2015 | Lynette | Salinas | Reena Mathew | N | 20 | Our People | Thank You for you Smiles in HR | public | award_points |
| 5/14/2015 | Angelina | Hullum | Reena Mathew | N | 5 | | | | high_five |
| 5/27/2015 | Mitzie | Jefferson | Reena Mathew | N | 100 | | Thank you for all your assistance and promptness! | private | award_points |
| 5/29/2015 | Charles | Hughes | Reena Mathew | N | 10 | | For always smiling and being so helpful when I need you!!! Thanks | public | award_points |
| 5/29/2015 | Angelina | Hullum | Reena Mathew | N | 100 | Our People | thank you for all you do for our people | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|---|
| 6/4/2015 | Joe | Whitfield | Reena Mathew | N | 25 | Service | Thanks | public | award_points |
| 6/9/2015 | Susan | Odom | Reena Mathew | N | 5 | Excellence | Thank you for all your Support! | public | award_points |
| 6/22/2015 | Stephanie | Elad | Reena Mathew | N | 5 | | | | high_five |
| 6/25/2015 | Jorge | Munoz | Reena Mathew | N | 1000 | Service | Thank you for all your support! It means alot! | private | award_points |
| 7/8/2015 | Sam | Akins | Reena Mathew | Y | 1000 | | Thank you for all you do to support our teams. I appreciate it. Sam | public | award_points |
| 7/8/2015 | Angelina | Hullum | Reena Mathew | Y | 5 | | | | high_five |
| 7/17/2015 | Rhonda | Zeman | Reena Mathew | N | 1000 | Our People | Thank you for always being available to help me and my team. You never fail to deliver service with a smile. I appreciate all you do! | public | award_points |
| 7/22/2015 | Jorge | Munoz | Reena Mathew | N | 5 | | | | high_five |
| 7/22/2015 | Jorge | Munoz | Reena Mathew | N | 1000 | | You are the best!!!! | private | award_points |
| 7/31/2015 | Joe | Whitfield | Reena Mathew | N | 125 | Respect | Thanks for being you !! | public | award_points |
| 8/13/2015 | Stephanie | Elad | Reena Mathew | N | 5 | | | | high_five |
| 8/19/2015 | Jorge | Munoz | Reena Mathew | N | 500 | Service | Thank you for you continued support! | public | award_points |
| 8/28/2015 | Kristen | Lagunes | Reena Mathew | N | 200 | Our People | Reena - thank you for all of the assistance and support during my first few months here - you rock! | public | award_points |
| 10/27/2015 | Tarrance | Johnson | Reena Mathew | N | 10 | Excellence | Happy B Day Reena #ScorpioSeason | public | award_points |
| 10/27/2015 | Jorge | Munoz | Reena Mathew | N | 500 | | Happy- B-Day!!!!! | public | award_points |
| 10/29/2015 | Stephanie | Bayley | Reena Mathew | N | 2 | Service | Hi Reena,<br><br>Thank you for being so awesome!  Clearing up the outstanding onboarding for the part timer's in Lewisville!!!<br><br>Thanks! | public | award_points |
| 11/5/2015 | Jean | Covey | Reena Mathew | N | 50 | | Thanks for holding down the fort last Friday and doing a great all around every day. | public | award_points |
| 11/9/2015 | Angelina | Hullum | Reena Mathew | Y | 300 | Our People | Thank you for your assistance at Six Flags!! | public | award_points |
| 11/13/2015 | Ruth | Reagan | Reena Mathew | Y | 200 | Service | Thank you so much for helping us at Six Flags! From all of us on the Events Team! | public | award_points |
| 11/13/2015 | Ruth | Reagan | Reena Mathew | Y | 5 | | | | high_five |
| 11/23/2015 | Gregory | Vinson | Reena Mathew | N | 2500 | Excellence | Thanks for all you do!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!! !!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!! | public | award_points |
| 12/24/2015 | Sharian | Stallworth | Reena Mathew | N | 50 | | Thanks for your kindness and support in 2015! | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|---|
| 12/24/2015 | Edris | Reid | Reena Mathew | N | 50 | | Thank you Reena for your support in 2015! | public | award_points |
| 12/30/2015 | Krystal | Ricks | Reena Mathew | Y | 10 | Our People | Thanks for all your support! | public | award_points |
| 2/3/2016 | Mitzie | Jefferson | Reena Mathew | N | 1500 | Service | Thank you for your continued help with employee issues! | private | award_points |
| 2/17/2016 | Brad | Denetz | Reena Mathew | N | 2000 | Our People | Reena, thanks for your support to our team.  I appreciate it!!! | public | award_points |
| 3/4/2016 | Talent | Engagement | Reena Mathew | Y | 10 | | Happy Employee Appreciation Day! You make us who we are and we value all that you do to make SC great! | public | award_points |

APP073

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|---|
| 4/7/2015 | Reena | Mathew | Angelina Hullum | N | 30 | Excellence | Thanks for being a great boss! Looking forward to another great year! | public | award_points |
| 4/7/2015 | Reena | Mathew | Sabrina Boyd | N | 10 | Service | Thanks for all your help! Glad we can always have a good laugh! | public | award_points |
| 4/7/2015 | Reena | Mathew | Dean Holt | N | 10 | | Thank you for helping me with GITK and being available! It was much appreciated! | public | award_points |
| 4/20/2015 | Reena | Mathew | Michael Reiter | N | 100 | | Thanks for everything Mike!! | public | award_points |
| 5/5/2015 | Reena | Mathew | Brandon Chatman | N | 100 | | Thank you Brandon for all that you do for LEW! | public | award_points |
| 5/7/2015 | Reena | Mathew | Marlene McNemar | N | 50 | | Marlene! I just wanted to say thank you for all that you do and we appreciate you greatly!!!!! :) Benefits for our associates runs so smoothly because of your dedication! | public | award_points |
| 8/19/2015 | Reena | Mathew | Susan Odom | Y | 15 | Service | I wish I had more points to give, but I just wanted to say I really do appreciate you in every way and thank you for all of your assistance!! | public | award_points |
| 8/19/2015 | Reena | Mathew | Paula Blayney | Y | 15 | Service | I wish I had more points to give, but I just wanted to say I really do appreciate you in every way and thank you for all of your assistance!! | public | award_points |
| 8/19/2015 | Reena | Mathew | Sue Cruz | Y | 15 | Service | I wish I had more points to give, but I just wanted to say I really do appreciate you in every way and thank you for all of your assistance!! | public | award_points |
| 11/4/2015 | Reena | Mathew | Susan Hodges | Y | 150 | Service | Thanks ladies for always assisting when we need documentation, it is appreciated! | public | award_points |
| 11/4/2015 | Reena | Mathew | Demetrice Patton | Y | 150 | Service | Thanks ladies for always assisting when we need documentation, it is appreciated! | public | award_points |
| 11/5/2015 | Reena | Mathew | Roque Alejo | Y | 100 | Our People | Thank you for assisting with the judging last week! Couldn't have done it without your help! :) | public | award_points |
| 11/5/2015 | Reena | Mathew | Jackline Staples | Y | 100 | Our People | Thank you for assisting with the judging last week! Couldn't have done it without your help! :) | public | award_points |
| 11/5/2015 | Reena | Mathew | Jean Covey | Y | 100 | Our People | Thank you for assisting with the judging last week! Couldn't have done it without your help! :) | public | award_points |
| 11/5/2015 | Reena | Mathew | Yessica Adriano | N | 500 | | Welcome to LEW Yessica and thanks for being a great leader! | public | award_points |
| 11/5/2015 | Reena | Mathew | Jorge Munoz | Y | 200 | Respect | Thank you for your continued partnership! | public | award_points |
| 11/5/2015 | Reena | Mathew | Sam Akins | Y | 200 | Respect | Thank you for your continued partnership! | public | award_points |
| 11/5/2015 | Reena | Mathew | Gregory Vinson | Y | 200 | Respect | Thank you for your continued partnership! | public | award_points |
| 11/5/2015 | Reena | Mathew | Mitzie Jefferson | Y | 200 | Respect | Thank you for your continued partnership! | public | award_points |
| 11/5/2015 | Reena | Mathew | Orland Fitzsimmons | Y | 200 | Respect | Thank you for your continued partnership! | public | award_points |
| 11/5/2015 | Reena | Mathew | Rhonda Zeman | Y | 200 | Respect | Thank you for your continued partnership! | public | award_points |
| 11/5/2015 | Reena | Mathew | Whitney Andres | N | 100 | | Thanks for the GITK help Whitney! It's much appreciated :) | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|---|
| 11/5/2015 | Reena | Mathew | Hortensia Perez | N | 100 | Performance | Reunited.....it's been great working together over the past years Ten! | public | award_points |
| 11/12/2015 | Reena | Mathew | John Hinojosa | N | 100 | | Thank you for always assisting with reports etc! :) It is appreciated! | public | award_points |

APP075

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|---|
| 2/20/2015 | Michelle | Whatley | Sabrina Boyd | N | 7500 | | Congratulations on your 2014 tenure milestone! It is incredible to think we started on this journey a decade ago. We could not have achieved such great heights without your service. Thank you for all that you have done and all that you continue to do. We are proud to have you on our team! | public | award_points |
| 3/16/2015 | Stephanie | Elad | Sabrina Boyd | Y | 500 | Service | Jeanette/Melissa/Sabrina - Thank you for all of your hard work getting the weather related pay adjustments to payroll. I know it was a lot of work to pull everything together and ensure that it was accurate. I appreciate your diligence. Your commitment to serving our Associates is commendable. Thank you very much!!! | private | award_points |
| 3/16/2015 | Jeanette | Rodriguez | Sabrina Boyd | N | 5 | Service | To the best HRG in town! Thank you for your continued support and partnership. | public | award_points |
| 3/16/2015 | Whitney | Andres | Sabrina Boyd | N | 5 | Excellence | Thank you for always only being a phone call away! I always know I can count on you to help me out with anything even when you are working at another site! Love having you as a teammate and a friend! :) | public | award_points |
| 3/16/2015 | Jorge | Munoz | Sabrina Boyd | N | 100 | Our People | Thanks for all that you do! | public | award_points |
| 3/17/2015 | Gregory | Vinson | Sabrina Boyd | N | 25 | Service | Thanks for all of your timely response and follow up | public | award_points |
| 3/18/2015 | Kate | Gatlin | Sabrina Boyd | Y | 5 | Service | I wanted to take a moment out of my day to thank you for all of your hard work in ensuring our Lewisville events/initiatives are a success. You are often the go-to people for our business partners at our site, and you have incredible knowledge about the site culture. Your support and feedback helps ensure our success and also lets us continually improve on our processes.<br><br>All of you are an incredible asset to the engagement team! We appreciate you! | public | award_points |
| 3/20/2015 | Rey | Suson | Sabrina Boyd | N | 40 | Service | Thanks for your assistance and hard work! | public | award_points |
| 3/20/2015 | Marlene | McNemar | Sabrina Boyd | N | 10 | Excellence | Thanks for scanning benefit paperwork to me and helping out with benefits all the time.  I appreciate you! | public | award_points |
| 3/20/2015 | Stephanie | Elad | Sabrina Boyd | N | 5 | | | | high_five |
| 3/23/2015 | Dean | Holt | Sabrina Boyd | N | 5 | Fiscal Responsibility | Sabrina,<br>Thank you for your diligent work on researching jury duty documents.  Your attention to detail is above all the best I have seen and I am so glad to be on the team! | private | award_points |
| 3/25/2015 | Cynthia | Flanery | Sabrina Boyd | N | 1000 | Service | Thank you for all your hard work, dedication, assitance!! | public | award_points |
| 3/26/2015 | Demetrice | Patton | Sabrina Boyd | N | 5 | Performance | For being "quickdraw-Mcgraw" on every request sent your way.  You're awesome! | public | award_points |
| 3/27/2015 | Angelina | Hullum | Sabrina Boyd | N | 5 | | | | high_five |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|------|-------------------|------------------|----------|---------------------|--------|------|---------|-----------|------|
| 3/30/2015 | Mitzie | Jefferson | Sabrina Boyd | N | 100 | Service | Thank you for all you do! | private | award_points |
| 3/30/2015 | Gregory | Vinson | Sabrina Boyd | N | 200 | | Thanks for all of your assistance | public | award_points |
| 3/31/2015 | Angelina | Hullum | Sabrina Boyd | N | 25 | Excellence | Thank you for all your assistance!! | public | award_points |
| 4/6/2015 | Stephanie | Elad | Sabrina Boyd | N | 5 | | | | high_five |
| 4/7/2015 | Reena | Mathew | Sabrina Boyd | N | 10 | Service | Thanks for all your help! Glad we can always have a good laugh! | public | award_points |
| 4/8/2015 | Joseph | Burda | Sabrina Boyd | N | 500 | Service | I just wanted to tell you that your flushing skills are on point. In all reality, thanks for all the assistance you provide me when i need it. | private | award_points |
| 4/20/2015 | Stephanie | Elad | Sabrina Boyd | N | 500 | Service | Sabrina - Thank you for your help with the merit spreadsheets on Friday! Your hard work and dedication are much appreciated. | public | award_points |
| 5/5/2015 | Tara | Stewart | Sabrina Boyd | N | 100 | Our People | Thank you for all your support of my LEW teams! | public | award_points |
| 5/9/2015 | Gregory | Vinson | Sabrina Boyd | N | 1000 | | all of your assistance is appreciated | public | award_points |
| 5/19/2015 | Jorge | Munoz | Sabrina Boyd | N | 500 | Service | Thank you for everything you do! | public | award_points |
| 5/21/2015 | Angelina | Hullum | Sabrina Boyd | N | 5 | | | | high_five |
| 5/27/2015 | Mitzie | Jefferson | Sabrina Boyd | N | 100 | | Thank you for all your assistance and promptness! | private | award_points |
| 5/27/2015 | Gregory | Vinson | Sabrina Boyd | N | 500 | Our People | Thanks for all of your assistance | public | award_points |
| 5/27/2015 | Jennifer | Calhoun | Sabrina Boyd | N | 5 | | | | high_five |
| 5/28/2015 | Angelina | Hullum | Sabrina Boyd | N | 5 | | | | high_five |
| 5/29/2015 | Charles | Hughes | Sabrina Boyd | N | 10 | | For pushing me pass my comfort zone during my first Customer Service Certification Class. I am forever in you debt!!! I am the trainer I am mainly because of you. You are truly the world's greatest at what you do!!! | public | award_points |
| 5/29/2015 | Angelina | Hullum | Sabrina Boyd | N | 100 | Excellence | thank you for all you do! | public | award_points |
| 6/3/2015 | Stephanie | Elad | Sabrina Boyd | N | 5 | | | | high_five |
| 6/4/2015 | Joe | Whitfield | Sabrina Boyd | N | 25 | Service | Thanks | public | award_points |
| 6/5/2015 | Jorge | Munoz | Sabrina Boyd | N | 200 | Excellence | thank you so much for always being valuable part of our company | public | award_points |
| 6/8/2015 | Angelina | Hullum | Sabrina Boyd | N | 5 | | | | high_five |
| 6/8/2015 | Angelina | Hullum | Sabrina Boyd | N | 5 | | | | high_five |
| 6/8/2015 | Ja'Mar | Harris | Sabrina Boyd | N | 100 | Our People | Thank you for all of your support and always answering my questions! | public | award_points |
| 6/9/2015 | Toynesha | Shaw | Sabrina Boyd | N | 5 | Our People | Sabrina, Thank for always Being More and giving of your time. You have a been there for me and I've witnessed the same level of customer service displayed for others. | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|------|-------------------|------------------|----------|---------------------|--------|------|---------|-----------|------|
| 6/9/2015 | Stephanie | Elad | Sabrina Boyd | N | | 5 | | | high_five |
| 6/9/2015 | Susan | Odom | Sabrina Boyd | N | | 5 | Excellence | Thank you for all your Support! | public | award_points |
| 6/12/2015 | Lisa | Cormier | Sabrina Boyd | N | | 50 | Service | Thank you for always helping with a smile. You are a great representative of your department! | public | award_points |
| 6/15/2015 | Krystal | Ricks | Sabrina Boyd | N | | 10 | Service | Thank you Sabrina for circling your approvals on terms! it's the small things that can truly make a difference in someone's day. :) | private | award_points |
| 6/22/2015 | Stephanie | Elad | Sabrina Boyd | N | | 5 | | | | high_five |
| 6/30/2015 | Lisa | Cormier | Sabrina Boyd | N | | 100 | Excellence | This is on behalf of Joe Berry. You have been willing to help with building a report for my leadership without complaining. Every time she answers the phone, it is with a smile and willingness to help. Thank you! | public | award_points |
| 6/30/2015 | Jackline | Staples | Sabrina Boyd | N | | 5 | | | | high_five |
| 7/8/2015 | Sam | Akins | Sabrina Boyd | Y | 1000 | | Thank you for all you do to support our teams. I appreciate it. Sam | public | award_points |
| 7/8/2015 | Angelina | Hullum | Sabrina Boyd | Y | | 5 | | | | high_five |
| 7/31/2015 | Joe | Whitfield | Sabrina Boyd | N | | 100 | Service | Thanks for what you do !! | public | award_points |
| 8/13/2015 | Cynthia | Flanery | Sabrina Boyd | N | | 2500 | Service | Thank you Sabrina for always being available for Customer Service and my one of's questions.. | public | award_points |
| 8/13/2015 | Stephanie | Elad | Sabrina Boyd | N | | 5 | | | | high_five |
| 8/28/2015 | Kristen | Lagunes | Sabrina Boyd | N | | 150 | Excellence | Hey - you are awesome - thanks for all the support! | public | award_points |
| 9/28/2015 | Erika | Lizama | Sabrina Boyd | N | | 100 | Respect | Gracias chica!!! 6 years ago you and my BFF helped me get my foot in the door. #SCUSA | public | award_points |
| 10/2/2015 | Jorge | Munoz | Sabrina Boyd | N | | 1000 | Service | thank you for for all your support! | public | award_points |
| 10/2/2015 | Angelina | Hullum | Sabrina Boyd | N | | 5 | | | | high_five |
| 10/7/2015 | Toynesha | Shaw | Sabrina Boyd | N | | 10 | Service | Thanks for all that you do! | private | award_points |
| 10/14/2015 | Stephanie | Elad | Sabrina Boyd | N | | 1000 | Service | Sabrina - Thank you for helping me out to get the worksheets for Brad's meeting copied and organized. You are always willing to assist me, especially on short notice. with a smile. You are a valued member of our team! | public | award_points |
| 10/20/2015 | Angelina | Hullum | Sabrina Boyd | N | | 5 | | | | high_five |
| 11/3/2015 | Jackline | Staples | Sabrina Boyd | N | | 500 | | Just wanted to say I appreciate you for everything that you do, your quick response and your positive attitude. You are an inspiration to all of us. Thank you | public | award_points |
| 11/5/2015 | Hortensia | Perez | Sabrina Boyd | N | | 100 | Excellence | Thanks so much for all your help at all times!! Especially when I'm OOO! You're truly appreciated! | public | award_points |
| 11/6/2015 | Jennifer | Calhoun | Sabrina Boyd | N | | 100 | Service | Thanks for being there when I need you!!! | public | award_points |
| 11/6/2015 | Jeanette | Rodriguez | Sabrina Boyd | N | | 35 | Excellence | Hi Sabrina! Thank you for always being available to help. Although we are at different sites, I know you're only a phone call away. | public | award_points |

APP078

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|------|------|------|------|------|------|------|------|------|------|
| 11/9/2015 | Angelina | Hullum | Sabrina Boyd | Y | 300 | Our People | Thank you for your assistance at Six Flags!! | public | award_points |
| 11/11/2015 | Mitzie | Jefferson | Sabrina Boyd | N | 1000 | Service | Thanks for all your help! | private | award_points |
| 11/12/2015 | LaCeda | Moore | Sabrina Boyd | N | 100 | Our People | HAPPY ANNIVERSARY | public | award_points |
| 11/12/2015 | Susan | Haynes | Sabrina Boyd | N | 10 | | Happy Anniversary Sabrina! | public | award_points |
| 11/13/2015 | Ruth | Reagan | Sabrina Boyd | Y | 200 | Service | Thank you so much for helping us at Six Flags! From all of us on the Events Team! | public | award_points |
| 11/13/2015 | Ruth | Reagan | Sabrina Boyd | Y | 5 | | | | high_five |
| 11/19/2015 | Mitzie | Jefferson | Sabrina Boyd | N | 1000 | Service | Once again, you are awesome!  Thanks for your prompt assistance.... | private | award_points |
| 12/15/2015 | Rhonda | Zeman | Sabrina Boyd | N | 2000 | Service | Thanks for your never ending support of servicing! We appreciate you! | public | award_points |
| 12/16/2015 | Stephanie | Elad | Sabrina Boyd | N | 5 | | | | high_five |
| 12/18/2015 | Holly | Hanes | Sabrina Boyd | N | 20 | Performance | Thank you for always going above and beyond.  Your project and report on the TWC claims was awesome.  I am so glad I get to work with you! | public | award_points |
| 12/22/2015 | Angelina | Hullum | Sabrina Boyd | N | 200 | Excellence | Thank you for all your assistance! | public | award_points |
| 12/24/2015 | Heather | Hutto | Sabrina Boyd | N | 10 | Our People | Thank you so much for all the help during the Star Wars distribution! | public | award_points |
| 12/24/2015 | Sharian | Stallworth | Sabrina Boyd | N | 50 | | Thanks Sabrina for all of your kindness and support in 2015!! | public | award_points |
| 12/24/2015 | Edris | Reid | Sabrina Boyd | N | 1 | | Thank you Sabrina for your support in 2015!! | public | award_points |
| 12/28/2015 | Whitney | Andres | Sabrina Boyd | N | 200 | Excellence | Thank you so much for helping me this morning on your day off! :) | public | award_points |
| 12/30/2015 | Krystal | Ricks | Sabrina Boyd | Y | 10 | Our People | Thanks for all your support! | public | award_points |
| 12/30/2015 | Stephanie | Elad | Sabrina Boyd | N | 1000 | Service | Sabrina - Thank you for taking time on your scheduled day off to assist in resolving the payroll issues this week. You are always willing to go above and beyond the call of duty to support our Associates. Your dedication is greatly appreciated! | public | award_points |
| 12/30/2015 | Stephanie | Elad | Sabrina Boyd | N | 5 | | | | high_five |
| 12/30/2015 | Jorge | Munoz | Sabrina Boyd | N | 1000 | Our People | You rock! | public | award_points |
| 12/31/2015 | Angelina | Hullum | Sabrina Boyd | N | 5 | | | | high_five |
| 1/4/2016 | Nicole | Heinicke | Sabrina Boyd | N | 50 | | Thank you so much for all of your help with HR Help while I was gone. You are the best! | public | award_points |
| 1/6/2016 | Yessica | Adriano | Sabrina Boyd | N | 299 | Our People | Thanks for coming in last week to help us resolve payroll :) | private | award_points |
| 1/13/2016 | Rehema | Kyelula | Sabrina Boyd | N | 100 | Our People | Thank you so very much for all your help today...you are awesome!!!!! | public | award_points |
| 1/20/2016 | Mitzie | Jefferson | Sabrina Boyd | N | 1000 | Service | Thank you for your continued assistance! | private | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|---|
| 2/10/2016 | Jorge | Munoz | Sabrina Boyd | N | 2000 | Service | Thank you for you service to the dept.! | private | award_points |
| 2/17/2016 | Brad | Denetz | Sabrina Boyd | N | 2000 | Our People | Sabrina, thanks for your support to our team in LEW.  I really appreciate it!!! | public | award_points |
| 3/3/2016 | Jorge | Munoz | Sabrina Boyd | N | 500 | Service | Thank you for your assistance! | public | award_points |
| 3/4/2016 | Talent | Engagement | Sabrina Boyd | Y | 10 | | Happy Employee Appreciation Day! You make us who we are and we value all that you do to make SC great! | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|------|-------------------|------------------|----------|---------------------|--------|------|---------|------------|------|
| 3/16/2015 | Jorge | Munoz | Whitney Andres | N | 300 | Excellence | Thank you for your assistance and support! | public | award_points |
| 3/20/2015 | Stephanie | Elad | Whitney Andres | N | 5 | | | | high_five |
| 3/20/2015 | Peggy | Rolston | Whitney Andres | N | 5 | Our People | I can't thank you enough for sharing your knowledge and experience with me.  You are always there when I need you. | public | award_points |
| 3/24/2015 | Dion | Gage | Whitney Andres | N | 2000 | Respect | Thank you for always helping me out and allowing me to bother you 24/7 :) | private | award_points |
| 3/25/2015 | Cynthia | Flanery | Whitney Andres | N | 500 | Service | Thank you for always being available to the department! | public | award_points |
| 3/31/2015 | Dean | Holt | Whitney Andres | N | 5 | Respect | Thanks for being there to bounce ideas off of and providing support when I need it the most! | private | award_points |
| 4/1/2015 | Sabrina | Boyd | Whitney Andres | N | 5 | Excellence | Thanks for being a great HRBP and making me laugh!!! You're always so helpful!! | public | award_points |
| 4/1/2015 | Tyieka | Hughes-Willis | Whitney Andres | N | 50 | Excellence | Thanks for ALWAYS assisting and going above and beyond. | public | award_points |
| 4/2/2015 | Jeanette | Rodriguez | Whitney Andres | N | 5 | Service | Whitney, thank you for making work easy to come to each day. I appreciate your continuos support! | public | award_points |
| 4/6/2015 | Stephanie | Elad | Whitney Andres | N | 5 | | | | high_five |
| 4/6/2015 | Glenna | McDonnell | Whitney Andres | N | 10 | Excellence | Thank you for always helping and making me laugh! | public | award_points |
| 4/10/2015 | Nicole | Heinicke | Whitney Andres | N | 10 | | Thanks for being so bubbly and helpful the last three weeks! | public | award_points |
| 4/20/2015 | Terius | Wiggins | Whitney Andres | N | 100 | | Always there when I need you | private | award_points |
| 5/11/2015 | Dean | Holt | Whitney Andres | N | 30 | Respect | For creating a great team environment | private | award_points |
| 5/22/2015 | Glenna | McDonnell | Whitney Andres | N | 20 | Excellence | Thank you so much for being an awesome team player! | public | award_points |
| 5/28/2015 | Angelina | Hullum | Whitney Andres | N | 5 | | | | high_five |
| 5/29/2015 | Angelina | Hullum | Whitney Andres | N | 150 | Our People | Thank you for your assistance today! | public | award_points |
| 6/5/2015 | Jorge | Munoz | Whitney Andres | N | 200 | Excellence | thank you so much for always being valuable part of our company | public | award_points |
| 6/8/2015 | Angelina | Hullum | Whitney Andres | N | 5 | | | | high_five |
| 6/9/2015 | Stephanie | Elad | Whitney Andres | N | 5 | | | | high_five |
| 6/9/2015 | Stephanie | Elad | Whitney Andres | Y | 1000 | Our People | Whitney and Dean - Thank you for your assistance during the WAS week event on Sunday. You are always willing to volunteer and help the team. And, thanks for dealing with the issue that came up. Your support of your team members is much appreciated. | public | award_points |
| 6/9/2015 | Angelina | Hullum | Whitney Andres | Y | 5 | | | | high_five |
| 6/23/2015 | Dean | Holt | Whitney Andres | N | 30 | Respect | Thanks Whitney for stepping up for me!  You did it without reservation and that makes you a wonderful team player!  Thank you again | public | award_points |
| 6/24/2015 | DeJoria | Brown | Whitney Andres | N | 10 | Service | Thank you so much for all of your help these last couple of days, it meant a lot to me :) | public | award_points |
| 8/13/2015 | Cynthia | Flanery | Whitney Andres | N | 2500 | Service | Thank you Whitney for your service and availability to Customer Service! | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|---|
| 8/13/2015 | Jorge | Munoz | Whitney Andres | N | 1500 | Service | Thank you for all that you do for us! | public | award_points |
| 8/13/2015 | Stephanie | Elad | Whitney Andres | N | 5 | | | | high_five |
| 8/21/2015 | Jorge | Munoz | Whitney Andres | N | 500 | Service | Thank you for your continued partnership! | public | award_points |
| 8/28/2015 | Kristen | Lagunes | Whitney Andres | N | 500 | Respect | You are awesome - Thank you for all of your support and help during my first 90! | public | award_points |
| 9/1/2015 | Stephanie | Elad | Whitney Andres | N | 2500 | Respect | Thanks for all that you do, every day. You are very much appreciated! | public | award_points |
| 9/1/2015 | Angelina | Hullum | Whitney Andres | N | 5 | | | | high_five |
| 9/4/2015 | Jenny | Reyna | Whitney Andres | N | 50 | Our People | Thank you for making this an comfortable work enviorment | public | award_points |
| 9/14/2015 | Angelina | Hullum | Whitney Andres | N | 100 | | Thank you for all you do and for always having a great attitude! | public | award_points |
| 10/8/2015 | Christina | Benshoff | Whitney Andres | N | 50 | | Thank you for helping me with Kronos!!!!! i appreciate your help getting it right. | public | award_points |
| 10/8/2015 | Cynthia | Flanery | Whitney Andres | N | 5000 | Service | Thank you Whitney for your assistance and flexibility with Customer Service...we adore you! | public | award_points |
| 10/9/2015 | Stephanie | Elad | Whitney Andres | N | 5 | | | | high_five |
| 10/20/2015 | Angelina | Hullum | Whitney Andres | N | 5 | | | | high_five |
| 10/27/2015 | Angelina | Hullum | Whitney Andres | N | 5 | | | | high_five |
| 11/4/2015 | Sabrina | Boyd | Whitney Andres | N | 100 | Service | Thank you for being a helping hand when I call!!!!!! :-) | public | award_points |
| 11/5/2015 | Reena | Mathew | Whitney Andres | N | 100 | | Thanks for the GITK help Whitney! It's much appreciated :) | public | award_points |
| 11/6/2015 | Jeanette | Rodriguez | Whitney Andres | Y | 40 | Our People | Thank you for making me feel so special with my pre-birthday fiesta! So lucky to be part of The A team! | public | award_points |
| 11/9/2015 | Angelina | Hullum | Whitney Andres | Y | 300 | Our People | Thank you for your assistance at Six Flags!! | public | award_points |
| 11/13/2015 | Ruth | Reagan | Whitney Andres | Y | 200 | Service | Thank you so much for helping us at Six Flags! From all of us on the Events Team! | public | award_points |
| 11/13/2015 | Ruth | Reagan | Whitney Andres | Y | 5 | | | | high_five |
| 11/19/2015 | Carlo | Tolentino | Whitney Andres | N | 1000 | Service | Thank you for always providing excellent support to our team. | public | award_points |
| 11/25/2015 | Cynthia | Flanery | Whitney Andres | N | 2500 | Service | Thank you Whitney for your support and dedication to the Customer Service department!! | public | award_points |
| 11/25/2015 | Ja'Mar | Harris | Whitney Andres | N | 1000 | Our People | Thank you for all your help, you are a truly amazing HR business partner! | public | award_points |
| 12/5/2015 | Angelina | Hullum | Whitney Andres | Y | 200 | Our People | thank you for all your help with the Team Meeting! | public | award_points |
| 12/16/2015 | Stephanie | Elad | Whitney Andres | Y | 5 | | | | high_five |
| 12/16/2015 | Stephanie | Elad | Whitney Andres | N | 5 | | | | high_five |
| 12/22/2015 | Angelina | Hullum | Whitney Andres | N | 500 | Our People | Thank you for all you do for our people | public | award_points |
| 12/24/2015 | Edris | Reid | Whitney Andres | N | 25 | | Thanks Whitney for your support in 2015! | public | award_points |
| 12/30/2015 | Angelina | Hullum | Whitney Andres | N | 1000 | | Thank you for taking point on the Kronos issues we've had this week. I appreciate you! | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|---|
| 12/30/2015 | Krystal | Ricks | Whitney Andres | Y | 10 | Our People | Thanks for all your support! | public | award_points |
| 12/30/2015 | Stephanie | Elad | Whitney Andres | N | 5 | | | | high_five |
| 2/19/2016 | Angelina | Hullum | Whitney Andres | Y | 200 | Service | Thank you for all your hard work this week! | public | award_points |
| 3/4/2016 | Talent | Engagement | Whitney Andres | Y | 10 | | Happy Employee Appreciation Day! You make us who we are and we value all that you do to make SC great! | public | award_points |

APP083

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|---|
| 3/16/2015 | Gregory | Vinson | Robert Terry | N | 25 | Excellence | Great job of consistentcy | public | award_points |
| 3/16/2015 | Gregory | Vinson | Adam Rushing | N | 25 | Entrepreneurial | Great job on your consistentcy | public | award_points |
| 3/16/2015 | Gregory | Vinson | Jason Ross | N | 25 | | Great job on your hard work | public | award_points |
| 3/16/2015 | Gregory | Vinson | Vickie Couch | N | 25 | | Great job on your hard work | public | award_points |
| 3/16/2015 | Gregory | Vinson | Craig Smith | N | 25 | Performance | Awesome performance, thanks | public | award_points |
| 3/16/2015 | Gregory | Vinson | Jacobo Miranda | N | 25 | | Great job on feedback and performance | public | award_points |
| 3/16/2015 | Gregory | Vinson | Christopher Collier | N | 25 | | Nice job, keep it going | public | award_points |
| 3/16/2015 | Gregory | Vinson | Larry Hatfield | N | 25 | | Keep it going its appreciated | public | award_points |
| 3/16/2015 | Gregory | Vinson | Jennifer Calhoun | N | 25 | | It is appreciated, the job that you do! | public | award_points |
| 3/16/2015 | Gregory | Vinson | William Gray | N | 25 | | Thanks for the hard work | public | award_points |
| 3/16/2015 | Gregory | Vinson | Adam Rushing | N | 25 | Excellence | Thanks for the hard work | public | award_points |
| 3/16/2015 | Gregory | Vinson | Angelina Hullum | N | 25 | Our People | Thanks for all of your genuine work and concern | public | award_points |
| 3/16/2015 | Gregory | Vinson | Mitzie Jefferson | N | 50 | Respect | Thanks for your day to day respect it is appreciated | public | award_points |
| 3/17/2015 | Gregory | Vinson | Reena Mathew | N | 25 | Respect | Thanks for all you do! It is appreciated. | public | award_points |
| 3/17/2015 | Gregory | Vinson | Sabrina Boyd | N | 25 | Service | Thanks for all of your timely response and follow up | public | award_points |
| 3/17/2015 | Gregory | Vinson | Tamara Brown | N | 25 | | Great employee | public | award_points |
| 3/18/2015 | Gregory | Vinson | Jacobo Miranda | N | 50 | Service | Thanks for all you do | public | award_points |
| 3/18/2015 | Gregory | Vinson | Larry Hatfield | N | 50 | Service | Thanks for your assistance | public | award_points |
| 3/18/2015 | Gregory | Vinson | Vickie Couch | N | 50 | Service | Thanks for assisting on yesterday | public | award_points |
| 3/18/2015 | Gregory | Vinson | Daphne Abrams | N | 50 | | Thanks for follow up on the strategy | public | award_points |
| 3/26/2015 | Gregory | Vinson | Robert Terry | N | 500 | Performance | Great job | public | award_points |
| 3/26/2015 | Gregory | Vinson | Larry Hatfield | N | 500 | Performance | Great job | public | award_points |
| 3/26/2015 | Gregory | Vinson | Craig Smith | N | 500 | | Great job | public | award_points |
| 3/26/2015 | Gregory | Vinson | Jennifer Calhoun | N | 500 | | great job | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|------|-------------------|------------------|----------|---------------------|--------|------|---------|------------|------|
| 3/26/2015 | Gregory | Vinson | William Gray | N | 500 | | Great performance this month | public | award_points |
| 3/26/2015 | Gregory | Vinson | Jacobo Miranda | N | 500 | Performance | keep it going | public | award_points |
| 3/26/2015 | Gregory | Vinson | Rey Suson | N | 500 | | Great job | public | award_points |
| 3/26/2015 | Gregory | Vinson | Edwin Jackson | N | 500 | | Thanks | public | award_points |
| 3/26/2015 | Gregory | Vinson | Patrick McKenzie | N | 500 | | Thanks for your performance | public | award_points |
| 3/26/2015 | Gregory | Vinson | Jason Ross | N | 300 | | Keep it going | public | award_points |
| 3/26/2015 | Gregory | Vinson | Tony Angelone | N | 350 | | kEEP IT GOING | public | award_points |
| 3/26/2015 | Gregory | Vinson | Christopher Collier | N | 500 | | Good job this month | public | award_points |
| 3/27/2015 | Gregory | Vinson | Marcus Pearson | N | 500 | | Great job | public | award_points |
| 3/27/2015 | Gregory | Vinson | Simone Banks | N | 500 | | Great job with reference to all you do | public | award_points |
| 3/30/2015 | Gregory | Vinson | Mitzie Jefferson | N | 500 | | Thanks for all you do | public | award_points |
| 3/30/2015 | Gregory | Vinson | Terius Wiggins | N | 200 | Performance | Thanks for team work | public | award_points |
| 3/30/2015 | Gregory | Vinson | Sabrina Boyd | N | 200 | | Thanks for all of your assistance | public | award_points |
| 3/30/2015 | Gregory | Vinson | Kristin Caldwell | N | 200 | | Thanks for all you do | public | award_points |
| 3/30/2015 | Gregory | Vinson | Kathy Williams | N | 500 | | Thanks for the way you go about performing your job daily | public | award_points |
| 3/30/2015 | Gregory | Vinson | Jean Covey | N | 500 | | Thanks for you do! | public | award_points |
| 3/30/2015 | Gregory | Vinson | Jason Ross | N | 250 | | Thanks for all you do! | public | award_points |
| 3/30/2015 | Gregory | Vinson | Febbie Masiya | N | 250 | | Thanks for all you do | public | award_points |
| 3/30/2015 | Gregory | Vinson | Roque Alejo | N | 200 | | Thanks for all you do! | public | award_points |
| 3/30/2015 | Gregory | Vinson | Jasmin Bowman | N | 250 | Our People | Thanks for all of your hard work | public | award_points |
| 3/30/2015 | Gregory | Vinson | Toynesha Shaw | N | 250 | Service | Thanks for all you do! | public | award_points |
| 3/30/2015 | Gregory | Vinson | Erika Lizama | N | 250 | | Thanks for all you do! | public | award_points |
| 3/31/2015 | Gregory | Vinson | Sam Akins | N | 500 | | Thanks for all you do. | public | award_points |
| 3/31/2015 | Gregory | Vinson | Orland Fitzsimmons | N | 200 | | Thanks for all of your team work! | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|---|
| 4/1/2015 | Gregory | Vinson | Rhonda Zeman | N | 150 | | Team work | public | award_points |
| 5/9/2015 | Gregory | Vinson | Adam Rushing | N | 1000 | | Thanks for all you do | public | award_points |
| 5/9/2015 | Gregory | Vinson | Jacobo Miranda | N | 1000 | | Thanks for your assistance | public | award_points |
| 5/9/2015 | Gregory | Vinson | Robert Terry | N | 1000 | | It is appreciated | public | award_points |
| 5/9/2015 | Gregory | Vinson | Sabrina Boyd | N | 1000 | | all of your assistance is appreciated | public | award_points |
| 5/9/2015 | Gregory | Vinson | Reena Mathew | N | 1000 | | Thank you for your assistance | public | award_points |
| 5/9/2015 | Gregory | Vinson | Craig Smith | N | 1000 | | Thank you all of your assistance | public | award_points |
| 5/9/2015 | Gregory | Vinson | William Gray | N | 1000 | | Thanks Bill for all you do | public | award_points |
| 5/9/2015 | Gregory | Vinson | Christopher Collier | N | 1000 | | Thanks for all you do, and Being a Bulls fan lol | public | award_points |
| 5/9/2015 | Gregory | Vinson | Vickie Couch | N | 1000 | | Thanks for all you do | public | award_points |
| 5/9/2015 | Gregory | Vinson | Jennifer Calhoun | N | 1000 | | Thanks for you hard work | public | award_points |
| 5/9/2015 | Gregory | Vinson | Larry Hatfield | N | 1000 | | Thanks for all of your assistance | public | award_points |
| 5/9/2015 | Gregory | Vinson | Maria Quijano | N | 1000 | | Thanks for all of your assistance | public | award_points |
| 5/9/2015 | Gregory | Vinson | Socorro Patron | N | 1000 | | Thanks for your hardwork | public | award_points |
| 5/9/2015 | Gregory | Vinson | Marcus Pearson | N | 1000 | | Thanks for your positive approach | public | award_points |
| 5/9/2015 | Gregory | Vinson | Patrick McKenzie | N | 1000 | | Thanks for yourwillingness to help | public | award_points |
| 5/9/2015 | Gregory | Vinson | Dennis Ross | N | 1000 | | Thanks for your assistance | public | award_points |
| 5/9/2015 | Gregory | Vinson | Ivan Guevara | N | 1000 | | Thanks for being a team player | public | award_points |
| 5/9/2015 | Gregory | Vinson | Alex Harbin | N | 1000 | | Thanks for your leadership | public | award_points |
| 5/9/2015 | Gregory | Vinson | Febbie Masiya | N | 1000 | | Thanks for your hardwork | public | award_points |
| 5/9/2015 | Gregory | Vinson | Rey Suson | N | 1000 | | Thanks for all you do it is appreciated | public | award_points |
| 5/13/2015 | Gregory | Vinson | Jacobo Miranda | N | 1000 | | tHANKS FOR YOUR ASSISTANCE WITH THE TEAM VINSON | public | award_points |
| 5/13/2015 | Gregory | Vinson | Craig Smith | N | 1000 | | Thanks fpr your assistance with team vinson | public | award_points |
| 5/13/2015 | Gregory | Vinson | Jennifer Calhoun | N | 1000 | | Thanks for your assistance with the team | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|------|------|------|------|------|------|------|------|------|------|
| 5/13/2015 | Gregory | Vinson | Robert Terry | N | 1000 | | Thanks for your assistance with the team vinson | public | award_points |
| 5/13/2015 | Gregory | Vinson | Adam Rushing | N | 1000 | | Thanks for your assistance with tean vinson | public | award_points |
| 5/13/2015 | Gregory | Vinson | Larry Hatfield | N | 1000 | | Thanks for your assistnce with team vinson | public | award_points |
| 5/20/2015 | Gregory | Vinson | Larry Hatfield | N | 1000 | Our People | Thanks for all of your willingness to step right in where needed it is appreciated | public | award_points |
| 5/20/2015 | Gregory | Vinson | Adam Rushing | N | 1000 | Our People | Thanks for assisting with the Team Vinson | public | award_points |
| 5/20/2015 | Gregory | Vinson | Jacobo Miranda | N | 1200 | Our People | I know that I have requested alot of your time with Team Vinson, you have as per usual accepted it with a smile Thanks Jacob | public | award_points |
| 5/20/2015 | Gregory | Vinson | Jennifer Calhoun | N | 1000 | Our People | Thanks for assisting with the team  Ihave asked alot | public | award_points |
| 5/20/2015 | Gregory | Vinson | Craig Smith | N | 500 | Our People | Thanks for all of your help | public | award_points |
| 5/20/2015 | Gregory | Vinson | Robert Terry | N | 500 | | Thanks for all of your help | public | award_points |
| 5/22/2015 | Gregory | Vinson | Deanna Faulkner | N | 2000 | Our People | Thanks for all you do Deanna, It is appreciated all that you do! Thanks It is appreciated. | public | award_points |
| 5/22/2015 | Gregory | Vinson | Deanna Faulkner | N | 1000 | Our People | Thanks | public | award_points |
| 5/27/2015 | Gregory | Vinson | Sabrina Boyd | N | 500 | Our People | Thanks for all of your assistance | public | award_points |
| 5/27/2015 | Gregory | Vinson | Satomi Marley | N | 500 | Service | Thanks for your patience and professionalism It is appreciated | public | award_points |
| 5/27/2015 | Gregory | Vinson | Robert Terry | N | 1200 | Service | Thanks for being a team player | public | award_points |
| 5/27/2015 | Gregory | Vinson | Jacobo Miranda | N | 500 | | Thanks for going the extra mile | public | award_points |
| 5/27/2015 | Gregory | Vinson | Jennifer Calhoun | N | 500 | | Thanks for going the extra mile | public | award_points |
| 5/27/2015 | Gregory | Vinson | Mitzie Jefferson | N | 500 | Respect | Thanks for being a great peer | public | award_points |
| 7/8/2015 | Gregory | Vinson | Jacobo Miranda | N | 5000 | | Thanks for all u do | public | award_points |
| 7/8/2015 | Gregory | Vinson | Larry Hatfield | N | 2500 | | Thanks for a very good month | public | award_points |
| 7/8/2015 | Gregory | Vinson | Adam Fakri | N | 2500 | | Thanks for a very good month | public | award_points |
| 7/8/2015 | Gregory | Vinson | Jennifer Calhoun | N | 2500 | | Thanks for your hard work | public | award_points |
| 7/8/2015 | Gregory | Vinson | Robert Terry | N | 2500 | | Thanks for all you do | public | award_points |
| 7/8/2015 | Gregory | Vinson | Larry Hatfield | N | 1000 | | Thanks | public | award_points |
| 7/8/2015 | Gregory | Vinson | Robert Terry | N | 1000 | | Thanks again | public | award_points |

APP087

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|------|-------------------|------------------|----------|---------------------|--------|------|---------|------------|------|
| 7/8/2015 | Gregory | Vinson | Adam Fakri | N | 1000 | | Thanks again | public | award_points |
| 7/8/2015 | Gregory | Vinson | Jennifer Calhoun | N | 1000 | | Thanks again | public | award_points |
| 7/14/2015 | Gregory | Vinson | Malcolm Riley. Jr. | N | 500 | Performance | Gonratulations great month | public | award_points |
| 7/14/2015 | Gregory | Vinson | Shontell Palesano | N | 500 | Performance | Conratulations great month | public | award_points |
| 7/14/2015 | Gregory | Vinson | Laketra Thomas | N | 500 | Performance | Great month of June | public | award_points |
| 7/14/2015 | Gregory | Vinson | Katrina Brown | N | 500 | Performance | Great month of June | public | award_points |
| 7/14/2015 | Gregory | Vinson | Monalisa Fifita | N | 500 | Performance | Great Month of June | public | award_points |
| 7/14/2015 | Gregory | Vinson | Letesha Bates | N | 500 | Performance | great month of june | public | award_points |
| 7/14/2015 | Gregory | Vinson | Evelyne Birai | N | 500 | | Great month of June | public | award_points |
| 7/14/2015 | Gregory | Vinson | Mia Jernigan | N | 500 | Performance | great month of June | public | award_points |
| 7/14/2015 | Gregory | Vinson | Monique James | N | 500 | Performance | Great month of June | public | award_points |
| 7/14/2015 | Gregory | Vinson | Valeria Newton | N | 500 | Performance | great month of june | public | award_points |
| 7/14/2015 | Gregory | Vinson | Bradley Griffin | N | 500 | Performance | great month of June | public | award_points |
| 7/14/2015 | Gregory | Vinson | Patrice Leonard | N | 500 | Performance | great month of June | public | award_points |
| 7/14/2015 | Gregory | Vinson | Huy Nguyen | N | 500 | Performance | great month of June | public | award_points |
| 7/14/2015 | Gregory | Vinson | Rosetta Watts | N | 500 | Performance | great month of June | public | award_points |
| 7/14/2015 | Gregory | Vinson | Althea Gee | N | 500 | Performance | great month of June | public | award_points |
| 7/14/2015 | Gregory | Vinson | Arvette Anderson | N | 500 | Performance | great month of June | public | award_points |
| 7/16/2015 | Gregory | Vinson | Laketra Thomas | N | 500 | Our People | Thanks for the Idea of conducting dide by sides to help your teammates. Thanks | public | award_points |
| 7/20/2015 | Gregory | Vinson | Brandon Chatman | N | 2500 | Excellence | Thanks for all you do. It is appreciated! | public | award_points |
| 7/24/2015 | Gregory | Vinson | Jennifer Calhoun | N | 2500 | Service | Thanks for your work and professionalism | public | award_points |
| 7/24/2015 | Gregory | Vinson | Larry Hatfield | N | 2500 | Service | Thanks for your hardwork. and commitment. | public | award_points |
| 7/28/2015 | Gregory | Vinson | Craig Smith | N | 2500 | Service | Thanks Craig it is appreciated | public | award_points |
| 7/30/2015 | Gregory | Vinson | Dennis Ross | N | 2500 | Service | Thanks for all of your assistance | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|------|-------------------|------------------|----------|---------------------|--------|------|---------|-----------|------|
| 7/30/2015 | Gregory | Vinson | Jennifer Calhoun | N | 2500 | Service | All of your assistance is appreciated | public | award_points |
| 7/30/2015 | Gregory | Vinson | Robert Terry | N | 1000 | Performance | Even in tough times is always about the effort. Thanks | public | award_points |
| 7/30/2015 | Gregory | Vinson | Larry Hatfield | N | 1000 | Excellence | Its the challenge that fortify's our efforts. Thanks for the hard work | public | award_points |
| 7/31/2015 | Gregory | Vinson | Jennifer Calhoun | N | 1000 | | Thanks!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!! | public | award_points |
| 8/3/2015 | Gregory | Vinson | Brandon Chatman | N | 2000 | Our People | Brandon,I wanted to thank you for the follow up on the temperature, keeping us informed and following up, thanks for all you do it is sincerely appreciated. thanks again! | public | award_points |
| 8/25/2015 | Gregory | Vinson | Leslie Thompson | N | 500 | Excellence | Thanks For your assistance with the Part time Staff | public | award_points |
| 8/25/2015 | Gregory | Vinson | Glamourous Johnson | N | 500 | Our People | Your assistance ia appreciated with the Part time Staff | public | award_points |
| 8/25/2015 | Gregory | Vinson | Tony Payton | N | 500 | Excellence | Thanks for your assistance with the Part Time Staff | public | award_points |
| 10/8/2015 | Gregory | Vinson | Robert Terry | N | 3000 | Our People | Keep it going thanks | public | award_points |
| 10/8/2015 | Gregory | Vinson | Larry Hatfield | N | 3000 | Service | Keep it going | public | award_points |
| 10/8/2015 | Gregory | Vinson | Jennifer Calhoun | N | 3000 | Service | Keep it going | public | award_points |
| 10/8/2015 | Gregory | Vinson | Adam Fakri | N | 3000 | Service | Keep it going | public | award_points |
| 10/8/2015 | Gregory | Vinson | Jacobo Miranda | N | 3000 | Service | Keep it going | public | award_points |
| 10/9/2015 | Gregory | Vinson | Craig Smith | N | 3000 | Service | Thanks Craig for all of your hard work | public | award_points |
| 10/9/2015 | Gregory | Vinson | William Gray | N | 3000 | Our People | Keep it going Bill | public | award_points |
| 10/9/2015 | Gregory | Vinson | Vickie Couch | N | 3000 | Service | Great job | public | award_points |
| 10/9/2015 | Gregory | Vinson | Adam Rushing | N | 3000 | | Thanks Adam | public | award_points |
| 10/9/2015 | Gregory | Vinson | Rey Suson | N | 1000 | | GREAT JOB | public | award_points |
| 10/9/2015 | Gregory | Vinson | Edwin Jackson | N | 1000 | | GREAT JOB | public | award_points |
| 10/9/2015 | Gregory | Vinson | Patrick McKenzie | N | 1000 | | keep it going | public | award_points |
| 10/9/2015 | Gregory | Vinson | Marcus Pearson | N | 1000 | | Thanks | public | award_points |
| 10/9/2015 | Gregory | Vinson | Money Martin | N | 1000 | Service | Keep it going | public | award_points |
| 10/9/2015 | Gregory | Vinson | Rey Suson | N | 1000 | Service | Thanks Rey for assisting today | public | award_points |

APP089

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|---|
| 10/9/2015 | Gregory | Vinson | Edwin Jackson | N | 1000 | Service | Thanks | public | award_points |
| 11/2/2015 | Gregory | Vinson | Adam Fakri | N | 2500 | | Thanks for an awesome month no 1 in rankings | public | award_points |
| 11/2/2015 | Gregory | Vinson | Jennifer Calhoun | N | 2500 | Performance | Thanks for an excellent month Top 25% | public | award_points |
| 11/2/2015 | Gregory | Vinson | Jacobo Miranda | N | 2500 | Performance | Thanks for a top 50% finish | public | award_points |
| 11/2/2015 | Gregory | Vinson | Robert Terry | N | 2500 | Performance | What a comeback in the 2nd half. Thanks | public | award_points |
| 11/2/2015 | Gregory | Vinson | Larry Hatfield | N | 2500 | Performance | Thanks for the hard work in the performance it is appreciated | public | award_points |
| 11/11/2015 | Gregory | Vinson | Mitzie Jefferson | N | 2500 | Service | Thanks for words of wisdon | public | award_points |
| 11/11/2015 | Gregory | Vinson | Mitzie Jefferson | N | 1 | | Should be words of Wisdom lol | public | award_points |
| 11/11/2015 | Gregory | Vinson | Malcolm Riley. Jr. | N | 500 | Excellence | Great job today!!! | public | award_points |
| 11/23/2015 | Gregory | Vinson | Reena Mathew | N | 2500 | Excellence | Thanks for all you do!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!! !!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!! | public | award_points |
| 12/8/2015 | Gregory | Vinson | Andrea Vinson | N | 500 | Excellence | You will be just fine, keep it going, proud of your courage. gv | public | award_points |
| 12/10/2015 | Gregory | Vinson | Mitzie Jefferson | N | 1000 | Excellence | Awesome job | public | award_points |
| 1/12/2016 | Gregory | Vinson | Adam Fakri | N | 10000 | Performance | Top 25% | public | award_points |
| 1/12/2016 | Gregory | Vinson | Jacobo Miranda | N | 8500 | Performance | 2nd 25% congrats December | public | award_points |
| 1/12/2016 | Gregory | Vinson | Jennifer Calhoun | N | 8500 | Performance | 2nd 25% in December | public | award_points |
| 1/12/2016 | Gregory | Vinson | Robert Terry | N | 8000 | Performance | performance month December | public | award_points |
| 1/12/2016 | Gregory | Vinson | Larry Hatfield | N | 8000 | Performance | performance | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|------|-------------------|------------------|----------|---------------------|--------|------|---------|-----------|------|
| 2/18/2015 | Brad | Denetz | Stacia Hartfield | Y | 7500 | | Congratulations on your 2014 tenure milestone! It is incredible to think we started on this journey a decade ago. We could not have achieved such great heights without your service. Thank you for all that you have done and all that you continue to do. We are proud to have you on our team! | public | award_points |
| 2/18/2015 | Brad | Denetz | Rosa Munoz | Y | 7500 | | Congratulations on your 2014 tenure milestone! It is incredible to think we started on this journey a decade ago. We could not have achieved such great heights without your service. Thank you for all that you have done and all that you continue to do. We are proud to have you on our team! | public | award_points |
| 2/20/2015 | Brad | Denetz | Wayne Ashford | Y | 7500 | | Congratulations on your 2014 tenure milestone! It is incredible to think we started on this journey a decade ago. We could not have achieved such great heights without your service. Thank you for all that you have done and all that you continue to do. We are proud to have you on our team! | public | award_points |
| 2/20/2015 | Brad | Denetz | Laquisha Doucette | Y | 7500 | | Congratulations on your 2014 tenure milestone! It is incredible to think we started on this journey a decade ago. We could not have achieved such great heights without your service. Thank you for all that you have done and all that you continue to do. We are proud to have you on our team! | public | award_points |
| 2/20/2015 | Brad | Denetz | Frederick Evans | Y | 7500 | | Congratulations on your 2014 tenure milestone! It is incredible to think we started on this journey a decade ago. We could not have achieved such great heights without your service. Thank you for all that you have done and all that you continue to do. We are proud to have you on our team! | public | award_points |
| 2/20/2015 | Brad | Denetz | John Leavell | Y | 7500 | | Congratulations on your 2014 tenure milestone! It is incredible to think we started on this journey a decade ago. We could not have achieved such great heights without your service. Thank you for all that you have done and all that you continue to do. We are proud to have you on our team! | public | award_points |
| 2/20/2015 | Brad | Denetz | Mary McDaniel | Y | 7500 | | Congratulations on your 2014 tenure milestone! It is incredible to think we started on this journey a decade ago. We could not have achieved such great heights without your service. Thank you for all that you have done and all that you continue to do. We are proud to have you on our team! | public | award_points |
| 2/20/2015 | Brad | Denetz | Huy Nguyen | Y | 7500 | | Congratulations on your 2014 tenure milestone! It is incredible to think we started on this journey a decade ago. We could not have achieved such great heights without your service. Thank you for all that you have done and all that you continue to do. We are proud to have you on our team! | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|---|
| 2/20/2015 | Brad | Denetz | Dan Salas | Y | 7500 | | Congratulations on your 2014 tenure milestone! It is incredible to think we started on this journey a decade ago. We could not have achieved such great heights without your service. Thank you for all that you have done and all that you continue to do. We are proud to have you on our team! | public | award_points |
| 2/20/2015 | Brad | Denetz | Ron White | Y | 7500 | | Congratulations on your 2014 tenure milestone! It is incredible to think we started on this journey a decade ago. We could not have achieved such great heights without your service. Thank you for all that you have done and all that you continue to do. We are proud to have you on our team! | public | award_points |
| 2/20/2015 | Brad | Denetz | William Dugger | Y | 15000 | | Congratulations on your 2014 tenure milestone! Has it really been 15 years now? We have grown together individually and as a company. Our success is your success. Please accept these points as recognition of your part in our growth, our success and our future. Thank you for being part of the SCUSA family. | public | award_points |
| 2/20/2015 | Brad | Denetz | Tara Hall | Y | 15000 | | Congratulations on your 2014 tenure milestone! Has it really been 15 years now? We have grown together individually and as a company. Our success is your success. Please accept these points as recognition of your part in our growth, our success and our future. Thank you for being part of the SCUSA family. | public | award_points |
| 2/20/2015 | Brad | Denetz | Sharlet Reed | Y | 15000 | | Congratulations on your 2014 tenure milestone! Has it really been 15 years now? We have grown together individually and as a company. Our success is your success. Please accept these points as recognition of your part in our growth, our success and our future. Thank you for being part of the SCUSA family. | public | award_points |
| 2/20/2015 | Brad | Denetz | Craig Smith | Y | 15000 | | Congratulations on your 2014 tenure milestone! Has it really been 15 years now? We have grown together individually and as a company. Our success is your success. Please accept these points as recognition of your part in our growth, our success and our future. Thank you for being part of the SCUSA family. | public | award_points |
| 2/20/2015 | Brad | Denetz | Leroy Wade | Y | 15000 | | Congratulations on your 2014 tenure milestone! Has it really been 15 years now? We have grown together individually and as a company. Our success is your success. Please accept these points as recognition of your part in our growth, our success and our future. Thank you for being part of the SCUSA family. | public | award_points |
| 2/20/2015 | Brad | Denetz | Brenda Watson | Y | 15000 | | Congratulations on your 2014 tenure milestone! Has it really been 15 years now? We have grown together individually and as a company. Our success is your success. Please accept these points as recognition of your part in our growth, our success and our future. Thank you for being part of the SCUSA family. | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|------|-------------------|------------------|----------|---------------------|--------|------|---------|-----------|------|
| 2/20/2015 | Brad | Denetz | Sheila Johnson | Y | 250000 | | Congratulations on your 2014 tenure milestone! When someone has been with a company as long as you have been with ours, they are the foundation of the culture. Your dedication to SCUSA has launched us to great heights; you made us who we are today. Thank you for being part of the SCUSA family. Hats off to you. | public | award_points |
| 2/20/2015 | Brad | Denetz | Davin Rutherford | Y | 250000 | | Congratulations on your 2014 tenure milestone! When someone has been with a company as long as you have been with ours, they are the foundation of the culture. Your dedication to SCUSA has launched us to great heights; you made us who we are today. Thank you for being part of the SCUSA family. Hats off to you. | public | award_points |
| 2/20/2015 | Brad | Denetz | Roque Alejo | Y | 2500 | | Congratulations on your 2014 tenure milestone! We have made incredible memories over the last 5 years, haven't we? We appreciate your service to our team and we are glad you are part of the SCUSA family. | public | award_points |
| 2/20/2015 | Brad | Denetz | Larry Hatfield | Y | 2500 | | Congratulations on your 2014 tenure milestone! We have made incredible memories over the last 5 years, haven't we? We appreciate your service to our team and we are glad you are part of the SCUSA family. | public | award_points |
| 3/16/2015 | Brad | Denetz | Mitzie Jefferson | N | 1000 | Excellence | Thank you for what you do Mitzi!!!!  I appreciate what and how you lead as a team player. | private | award_points |
| 3/16/2015 | Brad | Denetz | Gregory Vinson | N | 1000 | Excellence | Thank you for what you do Greg!!!!  I appreciate what and how you lead as a team player. | private | award_points |
| 3/16/2015 | Brad | Denetz | Orland Fitzsimmons | N | 1000 | Excellence | Thank you for what you do Orland!!!!  I appreciate what and how you lead as a team player. | private | award_points |
| 3/16/2015 | Brad | Denetz | Sam Akins | N | 1000 | Excellence | Thank you for what you do Sam!!!!  I appreciate what and how you lead as a team player. | public | award_points |
| 3/16/2015 | Brad | Denetz | Rhonda Zeman | N | 1000 | Excellence | Thank you for what you do Rhonda!!!!  I appreciate what and how you lead as a team player. | private | award_points |
| 3/16/2015 | Brad | Denetz | Jorge Munoz | N | 1000 | Excellence | Thank you for what you do Jorge!!!!  I appreciate what and how you lead as a team player. | public | award_points |
| 3/16/2015 | Brad | Denetz | Dion Gage | N | 1000 | Excellence | Thank you for what you do Dion!!!!  I appreciate what and how you lead as a team player. | private | award_points |
| 3/16/2015 | Brad | Denetz | Kate Gatlin | N | 200 | Service | Thanks for getting me logged in Kate!!!! | private | award_points |
| 4/16/2015 | Brad | Denetz | Chelsey Smith | N | 10000 | Performance | Chelsey, Congratulations on Employee of the Month for March!!!! | public | award_points |
| 4/16/2015 | Brad | Denetz | Luis Umanzor | N | 10000 | Performance | Luis, Congratulations on Employee of the Month for March!!!! | public | award_points |
| 4/16/2015 | Brad | Denetz | Max Lacayo | N | 10000 | Performance | Max, Congratulations on Employee of the Month for March!!!! | public | award_points |
| 4/16/2015 | Brad | Denetz | Alfred Mainja | N | 10000 | Performance | Alfred, Congratulations on Employee of the Month for March!!!! | public | award_points |
| 4/16/2015 | Brad | Denetz | Ivan Zamarron | N | 10000 | Performance | Ivan, Congratulations on Employee of the Month for March!!!! | public | award_points |

APP093

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|------|-------------------|------------------|----------|---------------------|--------|------|---------|-----------|------|
| 4/16/2015 | Brad | Denetz | Esteban Lopez | N | 10000 | Performance | Esteban, Congratulations on Employee of the Month for March!!!! | public | award_points |
| 4/22/2015 | Brad | Denetz | Kristin Coop | N | 1000 | Service | Thanks Kristin for getting Akita access!!!! | public | award_points |
| 4/22/2015 | Brad | Denetz | Tam Nguyen | N | 1000 | Service | Thanks Tam for getting Akita access!!!! | public | award_points |
| 4/28/2015 | Brad | Denetz | Nicole Henderson | N | 5000 | Our People | Thanks for always helping out my team!!!  Good luck in your next role!! | public | award_points |
| 5/7/2015 | Brad | Denetz | Terry Alston | N | 5000 | Service | Just want to thank you for helping my team and myself with reporting and incentives.  It is appreciated!!!! | public | award_points |
| 5/7/2015 | Brad | Denetz | Gerald Rahm | N | 20000 | Excellence | Gerald, Congratulations on your Leader of the Month award. We appreciate what you do!!!  Thanks | public | award_points |
| 5/7/2015 | Brad | Denetz | Robert Terry | N | 20000 | Excellence | Robert, Congratulations on your Leader of the Month award. We appreciate what you do!!!  Thanks | public | award_points |
| 5/7/2015 | Brad | Denetz | Adam Rushing | N | 20000 | Excellence | Adam, Congratulations on your Leader of the Month award. We appreciate what you do!!!  Thanks | public | award_points |
| 5/12/2015 | Brad | Denetz | Richard Oram | N | 10000 | Service | May Collection Contest Winner!!!  Congratulations!!!! | public | award_points |
| 5/12/2015 | Brad | Denetz | Alex Malone | N | 7500 | Service | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/12/2015 | Brad | Denetz | Felicia Williams | N | 6000 | Service | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/12/2015 | Brad | Denetz | Lori Cauthen | N | 5000 | Service | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/12/2015 | Brad | Denetz | Kimberely Ellis | N | 4000 | Service | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/12/2015 | Brad | Denetz | Ashley Beaty | N | 3000 | Service | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/12/2015 | Brad | Denetz | Kierra Thibodeaux | N | 2500 | Service | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/12/2015 | Brad | Denetz | Ramon Richardson | N | 2500 | Service | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/12/2015 | Brad | Denetz | Breona Wheaton | N | 3000 | Service | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/12/2015 | Brad | Denetz | Rodneyshea Kirk | N | 2000 | Service | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/12/2015 | Brad | Denetz | Khali Sailor | N | 10000 | Service | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/12/2015 | Brad | Denetz | Katelyn Stewart | N | 2500 | Service | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/12/2015 | Brad | Denetz | Tranita McGee | N | 1000 | Service | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/12/2015 | Brad | Denetz | Samuel Brown | N | 1500 | Service | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/14/2015 | Brad | Denetz | Jasmine Kennedy | N | 10000 | Performance | Congratulations on Employee of the Month!!!  Keep up the Great Work!!! | public | award_points |
| 5/14/2015 | Brad | Denetz | Francisco Pineda | N | 10000 | Performance | Congratulations on Employee of the Month!!!  Keep up the Great Work!!! | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|---|
| 5/14/2015 | Brad | Denetz | Kimberely Ellis | N | 10000 | Performance | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 5/14/2015 | Brad | Denetz | Caroline Holdbrook | N | 10000 | Performance | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 5/14/2015 | Brad | Denetz | Max Lacayo | N | 10000 | | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 5/14/2015 | Brad | Denetz | Diana Olide | N | 10000 | Performance | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 5/21/2015 | Brad | Denetz | Marco Pineda | N | 10000 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/21/2015 | Brad | Denetz | Jonathan Martinez | N | 2500 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/21/2015 | Brad | Denetz | Chris Hunte | N | 1500 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/21/2015 | Brad | Denetz | Davontaye Harris | N | 1000 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/21/2015 | Brad | Denetz | Tameka Smith | N | 10000 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/21/2015 | Brad | Denetz | Veronica Harris | N | 7500 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/21/2015 | Brad | Denetz | Guadalupe Bueno | N | 5000 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/21/2015 | Brad | Denetz | Sha Conley | N | 5000 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/21/2015 | Brad | Denetz | Tramaine Marshall | N | 5000 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/21/2015 | Brad | Denetz | Keeanna Cromarty | N | 4000 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/21/2015 | Brad | Denetz | Keosha Walker | N | 3000 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/21/2015 | Brad | Denetz | Nicolas Gonzalez | N | 2500 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/21/2015 | Brad | Denetz | Dan Salas | N | 2500 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/21/2015 | Brad | Denetz | Shaunte' Hardeman | N | 3000 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/22/2015 | Brad | Denetz | Roque Alejo | N | 2000 | Service | Thank you for helping to manage the SCUSA and CCAP 4x10 teams over Mother's Day Weekend!!! | public | award_points |
| 5/22/2015 | Brad | Denetz | Fallon Romero | N | 2000 | Service | Thank you for helping to manage the SCUSA and CCAP 4x10 teams over Mother's Day Weekend!!! | public | award_points |
| 5/22/2015 | Brad | Denetz | Alex Jaimes | N | 2000 | Service | Thank you for helping to manage the SCUSA and CCAP 4x10 teams over Mother's Day Weekend!!! | public | award_points |
| 5/22/2015 | Brad | Denetz | Jackline Staples | N | 2000 | Service | Thank you for helping to manage the SCUSA and CCAP 4x10 teams over Mother's Day Weekend!!! | public | award_points |
| 5/29/2015 | Brad | Denetz | Alfred Mainja | N | 10000 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/29/2015 | Brad | Denetz | Barbara Thorn | N | 2000 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|------|-------------------|------------------|----------|---------------------|--------|------|---------|-----------|------|
| 5/29/2015 | Brad | Denetz | Dave Bouchard | N | 3000 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/29/2015 | Brad | Denetz | Deshunn McKenzie | N | 2500 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/29/2015 | Brad | Denetz | Emerensiana Itotia | N | 5000 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/29/2015 | Brad | Denetz | Geraldine Harris | N | 5000 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/29/2015 | Brad | Denetz | Ivan Zamarron | N | 2500 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/29/2015 | Brad | Denetz | Jacquesha Milton | N | 10000 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/29/2015 | Brad | Denetz | Jeremy Hubbard | N | 7500 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/29/2015 | Brad | Denetz | Marcela Jimenez | N | 4000 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/29/2015 | Brad | Denetz | Nestor Erazo | N | 1500 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/29/2015 | Brad | Denetz | Sammy Hudson | N | 2500 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/29/2015 | Brad | Denetz | Shaneckwa Voss | N | 3000 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/29/2015 | Brad | Denetz | Sheniqua Fincher | N | 1000 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/29/2015 | Brad | Denetz | Tia Gatlin | N | 6000 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 5/29/2015 | Brad | Denetz | Rhonda Zeman | N | 3000 | Our People | Thanks for coordinating events, contests, and compliment breakfasts, etc.  I appreciate it. | public | award_points |
| 5/29/2015 | Brad | Denetz | Jorge Munoz | N | 2500 | Performance | I appreciate your work you have done in CCAP and overall. Keep doing the right thing!!! | public | award_points |
| 6/2/2015 | Brad | Denetz | Jackline Staples | N | 25000 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 6/2/2015 | Brad | Denetz | Edwin Jackson | N | 25000 | Excellence | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 6/2/2015 | Brad | Denetz | Ciara Haney | N | 20000 | Excellence | May Collection Contest Winner!!! Congratulations!!!!  Zero CA Violations!!! | public | award_points |
| 6/2/2015 | Brad | Denetz | Tobe Johnson | N | 20000 | Excellence | May Collection Contest Winner!!! Congratulations!!!!  Perfect Attendance!!! | public | award_points |
| 6/2/2015 | Brad | Denetz | Joellen Black | N | 20000 | Excellence | May Collection Contest Winner!!! Congratulations!!!!  Zero CA Violations!!! | public | award_points |
| 6/2/2015 | Brad | Denetz | Eric Jackson | N | 10000 | Performance | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 6/2/2015 | Brad | Denetz | Simba Kwesha | N | 10000 | Performance | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 6/2/2015 | Brad | Denetz | Norma Harper | N | 10000 | Performance | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 6/2/2015 | Brad | Denetz | Angela Alvarez | N | 10000 | Performance | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |

APP096

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|---|
| 6/2/2015 | Brad | Denetz | Jason Shelley | N | 7500 | Performance | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 6/2/2015 | Brad | Denetz | Eliska Harrison | N | 6000 | Performance | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 6/2/2015 | Brad | Denetz | Kevin Ford | N | 5000 | Performance | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 6/2/2015 | Brad | Denetz | Jorge Cabrera | N | 5000 | Performance | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 6/2/2015 | Brad | Denetz | Lakesha Rush | N | 4000 | Performance | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 6/2/2015 | Brad | Denetz | Jacqueline Cardenas | N | 3000 | Performance | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 6/2/2015 | Brad | Denetz | Roger Valladares | N | 3000 | Performance | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 6/2/2015 | Brad | Denetz | Erine Bryant | N | 2500 | Performance | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 6/2/2015 | Brad | Denetz | Ashley Lewis | N | 2500 | Performance | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 6/2/2015 | Brad | Denetz | Jason Childress | N | 2000 | Performance | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 6/2/2015 | Brad | Denetz | Rosa Munoz | N | 1500 | Performance | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 6/2/2015 | Brad | Denetz | Lorrie Flores | N | 1000 | Performance | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 6/2/2015 | Brad | Denetz | Janee Davis-Brown | N | 20000 | Performance | May Collection Contest Winner!!! Congratulations!!!!  Perfect Attendance!!! | public | award_points |
| 6/2/2015 | Brad | Denetz | Claudia Martinez | N | 2500 | Performance | May Collection Contest Winner!!! Congratulations!!!! | public | award_points |
| 6/8/2015 | Brad | Denetz | Gina Barraza | N | 1000 | Service | Thanks Gina for your prompt attention!!!!  I appreciate it. | public | award_points |
| 6/10/2015 | Brad | Denetz | Aaron Guerrero | N | 20000 | Excellence | Congratulations on your Leadership Award for May 2015!!!! Keep up the great work!!! | public | award_points |
| 6/10/2015 | Brad | Denetz | Patrick McKenzie | N | 20000 | Excellence | Congratulations on your Leadership Award for May 2015!!!! Keep up the great work!!! | public | award_points |
| 6/10/2015 | Brad | Denetz | Jackline Staples | N | 20000 | Excellence | Congratulations on your Leadership Award for May 2015!!!! Keep up the great work!!! | public | award_points |
| 6/11/2015 | Brad | Denetz | Taylor Harris-Roberts | N | 10000 | Performance | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 6/11/2015 | Brad | Denetz | Claudia Martinez | N | 10000 | Performance | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 6/11/2015 | Brad | Denetz | Denita Benton | N | 10000 | Performance | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 6/11/2015 | Brad | Denetz | Kathy Tran | N | 10000 | Performance | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 6/11/2015 | Brad | Denetz | Louis Ovalle | N | 10000 | Performance | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 6/11/2015 | Brad | Denetz | Nena Roundtree | N | 10000 | Performance | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|------|-------------------|------------------|----------|---------------------|--------|------|---------|-----------|------|
| 7/7/2015 | Brad | Denetz | Rey Suson | N | 20000 | Excellence | Congratulations on your Leadership Award for June 2015!!!! Keep up the great work!!! | public | award_points |
| 7/7/2015 | Brad | Denetz | Ivan Guevara | N | 20000 | Excellence | Congratulations on your Leadership Award for June 2015!!!! Keep up the great work!!! | public | award_points |
| 7/7/2015 | Brad | Denetz | Kerrick Williams | N | 20000 | Excellence | Congratulations on your Leadership Award for June 2015!!!! Keep up the great work!!! | public | award_points |
| 7/10/2015 | Brad | Denetz | Patrick McKenzie | N | 500 | Excellence | Good job last month!!! | public | award_points |
| 7/10/2015 | Brad | Denetz | Nicolas Gonzalez | N | 10000 | Excellence | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 7/10/2015 | Brad | Denetz | Eric Jackson | N | 10000 | Excellence | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 7/10/2015 | Brad | Denetz | Chelsey Smith | N | 10000 | Excellence | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 7/10/2015 | Brad | Denetz | Myrna Chapa | N | 10000 | Excellence | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 7/10/2015 | Brad | Denetz | Stephanie Thompson | N | 10000 | Excellence | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 7/10/2015 | Brad | Denetz | Malcolm Riley. Jr. | N | 10000 | Excellence | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 7/15/2015 | Brad | Denetz | Dave Bouchard | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/15/2015 | Brad | Denetz | Tanaia Felton | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/15/2015 | Brad | Denetz | Rosa Blanco | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/15/2015 | Brad | Denetz | Tiffany Cantu | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/15/2015 | Brad | Denetz | Monique James | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/15/2015 | Brad | Denetz | Chelsey Dietz | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/15/2015 | Brad | Denetz | Edward Griffin | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/15/2015 | Brad | Denetz | Marcus House | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/15/2015 | Brad | Denetz | Janine Presley | N | 7500 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/15/2015 | Brad | Denetz | Timisha Wright | N | 7500 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/15/2015 | Brad | Denetz | Veronica Harris | N | 7500 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/15/2015 | Brad | Denetz | Miguel Ruiz | N | 7500 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/15/2015 | Brad | Denetz | Brittany Huddleston | N | 10000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/15/2015 | Brad | Denetz | Liliana Cecena | N | 10000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|---|
| 7/22/2015 | Brad | Denetz | Latoya King | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/22/2015 | Brad | Denetz | Rosetta Watts | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/22/2015 | Brad | Denetz | Chris Hunte | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/22/2015 | Brad | Denetz | Margarita Ogbuehi | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/22/2015 | Brad | Denetz | Deborah Blount | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/22/2015 | Brad | Denetz | Rita Jones | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/22/2015 | Brad | Denetz | Brenda Watson | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/22/2015 | Brad | Denetz | Janice Jones | N | 7500 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/22/2015 | Brad | Denetz | Jacqueline Olanipekun | N | 7500 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/22/2015 | Brad | Denetz | Stacy Hunter | N | 7500 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/22/2015 | Brad | Denetz | Shermetra Jackson | N | 7500 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/22/2015 | Brad | Denetz | Akua Osei | N | 10000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/22/2015 | Brad | Denetz | Brittany Huddleston | N | 10000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/23/2015 | Brad | Denetz | Jade Wiland | N | 1000 | Our People | Thanks for taking the time to show me some filter settings, navigation techniques, and report pulls.  I appreciate your time!!!! | public | award_points |
| 7/27/2015 | Brad | Denetz | Rita Johnson | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/30/2015 | Brad | Denetz | Daniel Cooper | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/30/2015 | Brad | Denetz | Tomi Light | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/30/2015 | Brad | Denetz | Isaac Jones | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/30/2015 | Brad | Denetz | Tiffany Looney | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/30/2015 | Brad | Denetz | Brandy Anders | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/30/2015 | Brad | Denetz | Gracinda Hamilton | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/30/2015 | Brad | Denetz | Cornelius Brown II | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/30/2015 | Brad | Denetz | Eric Norrell | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/30/2015 | Brad | Denetz | Akua Osei | N | 7500 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |

APP099

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|------|-------------------|------------------|----------|---------------------|--------|------|---------|-----------|------|
| 7/30/2015 | Brad | Denetz | Joshua Wilson | N | 7500 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/30/2015 | Brad | Denetz | Stephanie Dudley | N | 7500 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/30/2015 | Brad | Denetz | Amanda Harris | N | 7500 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/30/2015 | Brad | Denetz | Rosetta Watts | N | 10000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 7/30/2015 | Brad | Denetz | Ashley McSwain | N | 10000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Elizabeth Sila | N | 20000 | Excellence | Congratulations on your Leadership Award for June 2015!!!! Keep up the great work!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Roque Alejo | N | 20000 | Excellence | Congratulations on your Leadership Award for June 2015!!!! Keep up the great work!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Febbie Masiya | N | 20000 | Excellence | Congratulations on your Leadership Award for June 2015!!!! Keep up the great work!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Walkiki Williams | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Rachel McNeal | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Edward Griffin | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Tunde Fasoro | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Yevette Jefferson | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Sarah Juarez | N | 5000 | | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Kaela Wright | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Eric Norrell | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Kierra Thibodeaux | N | 7500 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Yelson Henriquez | N | 7500 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Tranita McGee | N | 7500 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Ana Limon | N | 10000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Tomi Light | N | 20000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Sara Jones | N | 20000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Akua Osei | N | 20000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Malcolm Riley. Jr. | N | 20000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|---|
| 8/5/2015 | Brad | Denetz | Cierra Brunson | N | 20000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Quin Walker | N | 20000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Maricela Ramos | N | 20000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Patrick McKenzie | N | 30000 | Performance | Congratulations!!!! July Bingo Contest Winner!!!   Team BBQ Award. | public | award_points |
| 8/5/2015 | Brad | Denetz | Aaron Guerrero | N | 30000 | Performance | Congratulations!!!! July Bingo Contest Winner!!!  Team BBQ Award. | public | award_points |
| 8/5/2015 | Brad | Denetz | Rico Anderson | N | 7500 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Tam Nguyen | N | 5000 | Service | Thanks for helping out today!!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Janet Young | N | 5000 | Service | Thanks for helping out today!!!! | public | award_points |
| 8/5/2015 | Brad | Denetz | Treasure Jadore | N | 10000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 8/6/2015 | Brad | Denetz | Courtnee Lewis | N | 10000 | Performance | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 8/6/2015 | Brad | Denetz | Max Lacayo | N | 10000 | Performance | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 8/6/2015 | Brad | Denetz | Daniel Cooper | N | 10000 | Performance | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 8/6/2015 | Brad | Denetz | Myrna Chapa | N | 10000 | Performance | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 8/6/2015 | Brad | Denetz | Rita Johnson | N | 10000 | Performance | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 8/6/2015 | Brad | Denetz | Brittany Jackson | N | 10000 | Performance | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 8/6/2015 | Brad | Denetz | LaBricha Brown | N | 5000 | Performance | Congratulations!!!! July Bingo Contest Winner!!! | public | award_points |
| 8/31/2015 | Brad | Denetz | Julie Shankle | N | 2000 | Our People | Julie, thanks for coming to LEW and help cover the floor during our Townhall meeting with Jason Kulas. | public | award_points |
| 8/31/2015 | Brad | Denetz | Duane Bacon | N | 2000 | Our People | Duane, thanks for coming to LEW and help cover the floor during our Townhall meeting with Jason Kulas. | public | award_points |
| 9/11/2015 | Brad | Denetz | Joseph Burda | N | 15000 | Our People | AHA Race Car Tournament Winner | public | award_points |
| 9/11/2015 | Brad | Denetz | Marcus Mumphrey Jr. | N | 10000 | Performance | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 9/11/2015 | Brad | Denetz | Krystle Stevenson | N | 10000 | Performance | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 9/11/2015 | Brad | Denetz | Dave Bouchard | N | 10000 | Performance | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 9/11/2015 | Brad | Denetz | Max Lacayo | N | 10000 | Performance | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 9/11/2015 | Brad | Denetz | Kimberly Taylor | N | 10000 | Performance | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|------|-------------------|------------------|----------|---------------------|--------|------|---------|-----------|------|
| 9/11/2015 | Brad | Denetz | Louis Ovalle | N | 10000 | Performance | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 9/11/2015 | Brad | Denetz | Socorro Patron | N | 20000 | Performance | Congratulations on Leader of the Month!!! Keep up the Great Work!!! | public | award_points |
| 9/11/2015 | Brad | Denetz | Shacolby Sorrells | N | 20000 | Performance | Congratulations on Leader of the Month!!! Keep up the Great Work!!! | public | award_points |
| 9/15/2015 | Brad | Denetz | Aaron Guerrero | N | 20000 | Excellence | Aaron, Sam and I appreciate your efforts holding down 2 teams until we found a manager for the other 4x10 group.  Thank you very much and great job!!!! | public | award_points |
| 9/21/2015 | Brad | Denetz | Chelsea Elwood | N | 8000 | Our People | Chelsea, here is 8000 points to compensate value in the AHA basket you won.  Thank you. | public | award_points |
| 9/23/2015 | Brad | Denetz | Rhonda Zeman | N | 10000 | Excellence | Rhonda, thanks for everything you spearheaded during AHA and still keeping the shop with top performance.  I truly appreciate you!!! | public | award_points |
| 10/8/2015 | Brad | Denetz | Vickie Couch | N | 20000 | Excellence | Congratulations on Leader of the Month!!!!! | public | award_points |
| 10/8/2015 | Brad | Denetz | Christopher Collier | N | 20000 | Excellence | Congratulations on Leader of the Month!!!!! | public | award_points |
| 10/8/2015 | Brad | Denetz | Adam Fakri | N | 20000 | Excellence | Congratulations on Leader of the Month!!!!! | public | award_points |
| 10/13/2015 | Brad | Denetz | Jorge Cabrera | N | 10000 | Excellence | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 10/13/2015 | Brad | Denetz | Jennifer Hawkins | N | 10000 | Excellence | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 10/13/2015 | Brad | Denetz | Lorrie Flores | N | 10000 | Excellence | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 10/13/2015 | Brad | Denetz | Akua Osei | N | 10000 | Excellence | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 10/13/2015 | Brad | Denetz | Bernice Barnes | N | 10000 | Excellence | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 10/13/2015 | Brad | Denetz | Myrna Chapa | N | 10000 | Excellence | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 11/10/2015 | Brad | Denetz | Adam Fakri | N | 15000 | Excellence | Congratulations on being the Winner of the Manager Contest-- PT Associates!!! | public | award_points |
| 11/10/2015 | Brad | Denetz | Chelsea Elwood | N | 10000 | Excellence | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 11/10/2015 | Brad | Denetz | Maria Colunga | N | 10000 | Excellence | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 11/10/2015 | Brad | Denetz | Elena Mendoza | N | 10000 | Excellence | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 11/10/2015 | Brad | Denetz | Rachel McDaniel | N | 10000 | Excellence | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 11/10/2015 | Brad | Denetz | Alesha Medlock | N | 10000 | Excellence | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 11/10/2015 | Brad | Denetz | Christopher Rodriguez | N | 10000 | Excellence | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 11/24/2015 | Brad | Denetz | Maria Mireles | N | 20000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|---|
| 11/24/2015 | Brad | Denetz | London Thibodeaux | N | 15000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 11/24/2015 | Brad | Denetz | Tracie Branch | N | 10000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 11/24/2015 | Brad | Denetz | Tia Gatlin | N | 7500 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 11/24/2015 | Brad | Denetz | Nicholas Gales | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 11/30/2015 | Brad | Denetz | Daniel Cooper | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 11/30/2015 | Brad | Denetz | Shermetra Jackson | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 11/30/2015 | Brad | Denetz | Esteban Lopez | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 11/30/2015 | Brad | Denetz | Jeffrey Morgan | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 11/30/2015 | Brad | Denetz | Tara Hall | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 11/30/2015 | Brad | Denetz | Bryson Gray | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 11/30/2015 | Brad | Denetz | Chelsea Elwood | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 11/30/2015 | Brad | Denetz | Brenda Watson | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 11/30/2015 | Brad | Denetz | Cierra Brunson | N | 7500 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 11/30/2015 | Brad | Denetz | Sarah Juarez | N | 10000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 11/30/2015 | Brad | Denetz | Edson Sanchez | N | 20000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 11/30/2015 | Brad | Denetz | Ramon Puga Cruz | N | 15000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/4/2015 | Brad | Denetz | Michael Reiter | N | 2000 | Service | Michael, thanks for your hard work in moving all of the Servicing agents last month.  We appreciate your efforts!!! | public | award_points |
| 12/7/2015 | Brad | Denetz | Daphne Abrams | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/7/2015 | Brad | Denetz | John Leavell | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/7/2015 | Brad | Denetz | Carolina Mata | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/7/2015 | Brad | Denetz | Ali Gales | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/7/2015 | Brad | Denetz | Roger Franklin | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/7/2015 | Brad | Denetz | Donna McCray | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/7/2015 | Brad | Denetz | Shaniqua Smith | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|---|
| 12/7/2015 | Brad | Denetz | Jordan Thompson | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/7/2015 | Brad | Denetz | Shaneckwa Voss | N | 7500 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/7/2015 | Brad | Denetz | Arvette Anderson | N | 10000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/7/2015 | Brad | Denetz | Lorenza Morris | N | 15000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/7/2015 | Brad | Denetz | Qiana Majors | N | 20000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/9/2015 | Brad | Denetz | Chelsey Dietz | N | 10000 | Excellence | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 12/9/2015 | Brad | Denetz | Francisco Mendoza IV | N | 10000 | Excellence | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 12/9/2015 | Brad | Denetz | Kaela Wright | N | 10000 | Excellence | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 12/9/2015 | Brad | Denetz | Veronica Harris | N | 10000 | Excellence | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 12/9/2015 | Brad | Denetz | Myoshia Warren | N | 10000 | Excellence | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 12/9/2015 | Brad | Denetz | Diana Olide | N | 10000 | Excellence | Congratulations on Employee of the Month!!! Keep up the Great Work!!! | public | award_points |
| 12/9/2015 | Brad | Denetz | Tony Angelone | N | 20000 | Excellence | Congratulations on Leader of the Month!!!!! | public | award_points |
| 12/9/2015 | Brad | Denetz | Elizabeth Sila | N | 20000 | Excellence | Congratulations on Leader of the Month!!!!! | public | award_points |
| 12/9/2015 | Brad | Denetz | Alex Jaimes | N | 20000 | Excellence | Congratulations on Leader of the Month!!!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Frank Blair | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Marcus House | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Lashon Williams | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Benjamin Vargo | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Curtoria Brown | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Kenneth Kirkham | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Rhtonda Robertson | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Jason Shelley | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Jasmine Jones | N | 7500 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Veronica Harris | N | 10000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|------|-------------------|------------------|----------|---------------------|--------|------|---------|-----------|------|
| 12/14/2015 | Brad | Denetz | Kimberely Ellis | N | 15000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Sara Jones | N | 20000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Keegan Corless | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Aaron Guerrero | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Maria Mireles | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Sherree Johnson | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Marcus Mumphrey Jr. | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Jaimin Lacy | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Alexa Wetherell-Bates | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Haatsari Masiya | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Brenda Watson | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Cierra Brunson | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Stephanie Dudley | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Tymesha Abraham | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Coneicka Price | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | David Cosby | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Ariel Davis | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Timisha Wright | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Micah Bradley | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Nena Roundtree | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | George Tambe | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Loreal McLemore | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Jacqueline Olanipekun | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Chelsey Dietz | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|---|
| 12/14/2015 | Brad | Denetz | Omar Carranza | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Kimberely Ellis | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Miaya Brewster | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Jaime Edney | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Walkiki Williams | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Margarita Ogbuehi | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | April Garcia | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Jeffrey Morgan | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/14/2015 | Brad | Denetz | Joanne Justiz | N | 1000 | Our People | Please enjoy some extra Star Wars points!!! | public | award_points |
| 12/30/2015 | Brad | Denetz | Jennifer Hawkins | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/30/2015 | Brad | Denetz | Thomasina Parker | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/30/2015 | Brad | Denetz | Ali Gales | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/30/2015 | Brad | Denetz | Nestor Erazo | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/30/2015 | Brad | Denetz | Tiffany Looney | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/30/2015 | Brad | Denetz | Cecy Aguilar | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/30/2015 | Brad | Denetz | Jonathan Martinez | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/30/2015 | Brad | Denetz | Otis Perkins. Sr. | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/30/2015 | Brad | Denetz | Max Lacayo | N | 7500 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/30/2015 | Brad | Denetz | Kierra Thibodeaux | N | 10000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/30/2015 | Brad | Denetz | Shaneca Gay | N | 15000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 12/30/2015 | Brad | Denetz | Jacqueline Olanipekun | N | 20000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 1/12/2016 | Brad | Denetz | Davin Rutherford | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 1/12/2016 | Brad | Denetz | Emerial Woods | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 1/12/2016 | Brad | Denetz | Christopher Adams | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|------|-------------------|------------------|----------|---------------------|--------|------|---------|-----------|------|
| 1/12/2016 | Brad | Denetz | Yolanda Rivera | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 1/12/2016 | Brad | Denetz | Gabe Williams | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 1/12/2016 | Brad | Denetz | Veronica Harris | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 1/12/2016 | Brad | Denetz | Loreal McLemore | N | 7500 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 1/12/2016 | Brad | Denetz | Maria Colunga | N | 10000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 1/12/2016 | Brad | Denetz | Corey Johnson | N | 15000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 1/12/2016 | Brad | Denetz | Cecelia Greene | N | 20000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 1/15/2016 | Brad | Denetz | Patrick McKenzie | N | 20000 | Excellence | Congratulations on Leader of the Month!!!!! | public | award_points |
| 1/15/2016 | Brad | Denetz | Febbie Masiya | N | 20000 | Excellence | Congratulations on Leader of the Month!!!!! | public | award_points |
| 1/15/2016 | Brad | Denetz | Loreal McLemore | N | 10000 | Excellence | Congratulations on Employee of the Month!!!! | public | award_points |
| 1/15/2016 | Brad | Denetz | Brittany Brodie | N | 10000 | Excellence | Congratulations on Employee of the Month!!!! | public | award_points |
| 1/15/2016 | Brad | Denetz | Maria Mireles | N | 10000 | Excellence | Congratulations on Employee of the Month!!!! | public | award_points |
| 1/15/2016 | Brad | Denetz | Myoshia Warren | N | 10000 | Excellence | Congratulations on Employee of the Month!!!! | public | award_points |
| 1/15/2016 | Brad | Denetz | Veronica Harris | N | 10000 | Excellence | Congratulations on Employee of the Month!!!! | public | award_points |
| 1/15/2016 | Brad | Denetz | Ivan Zamarron | N | 10000 | Excellence | Congratulations on Employee of the Month!!!! | public | award_points |
| 1/15/2016 | Brad | Denetz | Gregory Jasper | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 1/15/2016 | Brad | Denetz | Ashley McSwain | N | 5000 | Excellence | Congratulations as a Dough Dough Dough Merry Christmas Contest Winner!!!! | public | award_points |
| 2/11/2016 | Brad | Denetz | Ytisha Ford | N | 10000 | Excellence | Congratulations on Employee of the Month!!!! | public | award_points |
| 2/11/2016 | Brad | Denetz | Kevin Daniel | N | 10000 | Excellence | Congratulations on Employee of the Month!!!! | public | award_points |
| 2/11/2016 | Brad | Denetz | Byron Jones | N | 10000 | Excellence | Congratulations on Employee of the Month!!!! | public | award_points |
| 2/11/2016 | Brad | Denetz | Jason Shelley | N | 10000 | Excellence | Congratulations on Employee of the Month!!!! | public | award_points |
| 2/11/2016 | Brad | Denetz | Myoshia Warren | N | 10000 | Excellence | Congratulations on Employee of the Month!!!! | public | award_points |
| 2/11/2016 | Brad | Denetz | Louis Ovalle | N | 10000 | Excellence | Congratulations on Employee of the Month!!!! | public | award_points |
| 2/17/2016 | Brad | Denetz | Jason Hollis | N | 2000 | Our People | Jason, thanks for your time with Jorge and Jean to get iOffice managed.  I appreciate it!!!! | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Multiple Recipients | Points | Tags | Message | Visibility | Type |
|------|-------------------|------------------|----------|---------------------|--------|------|---------|-----------|------|
| 2/17/2016 | Brad | Denetz | Reena Mathew | N | 2000 | Our People | Reena, thanks for your support to our team.  I appreciate it!!! | public | award_points |
| 2/17/2016 | Brad | Denetz | Sabrina Boyd | N | 2000 | Our People | Sabrina, thanks for your support to our team in LEW.  I really appreciate it!!! | public | award_points |
| 2/26/2016 | Brad | Denetz | Latrina Bills | N | 2000 | Excellence | Latrina...Just want to recognize your call that you had with customer Jamil Aoun #408218 on Feb. 23rd.  It was very thorough and exactly what we're looking for!!!  Great Job!!! | public | award_points |
| 2/26/2016 | Brad | Denetz | Maria Quijano | N | 20000 | Excellence | Maria...Congratulations on Leader of the Month for January!!!!! | public | award_points |
| 2/26/2016 | Brad | Denetz | Shacolby Sorrells | N | 20000 | Excellence | Shacolby...Congratulations on Leader of the Month for January!!!!! | public | award_points |

APP108

**From:** "Reena Mathew" <rmathew@santanderconsumerusa.com>
**To:** "Hortensia Perez" <hperez@santanderconsumerusa.com>, "Reena Mathew"
   <rmathew@santanderconsumerusa.com>
**Subject:** Conversation with Hortensia Perez
**Date:** Thu, 05 Sep 2013 17:53:58 +0000
**Importance:** Normal

---

**Reena Mathew [10:44 AM]:**
   Ten, is Laurie Kight still the contact for SCUSA apparel?
**Hortensia Perez [10:45 AM]:**
   No, I think its Ruth Ann
**Reena Mathew [10:45 AM]:**
   Gotcha, thanks!
**Hortensia Perez [10:54 AM]:**
   omg
   :$
**Reena Mathew [10:55 AM]:**
   What?
**Hortensia Perez [10:55 AM]:**
   Cigna is our dental provider, right?
**Reena Mathew [10:55 AM]:**
   Yes...
**Reena Mathew [10:59 AM]:**
   Everything ok?
**Hortensia Perez [10:59 AM]:**
   yea, I just had a brain-fart
**Reena Mathew [11:00 AM]:**
   oh, lol. Glad it wasn't anything too major :)
**Hortensia Perez [11:00 AM]:**
   oh and today is our Safety Meeting at 3
**Reena Mathew [11:01 AM]:**
   Ugh! Would you be able to fill me in if I leave early? They're usually really basic....
**Hortensia Perez [11:02 AM]:**
   Are you sure? Hope they dont ask too many questions since this is my first time ever attending one
**Reena Mathew [11:03 AM]:**
   LOL, do you want me to cash in tomm instead? I don't mind
**Hortensia Perez [11:03 AM]:**
   lol - will you?
   it's a Friday too!!
**Reena Mathew [11:03 AM]:**
   Of course!
   Yep, that works!
**Hortensia Perez [11:03 AM]:**
   THANK YOU!!
**Reena Mathew [11:03 AM]:**
   :D
**Hortensia Perez [11:35 AM]:**
   Help...when you have sec :)
**Reena Mathew [11:35 AM]:**
   k
**Reena Mathew [12:01 PM]:**

Do you have time to be a witness for my convo with Ardavia Harris? She's the one who supposedly overheard Bee'Anka and Tymesha talking about Jalana Nettles issue.....

**Hortensia Perez [12:01 PM]:**

Greatness....yes ma'am

**Reena Mathew [12:01 PM]:**

lol, ty--emailing her now

**Hortensia Perez [12:02 PM]:**

Let me just go get (C)

brb

**Reena Mathew [12:02 PM]:**

k

**Reena Mathew [12:40 PM]:**

Just emailed the other one....

**Hortensia Perez [12:41 PM]:**

Coolio - I'm so sorry all of this has dragged out like this

**Reena Mathew [12:41 PM]:**

OMG, not your fault! Hey maybe this way it can all be put to rest :)

**From:** "Reena Mathew" <rmathew@santanderconsumerusa.com>
**To:** "Angelina Turilli" <aturilli@santanderconsumerusa.com>, "Reena Mathew"
<rmathew@santanderconsumerusa.com>
**Subject:** Conversation with Angelina Turilli
**Date:** Fri, 14 Feb 2014 18:41:32 +0000
**Importance:** Normal

---

Reena Mathew [11:03 AM]:
  Lina, would you be able to ask if they can provide a job aid for creating a position? :)
Angelina Turilli [11:05 AM]:
  sorry, on the phone with CO
Reena Mathew [11:06 AM]:
  K, no worries.
Angelina Turilli [11:06 AM]:
  you guys can ask :)
  silly!
Reena Mathew [11:06 AM]:
  We're scared of being yelled at LOL
Angelina Turilli [11:06 AM]:
  lol
  send an email
Reena Mathew [11:06 AM]:
  K :)
Reena Mathew [11:37 AM]:
  Hey Lina, I know Sabrina is leaving early, but I was going to ask too! I have my daughter's party and wanted to leave early
  for my date tonight! lol Would it be ok if I left @ 12:45p-1p for the day?
Angelina Turilli [11:52 AM]:
  yes, that's fine
Reena Mathew [11:52 AM]:
  You're the best, ty Lina!
Angelina Turilli [11:52 AM]:
  np
Angelina Turilli [12:14 PM]:
  did Leslie Thompson come back to work?
Reena Mathew [12:14 PM]:
  No....terming her today
Angelina Turilli [12:14 PM]:
  ok
Reena Mathew [12:29 PM]:
  Your previous IM--I was thinking of  LaTamera Johnson--the NC/NS for MR. Yes Leslie did come back yesterday and she
  got her car :)
Angelina Turilli [12:29 PM]:
  ok good

SC002847

**From:** "Hortensia Perez" <hperez@santanderconsumerusa.com>

**To:** "Hortensia Perez" <hperez@santanderconsumerusa.com>, "Reena Mathew"
<rmathew@santanderconsumerusa.com>

**Subject:** Conversation with Hortensia Perez

**Date:** Thu, 13 Mar 2014 20:28:17 +0000

**Importance:** Normal

---

**Hortensia Perez [3:06 PM]:**
BOOOO
You never called me yest
**Reena Mathew [3:15 PM]:**
Sorry, had to leave early and didn't get a chance. You free now?
**Hortensia Perez [3:16 PM]:**
yes ma'am

**From:** "Reena Mathew" <rmathew@santanderconsumerusa.com>
**To:** "Angelina Turilli" <aturilli@santanderconsumerusa.com>, "Reena Mathew"
<rmathew@santanderconsumerusa.com>
**Subject:** Conversation with Angelina Turilli
**Date:** Fri, 21 Nov 2014 16:44:48 +0000
**Importance:** Normal

---

Reena Mathew [10:31 AM]:
Hey L, do you think I can leave early today?
Angelina Turilli [10:31 AM]:
sure, what time
Reena Mathew [10:31 AM]:
3p ok?
Angelina Turilli [10:32 AM]:
yes, that's fine
Reena Mathew [10:32 AM]:
TY!! :)
Angelina Turilli [10:32 AM]:
you're welcome

**From:** "Reena Mathew" <rmathew@santanderconsumerusa.com>
**To:** "Gregory Vinson" <gvinson@santanderconsumerusa.com>, "Reena Mathew"
<rmathew@santanderconsumerusa.com>
**Subject:** Conversation with Gregory Vinson
**Date:** Mon, 01 Dec 2014 19:53:42 +0000
**Importance:** Normal

---

**Reena Mathew [1:49 PM]:**
 Hey GV, I have to leave early today, but the DA is with Sabrina
**Gregory Vinson [1:49 PM]:**
 Cool
**Reena Mathew [1:50 PM]:**
 (H)

**From:** Stephanie Elad <selad@santanderconsumerusa.com>
**To:** Angelina Turilli <aturilli@santanderconsumerusa.com>
**Cc:** Dana Hawkins <dhawkins@santanderconsumerusa.com>, Jessica Gleason <jgleason@santanderconsumerusa.com>, Jonathan Morse <JMORSE@santanderconsumerusa.com>
**Subject:** RE: Termination Tyrone Wilson [C] (Contract Ended) - Effective Date 2015 01 14
**Date:** Thu, 22 Jan 2015 21:19:49 +0000
**Importance:** Normal

---

Let's revisit tomorrow when we have the entire team together.

**From:** Angelina Turilli
**Sent:** Thursday, January 22, 2015 3:18 PM
**To:** Stephanie Elad
**Cc:** Dana Hawkins; Jessica Gleason; Jonathan Morse
**Subject:** RE: Termination Tyrone Wilson [C] (Contract Ended) - Effective Date 2015 01 14

I have met with Reena, however I have noticed Fatma has been responding to these today as "got it". Do we need to revisit?

**From:** Stephanie Elad
**Sent:** Thursday, January 22, 2015 3:17 PM
**To:** Angelina Turilli
**Cc:** Dana Hawkins; Jessica Gleason
**Subject:** RE: Termination Tyrone Wilson [C] (Contract Ended) - Effective Date 2015 01 14

Thanks! As we discussed, I would just have a conversation with Reena. This is a new process so I know we are going to have a few bumps.

Jess and I talked earlier – I understand this has been an ongoing issue. As a long term fix, let's have Melissa just process all of the terms due to contract/assignment ending and advise the appropriate business partner once the term has been processed. Please review with Melissa tomorrow and let's also inform the team during our meeting.

Thanks!

**From:** Angelina Turilli
**Sent:** Thursday, January 22, 2015 2:52 PM
**To:** Stephanie Elad
**Cc:** Dana Hawkins
**Subject:** RE: Termination Tyrone Wilson [C] (Contract Ended) - Effective Date 2015 01 14

---

**From:** Stephanie Elad
**Sent:** Thursday, January 22, 2015 8:07 AM
**To:** Angelina Turilli
**Cc:** Dana Hawkins
**Subject:** Fwd: Termination Tyrone Wilson [C] (Contract Ended) - Effective Date 2015 01 14

Can you look into this?

Sent from my iPhone

Begin forwarded message:

**From:** Dana Hawkins <dhawkins@santanderconsumerusa.com>
**Date:** January 22, 2015 at 7:53:43 AM CST
**To:** Stephanie Elad <selad@santanderconsumerusa.com>, Jessica Gleason
<jgleason@santanderconsumerusa.com>
**Cc:** Dana Hawkins <dhawkins@santanderconsumerusa.com>
**Subject: FW: Termination Tyrone Wilson [C] (Contract Ended) - Effective Date 2015 01 14**

Good morning,

This termination was processed on 1/21/2015 with an effective date of 1/14/2015.  Melissa Lawson completed the
term process in Workday.  Please provide a timeline of events including:

- ? When we were notified of the term 1/14/15 at 12:22 pm
- ? Who notified us of the term Vanessa Trevino
- ? Any remediation efforts Melissa sent to Reena and Dean at 12:30pm

Reena was sent the email, and asked to show Dean how to process a term. Reena missed the email. Melissa received
a second email on 1/21/15 stating that the term had not been processed, so she went in and immediately processed
the term. This happened prior to our added the process to have HRBPs sending a notification to Melissa that they had
completed the process. Melissa did not follow up with Reena or Dean to see if the term had been completed on
1/14/15.

Please let me know if you have any questions.

Dana

---

**From:** workday@santanderconsumerusa.com [mailto:workday@santanderconsumerusa.com]
**Sent:** Wednesday, January 21, 2015 2:44 PM
**To:** Shaquaylon McNuckles
**Subject:** Termination Tyrone Wilson [C] (Contract Ended) - Effective Date 2015 01 14

Tyrone Wilson [C] (Contract Ended) has been terminated from Workday ( employee ID 992790 , department 036005
Bankruptcy , effective date 2015 01 14 , hire date [not available] , Location North Richland Hills , State Texas ) .

Please remove system access effective immediately.

Business Process: End Contract: Tyrone Wilson [C] (Contract Ended)
Subject: Tyrone Wilson [C] (Contract Ended)
Details: End Contract for Tyrone Wilson [C] (Contract Ended) effective on 01/14/2015

**From:** Angelina Turilli <aturilli@santanderconsumerusa.com>
**To:** "Mathew, Reena" <rmathew@santanderconsumerusa.com>
**Subject:** RE: Termination Tyrone Wilson [C] (Contract Ended) - Effective Date 2015 01 14
**Date:** Thu, 22 Jan 2015 18:57:24 +0000
**Importance:** Normal

---

We need to ensure these are handled as soon as we get them. This created a risk event for us.

**From:** Reena Mathew
**Sent:** Thursday, January 22, 2015 10:23 AM
**To:** Angelina Turilli
**Subject:** RE: Termination Tyrone Wilson [C] (Contract Ended) - Effective Date 2015 01 14

GM Lina,

I'm sorry-- I don't even remember seeing this…..I guess I will be more cognizant when Melissa sends those over going forward.

Anything I can do for now?

Thanks,
Reena

**From:** Angelina Turilli
**Sent:** Thursday, January 22, 2015 10:18 AM
**To:** Reena Mathew
**Subject:** FW: Termination Tyrone Wilson [C] (Contract Ended) - Effective Date 2015 01 14
**Importance:** High

May I get your thoughts on why this did not get processed on 1/14 when we were notified?

**From:** Melissa Lawson
**Sent:** Thursday, January 22, 2015 10:00 AM
**To:** Angelina Turilli
**Subject:** RE: Termination Tyrone Wilson [C] (Contract Ended) - Effective Date 2015 01 14

We were notified on 1/14/2015 at about 12:22 of the term and it was sent over to us from Vanessa Trevino.

Once I got another email yesterday saying that the term was not completed I went in and did it right away.

I will need to make sure I follow up with the person I sent the request to make sure this is taken care of. This was prior to us having the conversation about emailing me and letting me know.

Melissa L. Lawson

Santander Consumer USA Inc.

HR Generalist

Confidential

| | |
|---|---|
| phone | 214.261.1570 |
| email | mlawson@santanderconsumerusa.com |
| web | www.santanderconsumerusa.com |

---

**From:** Angelina Turilli
**Sent:** Thursday, January 22, 2015 8:09 AM
**To:** Melissa Lawson
**Subject:** FW: Termination Tyrone Wilson [C] (Contract Ended) - Effective Date 2015 01 14
**Importance:** High

Please provide a timeline of events including:

- ? When we were notified of the term
- ? Who notified us of the term
- ? Any remediation efforts

---

**From:** workday@santanderconsumerusa.com [mailto:workday@santanderconsumerusa.com]
**Sent:** Wednesday, January 21, 2015 2:44 PM
**To:** Shaquaylon McNuckles
**Subject:** Termination Tyrone Wilson [C] (Contract Ended) - Effective Date 2015 01 14

Tyrone Wilson [C] (Contract Ended) has been terminated from Workday ( employee ID 992790 , department 036005 Bankruptcy , effective date 2015 01 14 , hire date [not available] , Location North Richland Hills , State Texas ) .

Please remove system access effective immediately.

Business Process: End Contract: Tyrone Wilson [C] (Contract Ended)
Subject: Tyrone Wilson [C] (Contract Ended)
Details: End Contract for Tyrone Wilson [C] (Contract Ended) effective on 01/14/2015

SC000043
APP118

**Addendum**
**Timeline of Events**

**February 11, 2015**
- Was asked to provide a summary of information from an HR luncheon attended, summary never received—I did provide a summary, just need access to my Sent folder. If this was an issue, how come I was never asked about it till a year later?

**April 9, 2015**
- March Recap: Reflected 2 side by sides and 4 jumpstarts for the month, number of meeting with business leaders was not quantified. ?? What does this mean? Was never told anything when this was submitted.

**May 18, 2015**
- April Recap: Jumpstarts were not attended for the month, trainings not conducted, and number of meetings with business leaders was not quantified ?? Same as above.

**July 1, 2015**
- Requests to leave half day to attend doctor's appointment, same day notification ?? What is the point of listing these? Everyone in the office at some point left early due to unforeseeable events; this was for child that was sick and Dr could see them that day.

**July 2, 2015**
- Asked by HR Manager (HRM) to correct onboarding discrepancies in WD, asked if this could be assigned to another dept. Had an extremely heavy load as well as Sabrina did—this was an admin tasks. Why would this be an issue if we needed a little extra help? I barely ask for help when I was undertaking an extremely heavy load.... I had the heaviest one out of all the HRBP's so why am I being penalized for asking for help on something the HRG's should be doing either way?

**July 10, 2015**
- Asked by HRM to support the Credit Card Department at 8585 due to the shortage of staff and unbalanced workload, asked for assistance felt overwhelmed with current duties False statement—I did it and I did it without any issues at either site. At times, I did state I was extremely busy but who wouldn't be with that kind of workload? Not unbalanced......I took over what an NRH BP had been doing previously. Was doing it effectively and even when we were site specific, I still was over the department without any complaints.

**August 13, 2015**
- July Recap: One side by side held, attended 3 jumpstarts, stated 10+ meetings attended with the business, and recap of training held with one manager—What does this mean??

**August 23, 2015**
- Texts manager to advise of late arrival for the next day, HRM had to rearrange her schedule to provide site coverage—Texted this day before as it was my daughter's first day of Kindergarten—HRM said, 'Sure, no problem' (I have text message).  If it was an issue, I should've been coached or told no.

**July-August 2015**
- Stated the work load was heavy, asked by HRM to provide a time study to pinpoint where her time was being allocated to. Due to the lack of specifics, was asked twice to complete assignment—Did not know

what this was for; HRM gave me no direction, just asked me to list what I did on a daily basis and then gave me specifics (every 15 minutes) the next time and never followed up on the time study.
- Continually reminded to work full shifts and provide sufficient notice when requesting to leave early ?? When??
- Strongly advised of the importance in submitting DA's to the business in a timely manner, and addressed on not leaving all DA entries solely to the generalist, everyone needed to assist with the workload?? Untrue, when???? Never had this type of conversation.
- Manager constantly stepped in to finalize pending DA's and process terminations—Took pre-approved time off and rarely called in--when did you step in????

**September 1, 2015- Transitioned to New HRM**

**September 3, 2015**
- Requested to leave half day on Friday, September 4 due to traveling, advised she could leave early but needed to provide a greater notification, and needed do her best to work most of her shift. Completed all my work before I left and only left closer to 3:45/4p. What did you have to cover?

**September 4, 2015**
- Came in at 9 am and left at 2 pm.

**September 17, 2015**
- Same day notification to leave early, had flight the next day ??? Did not travel this day so don't know what you are referring to.

**September 28, 2015**
- Discussed work load with HRM, Reena feels overwhelmed and there isn't enough time- had long conversation on how the HRBP level requires a "high level of efficiency" Never did we have a 'long conversation' if we did, where is the documentation on this because I would like to see this. At times I did feel overwhelmed, but how is that an issue for a PIP? Should've provided me with help.

**October 12, 2015**
- Discussed workload with HRM, and asked what was consuming her time, she did not quantify, asked for assistance with investigation checklist This is a completely false statement; I informed HRM that the checklist was taking longer than anticipated (almost 10 months due to initial team being let go (3 HRBP's) and Tina was asked to step in for Back Office feedback and HRM stated there still needed to be one change made per HRD. HRM had just consulted with other HRM's about final input and said HRD wanted one last change and HRM stated she would make the last change and submit it since that was the only thing pending. Tina and I had worked on the whole thing by ourselves until it came time to get HRM input. HRM *volunteered* to take it from there and make change and submit so it wouldn't go back and forth one more time and we could finally get it done.

**October 29, 2015**
- Brad, site Director, notifies HRM that they have 10 DA's pending from Reena, upon speaking with her she states she was behind and had asked the AVPs to give her until Friday. Advised DA's are time sensitive and if she is behind she needs to let me know, so we can assist in getting those out. *Never was behind*— attended SHRM conference and sent email to AVP's stating I would have the DA's by Friday of the week as we were offsite. AVP responded and said that was fine (I have email and response from AVP). HRM mentioned to me on Thursday, 10/29 that she was speaking to Brad about Rhonda (separate issue where Rhonda had to be addressed about taking situation into her own hands) and that he had also in

conversation asked for an update on the DA's which I got to them in a timely manner. Making it seem like he came to HR to specifically complain which is untrue.
- Also requests to arrive to work late for tomorrow, Friday October 30th, she had a doctor's appointment and could not miss it.  HRM had to rearrange schedule to provide coverage for site. She arrives to the office at noon. Advised understood emergencies/life happens but in circumstances where a greater notification can be given, it needs to be done. This was first appointment for baby and HRM had been out for some time (one week) due to her move and I had no idea she was working from home Friday. I informed her it was a very important appointment and I stated I would try and get it rescheduled. Called doc office and it was a while before I could be seen so I let HRM know and she stated that was fine that she would come in. Never seemed like it was an issue and that Friday is the day I told her I was pregnant and that is why I had to go to appt. and she said it was ok and seemed very happy/excited for me.

**November 6, 2015**
- Received specific instruction from HR Director on how to communicate to the business the denial of a bereavement request, instruction not followed and additional time and resources spent on the issue—We let department know, but we may have let them know more than HRD wanted us to give. I will take ownership of that and have learned not to do that.

**November 9, 2015**
- Upon HRM's return, was provided feedback on time management, provided example of bereavement request—Time mgmt.—I literally spent 5 minutes looking up a picture for a false bereavement doc HRG asked me about. We in turn found it was fake. Literally was 5 minutes though and if we hadn't found it was fake, we would've allowed associate to get away with 3 possibly (1 for sure) fake bereavement requests. How is that an issue vs the opposite (if we hadn't looked into it and continually let associate get away with falsification of time)?

**November 16, 2015**
- Same day notification on needing to leave early, later asked for assistance with NH class, team had to stay later to cover workload. –It was a matter of picking up DL's/SS cards which takes all of 10 minutes. Sabrina and I split all of the documents the next day to enter in Red Carpet which is what is very time consuming. I also have IM convo where HRM was completely ok with request and didn't let me know otherwise.

**November 17, 2015**
- Reminded her of the importance of prior notification when wanting to leave early, as it impacts the team. Advised how team came in early and stayed late to cover, advised if in the future work is pending leave requests will be denied.
- Stated she felt overwhelmed with work load, when asked what is consuming her time she mentioned DA's (5),  filling out the info forms for TA (7), emails, and just overall busy.?????????
-
**November 20, 2015**
- Contacted HRM stated she was extremely busy, asked if Ten could help her. Ten handled the pending investigation—HRM/HRG took the day off and left me completely alone on a payday Friday which was extremely busy and we had 2 investigations going on already. There should never be one person at a site on a payday Friday.  Jeff called at the end of the day with this new issue and there wasn't any way I could assist being alone and asked Ten if she could assist since she was at 8585 and she had no issue at all. Another reason why 8585 should've been site specific and not covered by HRBP at LEW.

**November 23, 2015**

- Reena received Deidra's resignation on Saturday, November 21st and did not process termination. The termination was not conducted until late in the afternoon Monday, November 23rd by HRM. Upon reviewing situation, employee had brought forth concerns in previous months- the situation was mishandled and was not followed up on. I take ownership of this one; I could've handled situation better but was going off of what information I was given.
- Provided term recommendation which was vague stating (see AVP notes below) explained the importance of summarizing and had her resend- which she did.  In addition, asked for the surrounding circumstances of incident, upon review advised her three people questioning one employee was overwhelming and we need to safeguard objectivity of the room. ?? AVP had already met with associate along with manager and had notated all the info—it was a black and white situation (falsification of time) so I stated 'please see below' in my notes. AVP/Manager and I met with associate since they had met prior and wanted to get all of the information since it had just happened that morning. Was never coached on that—was just asked to resend notes with my statement.

**November 24, 2015**
- Asked for assistance with 5 info security issues, advised her everyone's pending workload and asked for clarification on what she was doing. She stated she would like to discuss further –Another administrative task that is very time consuming; HR Compliance sent so many all at once and had a lot going on; per HRM stating if I needed help (when DA issue occurred), I asked for help so that we wouldn't be behind since these take a good amount of time to do. Why am I being penalized for asking for help if we are a team?

**November 25, 2015**
- Same day notification of Dr.'s appointment, took a longer lunch. Advised again, that a greater notification must be given- same day notices impacts the team and workload. I took Dr's appointment on my *lunch* and it was for a baby appt. How is this an issue when I am exempt and I used my lunch and am covered by FMLA? It was 15 mins over my lunch, how does that impact the business? I thought I was being courteous by using my lunch to go.

**December 8, 2015**
- Receive concerns from the VP and SVP for the credit cards group in regards to Reena's timeliness and questioned how she was handling an investigation.  They felt she had already reached a conclusion prior to looking into the matter. They requested another HR member review and finalize the case. Never heard about timeliness of anything? HRM stated that I shouldn't let business know what I was thinking upfront until investigation was completely finished. I stated I understood. However, after my recommendation of moving associate to a different team after I had done investigation, Jeff has never had an issue after that with either associate. Prior to finding a resolution, it was a constant disruption to the team. We finally came to the right conclusion as this had been escalating for a while and could've really taken a turn for the worse.

**December 22, 2015**
- Senior leadership members advise that Reena had approached them questioning the concerns they had brought forward, they stated they felt uncomfortable and surprised by this action. HRM in previous meeting regarding first PIP had mentioned I received complaints from Greg Vinson, Mitzie Jefferson and Jorge Munoz which I knew were false statement as we had excellent relationships. I asked Jorge if I was getting DA's to him on time and he said yes and that he jokes about things but doesn't mean anything by them (jokes about getting DA's etc when he walks into HR). Jorge asked me was everything ok and if he needed to let HRM know that I get things done on time and I said no, everything was fine.

**December 28, 2015**

- HR Generalist had to be called in on their time off to gather, organize, and help solve payroll discrepancies in order to meet deadline. As an HRBP and tenured employee, it is expected that Reena proactively work with other peers and departments to reach consensus and find solutions during these situations. This is not true—HRM's inadvertently allowed all HRG's to be off on the same day (that was the real issue) and no one had sent out Kronos audit. Sabrina logged in to get that out and later in the day and compiled list for Customer Servcie Holiday pay and I had finished up LEW Servicing and HRM had shown appreciation for us getting the information out. Nothing else was mentioned.

SC004176

APP123

**From:** "Reena Mathew" <rmathew@santanderconsumerusa.com>
**To:** "Angelina Hullum" <AHULLUM@santanderconsumerusa.com>, "Reena Mathew"
<rmathew@santanderconsumerusa.com>
**Subject:** Conversation with Angelina Hullum
**Date:** Wed, 01 Apr 2015 16:13:42 +0000
**Importance:** Normal

---

**Reena Mathew [9:51 AM]:**
Hey L, would it be ok if I leave at 2:30p today and work from my phone? Dylan has an eye appt--little man needs glasses!
8-|
**Angelina Hullum [9:52 AM]:**
Sabrina is leaving at 1 to take Greg to the dr
**Reena Mathew [9:52 AM]:**
Oh no.....
I take it she's not coming back?
**Angelina Hullum [9:53 AM]:**
no
**Reena Mathew [9:53 AM]:**
Ok--I guess I can reschedule then.
**Angelina Hullum [9:54 AM]:**
sorry... I will be there tomorrow, if you can change it to then
**Reena Mathew [9:55 AM]:**
Ok, thank you!
**Angelina Hullum [9:55 AM]:**
let me know
**Reena Mathew [9:55 AM]:**
Maybe I'll do my GITK and leave early and then maybe go afterwards....
**Angelina Hullum [9:55 AM]:**
ok
**Reena Mathew [9:57 AM]:**
TY! :D
**Reena Mathew [10:57 AM]:**
Wrapping up meeting with Adam/Mitzie....will call as soon as we're done
**Angelina Hullum [10:57 AM]:**
ok no problem
**Reena Mathew [11:07 AM]:**
Are you guys on the call?
**Angelina Hullum [11:07 AM]:**
hold on Melissa called
**Reena Mathew [11:07 AM]:**
I hear the hold music! lol
k
**Angelina Hullum [11:10 AM]:**
are you there
call my desk when you can
**Reena Mathew [11:10 AM]:**
yes, k

SC002732

**Ceicili S. DiMarco**

| | |
|---|---|
| **From:** | Glenna McDonnell <gmcdonnell@santanderconsumerusa.com> |
| **Sent:** | Sunday, April 5, 2015 8:57 PM |
| **To:** | Hullum, Angelina |
| **Subject:** | RE: March Recap |
| **Attachments:** | March.docx; 032015 Month end.xlsx |

Hello Angelina,

Please see that attach=d recap and spreadsheet (to include my 1st own pivot table ☺)

Thanks

**From:** Angelina Hullum
**Sent:** Thursday, April 02, 2015 4:52 PM
**To:** Reena Mathew; Sabrina Boyd; Melissa Lawson; Whitney Andres; Glen=a McDonnell; Jeanette Rodriguez; Jerry Holt
**Cc:** Nicole Heinicke
**Subject:** March Recap

Good afternoon,
Please send me your monthly March recap to include:<=:p>
- Your BusinessR=7;s current headcount
  - Include your AVPs= Managers
    - Number of Associates per team
    - Pending transfers or resignations=/o:p>
- Review the n=mber of DA's you've processed in the month of March
  - What were the inf=actions?
    - Any patterns?
    - Opportunities for training?
- Update on yo=r Side-by Sides with HR and the Business
- Update on number of jumpstarts/who =ith/topics
- Number of meetings with your business leaders
- Recap on training/mee=ings/SBS with new managers

I would like to have this by Monday if possible.

Thank you,
Angelina

**Angelina Hullum, PHR**
Santander Consumer USA Inc.
Manager, Human Resources

| | |
|---|---|
| phone | 214=261.1501 |
| obile | ███████ |
| fax | 720=377.3010 |
| email | |
| web | |

1

SC000802

APP125

# Monthly Recap – March 2015

## People
- Head count 779
- Number of Business's  - 10 Departments
- Full Breakdown attached Dept Head Breakdown sheet
- No pending resignations
- transfers

## Performance
- 47 total DA's in March – see attached March DA's
  - 10 Finals
  - 17 Writtens
  - 20 Verbals
- Pattern of attendance

## Service
- Conducted 6 Side-by Sides with HR and the Business
- Attended 2 jumpstarts
  - Jarrod Cofer – Customer service - Santander Consumer USA
  - Scott Pickens - Insurance
- Weekly meeting with Bankruptcy VP and Managers
- Customer Care Focus Group – James Jackson
- Talent Development/Operational Meetings

SC000803

APP126

**Ceicili S. DiMarco**

| | |
|---|---|
| **From:** | Jerry Holt <jholt@santanderconsumerusa.com> |
| **Sent:** | Friday, April 3, 2015 1:31 PM |
| **To:** | Hullum, Angelina |
| **Subject:** | RE: March Recap |
| **Attachments:** | March Recap - Dean Holt.doc |

Hi Lina,

Here is my recap for M=rch…please let me know if your expectation for the report is somethi=g different.

Thank you

Dean

**Dean Holt, SHRM-CP©=**
Santander Consumer USA Inc.=/p>
HR Business Partner

PHONE     214.261.1676
MOBILE<=p> █████████
EMAIL     jholt@santanderconsumerusa.com
WEB     www.=antanderconsumerusa.com

---

**From:** Angelina Hullum
**Sent:** Thursday, April 02, 2015 4:52 PM
**To:** Reena Mathew; Sabrina Boyd; Melissa Lawson; Whitney Andres; Glen=a McDonnell; Jeanette Rodriguez; Jerry Holt
**Cc:** Nicole Heinicke
**Subject:** March Recap

Good afternoon,
Please send me your monthly March recap to include:<=:p>
- Your BusinessR=7;s current headcount
  - o  Include your AVPs= Managers
    - Number of Associates per team
  - o  Pending transfers or resignations=/o:p>
- Review the n=mber of DA's you've processed in the month of March
  - o  What were the inf=actions?
    - Any patterns?
  - o  Opportunities for training?
- Update on yo=r Side-by Sides with HR and the Business
- Update on number of jumpstarts/who =ith/topics
- Number of meetings with your business leaders
- Recap on training/mee=ings/SBS with new managers

I would like to have this by Monday if possible.

Thank you,

1

SC000810
**APP127**

Angelina

**Angelina Hullum, PHR**
Santander Consumer USA Inc.
Manager, Human Resources

phone    214=261.1501
obile    ▮▮▮▮▮▮▮▮▮▮
fax       720=377.3010
email
web

SC000811
APP128

# March 2015 Monthly Recap

1.   Your Business's current headcount

| Mark Mooney | 047 | Reinstatements | 39 |
|---|---|---|---|
| | | CC Reinstatements | 7 |
| | | Recovery Operations | 10 |
| | | Dealer Control | 63 |
| | | Collateral Recovery | 48 |
| | | CC Coll Recv | 9 |
| | | Non Collateral Deficiency | 8 |
| | | Vendor Oversight | 39 |
| | | CC Vdr Oversight | 5 |
| | | | 223 |

| Open | 031 | Dialer Administration | 8 |
|---|---|---|---|
| | | Business Process Optimization | 7 |
| | | Operational Analytics | 7 |
| | | | 22 |

| Linda Vrazel | 031 | Quality Assurance | 49 |
|---|---|---|---|
| | | Operational Training | 23 |
| | | CC Dealer Advocacy and Maintenance | 19 |
| | | Credit Bureau Advocacy | 15 |
| | | Advocacy Analytics | 1 |
| | | Customer Advocacy | 31 |
| | | | 138 |

| James Hart | 035 | Bankruptcy | 80 |
|---|---|---|---|
| | | CC Bankruptcy | 4 |
| | | Quality Control | 60 |
| | 031 | Strategic Operations | 18 |
| | | | 162 |

| Tamika Carr | 034 | Program Management | 49 |
|---|---|---|---|
| | | Program Management CCAR | 1 |
| | | | 50 |

SC000812

## March 2015 Monthly Recap

2. Breakdown of staffing and manager groups

    a. In Loss Recovery there are 6-12 associates depending on Core or CCAP, Dealer Control is short staffed by 15 but per team should be 12:1 ratio

    b. 26 Completed/Pending transfers, no pending terms

3. Review the number of DA's you've processed in the month of March

    a. 26 DA's Attendance, Performance, FTF

    b. Any patterns? Yes, most DA's came out of DC and LR as that is where my nonexempt associates are.

    c. Opportunities for training? There has been a need to train managers within LR and DC. Either they are new or are veterans that require a culture change from old SCUSA ways. Have begun doing side by sides with existing managers and new alike and will continue this to the new AVP's in April

4. Side by Sides have primarily been with veteran managers to refresh new policies and procedures. Have noticed trend from LR and DC managers that need interviewing tips, Workday help and how to administer proper feedback.

5. Did QA jumpstart to introduce me to team, Dealer Control jumpstart with my intro as well as reminder of dress code policies.

6. 11? There were many more that included the interviews with Jodie K but only counted 1 of the 12 interviews.

7. Did a side by side with Joel Moreno and Robin Skelly to offer assistance and remedial on attendance issues as he was recently written up for failure to adhere to SCUSA policy. Additionally, asked for help with hiring and interviewing since the teams in that department are going from 12-15. Provided and copied Angelina on follow up. Meeting with AVP of Mgr to offer guidance on future topics to go over with manager to ensure understanding. I will conduct 30 day follow up to see if additional issues have risen.

    a. Conducted side by side with Lisa Theobold and Dana Nelson in Dealer Control at THX. The main concern that Dana had was with Workday, Kronos, and employee relations. Dana was promoted within the department from the floor and there is ongoing sensitivity between the associates and manager. Worked with her on how to bridge the gap and the new feelings from the associates.

# March 2015 Monthly Recap

b.  Jump Start and Side by Side with QA (Deanna and Erika) 3.3.15

c.  PIP Preparation – David Rickerson 3.3.15, THX

d.  JD review with James Hart and Cory Overman 3.1.15 – 3.15.15

e.  HR Training with Joel Moreno (Manager with Reinstatements)

f.  HR Refresher Training Mitch West, Manager with QC

g.  14 Interviews with Loss Recovery for 3 different AVP positions

h.  Worked with Loss Recovery to avert risk event by moving an associate from term to final
(K. Kirven)

**Ceicili S. DiMarco**

| | |
|---|---|
| **From:** | Andres, Whitney <wandres@santanderconsumerusa.com> |
| **Sent:** | Monday, April 6, 2015 5:32 PM |
| **To:** | Hullum, Angelina |
| **Subject:** | RE: March Recap |

Hello-

Please see information for NRH Servicing below:=/o:p>

Current NRH Headcount:

- 349 SCUSA Collections
- 112 CCAP Collections
- 2 CCAP AVP's
- 5 SCUSA Servicing AVP's

Breakdown as follows:
**CCAP Collections**

| | |
|---|---|
| Dion Gage Supervisory | 5 |
| Daniel Colon Supervisory | 13 |
| Vonda Rabon Supervisory=/p> | 12 |
| Dion Gage (Inherited) Supervisory | 14 |
| Kerrick Williams Supervisory | 14 |
| Stacia Hartfield Supervisory | 16 |
| Jorge Munoz Supervisory=/p> | 3 |
| Judith Brown Supervisory | 14 |
| Kamal Banks Supervisory=/p> | 10 |
| Elizabeth Sila Supervisory | 11 |

**SCUSA Collections**

| | |
|---|---|
| Terius Wiggins Supervisory | 5 |
| Antoinette LaRosa Supervisory<=span> | 6 |
| Cortney McDaniel Supervisory | 5 |
| Stacey Patterson Supervisory | 5 |
| Arthur Obilor Supervisory | 12 |
| Decorrian Diggles Supervisory<=span> | 15 |
| Brian Bullock Supervisory | 12 |
| Aiman Saifeldin Supervisory | 13 |
| Julianne Moore Supervisory | 11 |
| Glenn Horton Supervisory | 12 |
| Tamika Fincher Supervisory | 16 |
| Money Martin Supervisory | 11 |
| Duane Bacon Supervisory=/p> | 15 |
| Tyieka Hughes-Willis Supervisory | 16 |
| Danny Mendoza Supervisory | 21 |
| Terrell Broussard Supervisory<=span> | 15 |

1

SC000799
APP132

| | |
|---|---|
| Julie Shankle Supervisory | 16 |
| Manuel Rivas Supervisory | 16 |
| Charlette Batts-Crayton Supervisory<=o:p> | 11 |
| Jose Barron Supervisory=/p> | 22 |
| Lanequia Brewster Supervisory<=span> | 12 |
| Kelli Anderson Supervisory | 4 |
| Cory White Supervisory<=p> | 15 |
| Rush Giffin Supervisory=/p> | 4 |
| Brian Winters Supervisory | 12 |
| Christopher Kennedy Supervisory | 12 |
| Tangela Harris Supervisory | 12 |
| Philmore Findlay Supervisory | 12 |
| Amanda Stoebe Supervisory | 11 |

- No current resignations
- Potential transfer for manager Jose Barron
- Currently interviewing for 2 new SCUSA Busin=ss Ops Managers
- Will be conducting temperature check meeting= with CCAP Managers and associates week of 4/6/15
- Completed new manager meetings and trainings=with 5 new managers: Kamal Banks, Elizabeth Sila, Arthur Obilor, Amanda St=ebe & Tangela Harris. Kamal Banks has not been able to attend HRSOL ye=.
- SCUSA Bi-weekly AVP meetings were cancelled =oth times in March
- Attended manager meetings for CCAP managers =o:p>
- Attended all manager CCAP monthly meeting
- Did not attend any jump starts  in Marc=- have reached out to leadership asking for additional meeting invites
- Attended 2 call calibration meetings for all=managers hosted by QA
- Planning to set up side by sides with Talent=Development team in the near future & with Talent Acquisition both bef=re end of April
- Number of DA's processed: 70 (57 of th=se were attendance) I believe that if/when the new policy is updated, we w=ll either see an abundance of associates being termed or less attendance D='s coming through bc this policy is less forgiving.

Please let me know if you have additional questions!=o:p>

Thanks!

Whitney

**Whitney Andres**
Santa=der Consumer USA Inc.
HR Bu=iness Partner

phone   214.237.3579
mobile   █████████

email   wandres@santanderconsumerusa.com
web   www.santanderconsumerusa.com

SC000800
APP133

**From:** "Reena Mathew" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=REENA MATHEW0CB>
**To:** "Angelina Hullum" <AHULLUM@santanderconsumerusa.com>
**Subject:** RE: March Recap
**Date:** Thu, 09 Apr 2015 22:31:11 +0000
**Importance:** Normal

---

Hi Lina!

Thanks for understanding. Below is my recap.

Reena

---

**From:** Angelina Hullum
**Sent:** Thursday, April 09, 2015 8:42 AM
**To:** Reena Mathew
**Subject:** FW: March Recap

Good morning,
Please send me this by the end of the day.

Thank you,
Angelina

---

**From:** Angelina Hullum
**Sent:** Thursday, April 02, 2015 4:52 PM
**To:** Reena Mathew; Sabrina Boyd; Melissa Lawson; Whitney Andres; Glenna McDonnell; Jeanette Rodriguez; Jerry Holt
**Cc:** Nicole Heinicke
**Subject:** March Recap

Good afternoon,
Please send me your monthly March recap to include:
- Your Business's current headcount
  - Include your AVPs, Managers--40
  - Number of Associates per team—12-15
  - Pending transfers or resignations--None
- Review the number of DA's you've processed in the month of March
  - What were the infractions? 105 DA's--Runs the gamut from FDCPA, Attendance, Performance, Failure to Follow, Violation of Best Practices and Insubordination.
  - Any patterns?—I don't see a pattern at this time, but I think the new attendance policy will definitely cut down on the attendance DA's.
  - Opportunities for training?—Continue FDCPA refreshers; I definitely think we've seen a decrease of bullying/mean girl behavior at this location.
- Update on your Side-by Sides with HR and the Business—Did a side by side with Dean and Marlene.
- Update on number of jumpstarts/who with/topics—Attended 4—Adam Rushing, Simone Sanders/IPH; Deferments; Repo's and PTP's.
- Number of meetings with your business leaders—We are meeting on a daily basis discussing various issues such as Benefits, terms, DA's, PIP's; attend weekly AVP meeting and discuss current business topics such as NH classes, company initiatives etc.
- Recap on training/meetings/SBS with new managers—No new managers at this time.

I would like to have this by Monday if possible.

Thank you,
Angelina

**Angelina Hullum, PHR**
Santander Consumer USA Inc.
Manager, Human Resources

PHONE   214.261.1501
OBILE   720.369.7019
FAX     720.377.3010
EMAIL   aHullum@santanderconsumerusa.com
WEB     www.santanderconsumerusa.com

SC003721

**APP135**

**From:** "Reena Mathew" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=REENA MATHEW0CB>
**To:** "Angelina Hullum" <AHULLUM@santanderconsumerusa.com>
**Subject:** RE: March Recap
**Date:** Thu, 09 Apr 2015 15:00:06 +0000
**Importance:** Normal

---

GM Lina,

Will do! Sorry, I had started on it but then there were so many things going on....will email today.

Thanks,
Reena

**From:** Angelina Hullum
**Sent:** Thursday, April 09, 2015 8:42 AM
**To:** Reena Mathew
**Subject:** FW: March Recap

Good morning,
Please send me this by the end of the day.

Thank you,
Angelina

**From:** Angelina Hullum
**Sent:** Thursday, April 02, 2015 4:52 PM
**To:** Reena Mathew; Sabrina Boyd; Melissa Lawson; Whitney Andres; Glenna McDonnell; Jeanette Rodriguez; Jerry Holt
**Cc:** Nicole Heinicke
**Subject:** March Recap

Good afternoon,
Please send me your monthly March recap to include:
- Your Business's current headcount
  - Include your AVPs, Managers
  - Number of Associates per team
  - Pending transfers or resignations
- Review the number of DA's you've processed in the month of March
  - What were the infractions?
  - Any patterns?
  - Opportunities for training?
- Update on your Side-by Sides with HR and the Business
- Update on number of jumpstarts/who with/topics
- Number of meetings with your business leaders
- Recap on training/meetings/SBS with new managers
I would like to have this by Monday if possible.

Thank you,
Angelina

**Angelina Hullum, PHR**
Santander Consumer USA Inc.
Manager, Human Resources

PHONE     214.261.1501
OBILE     720.369.7019
FAX       720.377.3010
EMAIL     aHullum@santanderconsumerusa.com
WEB       www.santanderconsumerusa.com

SC003863
APP137

**From:** "Reena Mathew" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=REENA MATHEW0CB>
**To:** "Angelina Hullum" <AHULLUM@santanderconsumerusa.com>
**Subject:** April Recap
**Date:** Mon, 18 May 2015 15:23:30 +0000
**Importance:** Normal

---

Hi Lina!

Please see below:

- Your Business's current headcount
  - Include your AVPs, Managers--36
  - Number of Associates per team—12-15
  - Pending transfers or resignations—Manager Adam Fakri will be moving from CCAP ES to Core LS under Greg/Mitzie; Tony Angelone has moved from Core LS to CCAP LS under Dion.
- Review the number of DA's you've processed in the month of March
  - What were the infractions? 77 DA's--Runs the gamut from FDCPA, Attendance, Performance, Failure to Follow, Violation of Best Practices, Insubordination, and one misuse of company property.
  - Any patterns?—I don't see a pattern at this time, but I think the new attendance policy will definitely cut down on the attendance DA's.
  - Opportunities for training?—Continue FDCPA refreshers; I definitely think we've seen a decrease of bullying/mean girl behavior at this location.
- Update on your Side-by Sides with HR and the Business—Demetrice—PIP information; Orland-Unemployment Hearing; Brad--Workday
- Update on number of jumpstarts/who with/topics—Sorry with the number of ER issues/projects we were working on, I didn't get a chance to do this for this April; will definitely resume for May.
- Number of meetings with your business leaders—We are meeting on a daily basis discussing various issues such as terms, Benefits, DA's, PIP's; attend weekly AVP meeting and discuss current business topics such as NH classes, company initiatives etc.
- Recap on training/meetings/SBS with new managers—No new managers at this time.

Thanks,
Reena

**Reena Mathew, PHR**
Santander Consumer USA Inc.
HR Business Partner

PHONE     214.292.2772
MOBILE     214.364.9136
FAX     214.630.0828
EMAIL     rmathew@santanderconsumerusa.com
WEB     www.santanderconsumerusa.com
BENEFITS HOTLINE   214.540.2010

**Angelina Hullum**

| | |
|---|---|
| **From:** | Angelina Hullum |
| **Sent:** | Thursday, December 17, 2015 2:06 PM |
| **To:** | Angelina Hullum |
| **Subject:** | FW: Reena - Dr. Appt. |

**From:** Kristen Lagunes
**Sent:** Wednesday, July 01, 2015 12:30 PM
**To:** Angelina Hullum
**Subject:** Reena - Dr. Appt.

FYI – just for your records.

**From:** Kristen Lagunes
**Sent:** Wednesday, July 01, 2015 12:00 PM
**To:** 'Reena Mathew'
**Subject:** RE: Missed conversation with Reena Mathew

Hey Reena, just saw this – is Sabrina there to help cover?

**From:** Reena Mathew [mailto:rmathew@santanderconsumerusa.com]
**Sent:** Wednesday, July 01, 2015 9:18 AM
**To:** Reena Mathew; Kristen Lagunes
**Subject:** Missed conversation with Reena Mathew

rmathew@santanderconsumerusa.com [9:16 AM]:
GM Kristen! I have a Dr's appt this afternoon.....would it be ok if I left at 1p and checked emails from my phone for the rest of the afternoon?

1

SC001332
**APP139**

**From:** "Reena Mathew" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=REENA MATHEW0CB>
**To:** "Angelina Hullum" <AHULLUM@santanderconsumerusa.com>
**Subject:** RE: Reallocation of duties
**Date:** Fri, 10 Jul 2015 19:25:18 +0000
**Importance:** Normal

---

You got it and NP! ☺

-Reena

**From:** Angelina Hullum
**Sent:** Friday, July 10, 2015 2:22 PM
**To:** Reena Mathew
**Subject:** Reallocation of duties

Reena,
To recap our conversation, you will be taking over the following departments in LEW effective immediately, to include the Credit Card Department at 8585. The expectation will be for you to spend every other Friday at 8585 to support the Credit Card Department. Let me know if you have any questions.

Thank you for your support and flexibility.

| Mark Mooney 33 | 047 | Reinstatements |
| | | CC Reinstatements |
| | | Recovery Operations |
| | | Dealer Control |
| | | Collateral Recovery |
| | | CC Coll Recv |
| | | Non Collateral Deficiency |
| | | Vendor Oversight |
| | | CC Vdr Oversight |

| Doyenard 8 | 031 | Dialer Administration |
| | | Business Process Optimization |
| | | Operational Analytics |

| Linda Vrazel 35 | 031 | Quality Assurance |
| | | Operational Training |
| | | CC Dealer Advocacy and Maintenance |
| | | Credit Bureau Advocacy |
| | | Advocacy Analytics |
| | | Customer Advocacy |

| Scott Dieckman 65 (8585) | 047 | Unsecured Credit Card |

| James Hart 2 | 031 | Quality Control |
| | | Strategic Operations |

| Kim Thorndyke | 046 | Customer Service |

| 81 (Sabrina) | | Customer Service Operations |
| | | OSP Vendor Management |
| | | CC Customer Service Support |

| Wayne Nightengale | 049 | Late Stage |
| 530 | | Early Stage |
| | | CC Late Stage |
| | | CC Early Stage |
| | | Collections Operations |

**Total 673**
**(not counting 81 in CS)

## Angelina Hullum, PHR

Santander Consumer USA Inc.
Manager, Human Resources

| PHONE | 214.261.1501 |
| OBILE | 720.369.7019 |
| FAX | 720.377.3010 |
| EMAIL | aHullum@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |

**From:** "Reena Mathew" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=REENA MATHEW0CB>
**To:** "Jeffrey Wiener" <jwiener@santanderconsumerusa.com>
**Cc:** "Kristen Lagunes" <klagunes@santanderconsumerusa.com>
**Subject:** RE: Follow Up
**Date:** Wed, 12 Aug 2015 20:11:00 +0000
**Importance:** Normal

---

HI Jeff,

Per our conversation, I will speak to Kristin Coop in Security Administration to see how we can get those emails in your dept encrypted so they won't be flagged incorrectly. I apologize about the personal data in the email. It's a template and I should've taken that piece out since it doesn't apply.

The only thing of concern here is the account # that was sent in email that wasn't encrypted but I will check with IT to see how we can get that done for your dept. since they had informed you it was being done already.

At this time, I will let Compliance know and Catina doesn't have to respond to the email. Let me know if you need anything else.

Thanks,
Reena

**From:** Jeffrey Wiener
**Sent:** Wednesday, August 12, 2015 1:59 PM
**To:** Reena Mathew
**Cc:** Kristen Lagunes
**Subject:** FW: Follow Up

Reena,

Can we discuss this?  If Catina was sending an email to our business partner that handles our back end fraud process and would need this information, I am not sure that this would be classified as her sending her personal information.  Is she correct in that this is the email that was sent?

**Jeffrey Wiener**
Santander Consumer USA Inc.
VP Servicing Consumer Lending

PHONE   972.761.1357
MOBILE   214.606.9047
FAX   214.237.0565
EMAIL   jwiener@santanderconsumerusa.com
WEB   www.santanderconsumerusa.com

**From:** Catina Mosby
**Sent:** Wednesday, August 12, 2015 1:52 PM
**To:** Jeffrey Wiener
**Subject:** FW: Follow Up

Jeff,
Reena called me about this email and it was this email attached to Marnie with the customer's credit card number.


**Catina Mosby**
Santander Consumer USA Inc.
Credit Card Operations Servicing Manager

| | |
|---|---|
| PHONE | 972.761.1077 |
| FAX | 214.237.0565 |
| EMAIL | cmosby@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |

---

**From:** Reena Mathew
**Sent:** Wednesday, August 12, 2015 11:35 AM
**To:** Catina Mosby
**Cc:** Angelina Hullum; Dana Hawkins; Jeffrey Wiener
**Subject:** Follow Up

Dear Catina,

Our information security team recently identified and detained an email containing suspicious information which was sent from your company email address to an external address on July 20, 2015. After closer review of this email, it was determined that the email did not contain any customer NPPI. However, it did appear that the message contained your personal data. A brief detail of the email's content is noted below:

- Associate sent proprietary sales data in attachment via unencrypted email

Based on the security protocol that we have in place, this incident alerted our information security team to a potential data loss event and prompted an investigation. In order to avoid any future occurrences and for your own security, we requested for you to refrain from using your personal company email account to transmit any emails containing sensitive personal data.

As a reference, please review the attached **Information Security Policy** as well as the **Acceptable Use of Internet/Email** expectations outlined in the Associate Handbook.
https://scusa.app.corpint.net/QuickLinks/CorporatePolicies/Document%20Library/Associate%20Handbook%202013.pdf

We appreciate your prompt attention to this matter and your compliance to our Information Security Policies going forward. Please note that any further actions of a similar nature could be subject to disciplinary action up to and including termination.

Please reply to this email to acknowledge your receipt and understanding of this email.

Thank you.


**Reena Mathew, PHR**
Santander Consumer USA Inc.
HR Business Partner

| | |
|---|---|
| PHONE | 214.292.2772 |

SC003078

APP143

MOBILE   214.364.9136
FAX      214.630.0828
EMAIL    rmathew@santanderconsumerusa.com
WEB      www.santanderconsumerusa.com
BENEFITS HOTLINE   214.540.2010

**From:** "Reena Mathew" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=REENA MATHEW0CB>

**To:** "Angelina Hullum" <AHULLUM@santanderconsumerusa.com>

**Subject:** July Recap

**Date:** Thu, 13 Aug 2015 21:17:55 +0000

**Importance:** Normal

---

Hi Lina!

Here's my recap for July.

- Your Business's current headcount
  - Include your AVPs, Managers—49 for Mgmt (All groups: Servicing, Credit Cards, Ops Training, Loss Recovery, Reinstatements and CBR); Everyone including management: 622
  - Number of Associates per team—12-15
  - Pending transfers or resignations—Two resignations in Credit Cards—one rescinded and one is next Friday, 8/21
- Review the number of DA's you've processed in the month of July
  - What were the infractions? July--95 DA's—47—Attendance (49%); 1- Best Practices; 20 -Call Model (21%); 6--Customer Service; 6-- Failure to Follow; 4—Insubordination; 12—Performance June—102 DA's—45 Attendance (44%); 2—Best Practices; 4—Call Mode (4%)l; 2-- Customer Service; 4-- Failure to Follow; 3—Insubordination; 8—Performance
  - Any patterns?—Attendance still number one infraction especially since new policy was implemented; slight increase in percentage; Call Model came in second but due to the fact that Credit Cards is on an older system, they have much more than Servicing. Definitely opportunity there to improve systems etc, however, since that part of the business is being dissolved, it probably wouldn't do much good at this point.
  - Opportunities for training?—Continue Call Model refreshers to lessen those since those are more risk adverse for the company; Again, definitely have seen less bullying behavior in the last couple of months etc.
- Update on your Side-by Sides with HR and the Business—Side by side with new manager Francisco Pineda—will also meet with Alberto Molinar and Keegan Corless (starting on 8/24 for 4x10 team)
- Update on number of jumpstarts/who with/topics—Francisco Pineda—IPH; staying on top of wrap/idle time; Jennifer Calhoun—pending PTP's; negotiating for two payments—get more to push buckets; Deferments; Mary Quijano (LS bi-lingual team)—Area of opportunities for team—losses, YEI points; Wrap/Idle time; Losses and charge offs—if we don't receive payment.
- Number of meetings with your business leaders—10+
- Recap on training/meetings/SBS with new managers—Met with Francisco and reviewed Kronos and WD—was able to show him a few shortcuts. Also went over information regarding FMLA, LOA and PTO and any other HR related questions he had. Went over his daily tasks as a Manager; the 4x10 manager will be hired on 8/24 and we will hold a quarterly new leadership class once he starts and continue to do side by sides to get newer managers up to speed.

Please let me know if you need anything else.

Thanks,
Reena

**Reena Mathew, PHR**
Santander Consumer USA Inc.

SC004392

APP145

HR Business Partner

| | |
|---|---|
| PHONE | 214.292.2772 |
| MOBILE | 214.364.9136 |
| FAX | 214.630.0828 |
| EMAIL | rmathew@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |
| BENEFITS HOTLINE | 214.540.2010 |

SC004393

APP146

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Catessa Malone <cnmalone@santanderconsumerusa.com>
**Subject:** Reena FW: Daily Tasks
**Date:** Mon, 15 Feb 2016 21:28:39 +0000
**Importance:** Normal
**Attachments:** 15min_assignment_7-2015.xlsx

---

Catessa,

<mark>Attached is the time study she did for Angelina last July.</mark>

<mark>Angelina mentioned she asked her to do this twice since the first one she received was vague.</mark>

Thanks
Yessica

**From:** Angelina Hullum
**Sent:** Tuesday, December 01, 2015 3:10 PM
**To:** Yessica Adriano
**Subject:** FW: Daily Tasks

I FOUND IT!! here is the second request

**From:** Reena Mathew
**Sent:** Wednesday, <mark>August 19, 2015</mark> 9:44 AM
**To:** Angelina Hullum
**Subject:** Daily Tasks

<mark>GM Lina!</mark>

<mark>Here is my spreadsheet tracking last week.</mark>

Let me know if you need anything else…..have a good one!

Thanks,
Reena

SC006276
APP147

| Time | Monday | Tuesday | Wednesday | Thursday | Friday |
|---|---|---|---|---|---|
| 8:30-8:45 | | | | | |
| 8:45-9:00 | Check/respond to emails | Check/respond to emails | Check/respond to emails | Check/respond to emails | |
| 9:00-9:15 | Catch up with Sabrina | Get access set back up for Jackline Staples; returned from FMLA | Check/respond to emails | Review salary issue with Marlene in regards to associate's benefits. | 8585--Company wide System down/Catch up with Tensya on CC |
| 9:15-9:30 | Meet Misty | Check WD inbox | Assist associate on Resource cube to print out paycheck stubs | IM'ing Ten/Lina about resignations next week | 8585--Company wide System down/Catch up with Tensya on CC |
| 9:30-9:45 | Catch up with Stephanie | Meet with Jackie Sam and call Edris regarding return | Find out who's SS card was left on copier/Talk to Catina Mosby about compliance issue with credit card number | Schedule 2 exit interviews for CC | 8585--Company wide System down/Catch up with Tensya on CC |
| 9:45-10:00 | Check/return voicemails | Review/discuss Tier 1 Security breach with Catina Mosby | Template for Information Security issue with Catina Mosby. | Schedule 2 exit interviews for CC/Accept AVP interview/AHA Meeting | 8585--Company wide System down/Catch up with Tensya on CC |
| 10:00-10:15 | Answer question re: direct deposit | Review/discuss Tier 1 Security breach with Catina Mosby | Template for Information Security issue with Catina Mosby. | Catch up with Mitzie; Reschedule exit | 8585--Company wide System down/Catch up with Tensya on CC |
| 10:15-10:30 | Check WD inbox/Get reason for demotion for Geraldine Harris/Approve new position | Catch up with Sabrina | IM Judy Brown re: DA's and other question she had re: cell phone policy | Continue to work on Recap | Check/respond to emails |
| 10:30-10:45 | Email regarding Rita Johnson--check WD promo and see if process can be expedited. | | Conference call with Edris/Orland re: Patrick Daniels. | HRBP Call | Check/respond to emails |
| 10:45-11:00 | Went to ladies room/stopped by Facilities; | Weekly Team Meeting | Conference call with Edris/Orland re: Patrick Daniels. | HRBP Call | Meet with CC Managers |
| 11:00-11:15 | Assist Stephanie/Sabrina with question; speaking to Misty about SCUSA practices | Weekly Team Meeting | Email template for Catina | HRBP Call | Meet with CC Managers |
| 11:15-11:30 | DA's from Orland--review/sign; check on DA's for LaQuita--some were turned in and some weren't; email HH regarding message | Weekly Team Meeting | Researching how to do Tier 2 | HRBP Call | Meet with CC Managers |
| 11:30-11:45 | Email Benefits regarding CC associate's profile showing 4x10 instead of regular accrual. Turns out it was several associates. | Weekly Team Meeting | Template for Information Security issue/Discuss with Tina since Tier 2 | Meet with Lina/Sabrina | Meet with CC Managers |
| 11:45-12:00 | Email Benefits regarding CC associate's profile showing 4x10 instead of regular accrual. Turns out it was several associates. | Team Lunch | Template for Information Security issue/Discuss with Tina since Tier 2 | WD Inbox/Email from Judy re: dress code | WD Inbox/Promotions/Shift Diff |
| 12:00-12:15 | F/U with Shacolby on open position; see if another manager/AVP can transfer position | Team Lunch | Template for Information Security issue/Discuss with Tina since Tier 2 | Promotion in WD done incorrectly; Send back/Iming Idia | WD Inbox/Promotions/Shift Diff |
| 12:15-12:30 | Information Security--Tier 1 issue/follow up with manager/send email | Team Lunch | DA for Latasha Burdette/Drop off to Sam | Working on recap | Leave for LEW/Grab lunch on the way |
| 12:30-12:45 | Side by side with Misty | Team Lunch | Discuss with Ten affidavit/send over via email | Working on recap | Leave for LEW |
| 12:45-1:00 | Side by side with Misty | Team Lunch | Start July recap | Discussing with Jonathan new way of approving promotions on the back end; He is now HRBP for Ops Training | Leave for LEW |
| 1:00-1:15 | Side by side with Misty | Team Lunch | Start July recap | Discussing with Jonathan new way of approving promotions on the back end; He is now HRBP for Ops Training | Discuss promotion with Idia |
| 1:15-1:30 | Side by side with Misty | Team Lunch | | Discussing with Jonathan new way of approving promotions on the back end; He is now HRBP for Ops Training | WD promotions for Sam |
| 1:30-1:45 | Side by side with Misty | Team Lunch | Lunch | July recap | WD promotions for Sam |
| 1:45-2:00 | Side by side with Misty | Discuss issues with Sam--Manager Fallon Romero and Latasha Burdette. | Lunch | July recap | WD promotions for Sam |
| 2:00-2:15 | Side by side with Misty | Draft DA's for Porsha White, Lisa Curry and Roger Valadares | Speak to Jeff about encryption. | July recap | Interview with Ionut Alecu |
| 2:15-2:30 | Side by side with Misty | Draft DA's for Porsha White, Lisa Curry and Roger Valadares | Speak to Jeff about encryption. | Lunch | Interview with Ionut Alecu |
| 2:30-2:45 | Lunch | Spoke to Jackie/Roque about issue; Draft DA's for Porsha White, Lisa Curry and Roger Valadares | Respond to Jeff | AHA Meeting | Interview with Ionut Alecu |

| Time | Activity |
|---|---|
| 2:45-3:00 | Lunch |
| 3:00-3:15 | Side by side with Misty |
| 3:15-3:30 | Side by side with Misty |
| 3:30-3:45 | Side by side with Misty |
| 3:45-4:00 | Side by side with Misty |
| 4:00-4:15 | Side by side with Misty |
| 4:15-4:30 | Discuss issue with Mary De La Torre |
| 4:30-4:45 | Receive DA's from LaQuita Bills |
| 4:45-5:00 | Update salary for Marlene for Benefits issue |
| 5:00-5:15 | Format DA for Kristen |
| 5:15-5:30 | |

| Time | Activity |
|---|---|
| 2:45-3:00 | Enter names into spreadsheet for FDCPA |
| 3:00-3:15 | Scan DA to LaQuita for Porsha. Discuss plan of action with Sam |
| 3:15-3:30 | Discuss plan of action with Lina re: Latasha/Fallon |
| 3:30-3:45 | Respond to emails |
| 3:45-4:00 | Send template over for Latasha Burdette Final |
| 4:00-4:15 | Send template over for Latasha Burdette Final |
| 4:15-4:30 | Verifying DA's for LaQuita with Sabrina; respond to email from HRIS about deleting row for Lauren Williams. |
| 4:30-4:45 | Respond to internal transfer email to see if eligible. |
| 4:45-5:00 | Meet with 3 associates for investigation regarding Fallon Romero |
| 5:00-5:15 | Meet with 3 associates for investigation regarding Fallon Romero |
| 5:15-5:30 | Meet with 3 associates for investigation regarding Fallon Romero Send DA report for Orland |

| Time | Activity |
|---|---|
| 2:45-3:00 | Discuss findings with Lina re: Catina Mosby |
| 3:00-3:15 | Discuss findings with Lina re: Catina Mosby |
| 3:15-3:30 | Speak to Kristin Coop ab encryption |
| 3:30-3:45 | Meet with Fallon/Sam re: issue on floor |
| 3:45-4:00 | Meet with Fallon/Sam re: issue on floor |
| 4:00-4:15 | Meet with Fallon/Sam re: issue on floor |
| 4:15-4:30 | Answer question for JM; DA for Judy Brown/DA questions from Sam/Orland |
| 4:30-4:45 | |
| 4:45-5:00 | Scan DA to Judy |
| 5:00-5:15 | |
| 5:15-5:30 | |

| Time | Activity |
|---|---|
| 2:45-3:00 | AHA Meeting |
| 3:00-3:15 | July recap |
| 3:15-3:30 | July recap |
| 3:30-3:45 | July recap |
| 3:45-4:00 | July recap |
| 4:00-4:15 | July recap |
| 4:15-4:30 | Answer emails |
| 4:30-4:45 | Answer emails |
| 4:45-5:00 | WD Inbox/Promotions |
| 5:00-5:15 | WD Inbox/Promotions |
| 5:15-5:30 | |

| Time | Activity |
|---|---|
| 2:45-3:00 | Interview with Ionut Alecu |
| 3:00-3:15 | Interview with Ionut Alecu |
| 3:15-3:30 | Interview with Ionut Alecu |
| 3:30-3:45 | Had to leave early for Eva |
| 3:45-4:00 | |
| 4:00-4:15 | |
| 4:15-4:30 | WD inbox |
| 4:30-4:45 | |
| 4:45-5:00 | ** Later in the evening sent recap to Kristen |
| 5:00-5:15 | **Also, respond to a few emails |
| 5:15-5:30 | |

APP149

**From:** "Reena Mathew" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=REENA MATHEW0CB>
**To:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>
**Subject:** Accepted: Team Expectations
**Date:** Tue, 01 Sep 2015 14:43:25 +0000
**Importance:** Normal
**Attachments:** unnamed

SC003002

APP150

**Event:** Accepted: Team Expectations

**Start Date:** 2015-09-04 15:30:00 +0000

**End Date:** 2015-09-04 16:00:00 +0000

**Organizer:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>

**Location:** Lewisville HR conference Room

**Class:** X-PERSONAL

**Date Created:** 2021-11-01 20:54:22 +0000

**Date Modified:** 2021-11-01 20:55:01 +0000

**Priority:** 5

**DTSTAMP:** 2015-09-01 14:43:23 +0000

**From:** "Reena Mathew" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=REENA MATHEW0CB>
**To:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>
**Subject:** Accepted: One on One
**Date:** Wed, 09 Sep 2015 14:18:52 +0000
**Importance:** Normal
**Attachments:** unnamed

SC003012
APP152

**Event:** Accepted: One on One

**Start Date:** 2015-09-14 20:00:00 +0000

**End Date:** 2015-09-14 21:00:00 +0000

**Organizer:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>

**Location:** HR Office

**Class:** X-PERSONAL

**Date Created:** 2021-11-01 20:53:55 +0000

**Date Modified:** 2021-11-01 20:54:35 +0000

**Priority:** 5

**DTSTAMP:** 2015-09-09 14:18:49 +0000

**Recurs:** Weekly on MO until 2015-12-31

**From:** "Reena Mathew" <rmathew@santanderconsumerusa.com>
**To:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Subject:** Accepted: One on One
**Date:** Mon, 05 Oct 2015 15:56:00 +0000
**Importance:** Normal
**Attachments:** unnamed

---

SC004180
APP154

**Event:** Accepted: One on One

**Start Date:** 2015-10-06 20:30:00 +0000

**End Date:** 2015-10-06 21:30:00 +0000

**Location:** HR Office

**Class:** X-PERSONAL

**Date Created:** 2021-11-01 20:49:25 +0000

**Date Modified:** 2021-11-01 20:50:10 +0000

**Priority:** 5

**DTSTAMP:** 2015-10-05 15:54:45 +0000

**Attendee:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>

**From:** "Reena Mathew" <rmathew@santanderconsumerusa.com>
**To:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Subject:** Accepted: One on One
**Date:** Fri, 09 Oct 2015 19:39:17 +0000
**Importance:** Normal
**Attachments:** unnamed

**Event:** Accepted: One on One

**Start Date:** 2015-10-12 15:00:00 +0000

**End Date:** 2015-10-12 16:00:00 +0000

**Location:** HR Office

**Class:** X-PERSONAL

**Date Created:** 2021-11-01 20:48:15 +0000

**Date Modified:** 2021-11-01 20:48:46 +0000

**Priority:** 5

**DTSTAMP:** 2015-10-09 16:37:31 +0000

**Attendee:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Hortensia Perez <hperez@santanderconsumerusa.com>
**Subject:** Team Meeting Recap
**Date:** Wed, 09 Sep 2015 18:28:43 +0000
**Importance:** Normal

---

Team,

These are some highlights of our discussion yesterday:

**Scheduling**
Sabrina: 8-5 pm (Tues, Thurs 7:30-4:30)
Reena: 8:45-5:45
Yessica: 8-5pm (Tues, Wed  7:00-4:30)
Ten: 8:30-5:30 pm

**8585 Coverage**
Ten- Everyday (Base location)
Yessica- Tuesday, Wednesday and as needed
Reena- Twice a Month (9/15, 10/8, 10/23)
Sabrina- Once a Month (9/23, 10/15)

**General Team Expectations**
- We are a team and need to work as one: sharing the workload and continually helping each other out
- As a company and in an effort to enhance our culture we are moving towards a work/life balance philosophy- which is wonderful.  The expectation is not to go home and work, but rather to truly enjoy our time off. ☺ Therefore, when at work we need to work a full day and ensure we are productive in either handling the day to day issues or looking for new ways to improve our dept, site, or team.
- Open Communication: it is what keeps relationships successful, it important that we maintain honest two way communication

*when there is teamwork and collaboration, wonderful things can be achieved." --Mattie Stepanek*

Thank you

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE    214.722.5667
MOBILE   214.215.5258
EMAIL    yadriano@santanderconsumerusa.com
WEB      www.santanderconsumerusa.com





## Mathew, Reena Sara

HR Business Partner
Manager: Angelina Hullum
Evaluated By: Angelina Hullum

## 2015 Mid-Year Review (Non-Managers)

Organization: Angelina Hullum Supervisory
Location: Lewisville
Jan 1, 2015 - Dec 31, 2015

## Overall

### Manager Overall Evaluation

Comment:          Continue to push herself to be better. Look for ways to make the LEW site more efficient,
                  train the new managers,and look for trends in the GITK.

### Employee Overall Evaluation

Comment:          Continue to monitor daily activities and ensure they align with overall goals such as
                  maintaing compliance, reducing risk and pressing towards career growth goal. In order to do
                  this keep regular pulse with the business whether that is attending meetings or having one
                  on ones. Also, provide comprehensive and timely follow up for any issues/inquiries that arise.
                  Continue to look at processes/policies/GITK (for patterns) and see how they can be
                  streamlined or if on the other hand there are things that are lacking, what can we do to
                  improve the business.

## Acknowledgment

### Manager

Entered by:       Angelina Hullum              Date:      Jul 8, 2015 5:25 PM
Status:           Acknowledge Review
Comment:          completed

### Employee

Entered by:                                    Date:
Status:
Comment:

## Goals

### Actively drive, support and enforce risk management standards

Ensure all Advocacy business processes, policies and procedures support regulatory mandates and reduce unnecessary
risk to the Associate and the business. Support all compliance related initiatives in relation to Advocacy, Identify potential
compliance concerns and surface to HR Compliance, Ensure that my team responds to all Compliance related requests
timely and accurately

Due Date:  Dec 31, 2015    Status:  In Progress         Completion Date:

Manager Evaluation                                      Employee Evaluation
Reena stays on top of all compliance issues and is timely    *As compliance issues come up, we as Advocacy stay*
when returning any risk event information back to Compliance *on  top of these and are extra attentive since these*

SC001484
**APP159**

*types of issues are what can affect the business in a very negative way. This may include Information Security, compliance with regulatory training or even I9's.*

## Create and share reporting to educate business partners on HR trends

Create spreadsheet (using "Get In The Know" format) on a quarterly basis to review trends and any areas of concern regarding demographics, salary and turnover. Once information is compiled, present it to the business.

Due Date:   Dec 31, 2015   Status:   In Progress      Completion Date:

**Manager Evaluation**
Would like to see Reena pull information in order to become more strategic with her business partners and identify trends. With her tenure and knowledge, she can provide valueable recommendations to the business leaders.

**Employee Evaluation**
In the process of starting this quarter's GITK. Now that we are aware of how to pull the data, we need to extract questions from business to see what all they would like to see as well.

*what did they say*

## Develop processes to develop the skill set of our leaders.

Meet with new managers who become part of SCUSA (either through promotion or external hires) and sit in on side by sides, attend jumpstarts during their first 3-6 months in role. Follow up with HR management/Talent Development and department leadership at the end of each quarter to discuss strengths/weaknesses, concerns, and recommendations.

Due Date:   Dec 31, 2015   Status:   In Progress      Completion Date:

**Manager Evaluation**
Would like to see more progress in this area. We have many new managers that need training and guidance. Reena needs to spend more time on the floor with all managers.

**Employee Evaluation**
Early Stage here in Lewisville just hired four managers and will start initiating side by sides, attending their jumpstarts and even provide quick training if needed ie Kronos, WD etc.

*Is there a log to the I.I.'s training?*

## Develop updated investigation matrix along with taskforce team.

Create investigation matrix that will be used internally via HR to determine who would be involved in regards to management in different issues/scenarios per the DA matrix. Matrix will also specify HR involvement and who the issue would be escalated to in the case it needed to be investigated.

Due Date:   Jun 30, 2015   Status:   In Progress      Completion Date:

**Manager Evaluation**
This goal is almost complete. Looking forward to the final product.

**Employee Evaluation**
We are in the final phase of wrapping up the document that is part of Isight to ensure that the HR team is communicating as much as possible with the business when it comes to specific issues/investigations that come up.

## Initiate rollout of anti-bullying campaign along with taskforce team.

*where does it stand, not much time left*

Formulate rollout of anti-bullying campaign and the different facets including presentation, guest speaker, maintenance-- post rollout. Find a motivational speaker who is able to speak to the topic of bullying and the impact it has not only to the company, but to employee morale and ultimately our bottom line.

Due Date:   Jul 31, 2015   Status:   In Progress      Completion Date:

**Manager Evaluation**

We have made progress, but have a lot more work to do in this area. would like to see more ideas and progress in this area now that we have more HR support.

**Employee Evaluation**

We've definitely made progress on this project as far as coming up with a theme, time (August/2015) and possible guest speaker. Upon announcing the roll out in a manager meeting, management was very excited to hear about the project and expressed interest in assisting as well.

✓ status?

---

Section Summary

**Manager Evaluation**

Reena does a great job with her day to day duties. I would like to see her spend more time training our managers and working on her projects.

**Employee Evaluation**

## Competencies

### Results Orientation

For a description of Results Orientation, please refer to the Competency Description link above.

**Manager Evaluation**

**Employee Evaluation**

Ensure we are getting the results we desire by partnering with the business and providing them the customer service and the follow up that they need. Continually communicating and completing tasks such as reports, investigations, answering inquiries and assisting with DA/terminations if applicable.

### Collaboration

For a description of Collaboration, please refer to the Competency Description link above.

**Manager Evaluation**

Reena does a good job collaborating with members of our team. I would like to see her branch out to other members of HR advocacy.

**Employee Evaluation**

Collaboration is a daily task whether it be with Payroll, Benefits, or HRIS or other team members. We are constantly collaborating in ways to streamline processes or communicating with one another in our own department for best practices.

### Interpersonal Savvy

For a description of Interpersonal Savvy, please refer to the Competency Description link above.

**Manager Evaluation**

Reena does an excellent job of building rapport with all levels of employees. She is trusted and always professional.

**Employee Evaluation**

In order to collaborate, it's important that you have interpersonal skills to compliment that collaboration. On a daily basis we are in constant communication whether that's with the site director, eachother or one of our associates answering an inquiry. Building rapport on a daily basis, we try and build an atmosphere of trust and integrity so that each interaction with HR brings more credibility.

wonderful! completely agree.

---

Section Summary

SC001486

Manager Evaluation _____   Employee Evaluation _____

## Risk Objectives

### Risk Objective: Policies/Procedures (Operating)

Adheres to standard operating procedures and raises issues or concerns when gaps exist in processes, procedures, policies, etc.

Manager Evaluation _____   Employee Evaluation _____

### Risk Objective: Policies/Procedures (Organizational - Self)

Adheres to all organizational policies and procedures applicable to their role in SCUSA (Assigned Compliance, HR, etc.)

Manager Evaluation _____   Employee Evaluation _____

### Risk Objective: Compliance Training (Self)

Completes all assigned SCUSA compliance training) within established time-frames.

Manager Evaluation _____   Employee Evaluation _____

---
Section Summary

**Manager Evaluation** _____

Reena maintains consitancy when applying policy/procedure. She completes her compliance training as scheduled. She works with Compliance to minimize risk when necessary.

**Employee Evaluation** _____

Being a part of financial company which has now gone public, it's imperative that we keep abreast of federal laws/regulations that keep our company compliant. Being in the HR department is a vital part of that compliance whether it be maintaining consistency from an HR standpoint, being familiar with our policies and procedures and regular mandatory participation in quarterly compliance courses. On target for these objectives and adhere to them on a daily basis.

## Development

### Long term: Breaking down barriers

Additional Information:   Continue to work on identifying issues at different levels of the business and being able to problem solve whether that be a Facilities issue or a strategic operations issue. Being able to adapt to all levels and foresee issues/change.

Status:  **In Progress**   Supports:

### Long term: Sr. HR Business Partner

Additional Information:   Become more HR savvy in order to take the next step of growth which would be a Sr. HR Business Partner. Became PHR certified and am now ready for the next step professionally.

Status:  **In Progress**   Supports:

### Short Term: Attend more HR meetings outside of SCUSA

Additional Information:   Attend more Dallas HR meetings/SHRM meetings in order to be abreast of laws and changes that are being made to the HR industry.

Status:  **In Progress**   Supports:   Collaboration

SC001487
APP162

## Short term: Attend more Internal meetings

*what is the current frequency.*

Additional Information:     Attend more internal meetings such as jumpstarts and side by sides to get a better understanding of the business and to learn more about the auto finance industry as a whole.

Status:  In Progress     Supports:  Collaboration

--- Section Summary

### Manager Evaluation

Reena can continue her growth this year by focusing on helping new managers develop and by working on completing her goals/projects. I encourage her to step out of her comfort zone and find ways to take herself to the next level

### Employee Evaluation

Building rapport with different parts of the business and continually trying to improve and enhance relationships. Taking on extra projects to try and learn new areas of the business as well as enhance knowledge of HR for long term career growth. Attended meetings via Dallas HR to obtain additional knowledge and learn about the current laws and updates and addtionally network with other HR professionals. Have been consistently attending jumpstart/AVP/manager meetings in order to answer any questions as well as learn the business from different perspectives and to have a better understanding of the overall operations of our department.

9/28/2015 — Sabrina

— TWC Spreadsheet
⁑ CS meeting today ; hiring part time
   — canceling flex to entire days

— load up TWC
— Emery CS   — The BOX not much Help

9/28/15  Reina

— Brad followup
— perfect attendance proposal —good
— Alberto helped w/ DA Histon
— 1:1 w/ Keagan new 4x10 mgr

   ◦ feels supported
   ◦ WFH :) → catch up
   ◦ complex ; workload
      1400 - 700 people     whitney & misty + all their gen.

— new ; leadership
   transform
   require "High level of Efficiency"
   work as a team
      The BOX — all of us

10/2/2015 — Brad mutzraier
   serge Munoz



SC001489

APP164

Reena — 10/12

- Orland → Ivan ✓
- Fallon Meim ✓ (Dee)
- Survey Complete ✓
  what else?
      - couple DAs
        email

- GIK (time) → use WFH
      need ext.

10/19/2015
      - Delmar
        - progression GIK
        - investigation Checklist.

Sabrina
      - Grant
        8585 Coverage
      - Must Fund set up w/
        Alicia & AVPs

SC001490

APP165

— Tensla Update —

11/9/2015 - Seng

- something wrong w/ me. Benefits go to
  ER reevaluated

- Kris Greer - was supposed to be back
  Friday

- HRIS lew - Paula mass load.

11/9/2015 - Reenou

Jorge Muñoz — Mean girl issues
uncomfortable on team - good job

Rhonda         - Nicole (associate)
==associate seizures "panhandling" →
    put on final (expired July)
- asking for ndes (written - September)
- asking for $ $

- DA's got them out she more issues

Reenou / Sabrina
- Bereavement CC, why time
  • google picture ; false doc.

Sabrina→ steph got mad
Reenou→ we just verifying
- Use resources wisely ; need to be
  clear to Bus.

SC001491

APP166

Rena
12/1/2015

- why are you doing this to me; is it
  because I'm pregnant?
- Because I'm Brown
- I can't believe you are doing this to
  me & I'm pregnant
- I'm going to take it higher
- This is crazy; BS

- Never been late on a DA
- My feedback has been nothing but positive
  always get YEI points
- need job just like everybody else
- I'm truly the busiest
- no expectations Have been given all
  year
- Review last year received all positive; good
  review nothing negative
- Never Had 1:1 w/Tina > never got
  feedback, this is a suprise; why did you
  even take me
  to lunch

<u>Attendance</u>
- BS | maybe asked | a month &
  everyone does it
- can't work after Hours | have a
  family; my children are older
- want dates
- I even answered emails from my phone
  @ Bahamas - who does that  > wed
                                  such

<u>workload</u>
- You do not know what I do — cut pare me to others
- worked harder than everyone
- Ten doesn't do anything has a cush job
- Lina just sat there (other things about Lina)
- it so crazy I can't explain
- To Do list, do not need that I work very hard & fast, I do like 10 things @ once
- why do I have to quantify
- I'm overwhelmed & I ask for help & get penalized . . . odv biggest flaw *
* provided examples Tina weekly vs her monthly (never told) how to fill out
- who defends me: Im pregnant (stress)
- eremialist don't help me. Whitney has help I don't - Im too busy can't do more
- work study; Exp. how everyone helps her me, Ten, ▽ DA's, terms, WD, investigation

<u>Judgment</u>
- Diedre (knew that was going to come back) the lady is lying she exaggerates; they Ruoged didn't know I had to follow up - she had NCNS everyone get a risk event
- Jaye example given
- Bereavement example given

gap in appraisal

Investigation Matrix
- discussed 20% of goal (suceed; fail) (mid year review)
waiting on stephanie all the time
didn't know what you wanted
- Lina antibullyn will she get
penalized

- Who is doing this; explained collectively
shared my perspective Luv workload
"peaches 'n cream" compared to others
quantify'n necessary ; where does
yair time go

to change
- advised w/ hard work committed will
suceed & get through this - I have
suceded for 5 years

- wants to meet w/ Stephanie
advised when you do be able
to provide examples "I'm busy"
needs to be quantified

- did not sign, I did & provided
copy

SC001494

APP169

Reena                           12/9/15

- wnt documentation, dates, never
  been talked to
- Lina wnts to save her butt
- who dicicles this
    - all of us ; ague we all see
    - 3 main issues
         cutt, wrkload, quality ; judgment

- wnt timeline ; will provide we
                        reviewed
  anyone can make
  that up wnt to see achnaledgmnt
  then it didn't happen

ie: given — att. calling in, braght you
  to office about leaving & everyone does
  wrkload                              covers
         & everyone does it
• Deidre follow up not done ; she
  stated uncomfortable w/ AVP states
  the bullying we didn't address
                    ↘
                     ok will take acct
               for that one so
               put me on coaching not PIP

• Braught you in office to discuss
  DA after Brad & Sam complained
  thats our Director — 10 Dirs → 1 wh·

SC001495
APP170

**From:** "Reena Mathew" <rmathew@santanderconsumerusa.com>
**To:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>, "Reena Mathew"
<rmathew@santanderconsumerusa.com>
**Subject:** Conversation with Yessica Adriano
**Date:** Thu, 17 Sep 2015 17:59:20 +0000
**Importance:** Normal

---

Reena Mathew [9:28 AM]:
  Yessica, quick question....
Yessica Adriano [9:28 AM]:
  yes maam
Reena Mathew [9:29 AM]:
  Would you mind if I left a little early today (I'll still answer emails from my phone)? Reason being is we have a 7am flight
  (I know! lol) and I still have a few things to do....
Yessica Adriano [9:43 AM]:
  Hi Reena, how early did you want to leave..\
Reena Mathew [9:51 AM]:
  Would 1 or 2p be ok?
Reena Mathew [10:59 AM]:
  Is it ok if I send Dana an email re: the dates and cc you?
Yessica Adriano [11:11 AM]:
  yes, but please send to Kristy anne thomas
Reena Mathew [11:29 AM]:
  k, will do!
Reena Mathew [12:51 PM]:
  Darn on the Compliance dates....
Yessica Adriano [12:57 PM]:
  no kidding but it was a good proactive approach
Reena Mathew [12:57 PM]:
  ty :)

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Stephanie Elad <selad@santanderconsumerusa.com>
**Subject:** Re: Monday
**Date:** Fri, 25 Sep 2015 22:41:58 +0000
**Importance:** Normal

---

I am at Lew on Mondays, I'll see you then.

Have a nice weekend.

Thanks

Sent from my iPhone

On Sep 25, 2015, at 5:27 PM, Stephanie Elad <selad@santanderconsumerusa.com> wrote:

I'll be at LEW on Monday. Don't feel like you have to change your schedule if you weren't already planning to be there.

I would like to catch up on how things went with Reena when she got back from vacation. We can chat on Monday or Tuesday.

Thanks!

**Stephanie Elad,** SPHR
Santander Consumer USA Inc.
Director, Human Resources

PHONE       214.237.3713
MOBILE      214.695.1278
EMAIL       selad@santanderconsumerusa.com
WEB         www.santanderconsumerusa.com

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Stephanie Elad <selad@santanderconsumerusa.com>
**Subject:** LEW
**Date:** Thu, 29 Oct 2015 21:31:32 +0000
**Importance:** Normal

---

Hi Stephanie,

Reena just informed me she has a Dr.'s Appointment tomorrow morning, so I will come into LEW to provide coverage and Sabrina will be at 8585.

Thanks

SC006640

APP173

**From:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>
**To:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>, "Reena Mathew"
<rmathew@santanderconsumerusa.com>
**Subject:** Conversation with Yessica Adriano
**Date:** Thu, 29 Oct 2015 17:19:55 +0000
**Importance:** Normal

---

**Yessica Adriano [9:46 AM]:**
HI Reena, do you know where we keep personnel files, looking for Delmar Tillis Pip

**Reena Mathew [9:46 AM]:**
Hi Yessica! I just responded to your email :) It's in Optika....

**Yessica Adriano [9:46 AM]:**
just saw your response thanks

**Reena Mathew [9:46 AM]:**
NP, let me know if you need any help!

**Reena Mathew [11:07 AM]:**
Hi Yessica! AVP Sam Akins sent over a term request for a LEW associate and the associate is in the office today.....how would you like us to handle?

**Yessica Adriano [11:07 AM]:**
is it for attendance?

**Reena Mathew [11:08 AM]:**
Yes...

**Yessica Adriano [11:08 AM]:**
ok i can process it today

**Reena Mathew [11:08 AM]:**
K, did you need me to do anything?

**Yessica Adriano [11:09 AM]:**
did we get all approvals

**Reena Mathew [11:09 AM]:**
Just from Brad....I can send over the term request if that helps?

**Yessica Adriano [11:10 AM]:**
yes please and ill get the other docs ready, does he want him termed immediately or end of day-

**Reena Mathew [11:11 AM]:**
Sounds good--let me check...
Wow that was LONG!

**Yessica Adriano [11:21 AM]:**
it was

**Yessica Adriano [11:48 AM]:**
Hi Reena, Brad just came into the office, he said they have like 10 pending DAs, im not sure on the validity, but are you working on them? He stated he needs them asap.

**Reena Mathew [11:49 AM]:**
Yes, and I emailed the AVP's yesterday that we would have them no later than Friday due to me being out on Mon/Tues

**Reena Mathew [12:16 PM]:**
Sam said 3p should work.... :)

**Yessica Adriano [12:17 PM]:**
ok thank you

**Reena Mathew [12:17 PM]:**
np

**From:** Stephanie Elad <selad@santanderconsumerusa.com>
**To:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Subject:** Bereavement Documentation
**Date:** Mon, 02 Nov 2015 21:41:50 +0000
**Importance:** Normal

---

So, I spent a good portion of today listening to Reena and Sabrina try to figure out whether someone's bereavement documentation was valid. I hesitated saying anything to them because I figured I'd address it with you next week. But then, Sabrina asked me to look at some of the docs in Reena's office so I decided to have the conversation with them. Basically, I told them that I thought they were spending too much time on this and that if we had reason to believe that the documentation was flawed or inaccurate then we should deny the request for bereavement leave and send it back to the business. In this case, the dates on the notice did seem suspicious. This should not have taken more than 10 minutes but instead I think they spent several hours on it.

While I was in Reena's office, I saw that she had googled "picture of mother and son" to see if she could find the picture that was on the funeral announcement. They were both looking at Facebook, calling the funeral home, checking pics in WorkDay, etc. to try and figure this out. I had to take a deep breath and calm myself down after that. Mainly because I'm concerned about the time that was spent on this, instead of more productive endeavors.

We have discussed the concerns with Reena's productivity and I know you are addressing that. However, I think that Sabrina needs some coaching in this regard as well. She is an amazing detective, but if she wants to be a BP, we need for her to be more strategic. The most important resource we all have is how we spend our time.

I realize I am preaching to the choir on this, and that you are already aware of the issues. I do think that we need to reign this in more quickly, however.

We can discuss further upon your return. Please don't respond to this until you get back. I just didn't want to forget to send it to you.

Happy moving! ☺

**Stephanie Elad,** SPHR
Santander Consumer USA Inc.
Director, Human Resources

PHONE    214.237.3713
MOBILE    214.695.1278
EMAIL    selad@santanderconsumerusa.com
WEB    www.santanderconsumerusa.com

**From:** "Reena Mathew" <rmathew@santanderconsumerusa.com>
**To:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>, "Reena Mathew"
<rmathew@santanderconsumerusa.com>
**Subject:** Conversation with Yessica Adriano
**Date:** Mon, 16 Nov 2015 15:56:10 +0000
**Importance:** Normal

---

**Reena Mathew [9:53 AM]:**
  Hi Yessica
**Yessica Adriano [9:53 AM]:**
  Hi reena
**Reena Mathew [9:53 AM]:**
  I guess everyone has a request today :) Would it be ok if I leave around 3p today?
**Yessica Adriano [9:53 AM]:**
  yes
**Reena Mathew [9:54 AM]:**
  Awesome, ty!!
  Appreciate it....
**Yessica Adriano [9:54 AM]:**
  np

**From:** "Scott Dieckmann" <sdieckmann@santanderconsumerusa.com>
**To:** "Scott Dieckmann" <sdieckmann@santanderconsumerusa.com>, "Reena Mathew" <rmathew@santanderconsumerusa.com>
**Subject:** Conversation with Scott Dieckmann
**Date:** Fri, 20 Nov 2015 16:31:56 +0000
**Importance:** Normal

---

**sdieckmann@santanderconsumerusa.com [10:16 AM]:**
  hey
**Reena Mathew [10:16 AM]:**
  HI Scott!
**Scott Dieckmann [10:17 AM]:**
  can you catch me up on the FB issue
**Reena Mathew [10:18 AM]:**
  Yes sir! I will ask Ten to contact you with all the details :)
**Scott Dieckmann [10:18 AM]:**
  ok
  were you part of the discussions with the staff?
**Reena Mathew [10:19 AM]:**
  No--Ten conducted...

**From:** "Reena Mathew" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=REENA MATHEW0CB>

**To:** "Sabrina Boyd" <SBOYD@santanderconsumerusa.com>

**Subject:** FW: Latoya Hawkins Call (Rude)

**Date:** Fri, 20 Nov 2015 22:46:47 +0000

**Importance:** High

**Attachments:** Latoya_Hawkins_-_20151111-153322-bcc80d7a-PREC2031.wma

---

Sabrina!

I'm sorry girl, today was extremely busy (I'll catch you up) and I didn't have a chance to get to this let along DA's for Servicing…..plus I'll be at 8585 Monday.

Can you pls f/u with Imre when you have a chance?

Thanks,
Reena

---

**From:** Imre Kertesz
**Sent:** Friday, November 20, 2015 10:09 AM
**To:** Reena Mathew
**Cc:** William Harris
**Subject:** FW: Latoya Hawkins Call (Rude)
**Importance:** High

Reena,

Can you please prepare the DA for Latoya Hawkins for being rude to the customer.

Thank you,

## Imre B Kertesz

Santander Consumer USA Inc. / Chrysler Capital
Assistant VP, Customer Care

| | |
|---|---|
| PHONE | 972.761.1040 |
| MOBILE | 972.740.6847 |
| FAX | 972.759.5391 |
| EMAIL | ikertesz@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |

---

**From:** Kristin Caldwell
**Sent:** Friday, November 20, 2015 9:52 AM
**To:** Imre Kertesz
**Cc:** William Harris
**Subject:** RE: Latoya Hawkins Call (Rude)

I agreed on the DA….why didn't she just get the supervisor versus agitating the customer

---

**From:** Imre Kertesz
**Sent:** Friday, November 20, 2015 9:37 AM
**To:** Kristin Caldwell
**Cc:** William Harris
**Subject:** Latoya Hawkins Call (Rude)

Kristin,

On this call the customer is upset with the dealership and his payments. At 9:45 into the call is when Latoya started over talking the customer and not allowing the customer to speak.  Customer asked for a supervisor several times. Because this was not done immediately the customer got very agitated and upset which came across through his tone and his cursing.

Some key words that Latoya used that made the customer even more upset;

- Calm down
- Speak at level head

LaToya has no priors with this type of violations.  Currently she is number 4 on the rankings with QA score of 100.95%. We are asking for a Verbal.


Thank you,

**Imre B Kertesz**
Santander Consumer USA Inc. / Chrysler Capital
Assistant VP, Customer Care

| | |
|---|---|
| PHONE | 972.761.1040 |
| MOBILE | 972.740.6847 |
| FAX | 972.759.5391 |
| EMAIL | ikertesz@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |

**From:** Eldridge Burns <eburns@santanderconsumerusa.com>
**To:** Michelle Whatley <mwhatley@santanderconsumerusa.com>
**Subject:** Fwd: Resignation Letter
**Date:** Sun, 22 Nov 2015 01:23:56 +0000
**Importance:** Normal

---

Sent from my iPhone

Begin forwarded message:

**From:** Deirdre Crouch <ddcrouch47@gmail.com>
**Date:** November 21, 2015 at 7:05:15 PM CST
**To:** <jkelch@santanderconsumerusa.com>, <pblack@santanderconsumerusa.com>,
<rmathew@santanderconsumerusa.com>, <mirodgers@santanderconsumerusa.com>,
<eburns@santanderconsumerusa.com>
**Subject: Resignation Letter**

Hello Jodie Kelch,

I first would like to say, that when I pleaded for your help I really needed you to come. I feel their was a conflict of interest with Tara because of their tenure and friendship. Tara had an excused for everything I said Cherri did to me.

Tara Stewart did not resolve the issue, she covered it up then she asked me if I wanted to be transferred to NRH my immediate respond yes, then she immediately said that you said it wasn't any available and I couldn't come. I asked her would she want to work for someone that wrote you up and harassed you. After Cherri showed my write up to employees on my team before I came back to work saying what she going to do and that she was waiting for me to do anything. The write up was written on the 7th of August I returned to work on the 12th and didn't sign it until the 30th.

I have prayed for peace to try to deal with Cherri Cotton unprofessional behavior and bullying still today toward anyone on her team that questions her authority or anyone that has gone to Tara. Jodie if you want to get the truth on how Cherri treats grown people that she is upset with. Please speak to everyone on our team. She stops speaking to you, then she starts harassing you. This has been since her bullying and harassment toward me. Tara never resolved the issue she just gave excuses on why she may have done it.

I emailed the Ethic office never heard anything back. I tried to not stress myself out but i was so stressed my blood pressure wouldn't go down, my head continually aches when I was at work. So, I continued to pray Tara said she would come weekly to watch hadn't showed up for over 2 weeks. So, I have decided to seek outside help on this investigation of harassment and make sure that someone will do an investigation of everyone on the team. Also, make sure they pull the login and logout report for everyone on our team to see who Cherri allows excessive time off phone for Nathan, Antoinette, Jessica and  verify that I was the only one that received a recap on 9/15/2015 for August. This is after Tara told me I was not the only one; when I had asked the entire team. Still today Cherri is doing the same thing to other employees. I refused to come to work stressed, unhappy to receive harassment from my unprofessional behavior supervisor.

The last thing Cherri did was to call a customers reference and put her on her speaker phone yelling and cursing furiously very loud. Several teams could hear it and she was laughing. This is who Santander have as

part of a management team. I took my vacation for space apart. It didn't work the more i thought about coming back to work my anxiety and stressing started back. I loved my job and the company. But my current management team Cherri Cotton unprofessional behavior and Tara Stewart covering up and making excuses for her. Tara wants our team to accept what Cherri does because she has Cherri as a part of her team because she can find people.

Cherri does not do any managerial work for her team, she has divided our team by talking about one team member with another team member. Santander might like what she is doing I will not accept her bullying and harassment that I have been through the chain of command to the Ethics officer and Cherri Cotton is still doing the same thing. Sine Santander is going to allow Cherri Cotton to bully and harass employees the best thing for me to do is resign effective immediately.

Lastly, I was able to get information that this is not Cherri Cotton first time bullying and harassment her employees; which means  HR and Tara Stewart have been covering for her for years. I will seek legal counseling for assistance bullying and harassment is not okay to me or anyone. The only way off of Cherri Cotton's team is resign or she terminate those she doesn't like. Santander may loss money on someone that's not looking out for their best interest.

I appreciate Santander the business, Santander has lost good employees because of one manager unprofessional behavior.

Regards,

Deirdre Crouch ID# 007231

SC009008

APP181

**From:** Stephanie Elad <selad@santanderconsumerusa.com>
**To:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>
**Subject:** RE: Reena: Workload
**Date:** Tue, 24 Nov 2015 21:19:22 +0000
**Importance:** Normal

---

I can't imagine that the compliance emails take that long. I would ask Kristen how long they take on average. When I had to do it, it was a 5 minute conversation and a few emails. But, maybe I'm missing something.

---

**From:** Yessica Adriano
**Sent:** Tuesday, November 24, 2015 1:21 PM
**To:** Stephanie Elad
**Cc:** Angelina Hullum
**Subject:** Reena: Workload

Hello Stephanie,

Wanted to bring this to you as an FYI....

Reena approached me a couple hours ago asking if she could leave at 12:30 stating she has a Dr. Appointment at 1 pm, and would need to take a longer lunch.  I advised her as previously discussed,  I needed more than a same day notification, so we can plan appropriately.  She responded with sorry and she understood (exactly what she said last time). She stated she would return to work  after her appointment ended.

I received this IM from her below.  Ten, Sabrina and myself have all been continuously assisting with her with work and when I ask  where she spends her time, she does not have a solid justification.

I will work on a formalized timeline of events and discussions that I have had with her since September and will ask Lina for documentation prior to that.

Reena Mathew 12:24 PM
Btw, ugh, we just received 5 Compliance emails......do you think the team can split those up? Each one takes some time to complete
Yessica Adriano 12:29 PM
i think ten was bombarded with these as well, but check to see where she stands, i know sabrina has a big load she was here early and stayed late yesterday trying to catch up, and i need to launch the deidra investigation the herman/ricci situation as well
what else do you have going on
Reena Mathew 12:38 PM
Maybe we can discuss when you have some time. It's been really overwhelming I'm going to go to my Dr's appt....be back in a little


Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE     214.722.5667
MOBILE    214.215.5258
EMAIL     yadriano@santanderconsumerusa.com
WEB       www.santanderconsumerusa.com

**From:** Stephanie Elad <selad@santanderconsumerusa.com>
**To:** Pamela Blackburn <pblackburn@santanderconsumerusa.com>
**Cc:** Jessica Gleason <jgleason@santanderconsumerusa.com>
**Subject:** Reena Mathew - Confidential
**Date:** Tue, 24 Nov 2015 18:16:41 +0000
**Importance:** Normal

---

Pam – Reena is the BP at LEW. She's been with us almost 5 years (DOH Jan 2011). There have been some performance concerns for awhile now – mostly stemming from an inability to handle the workload, and questionable judgment. Angelina had several coaching conversations with Reena before we transitioned Yessica to LEW and Yessica has had even more conversations since she took over a few months ago. Yessica is having to handle a lot of the investigations at LEW because Reena can't seem to get things done and when she does handle some of the issues, mistakes and missteps are being made. There is a significant time management issue, which is impacting the Generalist at the site, in addition to Yessica.

Unfortunately, the situation is not improving and has become worse. We had an incident this week that led to a risk event. The risk event had to do with a term that was not processed. However, upon digging further, this Associate issue escalated partially due to Reena not handling the concerns effectively a few months back. I have advised Yessica to issue a DA to Reena for her mishandling of this incident, as well as some of the other issues that have occurred recently. And, Reena will be receiving a review rating that indicates that she is not meeting expectations. Reena submitted her self review to reflect her view that she exceeded expectations and Yessica will be having a conversation with Reena to help her  understand where her performance is really at on Monday.

Historically, we have offered severance packages to HR Associates when we determine it is time for them to leave the business. So, I'd like to start that dialogue with you ASAP. A few weeks ago, Reena shared with Yessica that she's pregnant, which may make this a bit more complex.

We can discuss next week, but I just wanted to let you know ASAP. Yessica and I had a long discussion about this today and I now have clarity that this is the direction we need to go. It's been a long time coming.

**Stephanie Elad,** SPHR
Santander Consumer USA Inc.
Director, Human Resources

PHONE    214.237.3713
MOBILE    214.695.1278
EMAIL    selad@santanderconsumerusa.com
WEB    www.santanderconsumerusa.com

**From:** Stephanie Elad <selad@santanderconsumerusa.com>
**To:** Michelle Whatley <mwhatley@santanderconsumerusa.com>
**Cc:** Dana Hawkins <dhawkins@santanderconsumerusa.com>, Pamela Blackburn
    <pblackburn@santanderconsumerusa.com>, Yessica Adriano
    <YADRIANO@santanderconsumerusa.com>
**Subject:** RE:
**Date:** Tue, 24 Nov 2015 21:16:49 +0000
**Importance:** Normal

---

Quick update – Yessica spoke with Deirdre in detail about her concerns. There were several allegations brought forward, most of which we should be able to substantiate one way or the other. I asked Yessica to handle this investigation personally, rather than Reena. As it turns out, Reena spoke with this Associate and her AVP a few months ago. I think a lot was missed during that conversation, on Reena's part.

Yessica asked Deirdre if she would like to come back either in a different role at LEW or in a similar role at NRH. She said she would think about it, but Yessica doesn't think it's likely that she will accept. She has apparently been consulting with an attorney.

We are having significant issues with Reena. I sent Pam an email earlier today. Long story short - I think it's time to consider severance. She is overwhelmed with the workload (which isn't any higher than the rest of my team) and making a lot of mistakes.

---

**From:** Michelle Whatley
**Sent:** Monday, November 23, 2015 9:50 AM
**To:** Stephanie Elad
**Cc:** Dana Hawkins; Pamela Blackburn
**Subject:**

The attached resignation was escalated to Legal and Compliance. Please have someone look into validity please and advise if this issue has/was raised with HR at any point.

Thanks
mw

**From:** Stephanie Elad <selad@santanderconsumerusa.com>
**To:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>
**Subject:** RE: Reena: Workload
**Date:** Tue, 24 Nov 2015 21:19:22 +0000
**Importance:** Normal

---

I can't imagine that the compliance emails take that long. I would ask Kristen how long they take on average. When I had to do it, it was a 5 minute conversation and a few emails. But, maybe I'm missing something.

---

**From:** Yessica Adriano
**Sent:** Tuesday, November 24, 2015 1:21 PM
**To:** Stephanie Elad
**Cc:** Angelina Hullum
**Subject:** Reena: Workload

Hello Stephanie,

Wanted to bring this to you as an FYI....

Reena approached me a couple hours ago asking if she could leave at 12:30 stating she has a Dr. Appointment at 1 pm, and would need to take a longer lunch.  I advised her as previously discussed,  I needed more than a same day notification, so we can plan appropriately.  She responded with sorry and she understood (exactly what she said last time). She stated she would return to work  after her appointment ended.

I received this IM from her below.  Ten, Sabrina and myself have all been continuously assisting with her with work and when I ask  where she spends her time, she does not have a solid justification.

I will work on a formalized timeline of events and discussions that I have had with her since September and will ask Lina for documentation prior to that.

Reena Mathew 12:24 PM
Btw, ugh, we just received 5 Compliance emails......do you think the team can split those up? Each one takes some time to complete
Yessica Adriano 12:29 PM
i think ten was bombarded with these as well, but check to see where she stands, i know sabrina has a big load she was here early and stayed late yesterday trying to catch up, and i need to launch the deidra investigation the herman/ricci situation as well
what else do you have going on
Reena Mathew 12:38 PM
Maybe we can discuss when you have some time. It's been really overwhelming I'm going to go to my Dr's appt....be back in a little

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE    214.722.5667
MOBILE    214.215.5258
EMAIL     yadriano@santanderconsumerusa.com
WEB      www.santanderconsumerusa.com

SC008393

APP186

**From:** Stephanie Elad <selad@santanderconsumerusa.com>
**To:** Holly Hanes <hhanes@santanderconsumerusa.com>
**Cc:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Subject:** Re: Deidra Crouch
**Date:** Wed, 25 Nov 2015 18:36:28 +0000
**Importance:** Normal

Yes - it is the fact that it was not handled first thing Monday that will be addressed. Thanks!

Sent from my iPhone

On Nov 25, 2015, at 12:04 PM, "Holly Hanes" <hhanes@santanderconsumerusa.com> wrote:

Yes.  I will look further into the delay in processing the term.  I wouldn't expect a term to normally be processed over the weekend, especially since the resignation was sent on a Saturday evening (unless you have other expectations).  I would have expected it to be completed first thing Monday though.

**Holly Hanes**
Santander Consumer USA Inc.
HR Operational Analyst III

PHONE     972.761.1039
FAX         972.759.5330
EMAIL      hhanes@santanderconsumerusa.com
WEB        www.santanderconsumerusa.com

**From:** Stephanie Elad
**Sent:** Wednesday, November 25, 2015 12:03 PM
**To:** Holly Hanes
**Cc:** Yessica Adriano
**Subject:** Re: Deidra Crouch

The risk event is that the term wasn't processed until Monday afternoon. Reena was notified on Saturday evening. The Associate emailed Reena directly to inform of her resignation. Yessica is addressing with Reena

And Yessica is correct in that this Associate referenced a prior complaint being made but we do not recall being notified about that.

Thanks!

Sent from my iPhone

On Nov 25, 2015, at 11:05 AM, "Holly Hanes" <hhanes@santanderconsumerusa.com> wrote:

Thanks Yessica.  I followed up, and we have not received any calls to the Whistleblower Line that would reference this.  I am not aware of an "Ethics Line" we may have.  Next time you speak with her, can you ask her for the phone number she called to leave the message?  We can try to track down any possible message that way.

Keep me posted.

SC009619
APP187

Thank you,

**Holly Hanes**
Santander Consumer USA Inc.
HR Operational Analyst III

PHONE     972.761.1039
FAX         972.759.5330
EMAIL     hhanes@santanderconsumerusa.com
WEB        www.santanderconsumerusa.com

---

**From:** Yessica Adriano
**Sent:** Wednesday, November 25, 2015 10:30 AM
**To:** Holly Hanes
**Cc:** Stephanie Elad
**Subject:** Deidra Crouch

Good Morning Holly,

Wanted to make you aware of a possible risk event.

We received a resignation letter from Deidra Crouch on Saturday, November 21 (see attached), where she brings up concerns of her manager and work environment.  I called her yesterday morning and she provided several examples and names to substantiate her claims, I am currently working on validating these incidents and will follow up with you on those results. However, she is already seeking legal counsel.
In her letter and when speaking to her, she states she called the ethics line, may you please verify that?

Thanks

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE     214.722.5667
MOBILE    214.215.5258
EMAIL     yadriano@santanderconsumerusa.com
WEB        www.santanderconsumerusa.com



# Santander Consumer USA Inc. Performance Improvement Plan (PIP)

## SECTION I: ASSOCIATE INFORMATION

| |
|---|
| **Associate Name:   Reena Mathew** |
| **Associate ID: 013696** |
| **Associate Job Title/Department/Location: HR Business Partner/Advocacy/Lewisville** |
| **Hire Date: 01/31/2011**  |  **Time in Position:  4 years** |
| **Manager/Supervisor Name and Title: Yessica Adriano/Manager of Human Resources** |
| **Department Director/VP Name and Title:  Stephanie Elad/Pamela Blackburn EVP Human Resources** |
| **Performance improvement period:  30 days**<br><br>**Begin Date: 12/01/2015**<br><br>**End Date: 12/31/2015**<br><br>*(Active period of this notice will affect bonus, transfer and promotion opportunity for the entire duration of the listed days)* |

As an associate of SCUSA, we expect performance to be in line with the standards outlined in the job description as well as those of your management team.  The goal of this PIP is to align delivered performance to expected performance and assist in making you a successful member of the team.

You are expected to perform to the standards listed in the Performance Standards column in the attached Performance Worksheet. You will find in the Actual Performance Column that you have patterns of sub-standard performance when compared to the standards listed.

As SCUSA provides the resources required to meet the standards, we expect immediate and sustained improvement. Your work will be monitored for compliance with the performance standards on the attached Performance Worksheet.  If you do not meet and maintain performance to the standards in the attached Performance Worksheet, you may receive the next level of discipline which, in this case, could range from formal disciplinary action, up to and including Termination. This will occur upon any further occurrence of your performance that does not meet the standards in the Performance Worksheet (see below)

If you have any questions about the terms of your Performance Improvement Plan, please consult with your direct manager or your designated Human Resource representative.

SC005409<br>APP189



## SECTION II: PERFORMANCE STANDARDS AND ASSESSMENT

This section should clearly outline the performance standards that need to be achieved as a minimum acceptable performance standard. The strategies, actions or tasks to achieve the performance standards should be specific, measurable and achievable. These are to be reviewed and monitored during the review period.

| Performance Standards<br><br>*(What needs to be achieved, as set in job description)* | Actual Performance Delivered<br><br>*(What has been occurring, Facts)* | Strategies / Actions / Tasks<br><br>*(Steps to achieve desired performance standards)* |
|---|---|---|
| Integrates Company Values into all activities…in order to meet demands of the business, it is expected that all Associates be punctual and adhere to scheduled work hours. | Reena continually asks to leave early and struggles to adhere to her work schedule. In many instances, she only provides a same day notice. | It is important Reena adhere to working a full day in adherence to her schedule.  When possible, she needs to provide ample notice and maintain these leave requests at a minimum. |
| Seamlessly executes a full range of duties aligned to deploy HR strategy and objectives into client group.<br><br>Demonstrated ability to work under pressure, appropriately prioritize and organize work effectively. | Reena has had difficulty completing objectives on a timely basis. When projects/tasks arise, she relies on the assistance of other people for completion. Examples include: DA administration, monthly side by sides, WD maintenance, and the investigation matrix. | Reena needs to organize and prioritize her tasks efficiently.  It is necessary for her to improve her time management skills by minimizing her social interactions to allow her to focus on her tasks and their timely completion.  When requesting assistance from others, she needs to be able to effectively quantify where her time is being spent. |
| Proactively minimizes legal risk by ensuring client's compliance with company policies and procedures.  Makes recommendations, provide solutions, and resolve issues as challenges. | As an HR consultant to the business it is necessary to be able to make fair and sound judgments when conducting investigations. Reena underestimated a concern brought forth from an employee, did not follow through, and when notified of her decision delayed appropriate actions- which led to a risk event. In addition, in a couple situations she did not secure the objectivity of the room when questioning associates. | It is important Reena follow established policies and be thorough with ever situation/concern brought forth. Our objectivity and ability to effectively diagnose situations is crucial in this role. |

SC005410

**APP190**



## SECTION III: ASSOCIATE COMMENTS

| Associate Comments | |
|---|---|
| | |

Your signature below represents that we have communicated our concerns and that you understand what will happen if the aforementioned standard(s) are not corrected.

| Associate Name | | Signature | | Date | |
|---|---|---|---|---|---|
| Manager Name | | Signature | | Date | |

SC005411
APP191



## SECTION IV: PERFORMANCE STANDARDS REVIEW REPORT

The Performance Improvement Program commenced on _____/_____/_____
The final review was conducted _____/_____/_____

This section should clearly outline the performance standards and results. An explanation must be included for each performance standard(s) that was not met.

| Strategies / Actions / Tasks<br>*(Assigned in the PIP)* | Review Comments<br>*(Meets Standards / Below Standards)* |
|---|---|
| | |

| | |
|---|---|
| **Associate Comments** | |

| | | | | | |
|---|---|---|---|---|---|
| **Associate Name** | | **Signature** | | **Date** | |
| **Manager Name** | | **Signature** | | **Date** | |
| **Department Director/VP Name** | | **Signature** | | **Date** | |

SC005412
APP192

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Stephanie Elad <selad@santanderconsumerusa.com>
**Subject:** FW: Reena
**Date:** Tue, 08 Dec 2015 23:56:42 +0000
**Importance:** Normal

---

Hello Steph,

Scott and Jeff both called me this afternoon to express concerns with how Reena has handled this investigation as they feel she is not objective and has delayed resolution. I advised Scott that I would look into the matter. I called Reena afterwards to get a run through of what has occurred and asked her for a summary of this investigation. I did not provide any feedback, I want to review what she has sent and then can address the situation tomorrow (she requested a meeting with me to review her PIP and annual performance).

As a side note, yesterday Jorge Munoz asked if Reena had brought Francisco's matter to my attention. I said, not yet, he was inquiring about his shift differential, stating he had asked Reena several times for the past month to tell me. I told Jorge moving forward he needs to feel comfortable coming to me directly. I did not get further information because an employee I needed to interview was coming into my office.

For tomorrow, I will meet with Jodi and Cherri in the morning and then transition to 8585 in the afternoon to get the Credit Cards issue wrapped up.

Thanks,

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE    214.722.5667
MOBILE   214.215.5258
EMAIL    yadriano@santanderconsumerusa.com
WEB      www.santanderconsumerusa.com

---

**From:** Scott Dieckmann
**Sent:** Tuesday, December 08, 2015 3:18 PM
**To:** Yessica Adriano
**Subject:** Reena

Yessica,

I wanted to start by saying thank you for taking the time to call me back and listen to my concerns. We have not had Reena as a business partner for very long; however, situations continue to arise that concern me with how things are being handled. Most recently is the ongoing situation with several of my employees and the "bullying" concerns.

Jeff called me today first informing me that we had staff and Judy in HR and had no knowledge of what was happening. I was quite a bit surprised, especially under the circumstances that we would bring Judy into HR for employee issues, when we have discussed her opportunities without informing her leadership team. Typically, where I have worked in the past the leaders would be advised so that we could account for where our staff are at. Furthermore, based on Judy's challenges, I am not sure we want to bring her into this without knowing what is happening or seeing if we are comfortable.

I then got another call from Jeff with numerous concerns, which concern me significantly.  Jeff said that he spoke to Reena and that she met with Deandrea to follow up.  During their conversation Deandrea again expressed concerns that the situation has not stopped.  She said the other girls were still saying things to her under their breath.  Jeff asked if she asked the other girls and Reena said yes.  Jeff asked what did they say and according to Jeff, Reena said of course they denied it but then went on to say something to the effect of she "Reena" is sure they said it.  If Reena was not present and we have no one to substantiate this accusation I don't think HR should be taking sides.  We need to ensure we are impartial and make the decisions based on the facts we gather, not our opinion.  It comes across as if Reena is emotionally involved and unable to handle this without being partial to Deandrea.  If that is the case, she cannot be part of this investigation any longer.  Jeff also mentioned that Reena told him part of Deandrea's complaint was around the team luncheon.  I believe all three of the girls rode to the lunch with Jeff and either all three or two of the three sat next to each other at lunch while there many open seats to choose from.  After the lunch I instructed Jeff to reach out to HR, because he said things went well and didn't see any issues occur.  I asked Jeff to ask HR if he should document and provide that because I was concerned that this event would be added to continued complaints.  Jeff said he did speak to Reena about it after the lunch.  If Deandrea had concerns about the car ride to the lunch or at the lunch itself, why not set that aside and bring Jeff into the conversation so that he could state his perspective and try to help resolve this issue.  Also, maybe we should have asked why she chose to ride with Jeff after she found out that Keidra and the other girl she had an issue were riding with him as well.  She could have ridden with the other group or taken her own car.  Furthermore, maybe ask why sit next to them at lunch if things are bad.  Again, this seems like another mis-step in this situation.

Lastly, as soon as Jeff came back from vacation, I believe Keidra met with Jeff and expressed her concerns that Deandrea was on the floor talking to others about the situation.  Jeff went on to say that Keidra said Deandrea was telling other staff that she just has to think about her sister (I believe she lost her sister recently) to make herself cry and that she can get them fired.  I mentioned this to Tensya prior to us writing everyone up and closing out the issue and was told HR was done and we were not calling anyone else back in.  I get the part at some point we need to stop the investigation and at times people may just continue pointing fingers, but in hindsight this issue continues to grow.

Jeff can provide more specifics on this situation and prior situations.  The feedback I get from Jeff is many other things have not been handled by her to his expectations.  Please let me know if you need anything else from me.  I appreciate you intervening to help us work through and hopefully resolve this current situation.

Thank you,

**Scott Dieckmann**
Santander Consumer USA Inc.
SVP Loan Servicing, Consumer Lending

PHONE       214.261.1437
MOBILE      214.842.0282
FAX         214.237.0565
EMAIL       sdieckmann@santanderconsumerusa.com
WEB         www.santanderconsumerusa.com

SC006129

**From:** Stephanie Elad <selad@santanderconsumerusa.com>
  **To:** Pamela Blackburn <pblackburn@santanderconsumerusa.com>
  **Cc:** Stephen Shaffer <sshaffer@santanderconsumerusa.com>, Stephanie Elad
        <selad@santanderconsumerusa.com>
**Subject:** Meeting with Reena - Notes
  **Date:** Thu, 10 Dec 2015 22:10:24 +0000
**Importance:** Normal

---

I met with Reena on 12/3, per her request. Reena explained that she didn't feel that her PIP was fair, and that none of the performance issues had been brought to her attention. I explained that both Angelina and Yessica shared with me that they addressed issues regarding her attendance and follow up with the business, and the business complaining about late DA's. Reena stated that she was convinced that didn't happen. Other highlights of the conversation include:

- Reena stating that she felt that Yessica was doing this because she was pregnant and a minority. I asked if there were specific reasons she felt that way and she said no but that there was no other reason as her performance had always met standards in the past.
- She didn't feel that we were following our normal process of coaching to address the problems first. I explained that I had 2 HR Managers stating that they had provided coaching and that I had coached her personally about the falsified bereavement documentation issue and that she hadn't done as I directed.
- Reena insists that LEW is a busy site and that she and Sabrina are overwhelmed. When I asked her to quantify what she spends her time on, she couldn't. I suggested that perhaps she track her time and also work with Yessica to determine how and where she spends her time as I think there is opportunity for greater efficiency there. I also explained that LEW is not a busy site, compared to the others. She also asked (again) if we will be getting a 3rd person at LEW when Tensya goes to PR. I said absolutely not, which is what I said the last few times she asked about it. I told her that we are staffed appropriately for a site of this size. Reena was emphatic that LEW is busy and that they are understaffed.

Throughout the 1+ hour conversation, Reena kept repeating herself and did not accept any ownership for the issues. I tried to explain to her that I saw these performance gaps as well, and that it wasn't just Yessica and Angelina who felt this way. I also shared with her that although she didn't like the feedback, the only way to resolve the situation in a way that would allow Reena to remain employed with SC was to accept it and try to work on it. She didn't seem to be able to do that during our conversation. I shared with her at one point that she seemed to be not hearing what I was telling her, which is consistent with the feedback that both Angelina and Yessica shared with me about their experience trying to coach Reena. I even said at one point "I can see where Yessica and Angelina struggled to coach you based on how you are responding to me right now, in this conversation". I shared with her that my experience with her during this conversation was that she was resistant to my feedback and that she was stuck in her position, which would not allow her to move forward. She said that she understood, but she couldn't articulate back to me what I had just said, so I don't think she actually did understand.

I went over several of the examples with her and she did not accept ownership for anything. It was always someone else's fault, or that no one had told her.

I shared an experience from my past where I had gotten some performance feedback that I didn't like or agree with. However, I came to understand that there was some truth to it – because I believed that the person who gave me the feedback a) was a good assessor of situations in general and b) had my best interests in mind. I told Reena that I believed this feedback was accurate and was given in good faith. And, I reiterated that I agreed with Yessica's assessment based on my interactions with Reena and my time at the site over the past year.

I tried my best to impress upon Reena that she needed to accept this feedback in order to improve. I don't think I was successful. She did thank me for my time and said that she understood the feedback from me better than she had from the HRM's. However, later in the conversation, she contradicted herself and said that she still didn't understand.

SC001120

Additionally, there have been a few instances over the past few months, that I directly witnessed, and coached Reena on. Here is a summary.

About a month or so ago, I overheard Reena and Sabrina discussing a bereavement documentation situation. It appeared that the documentation provided by the Associate was false. They spent quite a bit of time discussing this matter. More than I thought was appropriate or necessary. I tried to stay out of it and was planning to provide feedback to Yessica and let her handle. However, Sabrina came to ask me my opinion. I went into Reena's office where she was attempting to google "picture of mother and son" to see if the picture that was used on the alleged funeral program was real or just pulled from the internet. At that point, I took a look at the program, determined very quickly that there was a discrepancy in dates, and told them to let the business know that we would be denying the request for bereavement time and ask them to inform the Associate. I told them to keep the message brief. I also said that I didn't think this matter was worth the time they had spent on it that day. I later relayed the incident to Yessica. She informed me that both Reena and Sabrina set up a call with the SVP and VP of that group and informed them of the reasons why we felt the documentation was falsified. This was the exact opposite of what I had instructed them to do. Reena later claimed that she had only spent 5-10 minutes on this incident prior to me becoming involved. However, I observed Reena and Sabrina talking back and forth about this off and on for several hours.

Also, on August 12, I received a call from Scott Dieckmann (SVP). He was upset because Reena had pulled in one of his Associates regarding an email data loss issue. The email was found to be company related. This was validated by the VP of the department. However, Reena still sent the acknowledgement to the Associate asking her to sign. This was interpreted by the business and the Associate as if she had done something wrong. I later coached Reena that what she should have done was escalate this to her manager, as this situation represented a gap in our process, not any wrongdoing on the Associate's part. I shared with Reena that we need to be able to critically evaluate these situations and not just blindly follow process. She said that she understood but I don't think that she really did. I had to go over it several times.

During WAS week this year, I spent my entire week at LEW. Reena mentioned how busy and hectic things were several times leading up to, and during, the week. My assessment was that it was not much busier than an average day. There was an event each day, but there were several reps from the Events Team on site. And, I observed Reena standing around a lot during that time. This is a constant theme from Reena – how busy LEW is. But, it appears to me to be less busy than both NRH and CO.

Please let me know if you have any questions. Thanks!

**Stephanie Elad,** SPHR
Santander Consumer USA Inc.
Director, Human Resources

PHONE   214.237.3713
MOBILE   214.695.1278
EMAIL   selad@santanderconsumerusa.com
WEB   www.santanderconsumerusa.com

**From:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>
**To:** Stephanie Elad <selad@santanderconsumerusa.com>
**Subject:** RE: Reena
**Date:** Thu, 10 Dec 2015 20:41:24 +0000
**Importance:** Normal
**Attachments:** reena.docx

Please see attached.

-----Original Message-----
From: Stephanie Elad
Sent: Thursday, December 10, 2015 8:00 AM
To: Angelina Hullum
Subject: Reena

Just a reminder that I need your notes regarding your performance discussions with Reena ASAP. Tomorrow is fine.

As much detail as you can provide would be helpful. If you don't have exact dates, just give approximate timeframes.

Sorry to bug you. But this has been escalated.

Thanks!

Sent from my iPhone

SC001118
**APP197**

| | |
|---|---|
| 1/14/15 | Reena didn't term contract worker when she received email from Melissa, creating risk event. Melissa terminated worker on 1/22/15 |
| 2/11/15 | I asked for summary from HRSW luncheon, she wanted to provide power point. I never received summary and she did not ask to go to any more luncheons |
| March | Reena gave the business specific reason as to why an Associate was taken away by authorities |
| 3/11/15 | Shannon LittleJohn sent email due to Reena not signing performance review on time |
| 4/9/15 | Had to ask for monthly recap twice |
| April | recap included Zero jumpstarts and Zero meetings/SBS with managers |
| May | Asked for vacation 5/22 and 8/3-8/7, did not have vacation to cover the week of 8/3, used 3 days of vacation, 2 days of sick |
| June | Advised Reena she needed to provide the business with DA's in a more timely manner |
| 7/1/15 | Reena sent IM to Kristen at 9am asking to leave at 1:00pm for doctor appt |
| 7/10/15 | I sent recap email to Reena to advise she would be taking over credit cards and going to 8585 every other Friday |
| July | Gave Reena the "15 minute" assignment. Had to have her re-do it, provided her with an actual excel spreadsheet to complete the second time around |
| August | Had conversation with Reena regarding timeliness of terminations |

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Stephanie Elad <selad@santanderconsumerusa.com>
**Subject:** D. Crouch - Investigation Summary
**Date:** Tue, 15 Dec 2015 13:34:11 +0000
**Importance:** Normal
**Attachments:** D._Crouch_Timeline_of_Events.docx

---

Hello Stephanie,

Below is an attempt at a general investigation summary for Deidre Crouch, the detailed investigation notes of every conversation I had will soon follow. I have attached a time line of events dating back from when Deidre first raised her issues, which paints a vivid picture of her attempts at reaching out. The timeline below is just of our investigation. Please review and advise if you would like for me to condense or be more specific on the summary below. My recommendation is at the end of this email, I would also like to gather your thoughts on appropriate course of actions. Thank you.

**Date Complaint Received:** 11/24/2015
**Investigator(s):** Yessica Adriano- Manager, Human Resources
**Complainant(s):** Deidra Crouch, Collateral Recovery Specialist
**Accused:** Cherri Cotton – Loss Recovery Manager
**Witness(es):** Jeannie Palmer, Nadia Robinson, Jessica Gibson, Natassia Kinney, Nathan Jones, Chris Musso – Collateral Recovery Specialists
Ebony Jones- Reinstatement Coordinator
Tara Stewart- AVP Loss Recovery, Jodie Kelch-VP Loss Recovery

**Timeline of Investigation:**
**11/21/2015:** Deidra Crouch's Resignation letter received
**11/24/2015:** Spoke with Deidre over the phone, she shared her concerns and the reasons for her departure. She was offered the opportunity to return to the NRH site.
**11/25/2015:** Deidre responds via email to me to verify if the position will be under Tara
HR Compliance reviews past logs and does not find a complaint from Deidre
**12/1/2015:** Advised the position open would still fall under Tara, and asked if she would be willing to go to Late Stage at NRH. Deidre responds same day stating due to her declined health and the treatment she endured she will not return.
**12/7/2015:** Spoke with 6 agents from Sherri Cotton's team, and 1 agent from a surrounding team
**12/8/2015:** Met with Tara Stewart, AVP Lost Recovery  and Jodie Kelch, VP Loss Recovery
**12/9/2015:** Met with Cherri Cotton, Loss Recovery Manager
**12/11/2015:**  Nastassia Kinney, comes to see me stating that Cherri has been nicer to the team since the day Jodie arrived and no longer places the customers on speaker phone, however she has begun to "play her like she did Deidre" through EIC comments. Advised will look into EIC and follow up with her the following week.

**Deidre Concerns:**
-   Cherri treats her unfairly and humiliates her anytime she can, which caused a decline in her health and well being
-   Employees were aware of her write up before she knew about it
-   Brought these issues to Tara several times and she never did anything about it, went to HR, and contacted an Ethics officer
-   Cherri is always sharing people's business with other employees and says mean things about everyone (examples provided)
-   Cherri always puts upset customer's on speaker and mocks them

**Substantiated Claims from witnesses questioned:**
- 2  employees state they were aware of Deidre's write up as Cherri left if on her desk and made comments in regards to it
- 2 employees confirm Cherri speaks negatively of many employees and their personal matters, examples and time frames provided
- 2 employees state that they these matters have been brought to Tara's attention several times and to HR and nothing was done but things got worse
- 1 employee confirmed how Deidre was taunted by Cherri after returning from an HR meeting
- 3 employees confirmed it is important not to get on Cherri's bad side, because of how her disposition changes (2 of them provided examples of how bad she has treated Deidre and Jeannie)
- All interviewed parties confirmed Cherri places upset customers on speaker phone, 4 of the 6 interviewed agree she laughs and does this for an entertainment value

**Unsubstantiated Claims:**
- Deidre notifying the Ethics officer, compliance thoroughly reviewed and confirmed there is no record of this
- Deidre reaching out to Tara on 09/04/2015 to question her Final issued on 08/30/2015

**Tara/Jodie Meeting Recap:**
- Jodie begins meeting by stating Misty, Reena were asked to get involved and they advised this investigation was closed with no findings
- Tara reviews how the oversight of Deidra's attendance occurred, how she reached out to have it corrected, and her thorough apology to Deidra over this. This error was caught in time and Deidra's bonus was not impacted
- Deidra brought up concerns of favoritism, bullying, log in/log outs, ,eating on the floor concerns to her.  Upon her review, Cherri was doing everything correctly and was consistent in her practices
- Tara references Cherri's communication style and how it can be misinterpreted as well as hers
- Tara states the 10/20 meeting went well, she followed up on 10/27, Deidra was fine and she helped bridge the communication between her and Cherri by having her do a recap and receive kudos. The resignation letter came to her as a surprise.

**Cherri Meeting Recap (Jodie Kelch Present):**
- Issues with Deidre began after she was written up, Deidre just stopped speaking to her
- Claims she has never spoken negatively about any one  on the team. Examples provided and she remembers another associate announcing one of these incidents, but it didn't come from her
- States she is consistent with holding everyone accountable and applies same rules to all
- She has placed customers on speaker phone but only while she is multitasking and helping associates at the same time. If a customer is irate and uses profanity she is quick to pick up the headset. When questioned if she has laughed, she says maybe but not at the customer. Advised many have corroborated she has placed these for an entertainment value, she states she does not know why they would say that
- Claims team environment is good and references issues with Nastassia
- Per Jodie's question, admits she is personable with employees but once a DA is administered has "pulled back" and changed her style

**Recommendation:**
**It is evident that Deidre reached out multiple times using several avenues, these issues were not addressed, nor given the urgency it required.**

**In speaking with Reena, she did not fully review the emails forwarded to her highlighting Deidre's concerns. During the HR meeting, she included and allowed Deidre to lead the questioning when the day before Deidra mentioned her discomfort with Tara.  Reena at one point mentions she feels Deidra exaggerates, and states she did not look into the claims Deidra made (since Tara verified them). The only follow up conducted was from Tara. As an HR member, our diligence in investigation matters is crucial.**

In regards to Cherri Cotton, it was substantiated her ill practice of placing customers on the phone with an intent of mocking them. In our meeting with her, she also admits to changing her style and not being as personal as she is used to when an employee is placed on a disciplinary action. For these behaviors to include the substantiated claims and her failure to uphold our leadership expectations as a manager, I am recommending a Final Written Warning.

During my meeting with Tara, my perception is she was quick to defend Cherri and at one point comments her communication style just like Cherri's has been questioned before. The timeline and emails prove Deidre brought up Cherri's concerns and her incorrect coding, the delay in getting this corrected is questionable. However, she did involve HR in the matter and we allowed her to take reigns during the HR meeting, and she handled the follow up with Deidre. My recommendation for her is a strong coaching, emphasizing the objectivity we need to maintain as leaders as well as appropriate timely responses to agent complaints.

Jodie Kelch did follow up immediately with HR upon receiving Deidra's concerns.

Thank you,
Yessica

SC005431

APP201

**From:** Stephen Shaffer <sshaffer@santanderconsumerusa.com>
**To:** Stephanie Elad <selad@santanderconsumerusa.com>
**Subject:** RE: RM
**Date:** Tue, 22 Dec 2015 22:04:13 +0000
**Importance:** Normal

---

Well we will need to address after we resolve Reena's claim.  We cannot promise the AVP it will be confidential.  If Reena did this, it was wrong and fits into the poor judgment.

Step 1 resolve her issue about the PIP and coaching and feedback etc.
Step 2 address this and other issues.

Thanks

**Stephen Shaffer**
Santander Consumer USA Inc.
VP Human Resources Business Partnership

PHONE      214.722.4580
MOBILE     469.236.5931
EMAIL      sshaffer@santanderconsumerusa.com
WEB        www.santanderconsumerusa.com

---

**From:** Stephanie Elad
**Sent:** Tuesday, December 22, 2015 3:58 PM
**To:** Stephen Shaffer
**Subject:** FW: RM
**Importance:** High

Angelina spoke with Yessica and me about this earlier today and I asked her to provide me with this recap. I'm concerned that Reena is choosing to speak with at least 1 AVP at LEW about the late DA issue. I was clear with her when I spoke to her a few weeks ago that she was not to discuss the feedback in her PIP with the business. And, as an HR professional, she should know that is not appropriate. Ironically, this particular AVP is not one of the ones who provided feedback on this matter.

I'm also concerned about Reena's judgment in advising this AVP to delay addressing an issue. First of all, the AVP didn't need HR's involvement in speaking to an Associate about a dress code issue. I have been clear with my team for over a year now that we should not involve ourselves in issues that are for the business to deal with. Dress code and attendance are the examples I've always used. And, more importantly, she could have reached out to myself or Angelina (in Yessica's absence from work yesterday – she took a PTO day) if she had a question on how to advise the business. Furthermore, she didn't bring Yessica in the loop on this – at least she hadn't by 2:00pm today when I last spoke with her. As far as Reena knows the business could still be waiting on her to respond, not being aware that the AVP reached out to Angelina and followed her counsel.

I know that you are working to connect with Pam on this so that you can advise. I thought you should have this information to factor into your recommendation if you feel it's applicable. I'm available to discuss further if you wish.

---

**From:** Angelina Hullum
**Sent:** Tuesday, December 22, 2015 3:13 PM

**To:** Stephanie Elad
**Subject:** RM
**Importance:** High

Good afternoon,

I received a call from a LEW AVP yesterday asking to talk to me in confidence, as they do not want any more issues with Reena because they "have to work with her". The AVP stated that Reena approached them asking why they "told on her" regarding her providing them with late DA's. The AVP stated they felt extremely uncomfortable and did not know how to respond to her questioning. Reena told them not to mention the conversation to me or Yessica, as it would only get her into more trouble.

In addition, the AVP was also having an issue with an Associate who felt they were being singled out for their hair color. On Friday, the AVP told the Associate they would meet on Monday to discuss the situation. On Monday, Reena told the AVP they could not meet with the Associate until she discussed the issue with Yessica (who was out of the office until Tuesday). The AVP asked for my advice, I told them they needed to address the Associate, since they had already set the expectation on Friday.

I also advised them they needed to bring this to Yessica's attention, however they are reluctant to do so, as they feel that they need to keep the peace with Reena, as they have to work with her. This AVP (and a couple of others) have said they have just found ways to "work around" the delays.

Let me know if you need anything further.

**Angelina Hullum, PHR**
Santander Consumer USA Inc.
Manager, Human Resources

| | |
|---|---|
| PHONE | 214.261.1501 |
| MOBILE | 720.369.7019 |
| FAX | 720.377.3010 |
| EMAIL | aHullum@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |

**From:** "Reena Mathew" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=REENA MATHEW0CB>
**To:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>, "Sabrina Boyd" <SBOYD@santanderconsumerusa.com>
**Subject:** RE: Holiday Pay
**Date:** Mon, 28 Dec 2015 22:53:34 +0000
**Importance:** Normal

---

NP—Yes we will get it sent over. Today has been...... wow!

---

**From:** Yessica Adriano
**Sent:** Monday, December 28, 2015 4:48 PM
**To:** Sabrina Boyd
**Cc:** Reena Mathew
**Subject:** Re: Holiday Pay

Thank you!!!!

On Dec 28, 2015, at 4:46 PM, Sabrina Boyd <SBOYD@santanderconsumerusa.com> wrote:

We will get it taken care of!!

## Sabrina Boyd
Santander Consumer USA Inc.
HR Generalist

| PHONE | 214.261.1619 |
| MOBILE | 469.834.6208 |
| EMAIL | sboyd@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |

---

**From:** Yessica Adriano
**Sent:** Monday, December 28, 2015 4:18 PM
**To:** Sabrina Boyd; Reena Mathew
**Subject:** Fwd: Holiday Pay

Is this humanly possible?

Begin forwarded message:

**From:** Paula Blayney <pblayney@santanderconsumerusa.com>
**Date:** December 28, 2015 at 4:15:23 PM CST
**To:** Whitney Andres <wandres@santanderconsumerusa.com>
**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Andrea Ashley
<AASHLEY@santanderconsumerusa.com>, Susan Odom <sodom@santanderconsumerusa.com>, Yessica Adriano
<YADRIANO@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Stephanie
Elad <selad@santanderconsumerusa.com>
**Subject: RE: Holiday Pay**

Hello~

Please have this information over to Payroll by 5:30pm this evening.

Tks

Paula Blayney
Santander Consumer USA Inc.
HRIS Manager
Mobile–214–354–6913

---

**From:** Whitney Andres
**Sent:** Monday, December 28, 2015 3:08 PM
**To:** Paula Blayney
**Cc:** Angelina Hullum; Andrea Ashley; Susan Odom; Yessica Adriano; Reena Mathew; Stephanie Elad
**Subject:** RE: Holiday Pay

Thank you Paula- I have reached out to HRBP's & HRG's at Lew & COD and I will be compiling a list to send to payroll.

Thanks again!

Whitney

# Whitney Andres
Santander Consumer USA Inc.
HR Business Partner

| | |
|---|---|
| PHONE | 214.237.3579 |
| MOBILE | 214.460.0839 |
| EMAIL | wandres@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |

---

**From:** Paula Blayney
**Sent:** Monday, December 28, 2015 3:06 PM
**To:** Whitney Andres; TEAM HRIS
**Cc:** Angelina Hullum; Andrea Ashley; Susan Odom; Yessica Adriano; Reena Mathew; Stephanie Elad
**Subject:** RE: Holiday Pay

Good afternoon,
I want to make sure that we are all on the same page regarding the Christmas holiday hours populating for those Associates that clocked in after sign off was completed by payroll.

- Sign-Off will need to be removed
- Holiday hours will now populate
- Email payroll your  1 complete list of associates that need the holiday hours added with the EE name and ID

If you have any question please let us know.

Please pass this along to ALL HR.

SC004059
APP205

Tks

Paula Blayney
Santander Consumer USA Inc.
HRIS Manager
Mobile–214–354–6913

**From:** Whitney Andres
**Sent:** Monday, December 28, 2015 1:36 PM
**To:** TEAM HRIS
**Cc:** Angelina Hullum
**Subject:** Holiday Pay

Good Morning-

We are receiving several emails regarding holiday pay either being entered when it shouldn't be or needing to be entered, but they have come in after the pay period was signed off on. I was informed that HRIS would be making these updates. Should we be collecting a list of associates to send to HRIS or to payroll, or is this being handled by Kronos?

Thanks,

Whitney

## Whitney Andres
Santander Consumer USA Inc.
HR Business Partner

| PHONE | 214.237.3579 |
| MOBILE | 214.460.0839 |
| EMAIL | wandres@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |

SC004060
APP206

**From:** Pamela Blackburn <pblackburn@santanderconsumerusa.com>
**To:** Stephanie Elad <selad@santanderconsumerusa.com>
**Subject:** Re: R.Mathew
**Date:** Thu, 31 Dec 2015 01:40:10 +0000
**Importance:** Normal

---

Hi Stephanie,

I spent a lot of time with Steve discussing this today and I think we reached the right decision, so no big surprises to worry about.  I did not support his initial recommendation as I felt it replaced one risk with another.  I am much happier with where we landed.

My laptop has decided to beak tonight - I have IT trying to fix it remotely, but limited hope of that, so will either call or email you more tomorrow, so you know what to expect.  Essentially, documentation isn't sufficiently robust to take formal action, so extending PIP to end of Q1 with weekly check-ins that will be documented.  An additional column to be added to PIP where she and we will add specific actions to be taken,eg a time management course, etc, and we'll require her to sign a commitment to these.  If her performance doesn't improve, we reserve the right to add DA during the process, so we are providing an opportunity for her to improve, but being very clear that if we don't see that improvement we will hold her accountable for this and act accordingly.

This would stack up in our favor in Arbitration or open hearing.

Hope that helps!   I do agree though that Steve should meet u first and then the team.

P

Sent from my iPhone

On Dec 30, 2015, at 3:25 PM, Stephanie Elad <selad@santanderconsumerusa.com> wrote:

Just thought you should see this. If you think I'm wrong here, please let me know. I just don't want to have to manage my reaction to whatever he's going to say about this matter in front of my team. And, I don't want to put either of them on the spot either. They will share their thoughts and concerns with me, but they likely won't with him. They don't have that level of trust yet.

I know you are working on this and I appreciate it. Just wanted to keep you in the loop on the latest.

---

**From:** Stephanie Elad
**Sent:** Wednesday, December 30, 2015 3:22 PM
**To:** Stephen Shaffer
**Subject:** RE: R.Mathew

Can you and I discuss first, prior to bringing Yessica back in to the discussion? I don't know that I'll feel completely open to share my thoughts with you if Yessica is there.

And, I think we can circle back with Angelina a little later down the road on this. If there are learnings for her, I can review with her at a later date. She already understands that she should have documented her conversations with Reena more effectively.

I will be at THX on Tuesday. Can we meet then?

---

**From:** Stephen Shaffer
**Sent:** Wednesday, December 30, 2015 3:10 PM
**To:** Stephanie Elad; Yessica Adriano; Angelina Hullum
**Cc:** Stephen Shaffer
**Subject:** R.Mathew

Hello all,

Is there any chance (I know Yessica is out right now), we can get together at NRH on Tuesday, January 5 in the morning (not necessarily first thing).

I would like to review with you my findings on Reena's situation, how we should proceed, and make sure we are on the same page with how we will proceed.

Let me know if that works and suggest a time and place.

Thanks for your patience and have a great holiday!

Regards,

## Stephen Shaffer
Santander Consumer USA Inc.
VP Human Resources Business Partnership

| PHONE | 214.722.4580 |
| MOBILE | 469.236.5931 |
| EMAIL | sshaffer@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Stephanie Elad <selad@santanderconsumerusa.com>
**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>
**Subject:** RE: 8585 Coverage
**Date:** Wed, 13 Jan 2016 18:04:22 +0000
**Importance:** Normal

---

Agreed, if both Kristen and I are going twice a week there is no need for Sabrina to go.

Lina, thank you for your assistance and support with this!!

**From:** Stephanie Elad
**Sent:** Wednesday, January 13, 2016 11:55 AM
**To:** Yessica Adriano
**Cc:** Angelina Hullum; Stephen Shaffer
**Subject:** 8585 Coverage

Hi – I spoke to Angelina yesterday. She was supportive of Kristen covering 8585 for the next few months, until it closes. And, she already spoke with Kristen about it. Kristen will go there 2x/week, starting next week. Please coordinate your coverage schedule with Kristen's each week.

We can inform Reena when we speak to her on Friday and then you can inform Alicia/Mario/Jeff etc.

Kristen will advise you regarding any escalated ER issues that require your attention. Also, let's discuss if we need to have Sabrina continue to go there. If you go 2x/week and so does Kristen, that seems like adequate coverage to me. But, maybe I'm missing something.

Thanks! And, thanks to Angelina and Kristen for their support. ☺

**Stephanie Elad,** SPHR
Santander Consumer USA Inc.
Director, Human Resources

PHONE     214.237.3713
MOBILE     214.695.1278
EMAIL     selad@santanderconsumerusa.com
WEB     www.santanderconsumerusa.com



# Santander Consumer USA Inc. Performance Improvement Plan (PIP)

## SECTION I: ASSOCIATE INFORMATION

| | |
|---|---|
| **Associate Name:**   Reena Mathew | |
| **Associate ID:** 013696 | |
| **Associate Job Title/Department/Location: HR Business Partner/Advocacy/Lewisville** | |
| **Hire Date: 01/31/2011** | **Time in Position:  5 years** |
| **Manager/Supervisor Name and Title: Yessica Adriano/Manager of Human Resources** | |
| **Department Director/VP Name and Title:  Stephanie Elad, Director  Stephen Shaffer, VP** | |
| **Effective Date: 90 days (starting 01/15/16)** | |

SC000708
**APP210**



## SECTION II: PERFORMANCE STANDARDS AND ASSESSMENT

This section should clearly outline the performance standards that need to be achieved as a minimum acceptable performance standard.

| Performance Standards<br><br>*(What needs to be achieved, as set in job description)* | Actual Performance Delivered<br><br>*(What has been occurring, Facts)* |
|---|---|
| Integrates Company Values into all activities…in order to meet demands of the business, it is expected that all Associates be punctual and adhere to scheduled work hours. | Reena continually asks to leave early and struggles to adhere to her work schedule. In many instances, she only provides a same day notice.<br><br>(See Addendum for specifics) |
| Seamlessly executes a full range of duties aligned to deploy HR strategy and objectives into client group.<br><br>Demonstrated ability to work under pressure, appropriately prioritize and organize work effectively. | Reena has had difficulty completing objectives on a timely basis. When projects/tasks arise, she relies on the assistance of other people for completion. Examples include: DA administration, monthly side by sides, WD maintenance, and assistance with the HR inbox.<br><br>As situations arise, Reena has not been proactive in using resources and contacting other HR leaders to find responses or handle escalated situations. Examples include: Payroll during holiday week and having the business wait on resolution when HRM was on vacation<br><br>(See Addendum for specifics) |
| Proactively minimizes legal risk by ensuring client's compliance with company policies and procedures. Makes recommendations, provide solutions, and resolve issues as challenges.<br><br>Needs to understand HR processes and be able to provide clear, accurate responses to business units.<br><br>Builds collaborative relationships and gains credibility with operations management and associates. | As an HR consultant to the business, it is necessary to be able to make fair and sound judgments when conducting investigations. Reena underestimated a concern brought forth from an employee, did not follow through, and when notified of her decision delayed appropriate actions including processing the termination- which led to a risk event. In addition, in a couple situations she did not secure the objectivity of the room when questioning associates.<br><br>Several business units have brought forward concerns on Reena's ability to support their groups efficiently due to untimely responses, vague and inaccurate information.<br><br>Senior business leaders were disturbed that Reena had questioned and addressed them for bringing forward their concerns (mentioned above). Reena should remain professional and not initiate, or respond, to these types of discussions, as the business clients' confidentiality and right to raise issues must be respected. This action can be considered as intimidation and is not appropriate. |

As an associate of SC, we expect performance to be in line with the standards outlined in the job description as well as those of your management team. The goal of this PIP is to align delivered performance to expected performance and assist in making you a successful member of the team.

You are expected to perform to the standards listed in the Action Plan (separate document). Examples are provided regarding instances where performance is not meeting expectation for the role.

As SC provides the resources required to meet the standards, immediate and sustained improvement is expected. Your work will be monitored for compliance with the performance standards on the Action Plan.  If you do not meet and

SC000709
APP211



maintain performance to the standards as outlined, you may receive the next level of discipline which, in this case, could range from formal disciplinary action, up to and including Termination.

## SECTION III: ASSOCIATE COMMENTS

| Associate Comments | |
|---|---|
| | |

Your signature below represents that we have communicated our concerns and that you have received this document.

| Associate Name | | Signature | | Date | |
|---|---|---|---|---|---|
| Manager Name | Yessica Adriano | Signature | *(signature)* | Date | 1/15/16 |

*Stephanie Elad  1/15/16*

SC000710
**APP212**



SCUSA Performance Improvement Plan
Page 4 of 4

SC000711
**APP213**



## 90 Day Action Plan

**Name:** Reena Mathews

**Plan Period:** 90 days (starting 1/15/16)

**Purpose:** To outline specific actions required to correct performance discrepancies and identify training/resources available.

| Area of Focus | Action/Tasks | Support/Resources | Review Dates |
|---|---|---|---|
| **Attendance** | Reena must provide a minimum of a 48 hr notice (aside from emergency situations) when requesting time off, late arrivals, or early departures. | | Bi weekly basis with HR Manager effective 01/18/2016 |
| **Time Management & Effective Work Habits** | Manage time and hours efficiently to ensure work expectations are delivered, communicate any gaps that could potentially impact the Business. Reena is responsible for managing her time and her schedule as an exempt Associate and ensuring that the needs of the business are met. | Reena will complete and submit a time tracking study every week to her Manager. This will be reviewed and discussed on a bi-weekly basis. If Reena would like additional support/training in this area, she should let her Manager know by 2/1/16 and a representative from the Talent Development team will be engaged to provide counsel and recommendations. | |
| | All requests and inquiries to our business units are to be responded to within a 24 hr time frame.  If a complete answer is unavailable, then a follow up response with an expected ETA should be provided. Disciplinary Actions (DA) forms need to be delivered primarily within a 24 hr time frame, not to exceed 48 hrs (excluding holidays and weekends). | Reena's workload has been reduced to help her succeed, she will only provide HR support to the LEW site, effective 1/18/2016. Responsibility for 8585 will transition to another member of the team. | Bi weekly basis with HR Manager effective 01/18/2016 |
| | Provide support in all areas of the business to include administrative tasks. For example: checking the HR box, scanning documents to appropriate departments and/or entering DA's into Workday. | If Reena would like additional training on any of SC's processes or practices (including payroll, WD, etc), she can submit a list of topics to her Manager by 2/5/16 and this will be arranged. | |
| **Consulting** | Reena needs to follow established policies, be thorough with every situation/concern brought forth. When handling investigations, use the checklist prior to starting an investigation to ensure no element is excluded. Review all findings with HR Manager prior to making business recommendations. | If Reena is interested in pursuing training courses to provide additional development in this area, she should let her Manager know by 2/1/16 and she will be put in touch with a member of SC's Talent Development team for | Bi weekly basis with HR Manager effective 01/18/2016 |

*SC Action Plan*

*Revised 01/2016*



| | | counsel and recommendations. | |
|---|---|---|---|
| | Provide accurate and clear answers to business clients. If unsure on a response, Reena needs to take a proactive approach and use all resources available (other depts and/or peers) to get confirmation. | If Reena feels she needs additional development in this area, side by side shadowing sessions can be set up with another HRBP.  Reena should let her Manager know by 2/1/16 if she would like to pursue this option. | |

We are committed to providing additional resources and support to Reena for her to effectively complete this plan, and hope that she completes this Action Plan successfully.  In order to achieve this, Reena needs to demonstrate immediate and sustained improvement against the action plan outlined above.

**Comments:**

_____

**Associate Signature**

_____

**Manager Signature**

1/15/16
_____

**Discussion Date**

Stephanie Elad
_____

**HR Approval**

*SC Action Plan*

*Revised 01/2016*

## Addendum
## Timeline of Events

**February 11, 2015**
- Was asked to provide a summary of information from an HR luncheon attended, summary never received.

**April 9, 2015**
- March Recap: Reflected 2 side by sides and 4 jumpstarts for the month, number of meeting with business leaders was not quantified.

**May 18, 2015**
- April Recap: Jumpstarts were not attended for the month, trainings not conducted, and number of meetings with business leaders was not quantified.

**July 1, 2015**
- Requests to leave half day to attend doctor's appointment, same day notification

**July 2, 2015**
- Asked by HR Manager (HRM) to correct onboarding discrepancies in WD, asked if this could be assigned to another dept.

**July 10, 2015**
- Asked by HRM to support the Credit Card Department at 8585 due to the shortage of staff and unbalanced workload, asked for assistance felt overwhelmed with current duties

**August 13, 2015**
- July Recap: One side by side held, attended 3 jumpstarts, stated 10+ meetings attended with the business, and recap of training held with one manager

**August 23, 2015**
- Texts manager to advise of late arrival for the next day, HRM had to rearrange her schedule to provide site coverage

**July-August 2015**
- Stated the work load was heavy, asked by HRM to provide a time study to pinpoint where her time was being allocated to. Due to the lack of specifics, was asked twice to complete assignment
- Continually reminded to work full shifts and provide sufficient notice when requesting to leave early
- Strongly advised of the importance in submitting DA's to the business in a timely manner, and addressed on not leaving all DA entries solely to the generalist, everyone needed to assist with the workload.
- Manager constantly stepped in to finalize pending DA's and process terminations

### September 1, 2015- Transitioned to New HRM

**September 3, 2015**
- Requested to leave half day on Friday, September 4 due to traveling, advised she could leave early but needed to provide a greater notification, and needed do her best to work most of her shift.

**September 4, 2015**

- Came in at 9 am and left at 2 pm.

**September 17, 2015**
- Same day notification to leave early, had flight the next day

**September 28, 2015**
- Discussed work load with HRM, Reena feels overwhelmed and there isn't enough time- had long conversation on how the HRBP level requires a "high level of efficiency"

**October 12, 2015**
- Discussed workload with HRM, and  asked what was consuming her time, she did not quantify, asked for assistance with investigation checklist

**October 29, 2015**
- Brad, site Director, notifies HRM that they have 10 DA's pending from Reena, upon speaking with her she states she was behind and had asked the AVPs to give her until Friday. Advised DA's are time sensitive and if she is behind she needs to let me know, so we can assist in getting those out.
- Also requests to arrive to work late for tomorrow, Friday October 30th, she had a doctor's appointment and could not miss it.  HRM had to rearrange schedule to provide coverage for site. She arrives to the office at noon. Advised understood emergencies/life happens but in circumstances where a greater notification can be given, it needs to be done.

**November 6, 2015**
- Received specific instruction from HR Director on how to communicate to the business the denial of a bereavement request, instruction not followed and additional time and resources spent on the issue

**November 9, 2015**
- Upon HRM's return, was provided feedback on time management, provided example of bereavement request

**November 16, 2015**
- Same day notification on needing to leave early, later asked for assistance with NH class, team had to stay later to cover workload.

**November 17, 2015**
- Reminded her of the importance of prior notification when wanting to leave early, as it impacts the team. Advised how team came in early and stayed late to cover, advised if in the future work is pending leave requests will be denied.
- Stated she felt overwhelmed with work load, when asked what is consuming her time she mentioned DA's (5),  filling out the info forms for TA (7), emails, and just overall busy.

**November 20, 2015**
- Contacted HRM stated she was extremely busy, asked if Ten could help her. Ten handled the pending investigation.

**November 23, 2015**
- Reena received Deidra's resignation on Saturday, November 21st and did not process termination. The termination was not conducted until late in the afternoon Monday, November 23rd by HRM. Upon

reviewing situation, employee had brought forth concerns in previous months- the situation was mishandled and was not followed up on.
- Provided term recommendation which was vague stating (see AVP notes below) explained the importance of summarizing and had her resend- which she did.  In addition, asked for the surrounding circumstances of incident, upon review advised her three people questioning one employee was overwhelming and we need to safeguard objectivity of the room.

**November 24, 2015**
- Asked for assistance with 5 info security issues, advised her everyone's pending workload and asked for clarification on what she was doing. She stated she would like to discuss further

**November 25, 2015**
- Same day notification of Dr.'s appointment, took a longer lunch. Advised again, that a greater notification must be given- same day notices impacts the team and workload.

**Week of December 12th, 2015**
- Receive concerns from VP, SVP leaders of the credit card team for Reena's timeliness and questioned how she was leading an investigation. They felt she had already reached a conclusion prior to looking into the matter. They asked for another representative to review the case.

**Week of December 18th, 2015**
- Senior leadership members advise that Reena had approached them questioning the concerns they had brought forward, they stated they felt uncomfortable and surprised by this action.

**December 28, 2015**
- HR Generalist had to be called in on their time off to gather, organize, and help solve payroll discrepancies in order to meet deadline. As an HRBP and tenured employee, it is expected that Reena proactively work with other peers and departments to reach consensus and find solutions during these situations.

**From:** Stephanie Elad <selad@santanderconsumerusa.com>
**To:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Cc:** Stephen Shaffer <sshaffer@santanderconsumerusa.com>
**Subject:** RE: Reena Meeting Recap 01/15/16
**Date:** Mon, 18 Jan 2016 22:31:33 +0000
**Importance:** Normal

---

Thanks for the recap! I think you covered just about everything. I just have a few points to add:

- When you brought up the Google example (for the Associate who was alleged to have falsified her bereavement documentation), I reminded her that I had coached her at the time that I felt that she and Sabrina had spent too much time looking into this issue, and also provided specific direction on how the incident should have been handled. Reena stated that I had provided feedback but that it wasn't coaching. I then explained that if Yessica or I provide direction on how to handle something differently, that is coaching, even if we don't preface the conversation by specifically stating "this is coaching".
- Reena stated that Angelina had been on the HRBP call and had attempted (unsuccessfully) to halt the discussion around the PIP's. When we asked her to explain, she refused. *Later that day, I called Angelina and asked her about this. She stated she wasn't on the call and wasn't aware of the content until afterwards, when one of her team members brought it to her attention.*
- She asked for examples several times and claimed that she had not been provided with examples thus far. However, when Yessica and I shared examples with her, she would argue with them and state that the facts we presented were not true.

---

**From:** Yessica Adriano
**Sent:** Monday, January 18, 2016 11:36 AM
**To:** Stephanie Elad
**Subject:** Reena Meeting Recap 01/15/16

Good morning,

I wanted to share with you my summary of our meeting with Reena on Friday, 01/15/2016

We started the meeting by letting her know we had taken her concerns into consideration and taken a step back and reviewed this process.  Her annual review was modified for 2015 to a satisfactory rating and she would be receiving her merit and bonus.  Our goal was to see her succeed in her role and the PIP and action plan that we were going to discuss were created with that in mind.

- She immediately became upset and questioned why she was being placed on two PIPs, it was explained that there isn't two PIPs as the other one was rescinded. The PIP addressed the performance gaps that still existed and it outlined additional concerns that have come to light.  We explained the PIP was extended to a 90 day period to give her enough time to make necessary changes. Reena stated we just wanted her out of here and why didn't we just fire her now, and that this was all so unfair.
- Reena went on to share she was being blindsided again since she was never coached before, I provided her examples of conversations where her performance was addressed (ie: calling her with Brad's concern over DA delivery). She responded with that was feedback and not a coaching session.  I provide additional examples and even Stephanie shared an example (google), Reena stated once again these are feedback and not coaching sessions.
- She went on to say on the HRBP call, Susan was talking about PIPs and before anyone can be placed on one they needed to be coached and need to have documentation. Also, Lina was on that call and told Susan to stop talking about PIPs. Stephanie explained we are unaware of what she is talking about, though the PIP is not the last step but first step in addressing and correcting performance.

- Reena also stated she never received the timeline of events. I explained to Reena in our original meeting on 12/01/2015 she wanted examples and I went over each item on the timeline and shared some of the comments she made to them. I reminded her that she had stated she didn't want that (timeline) because Lina and I can easily make up things and put it on paper.

- I proceeded to go over PIP form explaining the columns and performance areas:

  **Attendance**, Reena stated everyone left early she isn't the only one who does it

  **HRBP duties**, Reena answered by saying she had been here 5 years she knows how do everything and does not need help. She wanted examples shared the DA timeframes and payroll incident, explained how I needed her to be proactive and resolve these issues as I couldn't guide her with every step, and had to have generalist come in to resolve as I had an urgent matter to attend to

  **Consulting**, she accepted the feedback with the D. Crouch investigation and agreed.  In regards to the further issues, she wanted names and examples of who made complaints. Advised we do not provide names, provided example how in certain emails she responded to AVPs with probably, and we need to be clear on responses and shared the concerns from the credit card group. Had discussion on her turnaround time of one DA, Reena stated she had it done within 48 hours. I asked if the task takes 5 minutes why not just deliver it to the business, instead of responding to their 3 emails where they are asking for it.  We also advised Reena we have more than one business unit sharing their concerns of how she has handles things and her timeliness. Reena went on to say, she shared an example of a complaint one manager made on another HRBP, what were we doing to them. Explained to her, being in HR she should know we do not discuss other employees matters. In regards to addressing the business for sharing their concerns, she denied it and then admitted to speaking to Jorge and Sam but she was just wanting to know if there was any issue

- We went over the action plan and its layout:

  **Time Management**, went over expectations she was upset of having to submit a time tracking study, stating she doesn't have time for that and why does she have to do it. Advised if she states she is busy, then we need to know where her time is being consumed by. Again, disagreed that she had already done it for Lina and myself and doesn't know why she has to do it again, and I didn't give her feedback on her last one.

  *After the meeting I went back to my meeting notes with Reena, on December 10, 2015 Reena shared with me what she had written down for her time study for the past couple days. I advised to keep with the 30 minutes increment and advised where she needed to have more detail.*

  We went over how she would no longer have 8585, so she could focus on her plan and the Lewisville site.  Reena became upset and offended, stating she has been here 5 years and knows how to do her job, and her lasting that long says something. We went over the rest of the plan, as I went over additional examples she would respond sarcastically.

Overall, throughout the discussion Reena was extremely defensive, anti-agonistic and at times borderline aggressive. Reena reminded us a few times that she is pregnant. She stated she was never coached,  and this was unfair. I advised of how disappointed we were because we listened to her original concerns didn't want to impact her monetarily, that was solved, but the performance still needed to be addressed and corrected.  I also mentioned the action plan provides a clear direction and we have enough lessened her load and provided additional resources to see her succeed in this plan. Stephanie and I stressed her success depends on her willingness to move forward.  Stephanie shared a personal example of a time she received feedback she didn't like, she had to accept it,  made changes, and moved on successfully. Reena was still upset and again said that this is unbelievable you are placing me in two PIPs and asked for the documents and would review and decide if she would sign.

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE   214.722.5667
MOBILE   214.215.5258
EMAIL   yadriano@santanderconsumerusa.com
WEB   www.santanderconsumerusa.com

**From:** "Reena Mathew" <rmathew@santanderconsumerusa.com>
**To:** "reenasara@hotmail.com" <reenasara@hotmail.com>
**Subject:** Fwd: Summary of our conversation from last Wednesday
**Date:** Wed, 27 Jan 2016 22:54:20 +0000
**Importance:** Normal

---

Sent from my iPhone

Begin forwarded message:

**From:** Stephen Shaffer <sshaffer@santanderconsumerusa.com>
**Date:** January 27, 2016 at 2:13:50 PM CST
**To:** Reena Mathew <rmathew@santanderconsumerusa.com>
**Cc:** Stephen Shaffer <sshaffer@santanderconsumerusa.com>
**Subject: RE: Summary of our conversation from last Wednesday**

Reena, Please see my responses and summary below in red.

## Stephen Shaffer

Santander Consumer USA Inc.
VP Human Resources Business Partnership

PHONE    214.722.4580
MOBILE   469.236.5931
EMAIL    sshaffer@santanderconsumerusa.com
WEB      www.santanderconsumerusa.com

---

**From:** Reena Mathew
**Sent:** Monday, January 25, 2016 1:52 PM
**To:** Stephen Shaffer
**Subject:** RE: Summary of our conversation from last Wednesday

Stephen,

I understand that it is up to me and that however I decide to work this (do nothing and obviously be fired) or take the steps notated on the PIP to be successful.
Good, we want this to be successful and are willing to assist where we can reasonably do so.

It is very hard to digest something that you totally and whole heartedly disagree with, but again as I stated, I will take the necessary steps that have been outlined.  The reason why I wanted to meet was to discuss the timeline and several of the inaccuracies that were found.  I do understand that you disagree with a lot of this, but in our meeting you indicated that parts were correct.  In addition you used the terminology that you felt half of the timeline was not correct or wrong.  My corresponding point was that it meant 50% of the document using your reasoning (not agreeing with you) was accurate.  I also indicated that what you  propose is inconceivable.  You are proposing that your new manager, your old manager, and your HR Director got together to "conspire" to put you in a bad place and justify the improvement plan.  When I asked why you felt this way, you indicated it was a distraction from other

turnover and issues that had occurred.  I can find no justification for this.  In my discussions with not only your management team, but others in the organization, the turnover from others did not exist as a high concern.  I cannot without some sort of evidence buy off on this.

**The concern(s) I brought forward were:**
--Not the outcome I expected
We clearly discussed this.  From my notes per our conversation on 12/9/15 when specifically asked what you desired out of this process the following were what you stated:
You wanted:
-No PIP – while you do have a performance improvement plan there are significant changes and it is not what you understood a PIP to be.  In this case, this PIP is not an end game as you have communicated they are in your opinion.  Instead this PIP is a start with an action plan for you to grow and improve your performance where you have not succeeded lately.   There are checkpoints every 30 days to evaluate progress, they also allow further disciplinary action, and this can be additional steps, i.e. you may end up with something like a documented warning if you do not demonstrate progress.  In addition, the previous plan has been eliminated and does not exist, other than the fact it was communicated and let you know that your managers did not feel you were meeting expectations.  ( for some a PIP can be the final document, it is not in this case unless as we have discussed, you do not put effort forward to attain results in the first 30 – 60 days).   You do not have a PIP as you defined it, and the first one while serving notice was never in effect.  You also discussed with me that you never knew the original document was suspended and moot, so you were surprised when a new one surfaced.  I found this response unacceptable,  as between our first meeting on 12/9/15 and last week I had sent you five (5) updates as to progress, and I was copied on one update from Stephanie to you.   At none of those times did you ask or bring up your concerns about believing the document to still be in effect.  Part of this responsibility lies with you.  I also believe we discussed that the document was suspended.  I clearly told you that if you got everything you wanted, that the one thing for sure that would change would be the timeline, as you were now clear that your management team had issues with you, and in what areas they had concerns.  In itself, it indicates that the original document was at a minimum suspended.

-Your bonus – You are getting your bonus.  To be clear, this is a factor of my feelings and your management team agreeing that much of the feedback on these issues and the possible consequences were late in the review process and you should not be financially penalized at that point.  You have done some good work, and you had at least one goal suspended.  However, you have areas to work on as identified in the action plan.

-Your merit and rating.  These too have been restored to "met" and a corresponding bonus was put forth.

-You noted that you felt a 30 day PIP was tough to accomplish anything against.   Your new document is a 90 day umbrella with check-ins and one on ones.  The management team agreed with you that a longer time frame was more appropriate.  Again this came partially from your input.

In my opinion, you ended up with the rating, merit, and bonus, and in addition the first document was rescinded as a PIP (it did give you notice of the issues) however, you do have a performance document with action plan to address and work against.

--30 day PIP vs now a 90 day PIP
-You noted that you felt a 30 day PIP was tough to accomplish anything against.   Your new document is a 90 day umbrella with check-ins and one on ones.  The management team agreed with you that a longer time frame was more appropriate.  Again this came partially from your input.

--Accuracy of timeline—first bullet was false and I provided the summary/PPT; wanted to discuss more in depth.  The timeline was produced from your managers calendars and e-mails they had exchanged from you.  It is not meant to be all inclusive.  As noted in the meeting, we could go through every point, but in some cases the point was the need to request what had already been requested a second time, or the follow-through or quality of work.  In the case of the first point around your training class and the requested summary.   You originally asked if you could just submit the PPT.  Your manager asked for more and wanted a summary that  quote, "I would love to see the ppt as well, however what I'm looking for is a summary from you, particularly what you got out of the seminar.".  The summary

you provided did not reflect what "you" got out of the seminar.  In other words there was no analysis or was this good for you to attend because or bad because, you would recommend, not recommend, etc.  Instead it appeared to your manager that you just copied a summary that was already provided about the seminar and sent that in.  In my view, your manager should have immediately held you accountable for not providing a more detailed analysis that would be expected from a person of your background and experience.  I will note you are correct in that the timeline should not indicate that you did not complete the assignment, but that it did not meet the expectations of the original request, and that the quality of the work expected was sub-par.  In addition, we could assume that we can find some points that were resolved or are not stated 100% accurately, the fact remains there are points that are accurate.  The issue is for you to look at the feedback in a holistic manner and determine how to best address these issues in partnership with your manager.  The feedback and addendum are meant to demonstrate that concerns were expressed and that you were in discussion.  This may not fall into your definition of coaching which is very specific, but it is feedback and discussion about what has not gone well and what could be better.

--Not how we have handled PIP's in the past; mentioned HRBP call and how what they said fell in line with my understanding of  a PIP
I understand what you are saying about the past.  However, as I have noted several times, we are not handling your PIP as a last resort.  In this case you can call it a Performance Improvement Document, a Performance management document, or whatever, the key point to absorb is this is a documented step after feedback to put an action plan in place for you and your manager to work on to improve the areas you are found deficient in.  This is what was communicated in our meeting and it stands.
--Feedback from me as an HR associate so this wouldn't happen to anyone else
Yes, you did ask for this.  I do think we should always continually strive to improve communication and feedback.

**Your Expectations:**
--I should've asked about the 30 PIP Addressed above.  If you have questions ask.  You have 5 years' experience at SC , excellent school background and you have coached people.  You know how to clarify issues and should have asked and not just assumed, especially with so much follow-up communication.
--90 day PIP will stay in place and it is up to me on the direction it will go; I can take the feedback and make changes or do nothing and the outcome obviously won't be good; will have coachings with manager to ensure goals are being met; if goals on PIP are met, you would even attach a note stating that everything was met and I would successfully complete the PIP.  A couple of things.  Yes, if you succeed against the performance document, your manager can put a note with it indicating that you successfully improved your performance, however as we discussed, do not forget that it will also say that you will be expected to maintain that level of performance or better, and not have issues in the areas identified again.  Should these issues arise again, you will not be managed/coached through them again.  It will result in disciplinary action, up to and including termination.   In addition, I mentioned that the document need not remain in your file forever, but within company guidelines and legal guidelines we would have to determine an acceptable timeframe to remove the document.  As I also noted, nobody that doesn't know already would have access to the file in HR, unless you chose to transfer or if a new manager came in.  I understand that you will know about it.
--Disregard what was said on the call as you are the VP and you would be speaking to mgmt. about topics discussed going forward (ensure they are approved) Not quite how I said it, but the point is there.  Essentially you indicated that Susan's view was the correct view and what you agreed with on PIP's, and as I tried a few times to point out, Susan confused many people on that call.  I did ask you who was higher on the organization chart and who got to make the call about your PIP (and others), and you indicated it was me.  I agree with this.  Understand things change, and the action plan is a key thing.
--This is not something that means I will be termed but it's up to me on which direction it will go. We disagreed on me being hung up on the fact that it was a PIP, but to me it was the way it was handled; you stated that a lot of companies will purge this type of information after several years. Already discussed above.

To be really honest Stephen, my management (excluding you as I thanked you for getting things changed ie bonus, merit, looking into this etc) has made it very hard to put things in writing or even say things as it has been used against me or things have been made up after viewing the PIP/timeline as I notated. I am hoping that we can move forward from this in a positive direction.  I hope so as well.  I don't want to spend my time ensuring communication is clear in writing.  I would like to move forward, and I want you to be a part of the team.

I did close the meeting encouraging you to spend time with Yessica.  You asked me if all this was on her, i.e. she drove it.  I explained that certainly she agreed with the feedback but it was a collaboration from Angelina, Stephanie and Yessica.  You felt that this was not feedback Angelina had been clear about and that much fell to Yessica.  Yessica is on point as your manager going forward.  I also encouraged you to seek an hour with Angelina and spend time with her discussing feedback she believes she provided you and what you felt you heard.  In addition, I thought you should grab Stephanie for an hour or so and have a clear discussion with her.

Let me know if you need anything additional.

Reena,  I really want this to work.  We also briefly discussed the movement of 8585 support to someone else.  You had mentioned the number of people you supported (though I did not feel you included Yessica or Sabrina in that count) , so based on your concerns expressed, the managers decided to reallocate some work.   This will allow you to focus on your work in LEW.

I have been direct in my opinion in this document.  I do not do that to be hurtful, but hopefully clear about how you need to approach this and what you need to do (in summary of our conversation already).  As you have noted, you have been here in this role for at least 5 years at SC and you know your job.   Therefore, I would read this as not a matter of skill (though again, if you need help ask or if you need some particular development we can provide, let us know), but a matter of will.  Do you want to do it as required and as it is going to grow and become different from the past.  I want you along for that ride if you want to demonstrate you want it too.

Thank you.

Steve

Thanks,
Reena

---

**From:** Stephen Shaffer
**Sent:** Monday, January 25, 2016 12:35 PM
**To:** Reena Mathew
**Cc:** Stephen Shaffer
**Subject:** RE: Summary of our conversation from last Wednesday

Reena,

This is not a summary of our discussion as was requested.

Yes, one small part of it was your disagreement with the information.  I don't think the hour conversation is a great deal to digest.

If this is your summary that you are submitting, then I would say this is not what was requested or expected.  If you wish to leave it at this, I will follow it up with a mail with my input.  However, due to the fact you have not submitted the requested summary in a timely manner, I will extend my 48 hours to get back to you by the corresponding amount of time.  Right now that would be an additional 4 hours.  If you chose to take more time then it will be additional time for response.

My feedback on this assignment is that it represents the coaching/feedback you have been receiving.   This is incomplete, it is not what was requested; if you had questions over what was needed, you did not ask any, and it was

late.  This demonstrates what has appeared to your managers as the inability to complete tasks on time with quality, and in my opinion it shows a serious lapse in judgment.

As I did explain in our meeting on Wednesday, January 20, 2016, the objective of the Performance Improvement document is to outline the areas you need to work on, to provide you guidance and areas to work with your management on, and to demonstrate immediate and sustained improvement.  You will have every other week one on ones with your manager, and you will have 30 day check-ins regarding your progress against the plan.  As noted, if you choose to "tank" (i.e. not make progress) against the plan, you would be subject to further disciplinary action up to and including termination at the checkpoint.  Our goal however, is to harness your SC experience, get on the right track, and have the 30 day check-ins be positive steps towards completion against the performance plan.  You have communicated below that you intend to work towards the goals set-up.   To be clear this means you need to demonstrate progress and results against the goals.   The response below is not a good example of progress.

Reena, I cannot state any more firmly that your success against these areas is desired and sincerely hoped for, but you need to demonstrate the effort and produce the results.  You are accountable for this.  If you need assistance with time management, or there is something you truly do not understand (not agree with, but understand) then please feel free to ask.  We have a lot of work to do in the coming year, and we need to continue to push into the HR Business Partnership space.  To do this, we need to have our foundational work done well and on-time.  It is something I know you have the ability to do, but you need to demonstrate this.

Please feel free to ask me or Yessica any additional questions or clarifications.
Also, please let me know if the response below is the one that you intend to be final.

Thank you.

## Stephen Shaffer
Santander Consumer USA Inc.
VP Human Resources Business Partnership

| | |
|---|---|
| PHONE | 214.722.4580 |
| MOBILE | 469.236.5931 |
| EMAIL | sshaffer@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |

---

**From:** Reena Mathew
**Sent:** Monday, January 25, 2016 11:51 AM
**To:** Stephen Shaffer
**Subject:** RE: Summary of our conversation from last Wednesday

Good Morning Stephen,

I understand, however, I am still reviewing all the information given to me as it is a lot to digest.

As you know per our conversation, I do not agree with the majority of the items listed on the timeline as the timeline was provided after the initial meeting with my manager Yessica Adriano on 12/1/15 and the first bullet is inaccurate.

At this time, I have received the goals/information given to me as of 1/15/16, however, I do not agree that this is an accurate representation of me or my work ethic.

I will, however, work towards the goals that have now been set by management in order to retain my position here at Santander Consumer.

Please let me know if you need anything additional.

Thanks,
Reena

**From:** Stephen Shaffer
**Sent:** Monday, January 25, 2016 11:19 AM
**To:** Reena Mathew
**Cc:** Stephen Shaffer
**Subject:** RE: Summary of our conversation from last Wednesday

One point I feel I need to be clear on.  Getting the required summary to me by noon does not excuse missing the 8am deadline today.
You had two full days on Thursday and Friday, part of Wednesday when we talked, and Saturday and Sunday.  I even moved the original proposed deadline from 5pm on Friday to 8am Monday as I indicated I would not likely get to it over the weekend, so you could use that time if it worked better for you.

The due time is noon today.

Thank you

**Stephen Shaffer**
Santander Consumer USA Inc.
VP Human Resources Business Partnership

PHONE      214.722.4580
MOBILE     469.236.5931
EMAIL      sshaffer@santanderconsumerusa.com
WEB        www.santanderconsumerusa.com

**From:** Stephen Shaffer
**Sent:** Monday, January 25, 2016 10:58 AM
**To:** Reena Mathew
**Cc:** Stephen Shaffer
**Subject:** Summary of our conversation from last Wednesday

Reena,

Last Wednesday we met to discuss your Performance Improvement Plan and the resolution.
You had specific areas you wanted to discuss.
One item I was clear on and you responded to is that you would have until 8am this morning to send me a summary of that conversation from your perspective.  Key points you wanted to get across and key points you heard from me.
It is now 10:56am on Monday, January 25, 2016.
I have not received a communication in e-mail from you summarizing the conversation.
This is not acceptable.
I expect to see this mail no later than noon today.

Thank you.

**Stephen Shaffer**
Santander Consumer USA Inc.
VP Human Resources Business Partnership

PHONE      214.722.4580

SC002931
**APP226**

MOBILE  469.236.5931
EMAIL   sshaffer@santanderconsumerusa.com
WEB     www.santanderconsumerusa.com

SC002932
**APP227**

**From:** "Stephen Shaffer" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=STEPHEN SHAFFERA87>
**To:** "Reena Mathew" <rmathew@santanderconsumerusa.com>
**Cc:** "Stephen Shaffer" <sshaffer@santanderconsumerusa.com>
**Subject:** RE: Summary of our conversation from last Wednesday
**Date:** Wed, 27 Jan 2016 20:13:50 +0000
**Importance:** Normal

---

Reena, Please see my responses and summary below in red.

## Stephen Shaffer

Santander Consumer USA Inc.
VP Human Resources Business Partnership

PHONE   214.722.4580
MOBILE   469.236.5931
EMAIL   sshaffer@santanderconsumerusa.com
WEB   www.santanderconsumerusa.com

---

**From:** Reena Mathew
**Sent:** Monday, January 25, 2016 1:52 PM
**To:** Stephen Shaffer
**Subject:** RE: Summary of our conversation from last Wednesday

Stephen,

I understand that it is up to me and that however I decide to work this (do nothing and obviously be fired) or take the
steps notated on the PIP to be successful.
Good, we want this to be successful and are willing to assist where we can reasonably do so.

It is very hard to digest something that you totally and whole heartedly disagree with, but again as I stated, I will take
the necessary steps that have been outlined.  The reason why I wanted to meet was to discuss the timeline and several
of the inaccuracies that were found.  I do understand that you disagree with a lot of this, but in our meeting you
indicated that parts were correct.  In addition you used the terminology that you felt half of the timeline was not
correct or wrong.  My corresponding point was that it meant 50% of the document using your reasoning (not agreeing
with you) was accurate.  I also indicated that what you  propose is inconceivable.  You are proposing that your new
manager, your old manager, and your HR Director got together to "conspire" to put you in a bad place and justify the
improvement plan.  When I asked why you felt this way, you indicated it was a distraction from other turnover and
issues that had occurred.   I can find no justification for this.  In my discussions with not only your management team,
but others in the organization, the turnover from others did not exist as a high concern.  I cannot without some sort of
evidence buy off on this.

**The concern(s) I brought forward were:**
--Not the outcome I expected
We clearly discussed this.  From my notes per our conversation on 12/9/15 when specifically asked what you desired
out of this process the following were what you stated:
You wanted:
-No PIP – while you do have a performance improvement plan there are significant changes and it is not what you
understood a PIP to be.  In this case, this PIP is not an end game as you have communicated they are in your opinion.

SC005140

APP228

Instead this PIP is a start with an action plan for you to grow and improve your performance where you have not succeeded lately.   There are checkpoints every 30 days to evaluate progress, they also allow further disciplinary action, and this can be additional steps, i.e. you may end up with something like a documented warning if you do not demonstrate progress.  In addition, the previous plan has been eliminated and does not exist, other than the fact it was communicated and let you know that your managers did not feel you were meeting expectations.  ( for some a PIP can be the final document, it is not in this case unless as we have discussed, you do not put effort forward to attain results in the first 30 – 60 days).   You do not have a PIP as you defined it, and the first one while serving notice was never in effect.   You also discussed with me that you never knew the original document was suspended and moot, so you were surprised when a new one surfaced.  I found this response unacceptable,  as between our first meeting on 12/9/15 and last week I had sent you five (5) updates as to progress, and I was copied on one update from Stephanie to you.   At none of those times did you ask or bring up your concerns around believing the document to still be in effect.  Part of this responsibility lies with you.  I also believe we discussed that the document was suspended.  I clearly told you that if you got everything you wanted, that the one thing for sure that would change would be the timeline, as you were now clear that your management team had issues with you, and in what areas they had concerns.  In itself, it indicates that the original document was at a minimum suspended.

-Your bonus – You are getting your bonus.  To be clear, this is a factor of my feelings and your management team agreeing that much of the feedback on these issues and the possible consequences were late in the review process and you should not be financially penalized at that point.  You have done some good work, and you had at least one goal suspended.  However, you have areas to work on as identified in the action plan.

-Your merit and rating.  These too have been restored to "met" and a corresponding bonus was put forth.

-You noted that you felt a 30 day PIP was tough to accomplish anything against.   Your new document is a 90 day umbrella with check-ins and one on ones.  The management team agreed with you that a longer time frame was more appropriate.  Again this came partially from your input.

In my opinion, you ended up with the rating, merit, and bonus, and in addition the first document was rescinded as a PIP (it did give you notice of the issues) however, you do have a performance document with action plan to address and work against.

--30 day PIP vs now a 90 day PIP
-You noted that you felt a 30 day PIP was tough to accomplish anything against.   Your new document is a 90 day umbrella with check-ins and one on ones.  The management team agreed with you that a longer time frame was more appropriate.  Again this came partially from your input.

--Accuracy of timeline—first bullet was false and I provided the summary/PPT; wanted to discuss more in depth.  The timeline was produced from your managers calendars and e-mails they had exchanged from you.  It is not meant to be all inclusive.  As noted in the meeting, we could go through every point, but in some cases the point was the need to request what had already been requested a second time, or the follow-through or quality of work.  In the case of the first point around your training class and the requested summary.   You originally asked if you could just submit the PPT.  Your manager asked for more and wanted a summary that  quote, "I would love to see the ppt as well, however what I'm looking for is a summary from you, particularly what you got out of the seminar.".  The summary you provided did not reflect what "you" got out of the seminar.  In other words there was no analysis or was this good for you to attend because or bad because, you would recommend, not recommend, etc.  Instead it appeared to your manager that you just copied a summary that was already provided about the seminar and sent that in.  In my view, your manager should have immediately held you accountable for not providing a more detailed analysis that would be expected from a person of your background and experience.  I will note you are correct in that the timeline should not indicate that you did not complete the assignment, but that it did not meet the expectations of the original request, and that the quality of the work expected was sub-par.  In addition, we could assume that we can find some points that were resolved or are not stated 100% accurately, the fact remains there are points that are accurate.  The issue is for you to look at the feedback in a holistic manner and determine how to best address these issues in partnership with your manager.  The feedback and addendum are meant to demonstrate that concerns were expressed and that you

were in discussion.  This may not fall into your definition of coaching which is very specific, but it is feedback and discussion about what has not gone well and what could be better.

--Not how we have handled PIP's in the past; mentioned HRBP call and how what they said fell in line with my understanding of  a PIP

I understand what you are saying about the past.  However, as I have noted several times, we are not handling your PIP as a last resort.  In this case you can call it a Performance Improvement Document, a Performance management document, or whatever, the key point to absorb is this is a documented step after feedback to put an action plan in place for you and your manager to work on to improve the areas you are found deficient in.  This is what was communicated in our meeting and it stands.

--Feedback from me as an HR associate so this wouldn't happen to anyone else

Yes, you did ask for this.  I do think we should always continually strive to improve communication and feedback.

**Your Expectations:**

--I should've asked about the 30 PIP Addressed above.  If you have questions ask.  You have 5 years' experience at SC , excellent school background and you have coached people.  You know how to clarify issues and should have asked and not just assumed, especially with so much follow-up communication.

--90 day PIP will stay in place and it is up to me on the direction it will go; I can take the feedback and make changes or do nothing and the outcome obviously won't be good; will have coachings with manager to ensure goals are being met; if goals on PIP are met, you would even attach a note stating that everything was met and I would successfully complete the PIP.  A couple of things.  Yes, if you succeed against the performance document, your manager can put a note with it indicating that you successfully improved your performance, however as we discussed, do not forget that it will also say that you will be expected to maintain that level of performance or better, and not have issues in the areas identified again.  Should these issues arise again, you will not be managed/coached through them again.  It will result in disciplinary action, up to and including termination.   In addition, I mentioned that the document need not remain in your file forever, but within company guidelines and legal guidelines we would have to determine an acceptable timeframe to remove the document.  As I also noted, nobody that doesn't know already would have access to the file in HR, unless you chose to transfer or if a new manager came in.  I understand that you will know about it.

--Disregard what was said on the call as you are the VP and you would be speaking to mgmt. about topics discussed going forward (ensure they are approved) Not quite how I said it, but the point is there.  Essentially you indicated that Susan's view was the correct view and what you agreed with on PIP's, and as I tried a few times to point out, Susan confused many people on that call.  I did ask you who was higher on the organization chart and who got to make the call about your PIP (and others), and you indicated it was me.  I agree with this.  Understand things change, and the action plan is a key thing.

--This is not something that means I will be termed but it's up to me on which direction it will go. We disagreed on me being hung up on the fact that it was a PIP, but to me it was the way it was handled; you stated that a lot of companies will purge this type of information after several years.  Already discussed above.

To be really honest Stephen, my management (excluding you as I thanked you for getting things changed ie bonus, merit, looking into this etc) has made it very hard to put things in writing or even say things as it has been used against me or things have been made up after viewing the PIP/timeline as I notated. I am hoping that we can move forward from this in a positive direction.  I hope so as well.  I don't want to spend my time ensuring communication is clear in writing.  I would like to move forward, and I want you to be a part of the team.

I did close the meeting encouraging you to spend time with Yessica.  You asked me if all this was on her, i.e. she drove it.  I explained that certainly she agreed with the feedback but it was a collaboration from Angelina, Stephanie and Yessica.  You felt that this was not feedback Angelina had been clear about and that much fell to Yessica.  Yessica is on point as your manager going forward.  I also encouraged you to seek an hour with Angelina and spend time with her discussing feedback she believes she provided you and what you felt you heard.  In addition, I thought you should grab Stephanie for an hour or so and have a clear discussion with her.

Let me know if you need anything additional.

Reena,  I really want this to work.  We also briefly discussed the movement of 8585 support to someone else.  You had mentioned the number of people you supported (though I did not feel you included Yessica or Sabrina in that count) , so based on your concerns expressed, the managers decided to reallocate some work.   This will allow you to focus on your work in LEW.

I have been direct in my opinion in this document.  I do not do that to be hurtful, but hopefully clear about how you need to approach this and what you need to do (in summary of our conversation already).  As you have noted, you have been here in this role for at least 5 years at SC and you know your job.   Therefore, I would read this as not a matter of skill (though again, if you need help ask or if you need some particular development we can provide, let us know), but a matter of will.  Do you want to do it as required and as it is going to grow and become different from the past.   I want you along for that ride if you want to demonstrate you want it too.

Thank you.


Steve


Thanks,
Reena




---

**From:** Stephen Shaffer
**Sent:** Monday, January 25, 2016 12:35 PM
**To:** Reena Mathew
**Cc:** Stephen Shaffer
**Subject:** RE: Summary of our conversation from last Wednesday

Reena,

This is not a summary of our discussion as was requested.

Yes, one small part of it was your disagreement with the information.  I don't think the hour conversation is a great deal to digest.

If this is your summary that you are submitting, then I would say this is not what was requested or expected.  If you wish to leave it at this, I will follow it up with a mail with my input.  However, due to the fact you have not submitted the requested summary in a timely manner, I will extend my 48 hours to get back to you by the corresponding amount of time.  Right now that would be an additional 4 hours.  If you chose to take more time then it will be additional time for response.

My feedback on this assignment is that it represents the coaching/feedback you have been receiving.   This is incomplete, it is not what was requested; if you had questions over what was needed, you did not ask any, and it was late.  This demonstrates what has appeared to your managers as the inability to complete tasks on time with quality, and in my opinion it shows a serious lapse in judgment.

As I did explain in our meeting on Wednesday, January 20, 2016, the objective of the Performance Improvement document is to outline the areas you need to work on, to provide you guidance and areas to work with your management on, and to demonstrate immediate and sustained improvement.  You will have every other week one on ones with your manager, and you will have 30 day check-ins regarding your progress against the plan.  As noted, if you choose to "tank" (i.e. not make progress) against the plan, you would be subject to further disciplinary action up to and including termination at the checkpoint.  Our goal however, is to harness your SC experience, get on the right track, and have the 30 day check-ins be positive steps towards completion against the performance plan.  You have

communicated below that you intend to work towards the goals set-up.   To be clear this means you need to demonstrate progress and results against the goals.   The response below is not a good example of progress.

Reena, I cannot state any more firmly that your success against these areas is desired and sincerely hoped for, but you need to demonstrate the effort and produce the results.  You are accountable for this.  If you need assistance with time management, or there is something you truly do not understand (not agree with, but understand) then please feel free to ask.  We have a lot of work to do in the coming year, and we need to continue to push into the HR Business Partnership space.  To do this, we need to have our foundational work done well and on-time.  It is something I know you have the ability to do, but you need to demonstrate this.

Please feel free to ask me or Yessica any additional questions or clarifications.
Also, please let me know if the response below is the one that you intend to be final.

Thank you.

**Stephen Shaffer**
Santander Consumer USA Inc.
VP Human Resources Business Partnership

PHONE      214.722.4580
MOBILE     469.236.5931
EMAIL       sshaffer@santanderconsumerusa.com
WEB         www.santanderconsumerusa.com

---

**From:** Reena Mathew
**Sent:** Monday, January 25, 2016 11:51 AM
**To:** Stephen Shaffer
**Subject:** RE: Summary of our conversation from last Wednesday

Good Morning Stephen,

I understand, however, I am still reviewing all the information given to me as it is a lot to digest.

As you know per our conversation, I do not agree with the majority of the items listed on the timeline as the timeline was provided after the initial meeting with my manager Yessica Adriano on 12/1/15 and the first bullet is inaccurate.

At this time, I have received the goals/information given to me as of 1/15/16, however, I do not agree that this is an accurate representation of me or my work ethic.

I will, however, work towards the goals that have now been set by management in order to retain my position here at Santander Consumer.

Please let me know if you need anything additional.

Thanks,
Reena

---

**From:** Stephen Shaffer
**Sent:** Monday, January 25, 2016 11:19 AM
**To:** Reena Mathew
**Cc:** Stephen Shaffer
**Subject:** RE: Summary of our conversation from last Wednesday

One point I feel I need to be clear on.  Getting the required summary to me by noon does not excuse missing the 8am deadline today.
You had two full days on Thursday and Friday, part of Wednesday when we talked, and Saturday and Sunday.  I even moved the original proposed deadline from 5pm on Friday to 8am Monday as I indicated I would not likely get to it over the weekend, so you could use that time if it worked better for you.

The due time is noon today.

Thank you

**Stephen Shaffer**
Santander Consumer USA Inc.
VP Human Resources Business Partnership

PHONE    214.722.4580
MOBILE   469.236.5931
EMAIL    sshaffer@santanderconsumerusa.com
WEB      www.santanderconsumerusa.com

---

**From:** Stephen Shaffer
**Sent:** Monday, January 25, 2016 10:58 AM
**To:** Reena Mathew
**Cc:** Stephen Shaffer
**Subject:** Summary of our conversation from last Wednesday

Reena,

Last Wednesday we met to discuss your Performance Improvement Plan and the resolution.
You had specific areas you wanted to discuss.
One item I was clear on and you responded to is that you would have until 8am this morning to send me a summary of that conversation from your perspective.  Key points you wanted to get across and key points you heard from me.
It is now 10:56am on Monday, January 25, 2016.
I have not received a communication in e-mail from you summarizing the conversation.
This is not acceptable.
I expect to see this mail no later than noon today.

Thank you.

**Stephen Shaffer**
Santander Consumer USA Inc.
VP Human Resources Business Partnership

PHONE    214.722.4580
MOBILE   469.236.5931
EMAIL    sshaffer@santanderconsumerusa.com
WEB      www.santanderconsumerusa.com

## FINAL REPORT FOR HR – REENA MATHEW

Reena Mathew – Human Resources Business Partner.  Associate Number 013696

Current Manager: Yessica Adriano.  Previous Manager: Angelina Hullum

HRD: Stephanie Elad

Timeline of Events in regard to my investigation:

12/8/15 – Mail sent from me to Reena Mathew indicating I was meeting with members of my extended team, and I would like time with her.   Reena responds positively but asks if I am aware she has issues with her review.  I reply that I am unaware of these issues.  She indicates that she has escalated to Pam Blackburn and Michelle Whatley, but has not heard back as of yet.  Inform her I will be glad to talk to her, and that my intent would be to talk to Pam at my one on one that coming Friday if she would be ok with that.  She indicated that she was fine with it.

12/9/15 – Brief conversation with Stephanie Elad.  Informed Stephanie by phone that I would be meeting Reena.  Explained Reena had escalated to me and that I needed to hear what she had to say.  Stephanie indicated that both Angelina and Yessica had informed her that they had coached Reena.  As to documentation, some rough timelines and notes did exist.  She had a conversation with Reena as well.  Stephanie's feeling was that Reena had definitely been giving feedback and coaching, that Reena was in denial, and that we were in-line with work we had done with clients in the past.

12/9/15 – Steve and Reena set up time for Steve to call Reena at 6pm that evening.  I would call her at 214-364-9136.

Summary of notes and conversation with Reena on 12/9/15.  Notes attached.

Reena reported to Angelina most of the year.  She then reported to Yessica as of October 2015.
Reena felt blindsided by her review.  Her mid-year review was fine.
She indicated that everything changed once management knew she was pregnant.
She received no coaching during the year and she requested documentation and received none.
She never had a conversation with Stephanie until after the Performance Improvement Plan (PIP) was issued.
Believes that when we use a PIP it is a last resort.  She should have been given in her opinion a time to correct her behaviors and address issues, but this did not occur.
When asked what she wanted out of the investigation she wanted the following:-No PIP; Her Bonus; and Merit.
Reena was informed that even if changes took place, that she still have a Performance Issue with her managers to work on, and that the timeline would only be delayed.
Reena emphasized her being pregnant and her desire to be treated fairly.
I communicated no promises other than I would look into it, and get back to her.

12/10/15 – Stephanie sends Angelina Timeline (attached)

1

In reviewing this timeline and what back-up e-mails Angelina provided, it is evident that some discussion went on between Angelina and Reena, however what is not clear is the results of these discussions. In other words, from the dates and aligning e-mails I have no doubt that requests were made, and some level of discussion was held. While an associate of Reena's seniority can be expected to be self-aware enough to know that issues around performance are being raised, the management team could have been clearer in their expectations and potential consequences due to performance issues. In addition, there were times the management team should have followed up or pushed harder on issues.

12/10/15 – Stephanie provides her notes on her discussion with Reena. (Attached)
This conversation took place after the PIP was communicated. Stephanie explained that both Angelina and Yessica had expressed communication on issues regarding attendance and follow-up on items with the business. Reena did express her view that her pregnancy and her being a minority (the first time this has come up in documentation or discussions to my knowledge). Reena stated repeatedly that we were not following our process of coaching to address problems first. Stephanie insisted coaching was provided. Stephanie indicated she too had observed performance gaps. Reena did indicate she had a better feel of the feedback from Stephanie. Stephanie mentions two areas where she provided feedback to Reena, and while valid they are recent and no clear consequences or steps are conveyed.

12/11/15 – Reena sends mail to Pam letting her know that she is pregnant and that she is worried this is playing into decisions made. Also lets Pam know she has reached out to me, and that she has received "you earned it" points for service to clients.

12/14/15 – Reena meets Steve at Lewisville. –Original and main purpose of the meeting is to just have Steve and Reena get to know one another – the original reason for contact. However, a quick discussion on the issues raised happens.
Reena provides a copy of her mid-year review for 2015. Discussion around goals in the Mid-Year.
Did Reena meet new managers – yes she has one more manager to go. Keegan.
Anti-bullying task force – Angelina was on point. Angelina set goal aside.
Create "Get in the Know" – what was discussed at offsite meeting
HR Advocacy – constant interaction – trained new HRBP's and Generalist. Dean, Glena, and Misty.
We discussed her PIP. Provided two complimentary e-mails. She insisted that she has received no feedback on her goals. I told her I would call her by Monday, December 21, 2015. (I did e-mail her the morning of with a status)

12/14/15 – Steve interviews Yessica Adriano.
Yessica had Reena for three (3) months. They had a one on one most every week. In their first meeting, Yessica communicated to Reena that she was concerned about one real project goal being on there. She felt it left Reena exposed if the project tanked or failed.     On 9-28-15, Yessica emphasized the need to maintain a high level of efficiency. Workload was going to continue to grow. She told Reena she needed to help with the "box"; that they all did. Reena feels they are too busy, and she cannot get to the box. Yessica opinion in coming from NRH is that three (3) including her should be able to handle LEW. Yessica ran numbers the support per associate has LEW with slightly more than NRH. However, some work is also going to leave LEW, so the numbers become even closer, not justifying another headcount. There are issues with last minute notifications of doctor's appointments, times where she

2

leaves early and then says she will work from her phone or home.  She has told Reena what she has as far as expectations, but when expectations are not met, Reena has not been told the seriousness and that her job may be at risk.  Copy of the PIP provided.  Yessica also provides some documentation.

1) On 9.28.15 – Yessica reviews Reena's goals with her
2) On 10/12/15 – Disciplinary Actions (DA's) are discussed, but the nature and clarity of the discussion is not clear.
3) On 12/1/15 – The PIP is presented – Yessica's notes indicate it is not well received.
    a. Pregnancy, stress on pregnancy, workload are mentioned by Reena
    b. Workload is brought up by Reena as issue.  Cannot work after hours with children
    c. The PIP is crazy and B.S.
    d. Judgment is discussed.  Reena disagrees with issue.
4) On 12/9/15 – A follow-up meeting is held.
    a. Reena requests the documentation that exists
    b. Main issues discussed are workload, quality of work, and judgment according to the notes
    c. Leaving early was discussed.  Reena indicates others do it as well, and this may be true at times, but as noted by managers, work needs to be completed and client needs addressed.


12/14/15 – Review of the Mid-Year Review document. – Dated 7/8/15
Manager overall evaluation is vague and not specific.
Overall evaluation encourages Reena to push herself to be better.  Look for ways to make LEW more efficient, train new managers, and look for trends in the GITK. (Get in the Know)

Goal – Actively drive, support, and enforce risk management standards.
Manager Evaluation – Reena stays on top of all compliance issues and is timely when returning any risk event information back to Compliance.

Goal – Create and share reporting to educate business partners on HR trends
Create Get in the Know spreadsheet
Manager Evaluation – Would like to see Reena pull information in order to become more strategic with her business partners and identify trends.  With her tenure and knowledge, she can provide valueable (sic) recommendations to the business leaders.

Goal – Develop processes to develop the skills of our leaders.
Meet with new managers …and sit in on side by sides, attend jumpstarts during their first 3-6 months…
Manager Evaluation – Would like to see more progress in this area. We have many new managers that need training and guideance (sic) Reena needs to spend more time on the floor with all managers.
Reena response: Early Stage here in Lewisville just hired four managers and will start initiating side by sides, attending their jumpstarts and even provide quick training if needed in Kronos, WD, etc.

Goal – Create investigation matrix that will be used internally via HR…
Manager Evaluation: This goal is almost complete.  Looking forward to the final product.

3

Goal: Formulate rollout of anti-bullying campaign…
Manager Evaluation – We have made progress, but have a lot more work to do in this area, would like to see more ideas and progress in this area now that we have more HR support.
Reena – produces e-mail from Angelina dated November 10 indicating goal was shut down for the year. When I met with Angelina she confirms.

Section summary – Manager Evaluation.
Reena does a great job with her day to day duties. I would like to see her spend more time training our managers and working on her projects.

Competencies:  All Manager Comments:  Collaboration – Reena does a good job collaborating with members of our team.  I would like to see her branch out to other members of HR advocacy.
Interpersonal Savvy. – Reena does an excellent job of building rapport with all levels of employees.  She is trusted and always professional.   Section Summary – Reena maintains consistancy (sic) when applying policy/procedure. She completes here compliance training as scheduled. She works with Compliance to minimize risk when necessary.

Development: Manager Evaluation – Reena can continue her growth this year by focusing on helping new managers develop and by working on completing her goals and projects.  I encourage her to step out of her comfort zone and find ways to take herself to the next level.

Complimentary E-mails:
April 3, 2015 regards Reena's recognition of an employee in distress and connecting him with EAP, potentially preventing a suicide.  Angelina and Stephanie compliment her on her efforts.

October 19, 2015 regards a complimentary mail from Yessica recognizing an attendance proposal developed by Reena.

Timeline of Events – identifies several times that conversations were held or issues identified.  Unclear if definitive feedback was provided to Reena of where she had to improve and the consequences if she failed.

12.17.15 – Steve interviews Angelina Hullum.
Angelina had Reena for 8 months of the year.  When Paula was here, Reena expressed concern about being overwhelmed and stressed.  She at one time wanted part time, but was told that there were no p.t. positions in HR.  Originally a compromise took place that let her arrive in the office 30 minutes later and supposedly stay later.  However this never seemed to work and took place over a year ago.
January 14 – Reena missed an e-mail and did not terminate someone until January 22.  She was talked about the mistake, so it was noted, but no pattern existed, and I did not interpret it as a serious outcome, but something to improve per the back-up e-mail.

Other instances occurred and the problems were in some cases brought to Reena's attention, and most of the e-mails asked why something was not done or requested that a person receive it. Some items like

4

a vacation approval and our lack of follow-up on her report from a Dallas HR luncheon reflected our inability to hold her accountable.

PIP Process – I questioned three different HRM level folks.  To me the PIP process, i.e. when it becomes effective, what feedback transpires before it, and how long it goes into effect for is unclear.  My conclusion from my conversations is that a PIP document was a "last straw" reaction, and the timeframe of 30 days is likely too short of a time to determine if a turnaround is effective, and it needs to be restated that this is exactly what it says it is, a performance improvement plan.  It is not a last straw.

Summary:
The Operations HR team has not done a totally effective job in managing Reena Mathew, especially in holding her accountable for her mistakes and poor performance at times.  Too often the team was being nice in allowing schedule flexibility which is a good thing if the work is getting done, but all too often DA's were not processed and while it was mentioned, there were no consequences or changes, as a matter of fact there is no evidence of even a mention of consequences.  Reena was continually allowed to leave early for last minute Doctor's appointments (ones that would have been known about well in advance) penalizing other team members with work.  She continually is worried about the workload compared to others, and leaves it to other team members to manage team collaborative roles like managing the box, yet Reena is told at mid-year she is a collaborative team member.  Management is watching Reena's time instead of her goals and her completed workload.  For instance, while helping the team with issues in "the box" is brought up, at some point this should have been documented in writing as part of expectations.  More SMART (Specific, Measureable, Achievable, Results-oriented, and time bound) objectives are needed.  As to Reena's workload, Yessica has listened and run numbers which indicate right now LEW has the resources needed to do the job, especially with upcoming reductions.  Reena has indicated that she has children and cannot work after hours.  This is not the issue to debate.  The role should have clear responsibilities and goals laid out.  Reena is responsible for getting that work completed and with quality.  How much time she spends completing her work is up to her time management and time allocation, though she is expected to finish the work in allotted and fair time frames.  She is an exempt level professional and needs to complete her work, and management's mission is to provide the coaching and tools for her to succeed.

Recommendations:
At the heart of the matter is the intention of a Performance Improvement Plan (PIP).  In discussions others on the team, the intention is not as Reena interprets and we need to make this clear.  Reena's performance has been lacking and our step at this time will be a PIP with an included action plan for Reena to improve.  If she fails to show improvement through the action plan and regular meetings, then her management will move to provide her a documented verbal warning indicating where she is falling short, where she can improve, and the time frame to improve.  Part of the action plan will also take into account potential areas where we can assist her in improving, but she must provide input to this process.  The performance improvement should run 90 days and have weekly check-ins with monthly reviews.

5

Recommendations Continued:

Overall, there were good intentions by the management team, and assumptions that Reena would totally understand and buy off that her performance was not up to par considering the different times she was asked or a poor action was pointed out.  Documentation of the intended coaching should have started sooner. The performance issues need to be corrected through the PIP/Action Plan process.
In addition to structured coaching, feedback, and action planning through the PIP process, it should be recognized that this process will not affect the upcoming bonus and or merit.  Reena will receive a "Meets" rating and the appropriate compensation that accompanies this rating.  This does not mean that Reena was without performance gaps, rather we are now addressing her performance issues in a plan now and it is too late to affect her rating and compensation.   However, this feedback and her performance against her action plan will be taken into account for the mid-year and annual review of 2016.

6

SC000026
APP239

12.8.15 - Reena informs Steve concerns w
review - informed she escalated to PB
and MW
        - concerned w timely of review

12.9.15 - time set to talk by phone at 6pm
        Steve to call Reena @ 214-364-9136

12.10.15 -     Stephanie sends Angelina timeline
            - Stephanie sends her summary.

12.11.15 - Reena let Pam know she talked
        to me

12.13.15 - Steve's notes to Pam Fij

12.14.15 - met w Reena

12.14.15 - meet w Jessica

12.17.15 - Angelina met.
        013696
        Jessica Abrino
        Angelina Hullum        32 miles.

SC000027

Jessica

9/28/15 - discussed the bop
10/12/15 - discussed Dr's not
clear of nature.


12/1/15 -

    pyymnt - bonus
    euyy - B.S.
    never been late on a Dr
    attendance - d surgeres.
    work hours.

12/9/15

    - request documentation
    - main issues. workload, quality, pregnant
    - leaving conf discussed.

SC000028

Reena Mathew
214-364-9136

12 9. 15
6:06pm

Angelina - old manager. - majority of 2015. Yessica - Oct
Review - how presented. Feels blindsided. Turnover is high.
2015-goals - Stephanie. - documented review - mid review - fine
Never received negative coaching /feedback. Mid year was good.
End of year - (Pregnant) review - just told her pregnant.
No coaching. /no follow-up mail / no feedback
rated self - meets/exceeds - Placed on PIP. Never in career

No documentation coaching

Attendance /completing projects /asking for help Investigation came up
French documentation - no addendum on PIP. No info to this day
Cw accept answers to work - give chance to fix. Does not have
clement information. Done favorably.

Will they agree about coaching? - doesn't know what they will
say? Ustain to associate - french.
Conversation w Stephane - After PIP had conversation.
Don't agree with the points. Never had a serious sit down
They said they did. - Provide her documentation.

Concerns+ Are they valid? - means of opportunity - PIP-severe
last resort. Not saying she does not agree - saying does
not believe at PIP yet.
Chance to correct behaviors - issues brought during review.
valid insense that it is a mean of opportunity. - lot time

heavy.

Associate - don't you have more knowledge - guidelines
(Sabrina) Not an issue since. Schedule.
Don't flwk work load is bad they don't - she told to ask for
help.
Came out - treated like everyone else. Ducks in row for PIP.

Cd tell how it
will affect her
never stated.

Looking for: - No promise                    12.9.15
No PIP.
Bonus - would trail off          - No knowledge of affect.
Merit.
- Does not want any of this.
Does not chg view of performance - only timeline clgs
PIP- 30 dy is rough - look at file.
NOTHING Promised.  - what is process for a PIP?
NO DATA. - someone's livelihood.  No documentation

Lina -    Said complaints ADP's.  Gave points after things done. - Points
told           DA's.
Jessica
told       Rewards - you earned it - set points - get points all time
Reena     why recognition.
          Talk to Business Partners.
Even with the dates - Look at Knowas.
Trent finally
NOTHING TO SUBSTANTIATE.

NEXT STEPS. - STEPHANIE, Angelina, Jessica. file - look at.
        Look at You Earned It.
     Process for PIP - what people.
   Looking for something - how does this prove associate.
Disappointment - Move forward. - Pregnant - stress
   Feel free to knll on email - understnd. If I
   need coaching conch etc -

**From:** "Reena Mathew" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=REENA MATHEW0CB>
**To:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>
**Subject:** Summary of Meeting
**Date:** Mon, 01 Feb 2016 18:23:51 +0000
**Importance:** Normal

---

Hi Yessica,

Per our conversation on Friday, 1/29/16, here is what we discussed:

**Attendance**—I've been giving 48 hour notice as well as placing time off in calendar; no issues-continue to do so.

**Time Management**—Work study every 30 minutes due every Friday. We will meet every other Friday (pay day Fridays) to discuss/debrief progress etc. Asked if I would like to attend any type of classes to assist; said if I came across anything would let Manager know.

**Consulting**—No issues at this time; would like for me to take over the investigation for Ireshia Brown—in charge of summaries, aftermath; you would like me to respond timely to all issues/requests etc and let you know if I have any questions. Start fresh with January.

Just as a side note, we also discussed my perspective on things and how PIP had been handled in my case.

Let me know if you need anything else.

Thanks,
Reena

**Reena Mathew, PHR**
Santander Consumer USA Inc.
HR Business Partner

PHONE        214.292.2772
MOBILE       214.364.9136
FAX          214.630.0828
EMAIL        rmathew@santanderconsumerusa.com
WEB          www.santanderconsumerusa.com
BENEFITS HOTLINE   214.540.2010

**Addendum**
**Timeline of Events**

**February 11, 2015**
- Was asked to provide a summary of information from an HR luncheon attended, summary never received—I did provide a summary, just need access to my Sent folder. If this was an issue, how come I was never asked about it till a year later?

**April 9, 2015**
- March Recap: Reflected 2 side by sides and 4 jumpstarts for the month, number of meeting with business leaders was not quantified. ?? What does this mean? Was never told anything when this was submitted.

**May 18, 2015**
- April Recap: Jumpstarts were not attended for the month, trainings not conducted, and number of meetings with business leaders was not quantified ?? Same as above.

**July 1, 2015**
- Requests to leave half day to attend doctor's appointment, same day notification ?? What is the point of listing these? Everyone in the office at some point left early due to unforeseeable events; this was for child that was sick and Dr could see them that day.

**July 2, 2015**
- Asked by HR Manager (HRM) to correct onboarding discrepancies in WD, asked if this could be assigned to another dept. Had an extremely heavy load as well as Sabrina did—this was an admin tasks. Why would this be an issue if we needed a little extra help? I barely ask for help when I was undertaking an extremely heavy load…. I had the heaviest one out of all the HRBP's so why am I being penalized for asking for help on something the HRG's should be doing either way?

**July 10, 2015**
- Asked by HRM to support the Credit Card Department at 8585 due to the shortage of staff and unbalanced workload, asked for assistance felt overwhelmed with current duties False statement—I did it and I did it without any issues at either site. At times, I did state I was extremely busy but who wouldn't be with that kind of workload? Not unbalanced……I took over what an NRH BP had been doing previously. Was doing it effectively and even when we were site specific, I still was over the department without any complaints.

**August 13, 2015**
- July Recap: One side by side held, attended 3 jumpstarts, stated 10+ meetings attended with the business, and recap of training held with one manager—What does this mean??

**August 23, 2015**
- Texts manager to advise of late arrival for the next day, HRM had to rearrange her schedule to provide site coverage—Texted this day before as it was my daughter's first day of Kindergarten—HRM said, 'Sure, no problem' (I have text message). If it was an issue, I should've been coached or told no.

**July-August 2015**
- Stated the work load was heavy, asked by HRM to provide a time study to pinpoint where her time was being allocated to. Due to the lack of specifics, was asked twice to complete assignment—Did not know

what this was for; HRM gave me no direction, just asked me to list what I did on a daily basis and then gave me specifics (every 15 minutes) the next time and never followed up on the time study.
- Continually reminded to work full shifts and provide sufficient notice when requesting to leave early ?? When??
- Strongly advised of the importance in submitting DA's to the business in a timely manner, and addressed on not leaving all DA entries solely to the generalist, everyone needed to assist with the workload ?? Untrue, when???? Never had this type of conversation.
- Manager constantly stepped in to finalize pending DA's and process terminations—Took pre-approved time off and rarely called in--when did you step in????

### September 1, 2015- Transitioned to New HRM

**September 3, 2015**
- Requested to leave half day on Friday, September 4 due to traveling, advised she could leave early but needed to provide a greater notification, and needed do her best to work most of her shift. Completed all my work before I left and only left closer to 3:45/4p. What did you have to cover?

**September 4, 2015**
- Came in at 9 am and left at 2 pm.

**September 17, 2015**
- Same day notification to leave early, had flight the next day ??? Did not travel this day so don't know what you are referring to.

**September 28, 2015**
- Discussed work load with HRM, Reena feels overwhelmed and there isn't enough time- had long conversation on how the HRBP level requires a "high level of efficiency" Never did we have a 'long conversation' if we did, where is the documentation on this because I would like to see this. At times I did feel overwhelmed, but how is that an issue for a PIP? Should've provided me with help.

**October 12, 2015**
- Discussed workload with HRM, and asked what was consuming her time, she did not quantify, asked for assistance with investigation checklist This is a completely false statement; I informed HRM that the checklist was taking longer than anticipated (almost 10 months due to initial team being let go (3 HRBP's) and Tina was asked to step in for Back Office feedback and HRM stated there still needed to be one change made per HRD. HRM had just consulted with other HRM's about final input and said HRD wanted one last change and HRM stated she would make the last change and submit it since that was the only thing pending. Tina and I had worked on the whole thing by ourselves until it came time to get HRM input. HRM *volunteered* to take it from there and make change and submit so it wouldn't go back and forth one more time and we could finally get it done.

**October 29, 2015**
- Brad, site Director, notifies HRM that they have 10 DA's pending from Reena, upon speaking with her she states she was behind and had asked the AVPs to give her until Friday. Advised DA's are time sensitive and if she is behind she needs to let me know, so we can assist in getting those out. *Never was behind*— attended SHRM conference and sent email to AVP's stating I would have the DA's by Friday of the week as we were offsite. AVP responded and said that was fine (I have email and response from AVP). HRM mentioned to me on Thursday, 10/29 that she was speaking to Brad about Rhonda (separate issue where Rhonda had to be addressed about taking situation into her own hands) and that he had also in

conversation asked for an update on the DA's which I got to them in a timely manner. Making it seem like he came to HR to specifically complain which is untrue.

- Also requests to arrive to work late for tomorrow, Friday October 30th, she had a doctor's appointment and could not miss it.  HRM had to rearrange schedule to provide coverage for site. She arrives to the office at noon. Advised understood emergencies/life happens but in circumstances where a greater notification can be given, it needs to be done. This was first appointment for baby and HRM had been out for some time (one week) due to her move and I had no idea she was working from home Friday. I informed her it was a very important appointment and I stated I would try and get it rescheduled. Called doc office and it was a while before I could be seen so I let HRM know and she stated that was fine that she would come in. Never seemed like it was an issue and that Friday is the day I told her I was pregnant and that is why I had to go to appt. and she said it was ok and seemed very happy/excited for me.

**November 6, 2015**
- Received specific instruction from HR Director on how to communicate to the business the denial of a bereavement request, instruction not followed and additional time and resources spent on the issue—We let department know, but we may have let them know more than HRD wanted us to give. I will take ownership of that and have learned not to do that.

**November 9, 2015**
- Upon HRM's return, was provided feedback on time management, provided example of bereavement request—Time mgmt.—I literally spent 5 minutes looking up a picture for a false bereavement doc HRG asked me about. We in turn found it was fake. Literally was 5 minutes though and if we hadn't found it was fake, we would've allowed associate to get away with 3 possibly (1 for sure) fake bereavement requests. How is that an issue vs the opposite (if we hadn't looked into it and continually let associate get away with falsification of time)?

**November 16, 2015**
- Same day notification on needing to leave early, later asked for assistance with NH class, team had to stay later to cover workload. –It was a matter of picking up DL's/SS cards which takes all of 10 minutes. Sabrina and I split all of the documents the next day to enter in Red Carpet which is what is very time consuming. I also have IM convo where HRM was completely ok with request and didn't let me know otherwise.

**November 17, 2015**
- Reminded her of the importance of prior notification when wanting to leave early, as it impacts the team. Advised how team came in early and stayed late to cover, advised if in the future work is pending leave requests will be denied.
- Stated she felt overwhelmed with work load, when asked what is consuming her time she mentioned DA's (5),  filling out the info forms for TA (7), emails, and just overall busy.?????????
-
**November 20, 2015**
- Contacted HRM stated she was extremely busy, asked if Ten could help her. Ten handled the pending investigation—HRM/HRG took the day off and left me completely alone on a payday Friday which was extremely busy and we had 2 investigations going on already. There should never be one person at a site on a payday Friday.  Jeff called at the end of the day with this new issue and there wasn't any way I could assist being alone and asked Ten if she could assist since she was at 8585 and she had no issue at all. Another reason why 8585 should've been site specific and not covered by HRBP at LEW.

**November 23, 2015**

- Reena received Deidra's resignation on Saturday, November 21st and did not process termination. The termination was not conducted until late in the afternoon Monday, November 23rd by HRM. Upon reviewing situation, employee had brought forth concerns in previous months- the situation was mishandled and was not followed up on. I take ownership of this one; I could've handled situation better but was going off of what information I was given.
- Provided term recommendation which was vague stating (see AVP notes below) explained the importance of summarizing and had her resend- which she did.  In addition, asked for the surrounding circumstances of incident, upon review advised her three people questioning one employee was overwhelming and we need to safeguard objectivity of the room. ?? AVP had already met with associate along with manager and had notated all the info—it was a black and white situation (falsification of time) so I stated 'please see below' in my notes. AVP/Manager and I met with associate since they had met prior and wanted to get all of the information since it had just happened that morning. Was never coached on that—was just asked to resend notes with my statement.

**November 24, 2015**
- Asked for assistance with 5 info security issues, advised her everyone's pending workload and asked for clarification on what she was doing. She stated she would like to discuss further –Another administrative task that is very time consuming; HR Compliance sent so many all at once and had a lot going on; per HRM stating if I needed help (when DA issue occurred), I asked for help so that we wouldn't be behind since these take a good amount of time to do. Why am I being penalized for asking for help if we are a team?

**November 25, 2015**
- Same day notification of Dr.'s appointment, took a longer lunch. Advised again, that a greater notification must be given- same day notices impacts the team and workload. I took Dr's appointment on my **lunch** and it was for a baby appt. How is this an issue when I am exempt and I used my lunch and am covered by FMLA? It was 15 mins over my lunch, how does that impact the business? I thought I was being courteous by using my lunch to go.

**December 8, 2015**
- Receive concerns from the VP and SVP for the credit cards group in regards to Reena's timeliness and questioned how she was handling an investigation.  They felt she had already reached a conclusion prior to looking into the matter. They requested another HR member review and finalize the case. Never heard about timeliness of anything? HRM stated that I shouldn't let business know what I was thinking upfront until investigation was completely finished. I stated I understood. However, after my recommendation of moving associate to a different team after I had done investigation, Jeff has never had an issue after that with either associate. Prior to finding a resolution, it was a constant disruption to the team. We finally came to the right conclusion as this had been escalating for a while and could've really taken a turn for the worse.

**December 22, 2015**
- Senior leadership members advise that Reena had approached them questioning the concerns they had brought forward, they stated they felt uncomfortable and surprised by this action. HRM in previous meeting regarding first PIP had mentioned I received complaints from Greg Vinson, Mitzie Jefferson and Jorge Munoz which I knew were false statement as we had excellent relationships. I asked Jorge if I was getting DA's to him on time and he said yes and that he jokes about things but doesn't mean anything by them (jokes about getting DA's etc when he walks into HR). Jorge asked me was everything ok and if he needed to let HRM know that I get things done on time and I said no, everything was fine.

**December 28, 2015**

- HR Generalist had to be called in on their time off to gather, organize, and help solve payroll discrepancies in order to meet deadline. As an HRBP and tenured employee, it is expected that Reena proactively work with other peers and departments to reach consensus and find solutions during these situations. This is not true—HRM's inadvertently allowed all HRG's to be off on the same day (that was the real issue) and no one had sent out Kronos audit. Sabrina logged in to get that out and later in the day and compiled list for Customer Servcie Holiday pay and I had finished up LEW Servicing and HRM had shown appreciation for us getting the information out. Nothing else was mentioned.

**From:** Stephanie Elad <selad@santanderconsumerusa.com>
**To:** Reena Mathew <rmathew@santanderconsumerusa.com>
**Subject:** RE: Recap
**Date:** Fri, 19 Feb 2016 22:35:22 +0000
**Importance:** Normal

---

Reena, I have to say that I had the same reaction as Yessica when reading your recap. It's not very detailed. I can't speak to last week because I wasn't present for that conversation, but since I was present for this week's conversation, I can say that this summary didn't meet what I expected. We had an in depth discussion around the Monisha investigation and both Yessica and I provided specific feedback, direction and coaching. It concerns me that you didn't include that in your recap. And, there were other issues that we discussed in depth as well.

As I have stated previously on several occasions, the purpose of the performance improvement plan (and process) is to help you get to a place where you are meeting expectations. You have stated numerous times that you know your job and that the issue is workload, and not skill set. However, this recap would indicate otherwise, as you are either not able to identify the key concepts and coaching opportunities that were provided to you during the discussion this past Wednesday, or are not able to communicate them effectively. Either way, this is a cause for concern.

I have to tell you that I'm at a bit of a loss at this point. You have been offered opportunities for development and you have not, to my knowledge, requested any assistance in this regard. Also, I noticed that you didn't take many notes during the meeting, which might have helped in terms of formulating your recap. Both Yessica and I are committed to helping you be successful, and we need your partnership.

The reason for asking you to provide a recap is to ensure that you are understanding the direction and feedback. This is an important exercise to ensure comprehension. If these were your only key take-aways, then there is a definite disconnect. And, it is not Yessica's job, or mine, to recap the meeting for you. Our job is to provide the feedback, yours is to digest it and act up on it.

I am happy to discuss further if you wish next week. However, please do not take this to mean that there is an extension to the deadline that Yessica set for Monday at 10:00am.

Thanks!
Stephanie

---

**From:** Reena Mathew
**Sent:** Friday, February 19, 2016 2:03 PM
**To:** Stephanie Elad
**Subject:** FW: Recap

Stephanie,

This is yet another example of poor direction/expectations where I'm asked to do something, I do it, and then it's wrong without proper clarification. If my Manger is wanting exact details, then she will need to make that very clear. I sent the same type of recap the first time (please see attached) and it was fine.

I am not a mind reader and if I'm not told exactly what a person is wanting until after the fact, that is unfair to me. This reminds me of the whole review process all over again and I refuse to go down that path for a second time.

Please help us clear this miscommunication up as it is affecting me time and time again and being pregnant, I cannot walk on egg shells wondering if what I'm doing is going to come back with a different set of expectations.

Thanks,
Reena

---

**From:** Yessica Adriano
**Sent:** Friday, February 19, 2016 11:56 AM
**To:** Reena Mathew
**Cc:** Stephanie Elad
**Subject:** RE: Recap

Reena this summary is not what was requested or expected. We met for over an hour and this summary does not capture the main points of our discussion.  Specifically, we reviewed the time study and the Monisha investigation in detail.

The purpose of having you complete this assignment as part of your performance improvement plan is to ensure expectations and feedback are clear. The response below is not a good example of meeting the objective as it relates to this task.

Please review your notes again and add significantly more detail and submit to me no later than Monday, February 22 by 10 am.  Let me know if you have any questions.


Thank you,

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE   214.722.5667
MOBILE   214.215.5258
EMAIL   yadriano@santanderconsumerusa.com
WEB   www.santanderconsumerusa.com

---

**From:** Reena Mathew
**Sent:** Wednesday, February 17, 2016 5:17 PM
**To:** Yessica Adriano
**Subject:** Recap

Hi Yessica,

Per our conversation, this is what was discussed:

**Attendance**—I've been giving 48 hour notice; continue to do so with appts etc. I let you know starting next week I will have my appt every 2 weeks.

**Time Study**—You asked a few questions regarding some of the information. Asked me to quantify how many DA's, specify which investigation and add details ie IM's, door knocks etc. Any trends that we see such as so many corrections from TA or anything else we might notice coming to us. This way we can see where time is being spent (too much/too little) and possibly if something needs to be taken away or given to another team member.

**Consulting**—We've been meeting prior to investigations and other issues that may arise to discuss game plan. Continue to do so as well as consult with other departments if need be. If there are any changes with deadlines etc, please communicate that.

Thanks,
Reena

## Reena Mathew, PHR
Santander Consumer USA Inc.
HR Business Partner

| | |
|---|---|
| PHONE | 214.292.2772 |
| MOBILE | 214.364.9136 |
| FAX | 214.630.0828 |
| EMAIL | rmathew@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |
| BENEFITS HOTLINE | 214.540.2010 |

**From:** Stephanie Elad <selad@santanderconsumerusa.com>
**To:** Reena Mathew <rmathew@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Subject:** RE: Recap
**Date:** Tue, 23 Feb 2016 23:05:50 +0000
**Importance:** Normal

---

I don't have anything additional to add, other than just to clarify that the time study was initially required on a weekly basis. Based on Reena's feedback that she didn't find the exercise a useful time spend, the decision was made to have this be an optional task, effective this week. Specifically, Reena mentioned in the meeting last Friday that she found it "insulting". That was not the intent of this assignment at all. I still think it's a valuable exercise that could assist Reena in improving her performance, but I am fine with making it optional if she doesn't wish to do it.

Agree with all other points made. Thanks!

**From:** Reena Mathew
**Sent:** Monday, February 22, 2016 4:06 PM
**To:** Yessica Adriano
**Cc:** Stephanie Elad
**Subject:** RE: Recap

Sounds good—per our conversation, the only question I had was about the item in red.

Thanks,
Reena

**From:** Yessica Adriano
**Sent:** Monday, February 22, 2016 2:54 PM
**To:** Reena Mathew
**Cc:** Stephanie Elad
**Subject:** Recap

Reena,

Thank you for the revised recap. The second version is closer to what I was looking for. Please see my responses (in blue) below. I recommend that you over-communicate going forward, rather than try to be brief. A specific, exact recap is what is required.

Also, my understanding is that you received feedback from Stephen that your summary to him after your meeting was neither timely nor specific. I would expect you to extrapolate that the same is required for your recaps of our meetings.

To ensure clear understanding on your part of the direction and requirements being provided to you, here is a list of what is expected:

- Provide a complete and exact summary of the key points and key sub-points of the meeting, as well as clarification and summary of your understanding of these points.
- The summary must be provided within 48 hours of the meeting, unless I have approved otherwise, prior to the deadline.
- You will receive a response within 48 hours of submitting your summary to me.
- 48 hours refers to business days only (and does not include holidays, weekend days, vacation days, etc.)

- Failure to demonstrate the capability or desire to complete this task will be taken into account regarding your overall performance and success on your improvement plan.
- Feel free to request feedback prior to submission, but it is my expectation that you are able to execute this assigned task independently throughout your improvement period.

As you will see, I have copied and pasted your second draft of the summary below. I have deleted the rest of the email chain, for simplicity purposes.

**From:** Reena Mathew
**Sent:** Wednesday, February 17, 2016 5:17 PM
**To:** Yessica Adriano
**Subject:** Recap

Hi Yessica,

Per our conversation, this is what was discussed:

**Attendance**—I've been giving 48 hour notice; continue to do so with appts etc. I let you know starting next week I will have my appt every 2 weeks.
Agreed.

**Time Study**—You asked a few questions regarding some of the information on the time study. Specifically you asked for names of investigations, summary recap (what that entailed doing, I mentioned there are interruptions in between and that included typing notes), quantifying DA's so we know how many are being received (add a number so we know what's being received/completed per week). Also, add details ie IM's, door knocks etc. Any trends that we see such as so many corrections from TA or anything else we might notice coming to us that may not be ours to resolve. This way we can see where time is being spent (too much/too little) and possibly if something needs to be taken away or given to another team member/department.

Yes we did discuss areas in the time study and asked for clarity and specifics.

Also, in our discussion you mentioned that the time study was more time consuming than beneficial. The purpose of this assignment is to help you be more efficient with your time, which involves first understanding where time is spent, and then determining areas for improvement. As you stated that you do not see value to improve your performance by utilizing this tool you may cease from continuing. My response: I see value if you all would like me to do this, however, it is very time consuming and it is hard to quantify every detail since there is usually more than one thing going on at one time. I'm good with giving a count of DA's/Investigations per week per our conversation this afternoon. However, you will still be held accountable for your decisions regarding where you spend your time and ensuring your workload is completed. I will only ask that you send me on a weekly basis the number of DA's handled and investigations led. This is due by 5:00pm each Friday.

**Consulting**—We've been meeting prior to investigations and other issues that may arise to discuss game plan. Continue to do so as well as consult with other departments if need be. We spoke about the Monisha investigation and talked about how the business perceives us and if there are any changes (to deadlines set) to communicate that. We (myself and the business) had to meet with Monisha one more time after the three of us met Friday afternoon and we had to modify the summary. If that occurs, communicate to mgmt. so if they were expecting it a little earlier, everyone would be on the same page re: status. Also update summary accordingly after we speak about it (ie wife's email had to be added to unconfirmed allegations). I also mentioned that if there are things expected of me, it needs to be clear. I mentioned I read my review and there was information regarding a DA report that I had no knowledge of and that it said I was entering less DA's than others. I said that is unfair to me to be measured on something like that without knowing that's an expectation. You all stated that's something we all need to help with and I said I would be more than willing to assist but sometimes the workload is physically impossible for one person. Stephanie mentioned HR Generalist was out for some time and there were DA's left on the desk when they returned and bonus has been missed in the past. I mentioned if the Generalist is out for a week, we may need backup because that is a lot for one person to cover. I asked when is it ok to ask Manager for help and she said I could ask but I would need to be able to quantify what I was doing.

I also stated that it's hard to quantify what I do because it's always more than one task at a time but I would do what I was asked of.

We have met prior to each investigation and decided upon action plans, this has worked out well, let's continue.

Your summary above briefly mentions the Monisha incident, but we want to be sure the message was clear. On Friday, February 12th the three of us (Stephanie, you and myself) met to discuss the Monisha case. During this discussion, Stephanie specifically coached you on how to compose the summary and term approval request and which information to exclude (John's wife email). In addition, Stephanie requested this task be completed first thing on Monday morning, yet at noon on Monday she emailed me asking for the information. When this was sent to her it still included the information she asked to be removed. As discussed, it is important that we follow up in a timely manner and if a delay is unavoidable, please be proactive in the communication of that as well as ensuring our work is precise. Also, Stephanie specifically told you that this delay on your part, led to the term being delayed by one day, which impacts the business and their perception of HR resolving matters in a timely fashion. Also, it allowed this employee to work for us, and be paid, an additional day.

Finally we discussed the administrative tasks of the HR inbox and how the expectation is we all work together through that, it is understood the HR Generalist will primarily handle these responsibilities, however we need to assist as well.


Thanks,
Reena

**Reena Mathew, PHR**
Santander Consumer USA Inc.
HR Business Partner

PHONE          214.292.2772
MOBILE         214.364.9136
FAX            214.630.0828
EMAIL          rmathew@santanderconsumerusa.com
WEB            www.santanderconsumerusa.com
BENEFITS HOTLINE   214.540.2010

**From:** Stephanie Elad <selad@santanderconsumerusa.com>
**To:** Holly Hanes <hhanes@santanderconsumerusa.com>
**Subject:** FW: Attendance Recognition Program
**Date:** Tue, 29 Mar 2016 17:48:40 +0000
**Importance:** Normal

---

The misrepresentation to me was the statement "I'm partnering with HRIS to assist but wanted to give you a status update before I left". In reality, she hadn't reached out to HRIS yet, and did so shortly afterward. Also, Reena stated that part of the delay was on EVP Tony Kutiper's part, but as you can see from the chain below, Tony responded in just a few business hours.

**From:** Stephanie Elad
**Sent:** Monday, March 14, 2016 9:45 AM
**To:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Subject:** FW: Attendance Recognition Program

I think this could have been handled better on Reena's part. Let's discuss.

**From:** Reena Mathew
**Sent:** Friday, March 11, 2016 5:01 PM
**To:** Stephanie Elad
**Cc:** Yessica Adriano
**Subject:** RE: Attendance Recognition Program

Ok, will do…

**From:** Stephanie Elad
**Sent:** Friday, March 11, 2016 4:59 PM
**To:** Reena Mathew
**Cc:** Yessica Adriano
**Subject:** RE: Attendance Recognition Program

Please have them sent to Yessica and me. I would like to review before sending to Tony.

**From:** Reena Mathew
**Sent:** Friday, March 11, 2016 4:49 PM
**To:** Stephanie Elad
**Cc:** Yessica Adriano
**Subject:** RE: Attendance Recognition Program

Ok, np. I will check with HRIS and ask them to email the numbers directly to you and Tony.

My guess is they should be able to do it by next week.

Thanks,
Reena

**From:** Stephanie Elad
**Sent:** Friday, March 11, 2016 4:47 PM

**To:** Reena Mathew
**Cc:** Yessica Adriano
**Subject:** RE: Attendance Recognition Program

Is there any way we can get this done sooner than that? I'd like to get back to Tony next week if possible.

---

**From:** Reena Mathew
**Sent:** Friday, March 11, 2016 4:28 PM
**To:** Stephanie Elad
**Cc:** Yessica Adriano
**Subject:** RE: Attendance Recognition Program

HI Stephanie,

I will be OOO next week but will have those numbers when I return if that's ok.

I am also partnering with HRIS to assist but wanted to give you a status update before I left.

Thanks,
Reena

---

**From:** Reena Mathew
**Sent:** Thursday, March 10, 2016 9:18 AM
**To:** Anthony Kutiper; Stephanie Elad
**Subject:** RE: Attendance Recognition Program

Good Morning Tony/Stephanie,

I will get that count for you.

Thanks,
Reena

---

**From:** Anthony Kutiper
**Sent:** Thursday, March 10, 2016 8:25 AM
**To:** Stephanie Elad; Reena Mathew
**Subject:** RE: Attendance Recognition Program

I am fine with it.  If we could get a count of how many people would have qualified in Q4 last year that would be great.

---

**From:** Stephanie Elad
**Sent:** Wednesday, March 09, 2016 3:27 PM
**To:** Anthony Kutiper
**Subject:** Attendance Recognition Program

Hi Tony – Reena Mathew (on my team at LEW) put this together at Brad's suggestion. Troy was on board with rolling it out, but I wanted to run it by you as well. Other than a concern about how we handle FMLA Associates (which we will have to sort out), I think we're good to go.

Please review and advise. If you are in agreement that we should move forward, I will discuss on an upcoming team call.

Thanks!

**Stephanie Elad,** SPHR
Santander Consumer USA Inc.
Director, Human Resources

PHONE  214.237.3713
MOBILE  214.695.1278
EMAIL  selad@santanderconsumerusa.com
WEB  www.santanderconsumerusa.com

**From:** Stephen Shaffer <sshaffer@santanderconsumerusa.com>
**To:** Stephanie Elad <selad@santanderconsumerusa.com>
**Cc:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Stephen Shaffer <sshaffer@santanderconsumerusa.com>
**Subject:** RE: Reena Mathew
**Date:** Thu, 14 Apr 2016 21:20:41 +0000
**Importance:** Normal

---

Yes, as we agreed yesterday we should move to termination.
I will work on approvals so we can move forward.
Thank you to Yessica and you for your hard work.   As we discussed, it would have been great if Reena had been able to succeed, our ultimate goal, but it just has not panned out.

Regards,

**Stephen Shaffer**
Santander Consumer USA Inc.
VP Human Resources Business Partnership

PHONE   214.722.4580
MOBILE   469.236.5931
EMAIL   sshaffer@santanderconsumerusa.com
WEB   www.santanderconsumerusa.com

---

**From:** Stephanie Elad
**Sent:** Thursday, April 14, 2016 4:11 PM
**To:** Stephen Shaffer <sshaffer@santanderconsumerusa.com>
**Cc:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Subject:** Reena Mathew

Hi Stephen – To recap our discussion from the other day, we are at the end of the 90 day PIP and Reena is still failing to meet the expectations of the HR Business Partner role. Although her attendance has improved somewhat, there are still significant performance deficiencies in regards to the other areas identified in the PIP.

Yessica and I are planning to meet with Reena tomorrow to officially close out the PIP, and will let her know that her performance is still not meeting expectations.

At this point, I think that the appropriate next step is to terminate employment. Reena has not demonstrated that she can make the necessary improvements to her performance and remains unwilling to acknowledge that the deficiencies exist.

**Stephanie Elad,** SPHR
Santander Consumer USA Inc.
Director, Human Resources

PHONE   214.237.3713
MOBILE   214.695.1278
EMAIL   selad@santanderconsumerusa.com
WEB   www.santanderconsumerusa.com



**90 Day Review**
**April 15, 2016**

**Timeline**

| | |
|---|---|
| 01/15/2016: | Administer PIP/Action Plan |
| 01/29/2016: | 1st Biweekly follow up meeting |
| 02/17/2016: | 2nd Biweekly follow up meeting |
| 02/26/2016: | 30 Day Review |
| 03/08/2016: | 3rd Biweekly follow up meeting |
| 03/23/2016: | 4th Biweekly follow up meeting |
| 04/15/2016: | 90 Day Review |

**Attendance**
*Met Expectations*

You have been consistent in providing appropriate notice for requested time off. In most cases, additional hours were worked to offset the time you have left early/came in late.

**Time Management/Effective Work Habits**
*Does Not Meet Expectations*

During this 90 day period, we have discussed and provided you examples to illustrate the continued areas of opportunity in this category. We have provided you with feedback regarding:

- Providing more detail in the work you submit (time study, weekly recaps)
- Submitting work accurately
    - 2 term requests submitted incorrectly, 1 with incorrect data  and 1 without investigation summaries attached (Monisha 02/15, Brittany 04/08)
    - Incorrect data on attendance report (submitted to Stephanie on 04/06)
- Missing deadlines (missed deadline to Stephanie on attendance talking points/report, Monisha investigation notes)
    - The attendance talking points were assigned by Stephanie on 03/28 with a deadline of 04/01. In her email, Stephanie specifically requests that you have me review the document prior to sending her the final copy.  You submitted your documents to Stephanie at 7:17 pm that day, without my review.  In a later conversation, you stated you didn't know I was leaving early that day, I advised you I was available all day and did not leave until 4:45 pm.  Hence, the prior day 03/31 I had reminded you of this priority and again on 04/01. The document was sent back, so I could review (several edits had to be made) in order to deliver a finished product to Stephanie
    - Monisha Investigation- On 02/15 we had a discussion and edits for the document provided to you by Stephanie, she advised to have this completed first thing on the morning of 02/18, it was not received until that afternoon without the edits.
- Timely follow up (email response to Stephen, completing Brittany investigation timely, reaching out to HRIS timely to complete request from an EVP, DA's being completed within 24 hours)
- Thoroughly and Quality of Work (Monisha summary having to be sent back, Brittany investigation, attendance talking points)
    - Monisha summary was submitted without the edits that were provided

*SC Action Plan*

*Revised 01/2016*



- o Brittany investigation was submitted without the investigation summaries, without DA history, and revisions had to be made to the Substantiated and Unsubstantiated categories to reflect what the interview notes reflected
- o The perfect attendance talking points document had to be revised in the following ways in order to be business presentable: inserted introduction, added program objective, included sub topics (objective, eligibility, rewards), reworded and expanded rules of the program, and changed format/font.
- Importance of teamwork in completing administrative tasks that come in through the @HR_help inbox. Specifically, DA administration for LEW. In March/April, you entered only 16 DA's into WorkDay, compared to 568 total for the site. This does not meet the expectation to do your share of the work to support the team.

Also, you were coached on misrepresenting the truth in an email to Stephanie regarding the sequence of events in regards to the attendance report issue.

After you having decided that you did not want to continue with the time study, we agreed that you would just provide on a weekly basis (every Friday by 5 pm) a count of the number of DA's handled and investigations conducted. This has occurred regularly.


**Consulting**
*Does Not Meet Expectations*

For the first 2/3 of the PIP period, Yessica worked with you very closely and provided constant guidance. Even with that, there were some issues, as highlighted in the previous section. Additionally, we asked you on more than one occasion if there were development or training opportunities that you wanted to take advantage of. You declined those offers.

During this 90 day period, we have provided you with feedback regarding:

- Ability to push back on the business to ensure that you complete your job tasks/duties/deadlines (Brittany investigation)
- Lack of accountability for your behaviors (blaming HRIS, Tony). These things get in the way of us being able to serve our clients effectively.
- Addressing the business regarding feedback that they may have provided regarding your performance. Specifically, asking "who told on me?" This is unprofessional and negatively impacts your ability to provide consulting services to your client group.

Additionally, we received feedback from the business clients regarding your performance and how you interact with them. The comments we received are as follows:

- Limited interactions, but it has been better since January. I'd rather just go to someone else on the HR team to get it done right. They are always helpful and on point.
- I am getting DA's within 2 days. I never get it within 24 hours though, which is what I thought the expectation was.
- I enjoy working with her but notice that with difficult conversations she is timid and struggles. She asked me to sit in on a conversation and when it got difficult she said that I would take over. This wasn't my Associate and I was unprepared.
- She doesn't like making decisions without checking with her manager. She isn't confident when dealing with issues. She is scared to make decisions.
- I had to sit in on a term that Reena was supposed to handle. Reena got flustered and turned it back to me to handle. It's obvious that she can't handle conflict.

*SC Action Plan*

*Revised 01/2016*



- She has had to ask for an extension (beyond 2 days) for a DA.
- I'm much more comfortable and confident working with others on the HR team because they respond timely and are confident in their decision making process.
- She is very nice. Just don't ask her for anything.
  *As a reminder, it is not appropriate for you to go back to the business to discuss this feedback.*

At this point, you have not shown the ability or capacity to provide effective consulting services to the AVP group.

As we conclude the PIP process, it is important to state that you are still failing to meet the expectations for the HR Business Partner role.

refused to sign
_____
**Associate Signature**

4/15/16
_____
**Discussion Date**

_____
**Manager Signature**

Stephanie Elad
_____
**Director Signature**

*SC Action Plan*

*Revised 01/2016*

SC000719

**APP263**

**From:** "Reena Mathew" <rmathew@santanderconsumerusa.com>
**To:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>, "Reena Mathew" <rmathew@santanderconsumerusa.com>
**Subject:** Conversation with Yessica Adriano
**Date:** Tue, 24 Nov 2015 21:40:37 +0000
**Importance:** Normal

---

**Reena Mathew [10:02 AM]:**
Hi Yessica, let me know if that term template looks better :)

**Reena Mathew [11:19 AM]:**
Hi Yessica, btw, I have a Dr's appt at 1 so will probably leave around 12:30p (during my lunch). I'll probably be a little more than an hour though.

**Reena Mathew [11:57 AM]:**
Did you need both term pw and template? Just making sure :)

**Yessica Adriano [12:21 PM]:**
what is vicky's name in IM trying to call her and cant find her

**Reena Mathew [12:21 PM]:**
Vikey Barker Couch
Vickey
Sorry
Vickie LOL
OMG!

**Yessica Adriano [12:22 PM]:**
got it thanks

**Reena Mathew [12:23 PM]:**
np!
Btw, ugh, we just received 5 Compliance emails......do you think the team can split those up? Each one takes some time to complete :(

**Yessica Adriano [12:29 PM]:**
i think ten was bombarded with these as well, but check to see where she stands, i know sabrina has a big load she was here early and stayed late yesterday trying to catch up, and i need to launch the deidra investigation the herman/ricci situation as well
what else do you have going on

**Reena Mathew [12:38 PM]:**
Maybe we can discuss when you have some time. It's been really overwhelming :( I'm going to go to my Dr's appt....be back in a little

**Reena Mathew [3:19 PM]:**
Yessica, For the Compliance/NPPI emails, if the associate isn't working at this location (ie remote, Credit Card associate), would it be ok to send them an email confirming that the information was thier own and not the company's? Typically we're supposed to meet with them face to face......

**Yessica Adriano [3:28 PM]:**
I had one of those, you need to call them over the phone to discuss the incident and then log it for complianc

**Reena Mathew [3:28 PM]:**
Ok....
ty

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Stephanie Elad <selad@santanderconsumerusa.com>
**Subject:** FW: Recap
**Date:** Mon, 28 Mar 2016 15:56:00 +0000
**Importance:** Normal

---

My recap is below, please review and feel free to include any detail I might have excluded.

Thanks

---

**From:** Reena Mathew
**Sent:** Thursday, March 24, 2016 1:21 PM
**To:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Subject:** Recap

Hi Yessica,

Here is a recap of our meeting yesterday:

**Attendance**—Continues to be good; continue to give enough notification.
Agreed

**Time Management**—Give recap of DA's and investigations moving forward.
Please continue with the specifics of the DA's and investigations handled every week.

**Consulting**—Expectation of HRBP's is moving towards independent judgment calls; HRBP's are expected to formulate plan at the beginning and recommendation at the end; if additional steps need to be taken, use judgment call; you all said you understood my hesitation due to current situation but stated that is the direction we are moving; also to rely on past consulting and judgment calls—we've been on the same page 90% of the time. If there are escalated issues or if Manager is unavailable, we can go to other HR Managers. Want us to be confident in making decisions. Stephanie then proceeded to ask about the timeline of events regarding the Perfect Attendance proposal numbers. I stated I had sent an email on Friday but that was after I had asked her if she needed them before I left and she had stated yes. We had a lot going on and I wanted to tie up loose ends before I left. Because it was a basic report, I didn't think it would be so hard to retrieve from HRIS and stated we have issues in getting a timely response (and that goes for several of us). Stephanie stated she felt as though she was 'misled' and it was a 'misrepresentation' stating that I had been in contact with HRIS. I said that was not my intention and that what I meant was we've been working on this project back and forth for some time and Paula was aware of this upcoming proposal. I sent the email on Friday and we only received a response that next Wednesday after Yessica sent another follow up email after I had informed her I wasn't getting a response (even if it just meant them sending us instructions). HRIS then stated they couldn't pull it and Sabrina and I spoke and she manually filtered the report but wasn't getting the information we needed and then HRIS stated they were able to after that. I even worked during my vacation to get this settled and I also mentioned that this was a project that I took on (after Brad Denetz and I have spoken for some time and Stephanie said I wasn't taking ownership) and it wasn't assigned so I wouldn't not allow this issue to paint me in a negative light. Stephanie mentioned she had concerns and that I wasn't meeting the expectation of an HRBP however I stated that is not what was said in the last meeting (stated I was where I needed to be as an HRBP).

Consulting:  We stated how we understood your hesitation, but need to see that transition now. The expectation of the role is for you to make independent decisions  and reach out to the HR Managers for escalated issues.  We advised that you need to rely on your resources (other partners), past consulting, and how with recent investigations we have collaborated 90%- use all these experiences when making judgment calls and deciding next steps.

Perfect Attendance Proposal:
- Our EVP sent a request Thursday morning for the attendance report, Friday afternoon you respond in email to Stephanie stating you are working with HRIS for this, however the first time you reached out to HRIS for their support was after 5 pm Friday.  You also mentioned you had spoken with HRIS a couple months ago and they advised they did not have the capability to pull this type of report. Two points were made here:
    1) Your email was misleading, it led us to believe you were actively working with HRIS when in fact you had not even contacted them, this is concerning because we need to be able to trust what you communicate. As discussed, this misrepresentation becomes an issue of integrity.
    2) It should of not taken two business days for you to submit the request to HRIS, there needed to be more urgency on your part.

- Your response to this was,  it is HRIS's fault for not responding to a simple report, Tony Kutiper for not requesting it earlier, and you had a lot going on with other work.  We discussed the blaming of others has become a pattern and it is necessary for you to be accountable for your actions.

- When assigned a project you need to get it done, we understand obstacles occur and when this happens we need to work around them, partner, and  show effort on our attempts. Overall, it is essential projects are fully owned until their completion, the perfect attendance proposal and the HR investigation project are examples where you have not followed through and have deflected errors made to others as opposed to being accountable.

In previous meetings, we have acknowledged the progress made in certain areas and have commended you for having a satisfactory 2 week period, but we have not stated overall expectations have been met. In order for progress to be effective performance needs to be improved and then be consistent and sustained.  The order of events that occurred recently with the proposal is a major setback.

We are still committed in seeing you succeed in this role, and expect feedback provided to be implemented in order to reach the expectations of your HRBP role

**Just as a side note, we were waiting on Brad to respond with what pay codes the other business leaders approved and we received that yesterday. I sent it to HRIS and contacted Paula and she will be sending over the numbers we requested this afternoon. I will be sending those over.

**Reena Mathew, PHR**
Santander Consumer USA Inc.
HR Business Partner

PHONE       214.292.2772
MOBILE       214.364.9136
FAX          214.630.0828
EMAIL        rmathew@santanderconsumerusa.com
WEB          www.santanderconsumerusa.com
BENEFITS HOTLINE   214.540.2010

SC006634

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Holly Hanes <hhanes@santanderconsumerusa.com>
**Cc:** Stephanie Elad <selad@santanderconsumerusa.com>
**Subject:** FW: Recap of Meeting
**Date:** Mon, 21 Mar 2016 14:01:50 +0000
**Importance:** Normal

---

Hi Holly,

Below is the recap we will be sending back, my comments are highlighted in blue.

Thanks

**From:** Reena Mathew <rmathew@santanderconsumerusa.com>
**Date:** March 8, 2016 at 3:58:02 PM CST
**To:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Subject: Recap of Meeting**

Hi Yessica,

Here is a recap of what we discussed today.

You asked me how things were going from my perspective—I said they were good so far and felt like you and I were working well together. I feel as though things are more clear on my end and I know what's expected of me. No issues so far.

**Attendance**—This has been going well; I've been giving enough notification for time off and to continue to do so. You also thanked me for scheduling appointments on WFH days.
Yes agreed.

**Time Management**—Been good here-if there has been additional time that I've been needing, I've been giving enough notice of that (a day extra etc). Last week Sabrina was out and we worked together and everyone jumped in to knock out the inbox and you said thank you for that. Investigation Summary—overall good—one additional item needed—don't forget recap and if there are DA's, specify what type of DA's they were (call model vs. attendance) and if there was a call that you had to listen to etc. so we have a breakdown of exactly what type of DA's we're drafting. Yes thank you for you your help with admin tasks,  I also asked for specifics on your weekly recap that specified the investigations (names) and the type of DA's conducted.

**Consulting**—I've been touching base regarding decisions that had to be made—continue to do so. One thing you all would like to see is for me to make decisions so more of discussing thoughts regarding allegations at the beginning and then follow up with recommendation at the end of investigation. Would like to see me make more of the decisions vs. consulting with Manager to see if she agrees with recommendation along the way. I stated I don't have a problem doing that (I also stated that I disagree that I am touching base often per Stephanie), but during this time I would rather not because to me it may backfire and I don't feel comfortable in doing so. I would definitely be more than willing to strive to get there at some point if that is the direction we are headed with HRBP's and investigations. Obviously escalated issues would need more interaction between the Manager and HRBP.

SC005961
**APP267**

Today, you consult with me (your manager) as issues arise in investigations or day to day, we would like to see you make more of these decisions on your own. I provided an example: during an investigation I consult with my manager and we discuss an action plan, during its execution different issues arise such as the need to investigate more people, another item unveiled, etc., I make judgment calls on next steps and review back with my manager at the end of the investigation with its final recommendation and then review additional steps that were taken and why.
We stated we understood your hesitation, however the end result would be for you to make independent decisions as an HRBP (consultant) and refer to me for escalated issues.

You all stated that I am more where I need to be as an HRBP.

Let me know if you need anything else.

Thanks,
Reena

## Reena Mathew, PHR
Santander Consumer USA Inc.
HR Business Partner

| | |
|---|---|
| PHONE | 214.292.2772 |
| MOBILE | 214.364.9136 |
| FAX | 214.630.0828 |
| EMAIL | rmathew@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |
| BENEFITS HOTLINE | 214.540.2010 |

# SANTANDER CONSUMER USA INC.
# Progressive Discipline Policy
# 2013

Confidential

SC010464

APP269

**Table of Contents**
**Progressive Discipline Policy**

1.0   Policy Statement ....................................................................................................................3

2.0   Policy Scope ..........................................................................................................................3

3.0   Policy Purpose .......................................................................................................................3

4.0   Persons Affected....................................................................................................................3

5.0   Definitions ..............................................................................................................................3

6.0   Roles & Responsibilities ........................................................................................................3

7.0   Rules......................................................................................................................................3

8.0   Procedures.............................................................................................................................4

9.0   Exceptions (If any).................................................................................................................5

10.0  Review/Revision History ........................................................................................................5

11.0  Control Standards..................................................................................................................7

Santander
CONSUMER

Confidential

SC010465

APP270

# Progressive Discipline Policy

## 1.0  Policy Statement

"This policy is the property of Santander Consumer USA and provides directives to be followed by all associates and contracted personnel in the performance of related duties.  Rules and guidelines are described herein, sufficiently describing the elements of control employed in the management of the process."

## 2.0  Policy Scope

This policy covers the procedures related to Human Resource and the Progressive Discipline Policy; which covers persons affected and required actions.

## 3.0  Policy Purpose

It is the policy of Santander Consumer USA Inc. ("SCUSA") for all associates to comply with the company's procedures pertaining to Progressive Discipline. Where appropriate, a policy of progressive discipline will be followed by SCUSA Management and Human Resources in order to minimize risk to the organization.

## 4.0  Persons Affected

All SCUSA associates

## 5.0  Definitions

5.1.  Progressive Discipline

5.1.1.  The act of providing a pattern of training or punishment, proceeding in steps and continuing steadily by increments, expected to produce a change in specific behavior(s).

## 6.0  Roles & Responsibilities

It is the manager's responsibility to work with Human Resources when administering formal disciplinary actions as listed in section 8.0

## 7.0  Rules

7.1.  Managers should ensure consistent application of progressive disciplinary steps.

7.2.  SCUSA reserves the right to administer discipline in such a manner, as it deems appropriate to the circumstances.



SC010466

**APP271**

## 8.0  Procedures

8.1.  Coaching (informal and formal)

8.1.1.  This is less formal than a verbal warning and typically will begin with informal then advance to formal coaching. This is communicated to an associate that his/her conduct is unacceptable, and that repeated or continued failure to conform his/her conduct or performance to the Company standards will result in more severe disciplinary action. Depending on the nature of the infraction, an associate may be counseled by his/her Manager and told what improvements are necessary, prior to receiving coaching. Coaching warnings shall typically remain active for a period of thirty (30) days.  A record of the notice of the coaching will be made and retained with the manager.

8.2.  Verbal Warning

8.2.1  The first formal step in SCUSA's progressive disciplinary policy is the "verbal warning". This is a verbal warning to an associate that his/her conduct is unacceptable, and that repeated or continued failure to conform his/her conduct or performance to the Company standards will result in more severe disciplinary action. Depending on the nature of the infraction, an associate may be counseled by his/her Manager and told what improvements are necessary, prior to receiving a verbal warning. Verbal warnings shall typically remain active for a period of thirty (30) days.  Associates on verbal warnings may not be transferred or promoted for a period of thirty (30) days.  Associates on verbal warnings will not receive bonus payments for a one (1) month period.  A record of the notice of the verbal warning will be made and retained in the associate's personnel file at SCUSA for the length of the associate's employment.

8.3.  Written Warning

8.3.1  The second formal step is a "written warning." This warning will describe the unacceptable conduct or performance of the associate and specify the time frame for needed changes or improvements. Written warnings shall typically remain active for a period of ninety (90) days.  Associates on written warnings may not be transferred or promoted for a period of ninety (90) days.  Associates on written warnings will not receive bonus payments for a two (2) month period. A copy of the written warning will be retained by SCUSA for the length of the associate's employment.

8.4.  Final Warning

8.4.1  The third step is a "final warning." This warning will describe the unacceptable conduct or performance of the associate and specify the immediate need for changes or improvements. Final warnings



shall typically remain active for a period of one hundred eighty (180) days.  Associates on final warnings may not be transferred or promoted for a period of one hundred eighty (180) days.  Associates on final warnings will not receive bonus payments for a three (3) month period.  A written copy of the warning will be retained by SCUSA for the length of the associate's employment.

8.5.  Suspension

    8.5.1    Suspension of the associate's employment may, at the sole discretion of SCUSA, be used as an alternate step. The length of the suspension will vary based upon such factors as the severity of the offense, the associate's performance, and the associate's disciplinary record. An associate may be suspended for repeated instances of minor misconduct, failure to conform his or her conduct or performance to the standards of his/her position, or for a single serious offense. A record of the suspension will be retained by SCUSA for the length of the associate's employment.

8.6.  Termination

    8.6.1    The final step in the disciplinary procedure is the termination of the associate. If an associate fails to change his/her conduct or performance to the standards required by SCUSA, the Company may, in its sole discretion, terminate the associate's employment.

## 9.0  Exceptions (If any)

9.1.  Exception Id

9.2.  Expiration Date

9.3.  Exception Description

    9.3.1.  Notwithstanding the foregoing progressive disciplinary procedure policy, SCUSA reserves the right to administer discipline in such a manner, as it deems appropriate to the circumstances, and may, in its sole discretion, eliminate any or all of the steps in the progressive discipline procedure.

    9.3.2.  Individual departments have the ability to modify the activity periods of the warnings in order to meet performance requirements.

    9.3.3.  At any time, the HR Management Team or Executive Team reserves the right to modify or change this policy.

## 10.0     Review/Revision History

| Date | Version # | Change | Affected Section | Amended By |
|------|-----------|--------|------------------|------------|



SC010468

**APP273**

| 05/2004 | 1.0 | New | Not Applicable | Lisa VanRoekel |
|---------|-----|-----|----------------|----------------|
| 03/2007 | 1.1 | Update company name | Not Applicable | Colleen Murphy |
| 01/2009 | 1.2 | Amendments | 8.0 | Colleen Murphy |
| 05/2010 | 1.3 | Amendments | 3.0, 4.0, 7.0, 8.0 | Colleen Murphy |
| 11/2010 | 1.4 | Amendments | 3.0, 9.3.2 | Colleen Murphy |
| 12/2011 | 1.5 | Reviewed | All | Heather Hole |
| 12/2012 | 1.6 | Revised Roles and Responsibilities Added coaching Replaced SC USA with SCUSA/Date | 6.0 8.1 and all | Heather Hole/Gatlin |
| | | | | |

6

**Santander**
CONSUMER

SC010469
**APP274**

## 11.0     Control Standards

| | |
|---|---|
| Standard Name: | Progressive Discipline Policy |
| Department: | Human Resources |
| Published Information | First Published-2004 & Last Updated-1/2013 |
| Control Owner: | EVP, Human Resource |
| Frequency of Operation: | Recurring |
| Classification: | Revision |
| Document Classification: | Confidential, Internal Use |
| Audience: | Internal |
| Risk Classification: | |
| Related SOX Sub-process | (Sub-process number) |
| Control Standard: | This application is used to capture the base data for a given control. A control may be assigned to a particular business unit or shared across business units (additional configuration may be necessary). Also displayed are the controls' relationship to risks, process narratives, test plans, control assessments, and deficiencies |
| Authoritative Sources: | |
| Frequency of Operation: | Recurring |
| Review Period: | Annual |
| Policy ID: | (Business Unit identifier, Area, Designation, Number, e.g., SCUSA-ITOPs-LPT-009, designation is logical, global to differentiate between group policies and local policies.) |

Santander
CONSUMER

**From:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>
**To:** Stephanie Elad <selad@santanderconsumerusa.com>, Yessica Adriano
<YADRIANO@santanderconsumerusa.com>
**Subject:** RE: 15 min
**Date:** Mon, 18 Jan 2016 19:03:12 +0000
**Importance:** Normal

---

She did help with some DA's in CO, THX and NRH, but most were at LEW and 8585 ☹ she's a trooper for sure

**From:** Stephanie Elad
**Sent:** Monday, January 18, 2016 1:00 PM
**To:** Angelina Hullum; Yessica Adriano
**Subject:** RE: 15 min

That is interesting. And, a bit concerning, especially that we had 4800 DA's between the 2 sites.

YA – let's discuss how to address with Reena

**From:** Angelina Hullum
**Sent:** Monday, January 18, 2016 12:56 PM
**To:** Stephanie Elad; Yessica Adriano
**Subject:** RE: 15 min
**Importance:** High

Okay… this is interesting…..
The first tab is the entire report, from 1/1/15 to 1/18/16.
I broke out the other tabs to show how many DA's each person did during that time frame. It breaks down to this:
Reena: 45
Tensya: 280
Yessica: 96
Sabrina: **4572**
To compare, I did Jeanette as well: 1692
Clearly, Sabrina has been entering ALL the DA's for Reena and Ten ☹

**From:** Stephanie Elad
**Sent:** Monday, January 18, 2016 12:28 PM
**To:** Angelina Hullum; Yessica Adriano
**Subject:** RE: 15 min

If you can do it quickly, great. If not, don't worry about it. It's not worth spending a lot of time.

**From:** Angelina Hullum
**Sent:** Monday, January 18, 2016 12:15 PM
**To:** Stephanie Elad; Yessica Adriano
**Subject:** RE: 15 min

I would assume that is the case. Let me see if I can pull a DA report during that time period, and if it will give me the name of who entered them. I know you can see who entered them when you go into the specific DA in WD.

**From:** Stephanie Elad
**Sent:** Monday, January 18, 2016 12:09 PM
**To:** Angelina Hullum; Yessica Adriano
**Subject:** RE: 15 min

Good point – I can't imagine we didn't have any that week. Perhaps Sabrina processed them all?

Is there a way to check?

**From:** Angelina Hullum
**Sent:** Monday, January 18, 2016 12:07 PM
**To:** Stephanie Elad; Yessica Adriano
**Subject:** RE: 15 min

The biggest thing that sticks out to me is that at no time during the week did she spend any time entering DA's into WD.

**From:** Stephanie Elad
**Sent:** Monday, January 18, 2016 12:02 PM
**To:** Angelina Hullum; Yessica Adriano
**Subject:** RE: 15 min

What's the feedback on this? Seems ok to me. But, I only skimmed through it.

**From:** Angelina Hullum
**Sent:** Monday, January 18, 2016 11:45 AM
**To:** Stephanie Elad; Yessica Adriano
**Subject:** RE: 15 min

Sorry, didn't include Yessica.
Here is what she sent me

**From:** Stephanie Elad
**Sent:** Monday, January 18, 2016 11:41 AM
**To:** Angelina Hullum; Yessica Adriano
**Subject:** RE: 15 min

Do you still have what Reena sent you?

**From:** Angelina Hullum
**Sent:** Monday, January 18, 2016 10:42 AM
**To:** Stephanie Elad
**Subject:** 15 min

Here you go

**Angelina Hullum, PHR**
Santander Consumer USA Inc.
Manager, Human Resources

PHONE    214.261.1501

MOBILE    720.369.7019
FAX       720.377.3010
EMAIL     aHullum@santanderconsumerusa.com
WEB       www.santanderconsumerusa.com