IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REENA S. MATHEW, | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 3:23-cv-01494-N |
| | § | |
| SANTANDER CONSUMER USA INC., | § | |
| Defendant | § | |

**APPENDIX IN SUPPORT OF PLAINTIFF'S RESPONSE
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Reena S. Mathew submits this appendix of the documents supporting her

response to Defendant's motion for summary judgment, and her brief in support of the response.

Respectfully submitted,

/s/ Donald E. Uloth
Donald E. Uloth
Texas Bar No. 20374200
18208 Preston Road, Suite D-9 # 261
Dallas, Texas 75252
Phone: (214) 989-4396
Fax: (866) 462-6179
Email: don.uloth@uloth.pro
Counsel for Plaintiff

CERTIFICATE OF SERVICE

I certify that on September 20, 2024 I served a copy of this document to Monte Hurst,
counsel for Defendant, by email to monte.hurst@hallettperrin.com.

/s/ Donald E. Uloth
Donald E. Uloth

## DECLARATION OF REENA S. MATHEW

1.        My name is Reena S. Mathew.  I am over twenty-one (21) years of age, and I am competent to make this Declaration.  I have personal knowledge of the facts set forth herein, and they are all true and correct.

<u>My Work as an HRBP</u>

2.        I worked for Santander as a salaried employee in Human Resources from February 1, 2011 until April 19, 2016.

3.        For the last few years of my employment, my title was Human Resources Business Partner ("HRBP"), and I worked at the company's offices in Lewisville, Texas.  My immediate supervisor also worked there – Angelina Hullum, a Human Resources Manager.  Another HR employee working there was Sabrina Boyd, a Human Resources Generalist who handled administrative tasks.

4.        Santander did annual written performance reviews on all employees.  My reviews were always positive, and they all indicated that I was meeting or exceeding expectations.  The only annual performance review that I still have in my possession is for 2014.  A true and correct copy of this performance review is attached hereto, the pages are numbered App. 46-63.  I have a mid-year review for the first half of 2015, but it does not include an overall score.  A true and correct copy of this mid-year review is attached hereto, the pages are numbered App. 67-71.  The comments are generally favorable, and Angelina Hullum included some goals and things to work on during the second half of the year.

5.        Santander had an employee recognition program called You Earned It.  Any employee could award Your Earned It points to another employee for exemplary work, or going

1

above and beyond on something.  I regularly received points from the business side managers and officers I supported.

6.      On or about July 10, 2015, Hullum asked me to take on HR responsibilities for 67 employees who worked at another location that we referred to as 8585, because of its street address on Stemmons Freeway in Dallas.  I discussed this with Hullum because there were fewer employees total at 8585 than there were in Lewisville, and an HRBP named Hortensia Perez already worked there full time.  To me it made more sense to me for Perez to handle these employees, but Hullum assigned the 67 extra employees to me anyway.  *See* App. 79-80, which is a true and correct copy of an email from Hullum sent to me on July 10, 2015 confirming this additional responsibility.

7.      Regarding the issue Elad described in paragraph 7 of her declaration, she did not discuss this issue with me in August 2015.  Elad did not coach me on this or any other issue ever.

Adriano Became my Supervisor

8.      On or about September 1, 2015, Yessica Adriano replaced Hullum as the Human Resources Manager at the Lewisville, Texas office, and she became my supervisor.  Adriano was also put in charge of 8585.  Attached as App. 81-82 is a true and correct copy of an email sent on August 24, 2015 describing Adriano's new duties.

9.      I had a couple of meetings with Adriano to get acquainted.  Thereafter, all one-on-one discussions we had were about work, and issues we were handling.  Adriano and I never discussed my 2015 mid-year performance review, we did not discuss my 2015 goals, and we did not discuss how Adriano could help me reach my goals and improve.

10.     From September 1, 2015 through December 1, 2015, Adriano and I never had a one-on-one meeting about my performance, and Adriano never coached me or said there were areas in which I was performing poorly.  If we had, then according to company policy, Adriano

was required to make a keep a written record of it.  *See* the 2013 Progressive Discipline Policy.  A true and correct copy of this policy is attached as App. 39-45.

11.    Santander consistently used this Progressive Discipline Policy to train and/or punish in order to produce a change in specific behaviors.  App. 41 (section 5.1.1, in the definition of Progressive Discipline).  The steps described in this policy were: a coaching, a verbal warning, a written warning, and a final warning.  The policy required a verbal warning to be maintained in the associate's personnel file, and it required the associate's manager to make a keep a written record of any coaching or other type of warning. App. 42-43.  In HR, we consistently preached to the business managers the need to follow this policy, and we worked with the managers to determine the appropriate level of discipline, to document the discipline, and to make sure the manager communicated with the associate about any performance issue in question so the associate could improve.

12.    The HR employees collectively referred to these coachings and warnings as disciplinary actions (DAs).  Every DA was reduced to writing and reviewed, and then entered into a software program that was used to track them.  Before December 1, 2015, no one at Santander ever provided me with a coaching or a warning, and this includes purely oral conversations that were not documented – there were none.

13.    In 2015 and 2016, I had a much heavier workload than most other HRBPs.  The factor that most affected my workload was employee headcount, the number of employees for whom I had primary HR responsibilities.  An HR employee named Nicole Heinicke kept and regularly updated a Headcount by Department spreadsheet that showed the total headcount I and 7 other HR employees at three Dallas area locations were responsible for.  Almost every week, Heinicke emailed out a link to this spreadsheet to other HR employees.  The weekly spreadsheets

that have been produced in this case show that from September 16, 2015 through April 11, 2016, I consistently had the highest or second-highest headcount of any other HRBP – it was always Whitney Andres or me who was highest.  My headcount varied from a low of 646 to a high of 904, and Whitney's headcount shows a low 666 and a high of 706.  Below Whitney and me were HRBPs with under 415 employees.  *See* App. 310-385.  I sometimes mentioned my heavy workload to Adriano and/or Elad hoping for a reprieve.  However, no changes were made to balance out my heavy workload with the much lighter workload of other HRBPs.

Things Changed After I Told Adriano I Was Pregnant

14.     On October 30, 2015, I told Adriano I was pregnant.  I remember because I had an appointment that day with my obstetrician/gynecologist for a checkup.  I was 39 years old at the time, and because of my age, this was considered a high-risk pregnancy.  This was my first appointment with the OB-GYN during this pregnancy, and I was anxious to find out if everything was okay.  The doctor confirmed that everything was going well, so I planned to tell Adriano that I was pregnant when I got back to the office.

15.     When I got back to work after the appointment, I went into Adriano's office and told her I was pregnant.  During this brief discussion, Adriano asked me what my plans were for after the baby was born.  I told her I did not yet know for certain.

16.     Adriano's immediate supervisor was Stephanie Elad, a Director of Human Resources.  She also worked at Lewisville, and our offices were all close together.  My relationship with Adriano and Elad changed right after I told Adriano that I was pregnant.  Before, we would usually say hello in the morning and exchange greetings, but that stopped.  Their attitudes changed from being friendly to being cold and distant.

4

<u>December 1, 2015 – The First of Two PIPs</u>

17.     On December 1, 2015, I had a meeting with Adriano to go over my 2015 annual performance review.  I was expecting a positive review, but in this meeting, Adriano told me she planned to give me a negative performance review that would say I was not meeting expectations.  She told me she was putting me on a 30-day performance improvement plan ("PIP"), and she handed me a written PIP.  A true and correct copy of this PIP is attached to this declaration, App. 100-102.

18.     There were three places in the PIP where it said: "See Addendum for Specifics," but there was no Addendum attached.  I reminded Adriano that it was standard operating procedure to document performance issues before putting an employee on a PIP, I asked Adriano to show me any documentation supporting her decision to put me on a PIP.  She seemed surprised by my comments, and she had no supporting documentation.

19.     I lost my composure and cried through most of this meeting.  I was beyond upset by this, and I remember feeling my stomach clench and the muscles remained tight throughout this meeting and for a while thereafter.  I felt completely blindsided and could not believe this new Manager was placing me on a PIP without any type of prior notification of any negative performance issues.  A negative performance review and a PIP would disqualify me from receiving my annual bonus, and it would prevent me from getting my next scheduled pay raise.  I had been doing a good job, and Adriano cited no facts showing otherwise.  My job was now in jeopardy, and this made me fear the loss of an income and loss of benefits to cover the medical bills I would incur for the birth of my child.  This anxiety was overwhelming, and it was with me daily throughout the month of December, like trying to walk on eggshells without breaking them.

20.     After the meeting, I started contacting people in the chain of command above Adriano to let them know what was going on, and to express my views that a negative performance review and a PIP were unwarranted.  I started with an email that day to Adriano's immediate supervisor, Stephanie Elad.  A true and correct copy of this email is attached to this declaration, App. 104.

21.     In my email to Elad, I told her I had never had any formal coaching or discussion about my performance, and I had always received positive employment reviews.  I asked her about the attendance issues Adriano raised and how my attendance differed from anyone else's.  Elad never answered that question.  I also said: "I was completely shocked and upset and working in HR I know that an associate shouldn't be surprised let alone have first time discussions about issues during a review." App. 104.

22.     On December 3, 2015, I sent an email to the top HR professional in the company, Michelle Watley.  App. 105.  After that, I sent an email to Pamela Blackburn (Executive Vice President Human Resources).  App. 110-111.

23.     On December 7, 2015, I sent an email to Christopher Mays asking "have we ever put anyone on a PIP without clear cut/written documentation, for example, say the Manager said they coached the associate but there are no notes/dates etc.?"  Mays was a manager in charge of talent development, which involved developing and improving the skills and talent of Santander's employees.  I thought if anyone knew the answer to this question, it would be him.  Mays responded: "I have never worked on a PIP without the proper documentation but not sure if there is a case where this has happened with someone else. It's just like any other disciplinary action you need documentation to validate the PIP."  A true and correct copy of these emails is attached, App. 106.

24.     I dispute Santander's contention stating a reason why a PIP was more appropriate than a written warning.  Santander claims a written warning "would not capture the bigger picture of how she needed to improve her performance in a number of categories."  Of course it would, if that is what they chose to write in the written warning.  Going from no documented coaching or warning to a PIP was unprecedented for any employee at Santander based on my experience.  I had never seen or heard of that being done during almost five years working there.

25.     On December 9, 2015, I had a long phone call with Stephen Shaffer.  I told him that in theory, every employee can improve, but a manager needs to tell the employee that there is a problem and try to resolve it before putting an employee on a PIP.  I let him know that I felt betrayed and blindsided because I had been working under Adriano and Elad for months, and neither one of them said anything to me about having performance problems.  To go from no coaching or documentation to being on a PIP was unprecedented at Santander.

26.     I never told Shaffer that 30 days was not enough time for a PIP, or that I wanted a longer PIP – not in this conversation, or any other that we had.  No one wants a longer PIP, and certainly I did not – I wanted the PIP rescinded and gone.

27.     After the call, I sent Shaffer an email thanking him for taking the time to talk to me.  In my email I said: "If these are areas of opportunity that I need to work on, I can accept that but I don't accept them being brought to my attention as areas of concern for the first time during my review, let alone being placed on a PIP."  App. 112.

28.     Normally during a PIP, a manager has regular and ongoing conversations with the employee to make sure the expectations are clearly communicated, and any deviation from expectations is pointed out promptly so the employee knows what to do and what not to do.  In December 2015, I did not have a single conversation with Adriano about my performance or an

alleged failure to meet expectations.  We had discussions about pending work issues, but she never said my performance was anything less than expected, and she never told me there were issues or concerns about my performance.

29.     Being placed on a PIP was unwarranted, demeaning, and it felt like a betrayal. Adriano gave me nothing but positive feedback before my pregnancy announcement. I felt like I did not even know who Adriano was.  I was sick to her stomach every day, not knowing what else she would come across. I physically felt sick most of the time, and I sometimes would shake with the thought of the unknown.

30.     As December was ending, I started to look forward to the end of the PIP.  I had not heard anything negative about my performance, so I believed this would soon all be behind me.  I was also told that my review would show I was meeting expectations, and told that I would receive my annual bonus.  Things seemed to be getting back on track.

January 2016 – The Second PIP

31.     In early January 2016, I had another conversation with Shaffer.  He told me I was being placed on another PIP, this one for 90 days.  I knew this was unwarranted and contrary to company policy.

32.     On January 15, 2016, I met with Adriano and Elad.  They handed me two documents: (1) a Performance Improvement Plan (this one had the Addendum attached, which was a timeline of events), and (2) a 90 Day Action Plan.  True and correct copies of these documents are attached as App. 145-151, and App. 152-153, respectively.  Adriano and Elad said the three of us would meet every two weeks, and within 48 hours of each meeting, I was supposed to send an email to Adriano recapping our discussion.  They did not say the recap needed to be detailed and should include every item of subject matter we discussed.

8

33.     Once again, I believed a PIP was improper.  I did not agree that my past performance showed a need for improvement, and I knew putting me on a PIP over issues that were ever raised with and discussed with me was not consistent with Santander's regular business practices.

34.     When I went through the timeline that was attached to the PIP, I saw that it was not an accurate description of the events, and it incorrectly stated that both Hullum and Adriano had coached me on things such as attendance issues.  I typed my comments into the timeline, and I sent it to Stephen Shaffer on January 18, 2016.  True and correct copies of my email and the attached timeline are attached to my declaration as App. 156 and App. 159-163, respectively. My comments included some of the following points.

Santander's Examples of Poor Performance

35.     January 2015.  Santander began using a new procedure for processing data when a contractor's assignment ended, and there were problems.  In this instance, I did not see that I was supposed to do the data entry to note that a contractor's assignment had ended, which caused a delay making the necessary changes in the computer records.  It was an ongoing problem for other HRBPs as well.  Elad decided the oversight did not warrant any disciplinary action.  On January 22, 2015, in an email to Hullum, Elad said: "I would just have a conversation with Reena. This is a new process so I know we are going to have a few bumps."  App. 72.  Elad never coached me about this incident.

36.     February 11, 2015.  The first item on the timeline is false.  She said I failed to send Hullum a summary of an HR luncheon I went to, but that's not true.  The luncheon took place on February 10, 2015, and I emailed my summary to Hullum on February 12, 2015.  A true

and correct copy of this February 10 email is attached to my declaration, App. 74-75.  I later forwarded this email to Shaffer so he had proof that I had sent the summary.  App. 74.

37.     Monthly recaps (April 9, 2015, May 18, 2015, and August 13, 2015).  For a few months in 2015, Hullum asked her HR employees to send her an email providing certain information on things we had done during the preceding month.  Among other things, she asked about meetings with business leaders, training, and activities that we referred to as "side by sides," "jumpstarts."

38.     There was no policy or rule requiring HRBPs to do a certain number of these things, and Hullum never set an expectation about what she wanted us to do.  So we did them when and as needed.  It was common for one HRBP to do more monthly side by sides, jumpstarts etc. than others did.  If Hullum thought I needed to do more of anything, she could have said something to me, and I would have done it.  Hullum never gave me any feedback on any of the monthly recaps I sent her.  She never questioned why I had not done more of any one thing, and she never told me to do more.

39.     Attendance issues:  Several entries in the timeline point to times I asked for and got approval to arrive late, take a longer lunch, or leave early.  I never did so without prior approval, and if my request was denied, I worked my normal schedule.  No one ever told me I needed to give more advance notice of such requests.  No one ever said these deviations from the routine adversely affected my coworkers, or the business-side employees that we served.  The facts about these attendance issues are as follows:

a.  July 1, 2015.  I emailed a coworker to let her know I was leaving for a doctor's appointment at 1 pm and I asked if she was ok with that.  App. 78.  I did not need her permission, but I wanted to make sure she was okay with me leaving in case

maybe there was something important going on that I did not know about, in which case I would have stayed.  She told me it was ok if I left at 1 pm and worked remotely after the appointment.

b. <u>August 23, 2015</u>.  I asked Hullum if it would be ok if I was a little late the next day, and she told me it would be no problem.

c. <u>September 3, 2015</u>.  I emailed Adriano asking to use some of my accrued paid time off (PTO), including a half-day off the next day, and some full days later in the month.  Hullum replied: "Hi Reena, that is fine, may you please input the dates into my calendar."  A true and correct copy of this email exchange is attached, App. 83.

d. <u>September 4, 2015</u>.  Adriano had approved this as a half day, but the timeline says I worked longer, until 2 pm.  App. 149-150.  I completed all of my work before leaving, and there was nothing left undone that someone else had to cover.

e. <u>September 17, 2015</u>.  I never left early without my manager's knowledge and approval, and this day was no exception.

f. <u>October 29, 2015</u>.  I told Adriano that I had a doctor's appointment the next morning.  It was an important appointment (first OB-GYN appointment of my pregnancy), but I did not tell Adriano I couldn't miss it.  To the contrary, after Adriano and I talked about things going on at work that day, I offered to reschedule the appointment, and I called the doctor's office to reschedule.  The only available times were several days out, and I spoke to Adriano again.  She told me to keep the appointment and I could arrive late the next morning.  App.

11

161 (my January 18, 2016 comments on the timeline).  I would have rescheduled the appointment if Adriano didn't approve the late arrival in advance.

g.  <u>November 16, 2015</u>.  In an instant message conversation, I asked Adriano if I could leave around 3 pm, and I asked if she would be able to help Sabrina Boyd with a short ten-minute task at 5 pm.  This was a new-hire class, and we needed to collect and make copies of driver's licenses and social security cards.  Adriano told me "yes no issue."  A true and correct copy of these messages is attached, App. 89.

h.  <u>November 25, 2015</u>.  The timeline is wrong about the date here.  On November 24, 2015, I let Adriano know that I had a doctor's appointment during my lunch and I might be gone for a little more than an hour.  Adriano did not object.  If she had, I would have rescheduled the appointment.  A true and correct copy of this instant message conversation is attached, App. 95.

40.  <u>July 2, 2015</u>.  Angelina Hullum asked me if I could work on a task that was not even my job.  I was busy, so instead of promising to do things I might not have time to do that day, I asked her if this could be assigned to someone else to handle.

41.  <u>July 10, 2015</u>.  This is when I was assigned 67 employees at 8585.  Hullum asked me to do it, and I complied with her request.

42.  <u>August 23, 2015</u>.  I got prior approval from Hullum to arrive slightly later the next day, and I would not have come in late without her prior approval.

43.  <u>July-August 2015</u>.  I have the following clarifications about the four paragraphs in this portion of the timeline:

a.  "Stated the work load …"  With the additional responsibilities for the employees at 8585, I was very busy.  Hullum said she thought it might help if I kept track of my daily activities in 15-minute increments, which I did. She was no more specific than that.  She did not show me an example of what she meant, nor did she describe the level of detail she was seeking.  It was difficult to track things in 15-minute increments because I rarely worked on a single thing for 15 minutes without having to deal with something else, like answering a call or responding to an email.   Hullum did not ask me to do the time study a second time, and she never told me the time study I submitted was vague.

b.  "Continually reminded …"  Hullum never told me I needed to work full shifts, and she never told me to provide more notice when requesting to leave early.  I needed no such warnings or reminders, because I got my work done, and I did it well.  The only time someone else ever had to do something for me because of an absence was the ten-minute task on November 16, 2015 (discussed above).

c.  "Strongly advised …"  This sentence is not true, Hullum and I never had such a conversation.

d.   "Manager constantly stepped in …"  This sentence is also not true.  Hullum never had to take over a DA I was working on to finalize it.  Hullum never had to take over a termination that I was handling and process it.

44.  <u>September 28, 2015</u>.  The HRM referenced here is Yessica Adriano, and we never had a conversation like the one she describes here.  She never told me that my job required a high level of efficiency.  It did, but she didn't ever tell me that.

13

45.   <u>October 12, 2015</u>.  The investigation checklist was a project that I and several other HRBPs started working on about ten months earlier.  By October 12, 2015, the project was finished.  Adriano went over the final documents with other Human Resources Managers and the HR Director, Stephanie Elad.  Adriano told me Elad wanted one thing changed, and she would do that herself.  It's not true that I asked Adriano for assistance with the investigation checklist.

46.   <u>October 29, 2015</u>.  "Brad, site Director …"  This was a Thursday.  On Monday and Tuesday of this week, I was out of the office attending a conference sponsored by SHRM (Society for Human Resource Management).  On Wednesday, I saw that three separate business units had asked HR to prepare some DA's, and so far no one had done anything about them.  I sent an email to the AVP over each department letting them know I'd been out for two days, but the requests have been received and they would be ready no later than Friday.  A true and correct copy of my email to the AVPs is attached, App. 87.  On October 29, 2015, Brad Denetz came into the HR offices to discuss something unrelated to the DAs, and he talked with Adriano and me.  During the conversation, he asked about the status of the DAs, but he did not say he needed them ASAP.  Later that day, in an instant message conversation with Adriano, I updated Adriano on the status of the DAs.  App. 88.  She did not say that any of the DAs needed to be done ASAP.  She did not advise me that DA's are time sensitive.  I do recall her telling me to let her know if I was ever behind so others could assist.

47.   <u>November 6, 2015</u>.  Sabrina Boyd was reviewing an employee's request for time off due to a death in the family.  Sabrina came to my office, and she told me she was suspicious about the request.  I did a quick Google search, and we confirmed there was good reason to be suspicious.  It was less than ten minutes.  Elad then came into my office and told us to quit

spending time on this, so we did.  The statement about not following Elad's instruction and wasting additional time is false.  When she said stop, we stopped.

48.    <u>November 9, 2015</u>.  No such feedback was provided.  The first time I heard that there was a concern about this issue was on January 15, 2016, when Adriano put me on a PIP and I saw this entry in the timeline.  It had not been discussed before that.

49.    <u>November 17, 2015</u>. The first paragraph for this date in the timeline is false.  Adriano never reminded me about prior notification about leaving early.  As the documents show, I always gave such notification and either got approval or did not take off.  Adriano never told me "the team" had to do anything to cover for me.  There is some truth to the second paragraph, I did at times say the workload was overwhelming, but Adriano never did anything to balance out the workload amongst the HRBPs.

50.    <u>November 20, 2015</u>.  Late in the day I got a call from Jeff, a manager at 8585 in Dallas.  He had an issue with an employee at that location.  He needed someone from HR to talk to the employee, and to follow up if necessary.  Hortensia Perez was the on-site HRBP at that location, so it made sense for her to speak to the employee since she was already there.  I spoke to Adriano and cleared that plan with her.  Otherwise, I would have handled it.

51.    <u>November 23, 2015</u>.

   a.    The standing rule for processing employee resignations was to have them done by the end of the business day following the resignation.  I learned of this employee's resignation Monday morning when I checked my email, and I planned to process the termination that day.  Before I did so, Adriano told me she would do it.

b.  Regarding the last sentence in this first paragraph, "the situation was mishandled and was not followed up on," I was not at fault in how the earlier situation was handled.  Here is the background on this.

   i.  On October 19, 2015, an AVP named Tara Stewart asked me to sit in on a meeting the next day with an employee named Deirdre Crouch.  Stewart was already working on this issue with Misty Donnell, an HRBP at the North Richland Hills location, so my involvement was limited to this one meeting.

   ii.  Stewart led the meeting and asked questions.  She was able to identify a few discreet issues, and she assured Crouch that she would follow up and try to resolve the conflicts she had with her manager.  The meeting lasted over an hour, and it ended with Crouch stating that she felt better.  That was the end of my involvement, Stewart did not ask me to do anything else.  I also knew that Misty Donnell was working with her, so there was nothing further for me to do.  I later wrote a summary of this meeting. App. 86.

   iii.  After Crouch resigned a month later, Adriano later did an investigation and wrote a summary.  App. 120-122.  It says I should not have met with Stewart and Crouch together because Crouch had previously mentioned her discomfort with Stewart.  I had no say over who was going to be at this meeting, I was just doing what an AVP asked.  This criticism is baseless.

iv.  I did not assume the responsibility of conducting the investigation.  I did only what Stewart asked me to do, and I knew she was working with another HRBP on the matter.

v.  I dispute the contention that I concluded none of Crouch's complaints were substantiated.  The investigation summary I wrote does not include this conclusion, and I never said this to Adriano.

vi.  I never told Adriano that I did not read Crouch's entire email, and I did not tell her that I did not believe Crouch.  Adriano also says there was no follow up.  Because the matter was being handled by others, there was nothing further required of me.  If this had been my investigation and I failed to follow up, this could be a valid criticism, but given my limited role with this employee's issues it is not.

vii.  There is evidence indicating that whoever was in charge of this investigation could have done better.  For example, in an email dated November 24, 2015 describing the events, Hullum said: "There were too many hands in this situation, with the confusion as to who was handling what/based on location/departments. Jodi, Misty and I were on one page, and Reena and Tara were on another page. In the end, I believe Tara ended up making her own decision and placing the Associate on the DA, which I thought was a Final."  A true and correct copy of this email is attached, App. 94.

viii.  Adriano did not reprimand me, or tell me I must investigate with an open and fair mind.

17

52.    <u>November 23, 2015</u> (second paragraph).  This was a termination due to falsification of time, and my termination request clearly stated the basis for termination.  It was not vague.  Adriano did later ask me for my notes from a meeting, and I sent them, but she never asked me to revise and resend the termination request.  Regarding the fact that I and two others met with the associate, Adriano said nothing about that to me at the time.

53.    <u>November 24, 2015</u>.  I saw that another part of the HR department was asking us for help with some compliance issues – paperwork we needed to do to comply with regulations that applied to Santander because we did consumer lending.  This was not a part of my job.  I was willing to pitch in and help, but I did not want to do all of them myself because it would take me away from doing things that I was responsible for.  In an instant message, Adriano asked me what else I had going on.  I did not respond in detail right then because I had to leave for a doctor's appointment, so I suggested we discuss it when she had time.  A true and correct copy of these messages is attached, App. 95.

54.    <u>December 8, 2015</u>.  Adriano did not mention this to me in December, I saw the comments about this in the timeline for the first time in January 2015.  I had helped a manager in the credit cards group, Jeff, with some employees who were bickering with each other.  I suggested transferring one of the employees, which is something we often did in such situations.  He agreed with my suggestion, and it solved the problem.  I handled the matter start to finish.  If the manager or his AVP had asked to have a different HR member review and finalize the case, normally this would have been done, but in this instance that did not happen.  I don't know what the timeliness issue mentioned here was, Adriano never told me.

55.    <u>December 22, 2015</u>.  I wish I knew which "Senior leadership members" Adriano is talking about here so I might know what Adriano thinks I did.  But without the specifics, it's

impossible to defend against her accusations here.  All I can say is that I never spoke to one of the business leaders or managers about anything they said about me to my supervisors.

56.   <u>December 28, 2015</u>.  On this issue, Adriano claims that I should have done something that was not possible.  Here are the facts:

    a.   Pay day at Santander was every other Friday.  All time had to be entered into Kronos (a software program) and audited by close of business on Monday before pay day.  December 28, 2015 was a Monday preceding payday.  That afternoon, another HRBP, Whitney Andres, realized we had a problem.  For several employees who had worked on Christmas, their time was not coded correctly in Kronos, and there were several steps that needed to be performed to correct it, or these employees wouldn't be paid for working on a holiday.  Andres sent an email, and I got busy working on the issue along with some of the other HR professionals at the other affected locations.  Adriano did not ask me to work on this issue.  She was off that day.

    b.   One of the steps that needed to be completed involved the time audit in Kronos.  This is something only the HR Generalists did, and none of the HRBPs were trained on this.  All of the HR Generalists at the locations affected were off that day, which should not have ever happened on a Monday preceding pay day.

    c.   Adriano claims that I should have worked with peers and found a solution, but that was not possible.  I did not have the proper training to do the Kronos audit, and no one else working that day had such training either.  Adriano (who was also off that day) spoke to Sabrina Boyd.  To her credit, Boyd stepped in and did all

19

the work in Kronos necessary for the payroll to be corrected in time. A true and correct copy of emails we all exchanged that day is attached, App. 133-135.

d. Adriano never told me I should have handled this differently. If she had, and we had discussed it, she might understand why she is wrong about this issue. At the time, Adriano said nothing to me about the way I handled things except for an email saying "Thank you Reena!!" A true and correct copy of this email is attached, App. 136.

The Second PIP Begins

53. After expressing my disagreement with the second PIP, I resolved to move forward. The PIP and the 90 Day Action Plan offered me the option of taking training classes, but it was not mandatory, and no courses were specified or recommended. I was always interested in ongoing training and improvement and did training when possible, so I was open to suggestions, but no suggestions were provided.

57. In the 90 Day Action Plan, it said I could shadow another HRBP if I wanted to, but no one ever asked me or told me to do this. App. 153. I question this suggestion because I was the one who helped teach and train the other HRBPs. In my 2014 Annual Performance Review, my HR Manager (Hullum) noted in her comments that I was good at helping/training other HRBPs. App. 51-52, 60.

58. The first PIP said I had difficulty meeting deadlines, which I disagreed with. No examples were provided, but from December 1, 2015 going forward I was attentive to this.

The First Biweekly Meeting, and Subsequent Events

59. On January 29, 2016, I met with Adriano and Elad. This was the first biweekly meeting required as part of the PIP. They had no criticisms to share, and the meeting was

uneventful.   As previously instructed, I wrote a recap of the meeting and sent it to Adriano within 48 hours.  App. 175.

60.      In early February 2016, I investigated a confrontation between employees named John and Monisha.  On February 10, 2016, I sent an investigation summary about John to Adriano by email.  A true and correct copy of this email is attached, App. 180-181.

61.      On February 12, 2016, I talked to Adriano and Elad about the two investigations. Elad asked me to move some text ("email from John Leavell's wife") from "Confirmed Allegations" to the "Unconfirmed Allegations" section of the summary.  I made the change Elad requested, and I sent the revised summary to her on February 16.  App. 187.

62.      I had the Monisha investigation ready to send on Monday morning, February 15, 2016.  We were following new procedures for termination requests and investigation summaries, and before I sent everything to Elad I needed clarification from Adriano about the process.  I sent her an instant message at 9:57 a.m. asking her a question, thinking it was better to get it right the first time instead of having to fix it later.  App. 182.  After Adriano answered my question, I sent the Monisha investigation summary to Elad at 12:43 p.m.  App. 184-185.  I would have sent it Monday morning, but the delay getting an answer from Adriano pushed it into early afternoon.

The Second Biweekly Meeting

63.      On February 17, 2016, we had our second biweekly meeting.  Elad and Adriano asked me a few questions about a time study I turned in, but they did not give me any instructions to do the time study differently or to include more detail.  Rather, Adriano told me I could stop doing the time study, and she later confirmed this in writing.  App. 225.

64.      In place of the time study, they assigned yet another task: to do a weekly email providing information about the disciplinary actions and investigations I had worked on during

the week, and send it to Adriano by 5 p.m.  App. 225.  Unlike some other instances, this deadline was specific, and I always met it.

65.    We also discussed the Monisha and John investigation summaries, and they claimed I submitted the Monisha summary late.  I explained the delay waiting for an answer from Adriano, but they insisted it was still a missed deadline, and we left it at that.  There was no extensive coaching regarding the timeliness of my work.

66.    Elad and Adriano did not provide extensive coaching about following instructions when conducting an investigation.  Adriano brought this up as an issue later, after the meeting. In my meeting recap, I mentioned Elad's February 12 request asking me to move a piece of text. App. 210.  In her response, Adriano claims the instruction was to remove the text, and I failed to follow that instruction.  App. 210.  Adriano was wrong about the instruction.  I did exactly as instructed, and when I sent the revised meeting summary to Elad, she replied with an email stating "Approved."  App. 184.

67.    In the February 17, 2016 meeting, Adriano did not ask me to provide an increased level of detail in my next meeting recap.  I dispute her assertion that she asked me for "a written summary detailing [our] meeting."  It's true that in an earlier meeting, Adriano asked me to send her a recap of our meetings no later than 48 hours afterwards.  On February 17, however, there was no additional discussion about providing a new level of detail in the meeting recaps. Therefore, after the meeting, I wrote and sent a recap that was similar to the first recap, which was a general overview of what we discussed. App. 201.

68.    Adriano responded on February 19, 2016 by claiming I failed to meet expectations that she never set about the level of detail for the recap, and she told me to redo the recap and add significantly more detail.  App. 203.  I forwarded the emails to Elad hoping she

could help us avoid future miscommunications about expectations, App. 206, and I redid the recap to include all the specifics of everything we discussed.  App. 209-211.

69.     It was only afterwards that Adriano clarified her expectations about the level of detail to include in these recaps.  She explained her expectations in an email dated February 22, 2016.  App. 209.  If she had given me these instructions before I sent the second recap, I would have complied and sent a detailed summary.  Going forward, I did what she asked, and it was never an issue again.

70.     In this same email, Adriano said she would send me a response to each one of my recaps within 48 hours after she received my recap.  App. 209.  Adriano did not keep this promise even once.  We had two more biweekly meetings after this.  Our third biweekly meeting was on March 8, 2016.  I sent my meeting recap to Adriano that same day, and Adriano did not send her response until March 22, 2016 (14 days later).  App. 244-245.  We had a fourth biweekly meeting on March 23, 2016.  I sent my meeting recap on March 24, 2016, App. 246. Adriano did not provide a response until she handed it to me during our last meeting on April 15, 2016 (22 days later).  App. 263-265.  By this time, Santander had already made the decision to fire me, so the comments were too late to be of any assistance with the stated goal of improving my performance.

The 30-Day Review

71.     On February 26, 2016, I met with Elad and Adriano, and they gave me a written 30-Day Review.   App. 217-225.  There were no new criticisms.  In the section titled Consulting, it stated: "During these past 30 days, you have lead four investigations each of which we have discussed and agreed upon course of actions to take-this has worked out well, and we will continue this strategy."  App. 217.

The Third Biweekly Meeting

72.     On March 8, 2016, I met with Elad and Adriano for the third biweekly PIP meeting.  They acknowledged my attendance was good and not an issue.  They acknowledged that time management was good, and in her subsequent recap Adriano thanked me for helping with administrative tasks.  Neither supervisor said I needed to improve with respect to time management or with effective work habits.  App. 244-246.

73.     With respect to consulting, Adriano announced a change of direction for HRBPs doing investigations.  Instead of partnering with her during an investigation, she asked me to act more independently and make my own decisions on some things.  I said I was willing to do so if that was the direction we were moving in, but I was hesitant to start this while I was on a PIP because it might backfire on me.  Adriano responded to this as follows: "We stated we understood your hesitation, however the expectation of our HRBPs as consultants is to work independently in anticipating and making judgment calls as necessary, and work with management in escalated situations."  App. 244.

74.     Neither supervisor said anything in the March 8 meeting about me constantly interrupting Adriano during investigations.  Neither supervisor said anything to me about training opportunities in this meeting.

The March 11, 2016 "Misrepresentation"

75.     Elad later accused me of misrepresenting something to her in an email I sent on March 11, 2016.  Understanding this requires a little background.

76.     For almost one year, I had been working on a project intended to reward employees for perfect attendance.  Every month or two, I sought assistance from HRIS (Human Resources Information Systems) to get information concerning attendance.

77.     This proved to be difficult, because the computer systems Santander used could not automatically provide the information we wanted.  Over time, we tweaked and narrowed the criteria we would use to determine perfect attendance, and HRIS made some technical progress to help get that information from our timekeeping software.  I was the main point of contact between (a) the HR and business managers designing the project, and (b) and the HRIS employees getting us the data.

78.     On March 10, 2016, an officer working on the design of the project asked Stephanie Elad and me to tell him how many employees had perfect attendance during the last three months of 2015.  I said I would find out.  App. 227.

79.     On March 11, 2016, I sent an email to Elad saying that I was partnering with HRIS to assist getting the information.  App. 229-230.  A few minutes later, I emailed HRIS asking them for the specific data.  App. 231-232.

80.     I later learned that Elad construed my statement "I am also partnering with HRIS" as a false representation that I had already asked HRIS for the data, before sending her this email.  She told me this was misleading.  I apologized for the miscommunication, and explained I was and had been partnering with HRIS for months, and would do so again to get this information as well, and that's all I meant when I emailed her that I was partnering.  I was not trying to make it sound like I had already asked for the information.

Fourth Biweekly Meeting

81.     On March 23, 2016, I had my fourth biweekly meeting with Elad and Adriano.  As with the last meeting, they had no criticisms about two of the three categories, attendance and time management.  App. 263.

82.     With respect to the third area, consulting, they reiterated points made in the last meeting about starting to exercise more independent judgment during investigations.  App. 263. They did not say I was falling short in this area.  Adriano did not claim I had been interrupting her too much with questions, and she did not say I was impairing her productivity.

83.     It was in this meeting that I learned of Elad's belief that I tried to mislead her on March 11 when I said I was partnering with HRIS.  Elad never allowed the possibility that we miscommunicated, and she brought this up yet again at the next meeting we had.

The Talking Points for the Perfect Attendance Program

84.     On March 28, 2016, Elad sent me an email about the perfect attendance program I was working on, stating: "I'd like to provide the business with talking points to introduce and cascade this program. Please put something together for my review by EOD Friday.  Yessica should review and provide input prior to sending to me.  This communication will go to the Associate level." App. 248.

85.     That Friday, April 1, 2016, I had set aside time to prepare the talking points Elad wanted.  However, Adriano insisted that I prioritize an issue for one of the managers, Jorge Munoz, instead of working on the talking points.  I did the work on the investigation, and then I closed my door to work on the talking points.  I was also reviewing some attendance data that Elad wanted, so there was a lot to finish by the end of the day.

86.     Adriano left early that day without telling me or checking on the status of this project, even though she knew she was supposed to review it that day before I sent it to Elad.  I was able to reach her by phone and have her review the talking points I had written, and then I sent it to Elad at 7:17. App. 252.  I stayed late and put in the extra work required to get this to Elad on the day it was due.

87.    Elad nevertheless sent an email to Stephen Shaffer accusing me of missing the deadline.  Her email she said the deadline was "EOB" (end of business) instead of "EOD" (end of day), which was not true.  App. 251.  Elad misrepresented the facts to Shaffer to make it sound like I missed a deadline.  Shaffer replied telling her she should have been more specific and said it was due at 5:00 pm.  App. 251.

<u>The Brittany Brodie Investigation</u>

88.    The week of April 4, 2016, Adriano and I both investigated a situation involving an employee named Brittany Brodie.  My portion of the investigation summary was finished on Wednesday, April 6, 2016, and I sent an instant message to Adriano asking if she had her part finished so I could submit the final report.  She said she had not finished, so we agreed that I could submit the final report the next day.  App. 256.  Adriano did not provide her part of the investigation until Friday, April 8, 2016.

89.    On Thursday, April 7, 2016, an Assistant Vice President asked us to interview another witness as part of this investigation, which I did that afternoon.  On Friday, April 8, 2016, I still had not received Adriano's portion of the report, so I sent her a draft of the report with a reminder in red text to add her portion in the body of the report.  App. 391-392 (see the comment: "Yessica, could you pls fill this part in?).

<u>Our Last Meeting – 4/15/16</u>

90.    Adriano never responded to my recap of our March 23, 2016 meeting, and I thought that no news was good news.  However, in our next meeting, which proved to be our last, I learned I was wrong, and things had been simmering unmentioned for weeks.

91.    On April 15, 2015, I met with Elad and Adriano for a 90 Day Review.  Adriano handed me a document that said, at the top: "March 23, 2016 Meeting Recap."  A true and

correct copy of this document is attached, App. 263-265.  I was also given a document that said

90 Day Review at the top.  A true and correct copy of this document is attached, App. 266-268.

92.     In the first document, the meeting recap, there was nothing negative noted

regarding attendance or time management.  App. 263.

93.     Under the category of consulting, Adriano went on at length about the alleged

misrepresentation on March 11, 2016, and she added more criticisms about that incident that had

not been mentioned at all during the one-month plus since then.  She said I waited too long to

contact HRIS to ask for the information the officer wanted, I should have asked "much sooner."

App. 264.  The officer asked for the information on a Thursday, and I asked HRIS for the

information the next day.  I could not have done it "much" sooner, and even Elad did not see a

problem with the fact that I did it the next day.  App. 249.  Adriano falsely accused me of

blaming HRIS and the officer for delays getting the information from HRIS.  App. 264.  I never

blamed them for delay.  Adriano, Elad and I all expressed frustration about the process for

getting the information, App. 233, but I never blamed HRIS or the officer for anything.  Adriano

also claimed Boyd had to step in, and she identified and overcame issues that I could not.  App.

264.  This too was false.  At my request (made via email while I was out on vacation) Boyd sent

an email to HRIS asking if they were working on my March 11 request for information, App.

239, and she sorted some of the information from HRIS according to my instructions.  But I was

otherwise responsible for all aspects of the communications to get the data we needed from

HRIS.

94.     Another issue mentioned for the first time in this document was the accusation of

missing Elad's EOD deadline to send the talking points, a deadline I had not missed.  Adriano

accused me of poor time management because I worked on an investigation that day before the

talking points were finished.  App. 264.  I did so only because she told me to make the investigation the top priority that day, so if it was poor judgment to prioritize the investigation, it was Adriano's poor judgment, not mine.

95.     Yet another issue raised for the first time in this document concerned the Brittany Brodie investigation.  Adriano claimed I should have submitted my investigation summary sooner, App. 265, but I could not have done it any sooner.  As discussed above, I had everything done on a Wednesday, but I had to wait for Adriano before I could finalize and send the summary.  Then the next day, we had to interview an additional witness.  On Friday I sent Adriano a draft of the investigation summary that was as close to final as I could get it without Adriano's input, and she never responded to me.  I wanted her to add her portion to the body of the summary and send it back to me along with her notes; only then would I have been able to write the final summary and then send it to Elad with both her notes and mine attached.  Instead of responding to me, Adriano finished writing the summary, and she emailed it to Elad.  Adriano claimed I erred by failing to submit my investigation notes when I sent her my summary, but that is only something we do when sending a final investigation summary.  What I sent Adriano was only a draft, because she did not have her piece ready yet.  Plus, I had previously sent my investigation notes to Adriano, so there was no reason to send them again as an attachment to the draft of the summary.

96.     Adriano also wrote that the summary was defective because it did not include a section describing the employee's prior DA history.  App. 265.  However, the new template we were using for investigation summaries, which she approved, did not include such a section.  Furthermore, several weeks earlier, Adriano sent me an investigation summary she wrote, and

she told me I should use it as a guide when drafting my summary.  This guide she sent me did not include a section for the employee's prior DA history.  App. 176-178.

97.    The 90 Day Review said I met expectations with respect to Attendance.  App. 266.

98.    Under time management/effective work habits: (a) Adriano reiterated erroneous criticisms concerning the Monisha and Brittany investigations; and (b) she again said I missed the deadline for the Monisha investigation (ignoring her delay answering my question that morning) and missed the EOD deadline for the talking points which I didn't miss.  App. 266.

99.    Regarding "timely follow up," she discussed some things I have previously addressed.  App. 266.  It also says: "DA's being completed within 24 hours."  App. 266.  If she meant to say I was not meeting this expectation, she is wrong, I was meeting this expectation.  At no point during the PIP before now had anyone claimed I took longer than 24 hours to a DA.

100.    In "Thoroughness and Quality of Work," Adriano repeats the false accusation about failing to follow an instruction concerning the Monisha summary (it was the Leavell summary, and I followed the instruction) and she again accused me of mistakes regarding the Brittany Brodie summary that were not mistakes.  App. 267.  The next part about changes that needed to be made to the talking points "to make them business presentable" (App. 267) is a fabrication.  Stephanie asked me to get her "something," which I did, had Adriano review, and I submitted.  No one said I needed to send something to Elad in a certain format or a certain font.

101.    The next point about teamwork in completing administrative tasks (App. 267) had not been discussed since the March 8 meeting where Adriano acknowledged that I was doing more and thanked me for it.  It's not true that I failed to meet an expectation in this area at any time thereafter.

102.     Furthermore, the statement in this document about the total number of DAs at the Lewisville location is not credible.  The document says there were 568 DAs for this site in March/April.  App. 267.  If true, that would mean that more than two-thirds of the employees there were issued a disciplinary action during a two-month period.  During all the years I worked at Lewisville, there were consistently fewer than 100 DAs in any given month, far fewer than 100 in most months.

April 19, 2016

103.     On April 19, 2016, I sent an email to Pamela Blackburn once again asking for her to intervene.  I attached the documents handed to me at the April 15 meeting, to which I had added my notes and comments.  A true and correct copy of this email is attached, pages are marked App. 269-279.

104.     Later that day, Adriano and Elad told me my employment was being terminated.  I went back to my desk and Adriano handed me an empty box.  A security guard walked me outside and all the way to my car.

Final Observations

105.     My performance was as good as or better than any other HRBP in the company, but other HRBPs were treated better than I was.  From December 1, 2015 through April 19, 2016, no other HRBP was put on a PIP and falsely accused of things that were not true, and none were fired except me.  I was the only HRBP that was pregnant during this period.

106.     Santander claims that Sabrina Boyd replaced me.  Sabrina Boyd was not pregnant at the time of my termination, so if this is true, I was replaced by an employee who was not pregnant.

31

107.    Santander claims that several female employees were treated well during their pregnancies.  Maybe they were, but none of them worked for Adriano or Elad during their pregnancies, so the positive experiences of those other employees seem irrelevant.

108.    In Defendant's brief, it says Elad and Adriano "identified Mathew's performance failures in the following areas."  Taking these one at a time:

    a.  "providing detail in the work she submitted."  This might be a reference to the termination request they criticized as vague, but that issue (discussed above in paragraph 52) was not discussed at all on April 15.

    b.  "submitting accurate work product."  We had no discussion about this on April 15.

    c.  "meeting deadlines."  Possibly a reference to the Monisha and Brodie summaries, already discussed.

    d.  "timely following up when working on a project." We had no discussion about this on April 15.

    e.  "providing thorough and quality work product." We had no discussion about this on April 15.

    f.  "contributing to the team by completing administrative tasks as needed."  There was no discussion of this issue at the April 15 meeting.  This was not discussed again after the March 8 meeting when they acknowledged I was meeting expectations in this area.

109.    Next, the brief says that in the April 15, 2016 meeting, "They also informed Mathew that they felt she did not meet expectations in her consulting, as exemplified by:

a. "failure to push back on the business when necessary to complete her job." We had no discussion about this on April 15, and I have no idea what they might be referring to here.

b. "demonstrating a lack of accountability for her own behaviors." We had no discussion about this on April 15. Furthermore, with respect to the times where I agreed I could have done better, I admitted to it and accepted responsibility (see the Timeline, November 6, 2015 and November 23, 2015, first paragraph).

c. "inappropriately addressing the business clients after they provided Ms. Perez with negative feedback regarding her performance, by challenging the feedback the business clients provided to Ms. Perez." Elad and Adriano accused me of this in the January 15, 2016 earlier meeting, but it was not discussed on April 15. When the accusation was first brought up, I disputed it and I asked who had I supposedly approached. They never gave me a name.

110.    Next, the brief talks about feedback they received from business clients. They did not say who made these comments or when. I was doing all of my DAs within 24 hours, so I dispute the comment about getting them in 48 hours, if that person was talking about me. These are not valid or accurate criticisms of my performance. Without more details I can't refute the specifics, but Santander has not given me any details about these comments even though I asked them to do so in discovery.

111.    Santander claims I was defensive in the April 15, 2016 meeting, but I was not. In all meetings after December 1, 2015, I resolved to maintain my composure and stick to the facts. In many instances I pointed out that things they were saying were not true, but I was calm and stuck to the facts. I never claimed I was getting picked on.

33

112.     I accepted responsibility for my actions when the criticisms aligned with the facts, but I did not accept their false and misleading accusations.  I never said Adriano was a bad manager.  I never said she failed to check my work, that she did not ensure I met my deadlines, and I did not say that she did not often enough help me or remind me of things.

**[signature page follows]**

I declare under penalty of perjury that the foregoing is true and correct

Executed on September 20, 2024

Reena S. Mathew



Job Title:        Human Resources Business Partner
Job Code:         TM0003
Classification:   Exempt
Job Level:        III
Department:       HR
Reports to:       Manager, Human Resources
Grade:            9


Summary of Responsibilities:
The Human Resources Business Partner (HRBP) collaborates with the business and HR team to implement HR initiatives in line with the organization's strategic objectives. By developing strong internal client relationships, the HRBP helps drive people management initiatives. Key responsibilities will include providing HR consultation, policy interpretation, strategic planning, and administering HR projects and program implementation for assigned business units.


Essential Functions:
Assists with all human resources functions, including but not limited to:

- Builds collaborative relationships and gains credibility with operational management and associates to identify HR needs and work collaboratively to implement ideas and strategies
- Proactively minimizes legal risk by ensuring clients' compliance with company policies and procedures. Makes recommendations, provide solutions, and resolve issues as challenges arise
- Provides expert advice to local management on a range of individual and collective HR issues in accordance with company policies, procedures and Best Practice to deliver solutions on employment issues
- Seamlessly executes a full range of duties aligned to deploy HR Strategy and objectives into client group
- Leads employee relations for the organization including coaching on HR related issues, disciplinary actions, HR investigations, and separation
- Contributes to the development of HR policies which are aligned to business goals and legal requirements
- Analyzes HR data for client group/business area to identify opportunities for improvement and implements solutions to enhance service quality and cost effectiveness (i.e.: Labor Turnover trends, absence management, etc.) Identifies training needs within business area and works with Talent Solutions to ensure availability of associate development is aligned to functional and organizational objectives
- Works with Talent Acquisition to source and attract top talent into business area through targeted recruitment activities (i.e.: Behavioral Interviewing) to ensure improved talent attraction in achieving business goals that model company values.
- Communicates changes/development in operational HR Policy procedures within business area
- Integrates Company Values into all activities to drive alignment and organizational improvement through inspiring and motivating people
- Educates business area to drive employee support requirements through self-service
- Collaborates with other HR Operations Partners to ensure coordination, consistency and cultural sensitivity in the delivery of all HR related activities
- Assists in ongoing administration of recordkeeping in associate files as well as HR system of record
- Assists, supports and administers reward and recognition programs, new employee orientation / welcoming programs as needed

App.064                    SC008348



- Fosters strong partnership with HR colleagues to support all HR strategies

Other Functions:
- Special projects as required
- Performs other duties as assigned
- Facilitate and/or train as needed

Requirements:
- Bachelors Degree in Human Resources or related field required; Continuing education as required to stay abreast of legal issues is required
- Four (4) to six (6) years human resource related experience as an HR business partner, generalist or specialist; strong business acumen is required; Certification in human resources is desired (PHR, SPHR)
- Must be an effective verbal and written communicator with strong interpersonal, problem solving and conflict resolution skills
- A flexible and professional approach to an evolving and dynamic environment is essential.
- Successful track record of delivering superior client service
- Demonstrated ability to work under pressure, appropriately prioritize and organize work effectively.
- Excellent Microsoft Office skills required; HRIS (PeopleSoft) and ATS knowledge strongly preferred
- Must have ability to maintain confidentiality

Working Conditions:
- Extended working hours may be required as dictated by management and business needs.
- Travel to multiple facilities may be required.
- May be required to lift, push, or pull materials weighing up to twenty (20) pounds.
- May be required to sit and review information on a computer screen for long periods of time.
- May require repetitive motions of the hands and wrist related to writing and typing at an electronic keyboard.
- Corporate / satellite office role.

Employer's Rights:
This job description does not list all the duties of the job.  You may be asked by your supervisors or managers to perform other duties.  You will be evaluated in part based upon your performance of the tasks listed in this job description.

The employer has the right to revise this job description at any time.  This job description is not a contract for employment, and either you or the employer may terminate employment at any time, for any reason.

| Associate Name (Printed) | Associate Signature | Date |
|---|---|---|
|  |  |  |

App.065   SC008349



**Revision History**

| Date | Version # | Change | Ref. Section | Amended By |
|------|-----------|--------|--------------|------------|
| 3/20/2013 | 1.0 | New | All | H. Hole |
| 9/12/2014 | 1.1 | Grade increase (to reflect current grade) | Pay Grade | A. Lovelle |

App.066

SC008350

**Mathew, Reena Sara**

**2015 Mid-Year Review (Non-Managers)**

HR Business Partner

Manager: Angelina Hullum

Evaluated By: Angelina Hullum

Organization: Angelina Hullum Supervisory

Location: Lewisville

01/01/2015 - 12/31/2015

## Overall

### Manager Overall Evaluation

**Comment:**  Continue to push herself to be better. Look for ways to make the LEW site more efficient, train the new managers,and look for trends in the GITK.

### Employee Overall Evaluation

**Comment:**  Continue to monitor daily activities and ensure they align with overall goals such as maintaing compliance, reducing risk and pressing towards career growth goal. In order to do this keep regular pulse with the business whether that is attending meetings or having one on ones. Also, provide comprehensive and timely follow up for any issues/inquiries that arise. Continue to look at processes/policies/GITK (for patterns) and see how they can be streamlined or if on the other hand there are things that are lacking, what can we do to improve the business.

## Acknowledgment

### Manager

| | | | |
|---|---|---|---|
| **Entered by:** | Angelina Hullum | **Date:** | 07/08/2015 |
| **Status:** | Acknowledge Review | | |
| **Comment:** | <u>completed</u> | | |

### Employee

| | | | |
|---|---|---|---|
| **Entered by:** | | **Date:** | |
| **Status:** | | | |
| **Comment:** | | | |

## Goals

### Actively drive, support and enforce risk management standards

Ensure all Advocacy business processes, policies and procedures support regulatory mandates and reduce unnecessary risk to the Associate and the business. Support all compliance related initiatives in relation to Advocacy, Identify potential compliance concerns and surface to HR Compliance, Ensure that my team responds to all Compliance related requests timely and accurately

Due Date: 12/31/2015     Status: In Progress     Completion Date:

| Manager Evaluation | Employee Evaluation |
|---|---|
| Reena stays on top of all compliance issues and is timely when returning any risk event information back to Compliance | *As compliance issues come up, we as Advocacy stay on top of these and are extra attentive since these* |

*types  of issues are what can affect the business in a very  negative way. This may include Information Security,  compliance with regulatory training or even I9's.*

## Create and share reporting to educate business partners on HR trends

Create spreadsheet (using "Get In The Know" format) on a quarterly basis to review trends and any areas of concern regarding demographics, salary and turnover. Once information is compiled, present it to the business.

Due Date:     12/31/2015          Status:     In Progress          Completion Date:

Manager Evaluation

Would like to see Reena pull information in order to become more strategic with her business partners and identify trends. With her tenure and knowledge, she can provide valueable recommendations to the business leaders.

Employee Evaluation

In the process of starting this quarter's GITK. Now that we are aware of how to pull the data, we need to extract questions from business to see what all they would like to see as well.

## Develop processes to develop the skill set of our leaders.

Meet with new managers who become part of SCUSA (either through promotion or external hires) and sit in on side by sides, attend jumpstarts during their first 3-6 months in role. Follow up with HR management/Talent Development and department leadership at the end of each quarter to discuss strengths/weaknesses, concerns, and recommendations.

Due Date:     12/31/2015          Status:     In Progress          Completion Date:

Manager Evaluation

Would like to see more progress in this area. We have many new managers that need training and guideance. Reena needs to spend more time on the floor with all managers.

Employee Evaluation

Early Stage here in Lewisville just hired four managers and will start initiating side by sides, attending their jumpstarts and even provide quick training if needed ie Kronos, WD etc.

## Develop updated investigation matrix along with taskforce team.

Create investigation matrix that will be used internally via HR to determine who would be involved in regards to management in different issues/scenarios per the DA matrix. Matrix will also specify HR involvement and who the issue would be escalated to in the case it needed to be investigated.

Due Date:     06/30/2015          Status:     In Progress          Completion Date:

Manager Evaluation

This goal is almost complete. Looking forward to the final product.

Employee Evaluation

We are in the final phase of wrapping up the document that is part of Isight to ensure that the HR team is communicating as much as possible with the business when it comes to specific issues/investigations that come up.

## Initiate rollout of anti-bullying campaign along with taskforce team.

Formulate rollout of anti-bullying campaign and the different facets including presentation, guest speaker, maintenance-- post rollout. Find a motivational speaker who is able to speak to the topic of bullying and the impact it has not only to the company, but to employee morale and ultimately our bottom line.

Due Date:     07/31/2015          Status:     In Progress          Completion Date:

Mathew 006

| Manager Evaluation | Employee Evaluation |
|---|---|
| We have made progress, but have a lot more work to do in this area. would like to see more ideas and progress in this area now that we have more HR support. | We've definitely made progress on this project as far as coming up with a theme, time (August/2015) and possible guest speaker. Upon announcing the roll out in a manager meeting, management was very excited to hear about the project and expressed interest in assisting as well. |

---

Section Summary

| Manager Evaluation | Employee Evaluation |
|---|---|
| <mark>Reena does a great job with her day to day duties.</mark> I would like to see her spend more time training our managers and working on her projects. | |

## Competencies

### Results Orientation

For a description of Results Orientation, please refer to the Competency Description link above.

| Manager Evaluation | Employee Evaluation |
|---|---|
| | Ensure we are getting the results we desire by partnering with the business and providing them the customer service and the follow up that they need. Continually communicating and completing tasks such as reports, investigations, answering inquiries and assisting with DA/terminations if applicable. |

### Collaboration

For a description of Collaboration, please refer to the Competency Description link above.

| Manager Evaluation | Employee Evaluation |
|---|---|
| Reena does a good job collaborating with members of our team. I would like to see her branch out to other members of HR advocacy. | Collaboration is a daily task whether it be with Payroll, Benefits, or HRIS or other team members. We are constantly collaborating in ways to streamline processes or communicating with one another in our own department for best practices. |

### Interpersonal Savvy

For a description of Interpersonal Savvy, please refer to the Competency Description link above.

| Manager Evaluation | Employee Evaluation |
|---|---|
| <mark>Reena does an excellent job of building rapport with all levels of employees. She is trusted and always professional.</mark> | In order to collaborate, it's important that you have interpersonal skills to compliment that collaboration. On a daily basis we are in constant communication whether that's with the site director, eachother or one of our associates answering an inquiry. Building rapport on a daily basis, we try and build an atmosphere of trust and integrity so that each interaction with HR brings more credibility. |

---

Section Summary

Manager Evaluation                                    Employee Evaluation

## Risk Objectives

### Risk Objective: Policies/Procedures (Operating)

Adheres to standard operating procedures and raises issues or concerns when gaps exist in processes, procedures, policies, etc.

Manager Evaluation                              Employee Evaluation

### Risk Objective: Policies/Procedures (Organizational - Self)

Adheres to all organizational policies and procedures applicable to their role in SCUSA (Assigned Compliance, HR, etc.)

Manager Evaluation                              Employee Evaluation

### Risk Objective: Compliance Training (Self)

Completes all assigned SCUSA compliance training within established time-frames.

Manager Evaluation                              Employee Evaluation

Section Summary

### Manager Evaluation

Reena maintains consitancy when applying policy/procedure. She completes her compliance training as scheduled. She works with Compliance to minimize risk when necessary.

### Employee Evaluation

Being a part of financial company which has now gone public, it's imperative that we keep abreast of federal laws/regulations that keep our company compliant. Being in the HR department is a vital part of that compliance whether it be maintaining consistency from an HR standpoint, being familiar with our policies and procedures and regular mandatory participation in quarterly compliance courses. On target for these objectives and adhere to them on a daily basis.

## Development

### Long term: Breaking down barriers

Additional Information:  Continue to work on identifying issues at different levels of the business and being able to problem solve whether that be a Facilities issue or a strategic operations issue. Being able to adapt to all levels and foresee issues/change.

Status:  In Progress        Relates To:

### Long term: Sr. HR Business Partner

Additional Information:  Become more HR savvy in order to take the next step of growth which would be a Sr. HR Business Partner. Became PHR certified and am now ready for the next step professionally.

Status:  In Progress        Relates To:

### Short Term: Attend more HR meetings outside of SCUSA

Additional Information:  Attend more Dallas HR meetings/SHRM meetings in order to be abreast of laws and changes that are being made to the HR industry.

Status:  In Progress        Relates To:  Collaboration

Mathew 008

**Short term: Attend more internal meetings**

Additional Information:     Attend more internal meetings such as jumpstarts and side by sides to get a better
                            understanding of the business and to learn more about the auto finance industry as a whole.

Status:  In Progress        Relates To:  Collaboration

---

Section Summary

## Manager Evaluation

Reena can continue her growth this year by focusing on helping new managers develop and by working on completing her goals/projects. I encourage her to step out of her comfort zone and find ways to take herself to the next level

## Employee Evaluation

Building rapport with different parts of the business and continually trying to improve and enhance relationships. Taking on extra projects to try and learn new areas of the business as well as enhance knowledge of HR for long term career growth. Attended meetings via Dallas HR to obtain additional knowledge and learn about the current laws and updates and addtionally network with other HR professionals. Have been consistently attending jumpstart/AVP/manager meetings in order to answer any questions as well as learn the business from different perspectives and to have a better understanding of the overall operations of our department.

Mathew 009

**From:** Stephanie Elad <selad@santanderconsumerusa.com>
**To:** Angelina Turilli <aturilli@santanderconsumerusa.com>
**Cc:** Dana Hawkins <dhawkins@santanderconsumerusa.com>, Jessica Gleason
    <jgleason@santanderconsumerusa.com>, Jonathan Morse
    <JMORSE@santanderconsumerusa.com>
**Subject:** RE: Termination Tyrone Wilson [C] (Contract Ended) - Effective Date 2015 01 14
**Date:** Thu, 22 Jan 2015 21:19:49 +0000
**Importance:** Normal

---

Let's revisit tomorrow when we have the entire team together.

---

**From:** Angelina Turilli
**Sent:** Thursday, January 22, 2015 3:18 PM
**To:** Stephanie Elad
**Cc:** Dana Hawkins; Jessica Gleason; Jonathan Morse
**Subject:** RE: Termination Tyrone Wilson [C] (Contract Ended) - Effective Date 2015 01 14

I have met with Reena, however I have noticed Fatma has been responding to these today as "got it". Do we need to revisit?

---

**From:** Stephanie Elad
**Sent:** Thursday, January 22, 2015 3:17 PM
**To:** Angelina Turilli
**Cc:** Dana Hawkins; Jessica Gleason
**Subject:** RE: Termination Tyrone Wilson [C] (Contract Ended) - Effective Date 2015 01 14

Thanks! As we discussed, I would just have a conversation with Reena. This is a new process so I know we are going to have a few bumps.

Jess and I talked earlier – I understand this has been an ongoing issue. As a long term fix, let's have Melissa just process all of the terms due to contract/assignment ending and advise the appropriate business partner once the term has been processed. Please review with Melissa tomorrow and let's also inform the team during our meeting.

Thanks!

---

**From:** Angelina Turilli
**Sent:** Thursday, January 22, 2015 2:52 PM
**To:** Stephanie Elad
**Cc:** Dana Hawkins
**Subject:** RE: Termination Tyrone Wilson [C] (Contract Ended) - Effective Date 2015 01 14

---

**From:** Stephanie Elad
**Sent:** Thursday, January 22, 2015 8:07 AM
**To:** Angelina Turilli
**Cc:** Dana Hawkins
**Subject:** Fwd: Termination Tyrone Wilson [C] (Contract Ended) - Effective Date 2015 01 14

SC001449

Can you look into this?

Sent from my iPhone

Begin forwarded message:

**From:** Dana Hawkins <dhawkins@santanderconsumerusa.com>
**Date:** January 22, 2015 at 7:53:43 AM CST
**To:** Stephanie Elad <selad@santanderconsumerusa.com>, Jessica Gleason <jgleason@santanderconsumerusa.com>
**Cc:** Dana Hawkins <dhawkins@santanderconsumerusa.com>
**Subject: FW: Termination Tyrone Wilson [C] (Contract Ended) - Effective Date 2015 01 14**

Good morning,

This termination was processed on 1/21/2015 with an effective date of 1/14/2015.  Melissa Lawson completed the term process in Workday.  Please provide a timeline of events including:

- ? When we were notified of the term 1/14/15 at 12:22 pm
- ? Who notified us of the term Vanessa Trevino
- ? Any remediation efforts Melissa sent to Reena and Dean at 12:30pm
Reena was sent the email, and asked to show Dean how to process a term. Reena missed the email. Melissa received a second email on 1/21/15 stating that the term had not been processed, so she went in and immediately processed the term. This happened prior to our added the process to have HRBPs sending a notification to Melissa that they had completed the process. Melissa did not follow up with Reena or Dean to see if the term had been completed on 1/14/15.

Please let me know if you have any questions.

Dana

---

**From:** workday@santanderconsumerusa.com [mailto:workday@santanderconsumerusa.com]
**Sent:** Wednesday, January 21, 2015 2:44 PM
**To:** Shaquaylon McNuckles
**Subject:** Termination Tyrone Wilson [C] (Contract Ended) - Effective Date 2015 01 14

Tyrone Wilson [C] (Contract Ended) has been terminated from Workday ( employee ID 992790 , department 036005 Bankruptcy , effective date 2015 01 14 , hire date [not available] , Location North Richland Hills , State Texas ) .

Please remove system access effective immediately.

Business Process: End Contract: Tyrone Wilson [C] (Contract Ended)
Subject: Tyrone Wilson [C] (Contract Ended)
Details: End Contract for Tyrone Wilson [C] (Contract Ended) effective on 01/14/2015

**Angelina Hullum**

| | |
|---|---|
| **From:** | Stephen Shaffer |
| **Sent:** | Wednesday, January 27, 2016 8:24 AM |
| **To:** | Angelina Hullum |
| **Subject:** | FW: Last Chance to Register for February Monthly Luncheon |
| **Attachments:** | Ethics in HR - DHR.pdf |

Here it is

## Stephen Shaffer

Santander Consumer USA Inc.
VP Human Resources Business Partnership

| | |
|---|---|
| PHONE | 214.722.4580 |
| MOBILE | 469.236.5931 |
| EMAIL | sshaffer@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |

**From:** Reena Mathew
**Sent:** Wednesday, January 20, 2016 11:39 AM
**To:** Stephen Shaffer
**Subject:** FW: Last Chance to Register for February Monthly Luncheon

Hi Stephen,

Thank you again for meeting with me today. I wanted to send you the whole email with the attachment included.

As I mentioned, this goes against the first bullet on my timeline and it's inaccurate as the information requested is below. I will send you a document recapping my understanding of the conversation we had today, but again, I don't agree with the majority of the items (I take ownership of two of them listed) that were listed on the timeline.

I thank you for your time this morning but truly do hope you take some of my feedback as an associate in HR so someone else doesn't go through something as disheartening as this. I truly loved coming to my job but this has taken a toll on me especially since I cannot agree with the majority of the statements (some are completely untrue ie the first bullet) being made and how this whole thing was handled from the onset.

I will most definitely do my part to work through this and meet the objectives that management has set, but if someone is going to be formally managed for performance, they need to be clearly aware of what is going on before it gets to this point.

Thanks again,
Reena

**From:** Reena Mathew
**Sent:** Thursday, February 12, 2015 4:32 PM
**To:** Angelina Turilli
**Subject:** RE: Last Chance to Register for February Monthly Luncheon

1

Hi Lina,

Attached is the PPT. It was a great topic--Ethics and how it relates to HR and what our duty is to the company. As HR professionals, we are all put in situations where ethics may be questionable and we have to be able to discern whether or not something is right or wrong. We then have to decide what we are going to do from that point to correct the issue so it falls in line with our objectives and our mission statement as a company. Ethics flows from the top to the bottom so if you have an ethical person at the top of any org/dept, the same values will flow down. The same is true for the opposite as well. There are times too when we feel something is right isn't legal so we have to ensure we as HR professionals stay the course of what's legal. It can be a fine line, but in the end we have to ask ourselves questions of how our decisions affect not only us, but the dept, employees and company as a whole.

Let me know if you need anything else ☺

Thanks,
Reena

---

**From:** Angelina Turilli
**Sent:** Wednesday, February 11, 2015 2:46 PM
**To:** Reena Mathew
**Subject:** RE: Last Chance to Register for February Monthly Luncheon

I would love to see the ppt as well, however what I'm looking for is a summary from you, particularly what you got out of the seminar.

---

**From:** Reena Mathew
**Sent:** Wednesday, February 11, 2015 12:59 PM
**To:** Angelina Turilli
**Subject:** RE: Last Chance to Register for February Monthly Luncheon

Will do Lina! Would it be ok if I provide a copy of the ppt ?

---

**From:** Angelina Turilli
**Sent:** Wednesday, February 11, 2015 12:54 PM
**To:** Reena Mathew
**Subject:** RE: Last Chance to Register for February Monthly Luncheon

Reena,

In an effort to ensure that these luncheons are beneficial and providing value to you and the business, please provide a summary of what you learned from attending the luncheon.

Thank you,

Angelina

On Feb 5, 2015, at 10:52 AM, Reena Mathew <rmathew@santanderconsumerusa.com> wrote:

HI Lina,

Would it be ok if I attend the Dallas HR luncheon next week?

2

SC000748

Thanks,
Reena

---

**From:** DallasHR [mailto:info@dallashr.org]
**Sent:** Thursday, February 05, 2015 9:17 AM
**To:** Reena Mathew
**Subject:** Last Chance to Register for February Monthly Luncheon



| Membership | Education | Communities | About Us | Login | February 5, 2015 |

## Ethics: The Foundation of Human Resources Management

**February Monthly Luncheon**

Tuesday, February 10 | 11:30 AM - 1:15 PM | Register now
Registration closes Friday, February 6 at noon
*SHRM Professional Development Credits: 1*
*HRCI HR (General) Recertification Credit Hours:1*

What does good business really mean today? What do ethics have to do, if anything, with good business? What impact can the human resource function have on good business and ethics? Within business, what is my responsibility as a human resource professional?

These questions are really simple to ask – yet complicated to answer.  In business today, human resource professionals are frequently asked to answer these questions and significantly contribute to their organization's ethical integrity. As advocates for both the employer and the employees, human resources professionals make ethical decisions almost daily that impact their entire organization, either positively or negatively and are required to commit to a high standard of professional responsibility.

Learning Objectives:

? Expand your insight into the realm of business ethics by examining social, ethical and political issues confronting modern organizations from both internal and external stakeholders' viewpoints.
? Analyze ethical dilemmas and learn to apply a clean process of moral decision making in business.
? Gain expanded awareness and practical tools for championing the highest possible level of ethics for all organizations.

Full Details

## Human Resources 101

**The Layperson's Short Course on Applied Employment Law** | Monday, March 2 | 9:00 AM – 4:30 PM
**Understanding the Process of Effective HR Practice** | Tuesday, March 3 | 9:00 AM – 4:30 PM
*SHRM Professional Development Credits: 6 per day*

### Quick Links

- February Monthly Luncheon

- Human Resources 101

- Recruiting Team of the Year

- Third Thursdays Networking

- PHR/SPHR Exam Study Group

- Online Learning Center

- New Mailing Address

- Help a Member

### Third Thursdays

Maximize Your Membership
A Networking Reception

Thursday, February 19
5:30 PM - 7:30 PM
DallasHR Office

Complimentary drinks and snacks. Open to all current and prospective members.

Add to calendar

### PHR/SPHR Exam Study Group

App.076                    SC000749

*HRCI HR (General) Recertification Credit Hours: 6 per day*

This critically acclaimed business seminar provides an opportunity to gain the legal knowledge and practical skills to help individuals new to the HR field. The program is paced for anyone with new HR responsibilities including non-HR managers and supervisors, department secretaries, administrators with HR responsibilities, administrative assistants, or anyone who has an interest in gaining HR knowledge and skills. This course is organized to give you what you've been looking for – clear, concise information that gives you the practical do's and don'ts of smart employee management.

<u>Full Details</u>



### Recruiting Team of the Year Awards Presentation

Thursday, February 19 | Happy Hour & Networking 5:30 PM | Awards 7:00 PM

Presented in partnership by <u>DFWTRN</u> and <u>DFW SMA</u>, a member services area of DallasHR, the Recruiting Team of the Year event will recognize and celebrate the efforts of successful talent acquisition teams. Complimentary drinks and appetizers will be provided.

<u>Full Details</u>

*This event sponsored by:*

**Silver Sponsor**



**HIGH PROFILE**
*Hiring Excellence*

Thank You to Our Strategic Sponsors

SUPPORTER LEVEL

CONTRIBUTOR LEVEL









---

**SPRING 2015 Study Group**
Tuesday Evenings
February 24 - April 14
6:00 PM - 8:00 PM

Hurry! Class is limited to the first 40 registrants.

**Online Learning Center**

HRCI-approved education at your fingertips – anytime, anywhere, at your convenience!

<u>More info...</u>

**We've moved!**

New mailing address for DallasHR and The HRSouthwest Conference

**5001 LBJ Fwy, Ste 800
Dallas, TX 75244**

All other contact information remains the same.

**Help a Member**

Our company is looking to enhance our current member referral program. If you have an active program, please briefly explain how it works and what incentives your employees have to refer candidates.

<u>View discussion thread...</u>

App.077    SC000750

**Angelina Hullum**

| | |
|---|---|
| **From:** | Angelina Hullum |
| **Sent:** | Thursday, December 17, 2015 2:06 PM |
| **To:** | Angelina Hullum |
| **Subject:** | FW: Reena - Dr. Appt. |

**From:** Kristen Lagunes
**Sent:** Wednesday, July 01, 2015 12:30 PM
**To:** Angelina Hullum
**Subject:** Reena - Dr. Appt.

FYI – just for your records.

**From:** Kristen Lagunes
**Sent:** Wednesday, July 01, 2015 12:00 PM
**To:** 'Reena Mathew'
**Subject:** RE: Missed conversation with Reena Mathew

Hey Reena, just saw this – is Sabrina there to help cover?

**From:** Reena Mathew [mailto:rmathew@santanderconsumerusa.com]
**Sent:** Wednesday, July 01, 2015 9:18 AM
**To:** Reena Mathew; Kristen Lagunes
**Subject:** Missed conversation with Reena Mathew

rmathew@santanderconsumerusa.com [9:16 AM]:
    GM Kristen! I have a Dr's appt this afternoon.....would it be ok if I left at 1p and checked emails from my phone for
    the rest of the afternoon?

1

   SC000757

**Angelina Hullum**

| | |
|---|---|
| **From:** | Angelina Hullum |
| **Sent:** | Thursday, December 17, 2015 2:12 PM |
| **To:** | Angelina Hullum |
| **Subject:** | FW: Reallocation of duties |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

**From:** Angelina Hullum
**Sent:** Friday, July 10, 2015 2:22 PM
**To:** Reena Mathew
**Subject:** Reallocation of duties

Reena,
To recap our conversation, you will be taking over the following departments in LEW effective immediately, to include the Credit Card Department at 8585. The expectation will be for you to spend every other Friday at 8585 to support the Credit Card Department. Let me know if you have any questions.

Thank you for your support and flexibility.

| Mark Mooney | 047 | Reinstatements |
|---|---|---|
| 33 | | CC Reinstatements |
| | | Recovery Operations |
| | | Dealer Control |
| | | Collateral Recovery |
| | | CC Coll Recv |
| | | Non Collateral Deficiency |
| | | Vendor Oversight |
| | | CC Vdr Oversight |

| Doyenard | 031 | Dialer Administration |
|---|---|---|
| 8 | | Business Process Optimization |
| | | Operational Analytics |

| Linda Vrazel | 031 | Quality Assurance |
|---|---|---|
| 35 | | Operational Training |
| | | CC Dealer Advocacy and Maintenance |
| | | Credit Bureau Advocacy |
| | | Advocacy Analytics |
| | | Customer Advocacy |

| Scott Dieckman | 047 | Unsecured Credit Card |
|---|---|---|
| 65 (8585) | | |

1

SC000758

| James Hart | 031 | Quality Control |
| 2 | | Strategic Operations |

| Kim Thorndyke | 046 | Customer Service |
| 81 (Sabrina) | | Customer Service Operations |
| | | OSP Vendor Management |
| | | CC Customer Service Support |

| Wayne Nightengale | 049 | Late Stage |
| 530 | | Early Stage |
| | | CC Late Stage |
| | | CC Early Stage |
| | | Collections Operations |

**Total 673**
**(not counting 81 in CS)

## Angelina Hullum, PHR
Santander Consumer USA Inc.
Manager, Human Resources

PHONE   214.261.1501
OBILE   720.369.7019
FAX   720.377.3010
EMAIL   aHullum@santanderconsumerusa.com
WEB   www.santanderconsumerusa.com

2

SC000759

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Tina Mohan <TMOHAN@santanderconsumerusa.com>, Hortensia Perez
<hperez@santanderconsumerusa.com>
**Subject:** FW: HR Org Change Announcement
**Date:** Mon, 24 Aug 2015 16:59:02 +0000
**Importance:** Normal
**Attachments:** HR_Org_Chart_August_2015.pptx

---

FYI- info shared with the business

---

**From:** Stephanie Elad
**Sent:** Monday, August 24, 2015 9:16 AM
**To:** Scott Dieckmann; Mark Mooney; Mark Nerios; Antoinette LaRosa; Brad Denetz; Graham Anderson; Brad Quick; Kimberly Thorndyke; Cory Overman; Dominique Doyenard; Tamika Carr; Linda Vrazel; James Hart; Erica Barton
**Cc:** Angelina Hullum; Yessica Adriano; Kristen Lagunes; Jessica Gleason; Pamela Blackburn; Troy Miller; Wayne Nightengale; Mark Smith; Brent Huisman; Jonathan Morse
**Subject:** HR Org Change Announcement

For our call today.

In an effort to more effectively support the business, the HR Advocacy team has realigned our team structure. This means that we will now have a dedicated team to support each site, vs. being aligned by EVP/SVP. The new structure is as follows:

NRH – *Angelina Hullum* will be the HR Manager, dedicated solely to this site. She will no longer have responsibility for Servicing at all sites, but will instead manage all HR matters at NRH. Reporting to Angelina are:

> *Whitney Andres, HR Business Partner, (who will continue to support Servicing)*
> *Misty Donnell, HR Business Partner (who will support Strategic Ops)*
> *Jeanette Rodriguez, HR Generalist*
> *Nicole Heinicke, HR Generalist*

Also reporting to Angelina will be *Kristen Lagunes*. You are all aware that Kristen joined SCUSA earlier this year as an HR Manager. Kristen will be transitioning to a Senior HR Business Partner role, at her request, to remain at NRH and support that site. We are excited to be able to leverage Kristen's experience and skill set for escalated Employee Relations issues and special projects.

Angelina's experience with SCUSA, first in CO, and now in TX, positions her well to lead the NRH HR team and support our largest site, especially with the upcoming remodel. Angelina will continue to report to me.

LEW – I'm pleased to announce that *Yessica Adriano* will be transitioning to the LEW site as HR Manager. Yessica joined SCUSA earlier this year as an HR Manager supporting Funding and Credit, and has done a great job assimilating to the organization. Yessica will continue to support the 8585 site as well, until further notice. Reporting to Yessica will be:

> *Hortensia Perez, HR Business Partner*
> *Reena Mathew, HR Business Partner*
> *Sabrina Boyd, HR Generalist*

Yessica will be responsible for all HR activities at both LEW and 8585.

CO – I'm also pleased to announce that *Kayla Liggett* will join SCUSA as the HR Manager for our CO site. Kayla comes to SCUSA with experience in the retail and collections arenas and will be a strong addition to our team. She will have responsibility for all HR matters at the CO site. Reporting to Kayla is:

*Melissa Lawson, HR Generalist*

Kayla will report to me.

THX – *Jonathan Morse* will continue to serve as HR Manager for Thanksgiving Tower and will manage all HR activities at that building. He will take over the support of all departments physically located at the Tower, that are currently being supported by my team, in addition to all of the Back Office departments that he currently supports. Reporting to Jonathan is:

> *Senior HR Business Partner – Open*
> *HR Business Partner – Tina Mohan*
> *HR Business Partner – Augie Pastrana*
> *HR Business Partner – An Vo*
> *HR Generalist – Fatma Rizvan*

Jonathan has been in the HR Manager role for a year now and has done a great job leading his team and working with the business. He is well positioned to take on this additional responsibility. He will continue to report to Jessica.

All of these org changes, as well as Kayla's start date with SCUSA, are effective 8/31.

Additionally, Jessica and I wanted to inform you that as part of the restructure, and to better reflect the level of support that our teams will be providing to yours, we will now refer to all of those that serve on our teams as "HR Business Partners". This will replace our former "Advocacy" title, which we are phasing out. I will explain in more during our scheduled call, so that you all understand what exactly this means, what remains the same and what will be somewhat different.

I will continue to support all EVP's and SVP's under Brad Martin's org, and Jessica will continue to support all other C-level executives and their direct reports.

Regards,
Stephanie

**Stephanie Elad,** SPHR
Santander Consumer USA Inc.
Director, Human Resources

PHONE     214.237.3713
MOBILE    214.695.1278
EMAIL     selad@santanderconsumerusa.com
WEB       www.santanderconsumerusa.com

SC007046

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Reena Mathew <rmathew@santanderconsumerusa.com>
**Subject:** Re: PTO Request
**Date:** Thu, 03 Sep 2015 17:26:17 +0000
**Importance:** Normal

---

Hi Reena, that is fine, may you please input the dates into my calendar.

Have a safe trip!

Sent from my iPhone

On Sep 2, 2015, at 12:27 PM, Reena Mathew <rmathew@santanderconsumerusa.com> wrote:

Hi Yessica,

Before I forget, could I please request to have 9/18, 9/21 and 9/22 off?

Also, would it be ok if I work a half day this Friday? We are doing some traveling this wknd and next ☺

Thanks!
Reena

SC006972

**From:** "Reena Mathew" <rmathew@santanderconsumerusa.com>
**To:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>, "Reena Mathew"
<rmathew@santanderconsumerusa.com>
**Subject:** Conversation with Yessica Adriano
**Date:** Thu, 17 Sep 2015 17:59:20 +0000
**Importance:** Normal

---

**Reena Mathew [9:28 AM]:**
  Yessica, quick question....
**Yessica Adriano [9:28 AM]:**
  yes maam
**Reena Mathew [9:29 AM]:**
  Would you mind if I left a little early today (I'll still answer emails from my phone)? Reason being is we have a 7am flight
  (I know! lol) and I still have a few things to do....
**Yessica Adriano [9:43 AM]:**
  Hi Reena, how early did you want to leave..\
**Reena Mathew [9:51 AM]:**
  Would 1 or 2p be ok?
**Reena Mathew [10:59 AM]:**
  Is it ok if I send Dana an email re: the dates and cc you?
**Yessica Adriano [11:11 AM]:**
  yes, but please send to Kristy anne thomas
**Reena Mathew [11:29 AM]:**
  k, will do!
**Reena Mathew [12:51 PM]:**
  Darn on the Compliance dates....
**Yessica Adriano [12:57 PM]:**
  no kidding but it was a good proactive approach
**Reena Mathew [12:57 PM]:**
  ty :)

SC002656

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Hortensia Perez <hperez@santanderconsumerusa.com>
**Subject:** Team Meeting Recap
**Date:** Wed, 09 Sep 2015 18:28:43 +0000
**Importance:** Normal

---

Team,

These are some highlights of our discussion yesterday:

**Scheduling**
>   Sabrina: 8-5 pm (Tues, Thurs 7:30-4:30)
>   Reena: 8:45-5:45
>   Yessica: 8-5pm (Tues, Wed  7:00-4:30)
>   Ten: 8:30-5:30 pm

**8585 Coverage**
>   Ten- Everyday (Base location)
>   Yessica- Tuesday, Wednesday and as needed
>   Reena- Twice a Month (9/15, 10/8, 10/23)
>   Sabrina- Once a Month (9/23, 10/15)

**General Team Expectations**
-   We are a team and need to work as one: sharing the workload and continually helping each other out
-   As a company and in an effort to enhance our culture we are moving towards a work/life balance philosophy- which is wonderful.  The expectation is not to go home and work, but rather to truly enjoy our time off. ☺ Therefore, when at work we need to work a full day and ensure we are productive in either handling the day to day issues or looking for new ways to improve our dept, site, or team.
-   Open Communication: it is what keeps relationships successful, it important that we maintain honest two way communication

*when there is teamwork and collaboration, wonderful things can be achieved." --Mattie Stepanek*


Thank you

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE     214.722.5667
MOBILE    214.215.5258
EMAIL     yadriano@santanderconsumerusa.com
WEB       www.santanderconsumerusa.com

SC005719

**From:** "Reena Mathew" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=REENA MATHEW0CB>

**To:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>

**Subject:** <mark>Recap of conversation with Deirdre Crouch</mark>

**Date:** Thu, 10 Dec 2015 20:15:08 +0000

**Importance:** Normal

---

HI Yessica,

Per our conversation, <mark>Tara Stewart and myself met with Deirdre on October 20, 2015</mark> to discuss the concern she had over her attendance write up which initially was incorrect due to the manager keying in her time incorrectly. We started with that and how the Final was actually a Written and that she had used some time after requesting the time off so did not have enough to cover those days which resulted in the Written.

Tara then moved on and said she understood Deirdre had concerns over her relationship with her manager Cherri Cotton and wanted to discuss those. Deirdre stated that she did not know why the DA was only administered on 8/31/2015 and the infraction had happened in early August. Tara assured her it was just an oversight and that she would address the issue with her mgmt. staff. She also stated that Cherri will tell her not to eat at her desk and Tara said that was due to policy and that managers have to manage that. Deirdre stated that she is not consistent and Tara said that she would address that issue as well. Deirdre also mentioned that Cherri is not a bad person, but said that things that Cherri does affects people. Tara and I assured Deirdre we would look into it and asked her if anything further occurred to let HR or Tara know and she said she would. After an hour plus of discussing the issues Deirdre said she felt better and Tara and her hugged.

Tara did follow up with me and stated she did have a conversation with Cherri/Deidre on October 27, 2015 (please see Tara's notes) to address the issues and even followed up with the team and some of the members and no one came to her with any other issues.

Let me know if you need anything else.

Thanks,
Reena

**Reena Mathew, PHR**
Santander Consumer USA Inc.
HR Business Partner

PHONE       214.292.2772
MOBILE      214.364.9136
FAX         214.630.0828
EMAIL       rmathew@santanderconsumerusa.com
WEB         www.santanderconsumerusa.com
BENEFITS HOTLINE   214.540.2010

SC003215

**From:** "Reena Mathew" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=REENA MATHEW0CB>

**To:** "Mitzie Jefferson" <mijefferson@santanderconsumerusa.com>, "Gregory Vinson"
<gvinson@santanderconsumerusa.com>, "Samuel Akins"
<sakins@santanderconsumerusa.com>

**Subject:** DA's

**Date:** Wed, 28 Oct 2015 18:05:36 +0000

**Importance:** Normal

---

Hi!

Just wanted to let you know that we were at a conference Mon/Tues so please bear with me as I'm catching up and going through emails.

I received several requests for DA's and I will have them ready no later than Friday ☺

Thank you for your patience!
Reena

App.087

**From:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>

**To:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>, "Reena Mathew"
<rmathew@santanderconsumerusa.com>

**Subject:** Conversation with Yessica Adriano

**Date:** Thu, 29 Oct 2015 17:19:55 +0000

**Importance:** Normal

---

**Yessica Adriano [9:46 AM]:**

HI Reena, do you know where we keep personnel files, looking for Delmar Tillis Pip

**Reena Mathew [9:46 AM]:**

Hi Yessica! I just responded to your email :) It's in Optika....

**Yessica Adriano [9:46 AM]:**

just saw your response thanks

**Reena Mathew [9:46 AM]:**

NP, let me know if you need any help!

**Reena Mathew [11:07 AM]:**

Hi Yessica! AVP Sam Akins sent over a term request for a LEW associate and the associate is in the office today.....how would you like us to handle?

**Yessica Adriano [11:07 AM]:**

is it for attendance?

**Reena Mathew [11:08 AM]:**

Yes...

**Yessica Adriano [11:08 AM]:**

ok i can process it today

**Reena Mathew [11:08 AM]:**

K, did you need me to do anything?

**Yessica Adriano [11:09 AM]:**

did we get all approvals

**Reena Mathew [11:09 AM]:**

Just from Brad....I can send over the term request if that helps?

**Yessica Adriano [11:10 AM]:**

yes please and ill get the other docs ready, does he want him termed immediately or end of day-

**Reena Mathew [11:11 AM]:**

Sounds good--let me check...
Wow that was LONG!

**Yessica Adriano [11:21 AM]:**

it was

**Yessica Adriano [11:48 AM]:**

Hi Reena, Brad just came into the office, he said they have like 10 pending DAs, im not sure on the validity, but are you working on them? He stated he needs them asap.

**Reena Mathew [11:49 AM]:**

Yes, and I emailed the AVP's yesterday that we would have them no later than Friday due to me being out on Mon/Tues

**Reena Mathew [12:16 PM]:**

Sam said 3p should work.... :)

**Yessica Adriano [12:17 PM]:**

ok thank you

**Reena Mathew [12:17 PM]:**

np

**From:** "Reena Mathew" <rmathew@santanderconsumerusa.com>
**To:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>, "Reena Mathew"
<rmathew@santanderconsumerusa.com>
**Subject:** Conversation with Yessica Adriano
**Date:** Mon, 16 Nov 2015 16:20:15 +0000
**Importance:** Normal

---

**Reena Mathew [9:53 AM]:**
 Hi Yessica
**Yessica Adriano [9:53 AM]:**
 Hi reena
**Reena Mathew [9:53 AM]:**
 I guess everyone has a request today :) Would it be ok if I leave around 3p today?
**Yessica Adriano [9:53 AM]:**
 yes
**Reena Mathew [9:54 AM]:**
 Awesome, ty!!
 Appreciate it....
**Yessica Adriano [9:54 AM]:**
 np
**Reena Mathew [10:08 AM]:**
 Crap! I forgot we have a PT class starting tonight.....ugh :S. I hate to ask, but would you be able to assist Sabrina in picking up the pw (it's really quick, I promise!) and she and I will split tomm to complete in Red Carpet?
**Yessica Adriano [10:14 AM]:**
 yes no issue, what time is that
**Reena Mathew [10:14 AM]:**
 Thank you!! 5p typically
**Yessica Adriano [10:17 AM]:**
 ok, good im here till six anyway- i came in at 9 :(
**Reena Mathew [10:17 AM]:**
 Thank you!!! I owe you one..... :)

App.089                    SC002773

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Reena Mathew <rmathew@santanderconsumerusa.com>, Hortensia Perez
<hperez@santanderconsumerusa.com>, Sabrina Boyd
<SBOYD@santanderconsumerusa.com>
**Subject:** FW: Investigation Template
**Date:** Mon, 16 Nov 2015 21:50:44 +0000
**Importance:** Normal
**Attachments:** Investigation_Template.docx

---

Hello Everyone,

Attached is the finalized checklist Reena/Tina put together ☺

It has received final approval, so you can begin using it. .Also, we will have an open forum to further discuss in our Quarterly meeting (December 4).

Thanks

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

| PHONE | 214.722.5667 |
| MOBILE | 214.215.5258 |
| EMAIL | yadriano@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |

**From:** Yessica Adriano
**Sent:** Monday, November 16, 2015 1:37 PM
**To:** Angelina Hullum; Jonathan Morse; Kayla Liggett
**Cc:** Stephanie Elad; Jessica Gleason
**Subject:** Investigation Template

Good Morning Team,

Attached is the final investigation checklist, please have your team begin using this immediately.  This will also be a point of discussion for our December 4th meeting, where we will gather feedback from the group.

Let me know if you have any questions.

Thanks

SC005910

**HR Investigation Checklist**

**Name:** _____     **Associate ID No:** _____

**Position:** _____     **Location:** _____

**Case No:** _____     **Date Received:** _____

**Pre-Investigation Process:**

☐  Review inquiry/complaint.  Determine whether allegation will be investigated by HR or referred to the business for resolution.

  o  Note - If based on harassment, race, sex, age, disability or any other protected class/egregious issues, HR will take the lead and resolve the issue alongside the business.

☐  Develop strategy/plan of action (include relevant facts, HRBP recommendation, decide level of management to inform).

☐  Discuss incident/plan of action with HR Manager.

☐  Obtain HR Manager Approval.

☐  Discuss matter with complainant's Management team and obtain consensus regarding plan of action. (Mention any recent complaints from team/issues with morale during discussion as well).

☐  Add case to i-Sight.  Additionally, check i-Sight to determine if there have been any previous issues with Employee or Accused.  (Review previous Investigation notes/files if necessary).

**Investigation:**

☐  Notify appropriate department leader of investigation via email or phone.  Email should include the parties involved and a high level overview of the complaint.  Date completed:  _____

☐  Identify witnesses and arrange interviews – note date and time on interview notes.

  o  Remind Associate of the importance of confidentiality. Determine if investigation has legitimate and substantial business justification that warrants a signed confidentiality agreement.

☐  When interviewing Associates and Witnesses, ensure your questions enable you to find out the who, what, when, where, how, and why (if applicable) to make sure we have the full story.  Only have a witness present in critical situations, such as circumstances dealing with harassment, discrimination, violence, or severe actions that lead to immediate termination.  If a witness is deemed necessary, then inform the Associate you both will be taking notes.  An Associate may provide a first-hand knowledge statement in a situation that includes a long timeline of events.

App.091     SC005911

☐ Remind Associates of our policy related to harassment and discrimination (ask them to refer to our Associate Handbook via SCUSA Source for additional information).

☐ Advise that SCUSA prohibits any form of retaliation for making a complaint or participating in an investigation. Encourage Associates to contact their chain of command or HR if they believe they have been retaliated against for participating in the investigation.  Also, explain that you may contact them again, if further information is needed.

☐ Confirm information provided by Associates during interview to ensure your notes are accurate. Date confirmed:  _____

☐ Obtain any documents, signed statements, photographs, tapes, text messages, emails or other material necessary to evaluate the allegation or information provided by Employees.

☐ Draft written investigation report. Date completed:  _____

☐ Discuss proposed findings, conclusions, and recommendations with Manager. Ensure recommendations follow matrix and previous incidents as much as possible to ensure consistency.

☐ Add report, notes, emails and any other relevant information to i-Sight.

☐ Follow up and close out the case with the Complainant and the Accused Employee(s).  Complainant should be advised that the issue has been fully investigated and appropriate action will be taken to address the issue.  Action taken/discipline administered should not be shared with the Complainant.  If they have any other issues or feel that they have been retaliated against, they should contact the appropriate parties immediately.

☐ Advise Department Leader of outcome and recommended action.


**Post-Investigation:**

☐ Execute recommendation as approved by the HR Manager and agreed upon by management.

☐ Administer appropriate level of DA (If applicable).

       o  Enter DA in Workday
       o  Scan DA in Optika

☐ Record DA/action taken in i-Sight, ensure all relevant information has been included and then close out the case in i-Sight.

☐ Follow up discussion with leadership pertaining to future prevention of similar issues or address leadership style concerns if applicable.

☐ Follow up discussion with involved parties (Complainant and/or Accused) to ensure resolution has been sustained.



App.093

SC005913

**From:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>
**To:** Stephanie Elad <selad@santanderconsumerusa.com>
**Cc:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Subject:** RE: Loss Recovery Team - LEW
**Date:** Tue, 24 Nov 2015 21:46:11 +0000
**Importance:** Normal

---

The most recent event was with Cheri Cotton and Deirdre Crouch back in Sept/Oct. There was some confusion on Deirdre's attendance. She didn't feel that she was being treated fairly by Cheri and Tara and had reached out to Jodi. There were too many hands in this situation, with the confusion as to who was handling what/based on location/departments. Jodi, Misty and I were on one page, and Reena and Tara were on another page. In the end, I believe Tara ended up making her own decision and placing the Associate on the DA, which I thought was a Final

---

**From:** Stephanie Elad
**Sent:** Monday, November 23, 2015 12:34 PM
**To:** Angelina Hullum
**Cc:** Yessica Adriano
**Subject:** Loss Recovery Team - LEW

Hi – can you send Yessica and me a recap of some of the issues you've had with this group at LEW?

**Stephanie Elad,** SPHR
Santander Consumer USA Inc.
Director, Human Resources

PHONE   214.237.3713
MOBILE   214.695.1278
EMAIL   selad@santanderconsumerusa.com
WEB   www.santanderconsumerusa.com

SC009926

**From:** "Reena Mathew" <rmathew@santanderconsumerusa.com>
**To:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>, "Reena Mathew"
<rmathew@santanderconsumerusa.com>
**Subject:** Conversation with Yessica Adriano
**Date:** Tue, 24 Nov 2015 21:40:37 +0000
**Importance:** Normal

---

Reena Mathew [10:02 AM]:
  Hi Yessica, let me know if that term template looks better :)
Reena Mathew [11:19 AM]:
  Hi Yessica, btw, I have a Dr's appt at 1 so will probably leave around 12:30p (during my lunch). I'll probably be a little more than an hour though.
Reena Mathew [11:57 AM]:
  Did you need both term pw and template? Just making sure :)
Yessica Adriano [12:21 PM]:
  what is vicky's name in IM trying to call her and cant find her
Reena Mathew [12:21 PM]:
  Vikey Barker Couch
  Vickey
  Sorry
  Vickie LOL
  OMG!
Yessica Adriano [12:22 PM]:
  got it thanks
Reena Mathew [12:23 PM]:
  np!
  Btw, ugh, we just received 5 Compliance emails.......do you think the team can split those up? Each one takes some time to complete :(
Yessica Adriano [12:29 PM]:
  i think ten was bombarded with these as well, but check to see where she stands, i know sabrina has a big load she was here early and stayed late yesterday trying to catch up, and i need to launch the deidra investigation the herman/ricci situation as well
  what else do you have going on
Reena Mathew [12:38 PM]:
  Maybe we can discuss when you have some time. It's been really overwhelming :( I'm going to go to my Dr's appt....be back in a little
Reena Mathew [3:19 PM]:
  Yessica, For the Compliance/NPPI emails, if the associate isn't working at this location (ie remote, Credit Card associate), would it be ok to send them an email confirming that the information was thier own and not the company's? Typically we're supposed to meet with them face to face......
Yessica Adriano [3:28 PM]:
  I had one of those, you need to call them over the phone to discuss the incident and then log it for complianc
Reena Mathew [3:28 PM]:
  Ok....
  ty

SC002752

**From:** Stephanie Elad <selad@santanderconsumerusa.com>
**To:** Michelle Whatley <mwhatley@santanderconsumerusa.com>
**Cc:** Dana Hawkins <dhawkins@santanderconsumerusa.com>, Pamela Blackburn
    <pblackburn@santanderconsumerusa.com>, Yessica Adriano
    <YADRIANO@santanderconsumerusa.com>
**Subject:** RE:
**Date:** Tue, 24 Nov 2015 21:16:49 +0000
**Importance:** Normal

---

Quick update – Yessica spoke with Deirdre in detail about her concerns. There were several allegations brought forward, most of which we should be able to substantiate one way or the other. I asked Yessica to handle this investigation personally, rather than Reena. As it turns out, Reena spoke with this Associate and her AVP a few months ago. I think a lot was missed during that conversation, on Reena's part.

Yessica asked Deirdre if she would like to come back either in a different role at LEW or in a similar role at NRH. She said she would think about it, but Yessica doesn't think it's likely that she will accept. She has apparently been consulting with an attorney.

We are having significant issues with Reena. I sent Pam an email earlier today. Long story short - I think it's time to consider severance. She is overwhelmed with the workload (which isn't any higher than the rest of my team) and making a lot of mistakes.

---

**From:** Michelle Whatley
**Sent:** Monday, November 23, 2015 9:50 AM
**To:** Stephanie Elad
**Cc:** Dana Hawkins; Pamela Blackburn
**Subject:**

The attached resignation was escalated to Legal and Compliance. Please have someone look into validity please and advise if this issue has/was raised with HR at any point.

Thanks
mw

SC007514

**From:** Stephanie Elad <selad@santanderconsumerusa.com>
**To:** Pamela Blackburn <pblackburn@santanderconsumerusa.com>
**Cc:** Jessica Gleason <jgleason@santanderconsumerusa.com>
**Subject:** Reena Mathew - Confidential
**Date:** Tue, 24 Nov 2015 18:16:41 +0000
**Importance:** Normal

---

Pam – Reena is the BP at LEW. She's been with us almost 5 years (DOH Jan 2011). There have been some performance concerns for awhile now – mostly stemming from an inability to handle the workload, and questionable judgment. Angelina had several coaching conversations with Reena before we transitioned Yessica to LEW and Yessica has had even more conversations since she took over a few months ago. Yessica is having to handle a lot of the investigations at LEW because Reena can't seem to get things done and when she does handle some of the issues, mistakes and missteps are being made. There is a significant time management issue, which is impacting the Generalist at the site, in addition to Yessica.

Unfortunately, the situation is not improving and has become worse. We had an incident this week that led to a risk event. The risk event had to do with a term that was not processed. However, upon digging further, this Associate issue escalated partially due to Reena not handling the concerns effectively a few months back. I have advised Yessica to issue a DA to Reena for her mishandling of this incident, as well as some of the other issues that have occurred recently. And, Reena will be receiving a review rating that indicates that she is not meeting expectations. Reena submitted her self review to reflect her view that she exceeded expectations and Yessica will be having a conversation with Reena to help her  understand where her performance is really at on Monday.

Historically, we have offered severance packages to HR Associates when we determine it is time for them to leave the business. So, I'd like to start that dialogue with you ASAP. A few weeks ago, Reena shared with Yessica that she's pregnant, which may make this a bit more complex.

We can discuss next week, but I just wanted to let you know ASAP. Yessica and I had a long discussion about this today and I now have clarity that this is the direction we need to go. It's been a long time coming.

**Stephanie Elad,** SPHR
Santander Consumer USA Inc.
Director, Human Resources

PHONE       214.237.3713
MOBILE      214.695.1278
EMAIL       selad@santanderconsumerusa.com
WEB         www.santanderconsumerusa.com

SC001690

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>
**Subject:** FW: Reena: Workload
**Date:** Tue, 24 Nov 2015 21:37:32 +0000
**Importance:** Normal

---

Hi Lina- May you please send me any documentation you have (noted conversations, examples,  events, situations) want to have an all-inclusive timeline.

Thank you

---

**From:** Stephanie Elad
**Sent:** Tuesday, November 24, 2015 3:19 PM
**To:** Yessica Adriano
**Cc:** Angelina Hullum
**Subject:** RE: Reena: Workload

I can't imagine that the compliance emails take that long. I would ask Kristen how long they take on average. When I had to do it, it was a 5 minute conversation and a few emails. But, maybe I'm missing something.

**From:** Yessica Adriano
**Sent:** Tuesday, November 24, 2015 1:21 PM
**To:** Stephanie Elad
**Cc:** Angelina Hullum
**Subject:** Reena: Workload

Hello Stephanie,

Wanted to bring this to you as an FYI....

Reena approached me a couple hours ago asking if she could leave at 12:30 stating she has a Dr. Appointment at 1 pm, and would need to take a longer lunch.  I advised her as previously discussed,  I needed more than a same day notification, so we can plan appropriately.  She responded with sorry and she understood (exactly what she said last time). She stated she would return to work  after her appointment ended.

I received this IM from her below.  Ten, Sabrina and myself have all been continuously assisting with her with work and when I ask  where she spends her time, she does not have a solid justification.

I will work on a formalized timeline of events and discussions that I have had with her since September and will ask Lina for documentation prior to that.

Reena Mathew 12:24 PM
Btw, ugh, we just received 5 Compliance emails......do you think the team can split those up? Each one takes some time to complete
Yessica Adriano 12:29 PM
i think ten was bombarded with these as well, but check to see where she stands, i know sabrina has a big load she was here early and stayed late yesterday trying to catch up, and i need to launch the deidra investigation the herman/ricci situation as well
what else do you have going on
Reena Mathew 12:38 PM

    SC006293

Maybe we can discuss when you have some time. It's been really overwhelming I'm going to go to my Dr's appt....be back in a little

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE    214.722.5667
MOBILE   214.215.5258
EMAIL    yadriano@santanderconsumerusa.com
WEB      www.santanderconsumerusa.com

App.099

SC006294

# Santander Consumer USA Inc. Performance Improvement Plan (PIP)

## SECTION I: ASSOCIATE INFORMATION

| |
|---|
| **Associate Name:** Reena Mathew |
| **Associate ID: 013696** |
| **Associate Job Title/Department/Location: HR Business Partner/Advocacy/Lewisville** |
| **Hire Date: 01/31/2011**      **Time in Position: 4 years** |
| **Manager/Supervisor Name and Title: Yessica Adriano/Manager of Human Resources** |
| **Department Director/VP Name and Title:  Stephanie Elad/Pamela Blackburn EVP Human Resources** <br> **Performance improvement period:  30 days** <br><br> **Begin Date: 12/01/2015** <br><br> **End Date: 12/31/2015** |
| *(Active period of this notice will affect bonus, transfer and promotion opportunity for the entire duration of the listed days)* |

As an associate of SCUSA, we expect performance to be in line with the standards outlined in the job description as well as those of your management team.  The goal of this PIP is to align delivered performance to expected performance and assist in making you a successful member of the team.

You are expected to perform to the standards listed in the Performance Standards column in the attached Performance Worksheet. You will find in the Actual Performance Column that you have patterns of sub-standard performance when compared to the standards listed.

As SCUSA provides the resources required to meet the standards, we expect immediate and sustained improvement. Your work will be monitored for compliance with the performance standards on the attached Performance Worksheet.  If you do not meet and maintain performance to the standards in the attached Performance Worksheet, you may receive the next level of discipline which, in this case, could range from formal disciplinary action, up to and including Termination. This will occur upon any further occurrence of your performance that does not meet the standards in the Performance Worksheet (see below)

If you have any questions about the terms of your Performance Improvement Plan, please consult with your direct manager or your designated Human Resource representative.

App.100    SC001154

## SECTION II: PERFORMANCE STANDARDS AND ASSESSMENT

This section should clearly outline the performance standards that need to be achieved as a minimum acceptable performance standard. The strategies, actions or tasks to achieve the performance standards should be specific, measurable and achievable. These are to be reviewed and monitored during the review period.

| Performance Standards (What needs to be achieved, as set in job description) | Actual Performance Delivered (What has been occurring, Facts) | Strategies / Actions / Tasks (Steps to achieve desired performance standards) |
|---|---|---|
| Integrates Company Values into all activities…in order to meet demands of the business, it is expected that all Associates be punctual and adhere to scheduled work hours. | Reena continually asks to leave early and struggles to adhere to her work schedule. In many instances, she only provides a same day notice.<br><br>(See Addendum for specifics) | It is important Reena adhere to working a full day in adherence to her schedule.  When possible, she needs to provide ample notice and maintain these leave requests at a minimum. |
| Seamlessly executes a full range of duties aligned to deploy HR strategy and objectives into client group.<br><br>Demonstrated ability to work under pressure, appropriately prioritize and organize work effectively. | Reena has had difficulty completing objectives on a timely basis. When projects/tasks arise, she relies on the assistance of other people for completion. Examples include: DA administration, monthly side by sides, WD maintenance, and the investigation matrix.<br><br>(See Addendum for specifics) | Reena needs to organize and prioritize her tasks efficiently.  It is necessary for her to improve her time management skills by minimizing her social interactions to allow her to focus on her tasks and their timely completion.  When requesting assistance from others, she needs to be able to effectively quantify where her time is being spent. |
| Proactively minimizes legal risk by ensuring client's compliance with company policies and procedures.  Makes recommendations, provide solutions, and resolve issues as challenges. | As an HR consultant to the business, it is necessary to be able to make fair and sound judgments when conducting investigations. Reena underestimated a concern brought forth from an employee, did not follow through, and when notified of her decision delayed appropriate actions including processing the termination- which led to a risk event. In addition, in a couple situations she did not secure the objectivity of the room when questioning associates.<br><br>(See Addendum for specifics) | It is important Reena follow established policies and be thorough with ever situation/concern brought forth. Our objectivity and ability to effectively diagnose situations is crucial in this role. |

**SECTION III: ASSOCIATE COMMENTS**

| Associate Comments | |
|---|---|
| | |

Your signature below represents that we have communicated our concerns and that you understand what will happen if the aforementioned standard(s) are not corrected.

| Associate Name | | Signature | | Date | |
|---|---|---|---|---|---|
| Manager Name | Jessica Adriano | Signature | | Date | 12/1/2015 |

**From:** Stephanie Elad <selad@santanderconsumerusa.com>
**To:** Pamela Blackburn <pblackburn@santanderconsumerusa.com>
**Subject:** Reena Mathew
**Date:** Tue, 01 Dec 2015 23:58:38 +0000
**Importance:** Normal

---

Yessica delivered a PIP today to Reena. She didn't take it well. I'll fill you in on Thursday.

**Stephanie Elad,** SPHR
Santander Consumer USA Inc.
Director, Human Resources

PHONE       214.237.3713
MOBILE      214.695.1278
EMAIL       selad@santanderconsumerusa.com
WEB         www.santanderconsumerusa.com

SC001691

**From:** "Reena Mathew" <rmathew@santanderconsumerusa.com>
**To:** Stephanie Elad <selad@santanderconsumerusa.com>
**Subject:** Meeting
**Date:** Wed, 02 Dec 2015 01:21:28 +0000
**Importance:** Normal

---

Hi Stephanie,

Hope you are well. I just finished meeting with Yessica this afternoon regarding my review and was informed I was being placed on a PIP.

I'm very upset and am in tears. I don't know if you know, but I'm 14 weeks pregnant and am under a lot of stress now after receiving that news.

Stephanie, I've been with the company for 5 years, have gotten along great with peers/my managers, have received positive reviews and have never had any type of formal coaching or discussion about negative performance issues from any one of my managers, not once.

I was completely shocked and upset and working in HR I know that an associate shouldn't be surprised let alone have first time discussions about issues during a review.

I would like to speak to you when you are available. I'm off tomorrow but will be back Thursday. I also do not agree with the point listed especially the one about attendance as it said 'many' (leaving early) and I would like to how that differs from anyone else. I've only asked a few times all together.

I work just as hard as anyone on our team, am a productive member especially with the workload given (supporting LEW and CC) and think I do a decent job. I make mistakes just like everyone else but also want to be successful at the same time.

Please let me know what time is good for you and I thank you in advance.

Reena

Sent from my iPhone

SC003927

**From:** Michelle Whatley <mwhatley@santanderconsumerusa.com>
**To:** Pamela Blackburn <pblackburn@santanderconsumerusa.com>
**Subject:** FW: Hello
**Date:** Tue, 08 Dec 2015 23:43:35 +0000
**Importance:** Normal

-----Original Message-----
From: Reena Mathew
Sent: Thursday, December 03, 2015 7:21 PM
To: Michelle Whatley
Subject: Hello

Hi Michelle,

I hope you are doing well.

I'm doing ok but wanted to see if you had some time to discuss an issue.

I would like for it to be confidential if that's ok and get your thoughts.

I've already followed the chain of command (Yessica/Stephanie) but still don't agree with what's taken place.

I appreciate your time and please say hello to the family.

Thanks,
Reena

Sent from my iPhone

SC001709

**Don Uloth**

| | |
|---|---|
| **From:** | Reena Mathew <rmathew@santanderconsumerusa.com> |
| **Sent:** | Monday, December 7, 2015 10:25 AM |
| **To:** | reenasara@hotmail.com |
| **Subject:** | FW: Herman |

**From:** Christopher Mays
**Sent:** Monday, December 07, 2015 10:05 AM
**To:** Reena Mathew
**Subject:** RE: Herman

Hi Reena,

This is good to hear because last week at our team meeting he seemed fine.

I have never worked on a PIP without the proper documentation but not sure if there is a case where this has happened with someone else.  It's just like any other disciplinary action you need documentation to validate the PIP.

Thanks,
Chris

**From:** Reena Mathew
**Sent:** Monday, December 07, 2015 9:29 AM
**To:** Christopher Mays
**Subject:** RE: Herman

Hi Chris,

MR had met with him and I believe that everything is good now (for now) ☺.

Just out of curiosity, have we ever put anyone on a PIP without clear cut/written documentation, for example, say the Manager said they coached the associate but there are no notes/dates etc.?

Thanks,
Reena

**From:** Christopher Mays
**Sent:** Wednesday, December 02, 2015 12:43 PM
**To:** Reena Mathew
**Subject:** RE: Herman

Hi Reena,

Any update on this?

1

Mathew 034

App.106

**From:** Reena Mathew
**Sent:** Monday, November 23, 2015 10:56 AM
**To:** Christopher Mays
**Subject:** FW: Herman

Hi Chris!

We have an associate in Ops Training who seems to be having some issues re: being managed and wanted to know if this is something your group could assist with before it escalates to a PIP or something of that sort.

Also, can you tell me who supports Ops Training? Wasn't sure if it was your or Sarah 😊

Thanks!
Reena

**From:** Michelle Ricci
**Sent:** Monday, November 23, 2015 9:33 AM
**To:** Reena Mathew
**Cc:** Yessica Adriano
**Subject:** RE: Herman

Good morning,

They began a few months ago and seem to be increasing each month. It appears he does not like to be managed. When we hired him, my only concern was it appeared he had more turnover on his jobs than one would like to see. I am seeing why now… ☹

We were supposed to sit down and talk this afternoon with Courtney/Joe and myself, but he emailed me letting me know he was not comfortable doing so. I asked him to help me understand why, as that is key to moving forward with their relationship. He has yet to reply.

I could certainly reach out to TD, though his actual work (training) is on par. Does Chris or Sarah oversee Ops Training?

Thanks!

**Michelle Ricci**
Santander Consumer USA Inc.
VP Training

PHONE   214.261.1440
MOBILE   704.707.5005
EMAIL   mricci@santanderconsumerusa.com
WEB   www.santanderconsumerusa.com

**From:** Reena Mathew
**Sent:** Tuesday, November 17, 2015 3:25 PM
**To:** Michelle Ricci
**Cc:** Yessica Adriano
**Subject:** RE: Herman

2

HI Michelle,

Thank you for looping us in.

Curious to see what all he brings up in the meeting........have these issues been ongoing or did they begin in July?

Wondering if it would be beneficial to involve Performance Development as well.

Thanks,
Reena

---

**From:** Michelle Ricci
**Sent:** Tuesday, November 17, 2015 2:06 PM
**To:** Reena Mathew
**Subject:** FW: Herman

Reena,

We have been having some performance and attitude concerns with Bernard Mullins, product trainer. Courtney made a few notes that you will see attached and I spoke with him on Friday as well. He struggles with accepting responsibility for actions. I have a meeting set up for next Monday with Courtney and Herman; just wanted to make sure that HR was aware as he did express his dissatisfaction with both Courtney and Joe.

Please let me know if you have any questions.

Thanks,

**Michelle Ricci**
Santander Consumer USA Inc.
VP Training

PHONE   214.261.1440
MOBILE  704.707.5005
EMAIL   mricci@santanderconsumerusa.com
WEB     www.santanderconsumerusa.com

---

**From:** Joe Whitfield
**Sent:** Tuesday, November 17, 2015 11:22 AM
**To:** Michelle Ricci
**Cc:** Courtney Valentine
**Subject:** Herman

Morning Ricci !

--------------------

This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. The information contained in this e-mail is confidential and intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to

Mathew 036

deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this message in error or there are any problems please notify the originator immediately.

The unauthorized use, disclosure, copying or alteration of this message is strictly forbidden. This mail and any attachments have been scanned for viruses prior to leaving sender's company network. Neither the sender nor the sender's company will be liable for direct, special, indirect or consequential damages arising from alteration of the contents of this message by a third party or as a result of any virus being passed on.

Sender's company accepts no liability for the content of this email or its attachments, or for the consequences of any actions taken on the basis of the information provided, unless that information is subsequently confirmed in writing.

Mathew 037

**From:** "Pamela Blackburn" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=PAMELA BLACKBURNDB5>

**To:** "Reena Mathew" <rmathew@santanderconsumerusa.com>

**Subject:** RE: Hello

**Date:** Thu, 10 Dec 2015 15:37:51 +0000

**Importance:** Normal

---

Hi Reena,

Many thanks for your email.  Michelle is out at Board meetings this week, but I have asked the team to provide me with background documents on the recent discussions with you and will then be happy to discuss further.  I anticipate I will have everything by the end of this week, so will be in touch during the course of next week.

Kind regards,

*Pam*

**Pam Blackburn**
Santander Consumer USA Inc.
Executive Vice President Human Resources

PHONE:  +1 (214) 838-5070
MOBILE:  +1 (214) 478-6315
EMAIL:  pblackburn@santanderconsumerusa.com
WEB:        www.santanderconsumerusa.com

---

**From:** Reena Mathew
**Sent:** Monday, December 07, 2015 10:51 AM
**To:** Pamela Blackburn
**Subject:** Hello
**Importance:** High

HI Pam,

I hope you're well.

I sent MW an email and I'm sure she is busy but I was wondering if I could speak to someone in upper management about how my review was handled. I've already followed the chain of command and spoken to Yessica and Stephanie but I'm still not clear about the situation.

I appreciate it in advance and thank you for your time.

Thanks,
Reena

**Reena Mathew, PHR**
Santander Consumer USA Inc.
HR Business Partner

PHONE        214.292.2772
MOBILE       214.364.9136
FAX            214.630.0828

EMAIL      matthew@santanderconsumerusa.com

WEB        www.santanderconsumerusa.com

BENEFITS HOTLINE   214.540.2010

**Don Uloth**

| | |
|---|---|
| **From:** | Reena Mathew <rmathew@santanderconsumerusa.com> |
| **Sent:** | Wednesday, December 9, 2015 8:19 PM |
| **To:** | reenasara@hotmail.com |
| **Subject:** | FW: Thank You |

**From:** Reena Mathew
**Sent:** Wednesday, December 09, 2015 7:49 PM
**To:** Stephen Shaffer
**Subject:** Thank You

Hi Stephen,

Thank you for speaking with me.

Again, I just want to be treated fairly and in the five years here (including this year)
, I've never had any type of performance issues up until now.

If these are areas of opportunity that I need to work on, I can accept that but I don't accept them being brought to my attention as areas of concern for the first time during my review, let alone being placed on a PIP.

As a practice here at SC, I have not come across associates being placed on a PIP without clear documentation where the associate was aware of the issues (emails, recaps of conversations, outline of plan etc).

I'm not stating I'm above reproach, but I would like for those expectations to be clearly stated if they're truly an issue and have an opportunity to correct them. Additionally, I have been provided with no dates, documentation or addendum with specifics (as stated on the PIP document) to substantiate any of the items listed.

I am a hard worker and want to be successful as we all do. To be so blindsided and possibly have my bonus, merit and job jeopardized so frivolously is something I cannot accept.

I hope you can understand where I'm coming from and know that I want to do well here at SC as I have in the last 5 years and continue to do so.

Thank you for your time.

Reena

**Reena Mathew, PHR**
Santander Consumer USA Inc.
HR Business Partner

| | |
|---|---|
| PHONE | 214.292.2772 |
| MOBILE | 214.364.9136 |
| FAX | 214.630.0828 |
| EMAIL | rmathew@santanderconsumerusa.com |

1

Mathew 038

WEB    www.santanderconsumerusa.com

BENEFITS HOTLINE    214.540.2010

--------------------

This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. The information contained in this e-mail is confidential and intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this message in error or there are any problems please notify the originator immediately.

The unauthorized use, disclosure, copying or alteration of this message is strictly forbidden. This mail and any attachments have been scanned for viruses prior to leaving sender's company network. Neither the sender nor the sender's company will be liable for direct, special, indirect or consequential damages arising from alteration of the contents of this message by a third party or as a result of any virus being passed on.

Sender's company accepts no liability for the content of this email or its attachments, or for the consequences of any actions taken on the basis of the information provided, unless that information is subsequently confirmed in writing.

Mathew 039

**From:** "Reena Mathew" <rmathew@santanderconsumerusa.com>
**To:** "Pamela Blackburn" <pblackburn@santanderconsumerusa.com>
**Cc:** "Stephen Shaffer" <sshaffer@santanderconsumerusa.com>
**Subject:** Fwd: Thank You
**Date:** Fri, 11 Dec 2015 13:34:56 +0000
**Importance:** Normal

---

Hi Pam,

I also wanted to mention that I had reached out to our VP Steve Shaffer and he called and we spoke on Wednesday. Please see the email below for additional details from our conversation.

Pam, I am also pregnant (15 weeks) and cannot help but wonder if this has any bearing on my review because I mentioned it to my mgmt when I was 8 weeks pregnant out of courtesy and a month later I'm on a PIP after never being formally coached in my 5 year career. I've been told that I've been coached (after stating I hadn't been) and have asked for documentation numerous times to no avail. One of the items I was told is that I received complaints from my Business Partners when in fact if you look at my past reviews including my mid year, it states I have great relationships. I even received numerous YEI points over the course of the year (from the same people who allegedly complained). When I mentioned that to my mgmt they stated they only gave me those points after complaining and I then followed up (which again is not true). These are just a few examples of what I was told and there is nothing to substantiate the claim when I request it.

I just want to give you additional background information in case you weren't aware. To be candid, this whole situation has given me a lot of undue stress and I just want to be treated fairly especially because of the negative impact this would have on me.

Thanks again for your time and let me know if you need anything else.

-Reena

Sent from my iPhone

Begin forwarded message:

**From:** Reena Mathew <rmathew@santanderconsumerusa.com>
**Date:** December 9, 2015 at 7:48:40 PM CST
**To:** Stephen Shaffer <sshaffer@santanderconsumerusa.com>
**Subject: Thank You**

Hi Stephen,

Thank you for speaking with me.

Again, I just want to be treated fairly and in the five years here (including this year)
, I've never had any type of performance issues up until now.

If these are areas of opportunity that I need to work on, I can accept that but I don't accept them being brought to my attention as areas of concern for the first time during my review, let alone being placed on a PIP.

As a practice here at SC, I have not come across associates being placed on a PIP without clear documentation where the associate was aware of the issues (emails, recaps of conversations, outline of plan etc).

I'm not stating I'm above reproach, but I would like for those expectations to be clearly stated if they're truly an issue and have an opportunity to correct them. Additionally, I have been provided with no dates, documentation or addendum with specifics (as stated on the PIP document) to substantiate any of the items listed.

I am a hard worker and want to be successful as we all do. To be so blindsided and possibly have my bonus, merit and job jeopardized so frivolously is something I cannot accept.

I hope you can understand where I'm coming from and know that I want to do well here at SC as I have in the last 5 years and continue to do so.

Thank you for your time.

Reena

**Reena Mathew, PHR**
Santander Consumer USA Inc.
HR Business Partner

| | |
|---|---|
| PHONE | 214.292.2772 |
| MOBILE | 214.364.9136 |
| FAX | 214.630.0828 |
| EMAIL | rmathew@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |
| BENEFITS HOTLINE | 214.540.2010 |

SC002910

**From:** Pamela Blackburn <pblackburn@santanderconsumerusa.com>
**To:** Stephen Shaffer <sshaffer@santanderconsumerusa.com>
**Subject:** Re: Reena Mathew
**Date:** Mon, 14 Dec 2015 03:01:24 +0000
**Importance:** Normal

---

Thanks Steve.  Have you had an opportunity to interview Yessica and Angelina on this yet, to gain their perspectives and evidence as her leaders?

If not, could you do that this week so you have a full picture?

Many thanks

Pam

Sent from my iPhone

On Dec 13, 2015, at 8:51 PM, Stephen Shaffer <sshaffer@santanderconsumerusa.com> wrote:

My notes from my conversation with Reena.  Sorry, I thought I sent these already.

Conversation with Reena Mathew.  Date: 12/9/15  Time: 6:06pm  Phone number: 214-364-9136  - I called her as agreed.

Reena started by explaining that Angelica was her manager for most of 2015.  Yessica had become her manager in October of 2015.

-She felt blindsided by her review and how it was presented.
-She noted that turnover is high on their team, and that everyone is anxious about if they will be the next to go
-2015 goals  were set with Stephanie (overall team).  Her mid-year review was fine.
-End of year review, once management knew she was pregnant was not good.    Reena indicated that she received no coaching, no feedback, and received no follow-up mail.
-Her self-rating was meets/exceeds.  She was placed on a PIP.  This has never happened in her career.
-Again she reinforced that there was no coaching and no documentation
-She was told the issues were her attendance, completing projects and asking for help (took this to mean not asking for help when stated)
-She noted that in her view the HR team preaches documentation and there is none for her.  The PIP form specifically asks for an addendum and there is not one on her PIP.  She states that she has requested documentation and addendum and has received neither to this day.
-Stated that she can accept that she has areas to work on, but someone should tell her and give her a chance to fix.  There is no clear cut information and this was done frivolously.
-Asked her if I talked to Angelica and Yessica if they would agree that they did not coach her?  She indicated she did not know what they would say.
-This is unfair to the associate
-Conversation with Stephanie did not take place until after the PIP
-Told Stephanie she did not agree with the points, and there never was a serious sit-down.
-Stephanie indicated that both Angelica and Yessica said they did, so when two people say it, there must be truth to it
-She then indicated if coaching took place where is the documentation?
-Reena then stated.  Even if meetings were shown to be held on a calendar, that does not mean the associate got a clear message about performance

SC004970

- Asked if the concerns expressed were valid. She said there could be areas of opportunity but a PIP at this point was a last resort. She needs a chance to correct behaviors and address issues brought during review. They are valid in the sense that there is an area of opportunity, but it was her first time hearing about it.

-Referring continual referral of the "the associate", I asked her if she did not have more knowledge and understanding than the normal associate, thus should she not have been able to decipher the situation sooner and make progress? No clear feedback, so unaware. When issues were brought up with her and Sabrina such as leaving early and she was coached, it has not happened again.

-She was told by Stephanie (after the PIP) that the workload was not bad at LEW, but then she is told she needs to ask for help when it gets heavy, she feels she is getting two different messages here.

-I asked her what she wants to come out of this escalation. Her response was that she wants to be treated like everyone else. HR should have their "ducks in a row" for a PIP

-I asked her to be more specific, i.e. what are you wanting to specifically come out of the escalation? I then stated that I was making no promises other than this would be looked into.

-She wants:

      -No PIP

      -Her bonus. She worked her tail off.

      -Merit

-she noted when she asked how this would affect her bonus and merit, she received no answer. She actually does not want any of this.


-I noted at this point that even if changes took place (no promises were again reemphasized) that it did nothing but change the timeline. In other words, her management team's view of her performance is clearly not good and she clearly understands that now. Thus the feedback is clear and has been given. Even if we shifted the process it would only change the time by which she had to improve, and did she understand that? She indicated she understood, but then indicated a 30 day PIP is rough.

-She encouraged me to look at her file. There is nothing there (according to her) that would indicate this is warranted

-She indicated that I should look into the process for a PIP. She clearly feels it was not followed her due to no coaching (her opinion), no documentation provided when requested, no addendum on the PIP form.

-There is no data and someone's livelihood is being affected here. Around this point she again mentioned she was pregnant. Reena mentioned her pregnancy several times throughout our conversation.

-She was told there were complaints from clients regarding the handling of DA's. She disagreed indicating that many clients have given her "points" for her work, and that she gets points all the time. Why does she get so much recognition if things are so bad?

-She encouraged me to talk to her business partners. She also indicated I should look at Kronos regarding dates.

-She said she wanted to be treated fairly. There is nothing to substantiate what is being said.

-I indicated we should discuss next steps.

      -I needed to talk to Stephanie, Yessica and Angelica.

-She asked that I look at her "You Earned It"

-I did indicate I would look into the process of a PIP.

-She again reiterated wth no documentation, how do we know an issue was discussed clearly and accurately or at all?

-She indicated her disappointment in this process. She wants to move forward. She is pregnant at this time and she really does not need this stress.

I closed the conversation indicating again, no promises but if she felt she forgot to cover something, or if some other information occurred that she wanted me to know or she thought would be helpful that she should feel free to call me or e-mail me.


**Stephen Shaffer**

Santander Consumer USA Inc.

VP Human Resources Business Partnership

PHONE     214.722.4580

MOBILE   469.236.5931

SC004971

EMAIL   sshaffer@santanderconsumerusa.com

WEB    www.santanderconsumerusa.com

SC004972

**From:** Stephanie Elad <selad@santanderconsumerusa.com>
**To:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Subject:** RE: Investigation Material
**Date:** Tue, 15 Dec 2015 16:01:37 +0000
**Importance:** Normal

---

Thanks!

**From:** Yessica Adriano
**Sent:** Tuesday, December 15, 2015 8:03 AM
**To:** Sabrina Boyd; Hortensia Perez; Reena Mathew; Tina Mohan; Fatma Rizvan; Russell Tookes; Brandon Webb; Susan Haynes; Whitney Andres; Nicole Heinicke; Kristen Lagunes; Melissa Lawson; Jeanette Rodriguez
**Cc:** Angelina Hullum; Jonathan Morse; Kayla Liggett; Edward Fabritiis; Stephanie Elad
**Subject:** Investigation Material

Team,

As a follow up to our end of year meeting, attached is all the material used during our investigations which includes:

- Investigation Checklist
- Investigation Notes Template
- Investigation Summary

Remember to partner with your HRM prior to commencing and while handling investigations, please feel free to reach out to any of us if you have any further questions.

Thank you,
Your HRM team

SC008463

**From:** Stephanie Elad <selad@santanderconsumerusa.com>
**To:** Pamela Blackburn <pblackburn@santanderconsumerusa.com>
**Cc:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Stephen Shaffer
<sshaffer@santanderconsumerusa.com>
**Subject:** FW: D. Crouch - Investigation Summary- CONFIDENTIAL
**Date:** Tue, 15 Dec 2015 15:49:03 +0000
**Importance:** Normal
**Attachments:** D._Crouch_Timeline_of_Events.docx

---

Hi Pam – Yessica has completed her investigation in regards to the Deidre Crouch matter. As you probably recall, Deidre submitted her resignation cc'ing MW, Eldridge, etc. I asked Yessica to handle the investigation personally, as it appeared that there were some significant gaps on the part of Reena and Misty (former BP at NRH) in handling this matter.

Yessica's recap is below and her timeline is attached. I agree with her recommendation to administer a final warning to the manager involved (Cheri Cotton) and to have an impactful, coaching conversation with the AVP. However, I anticipate that the business will push back on the final recommendation so I'd like to get your thoughts before we speak with VP Jodie Kelch and SVP Mark Mooney.

We have had issues with the leadership in this group before. I think that there are some opportunities with the VP and SVP, which trickles down to the rest of the team. I have spoken with Wayne about these issues prior but it was awhile ago, probably 6 months.

Please review and advise so that we can provide our recommendation to the business. Thanks!

---

**From:** Yessica Adriano
**Sent:** Tuesday, December 15, 2015 7:34 AM
**To:** Stephanie Elad
**Subject:** D. Crouch - Investigation Summary

Hello Stephanie,

Below is an attempt at a general investigation summary for Deidre Crouch, the detailed investigation notes of every conversation I had will soon follow. I have attached a time line of events dating back from when Deidre first raised her issues, which paints a vivid picture of her attempts at reaching out. The timeline below is just of our investigation. Please review and advise if you would like for me to condense or be more specific on the summary below. My recommendation is at the end of this email, I would also like to gather your thoughts on appropriate course of actions. Thank you.

**Date Complaint Received:** 11/24/2015
**Investigator(s):** Yessica Adriano- Manager, Human Resources
**Complainant(s):** Deidra Crouch, Collateral Recovery Specialist
**Accused:** Cherri Cotton – Loss Recovery Manager
**Witness(es):** Jeannie Palmer, Nadia Robinson, Jessica Gibson, Natassia Kinney, Nathan Jones, Chris Musso – Collateral Recovery Specialists
Ebony Jones- Reinstatement Coordinator
Tara Stewart- AVP Loss Recovery, Jodie Kelch-VP Loss Recovery

**Timeline of Investigation:**
**11/21/2015:** Deidra Crouch's Resignation letter received

**11/24/2015**: Spoke with Deidre over the phone, she shared her concerns and the reasons for her departure. She was offered the opportunity to return to the NRH site.

**11/25/2015**: Deidre responds via email to me to verify if the position will be under Tara

HR Compliance reviews past logs and does not find a complaint from Deidre

**12/1/2015**: Advised the position open would still fall under Tara, and asked if she would be willing to go to Late Stage at NRH. Deidre responds same day stating due to her declined health and the treatment she endured she will not return.

**12/7/2015**: Spoke with 6 agents from Sherri Cotton's team, and 1 agent from a surrounding team

**12/8/2015**: Met with Tara Stewart, AVP Lost Recovery  and Jodie Kelch, VP Loss Recovery

**12/9/2015**: Met with Cherri Cotton, Loss Recovery Manager

**12/11/2015**:  Nastassia Kinney, comes to see me stating that Cherri has been nicer to the team since the day Jodie arrived and no longer places the customers on speaker phone, however she has begun to "play her like she did Deidre" through EIC comments. Advised will look into EIC and follow up with her the following week.


**Deidre Concerns:**
- Cherri treats her unfairly and humiliates her anytime she can, which caused a decline in her health and well being
- Employees were aware of her write up before she knew about it
- Brought these issues to Tara several times and she never did anything about it, went to HR, and contacted an Ethics officer
- Cherri is always sharing people's business with other employees and says mean things about everyone (examples provided)
- Cherri always puts upset customer's on speaker and mocks them

**Substantiated Claims from witnesses questioned:**
- 2  employees state they were aware of Deidre's write up as Cherri left if on her desk and made comments in regards to it
- 2 employees confirm Cherri speaks negatively of many employees and their personal matters, examples and time frames provided
- 2 employees state that they these matters have been brought to Tara's attention several times and to HR and nothing was done but things got worse
- 1 employee confirmed how Deidre was taunted by Cherri after returning from an HR meeting
- 3 employees confirmed it is important not to get on Cherri's bad side, because of how her disposition changes (2 of them provided examples of how bad she has treated Deidre and Jeannie)
- All interviewed parties confirmed Cherri places upset customers on speaker phone, 4 of the 6 interviewed agree she laughs and does this for an entertainment value

**Unsubstantiated Claims:**
- Deidre notifying the Ethics officer, compliance thoroughly reviewed and confirmed there is no record of this
- Deidre reaching out to Tara on 09/04/2015 to question her Final issued on 08/30/2015

**Tara/Jodie Meeting Recap:**
- Jodie begins meeting by stating Misty, Reena were asked to get involved and they advised this investigation was closed with no findings
- Tara reviews how the oversight of Deidra's attendance occurred, how she reached out to have it corrected, and her thorough apology to Deidra over this. This error was caught in time and Deidra's bonus was not impacted
- Deidra brought up concerns of favoritism, bullying, log in/log outs, ,eating on the floor concerns to her.  Upon her review, Cherri was doing everything correctly and was consistent in her practices
- Tara references Cherri's communication style and how it can be misinterpreted as well as hers
- Tara states the 10/20 meeting went well, she followed up on 10/27, Deidra was fine and she helped bridge the communication between her and Cherri by having her do a recap and receive kudos. The resignation letter came to her as a surprise.

          SC009898

**Cherri Meeting Recap (Jodie Kelch Present)**
- Issues with Deidre began after she was written up, Deidre just stopped speaking to her
- Claims she has never spoken negatively about any one on the team. Examples provided and she remembers another associate announcing one of these incidents, but it didn't come from her
- States she is consistent with holding everyone accountable and applies same rules to all
- She has placed customers on speaker phone but only while she is multitasking and helping associates at the same time. If a customer is irate and uses profanity she is quick to pick up the headset. When questioned if she has laughed, she says maybe but not at the customer. Advised many have corroborated she has placed these for an entertainment value, she states she does not know why they would say that
- Claims team environment is good and references issues with Nastassia
- Per Jodie's question, admits she is personable with employees but once a DA is administered has "pulled back" and changed her style

**Recommendation:**
**It is evident that Deidre reached out multiple times using several avenues, these issues were not addressed, nor given the urgency it required.**

**In speaking with Reena, she did not fully review the emails forwarded to her highlighting Deidre's concerns. During the HR meeting, she included and allowed Deidre to lead the questioning when the day before Deidra mentioned her discomfort with Tara. Reena at one point mentions she feels Deidra exaggerates, and states she did not look into the claims Deidra made (since Tara verified them). The only follow up conducted was from Tara. As an HR member, our diligence in investigation matters is crucial.**

**In regards to Cherri Cotton, it was substantiated her ill practice of placing customers on the phone with an intent of mocking them. In our meeting with her, she also admits to changing her style and not being as personal as she is used to when an employee is placed on a disciplinary action. For these behaviors to include the substantiated claims and her failure to uphold our leadership expectations as a manager, I am recommending a Final Written Warning.**

**During my meeting with Tara, my perception is she was quick to defend Cherri and at one point comments her communication style just like Cherri's has been questioned before. The timeline and emails prove Deidre brought up Cherri's concerns and her incorrect coding, the delay in getting this corrected is questionable. However, she did involve HR in the matter and we allowed her to take reigns during the HR meeting, and she handled the follow up with Deidre. My recommendation for her is a strong coaching, emphasizing the objectivity we need to maintain as leaders as well as appropriate timely responses to agent complaints.**

**Jodie Kelch did follow up immediately with HR upon receiving Deidra's concerns.**

Thank you,
Yessica

SC009899

# FINAL REPORT FOR HR – REENA MATHEW

Reena Mathew – Human Resources Business Partner.  Associate Number 013696

Current Manager: Yessica Adriano.  Previous Manager: Angelina Hullum

HRD: Stephanie Elad

Timeline of Events in regard to my investigation:

12/8/15 – Mail sent from me to Reena Mathew indicating I was meeting with members of my extended team, and I would like time with her.   Reena responds positively but asks if I am aware she has issues with her review.  I reply that I am unaware of these issues.  She indicates that she has escalated to Pam Blackburn and Michelle Whatley, but has not heard back as of yet.  Inform her I will be glad to talk to her, and that my intent would be to talk to Pam at my one on one that coming Friday if she would be ok with that.  She indicated that she was fine with it.

12/9/15 – Brief conversation with Stephanie Elad.  Informed Stephanie by phone that I would be meeting Reena.  Explained Reena had escalated to me and that I needed to hear what she had to say.  Stephanie indicated that both Angelina and Yessica had informed her that they had coached Reena.  As to documentation, some rough timelines and notes did exist.  She had a conversation with Reena as well.  Stephanie's feeling was that Reena had definitely been giving feedback and coaching, that Reena was in denial, and that we were in-line with work we had done with clients in the past.

12/9/15 – Steve and Reena set up time for Steve to call Reena at 6pm that evening.  I would call her at 214-364-9136.

Summary of notes and conversation with Reena on 12/9/15.  Notes attached.

Reena reported to Angelina most of the year.  She then reported to Yessica as of October 2015.
Reena felt blindsided by her review.  Her mid-year review was fine.
She indicated that everything changed once management knew she was pregnant.
She received no coaching during the year and she requested documentation and received none.
She never had a conversation with Stephanie until after the Performance Improvement Plan (PIP) was issued.
Believes that when we use a PIP it is a last resort.  She should have been given in her opinion a time to correct her behaviors and address issues, but this did not occur.
When asked what she wanted out of the investigation she wanted the following:-No PIP; Her Bonus; and Merit.
Reena was informed that even if changes took place, that she still have a Performance Issue with her managers to work on, and that the timeline would only be delayed.
Reena emphasized her being pregnant and her desire to be treated fairly.
I communicated no promises other than I would look into it, and get back to her.

12/10/15 – Stephanie sends Angelina Timeline (attached)

1

In reviewing this timeline and what back-up e-mails Angelina provided, it is evident that some discussion went on between Angelina and Reena, however what is not clear is the results of these discussions. In other words, from the dates and aligning e-mails I have no doubt that requests were made, and some level of discussion was held. While an associate of Reena's seniority can be expected to be self-aware enough to know that issues around performance are being raised, the management team could have been clearer in their expectations and potential consequences due to performance issues. In addition, there were times the management team should have followed up or pushed harder on issues.

12/10/15 – Stephanie provides her notes on her discussion with Reena. (Attached)
This conversation took place after the PIP was communicated. Stephanie explained that both Angelina and Yessica had expressed communication on issues regarding attendance and follow-up on items with the business. Reena did express her view that her pregnancy and her being a minority (the first time this has come up in documentation or discussions to my knowledge). Reena stated repeatedly that we were not following our process of coaching to address problems first. Stephanie insisted coaching was provided. Stephanie indicated she too had observed performance gaps. Reena did indicate she had a better feel of the feedback from Stephanie. Stephanie mentions two areas where she provided feedback to Reena, and while valid they are recent and no clear consequences or steps are conveyed.

12/11/15 – Reena sends mail to Pam letting her know that she is pregnant and that she is worried this is playing into decisions made. Also lets Pam know she has reached out to me, and that she has received "you earned it" points for service to clients.

12/14/15 – Reena meets Steve at Lewisville. –Original and main purpose of the meeting is to just have Steve and Reena get to know one another – the original reason for contact. However, a quick discussion on the issues raised happens.
Reena provides a copy of her mid-year review for 2015. Discussion around goals in the Mid-Year.
Did Reena meet new managers – yes she has one more manager to go. Keegan.
Anti-bullying task force – Angelina was on point. Angelina set goal aside.
Create "Get in the Know" – what was discussed at offsite meeting
HR Advocacy – constant interaction – trained new HRBP's and Generalist. Dean, Glena, and Misty.
We discussed her PIP. Provided two complimentary e-mails. She insisted that she has received no feedback on her goals. I told her I would call her by Monday, December 21, 2015. (I did e-mail her the morning of with a status)

12/14/15 – Steve interviews Yessica Adriano.
Yessica had Reena for three (3) months. They had a one on one most every week. In their first meeting, Yessica communicated to Reena that she was concerned about one real project goal being on there. She felt it left Reena exposed if the project tanked or failed.    On 9-28-15, Yessica emphasized the need to maintain a high level of efficiency. Workload was going to continue to grow. She told Reena she needed to help with the "box"; that they all did. Reena feels they are too busy, and she cannot get to the box. Yessica opinion in coming from NRH is that three (3) including her should be able to handle LEW. Yessica ran numbers the support per associate has LEW with slightly more than NRH.   However, some work is also going to leave LEW, so the numbers become even closer, not justifying another headcount. There are issues with last minute notifications of doctor's appointments, times where she

2

leaves early and then says she will work from her phone or home.  She has told Reena what she has as far as expectations, but when expectations are not met, Reena has not been told the seriousness and that her job may be at risk.  Copy of the PIP provided.  Yessica also provides some documentation.

1) On 9.28.15 – Yessica reviews Reena's goals with her
2) On 10/12/15 – Disciplinary Actions (DA's) are discussed, but the nature and clarity of the discussion is not clear.
3) On 12/1/15 – The PIP is presented – Yessica's notes indicate it is not well received.
   a. Pregnancy, stress on pregnancy, workload are mentioned by Reena
   b. Workload is brought up by Reena as issue.  Cannot work after hours with children
   c. The PIP is crazy and B.S.
   d. Judgment is discussed.  Reena disagrees with issue.
4) On 12/9/15 – A follow-up meeting is held.
   a. Reena requests the documentation that exists
   b. Main issues discussed are workload, quality of work, and judgment according to the notes
   c. Leaving early was discussed.  Reena indicates others do it as well, and this may be true at times, but as noted by managers, work needs to be completed and client needs addressed.

12/14/15 – Review of the Mid-Year Review document. – Dated 7/8/15
Manager overall evaluation is vague and not specific.
Overall evaluation encourages Reena to push herself to be better.  Look for ways to make LEW more efficient, train new managers, and look for trends in the GITK. (Get in the Know)

Goal – Actively drive, support, and enforce risk management standards.
Manager Evaluation – Reena stays on top of all compliance issues and is timely when returning any risk event information back to Compliance.

Goal – Create and share reporting to educate business partners on HR trends
Create Get in the Know spreadsheet
Manager Evaluation – Would like to see Reena pull information in order to become more strategic with her business partners and identify trends.  With her tenure and knowledge, she can provide valueable (sic) recommendations to the business leaders.

Goal – Develop processes to develop the skills of our leaders.
Meet with new managers …and sit in on side by sides, attend jumpstarts during their first 3-6 months…
Manager Evaluation – Would like to see more progress in this area.  We have many new managers that need training and guidance (sic) Reena needs to spend more time on the floor with all managers.
Reena response: Early Stage here in Lewisville just hired four managers and will start initiating side by sides, attending their jumpstarts and even provide quick training if needed in Kronos, WD, etc.

Goal – Create investigation matrix that will be used internally via HR…
Manager Evaluation: This goal is almost complete.  Looking forward to the final product.

3

Goal: Formulate rollout of anti-bullying campaign…
Manager Evaluation – We have made progress, but have a lot more work to do in this area, would like to see more ideas and progress in this area now that we have more HR support.
Reena – produces e-mail from Angelina dated November 10 indicating goal was shut down for the year. When I met with Angelina she confirms.

Section summary – Manager Evaluation.
Reena does a great job with her day to day duties. I would like to see her spend more time training our managers and working on her projects.

Competencies:  All Manager Comments:  Collaboration – Reena does a good job collaborating with members of our team.  I would like to see her branch out to other members of HR advocacy.
Interpersonal Savvy. – Reena does an excellent job of building rapport with all levels of employees.  She is trusted and always professional.   Section Summary – Reena maintains consistancy (sic) when applying policy/procedure. She completes here compliance training as scheduled. She works with Compliance to minimize risk when necessary.

Development: Manager Evaluation – Reena can continue her growth this year by focusing on helping new managers develop and by working on completing her goals and projects.  I encourage her to step out of her comfort zone and find ways to take herself to the next level.

Complimentary E-mails:
April 3, 2015 regards Reena's recognition of an employee in distress and connecting him with EAP, potentially preventing a suicide.  Angelina and Stephanie compliment her on her efforts.

October 19, 2015 regards a complimentary mail from Yessica recognizing an attendance proposal developed by Reena.

Timeline of Events – identifies several times that conversations were held or issues identified.  Unclear if definitive feedback was provided to Reena of where she had to improve and the consequences if she failed.

12.17.15 – Steve interviews Angelina Hullum.
Angelina had Reena for 8 months of the year.  When Paula was here, Reena expressed concern about being overwhelmed and stressed.  She at one time wanted part time, but was told that there were no p.t. positions in HR.  Originally a compromise took place that let her arrive in the office 30 minutes later and supposedly stay later.  However this never seemed to work and took place over a year ago.
January 14 – Reena missed an e-mail and did not terminate someone until January 22.  She was talked about the mistake, so it was noted, but no pattern existed, and I did not interpret it as a serious outcome, but something to improve per the back-up e-mail.

Other instances occurred and the problems were in some cases brought to Reena's attention, and most of the e-mails asked why something was not done or requested that a person receive it. Some items like

4

 SC000024

a vacation approval and our lack of follow-up on her report from a Dallas HR luncheon reflected our inability to hold her accountable.

PIP Process – I questioned three different HRM level folks. To me the PIP process, i.e. when it becomes effective, what feedback transpires before it, and how long it goes into effect for is unclear. My conclusion from my conversations is that a PIP document was a "last straw" reaction, and the timeframe of 30 days is likely too short of a time to determine if a turnaround is effective, and it needs to be restated that this is exactly what it says it is, a performance improvement plan. It is not a last straw.

Summary:
The Operations HR team has not done a totally effective job in managing Reena Mathew, especially in holding her accountable for her mistakes and poor performance at times. Too often the team was being nice in allowing schedule flexibility which is a good thing if the work is getting done, but all too often DA's were not processed and while it was mentioned, there were no consequences or changes, as a matter of fact there is no evidence of even a mention of consequences. Reena was continually allowed to leave early for last minute Doctor's appointments (ones that would have been known about well in advance) penalizing other team members with work. She continually is worried about the workload compared to others, and leaves it to other team members to manage team collaborative roles like managing the box, yet Reena is told at mid-year she is a collaborative team member. Management is watching Reena's time instead of her goals and her completed workload. For instance, while helping the team with issues in "the box" is brought up, at some point this should have been documented in writing as part of expectations. More SMART (Specific, Measureable, Achievable, Results-oriented, and time bound) objectives are needed. As to Reena's workload, Yessica has listened and run numbers which indicate right now LEW has the resources needed to do the job, especially with upcoming reductions. Reena has indicated that she has children and cannot work after hours. This is not the issue to debate. The role should have clear responsibilities and goals laid out. Reena is responsible for getting that work completed and with quality. How much time she spends completing her work is up to her time management and time allocation, though she is expected to finish the work in allotted and fair time frames. She is an exempt level professional and needs to complete her work, and management's mission is to provide the coaching and tools for her to succeed.

Recommendations:
At the heart of the matter is the intention of a Performance Improvement Plan (PIP). In discussions others on the team, the intention is not as Reena interprets and we need to make this clear. Reena's performance has been lacking and our step at this time will be a PIP with an included action plan for Reena to improve. If she fails to show improvement through the action plan and regular meetings, then her management will move to provide her a documented verbal warning indicating where she is falling short, where she can improve, and the time frame to improve. Part of the action plan will also take into account potential areas where we can assist her in improving, but she must provide input to this process. The performance improvement should run 90 days and have weekly check-ins with monthly reviews.

5

Recommendations Continued:

Overall, there were good intentions by the management team, and assumptions that Reena would totally understand and buy off that her performance was not up to par considering the different times she was asked or a poor action was pointed out. Documentation of the intended coaching should have started sooner. The performance issues need to be corrected through the PIP/Action Plan process.
In addition to structured coaching, feedback, and action planning through the PIP process, it should be recognized that this process will not affect the upcoming bonus and or merit. Reena will receive a "Meets" rating and the appropriate compensation that accompanies this rating. This does not mean that Reena was without performance gaps, rather we are now addressing her performance issues in a plan now and it is too late to affect her rating and compensation. However, this feedback and her performance against her action plan will be taken into account for the mid-year and annual review of 2016.

6

SC000026

12.8.15 - Recia informs Steve concerns w/
review - informed she escalated to PB
and HCM

"Concerned w/ brutally of review"

12.9.15 - Time set to talk by phone at 6pm
Steve to call Reena @ 214-304-9136

12.10.15 - Stephine sends Angeline twice
- Stphine sends her survey
- Stphine sends her survey

12.11.15 - Reena He Pan knows she talked
to me

12.13.15 - Steve's notes to Ame Rep

12.14.15 - met w/ Reena

12.4.15 - met w/ Jessica

12.17.16 - Angeline met
013496

Jessica Allen
Angeline Allen          32 miles

App.129   SC000027

Issues

9/28/15 - discussed the bop

10/12/15 - discussed DK's not clear of nature.

12/1/15 -
pregnant - benin
engg - B.S.
never been left on a DH
attendance - absences.
work hous.

12/9/15
- regimet documentation
- warn issues would load guilty of judgment
- leaving early discussed.

Reena Mathew
214 - 364 - 9136

12 9. 15
6:06 pm

Could tell how it will affect them. Never started.

Angelina - old manager - majority of 2015. Jessica - Oct
Review - Now presented. Feels blindsided. Turnover is high.
2015 - goals - Stephanie - documented review - mid review - fine
Never received negative coaching/feedback. Mid year was good.
End of year - (Pregnant) review - just told her pregnant.
No coaching. /No follow-up mail / No feedback
rated self - meets/exceeds - Placed on PIP. Never in career
NO DOCUMENTATION coaching
ATTENDANCE / completing projects - asking for help. Investigation came up
French documentation - no addendum on PIP. No info to this day
CW accept answers to work - give chance to fix. Does not have
clear cut information. Done favorably.
Will they agree about coaching? - doesn't know what they will
say? Unfair to associate - pinch.
Conversation w Stephanie - after PIP had conversation.
Don't agree with the points. Never had a serious sit down
They said they did. - Provide her documentation.
Concerns - Are they valid? - areas of opportunity - PIP - severe
last resort. Not saying she does not agree - saying does
not believe in PIP yet.
Chance to correct behaviors - issues brought during review.
valid in sense that it is an area of opportunity. - 1st time
hearing.
Accurate - don't you have more knowledge - guidelines
(Susanna) Not an issue since. Schedule.
Don't think work load is bad they don't - she told to ask for
help.
Can't act - treated like everyone else. Ducks in row for PIP.

Looking for: — No promise                    12. 9. 15

No PIP.

Bonus — would trail off            — No knowledge of affect.
Merit.

— Does not want any of this.

Does not chg view of performance — only timeline chgs

PIP - 30 dy is rough — look at file.

NOTHING Promised.   — what is process for a PIP?

NO DATA. — someone's livelihood.   No documentation

LINA —   small complaints ADP's.  Gave points after they's done. — Points
told                     DA's.
YESSICA
told     rewards — you earned it — sent points — get points all time
REENIT  why recognition.

Talk to Business Partners.

Even with the dates — Look at Kronos.

Treat fairly

NOTHING TO SUBSTANTIATE,

NEXT STEPS. — STEPHANIE, Angelina, Yessica. File — look at.
        Look at You Earned It.

Process for PIP. — what people.

Looking for something — how does this prove associate.

Disappointment — Move Forward. — Pregnant — stress

Feel free to call on email — understood. If I

Need coaching conch ve —

**From:** "Reena Mathew" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=REENA MATHEW0CB>

**To:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>, "Sabrina Boyd" <SBOYD@santanderconsumerusa.com>

**Subject:** RE: Holiday Pay

**Date:** Mon, 28 Dec 2015 22:53:34 +0000

**Importance:** Normal

---

NP—Yes we will get it sent over. Today has been…… wow!

---

**From:** Yessica Adriano
**Sent:** Monday, December 28, 2015 4:48 PM
**To:** Sabrina Boyd
**Cc:** Reena Mathew
**Subject:** Re: Holiday Pay

Thank you!!!!

On Dec 28, 2015, at 4:46 PM, Sabrina Boyd <SBOYD@santanderconsumerusa.com> wrote:

We will get it taken care of!!

### Sabrina Boyd

Santander Consumer USA Inc.
HR Generalist

| | |
|---|---|
| PHONE | 214.261.1619 |
| MOBILE | 469.834.6208 |
| EMAIL | sboyd@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |

---

**From:** Yessica Adriano
**Sent:** Monday, December 28, 2015 4:18 PM
**To:** Sabrina Boyd; Reena Mathew
**Subject:** Fwd: Holiday Pay

Is this humanly possible?

Begin forwarded message:

**From:** Paula Blayney <pblayney@santanderconsumerusa.com>
**Date:** December 28, 2015 at 4:15:23 PM CST
**To:** Whitney Andres <wandres@santanderconsumerusa.com>
**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Andrea Ashley <AASHLEY@santanderconsumerusa.com>, Susan Odom <sodom@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Stephanie Elad <selad@santanderconsumerusa.com>
**Subject: RE: Holiday Pay**

Hello~

SC004058

Please have this information over to Payroll by 5.30pm this evening.

Tks


Paula Blayney
**Santander Consumer USA Inc.**
HRIS Manager
Mobile-214-354-6913

---

**From:** Whitney Andres
**Sent:** Monday, December 28, 2015 3:08 PM
**To:** Paula Blayney
**Cc:** Angelina Hullum; Andrea Ashley; Susan Odom; Yessica Adriano; Reena Mathew; Stephanie Elad
**Subject:** RE: Holiday Pay

Thank you Paula- I have reached out to HRBP's & HRG's at Lew & COD and I will be compiling a list to send to payroll.

Thanks again!

Whitney

# Whitney Andres
Santander Consumer USA Inc.
HR Business Partner

| | |
|---|---|
| PHONE | 214.237.3579 |
| MOBILE | 214.460.0839 |
| EMAIL | wandres@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |

---

**From:** Paula Blayney
**Sent:** Monday, December 28, 2015 3:06 PM
**To:** Whitney Andres; TEAM HRIS
**Cc:** Angelina Hullum; Andrea Ashley; Susan Odom; Yessica Adriano; Reena Mathew; Stephanie Elad
**Subject:** RE: Holiday Pay

Good afternoon,
I want to make sure that we are all on the same page regarding the Christmas holiday hours populating for those Associates that clocked in after sign off was completed by payroll.

- Sign-Off will need to be removed
- Holiday hours will now populate
- Email payroll your  1 complete list of associates that need the holiday hours added with the EE name and ID

If you have any question please let us know.


Please pass this along to ALL HR.

SC004059

Tks

Paula Blayney
Santander Consumer USA Inc.
HRIS Manager
Mobile–214–354–6913

---

**From:** Whitney Andres
**Sent:** Monday, December 28, 2015 1:36 PM
**To:** TEAM HRIS
**Cc:** Angelina Hullum
**Subject:** Holiday Pay

Good Morning-

We are receiving several emails regarding holiday pay either being entered when it shouldn't be or needing to be entered, but they have come in after the pay period was signed off on. I was informed that HRIS would be making these updates. Should we be collecting a list of associates to send to HRIS or to payroll, or is this being handled by Kronos?

Thanks,

Whitney

# Whitney Andres
Santander Consumer USA Inc.
HR Business Partner

| | |
|---|---|
| PHONE | 214.237.3579 |
| MOBILE | 214.460.0839 |
| EMAIL | wandres@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |

SC004060

## Don Uloth

| | |
|---|---|
| **From:** | Reena Mathew <rmathew@santanderconsumerusa.com> |
| **Sent:** | Tuesday, January 19, 2016 11:34 AM |
| **To:** | reenasara@hotmail.com |
| **Subject:** | FW: Holiday Pay |

**From:** Reena Mathew
**Sent:** Monday, December 28, 2015 5:41 PM
**To:** Yessica Adriano
**Subject:** RE: Holiday Pay

NP at all!

**From:** Yessica Adriano
**Sent:** Monday, December 28, 2015 5:22 PM
**To:** Reena Mathew
**Subject:** Re: Holiday Pay

Thank you Reena!!

Sent from my iPhone

On Dec 28, 2015, at 5:13 PM, Reena Mathew <rmathew@santanderconsumerusa.com> wrote:

> HI Whitney,
>
> Here's what we have so far for LEW (none of the holidays populated for these due to them clocking in after the sign off as well as having PTO keyed):
>
> Kim Ellis #010904
> Sarah Chitukutuku #011005
> Andrew Holcombe #008468
> Jetamieia Van #100885
> Rachel McNeal #101636—Has VAC-EX for 12/24 and holiday isn't populating
> Happymore Mundoringisa #014374—Has VAC-EX for today (12/28) and holiday isn't populating
>
> Thanks!
> Reena

>> **From:** Whitney Andres
>> **Sent:** Monday, December 28, 2015 3:08 PM
>> **To:** Paula Blayney
>> **Cc:** Angelina Hullum; Andrea Ashley; Susan Odom; Yessica Adriano; Reena Mathew; Stephanie Elad
>> **Subject:** RE: Holiday Pay

Mathew 042

Thank you Paula- I have reached out to HRBP's & HRG's at Lew & COD and I will be compiling a list to send to payroll.

Thanks again!

Whitney

## Whitney Andres

Santander Consumer USA Inc.
HR Business Partner

| | |
|---|---|
| PHONE | 214.237.3579 |
| MOBILE | 214.460.0839 |
| EMAIL | wandres@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |

---

**From:** Paula Blayney
**Sent:** Monday, December 28, 2015 3:06 PM
**To:** Whitney Andres; TEAM HRIS
**Cc:** Angelina Hullum; Andrea Ashley; Susan Odom; Yessica Adriano; Reena Mathew; Stephanie Elad
**Subject:** RE: Holiday Pay

Good afternoon,
I want to make sure that we are all on the same page regarding the Christmas holiday hours populating for those Associates that clocked in after sign off was completed by payroll.

- Sign-Off will need to be removed
- Holiday hours will now populate
- Email payroll your  1 complete list of associates that need the holiday hours added with the EE name and ID

If you have any question please let us know.


Please pass this along to ALL HR.

Tks


Paula Blayney
Santander Consumer USA Inc.
HRIS Manager
Mobile-214-354-6913

---

**From:** Whitney Andres
**Sent:** Monday, December 28, 2015 1:36 PM
**To:** TEAM HRIS
**Cc:** Angelina Hullum
**Subject:** Holiday Pay

Mathew 043

Good Morning-

We are receiving several emails regarding holiday pay either being entered when it shouldn't be or needing to be entered, but they have come in after the pay period was signed off on. I was informed that HRIS would be making these updates. Should we be collecting a list of associates to send to HRIS or to payroll, or is this being handled by Kronos?

Thanks,

Whitney

## Whitney Andres
Santander Consumer USA Inc.
HR Business Partner

| | |
|---|---|
| PHONE | 214.237.3579 |
| MOBILE | 214.460.0839 |
| | |
| EMAIL | wandres@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |

--------------------

This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. The information contained in this e-mail is confidential and intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this message in error or there are any problems please notify the originator immediately.

The unauthorized use, disclosure, copying or alteration of this message is strictly forbidden. This mail and any attachments have been scanned for viruses prior to leaving sender's company network. Neither the sender nor the sender's company will be liable for direct, special, indirect or consequential damages arising from alteration of the contents of this message by a third party or as a result of any virus being passed on.

Sender's company accepts no liability for the content of this email or its attachments, or for the consequences of any actions taken on the basis of the information provided, unless that information is subsequently confirmed in writing.

Mathew 044

**From:** Pamela Blackburn <pblackburn@santanderconsumerusa.com>
**To:** Stephanie Elad <selad@santanderconsumerusa.com>
**Subject:** Re: R.Mathew
**Date:** Thu, 31 Dec 2015 01:40:10 +0000
**Importance:** Normal

---

Hi Stephanie,

I spent a lot of time with Steve discussing this today and I think we reached the right decision, so no big surprises to worry about.  I did not support his initial recommendation as I felt it replaced one risk with another.  I am much happier with where we landed.

My laptop has decided to beak tonight - I have IT trying to fix it remotely, but limited hope of that, so will either call or email you more tomorrow, so you know what to expect.  Essentially, documentation isn't sufficiently robust to take formal action, so extending PIP to end of Q1 with weekly check-ins that will be documented.  An additional column to be added to PIP where she and we will add specific actions to be taken,eg a time management course, etc, and we'll require her to sign a commitment to these.  If her performance doesn't improve, we reserve the right to add DA during the process, so we are providing an opportunity for her to improve, but being very clear that if we don't see that improvement we will hold her accountable for this and act accordingly.

This would stack up in our favor in Arbitration or open hearing.

Hope that helps!   I do agree though that Steve should meet u first and then the team.

P

Sent from my iPhone

On Dec 30, 2015, at 3:25 PM, Stephanie Elad <selad@santanderconsumerusa.com> wrote:

Just thought you should see this. If you think I'm wrong here, please let me know. I just don't want to have to manage my reaction to whatever he's going to say about this matter in front of my team. And, I don't want to put either of them on the spot either. They will share their thoughts and concerns with me, but they likely won't with him. They don't have that level of trust yet.

I know you are working on this and I appreciate it. Just wanted to keep you in the loop on the latest.

---

**From:** Stephanie Elad
**Sent:** Wednesday, December 30, 2015 3:22 PM
**To:** Stephen Shaffer
**Subject:** RE: R.Mathew

Can you and I discuss first, prior to bringing Yessica back in to the discussion? I don't know that I'll feel completely open to share my thoughts with you if Yessica is there.

And, I think we can circle back with Angelina a little later down the road on this. If there are learnings for her, I can review with her at a later date. She already understands that she should have documented her conversations with Reena more effectively.

SC000014

**From:** Stephen Shaffer
**Sent:** Wednesday, December 30, 2015 3:10 PM
**To:** Stephanie Elad; Yessica Adriano; Angelina Hullum
**Cc:** Stephen Shaffer
**Subject:** R.Mathew

Hello all,

Is there any chance (I know Yessica is out right now), we can get together at NRH on Tuesday, January 5 in the morning (not necessarily first thing).

I would like to review with you my findings on Reena's situation, how we should proceed, and make sure we are on the same page with how we will proceed.

Let me know if that works and suggest a time and place.

Thanks for your patience and have a great holiday!

Regards,

**Stephen Shaffer**
Santander Consumer USA Inc.
VP Human Resources Business Partnership

| PHONE | 214.722.4580 |
| MOBILE | 469.236.5931 |
| EMAIL | sshaffer@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |

SC000015

**From:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>
**To:** Stephanie Elad <selad@santanderconsumerusa.com>, Yessica Adriano
<YADRIANO@santanderconsumerusa.com>
**Cc:** Stephen Shaffer <sshaffer@santanderconsumerusa.com>
**Subject:** RE: Headcount
**Date:** Mon, 11 Jan 2016 18:50:23 +0000
**Importance:** Normal

---

Based on current headcount, here is the breakdown:

- LEW/8585     1017/2  =      508     (Reena & Sabrina)
- NRH          1461/4  =      365     (Kristen, Whitney, Jeanette, Nicole)
- COD          524/1   =      524     (AJ)

---

**From:** Stephanie Elad
**Sent:** Monday, January 11, 2016 12:29 PM
**To:** Angelina Hullum; Yessica Adriano
**Cc:** Stephen Shaffer
**Subject:** RE: Headcount

Can we look at it by total headcount by site and then divide by number of BP's and G's at that site?

---

**From:** Angelina Hullum
**Sent:** Monday, January 11, 2016 11:51 AM
**To:** Stephanie Elad; Yessica Adriano
**Cc:** Stephen Shaffer
**Subject:** RE: Headcount

I stand corrected. Reena's group includes 8585, so that number is correct. However, it breaks down to 680 at LEW and 224 at 8585. So, I wouldn't say all of that is Reena's.

---

**From:** Angelina Hullum
**Sent:** Monday, January 11, 2016 11:45 AM
**To:** Stephanie Elad; Yessica Adriano
**Cc:** Stephen Shaffer
**Subject:** RE: Headcount

Something's wrong with the formula. I will have Nicole fix it. Reena only has 680 total.

---

**From:** Stephanie Elad
**Sent:** Monday, January 11, 2016 11:39 AM
**To:** Yessica Adriano; Angelina Hullum
**Cc:** Stephen Shaffer
**Subject:** FW: Headcount

Hi – can you both take a look at this? If it's correct then Reena does have an increased workload compared to Whitney. I realize Whitney is doing double duty right now. We may need to look at moving some groups to Kristen, at least for now. Thoughts?

SC009165

**From:** Nicole Heinicke
**Sent:** Monday, January 11, 2016 10:56 AM
**To:** Kristen Lagunes; Whitney Andres; Jeanette Rodriguez; Reena Mathew; Sabrina Boyd; Melissa Lawson; Andrew Scordo
**Cc:** Angelina Hullum; Yessica Adriano; Kayla Liggett; Stephanie Elad; Edward Fabritiis
**Subject:** Headcount

Hello!

We have updated the Headcount report for this week. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

Thanks!
Nicole

## Nicole Heinicke
Santander Consumer USA Inc.
HR Generalist

PHONE   214.452.7016
MOBILE   214.212.8260
EMAIL   nheinicke@santanderconsumerusa.com
WEB   www.santanderconsumerusa.com

SC009166

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Stephanie Elad <selad@santanderconsumerusa.com>
**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>
**Subject:** RE: 8585 Coverage
**Date:** Wed, 13 Jan 2016 18:04:22 +0000
**Importance:** Normal

---

Agreed, if both Kristen and I are going twice a week there is no need for Sabrina to go.

Lina, thank you for your assistance and support with this!!

---

**From:** Stephanie Elad
**Sent:** Wednesday, January 13, 2016 11:55 AM
**To:** Yessica Adriano
**Cc:** Angelina Hullum; Stephen Shaffer
**Subject:** 8585 Coverage

Hi – I spoke to Angelina yesterday. She was supportive of Kristen covering 8585 for the next few months, until it closes. And, she already spoke with Kristen about it. Kristen will go there 2x/week, starting next week. Please coordinate your coverage schedule with Kristen's each week.

We can inform Reena when we speak to her on Friday and then you can inform Alicia/Mario/Jeff etc.

Kristen will advise you regarding any escalated ER issues that require your attention. Also, let's discuss if we need to have Sabrina continue to go there. If you go 2x/week and so does Kristen, that seems like adequate coverage to me. But, maybe I'm missing something.

Thanks! And, thanks to Angelina and Kristen for their support. ☺

**Stephanie Elad,** SPHR
Santander Consumer USA Inc.
Director, Human Resources

PHONE   214.237.3713
MOBILE   214.695.1278
EMAIL   selad@santanderconsumerusa.com
WEB   www.santanderconsumerusa.com

SC006502

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Stephanie Elad <selad@santanderconsumerusa.com>
**Subject:** Updated PIP and Action Plan- Use this one
**Date:** Wed, 13 Jan 2016 14:15:13 +0000
**Importance:** Normal
**Attachments:** Reena_PIP.doc; Reena_90_Day_Action_Plan.docx

---

Hello Stephanie,

This is the updated PIP (eliminated Section III) and I attached the action plan again so you have it all in one email.

Thanks

SC006306

# Santander Consumer USA Inc. Performance Improvement Plan (PIP)

**SECTION I: ASSOCIATE INFORMATION**

| |
|---|
| **Associate Name:   Reena Mathew** |
| **Associate ID: 013696** |
| **Associate Job Title/Department/Location: HR Business Partner/Advocacy/Lewisville** |
| **Hire Date: 01/31/2011** |  **Time in Position:  5 years** |
| **Manager/Supervisor Name and Title: Yessica Adriano/Manager of Human Resources** |
| **Department Director/VP Name and Title:  Stephanie Elad, Director  Stephen Shaffer, VP** |
| **Effective Date: 90 days (starting 01/15/16)** |



## SECTION II: PERFORMANCE STANDARDS AND ASSESSMENT

This section should clearly outline the performance standards that need to be achieved as a minimum acceptable performance standard.

| Performance Standards<br><br>*(What needs to be achieved, as set in job description)* | Actual Performance Delivered<br><br>*(What has been occurring, Facts)* |
|---|---|
| Integrates Company Values into all activities…in order to meet demands of the business, it is expected that all Associates be punctual and adhere to scheduled work hours. | Reena continually asks to leave early and struggles to adhere to her work schedule. In many instances, she only provides a same day notice.<br><br>(See Addendum for specifics) |
| Seamlessly executes a full range of duties aligned to deploy HR strategy and objectives into client group.<br><br>Demonstrated ability to work under pressure, appropriately prioritize and organize work effectively. | Reena has had difficulty completing objectives on a timely basis. When projects/tasks arise, she relies on the assistance of other people for completion. Examples include: DA administration, monthly side by sides, WD maintenance, and assistance with the HR inbox.<br><br>As situations arise, Reena has not been proactive in using resources and contacting other HR leaders to find responses or handle escalated situations. Examples include: Payroll during holiday week and having the business wait on resolution when HRM was on vacation<br><br>(See Addendum for specifics) |
| Proactively minimizes legal risk by ensuring client's compliance with company policies and procedures.  Makes recommendations, provide solutions, and resolve issues as challenges.<br><br>Needs to understand HR processes and be able to provide clear, accurate responses to business units.<br><br>Builds collaborative relationships and gains credibility with operations management and associates. | As an HR consultant to the business, it is necessary to be able to make fair and sound judgments when conducting investigations. Reena underestimated a concern brought forth from an employee, did not follow through, and when notified of her decision delayed appropriate actions including processing the termination- which led to a risk event. In addition, in a couple situations she did not secure the objectivity of the room when questioning associates.<br><br>Several business units have brought forward concerns on Reena's ability to support their groups efficiently due to untimely responses, vague and inaccurate information.<br><br>Senior business leaders were disturbed that Reena had questioned and addressed them for bringing forward their concerns (mentioned above). Reena should remain professional and not initiate, or respond, to these types of discussions, as the business clients' confidentiality and right to raise issues must be respected. This action can be considered as intimidation and is not appropriate. |

As an associate of SC, we expect performance to be in line with the standards outlined in the job description as well as those of your management team.  The goal of this PIP is to align delivered performance to expected performance and assist in making you a successful member of the team.

You are expected to perform to the standards listed in the Action Plan (separate document). Examples are provided regarding instances where performance is not meeting expectation for the role.

As SC provides the resources required to meet the standards, immediate and sustained improvement is expected. Your work will be monitored for compliance with the performance standards on the Action Plan.  If you do not meet and

Mathew 050



maintain performance to the standards as outlined, you may receive the next level of discipline which, in this case, could range from formal disciplinary action, up to and including Termination.

## SECTION III: ASSOCIATE COMMENTS

| Associate Comments | |
|---|---|
| | |

Your signature below represents that we have communicated our concerns and that you have received this document.

| Associate Name | | Signature | | Date | |
|---|---|---|---|---|---|
| Manager Name | | Signature | | Date | |

SCUSA Performance Improvement Plan
Page 4 of 4

Mathew 052

**Addendum**
**Timeline of Events**

**February 11, 2015**
- Was asked to provide a summary of information from an HR luncheon attended, summary never received.

**April 9, 2015**
- March Recap: Reflected 2 side by sides and 4 jumpstarts for the month, number of meeting with business leaders was not quantified.

**May 18, 2015**
- April Recap: Jumpstarts were not attended for the month, trainings not conducted, and number of meetings with business leaders was not quantified.

**July 1, 2015**
- Requests to leave half day to attend doctor's appointment, same day notification

**July 2, 2015**
- Asked by HR Manager (HRM) to correct onboarding discrepancies in WD, asked if this could be assigned to another dept.

**July 10, 2015**
- Asked by HRM to support the Credit Card Department at 8585 due to the shortage of staff and unbalanced workload, asked for assistance felt overwhelmed with current duties

**August 13, 2015**
- July Recap: One side by side held, attended 3 jumpstarts, stated 10+ meetings attended with the business, and recap of training held with one manager

**August 23, 2015**
- Texts manager to advise of late arrival for the next day, HRM had to rearrange her schedule to provide site coverage

**July-August 2015**
- Stated the work load was heavy, asked by HRM to provide a time study to pinpoint where her time was being allocated to. Due to the lack of specifics, was asked twice to complete assignment
- Continually reminded to work full shifts and provide sufficient notice when requesting to leave early
- Strongly advised of the importance in submitting DA's to the business in a timely manner, and addressed on not leaving all DA entries solely to the generalist, everyone needed to assist with the workload.
- Manager constantly stepped in to finalize pending DA's and process terminations

**September 1, 2015- Transitioned to New HRM**

**September 3, 2015**
- Requested to leave half day on Friday, September 4 due to traveling, advised she could leave early but needed to provide a greater notification, and needed do her best to work most of her shift.

**September 4, 2015**

- Came in at 9 am and left at 2 pm.

**September 17, 2015**
- Same day notification to leave early, had flight the next day

**September 28, 2015**
- Discussed work load with HRM, Reena feels overwhelmed and there isn't enough time- had long conversation on how the HRBP level requires a "high level of efficiency"

**October 12, 2015**
- Discussed workload with HRM, and  asked what was consuming her time, she did not quantify, asked for assistance with investigation checklist

**October 29, 2015**
- Brad, site Director, notifies HRM that they have 10 DA's pending from Reena, upon speaking with her she states she was behind and had asked the AVPs to give her until Friday. Advised DA's are time sensitive and if she is behind she needs to let me know, so we can assist in getting those out.
- Also requests to arrive to work late for tomorrow, Friday October 30th, she had a doctor's appointment and could not miss it.  HRM had to rearrange schedule to provide coverage for site. She arrives to the office at noon. Advised understood emergencies/life happens but in circumstances where a greater notification can be given, it needs to be done.

**November 6, 2015**
- Received specific instruction from HR Director on how to communicate to the business the denial of a bereavement request, instruction not followed and additional time and resources spent on the issue

**November 9, 2015**
- Upon HRM's return, was provided feedback on time management, provided example of bereavement request

**November 16, 2015**
- Same day notification on needing to leave early, later asked for assistance with NH class, team had to stay later to cover workload.

**November 17, 2015**
- Reminded her of the importance of prior notification when wanting to leave early, as it impacts the team. Advised how team came in early and stayed late to cover, advised if in the future work is pending leave requests will be denied.
- Stated she felt overwhelmed with work load, when asked what is consuming her time she mentioned DA's (5),  filling out the info forms for TA (7), emails, and just overall busy.
-
**November 20, 2015**
- Contacted HRM stated she was extremely busy, asked if Ten could help her. Ten handled the pending investigation.

**November 23, 2015**
- Reena received Deidra's resignation on Saturday, November 21st and did not process termination. The termination was not conducted until late in the afternoon Monday, November 23rd by HRM. Upon

Mathew 054

reviewing situation, employee had brought forth concerns in previous months- the situation was mishandled and was not followed up on.

- Provided term recommendation which was vague stating (see AVP notes below) explained the importance of summarizing and had her resend- which she did.  In addition, asked for the surrounding circumstances of incident, upon review advised her three people questioning one employee was overwhelming and we need to safeguard objectivity of the room.

**November 24, 2015**

- Asked for assistance with 5 info security issues, advised her everyone's pending workload and asked for clarification on what she was doing. She stated she would like to discuss further

**November 25, 2015**

- Same day notification of Dr.'s appointment, took a longer lunch. Advised again, that a greater notification must be given- same day notices impacts the team and workload.

**December 8, 2015**

- Receive concerns from the VP and SVP for the credit cards group in regards to Reena's timeliness and questioned how she was handling an investigation.  They felt she had already reached a conclusion prior to looking into the matter. They requested another HR member review and finalize the case.

**December 22, 2015**

- Senior leadership members advise that Reena had approached them questioning the concerns they had brought forward, they stated they felt uncomfortable and surprised by this action.

**December 28, 2015**

- HR Generalist had to be called in on their time off to gather, organize, and help solve payroll discrepancies in order to meet deadline. As an HRBP and tenured employee, it is expected that Reena proactively work with other peers and departments to reach consensus and find solutions during these situations.

Mathew 055



# 90 Day Action Plan

**Name:** Reena Mathews                    **Plan Period:** 90 days (starting 1/15/16)

**Purpose:** To outline specific actions required to correct performance discrepancies and identify training/resources available.

| Area of Focus | Action/Tasks | Support/Resources | Review Dates |
|---|---|---|---|
| **Attendance** | Reena must provide a minimum of a 48 hr notice (aside from emergency situations) when requesting time off, late arrivals, or early departures. | | Bi weekly basis with HR Manager effective 01/18/2016 |
| | Manage time and hours efficiently to ensure work expectations are delivered, communicate any gaps that could potentially impact the Business. Reena is responsible for managing her time and her schedule as an exempt Associate and ensuring that the needs of the business are met. | Reena will complete and submit a time tracking study every week to her Manager. This will be reviewed and discussed on a bi-weekly basis. If Reena would like additional support/training in this area, she should let her Manager know by 2/1/16 and a representative from the Talent Development team will be engaged to provide counsel and recommendations. | |
| **Time Management & Effective Work Habits** | All requests and inquiries to our business units are to be responded to within a 24 hr time frame.  If a complete answer is unavailable, then a follow up response with an expected ETA should be provided. Disciplinary Actions (DA) forms need to be delivered primarily within a 24 hr time frame, not to exceed 48 hrs (excluding holidays and weekends). | Reena's workload has been reduced to help her succeed, she will only provide HR support to the LEW site, effective 1/18/2016. Responsibility for 8585 will transition to another member of the team. | Bi weekly basis with HR Manager effective 01/18/2016 |
| | Provide support in all areas of the business to include administrative tasks. For example: checking the HR box, scanning documents to appropriate departments and/or entering DA's into Workday. | If Reena would like additional training on any of SC's processes or practices (including payroll, WD, etc), she can submit a list of topics to her Manager by 2/5/16 and this will be arranged. | |
| **Consulting** | Reena needs to follow established policies, be thorough with every situation/concern brought forth. When handling investigations, use the checklist prior to starting an investigation to ensure no element is excluded. Review all findings with HR Manager prior to making business recommendations. | If Reena is interested in pursuing training courses to provide additional development in this area, she should let her Manager know by 2/1/16 and she will be put in touch with a member of SC's Talent Development team for | Bi weekly basis with HR Manager effective 01/18/2016 |

Mathew 047

App.152

| | | counsel and recommendations. | |
|---|---|---|---|
| | Provide accurate and clear answers to business clients. If unsure on a response, Reena needs to take a proactive approach and use all resources available (other depts and/or peers) to get confirmation. | If Reena feels she needs additional development in this area, side by side shadowing sessions can be set up with another HRBP.  Reena should let her Manager know by 2/1/16 if she would like to pursue this option. | |

We are committed to providing additional resources and support to Reena for her to effectively complete this plan, and hope that she completes this Action Plan successfully.  In order to achieve this, Reena needs to demonstrate immediate and sustained improvement against the action plan outlined above.

**Comments:**

_____            _____

**Associate Signature**                                  **Discussion Date**

_____            _____

**Manager Signature**                                    **HR Approval**

**From:** Stephanie Elad <selad@santanderconsumerusa.com>
**To:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Cc:** Stephen Shaffer <sshaffer@santanderconsumerusa.com>
**Subject:** RE: Reena Meeting Recap 01/15/16
**Date:** Mon, 18 Jan 2016 22:31:33 +0000
**Importance:** Normal

---

Thanks for the recap! I think you covered just about everything. I just have a few points to add:

- When you brought up the Google example (for the Associate who was alleged to have falsified her bereavement documentation), I reminded her that I had coached her at the time that I felt that she and Sabrina had spent too much time looking into this issue, and also provided specific direction on how the incident should have been handled. Reena stated that I had provided feedback but that it wasn't coaching. I then explained that if Yessica or I provide direction on how to handle something differently, that is coaching, even if we don't preface the conversation by specifically stating "this is coaching".

- Reena stated that Angelina had been on the HRBP call and had attempted (unsuccessfully) to halt the discussion around the PIP's. When we asked her to explain, she refused. *Later that day, I called Angelina and asked her about this. She stated she wasn't on the call and wasn't aware of the content until afterwards, when one of her team members brought it to her attention.*

- She asked for examples several times and claimed that she had not been provided with examples thus far. However, when Yessica and I shared examples with her, she would argue with them and state that the facts we presented were not true.

---

**From:** Yessica Adriano
**Sent:** Monday, January 18, 2016 11:36 AM
**To:** Stephanie Elad
**Subject:** Reena Meeting Recap 01/15/16

Good morning,

I wanted to share with you my summary of our meeting with Reena on Friday, 01/15/2016

We started the meeting by letting her know we had taken her concerns into consideration and taken a step back and reviewed this process.  Her annual review was modified for 2015 to a satisfactory rating and she would be receiving her merit and bonus.  Our goal was to see her succeed in her role and the PIP and action plan that we were going to discuss were created with that in mind.

- She immediately became upset and questioned why she was being placed on two PIPs, it was explained that there isn't two PIPs as the other one was rescinded. The PIP addressed the performance gaps that still existed and it outlined additional concerns that have come to light.  We explained the PIP was extended to a 90 day period to give her enough time to make necessary changes. Reena stated we just wanted her out of here and why didn't we just fire her now, and that this was all so unfair.

- Reena went on to share she was being blindsided again since she was never coached before, I provided her examples of conversations where her performance was addressed (ie: calling her with Brad's concern over DA delivery). She responded with that was feedback and not a coaching session.  I provide additional examples and even Stephanie shared an example (google), Reena stated once again these are feedback and not coaching sessions.

- She went on to say on the HRBP call, Susan was talking about PIPs and before anyone can be placed on one they needed to be coached and need to have documentation. Also, Lina was on that call and told Susan to stop talking about PIPs. Stephanie explained we are unaware of what she is talking about, though the PIP is not the last step but first step in addressing and correcting performance.

SC001053

- Reena also stated she never received the timeline of events. I explained to Reena in our original meeting on 12/01/2015 she wanted examples and I went over each item on the timeline and shared some of the comments she made to them. I reminded her that she had stated she didn't want that (timeline) because Lina and I can easily make up things and put it on paper.

- I proceeded to go over PIP form explaining the columns and performance areas:
     **Attendance**, Reena stated everyone left early she isn't the only one who does it
     **HRBP duties**, Reena answered by saying she had been here 5 years she knows how do everything and does not need help. She wanted examples shared the DA timeframes and payroll incident, explained how I needed her to be proactive and resolve these issues as I couldn't guide her with every step, and had to have generalist come in to resolve as I had an urgent matter to attend to
     **Consulting**, she accepted the feedback with the D. Crouch investigation and agreed.  In regards to the further issues, she wanted names and examples of who made complaints. Advised we do not provide names, provided example how in certain emails she responded to AVPs with probably, and we need to be clear on responses and shared the concerns from the credit card group. Had discussion on her turnaround time of one DA, Reena stated she had it done within 48 hours. I asked if the task takes 5 minutes why not just deliver it to the business, instead of responding to their 3 emails where they are asking for it.  We also advised Reena we have more than one business unit sharing their concerns of how she has handles things and her timeliness. Reena went on to say, she shared an example of a complaint one manager made on another HRBP, what were we doing to them. Explained to her, being in HR she should know we do not discuss other employees matters. In regards to addressing the business for sharing their concerns, she denied it and then admitted to speaking to Jorge and Sam but she was just wanting to know if there was any issue
- We went over the action plan and its layout:
     **Time Management**, went over expectations she was upset of having to submit a time tracking study, stating she doesn't have time for that and why does she have to do it. Advised if she states she is busy, then we need to know where her time is being consumed by. Again, disagreed that she had already done it for Lina and myself and doesn't know why she has to do it again, and I didn't give her feedback on her last one.
     *After the meeting I went back to my meeting notes with Reena, on December 10, 2015 Reena shared with me what she had written down for her time study for the past couple days. I advised to keep with the 30 minutes increment and advised where she needed to have more detail.*
     We went over how she would no longer have 8585, so she could focus on her plan and the Lewisville site.  Reena became upset and offended, stating she has been here 5 years and knows how to do her job, and her lasting that long says something. We went over the rest of the plan, as I went over additional examples she would respond sarcastically.


Overall, throughout the discussion Reena was extremely defensive, anti-agonistic and at times borderline aggressive. Reena reminded us a few times that she is pregnant. She stated she was never coached,  and this was unfair.
I advised of how disappointed we were because we listened to her original concerns didn't want to impact her monetarily, that was solved, but the performance still needed to be addressed and corrected.  I also mentioned the action plan provides a clear direction and we have enough lessened her load and provided additional resources to see her succeed in this plan. Stephanie and I stressed her success depends on her willingness to move forward.  Stephanie shared a personal example of a time she received feedback she didn't like, she had to accept it,  made changes, and moved on successfully. Reena was still upset and again said that this is unbelievable you are placing me in two PIPs and asked for the documents and would review and decide if she would sign.

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE     214.722.5667
MOBILE    214.215.5258
EMAIL     yadriano@santanderconsumerusa.com
WEB       www.santanderconsumerusa.com

SC001054

**From:** "Reena Mathew" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=REENA MATHEW0CB>

**To:** "Stephen Shaffer" <sshaffer@santanderconsumerusa.com>

**Bcc:** "reenasara@hotmail.com" <reenasara@hotmail.com>

**Subject:** RE: Meeting you requested

**Date:** Mon, 18 Jan 2016 17:32:23 +0000

**Importance:** Normal

**Attachments:** Time_Line_of_Events--Reena's_Notes.docx

---

Will do—I was also provided a timeline on Friday. I had mentioned to you Stephen that my concern was that anyone can come up with a timeline (the issue is whether what is stated is accurate and there isn't any acknowledgment from the other side).

Upon reviewing it, I found several statements that were very concerning and wrote my side in red.

Again, no one has ever sat me down to let me know there were any performance gaps and all I have received up until now is a timeline with alleged issues from a year ago (which I never even knew were issues).

Please see the attached and we can discuss when we meet.

Thanks,
Reena

**From:** Stephen Shaffer
**Sent:** Monday, January 18, 2016 11:12 AM
**To:** Reena Mathew
**Cc:** Stephen Shaffer
**Subject:** RE: Meeting you requested

Great.  Please send me a meeting request for an hour. You can select or reserve a room.

Thanks

**Stephen Shaffer**
Santander Consumer USA Inc.
VP Human Resources Business Partnership

PHONE     214.722.4580
MOBILE    469.236.5931
EMAIL     sshaffer@santanderconsumerusa.com
WEB       www.santanderconsumerusa.com

**From:** Reena Mathew
**Sent:** Monday, January 18, 2016 9:53 AM
**To:** Stephen Shaffer
**Subject:** RE: Meeting you requested

That's fine. Let's do 10am then.

**From:** Stephen Shaffer
**Sent:** Monday, January 18, 2016 9:18 AM
**To:** Reena Mathew
**Cc:** Stephen Shaffer
**Subject:** RE: Meeting you requested

Hi Reena,

Either 10am or 2pm would work for me.  I have to move a lunch meeting from downtown to Lewisville which is ok, but I told the gentleman I would meet him around 11:30am

Let me know which works better.  I can also do 9am or 3pm if neither of these works.

Thanks

## Stephen Shaffer

Santander Consumer USA Inc.
VP Human Resources Business Partnership

| PHONE | 214.722.4580 |
|---|---|
| MOBILE | 469.236.5931 |
| EMAIL | sshaffer@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |

**From:** Reena Mathew
**Sent:** Monday, January 18, 2016 9:09 AM
**To:** Stephen Shaffer
**Subject:** RE: Meeting you requested

HI Stephen,

Wednesday works for me.

Does 11am work for you?

Thanks,
Reena

**From:** Stephen Shaffer
**Sent:** Monday, January 18, 2016 9:05 AM
**To:** Reena Mathew
**Cc:** Stephen Shaffer
**Subject:** Meeting you requested

Good morning Reena,

I responded to your request for a follow-up meeting last week, indicating I could come to LEW on Wednesday of this week.
To do so, I do need to move a couple of appointments.

Can you confirm that you want to meet this week on Wednesday, and if so, what time?

Thank you

## Stephen Shaffer
Santander Consumer USA Inc.
VP Human Resources Business Partnership

PHONE   214.722.4580
MOBILE   469.236.5931
EMAIL   sshaffer@santanderconsumerusa.com
WEB   www.santanderconsumerusa.com

SC004171

**Addendum**
**Timeline of Events**

**February 11, 2015**
- Was asked to provide a summary of information from an HR luncheon attended, summary never received—I did provide a summary, just need access to my Sent folder. If this was an issue, how come I was never asked about it till a year later?

**April 9, 2015**
- March Recap: Reflected 2 side by sides and 4 jumpstarts for the month, number of meeting with business leaders was not quantified. ?? What does this mean? Was never told anything when this was submitted.

**May 18, 2015**
- April Recap: Jumpstarts were not attended for the month, trainings not conducted, and number of meetings with business leaders was not quantified ?? Same as above.

**July 1, 2015**
- Requests to leave half day to attend doctor's appointment, same day notification ?? What is the point of listing these? Everyone in the office at some point left early due to unforeseeable events; this was for child that was sick and Dr could see them that day.

**July 2, 2015**
- Asked by HR Manager (HRM) to correct onboarding discrepancies in WD, asked if this could be assigned to another dept. Had an extremely heavy load as well as Sabrina did—this was an admin tasks. Why would this be an issue if we needed a little extra help? I barely ask for help when I was undertaking an extremely heavy load…. I had the heaviest one out of all the HRBP's so why am I being penalized for asking for help on something the HRG's should be doing either way?

**July 10, 2015**
- Asked by HRM to support the Credit Card Department at 8585 due to the shortage of staff and unbalanced workload, asked for assistance felt overwhelmed with current duties False statement—I did it and I did it without any issues at either site. At times, I did state I was extremely busy but who wouldn't be with that kind of workload? Not unbalanced……I took over what an NRH BP had been doing previously. Was doing it effectively and even when we were site specific, I still was over the department without any complaints.

**August 13, 2015**
- July Recap: One side by side held, attended 3 jumpstarts, stated 10+ meetings attended with the business, and recap of training held with one manager—What does this mean??

**August 23, 2015**
- Texts manager to advise of late arrival for the next day, HRM had to rearrange her schedule to provide site coverage—Texted this day before as it was my daughter's first day of Kindergarten—HRM said, 'Sure, no problem' (I have text message).  If it was an issue, I should've been coached or told no.

**July-August 2015**
- Stated the work load was heavy, asked by HRM to provide a time study to pinpoint where her time was being allocated to. Due to the lack of specifics, was asked twice to complete assignment—Did not know

what this was for; HRM gave me no direction, just asked me to list what I did on a daily basis and then gave me specifics (every 15 minutes) the next time and never followed up on the time study.
- Continually reminded to work full shifts and provide sufficient notice when requesting to leave early ?? When??
- Strongly advised of the importance in submitting DA's to the business in a timely manner, and addressed on not leaving all DA entries solely to the generalist, everyone needed to assist with the workload?? Untrue, when???? Never had this type of conversation.
- Manager constantly stepped in to finalize pending DA's and process terminations—Took pre-approved time off and rarely called in--when did you step in????

**September 1, 2015- Transitioned to New HRM**

**September 3, 2015**
- Requested to leave half day on Friday, September 4 due to traveling, advised she could leave early but needed to provide a greater notification, and needed do her best to work most of her shift. Completed all my work before I left and only left closer to 3:45/4p. What did you have to cover?

**September 4, 2015**
- Came in at 9 am and left at 2 pm.

**September 17, 2015**
- Same day notification to leave early, had flight the next day ??? Did not travel this day so don't know what you are referring to.

**September 28, 2015**
- Discussed work load with HRM, Reena feels overwhelmed and there isn't enough time- had long conversation on how the HRBP level requires a "high level of efficiency" Never did we have a 'long conversation' if we did, where is the documentation on this because I would like to see this. At times I did feel overwhelmed, but how is that an issue for a PIP? Should've provided me with help.

**October 12, 2015**
- Discussed workload with HRM, and  asked what was consuming her time, she did not quantify, asked for assistance with investigation checklist This is a completely false statement; I informed HRM that the checklist was taking longer than anticipated (almost 10 months due to initial team being let go (3 HRBP's) and Tina was asked to step in for Back Office feedback and HRM stated there still needed to be one change made per HRD. HRM had just consulted with other HRM's about final input and said HRD wanted one last change and HRM stated she would make the last change and submit it since that was the only thing pending. Tina and I had worked on the whole thing by ourselves until it came time to get HRM input. HRM *volunteered* to take it from there and make change and submit so it wouldn't go back and forth one more time and we could finally get it done.

**October 29, 2015**
- Brad, site Director, notifies HRM that they have 10 DA's pending from Reena, upon speaking with her she states she was behind and had asked the AVPs to give her until Friday. Advised DA's are time sensitive and if she is behind she needs to let me know, so we can assist in getting those out.  *Never was behind—* attended SHRM conference and sent email to AVP's stating I would have the DA's by Friday of the week as we were offsite. AVP responded and said that was fine (I have email and response from AVP). HRM mentioned to me on Thursday, 10/29 that she was speaking to Brad about Rhonda (separate issue where Rhonda had to be addressed about taking situation into her own hands) and that he had also in

SC004173

conversation asked for an update on the DA's which I got to them in a timely manner. Making it seem like he came to HR to specifically complain which is untrue.

- Also requests to arrive to work late for tomorrow, Friday October 30th, she had a doctor's appointment and could not miss it.  HRM had to rearrange schedule to provide coverage for site. She arrives to the office at noon. Advised understood emergencies/life happens but in circumstances where a greater notification can be given, it needs to be done. This was first appointment for baby and HRM had been out for some time (one week) due to her move and I had no idea she was working from home Friday. I informed her it was a very important appointment and I stated I would try and get it rescheduled. Called doc office and it was a while before I could be seen so I let HRM know and she stated that was fine that she would come in. Never seemed like it was an issue and that Friday is the day I told her I was pregnant and that is why I had to go to appt. and she said it was ok and seemed very happy/excited for me.

**November 6, 2015**
- Received specific instruction from HR Director on how to communicate to the business the denial of a bereavement request, instruction not followed and additional time and resources spent on the issue—We let department know, but we may have let them know more than HRD wanted us to give. I will take ownership of that and have learned not to do that.

**November 9, 2015**
- Upon HRM's return, was provided feedback on time management, provided example of bereavement request—Time mgmt.—I literally spent 5 minutes looking up a picture for a false bereavement doc HRG asked me about. We in turn found it was fake. Literally was 5 minutes though and if we hadn't found it was fake, we would've allowed associate to get away with 3 possibly (1 for sure) fake bereavement requests. How is that an issue vs the opposite (if we hadn't looked into it and continually let associate get away with falsification of time)?

**November 16, 2015**
- Same day notification on needing to leave early, later asked for assistance with NH class, team had to stay later to cover workload. –It was a matter of picking up DL's/SS cards which takes all of 10 minutes. Sabrina and I split all of the documents the next day to enter in Red Carpet which is what is very time consuming. I also have IM convo where HRM was completely ok with request and didn't let me know otherwise.

**November 17, 2015**
- Reminded her of the importance of prior notification when wanting to leave early, as it impacts the team. Advised how team came in early and stayed late to cover, advised if in the future work is pending leave requests will be denied.
- Stated she felt overwhelmed with work load, when asked what is consuming her time she mentioned DA's (5),  filling out the info forms for TA (7), emails, and just overall busy.?????????
-
**November 20, 2015**
- Contacted HRM stated she was extremely busy, asked if Ten could help her. Ten handled the pending investigation—HRM/HRG took the day off and left me completely alone on a payday Friday which was extremely busy and we had 2 investigations going on already. There should never be one person at a site on a payday Friday.  Jeff called at the end of the day with this new issue and there wasn't any way I could assist being alone and asked Ten if she could assist since she was at 8585 and she had no issue at all. Another reason why 8585 should've been site specific and not covered by HRBP at LEW.

**November 23, 2015**

SC004174

- Reena received Deidra's resignation on Saturday, November 21st and did not process termination. The termination was not conducted until late in the afternoon Monday, November 23rd by HRM. Upon reviewing situation, employee had brought forth concerns in previous months- the situation was mishandled and was not followed up on. I take ownership of this one; I could've handled situation better but was going off of what information I was given.
- Provided term recommendation which was vague stating (see AVP notes below) explained the importance of summarizing and had her resend- which she did.  In addition, asked for the surrounding circumstances of incident, upon review advised her three people questioning one employee was overwhelming and we need to safeguard objectivity of the room. ?? AVP had already met with associate along with manager and had notated all the info—it was a black and white situation (falsification of time) so I stated 'please see below' in my notes. AVP/Manager and I met with associate since they had met prior and wanted to get all of the information since it had just happened that morning. Was never coached on that—was just asked to resend notes with my statement.

**November 24, 2015**
- Asked for assistance with 5 info security issues, advised her everyone's pending workload and asked for clarification on what she was doing. She stated she would like to discuss further –Another administrative task that is very time consuming; HR Compliance sent so many all at once and had a lot going on; per HRM stating if I needed help (when DA issue occurred), I asked for help so that we wouldn't be behind since these take a good amount of time to do. Why am I being penalized for asking for help if we are a team?

**November 25, 2015**
- Same day notification of Dr.'s appointment, took a longer lunch. Advised again, that a greater notification must be given- same day notices impacts the team and workload. I took Dr's appointment on my *lunch* and it was for a baby appt. How is this an issue when I am exempt and I used my lunch and am covered by FMLA? It was 15 mins over my lunch, how does that impact the business? I thought I was being courteous by using my lunch to go.

**December 8, 2015**
- Receive concerns from the VP and SVP for the credit cards group in regards to Reena's timeliness and questioned how she was handling an investigation.  They felt she had already reached a conclusion prior to looking into the matter. They requested another HR member review and finalize the case. Never heard about timeliness of anything? HRM stated that I shouldn't let business know what I was thinking upfront until investigation was completely finished. I stated I understood. However, after my recommendation of moving associate to a different team after I had done investigation, Jeff has never had an issue after that with either associate. Prior to finding a resolution, it was a constant disruption to the team. We finally came to the right conclusion as this had been escalating for a while and could've really taken a turn for the worse.

**December 22, 2015**
- Senior leadership members advise that Reena had approached them questioning the concerns they had brought forward, they stated they felt uncomfortable and surprised by this action. HRM in previous meeting regarding first PIP had mentioned I received complaints from Greg Vinson, Mitzie Jefferson and Jorge Munoz which I knew were false statement as we had excellent relationships. I asked Jorge if I was getting DA's to him on time and he said yes and that he jokes about things but doesn't mean anything by them (jokes about getting DA's etc when he walks into HR). Jorge asked me was everything ok and if he needed to let HRM know that I get things done on time and I said no, everything was fine.

**December 28, 2015**

SC004175

- HR Generalist had to be called in on their time off to gather, organize, and help solve payroll discrepancies in order to meet deadline. As an HRBP and tenured employee, it is expected that Reena proactively work with other peers and departments to reach consensus and find solutions during these situations. This is not true—HRM's inadvertently allowed all HRG's to be off on the same day (that was the real issue) and no one had sent out Kronos audit. Sabrina logged in to get that out and later in the day and compiled list for Customer Servcie Holiday pay and I had finished up LEW Servicing and HRM had shown appreciation for us getting the information out. Nothing else was mentioned.

SC004176

**From:** "Stephen Shaffer" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=STEPHEN SHAFFERA87>

**To:** "Reena Mathew" <rmathew@santanderconsumerusa.com>

**Cc:** "Stephen Shaffer" <sshaffer@santanderconsumerusa.com>

**Subject:** Reminder

**Date:** Thu, 21 Jan 2016 14:45:09 +0000

**Importance:** Normal

---

Per our meeting yesterday, you will send me a summary of our discussion by Monday, January 25, 2016.

The intent of this is to be sure we are on the same page.  It helps me understand what you heard and what you feel you communicated to me.

This is not intended to be a blow by blow account, but more a summary of the key points to ensure understanding.

I will respond by Wednesday evening  (January 27, 2016).

Thank you.

**Stephen Shaffer**
Santander Consumer USA Inc.
VP Human Resources Business Partnership

PHONE   214.722.4580
MOBILE   469.236.5931
EMAIL   sshaffer@santanderconsumerusa.com
WEB   www.santanderconsumerusa.com

SC005102



**SPIELBERGER**
L A W   G R O U P

ATTORNEYS AT LAW

James Spielberger ‡†
Gary Martoccio ✱ ✳
Gabrielle Klepper ✱† ø ★◇
Alicia D. Massidas Ɏ ◇✱
Jason Allan Watson ✱✦✧
Jeffrey Del Rio ✱✪‡
Jordan C. Sullivan ‡ ✱
Philip Kegler ✱ ◗
Thomas Daugustinis ✱
Trescot Gear ✱

OFFICES

Charleston
Tampa
Chicago *
Atlanta *
Charlotte *
Raleigh *
Orlando *
Jacksonville *
Ft. Lauderdale *
Austin *
Houston *
Dallas *
Buffalo *
New York *
Philadelphia *
Pittsburgh *
* by apt. only

January 29, 2016

Santander Consumer USA
c/o Hermes Sargent Bates, LLP
Attention:  Monte Hurst
901 Main St., Suite 5200
Dallas, TX 75202

## RE: Your employee Reena Mathew

Dear Mr. Hurst:

Reena Mathew has retained this law firm to represent her in regards to her separation from Santander Consumer USA (hereinafter referred to as "Santander").  Please direct all future correspondence, communications, and documents regarding this matter to our firm.  The purpose of this letter is to summarize briefly my understanding of what transpired and to determine your interest in engaging in a good faith effort to resolve this matter.

As you know, Ms. Mathew began working for Santander in January 2011.  Throughout her tenure with Santander, Ms. Mathew has been a hard working employee who diligently performs her duties on a regular basis.  Our investigation indicates that Santander's treatment of Ms. Mathew violates federal law.

In October 2015, Ms. Mathew informed Santander's Human Resource Manager that he was pregnant. Soon after informing Santander about her pregnancy, Santander placed Ms. Mathew on a performance plan without notice or warning. Ms. Mathew reported the retaliatory action to management; however, no action has been taken to address the hostile work environment.

Our investigation suggests Santander has discriminated against Ms. Mathew due to her pregnancy. Santander's recent conduct is in direct violation of Title VII of the Civil Rights Act of 1964 (Title VII), public policy, and company policy.

The applicable portions of the Title VII and Eleventh Circuit holdings read in pertinent part:

> *"It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge an individual, or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment*

OF COUNSEL:
♦

ONLY LICENSED IN:
Ɏ NY
◇ NJ
† SC
‡ GA
✦ NC
✱ IL
ø TX
✳ FL
★ AZ
❖ PA
◇ CO
◗ AL

Mathew 081



*because of such individual's race, color, religion, sex, or national origin."[1]*

*"The law forbids discrimination when it comes to any aspect of employment, including hiring, firing, pay, job assignments, promotions, layoff, training, fringe benefits, such as leave and health insurance, and any other term or condition of employment."[2]*

*[W]hen defining the level of substantiality required for a Title VII discrimination claim, we required an employee to demonstrate she suffered "a serious and material change in the terms, conditions, or privileges of employment" to show an adverse employment action.[3]*

*[C]onduct falling short of an ultimate employment decision must, in some substantial way, "alter[ ] the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect [ ] his or her status as an employee."[4]*

As with other sex-based stereotypes, Title VII prohibits an employer from basing an adverse employment decision on stereotypical assumptions about the effect of pregnancy on an employee's job performance, regardless of whether the employer is acting out of hostility or a belief that it is acting in the employee's best interest.

Ms. Mathew takes great pride in her work and has enjoyed her employment with Santander. At this time we will continue to closely monitor the situation on an ongoing basis and expect that Santander will conduct its operations professionally. This is a demand for Santander to: (1) investigate Ms. Mathew's claims, (2) prevent future instances of discrimination in the workplace, and (3) contact this office to discuss a fair and reasonable resolution to this matter.

This letter serves as formal notice of your ongoing legal duty to preserve any and all information relevant to the facts surrounding this claim.  Your duty to preserve evidence extends to the following: 1) business records, 2) paper, digital, or electronic files, 3) data generated by and/or stored on you or your client's computers and storage media (e.g., hard disks, floppy disks, backup tapes), 4) any other electronic data, such as: voice mails, text messages, emails, digital/analog audio recordings, 5) any related physical evidence, and 6) any form of video recordings (please prevent the automatic deletion of video footage by preprogrammed deletion cycles). Violations of the legal duty described in this notice can result in severe sanctions being imposed by the Court for spoliation of actual evidence or potential evidence.

---

[1] Title VII of the Civil Rights Act of 1964 as amended by the Pregnancy Discrimination Act of 1978 § 703 (a).
[2] *EEOC Compliance Manual 2011.*
[3] *Crawford v. Carroll,* 529 F.3d 961 (11th Cir.2008).
[4] *Id.,* (quoting *Gupta v. Florida Board of Regents,* 212 F.3d 571 (11th Cir.2000)).

Mathew 082



Please note that our investigation of Ms. Mathew's claims is ongoing.  So that I can document our file, please send me a written response to this letter within five days.  Also, please call me at your earliest convenience to discuss your interest in resolving these issues.  You can contact me directly at (800) 965-1570 ext. 128.

Best regards,

Gabrielle Klepper
gabrielle.klepper@spielbergerlawgroup.com

cc: Thomas Daugustinis, Esq.
    Reena Mathew

Mathew 083

**From:** "Reena Mathew" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=REENA MATHEW0CB>

**To:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>

**Subject:** Summary of Meeting

**Date:** Mon, 01 Feb 2016 18:23:51 +0000

**Importance:** Normal

---

Hi Yessica,

Per our conversation on Friday, 1/29/16, here is what we discussed:

**Attendance**—I've been giving 48 hour notice as well as placing time off in calendar; no issues-continue to do so.

**Time Management**—Work study every 30 minutes due every Friday. We will meet every other Friday (pay day Fridays) to discuss/debrief progress etc. Asked if I would like to attend any type of classes to assist; said if I came across anything would let Manager know.

**Consulting**—No issues at this time; would like for me to take over the investigation for Ireshia Brown—in charge of summaries, aftermath; you would like for me to respond timely to all issues/requests etc and let you know if I have any questions. Start fresh with January.

Just as a side note, we also discussed my perspective on things and how PIP had been handled in my case.

Let me know if you need anything else.

Thanks,
Reena

## Reena Mathew, PHR
Santander Consumer USA Inc.
HR Business Partner

PHONE      214.292.2772
MOBILE     214.364.9136
FAX        214.630.0828
EMAIL      rmathew@santanderconsumerusa.com
WEB        www.santanderconsumerusa.com
BENEFITS HOTLINE   214.540.2010

SC004104

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Reena Mathew <rmathew@santanderconsumerusa.com>
**Subject:** Example of Investigation summary- confidential
**Date:** Tue, 02 Feb 2016 20:08:50 +0000
**Importance:** Normal

---

Hello Reena,

I'm sharing this as a ==guide== for you when composing an investigation summary. Let me know if you have further questions or if this helps.

Thanks

**From:** Yessica Adriano
**Sent:** Tuesday, December 15, 2015 7:34 AM
**To:** Stephanie Elad
**Subject:** D. Crouch - Investigation Summary

Hello Stephanie,

Below is an attempt at a general investigation summary for Deidre Crouch, the detailed investigation notes of every conversation I had will soon follow. I have attached a time line of events dating back from when Deidre first raised her issues. The timeline below is just of our investigation.  Please review and advise if you would like for me to condense or be more specific on the summary below. My recommendation is at the end of this email, I would also like to gather your thoughts on appropriate course of actions. Thank you.

**Date Complaint Received:** 11/24/2015
**Investigator(s):** Yessica Adriano- Manager, Human Resources
**Complainant(s):** Deidra Crouch, Collateral Recovery Specialist
**Accused:** Cherri Cotton – Loss Recovery Manager
**Witness(es):** Jeannie Palmer, Nadia Robinson, Jessica Gibson, Natassia Kinney, Nathan Jones, Chris Musso – Collateral Recovery Specialists
Ebony Jones- Reinstatement Coordinator
Tara Stewart- AVP Loss Recovery, Jodie Kelch-VP Loss Recovery

**Timeline of Investigation:**
**11/21/2015:** Deidra Crouch's Resignation letter received
**11/24/2015**: Spoke with Deidre over the phone, she shared her concerns and the reasons for her departure. She was offered the opportunity to return to the NRH site.
**11/25/2015:** Deidre responds via email to me to verify if the position will be under Tara
HR Compliance reviews past logs and does not find a complaint from Deidre
**12/1/2015**: Advised the position open would still fall under Tara, and asked if she would be willing to go to Late Stage at NRH. Deidre responds same day stating due to her declined health and the treatment she endured she will not return.
**12/7/2015**: Spoke with 6 agents from Sherri Cotton's team, and 1 agent from a surrounding team
**12/8/2015**: Met with Tara Stewart, AVP Lost Recovery  and Jodie Kelch, VP Loss Recovery
**12/9/2015**: Met with Cherri Cotton, Loss Recovery Manager
**12/11/2015:**  Nastassia Kinney, comes to see me stating that Cherri has been nicer to the team since the day Jodie arrived and no longer places the customers on speaker phone, however she has begun to "play her like she did Deidre" through EIC comments. Advised will look into EIC and follow up with her the following week.

SC006694

**Deidre Concerns (usually the Final Incident portion, based on the situation modify as you see fit) :**
- Cherri treats her unfairly and humiliates her anytime she can, which caused a decline in her health and well being
- Employees were aware of her write up before she knew about it
- Brought these issues to Tara several times and she never did anything about it, went to HR, and contacted an Ethics officer
- Cherri is always sharing people's business with other employees and says mean things about everyone (examples provided)
- Cherri always puts upset customer's on speaker and mocks them

**Substantiated Claims (or it can be Confirmed Accusations per the summary template)**
- 2  employees state they were aware of Deidre's write up as Cherri left if on her desk and made comments in regards to it
- 2 employees confirm Cherri speaks negatively of many employees and their personal matters, examples and time frames provided
- 2 employees state that they these matters have been brought to Tara's attention several times and to HR and nothing was done but things got worse
- 1 employee confirmed how Deidre was taunted by Cherri after returning from an HR meeting
- 3 employees confirmed it is important not to get on Cherri's bad side, because of how her disposition changes (2 of them provided examples of how bad she has treated Deidre and Jeannie)
- All interviewed parties confirmed Cherri places upset customers on speaker phone, 4 of the 6 interviewed agree she laughs and does this for an entertainment value

**Unsubstantiated Claims (can also be Unconfirmed Accusations):**
- Deidre notifying the Ethics officer, compliance thoroughly reviewed and confirmed there is no record of this
- Deidre reaching out to Tara on 09/04/2015 to question her Final issued on 08/30/2015

**Tara/Jodie Meeting Recap (only enter recaps that were crucial to your investigation):**
- Jodie begins meeting by stating Misty, Reena were asked to get involved and they advised this investigation was closed with no findings
- Tara reviews how the oversight of Deidra's attendance occurred, how she reached out to have it corrected, and her thorough apology to Deidra over this. This error was caught in time and Deidra's bonus was not impacted
- Deidra brought up concerns of favoritism, bullying, log in/log outs, ,eating on the floor concerns to her.  Upon her review, Cherri was doing everything correctly and was consistent in her practices
- Tara references Cherri's communication style and how it can be misinterpreted as well as hers
- Tara states the 10/20 meeting went well, she followed up on 10/27, Deidra was fine and she helped bridge the communication between her and Cherri by having her do a recap and receive kudos. The resignation letter came to her as a surprise.

**Cherri Meeting Recap (Jodie Kelch Present):**
- Issues with Deidre began after she was written up, Deidre just stopped speaking to her
- Claims she has never spoken negatively about any one  on the team. Examples provided and she remembers another associate announcing one of these incidents, but it didn't come from her
- States she is consistent with holding everyone accountable and applies same rules to all
- She has placed customers on speaker phone but only while she is multitasking and helping associates at the same time. If a customer is irate and uses profanity she is quick to pick up the headset. When questioned if she has laughed, she says maybe but not at the customer. Advised many have corroborated she has placed these for an entertainment value, she states she does not know why they would say that
- Claims team environment is good and references issues with Nastassia
- Per Jodie's question, admits she is personable with employees but once a DA is administered has "pulled back" and changed her style

**Recommendation (the template states Recommendation & Reason):**

SC006695

In regards to Cherri Cotton, it was substantiated her ill practice of placing customers on the phone with an intent of mocking them. In our meeting with her, she also admits to changing her style and not being as personal as she is used to when an employee is placed on a disciplinary action. For these behaviors to include the substantiated claims and her failure to uphold our leadership expectations as a manager, I am recommending a Final Written Warning.

During my meeting with Tara, my perception is she was quick to defend Cherri and at one point comments her communication style just like Cherri's has been questioned before. The timeline and emails prove Deidre brought up Cherri's concerns and her incorrect coding, the delay in getting this corrected is questionable. However, she did involve HR in the matter and she handled the follow up with Deidre. My recommendation for her is a strong coaching, emphasizing the objectivity we need to maintain as leaders as well as appropriate timely responses to agent complaints.

Jodie Kelch did follow up immediately with HR upon receiving Deidra's concerns.


Thank you,
Yessica

SC006696



**Hallett & Perrin, P.C.**

1445 Ross Avenue
Suite 2400
Dallas, Texas 75202
www.hallettperrin.com

Monte K. Hurst
Board Certified, Labor and Employment Law
Texas Board of Legal Specialization
direct dial – 214.922.4111
fax – 214.922.4142
monte.hurst@hallettperrin.com

February 5, 2016

Ms. Gabrielle Klepper                    **Via e-mail: Gabrielle.Klepper@spielbergerlawgroup.com**
Spielberger Law Group
202 South Hoover Boulevard
Tampa, Florida 33609

      Re:    **Our File No.: 39272/40**
              *Reena Mathew vs. Santander Consumer USA Inc.*

Dear Ms. Klepper:

Please be advised that this law firm has been retained to represent the interests of Santander Consumer USA Inc. in this matter. As such, please direct all communication with regard to this matter to my office.

We are conducting an investigation with regard to Reena Mathew's allegations and will be reaching back out to you thereafter.

Should you have any questions, please do not hesitate to contact my office.

Very truly yours,

*Monte K. Hurst*

Monte K. Hurst

MKH:KAB:lb

455096

Mathew 086

**From:** "Reena Mathew" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=REENA MATHEW0CB>
**To:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>
**Subject:** Investigation Summary
**Date:** Wed, 10 Feb 2016 15:04:25 +0000
**Importance:** Normal

---

Hi Yessica,

Please see the summary below for the John Leavell investigation.

**Date Complaint Received**: 2/4/2016
**Investigator:** Reena Mathew, HR Business Partner; Witness: Mitzie Jefferson, AVP Servicing
**Complainant:** John Leavell; Late Stage Account Manager
**Accused:** Monisha Hughes-Trigg; Late Stage Account Manager
**Witnesses:** Erika Boozer, Bianca Mata, Andrew Holcomb, Britney Monte—LS Account Managers on Bill Gray's team

**Timeline of Investigation:**
**2/1/2016:** 7pm--Outburst on the floor occurs and John Leavell is heard saying 'shit' loudly by numerous people including the Manager Bill Gray

- Bill Gray issues a coaching and John proceeds to talk loudly on the floor about it
- Bill pulls in fellow manager Robert Terry and John into the Rio Grande to discuss issue
- John curses at Bill including calling him a 'Bitch' and 'Weak' and curses throughout conversation

**2/2/2016:** Management emails HR later in the afternoon requesting to do a Written based solely upon Bill Gray's statement
**2/3/2016:** Reena Mathew meets with Mitzie Jefferson/Robert Terry to get the full story (based on Robert's perspective) and that is when we find out the word 'Bitch' was used towards Bill Gray and John Leavell is suspended. John initially voices his concerns in this meeting.
**2/4/2016:** John Leavell is terminated over the phone and reiterates complaints regarding Bill Gray (not being able to stop panhandling on the team) and issues with Monisha Hughes Trigg constantly panhandling him and asking him for money/debit card etc. and said he would do what he needed to do as that should've been stopped while employed.

**Final Incident that led Complainant(s) to complain:** On day of suspension, 2/3/16, John brings forth complaints regarding mismanagement of Bill Gray and constant harassing/panhandling by Monisha Hughes Trigg. He stated Monisha kept asking him for money, debit card etc and that is what started the whole thing. Monisha apparently came to him on 2/1/16 and said 'Bitch, give me your debit card' and John said 'No' and Monisha said 'Fuc* you' and John told her 'Fuc* you' and that is what got him in trouble initially. He then stated that he has gone to Bill several times about panhandling and that Bill is scared of Monisha and is the reason why he hasn't addressed the issue with her and it continued to happen.

**Confirmed Accusations:**

- John Leavell used profanity on the floor (the word 'Shit' was confirmed)
- John Leavell used profanity towards Bill Gray in the meeting in Rio Grande conference room—so loud to where other teams could hear him on the floor (yelling at Bill)
- Issues with Bill Gray's management that have been addressed in the past (allowing team members to all be off at the same time, blowing concerns off, not having sense of urgency)
- John and Monisha constantly went back and forth about John buying Monisha material items (lipo, food, etc) but that they had a rapport where it was joking in nature

SC002955

- Several associates on the team are opinionated and don't always show respect towards Manager Bill Gray
- Team morale isn't where it needs to be (compared to other teams on the floor)
- John was not being panhandled—he in fact (was told by majority of witnesses) that he would be the one offering team members to go to happy hour, trips to Vegas, had a drawer full of candy and would brag about money he had/won from gambling
- Two people stating that Monisha spoke about investigation after being interviewed (Manager Bill Gray said she came to him with information and email from John Leavell's wife)

**Alleged and Unconfirmed Accusations:**
- Monisha was panhandling John and said 'Fuc* you' to John
- Bill was aware of panhandling—John stated Bill knew for 6 months; Bill stated he only found out when John confronted him in the Rio Grande conference room; AVP Mitzie Jefferson confirmed Bill's statement by stating Bill had never come to her with these issues so neither were aware.

**Recommendation:**
There are two issues here—Monisha is on a Written for insubordination and had another incident (prior to investigation) where she was being disrespectful towards Bill after she came to him with a question (cutting him off/interrupting him and as a side note slapped a female co-worker roughly on the back). We also have breach of confidentiality (re the investigation) per the Manager and the email from John's wife stating that Monisha had contacted John after he had been terminated. Both of these issues would lead to a Final—ongoing behavioral issue and breach of confidentiality. As a result, the business would like to term and my recommendation would also be to term Monisha.

Regarding Bill, both the business and myself would recommend a Verbal for Performance or Inappropriate Mgmt Practices due to the majority of witnesses confirming issues with Bill's managerial skills in addition to numerous Coachings he's already had (similar issues) with AVP Mitzie Jefferson (they've all been documented in EIC).

Let me know if you need any additional information.

Thanks,
Reena

**Reena Mathew, PHR**
Santander Consumer USA Inc.
HR Business Partner

| | |
|---|---|
| PHONE | 214.292.2772 |
| MOBILE | 214.364.9136 |
| FAX | 214.630.0828 |
| EMAIL | rmathew@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |
| BENEFITS HOTLINE | 214.540.2010 |

SC002956

**From:** "Reena Mathew" <rmathew@santanderconsumerusa.com>
**To:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>, "Reena Mathew" <rmathew@santanderconsumerusa.com>
**Subject:** Conversation with Yessica Adriano
**Date:** Mon, 15 Feb 2016 19:31:05 +0000
**Importance:** Normal

---

**Reena Mathew [9:57 AM]:**
HI Yessica, Quick question--do I include the summary template with the term pw? Wasn't sure if that was part of the process now or do we still need to send you our regular template?

**Yessica Adriano [10:01 AM]:**
you send the regular template and then that one is attached  for reference...
pw? sorry my mind is lost

**Reena Mathew [10:13 AM]:**
Sorry, paperwork is pw......ok so send over the regular template then for Monisha and the summary template goes into I-Sight, correct?

**Reena Mathew [11:37 AM]:**
Sorry, did you see my last IM?

**Yessica Adriano [11:42 AM]:**
sorry didnt catch your IM i had many open, yes please place summary template into isight
and send over Monisha regular term template for approval and attach summary for approval, i can further explain tomorrow
but for now did i answer your questions

**Reena Mathew [11:44 AM]:**
Ok, sounds good--yes that answers it. TY

**Reena Mathew [12:14 PM]:**
Do you remember what Stephanie referred to as the outburst--verbal altercation in regards to Monisha?

**Reena Mathew [12:16 PM]:**
Now that I'm thinking about it, it was probably the disrespect issue to Manager Bill......thoughts?

**Yessica Adriano [12:19 PM]:**
it depends di he ever tell her to let him finish, or hold on and she kept interrupting if so i would still go with insubordinate behavior to management, and we can prove it was a repetitive event--- the thing with this one is that it will be a combination of things

**Reena Mathew [12:33 PM]:**
Ok, sounds good!

**Reena Mathew [12:53 PM]:**
Just responding to your email........I did, I thought you wanted me to categorize the two (cell phone and outburst) under insubordination (they were Cell phone, Outburst--verbal altercation and Interfering with investigation) I didn't recall what the outburst was but I'm thinking that's the insubordination to Bill......that's what I was asking above :)

**Yessica Adriano [1:11 PM]:**
ok thanks ill send it to her and see what she says

**Reena Mathew [1:12 PM]:**
NP-let me know if you need me to add anything

**Yessica Adriano [1:12 PM]:**
ill add my notes as well when i forward
thanks

**Reena Mathew [1:21 PM]:**
Sounds good!
Ok if we go ahead and term or do I need to wait for SE's approval?

**Yessica Adriano [1:27 PM]:**
just sent it off, we need her approval

SC002648

**Reena Mathew [1:27 PM]:**
I should clarify--approval in writing since she already told us we're good. Ok will do

SC002649

**From:** Stephanie Elad <selad@santanderconsumerusa.com>
**To:** Reena Mathew <rmathew@santanderconsumerusa.com>
**Cc:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Subject:** RE: Term
**Date:** Tue, 16 Feb 2016 18:52:53 +0000
**Importance:** Normal

---

Approved

**From:** Reena Mathew
**Sent:** Tuesday, February 16, 2016 12:52 PM
**To:** Stephanie Elad
**Cc:** Yessica Adriano
**Subject:** FW: Term

Stephanie,

Can you please approve on mine or Yessica's term template so I can attach to term paperwork?

I will save the updated summary in I-Sight.

Thanks!
Reena

**From:** Reena Mathew
**Sent:** Monday, February 15, 2016 12:43 PM
**To:** Yessica Adriano
**Subject:** Term

Hi Yessica,

Please review for term approval:

**Recommendation Details:**
- Associate Name: Monisha Hughes Trigg
- Hire Date: 4/7/2014
- DOB(MM/DD Only): 3/31
- DA History:
  - 1/1/2016—Verbal for Performance
  - 12/31/2015—Verbal for Insubordination
  - 12/8/2015—Verbal for Insubordination
  - 11/24/2015—Written for Attendance
  - 11/21/2015—Verbal for Attendance
  - 7/28/2015—Written for Insubordination
  - 7/1/2015—Verbal for Performance
  - 3/4/2015—Final for Attendance
  - 1/9/2015—Written for Attendance
  - 1/8/2015—Verbal for Attendance
  - 12/16/2014—Verbal for Call Model
  - 7/5/2014—Verbal for Attendance

SC009264

6/28/2014—Written for Insubordination

- Investigation Conducted Y/N (If Yes, attach investigation summary): Y
- Have we interviewed the associate? Y
- Policy Violation: Violation of Best Practices
- Business Recommendation: Term
- HR Recommendation: Term

**Explain briefly why you are making this recommendation (review the considerations below):** Associate is on an active Written disciplinary action for Insubordination and has had 2 more infractions (being insubordinate to manager/cell phone usage on floor). Associate was also informed not to share details of investigation in which she interfered by discussing with others. Business and HR recommendation is termination at this time--Brad's approval is attached as well.

Let me know if you need any additional information.

Thanks!
Reena


**Reena Mathew, PHR**
Santander Consumer USA Inc.
HR Business Partner

PHONE      214.292.2772
MOBILE     214.364.9136
FAX        214.630.0828
EMAIL      rmathew@santanderconsumerusa.com
WEB        www.santanderconsumerusa.com
BENEFITS HOTLINE   214.540.2010

SC009265

**From:** Stephanie Elad <selad@santanderconsumerusa.com>
**To:** Reena Mathew <rmathew@santanderconsumerusa.com>
**Cc:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Subject:** RE: Investigation Summary
**Date:** Tue, 16 Feb 2016 17:34:30 +0000
**Importance:** Normal

---

Approved

**From:** Reena Mathew
**Sent:** Tuesday, February 16, 2016 11:25 AM
**To:** Stephanie Elad
**Cc:** Yessica Adriano
**Subject:** RE: Investigation Summary

Hi Stephanie,

Please see requested changes below.

Let us know if you need any additional information.

Thanks,
Reena

---

**From:** Reena Mathew
**Sent:** Wednesday, February 10, 2016 9:04 AM
**To:** Yessica Adriano
**Subject:** Investigation Summary

Hi Yessica,

Please see the summary below for the John Leavell investigation.

**Date Complaint Received**: 2/4/2016
**Investigator:** Reena Mathew, HR Business Partner; Witness: Mitzie Jefferson, AVP Servicing
**Complainant:** John Leavell; Late Stage Account Manager
**Accused:** Monisha Hughes-Trigg; Late Stage Account Manager
**Witnesses:** Erika Boozer, Bianca Mata, Andrew Holcomb, Britney Monte—LS Account Managers on Bill Gray's team

**Timeline of Investigation:**
**2/1/2016:** 7pm--Outburst on the floor occurs and John Leavell is heard saying 'shit' loudly by numerous people including the Manager Bill Gray
- Bill Gray issues a coaching and John proceeds to talk loudly on the floor about it
- Bill pulls in fellow manager Robert Terry and John into the Rio Grande to discuss issue
- John curses at Bill including calling him a 'Bitch' and 'Weak' and curses throughout conversation
**2/2/2016:** Management emails HR later in the afternoon requesting to do a Written based solely upon Bill Gray's statement
**2/3/2016:** Reena Mathew meets with Mitzie Jefferson/Robert Terry to get the full story (based on Robert's perspective) and that is when we find out the word 'Bitch' was used towards Bill Gray and John Leavell is suspended.

SC008291

John initially voices his concerns in this meeting.

**2/4/2016**: John Leavell is terminated over the phone and reiterates complaints regarding Bill Gray (not being able to stop panhandling on the team) and issues with Monisha Hughes Trigg constantly panhandling him and asking him for money/debit card etc. and said he would do what he needed to do as that should've been stopped while employed.

**Final Incident that led Complainant(s) to complain:** On day of suspension, 2/3/16, John brings forth complaints regarding mismanagement of Bill Gray and constant harassing/panhandling by Monisha Hughes Trigg. He stated Monisha kept asking him for money, debit card etc and that is what started the whole thing. Monisha apparently came to him on 2/1/16 and said 'Bitch, give me your debit card' and John said 'No' and Monisha said 'Fuc* you' and John told her 'Fuc* you' and that is what got him in trouble initially. He then stated that he has gone to Bill several times about panhandling and that Bill is scared of Monisha and is the reason why he hasn't addressed the issue with her and it continued to happen.

**Confirmed Accusations:**

- John Leavell used profanity on the floor (the word 'Shit' was confirmed)
- John Leavell used profanity towards Bill Gray in the meeting in Rio Grande conference room—so loud to where other teams could hear him on the floor (yelling at Bill)
- Issues with Bill Gray's management that have been addressed in the past (allowing team members to all be off at the same time, blowing concerns off, not having sense of urgency)
- John and Monisha constantly went back and forth about John buying Monisha material items (lipo, food, etc) but that they had a rapport where it was joking in nature
- Several associates on the team are opinionated and don't always show respect towards Manager Bill Gray
- Team morale isn't where it needs to be (compared to other teams on the floor)
- John was not being panhandled—he in fact (was told by majority of witnesses) that he would be the one offering team members to go to happy hour, trips to Vegas, had a drawer full of candy and would brag about money he had/won from gambling
- Monisha spoke about investigation after being interviewed to her Manager Bill Gray when advised several times by HR re: maintaining investigation's confidentiality

**Alleged and ==Unconfirmed Accusations:==**

- Monisha was panhandling John and said 'Fuc* you' to John
- Bill was aware of panhandling—John stated Bill knew for 6 months; Bill stated he only found out when John confronted him in the Rio Grande conference room; AVP Mitzie Jefferson confirmed Bill's statement by stating Bill had never come to her with these issues so neither were aware.
- Received ==letter from John's wife== stating Monisha contacted John after investigation took place asking him to change his story re: events that took place

**Recommendation:**
There are two issues here—Monisha is on a Written for insubordination and had another incident (prior to investigation) where she was being disrespectful towards Bill after she came to him with a question (cutting him off/interrupting him and as a side note slapped a female co-worker roughly on the back). We also have breach of confidentiality (re the investigation) per the Manager and the email from John's wife stating that Monisha had contacted John after he had been terminated. Both of these issues would lead to a Final—ongoing behavioral issue and breach of confidentiality. As a result, the business would like to term and my recommendation would also be to term Monisha.

Regarding Bill, both the business and myself would recommend a Verbal for Performance or Inappropriate Mgmt Practices due to the majority of witnesses confirming issues with Bill's managerial skills in addition to numerous Coachings  he's already had (similar issues) with AVP Mitzie Jefferson (they've all been documented in EIC).

Let me know if you need any additional information.

SC008292

Thanks,
Reena

## Reena Mathew, PHR

Santander Consumer USA Inc.
HR Business Partner

| PHONE | 214.292.2772 |
| MOBILE | 214.364.9136 |
| FAX | 214.630.0828 |
| EMAIL | rmathew@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |
| BENEFITS HOTLINE | 214.540.2010 |

SC008293

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Catessa Malone <cnmalone@santanderconsumerusa.com>
**Subject:** FW: Reena Notes
**Date:** Mon, 15 Feb 2016 22:10:26 +0000
**Importance:** Normal
**Attachments:** Reena_Notes_1_of_2.pdf; Reena_Notes_2_of_2.pdf

---

**From:** Yessica Adriano
**Sent:** Friday, December 11, 2015 2:05 PM
**To:** Stephanie Elad
**Subject:** Reena Notes

Stephanie,

I finally got the color printer to work and was able to rescan my personal notes of conversations with Reena, since it is in color it is a better read.

Thanks

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE    214.722.5667
MOBILE    214.215.5258
EMAIL    yadriano@santanderconsumerusa.com
WEB    www.santanderconsumerusa.com

SC006838

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Catessa Malone <cnmalone@santanderconsumerusa.com>
**Subject:** FW: Follow up
**Date:** Mon, 15 Feb 2016 22:06:55 +0000
**Importance:** Normal

---

Feedback provided to Reena

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE   214.722.5667
MOBILE   214.215.5258
EMAIL   yadriano@santanderconsumerusa.com
WEB   www.santanderconsumerusa.com

---

**From:** Yessica Adriano
**Sent:** Friday, December 11, 2015 1:14 PM
**To:** Reena Mathew
**Subject:** Follow up

Hello Reena,

As requested, I will begin recapping our conversations and 1:1s.

**Tuesday, December 9, 2015**
- (Credit Cards) Received a call from Scott and Jeff over concerns on the Deandra case.
  - To avoid this, please remember to advise the business when we pull anyone from the floor, as it impacts their operations and they need to be accounted for.
  - When discussing an investigation with the business, do not share any opinions with them until the investigation is completed, we both have discussed, and a final recommendation is crafted, this will eliminate their concerns on us being one sided.
- Discussion over your concerns with the PIP
- Three main categories: attendance/schedule adherence, workload completion, and consulting
  - Attendance/Work Schedule: No current issues
  - Workload: Complete time study in 30 minute increments, which will help determine where time is allocated
  - Consulting: We will partner continuously

**Wednesday, December 10, 2015**
- Review on the Deidre Crouch case, received all of Tara's and Jodie's documentation. It is important we read all documentation carefully to identify employee's concerns, which will allow us to identify questions that need to be asked during an investigation and we ensure parties involved during questioning do not hinder an employees' responses (Tara).

I will ensure we meet today to review the progress on the Time/Study form, so we are both on the same page with that. Please let me know if you have any questions.

Thanks

SC006606

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE    214.722.5667
MOBILE   214.215.5258
EMAIL    yadriano@santanderconsumerusa.com
WEB      www.santanderconsumerusa.com

SC006607

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Catessa Malone <cnmalone@santanderconsumerusa.com>
**Subject:** FW: Reena
**Date:** Mon, 15 Feb 2016 22:05:30 +0000
**Importance:** Normal

---

Additional info

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE   214.722.5667
MOBILE   214.215.5258
EMAIL   yadriano@santanderconsumerusa.com
WEB   www.santanderconsumerusa.com

**From:** Yessica Adriano
**Sent:** Tuesday, December 08, 2015 5:57 PM
**To:** Stephanie Elad
**Subject:** FW: Reena

Hello Steph,

Scott and Jeff both called me this afternoon to express concerns with how Reena has handled this investigation as they feel she is not objective and has delayed resolution.  I advised Scott that I would look into the matter. I called Reena afterwards to get a run through of what has occurred and asked her for a summary of this investigation. I did not provide any feedback, I want to review what she has sent and then can address the situation tomorrow (she requested a meeting with me to review her PIP and annual performance).

As a side note, yesterday Jorge Munoz asked if Reena had brought Francisco's matter to my attention. I said, not yet, he was inquiring about his shift differential, stating he had asked Reena several times for the past month to tell me. I told Jorge moving forward he needs to feel comfortable coming to me directly. I did not get further information because an employee I needed to interview was coming into my office.

For tomorrow, I will meet with Jodi and Cherri in the morning and then transition to 8585 in the afternoon to get the Credit Cards issue wrapped up.

Thanks,

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE   214.722.5667
MOBILE   214.215.5258
EMAIL   yadriano@santanderconsumerusa.com
WEB   www.santanderconsumerusa.com

**From:** Scott Dieckmann
**Sent:** Tuesday, December 08, 2015 3:18 PM

SC006550

**To:** Yessica Adriano
**Subject:** Reena

Yessica,

I wanted to start by saying thank you for taking the time to call me back and listen to my concerns.  We have not had Reena as a business partner for very long; however, situations continue to arise that concern me with how things are being handled.  Most recently is the ongoing situation with several of my employees and the "bullying" concerns.

Jeff called me today first informing me that we had staff and Judy in HR and had no knowledge of what was happening. I was quite a bit surprised, especially under the circumstances that we would bring Judy into HR for employee issues, when we have discussed her opportunities without informing her leadership team.  Typically, where I have worked in the past the leaders would be advised so that we could account for where our staff is at.  Furthermore, based on Judy's challenges, I am not sure we want to bring her into this without knowing what is happening or seeing if we are comfortable.

I then got another call from Jeff with numerous concerns, which concern me significantly.  Jeff said that he spoke to Reena and that she met with Deandrea to follow up.  During their conversation Deandrea again expressed concerns that the situation has not stopped.  She said the other girls were still saying things to her under their breath.  Jeff asked if she asked the other girls and Reena said yes.  Jeff asked what did they say and according to Jeff, Reena said of course they denied it but then went on to say something to the effect of she "Reena" is sure they said it.  If Reena was not present and we have no one to substantiate this accusation I don't think HR should be taking sides.  We need to ensure we are impartial and make the decisions based on the facts we gather, not our opinion.  It comes across as if Reena is emotionally involved and unable to handle this without being partial to Deandrea.  If that is the case, she cannot be part of this investigation any longer.  Jeff also mentioned that Reena told him part of Deandrea's complaint was around the team luncheon.  I believe all three of the girls rode to the lunch with Jeff and either all three or two of the three sat next to each other at lunch while there many open seats to choose from.  After the lunch I instructed Jeff to reach out to HR, because he said things went well and didn't see any issues occur.  I asked Jeff to ask HR if he should document and provide that because I was concerned that this event would be added to continued complaints.  Jeff said he did speak to Reena about it after the lunch.  If Deandrea had concerns about the car ride to the lunch or at the lunch itself, why not set that aside and bring Jeff into the conversation so that he could state his perspective and try to help resolve this issue.  Also, maybe we should have asked why she chose to ride with Jeff after she found out that Keidra and the other girl she had an issue were riding with him as well.  She could have ridden with the other group or taken her own car.  Furthermore, maybe ask why sit next to them at lunch if things are bad.  Again, this seems like another mis-step in this situation.

Lastly, as soon as Jeff came back from vacation, I believe Keidra met with Jeff and expressed her concerns that Deandrea was on the floor talking to others about the situation.  Jeff went on to say that Keidra said Deandrea was telling other staff that she just has to think about her sister (I believe she lost her sister recently) to make herself cry and that she can get them fired.  I mentioned this to Tensya prior to us writing everyone up and closing out the issue and was told HR was done and we were not calling anyone else back in.  I get the part at some point we need to stop the investigation and at times people may just continue pointing fingers, but in hindsight this issue continues to grow.

Jeff can provide more specifics on this situation and prior situations.  The feedback I get from Jeff is many other things have not been handled by her to his expectations.  Please let me know if you need anything else from me.  I appreciate you intervening to help us work through and hopefully resolve this current situation.

Thank you,

**Scott Dieckmann**
Santander Consumer USA Inc.
SVP Loan Servicing, Consumer Lending

PHONE    214.261.1437

SC006551

MOBILE   214.842.0282
FAX   214.237.0565
EMAIL   sdieckmann@santanderconsumerusa.com
WEB   www.santanderconsumerusa.com

SC006552

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Catessa Malone <cnmalone@santanderconsumerusa.com>
**Subject:** Reena FW: Daily Tasks
**Date:** Mon, 15 Feb 2016 21:28:39 +0000
**Importance:** Normal
**Attachments:** 15min_assignment_7-2015.xlsx

---

Catessa,

Attached is the time study she did for Angelina last July.

Angelina mentioned she asked her to do this twice since the first one she received was vague.

Thanks
Yessica

**From:** Angelina Hullum
**Sent:** Tuesday, December 01, 2015 3:10 PM
**To:** Yessica Adriano
**Subject:** FW: Daily Tasks

I FOUND IT!! here is the second request

**From:** Reena Mathew
**Sent:** Wednesday, August 19, 2015 9:44 AM
**To:** Angelina Hullum
**Subject:** Daily Tasks

GM Lina!

Here is my spreadsheet tracking last week.

Let me know if you need anything else…..have a good one!

Thanks,
Reena

SC006276

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Catessa Malone <cnmalone@santanderconsumerusa.com>
**Subject:** FW: Reena - Docs
**Date:** Mon, 15 Feb 2016 17:49:06 +0000
**Importance:** Normal
**Attachments:** Reena_PIP.doc; Reena_90_Day_Action_Plan.docx; Time_Line_of_Events.docx

Catessa,

Attached is the PIP and it supporting documents that were delivered and reviewed with Reena.

Please advise if you need further information.

Thank you

**From:** Yessica Adriano
**Sent:** Friday, January 15, 2016 3:18 PM
**To:** Stephen Shaffer
**Cc:** Stephanie Elad
**Subject:** Reena - Docs

Good afternoon,

Attached are the documents that were discussed with Reena this morning.

Thank you

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE    214.722.5667
MOBILE   214.215.5258
EMAIL    yadriano@santanderconsumerusa.com
WEB      www.santanderconsumerusa.com

SC005919

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Catessa Malone <cnmalone@santanderconsumerusa.com>
**Subject:** FW: Reena Meeting Recap 01/15/16
**Date:** Mon, 15 Feb 2016 22:03:41 +0000
**Importance:** Normal

---

This is a recap of our meeting where we issued the PIP, Action  Plan, and shared Timeline of Events.

Thanks

---

**From:** Stephanie Elad
**Sent:** Monday, January 18, 2016 4:32 PM
**To:** Yessica Adriano
**Cc:** Stephen Shaffer
**Subject:** RE: Reena Meeting Recap 01/15/16

Thanks for the recap! I think you covered just about everything. I just have a few points to add:

- When you brought up the Google example (for the Associate who was alleged to have falsified her bereavement documentation), I reminded her that I had coached her at the time that I felt that she and Sabrina had spent too much time looking into this issue, and also provided specific direction on how the incident should have been handled. Reena stated that I had provided feedback but that it wasn't coaching. I then explained that if Yessica or I provide direction on how to handle something differently, that is coaching, even if we don't preface the conversation by specifically stating "this is coaching".
- Reena stated that Angelina had been on the HRBP call and had attempted (unsuccessfully) to halt the discussion around the PIP's. When we asked her to explain, she refused. *Later that day, I called Angelina and asked her about this. She stated she wasn't on the call and wasn't aware of the content until afterwards, when one of her team members brought it to her attention.*
- She asked for examples several times and claimed that she had not been provided with examples thus far. However, when Yessica and I shared examples with her, she would argue with them and state that the facts we presented were not true.

---

**From:** Yessica Adriano
**Sent:** Monday, January 18, 2016 11:36 AM
**To:** Stephanie Elad
**Subject:** Reena Meeting Recap 01/15/16

Good morning,

I wanted to share with you my summary of our meeting with Reena on Friday, 01/15/2016

We started the meeting by letting her know we had taken her concerns into consideration and taken a step back and reviewed this process.  Her annual review was modified for 2015 to a satisfactory rating and she would be receiving her merit and bonus.  Our goal was to see her succeed in her role and the PIP and action plan that we were going to discuss were created with that in mind.

- She immediately became upset and questioned why she was being placed on two PIPs, it was explained that there isn't two PIPs as the other one was rescinded. The PIP addressed the performance gaps that still existed and it outlined additional concerns that have come to light.  We explained the PIP was extended to a 90 day period to give her enough time to make necessary changes. Reena stated we just wanted her out of here and why didn't we just fire her now, and that this was all so unfair.

SC005484

- Reena went on to share she was being blindsided again since she was never coached before, I provided her examples of conversations where her performance was addressed (ie: calling her with Brad's concern over DA delivery). She responded with that was feedback and not a coaching session.  I provide additional examples and even Stephanie shared an example (google), Reena stated once again these are feedback and not coaching sessions.
- She went on to say on the HRBP call, Susan was talking about PIPs and before anyone can be placed on one they needed to be coached and need to have documentation. Also, Lina was on that call and told Susan to stop talking about PIPs. Stephanie explained we are unaware of what she is talking about, though the PIP is not the last step but first step in addressing and correcting performance.
- Reena also stated she never received the timeline of events. I explained to Reena in our original meeting on 12/01/2015 she wanted examples and I went over each item on the timeline and shared some of the comments she made to them. I reminded her that she had stated she didn't want that (timeline) because Lina and I can easily make up things and put it on paper.

- I proceeded to go over PIP form explaining the columns and performance areas:
   **Attendance**, Reena stated everyone left early she isn't the only one who does it
   **HRBP duties**, Reena answered by saying she had been here 5 years she knows how do everything and does not need help. She wanted examples shared the DA timeframes and payroll incident, explained how I needed her to be proactive and resolve these issues as I couldn't guide her with every step, and had to have generalist come in to resolve as I had an urgent matter to attend to
   **Consulting**, she accepted the feedback with the D. Crouch investigation and agreed.  In regards to the further issues, she wanted names and examples of who made complaints. Advised we do not provide names, provided example how in certain emails she responded to AVPs with "probably" and we need to be clear on responses and shared the concerns from the credit card group. Had discussion on her turnaround time of one DA, Reena stated she had it done within 48 hours. I asked if the task takes 5 minutes why not just deliver it to the business, instead of responding to their 3 emails where they are asking for it.  We also advised Reena we have more than one business unit sharing their concerns of how she has handled things and her timeliness. Reena shared an example of a complaint one manager made on another HRBP, she wanted to know what were we doing to them. Explained to her, being in HR she should know we do not discuss other employees matters. In regards to addressing the business for sharing their concerns, she denied it and then admitted to speaking to Jorge and Sam but she was just wanting to know if there was any issue
- We went over the action plan and its layout:
   **Time Management**, went over expectations she was upset of having to submit a time tracking study, stating she doesn't have time for that and why does she have to do it. Advised if she states she is busy, then we need to know where her time is being consumed by. Again, disagreed that she had already done it for Lina and myself and doesn't know why she has to do it again, and I didn't give her feedback on her last one.
   *After the meeting I went back to my meeting notes with Reena, on December 10, 2015 Reena shared with me what she had written down for her time study for the past couple days. I advised to keep with the 30 minutes increment and advised where she needed to have more detail.*
   We went over how she would no longer have 8585, so she could focus on her plan and the Lewisville site.  Reena became upset and offended, stating she has been here 5 years and knows how to do her job, and her lasting that long says something. We went over the rest of the plan, as I went over additional examples she would respond sarcastically.


Overall, throughout the discussion Reena was extremely defensive, anti-agonistic and at times borderline aggressive. Reena reminded us a few times that she is pregnant. She stated she was never coached,  and this was unfair.
I advised of how disappointed we were because we listened to her original concerns didn't want to impact her monetarily, that was solved, but the performance still needed to be addressed and corrected.  I also mentioned the action plan provides a clear direction and we have even lessened her load and provided additional resources to see her succeed in this plan. Stephanie and I stressed her success depends on her willingness to move forward.  Stephanie shared a personal example of a time she received feedback she didn't like, she had to accept it,  made changes, and

SC005485

moved on successfully. Keeha was still upset and again said that this is unbelievable you are placing me in two PIPs and asked for the documents and would review and decide if she would sign.

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE    214.722.5667
MOBILE   214.215.5258
EMAIL    yadriano@santanderconsumerusa.com
WEB      www.santanderconsumerusa.com

SC005486

**From:** Stephen Shaffer <sshaffer@santanderconsumerusa.com>
**To:** Catessa Malone <cnmalone@santanderconsumerusa.com>
**Cc:** Stephen Shaffer <sshaffer@santanderconsumerusa.com>
**Subject:** Notes and E-mails. Re: Reena Mathew
**Date:** Tue, 16 Feb 2016 23:13:26 +0000
**Importance:** Normal
**Embedded:** RE:_Summary_of_our_conversation_from_last_Wednesday;
Automatic_reply:_Summary_of_our_conversation_from_last_Wednesday;
RE:_Summary_of_our_conversation_from_last_Wednesday(1);
RE:_Summary_of_our_conversation_from_last_Wednesday(2); FYI._-_Reena_follow-up;
RE:_Summary_of_our_conversation_from_last_Wednesday(3);
RE:_Summary_of_our_conversation_from_last_Wednesday(4);
RE:_Summary_of_our_conversation_from_last_Wednesday(5);
Summary_of_our_conversation_from_last_Wednesday; Reminder;
FW:_Last_Chance_to_Register_for_February_Monthly_Luncheon;
RE:_Meeting_you_requested; Meeting_you_requested; RE:_8585_Coverage;
RE:_Update_and_next_steps_regarding_your_issues.; Re:_Following_Up.; RE:_Update;
RE:_RM; Draft_-_My_review_of_and_recommendations_on_Reena_Mathew_PIP.;
Reena_Mathew; Thank_You; Re:_Touching_base_-_Reena_and_Steve; RE:_Touching_base_-
_Reena_and_Steve

---

I believe this is all of them that apply.

Thank you.

## Stephen Shaffer
Santander Consumer USA Inc.
VP Human Resources Business Partnership

PHONE    214.722.4580
MOBILE   469.236.5931
EMAIL    sshaffer@santanderconsumerusa.com
WEB      www.santanderconsumerusa.com

SC004776

**From:** "Reena Mathew" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=REENA MATHEW0CB>
**To:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>
**Subject:** Recap
**Date:** Wed, 17 Feb 2016 23:17:11 +0000
**Importance:** Normal

---

Hi Yessica,

Per our conversation, this is what was discussed:

**Attendance**—I've been giving 48 hour notice; continue to do so with appts etc. I let you know starting next week I will have my appt every 2 weeks.

**Time Study**—You asked a few questions regarding some of the information. Asked me to quantify how many DA's, specify which investigation and add details ie IM's, door knocks etc. Any trends that we see such as so many corrections from TA or anything else we might notice coming to us. This way we can see where time is being spent (too much/too little) and possibly if something needs to be taken away or given to another team member.

**Consulting**—We've been meeting prior to investigations and other issues that may arise to discuss game plan. Continue to do so as well as consult with other departments if need be. If there are any changes with deadlines etc, please communicate that.

Thanks,
Reena

**Reena Mathew, PHR**
Santander Consumer USA Inc.
HR Business Partner

PHONE          214.292.2772
MOBILE         214.364.9136
FAX            214.630.0828
EMAIL          rmathew@santanderconsumerusa.com
WEB            www.santanderconsumerusa.com
BENEFITS HOTLINE   214.540.2010

SC003260

Investigation Notes Template

| | |
|---|---|
| **Interviewee: Rosalinda Coronado** | **Case Type:** Associate Grievance/Rights |
| **Associate ID: 101478** | **Case Number:** |
| **Hire Date:  2/9/2015** | **Date: 2/18/2016** |
| **Dept CC Customer Service** | **Interviewer: Reena Mathew** |
| **Manager Name: Monika Hinojos** | **Witness/Notes: N/A** |

**Instructions:** Prepare for your investigation by identifying the questions that will be asked. Choose all questions/categories that apply. Case types are listed below in order of priority. File your case under the highest priority type regardless of how many types might apply.

Management Concerns:

1. How long have you been on team? Four months

2. What are the team dynamics like? It's good—I'm improving so I'm going to bonus. I typically keep to myself because I don't want any problems. I sit over on Leevorick 'Dre' Moore's side so I don't have a lot of interaction with others on the team. Monika is always helpful with me. I try to keep myself away from everyone else; all I'm worried about is my job. Where I sit, everything is fine.

3. There was an issue that came forward to HR regarding Merits/Pay being discussed amongst team members. What do you know about this? Monika had mentioned in our jump start that some of us were receiving merits but others weren't if you were on a Final or if you hadn't been here long enough. The team was talking about it because some people were upset.

4. Did you ever congratulate anyone re: their merit? I did say 'Congrats' to Bonnie on her merit. No one said she had received anything, I just assumed she did because she was smiling and happy and to me she is perfect. I said 'I know you got a bonus and Bonnie said 'Thank you, I did get a bonus. I just don't want problems with anyone.' Rosalinda then proceeded to say 'I'm sorry, I meant it in a good way' and Bonnie said 'I know how others on the team are' Rosalinda said Bonnie didn't want problems with anyone.

5. Did you ever hear any teammates speaking in regards to merits? I was in the break room and overheard an associate speaking to Kourtney about an email and merit but I don't know exactly what was said. The other girl said 'Shhh' and that was the end of the conversation.

01/2014

1

SC002971

**From:** Reena Mathew <rmathew@santanderconsumerusa.com>
**To:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Cc:** Stephanie Elad <selad@santanderconsumerusa.com>
**Subject:** RE: Recap
**Date:** Fri, 19 Feb 2016 19:18:01 +0000
**Importance:** Normal

HI Yessica,

We did meet for over an hour and you asked for a recap of the meeting and these are the highlights I took away. My understanding of these meetings are to discuss my time study/progress and for me to recap the highlights and this is exactly what we discussed to sum up the meeting.

If I am needing to include all details we discussed, then I need to be clear on that (including questions/answers discussed/my point of view etc as that took up a significant portion).

Please advise.

Thanks,
Reena

**From:** Yessica Adriano
**Sent:** Friday, February 19, 2016 11:56 AM
**To:** Reena Mathew
**Cc:** Stephanie Elad
**Subject:** RE: Recap

Reena this summary is not what was requested or expected. We met for over an hour and this summary does not capture the main points of our discussion.  Specifically, we reviewed the time study and the Monisha investigation in detail.

The purpose of having you complete this assignment as part of your performance improvement plan is to ensure expectations and feedback are clear. The response below is not a good example of meeting the objective as it relates to this task.

Please review your notes again and add significantly more detail and submit to me no later than Monday, February 22 by 10 am.  Let me know if you have any questions.

Thank you,

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE    214.722.5667
MOBILE    214.215.5258
EMAIL    yadriano@santanderconsumerusa.com
WEB    www.santanderconsumerusa.com

SC001079

**From:** Reena Mathew
**Sent:** Wednesday, February 17, 2016 5:17 PM
**To:** Yessica Adriano
**Subject:** Recap

Hi Yessica,

Per our conversation, this is what was discussed:

**Attendance**—I've been giving 48 hour notice; continue to do so with appts etc. I let you know starting next week I will have my appt every 2 weeks.

**Time Study**—You asked a few questions regarding some of the information. Asked me to quantify how many DA's, specify which investigation and add details ie IM's, door knocks etc. Any trends that we see such as so many corrections from TA or anything else we might notice coming to us. This way we can see where time is being spent (too much/too little) and possibly if something needs to be taken away or given to another team member.

**Consulting**—We've been meeting prior to investigations and other issues that may arise to discuss game plan. Continue to do so as well as consult with other departments if need be. If there are any changes with deadlines etc, please communicate that.

Thanks,
Reena

# Reena Mathew, PHR
Santander Consumer USA Inc.
HR Business Partner

| | |
|---|---|
| PHONE | 214.292.2772 |
| MOBILE | 214.364.9136 |
| FAX | 214.630.0828 |
| EMAIL | rmathew@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |
| BENEFITS HOTLINE | 214.540.2010 |

SC001080

**From:** "Reena Mathew" <rmathew@santanderconsumerusa.com>
**To:** "reenasara@hotmail.com" <reenasara@hotmail.com>
**Subject:** Fwd: Recap
**Date:** Fri, 19 Feb 2016 23:54:08 +0000
**Importance:** Normal

---

Sent from my iPhone

Begin forwarded message:

**From:** Reena Mathew <rmathew@santanderconsumerusa.com>
**Date:** February 19, 2016 at 5:52:22 PM CST
**To:** Stephanie Elad <selad@santanderconsumerusa.com>
**Subject: Re: Recap**

Stephanie,

Thanks for the response. I have no trouble recalling what we discussed but just need to know in what detail you all would like for me to summarize.

Again, I sent high level take aways the first time around and didn't receive any feedback regarding details so that is what I did this time around as well. I would like to be successful as well but need clearer direction than what I'm receiving (esp since I seem to be receiving it after the fact). I think it's very one sided as there are unspoken expectations for me but when I ask for help or clarity, I get penalized for what I do as if I don't understand what's being asked of me.

Stephanie, I'm a UT Austin graduate and hold a Masters degree with my PHR so grasping concepts is not an issue for me.

As I've stated before, direction and expectations have been minimal and I get criticized for things I don't do when I have no or minimal knowledge of them. If I'm truly to be successful, it needs to be synergistic and Yessica and I have been consulting as needed and seem to be moving forward. It was disheartening then to be emailed the original email from this afternoon and take ten steps back. I am committed to my job but need to have faith in my management as well.

I have sent the revised recap and will include specific details of conversations going forward. I look forward to reading yours and Yessica's feedback.

Thanks,
Reena

Sent from my iPhone

On Feb 19, 2016, at 4:35 PM, Stephanie Elad <selad@santanderconsumerusa.com> wrote:

SC002937

Reena, I have to say that I had the same reaction as Yessica when reading your recap. It's not very detailed. I can't speak to last week because I wasn't present for that conversation, but since I was present for this week's conversation, I can say that this summary didn't meet what I expected. We had an in depth discussion around the Monisha investigation and both Yessica and I provided specific feedback, direction and coaching. It concerns me that you didn't include that in your recap. And, there were other issues that we discussed in depth as well.

As I have stated previously on several occasions, the purpose of the performance improvement plan (and process) is to help you get to a place where you are meeting expectations. You have stated numerous times that you know your job and that the issue is workload, and not skill set. However, this recap would indicate otherwise, as you are either not able to identify the key concepts and coaching opportunities that were provided to you during the discussion this past Wednesday, or are not able to communicate them effectively. Either way, this is a cause for concern.

I have to tell you that I'm at a bit of a loss at this point. You have been offered opportunities for development and you have not, to my knowledge, requested any assistance in this regard. Also, I noticed that you didn't take many notes during the meeting, which might have helped in terms of formulating your recap. Both Yessica and I are committed to helping you be successful, and we need your partnership.

The reason for asking you to provide a recap is to ensure that you are understanding the direction and feedback. This is an important exercise to ensure comprehension. If these were your only key take-aways, then there is a definite disconnect. And, it is not Yessica's job, or mine, to recap the meeting for you. Our job is to provide the feedback, yours is to digest it and act up on it.

I am happy to discuss further if you wish next week. However, please do not take this to mean that there is an extension to the deadline that Yessica set for Monday at 10:00am.

Thanks!
Stephanie

---

**From:** Reena Mathew
**Sent:** Friday, February 19, 2016 2:03 PM
**To:** Stephanie Elad
**Subject:** FW: Recap

Stephanie,

This is yet another example of poor direction/expectations where I'm asked to do something, I do it, and then it's wrong without proper clarification. If my Manger is wanting exact details, then she will need to make that very clear. I sent the same type of recap the first time (please see attached) and it was fine.

I am not a mind reader and if I'm not told exactly what a person is wanting until after the fact, that is unfair to me. This reminds me of the whole review process all over again and I refuse to go down that path for a second time.

Please help us clear this miscommunication up as it is affecting me time and time again and being pregnant, I cannot walk on egg shells wondering if what I'm doing is going to come back with a different set of expectations.

Thanks,
Reena

---

**From:** Yessica Adriano
**Sent:** Friday, February 19, 2016 11:56 AM
**To:** Reena Mathew

SC002938

Cc: Stephanie Piad
**Subject:** RE: Recap

Reena this summary is not what was requested or expected. We met for over an hour and this summary does not capture the main points of our discussion.  Specifically, we reviewed the time study and the Monisha investigation in detail.

The purpose of having you complete this assignment as part of your performance improvement plan is to ensure expectations and feedback are clear. The response below is not a good example of meeting the objective as it relates to this task.

Please review your notes again and add significantly more detail and submit to me no later than Monday, February 22 by 10 am.  Let me know if you have any questions.


Thank you,

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE    214.722.5667
MOBILE    214.215.5258
EMAIL    yadriano@santanderconsumerusa.com
WEB    www.santanderconsumerusa.com

---

**From:** Reena Mathew
**Sent:** Wednesday, February 17, 2016 5:17 PM
**To:** Yessica Adriano
**Subject:** Recap

Hi Yessica,

Per our conversation, this is what was discussed:

**Attendance**—I've been giving 48 hour notice; continue to do so with appts etc. I let you know starting next week I will have my appt every 2 weeks.

**Time Study**—You asked a few questions regarding some of the information. Asked me to quantify how many DA's, specify which investigation and add details ie IM's, door knocks etc. Any trends that we see such as so many corrections from TA or anything else we might notice coming to us. This way we can see where time is being spent (too much/too little) and possibly if something needs to be taken away or given to another team member.

**Consulting**—We've been meeting prior to investigations and other issues that may arise to discuss game plan. Continue to do so as well as consult with other departments if need be. If there are any changes with deadlines etc, please communicate that.

Thanks,
Reena

**Reena Mathew, PHR**
Santander Consumer USA Inc.
HR Business Partner

SC002939

PHONE   214.292.2772
MOBILE   214.364.9136
FAX   214.630.0828
EMAIL   rmathew@santanderconsumerusa.com
WEB   www.santanderconsumerusa.com
BENEFITS HOTLINE   214.540.2010

SC002940

**From:** "Reena Mathew" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=REENA MATHEW0CB>
**To:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>
**Cc:** "Stephanie Elad" <selad@santanderconsumerusa.com>
**Subject:** RE: Recap
**Date:** Mon, 22 Feb 2016 22:05:56 +0000
**Importance:** Normal

---

Sounds good—per our conversation, the only question I had was about the item in red.

Thanks,
Reena

---

**From:** Yessica Adriano
**Sent:** Monday, February 22, 2016 2:54 PM
**To:** Reena Mathew
**Cc:** Stephanie Elad
**Subject:** Recap

Reena,

Thank you for the revised recap. The second version is closer to what I was looking for. Please see my responses (in blue) below. I recommend that you over-communicate going forward, rather than try to be brief. A specific, exact recap is what is required.

Also, my understanding is that you received feedback from Stephen that your summary to him after your meeting was neither timely nor specific. I would expect you to extrapolate that the same is required for your recaps of our meetings.

To ensure clear understanding on your part of the direction and requirements being provided to you, here is a list of what is expected:

- Provide a complete and exact summary of the key points and key sub-points of the meeting, as well as clarification and summary of your understanding of these points.
- The summary must be provided within 48 hours of the meeting, unless I have approved otherwise, prior to the deadline.
- You will receive a response within 48 hours of submitting your summary to me.
- 48 hours refers to business days only (and does not include holidays, weekend days, vacation days, etc.)
- Failure to demonstrate the capability or desire to complete this task will be taken into account regarding your overall performance and success on your improvement plan.
- Feel free to request feedback prior to submission, but it is my expectation that you are able to execute this assigned task independently throughout your improvement period.

As you will see, I have copied and pasted your second draft of the summary below. I have deleted the rest of the email chain, for simplicity purposes.

**From:** Reena Mathew
**Sent:** Wednesday, February 17, 2016 5:17 PM
**To:** Yessica Adriano
**Subject:** Recap

Hi Yessica,

Per our conversation, this is what was discussed:

**Attendance**—I've been giving 48 hour notice; continue to do so with appts etc. I let you know starting next week I will have my appt every 2 weeks.

Agreed.

**Time Study**—You asked a few questions regarding some of the information on the time study. Specifically you asked for names of investigations, summary recap (what that entailed doing, I mentioned there are interruptions in between and that included typing notes), quantifying DA's so we know how many are being received (add a number so we know what's being received/completed per week). Also, add details ie IM's, door knocks etc. Any trends that we see such as so many corrections from TA or anything else we might notice coming to us that may not be ours to resolve. This way we can see where time is being spent (too much/too little) and possibly if something needs to be taken away or given to another team member/department.

Yes we did discuss areas in the time study and asked for clarity and specifics.

Also, in our discussion you mentioned that the time study was more time consuming than beneficial. The purpose of this assignment is  to help you be more efficient with your time, which involves first understanding where time is spent, and then determining areas for improvement. As you stated that you do not see value to improve your performance by utilizing this tool you may cease from continuing. My response: I see value if you all would like me to do this, however, it is very time consuming and it is hard to quantify every detail since there is usually more than one thing going on at one time. I'm good with giving a count of DA's/Investigations per week per our conversation this afternoon. However, you will still be held accountable for your decisions regarding where you spend your time and ensuring your workload is completed. I will only ask that you send me on a weekly basis the number of DA's handled and investigations led. This is due by 5:00pm each Friday.

**Consulting**—We've been meeting prior to investigations and other issues that may arise to discuss game plan. Continue to do so as well as consult with other departments if need be. We spoke about the Monisha investigation and talked about how the business perceives us and if there are any changes (to deadlines set) to communicate that. We (myself and the business) had to meet with Monisha one more time after the three of us met Friday afternoon and we had to modify the summary. If that occurs, communicate to mgmt. so if they were expecting it a little earlier, everyone would be on the same page re: status. Also update summary accordingly after we speak about it (ie wife's email had to be added to unconfirmed allegations). I also mentioned that if there are things expected of me, it needs to be clear. I mentioned I read my review and there was information regarding a DA report that I had no knowledge of and that it said I was entering less DA's than others. I said that is unfair to me to be measured on something like that without knowing that's an expectation. You all stated that's something we all need to help with and I said I would be more than willing to assist but sometimes the workload is physically impossible for one person. Stephanie mentioned HR Generalist was out for some time and there were DA's left on the desk when they returned and bonus has been missed in the past. I mentioned if the Generalist is out for a week, we may need backup because that is a lot for one person to cover. I asked when is it ok to ask Manager for help and she said I could ask but I would need to be able to quantify what I was doing.
I also stated that it's hard to quantify what I do because it's always more than one task at a time but I would do what I was asked of.

We have met prior to each investigation and decided upon action plans, this has worked out well, let's continue.

Your summary above briefly mentions the Monisha incident, but we want to be sure the message was clear.  On Friday, February 12th the three of us (Stephanie, you and myself) met to discuss the Monisha case.  During this discussion, Stephanie specifically coached you on how to compose the summary and term approval request and which information to exclude (John's wife email).  In addition, Stephanie requested this task be completed first thing on Monday morning, yet at noon on Monday she emailed me asking for the information.  When this was sent to her it still included the information she asked to be removed.  As discussed, it is important that we follow up in a timely manner and if a delay is unavoidable, please be proactive in the communication of that as well as ensuring our work is precise. Also, Stephanie specifically told you that this delay on your part, led to the term being delayed by one day, which impacts

SC004027

the business and their perception of HR resolving matters in a timely fashion. Also, it allowed this employee to work for us, and be paid, an additional day.

Finally we discussed the administrative tasks of the HR inbox and how the expectation is we all work together through that, it is understood the HR Generalist will primarily handle these responsibilities, however we need to assist as well.


Thanks,
Reena

## Reena Mathew, PHR
Santander Consumer USA Inc.
HR Business Partner

| | |
|---|---|
| PHONE | 214.292.2772 |
| MOBILE | 214.364.9136 |
| FAX | 214.630.0828 |
| EMAIL | rmathew@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |
| BENEFITS HOTLINE | 214.540.2010 |

SC004028

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Catessa Malone <cnmalone@santanderconsumerusa.com>
**Subject:** RE: Reena 90 Day Action Plan
**Date:** Wed, 24 Feb 2016 15:54:36 +0000
**Importance:** Normal

---

Yes please, that way if they have any revisions I can incorporate.

Thanks

---

**From:** Catessa Malone
**Sent:** Wednesday, February 24, 2016 9:53 AM
**To:** Yessica Adriano
**Subject:** RE: Reena 90 Day Action Plan

Would you like for our outside counsel to review this?

---

**From:** Yessica Adriano
**Sent:** Tuesday, February 23, 2016 6:27 PM
**To:** Catessa Malone
**Subject:** Reena 90 Day Action Plan

Catessa,

Attached is Reena's 90 day action plan, at the end of the document I have added a formal 30 day review that highlights the points that I will be discussing with her this Friday, February 26 at 2 pm. I will be also providing a hard copy of this to her.

May you please have this document reviewed and any feedback needed sent back to me no later than noon on Friday.

Thank you,

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE    214.722.5667
MOBILE    214.215.5258
EMAIL    yadriano@santanderconsumerusa.com
WEB    www.santanderconsumerusa.com

SC006415

**From:** Holly Hanes <hhanes@santanderconsumerusa.com>
**To:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Subject:** RE: Reena 90 Day Action Plan
**Date:** Thu, 25 Feb 2016 16:40:24 +0000
**Importance:** Normal

---

Great.  I will be scheduling it for 2pm.  I'll send an invite shortly.

Thank you,

**Holly Hanes**

Santander Consumer USA Inc.
HR Operational Analyst III

| | |
|---|---|
| PHONE | 972.761.1039 |
| FAX | 972.759.5330 |
| EMAIL | hhanes@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |

**From:** Yessica Adriano
**Sent:** Wednesday, February 24, 2016 2:59 PM
**To:** Holly Hanes
**Cc:** Catessa Malone
**Subject:** RE: Reena 90 Day Action Plan

Anytime between 1-3 pm is good.

Thanks

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

| | |
|---|---|
| PHONE | 214.722.5667 |
| MOBILE | 214.215.5258 |
| EMAIL | yadriano@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |

**From:** Holly Hanes
**Sent:** Wednesday, February 24, 2016 2:39 PM
**To:** Yessica Adriano
**Cc:** Catessa Malone
**Subject:** RE: Reena 90 Day Action Plan

Hi Yessica,

Catessa is handing over the responsibilities related to Associate legal dealings back to me.  What is your availability tomorrow afternoon to discuss the below info with the attorney?

Thank you,

SC009172

**Holly Hanes**
Santander Consumer USA Inc.
HR Operational Analyst III

PHONE    972.761.1039
FAX    972.759.5330
EMAIL    hhanes@santanderconsumerusa.com
WEB    www.santanderconsumerusa.com

---

**From:** Yessica Adriano
**Sent:** Tuesday, February 23, 2016 6:27 PM
**To:** Catessa Malone
**Subject:** Reena 90 Day Action Plan

Catessa,

Attached is Reena's 90 day action plan, at the end of the document I have added a formal 30 day review that highlights the points that I will be discussing with her this Friday, February 26 at 2 pm.  I will be also providing a hard copy of this to her.

May you please have this document reviewed and any feedback needed sent back to me no later than noon on Friday.

Thank you,

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE    214.722.5667
MOBILE    214.215.5258
EMAIL    yadriano@santanderconsumerusa.com
WEB    www.santanderconsumerusa.com

--------------------

This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. The information contained in this e-mail is confidential and intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this message in error or there are any problems please notify the originator immediately.

The unauthorized use, disclosure, copying or alteration of this message is strictly forbidden. This mail and any attachments have been scanned for viruses prior to leaving sender's company network. Neither the sender nor the sender's company will be liable for direct, special, indirect or consequential damages arising from alteration of the contents of this message by a third party or as a result of any virus being passed on.

Sender's company accepts no liability for the content of this email or its attachments, or for the consequences of any actions taken on the basis of the information provided, unless that information is subsequently confirmed in writing.

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Stephanie Elad <selad@santanderconsumerusa.com>
**Subject:** Fwd: Revised
**Date:** Fri, 26 Feb 2016 13:10:34 +0000
**Importance:** Normal

---

FYI

Begin forwarded message:

**From:** Holly Hanes <hhanes@santanderconsumerusa.com>
**Date:** February 26, 2016 at 7:08:10 AM CST
**To:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Subject: RE: Revised**

Thank you for the information!

I will forward it on to the attorneys.

Yes, I'm sure it will be fine to include Stephanie.  I will add her to the invite.

Thank you,

**Holly Hanes**
Santander Consumer USA Inc.
HR Operational Analyst III

PHONE      972.761.1039
FAX        972.759.5330
EMAIL      hhanes@santanderconsumerusa.com
WEB        www.santanderconsumerusa.com

---

**From:** Yessica Adriano
**Sent:** Friday, February 26, 2016 7:06 AM
**To:** Holly Hanes
**Subject:** Revised

Good morning Holly,

I added another example to highlight the lack of detail in the work provided (time study).

There is also another example that occurred when she met with Stephen Schaffer,  where she didnt meet a deadline and did not fulfill the task as requested. Although the example proves our point, it was during a time she was bringing forth a concern, so it might not be a good idea for us to include that.

Also, Holly is it possible for Stephanie to be part of our meetings with the legal group moving forward,  she has been a part of my recap discussions with Reena and  can provide further insight.

SC006503

Thanks

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE    214.722.5667
MOBILE   214.215.5258
EMAIL    yadriano@santanderconsumerusa.com
WEB      www.santanderconsumerusa.com

SC006504



**30 Day Review**
**February 26, 2016**

<u>*Follow up Meetings Conducted*</u>
*Friday, January 29, 2016*
*Wednesday, February 17, 2016*

**Attendance**

You have been consistent in providing an appropriate notice for requested time off and have worked additional hours to offset the time you have left early/came in late. There have been no issues with attendance, please continue with the same course of notifications and arranging your schedule as needed in order to complete work as required.

**Time Management and Effective Work Habits**

You completed two weeks' worth of the Time Study, we reviewed these documents and asked for more specifics in certain areas. We explained the purpose of this assignment was to help you be more efficient with your time through understanding where time is spent. However, upon listening to your feedback and thoughts of how you felt this exercise consumed too much time and was not beneficial, we provided you the option to cease from continuing. As previously discussed, you will still be held accountable for your decisions regarding where your time is spent and ensuring work load is complete. Instead, we have asked that you provide on a weekly basis (every Friday by 5 pm) a count of the number of DA's handles and investigations led.

In addition, we have discussed how the administrative tasks (HR inbox) are a team effort, although these are primarily handled by our HR Generalist, we all need to assist.

Time Management and Effective Work Habits continue to be an opportunity, here are a few examples:

- The summary recap that you provided on Wednesday, February 17 was sent back due to the lack of detail. When providing a summary of our follow up meetings please ensure you are thorough and provide all key points and sub points that are discussed as well as a summary of your understanding. This is done to ensure feedback we deliver is clear and is mutually understood. These will continue to be due within 48 business hours of our meeting, unless otherwise advised. In addition, feedback was provided in areas of the Time Study for lacking necessary details to justify the time spent (DA administration, amount of time spent on investigation). As mentioned, it is important that you are thorough and provide sufficient detail with any task submitted.
- We discussed and an example where your work/response was not provided on a timely manner. Stephanie had requested a term request to include the investigation summary, this was not turned by the time allotted. We explained the importance of meeting deadlines, however if an issue arises to where this cannot be met, it is essential you proactively communicate the delay with a new ETA.

**Consulting**

We met and reviewed the investigation process in depth, I provided examples of expectations, and reviewed required documentation. ==During these past 30 days, you have lead four investigations each of which we have discussed and agreed upon course of actions to take- this has worked out well, and we will continue this strategy.==

*SC Action Plan*

*Revised 01/2016*

SC006924



We did address being precise in the summary's submitted after discussions.  We reviewed the case of <mark>Monisha</mark>, where our HR Director coached you on the approach to take and what information to eliminate (Johns wife's email).  This <mark>summary was submitted late</mark> and it still included the information that she had advised to <mark>remove</mark>. To avoid this in the future, we ask that you take notes during coaching sessions to capture important points and actions.

**Note**: I reminded you during our two follow up sessions of the resources available for you (ie: shadowing other HRBPs, additional training, etc.) as aligned in our action plan, and you have declined these options. However, we are invested in ensuring you have the feedback, the coaching, or tools to help you improve.  If you have suggestions as to experiences, tools, or development activities that would assist you, please make us aware of these.  Obviously, there are some limitations from a financial perspective and time requirements, but we are open to considering any proposal you may have.

Attached please find the summaries of our two follow up meetings for additional specifics and detail around the feedback and coaching provided to you regarding your performance.

We continue to be fully committed to your success against this action plan, please review and let us know if you have any questions.

**Associate Signature**

**Discussion Date**

**Manager Signature**

*Stephanie Elad*
**Director Signature**

✱ Acknowledgement of receipt only

*SC Action Plan*

*Revised 01/2016*

SC006925



**Follow Up Emails from January 29, 2016 Discussion**

**From:** Yessica Adriano
**Sent:** Tuesday, February 02, 2016 4:49 PM
**To:** Reena Mathew
**Subject:** RE: Summary of Meeting

Hello Reena,

Thank you for providing the summary.  I have added my additional notes in blue.

We will have our next follow up meeting on Friday, February 12th. If you have any questions on the action items before then, please do not hesitate to ask.

Thanks,
Yessica


**From:** Reena Mathew
**Sent:** Monday, February 01, 2016 12:24 PM
**To:** Yessica Adriano
**Subject:** Summary of Meeting

Hi Yessica,

Per our conversation on Friday, 1/29/16, here is what we discussed:

**Attendance**—I've been giving 48 hour notice as well as placing time off in calendar; no issues-continue to do so.

Agreed.

**Time Management**—Work study every 30 minutes due every Friday. We will meet every other Friday (pay day Fridays) to discuss/debrief progress etc. Asked if I would like to attend any type of classes to assist; said if I came across anything would let Manager know.

Agreed. In addition, please advise of any courses or TM departments you would like to work with no later than 02/05, as highlighted in the action plan.

Whenever a deadline is assigned by upper management or anyone, it is important to respond timely. If you are unable to complete within the time assessed, then it is necessary to provide an update or explanation of what occurred with a new ETA.

**Consulting**—No issues at this time; would like for me to take over the investigation for Ireshia Brown—in charge of summaries, aftermath; you would like for me to respond timely to all issues/requests etc and let you know if I have any questions. Start fresh with January.

Yes, you are taking lead on the Ireshia Brown investigation from beginning to end. Please brief me with your plan of action and we will review your summaries once completed to ensure we are on the same page.

Just as a side note, we also discussed my perspective on things and how PIP had been handled in my case.

*SC Action Plan*

*Revised 01/2016*

SC006926



We revisited your viewpoint on the matter and discussed some discrepancies you felt were in the timeline, and I shared my examples and thoughts on it. Ultimately this stands and we agreed disagree, our focus will be to work towards completing the action plan successfully.

Let me know if you need anything else.

Thanks,

Reena


**Reena Mathew, PHR**
Santander Consumer USA Inc.
HR Business Partner

PHONE    214.292.2772
MOBILE    214.364.9136
FAX    214.630.0828
EMAIL    rmathew@santanderconsumerusa.com
WEB    www.santanderconsumerusa.com
BENEFITS HOTLINE    214.540.2010

*SC Action Plan*

*Revised 01/2016*



## Follow Up Emails from February 17, 2016 Discussion

**From:** Yessica Adriano
**Sent:** Monday, February 22, 2016 2:54 PM
**To:** Reena Mathew
**Cc:** Stephanie Elad
**Subject:** Recap

Reena,

Thank you for the revised recap. The second version is closer to what I was looking for. Please see my responses (in blue) below. I recommend that you over-communicate going forward, rather than try to be brief. A specific, exact recap is what is required.

Also, my understanding is that you received feedback from Stephen that your summary to him after your meeting was neither timely nor specific. I would expect you to extrapolate that the same is required for your recaps of our meetings.

To ensure clear understanding on your part of the direction and requirements being provided to you, here is a list of what is expected:

- Provide a complete and exact summary of the key points and key sub-points of the meeting, as well as clarification and summary of your understanding of these points.
- The summary must be provided within 48 hours of the meeting, unless I have approved otherwise, prior to the deadline.
- You will receive a response within 48 hours of submitting your summary to me.
- 48 hours refers to business days only (and does not include holidays, weekend days, vacation days, etc.)
- Failure to demonstrate the capability or desire to complete this task will be taken into account regarding your overall performance and success on your improvement plan.
- Feel free to request feedback prior to submission, but it is my expectation that you are able to execute this assigned task independently throughout your improvement period.

As you will see, I have copied and pasted your second draft of the summary below. I have deleted the rest of the email chain, for simplicity purposes.

**From:** Reena Mathew
**Sent:** Wednesday, February 17, 2016 5:17 PM
**To:** Yessica Adriano
**Subject:** Recap

Hi Yessica,

Per our conversation, this is what was discussed:

**Attendance**—I've been giving 48 hour notice; continue to do so with appts etc. I let you know starting next week I will have my appt every 2 weeks.

Agreed.

**Time Study**—You asked a few questions regarding some of the information on the time study. Specifically you asked for names of investigations, summary recap (what that entailed doing, I mentioned there are interruptions in between and that included typing notes), quantifying DA's so we know how many are being received (add a number so we know what's being received/completed per week). Also, add details ie IM's, door

*SC Action Plan*

*Revised 01/2016*

SC006928



knocks etc. Any trends that we see such as so many corrections from TA or anything else we might notice coming to us that may not be ours to resolve. This way we can see where time is being spent (too much/too little) and possibly if something needs to be taken away or given to another team member/department.

Yes we did discuss areas in the time study and asked for clarity and specifics.

Also, in our discussion you mentioned that the time study was more time consuming than beneficial. The purpose of this assignment is to help you be more efficient with your time, which involves first understanding where time is spent, and then determining areas for improvement. As you stated that you do not see value to improve your performance by utilizing this tool you may cease from continuing. However, you will still be held accountable for your decisions regarding where you spend your time and ensuring your workload is completed. I will only ask that you send me on a weekly basis the number of DA's handled and investigations led. This is due by 5:00pm each Friday.

**Consulting—**We've been meeting prior to investigations and other issues that may arise to discuss game plan. Continue to do so as well as consult with other departments if need be. We spoke about the Monisha investigation and talked about how the business perceives us and if there are any changes (to deadlines set) to communicate that. We (myself and the business) had to meet with Monisha one more time after the three of us met Friday afternoon and we had to modify the summary. If that occurs, communicate to mgmt. so if they were expecting it a little earlier, everyone would be on the same page re: status. Also update summary accordingly after we speak about it (ie wife's email had to be added to unconfirmed allegations). I also mentioned that if there are things expected of me, it needs to be clear. I mentioned if there are things expected of me, it needs to be clear. I mentioned I read my review and there was information regarding a DA report that I had no knowledge of and that it said I was entering less DA's than others. I said that is unfair to me to be measured on something like that without knowing that's an expectation. You all stated that's something we all need to help with and I said I would be more than willing to assist but sometimes the workload is physically impossible for one person. Stephanie mentioned HR Generalist was out for some time and there were DA's left on the desk when they returned and bonus has been missed in the past. I mentioned if the Generalist is out for a week, we may need backup because that is a lot for one person to cover. I asked when is it ok to ask Manager for help and she said I could ask but I would need to be able to quantify what I was doing.

I also stated that it's hard to quantify what I do because it's always more than one task at a time but I would do what I was asked of. We have met prior to each investigation and decided upon action plans, this has worked out well, let's continue.

Your summary above briefly mentions the Monisha incident, but we want to be sure the message was clear.  On Friday, February 12th the three of us (Stephanie, you and myself) met to discuss the Monisha case.  During this discussion, Stephanie specifically coached you on how to compose the summary and term approval request and which information to exclude (John's wife email).  In addition, Stephanie requested this task be completed first thing on Monday morning, yet at noon on Monday she emailed me asking for the information.  When this was sent to her it still included the information she asked to be removed.  As discussed, it is important that we follow up in a timely manner and if a delay is unavoidable, please be proactive in the communication of that as well as ensuring our work is precise. Also, Stephanie specifically told you that this delay on your part, led to the term being delayed by one day, which impacts the business and their perception of HR resolving matters in a timely fashion. Also, it allowed this employee to work for us, and be paid, an additional day.

Finally we discussed the administrative tasks of the HR inbox and how the expectation is we all work together through that, it is understood the HR Generalist will primarily handle these responsibilities, however we need to assist as well.

Thanks, Reena



**From:** Yessica Adriano
**Sent:** Friday, February 19, 2016 4:20 PM
**To:** Reena Mathew
**Cc:** Stephanie Elad
**Subject:** RE: Recap

Hi Reena,

Thank you for the response and the opportunity to clarify. I am looking for a more in depth recap of key take aways and specific directive.  Again, this is to ensure understanding of the expectations on your part.  As it relates to our discussion on Wednesday, I would have expected a recap of the coaching that both Stephanie and I provided regarding the timeliness and following instruction as to the Monisha investigation. As I'm sure you recall, Stephanie and I both provided feedback to you on that situation. Specifically, please recap the exact feedback that I provided regarding this investigation as well as the statements that Stephanie made in regards to the delay.  I'm not looking for a recap of the investigation, but rather the specific discussion the three of us had.

Also, although you did provide a statement in your recap about my request to quantify how many DAs are completed each week we also discussed listing the number of investigations, ensuring you are assisting with administrative tasks, and your process for intakes when it comes to DAs. There are more items that we covered other than what I have listed in this paragraph, however I am looking to you to provide this information and then I will add feedback and clarify as needed.

One of the items on the Performance Improvement Plan addressed requested work being incomplete.  A summary of the meeting does not need to include every single detail, however it should include key points and takeaways. I do not think this recap met that expectation.  I hope this answers your question, please let me know if you need further clarification

Thank you,
Yessica

**From:** Reena Mathew
**Sent:** Friday, February 19, 2016 1:18 PM
**To:** Yessica Adriano
**Cc:** Stephanie Elad
**Subject:** RE: Recap

HI Yessica,

We did meet for over an hour and you asked for a recap of the meeting and these are the highlights I took away. My understanding of these meetings are to discuss my time study/progress and for me to recap the highlights and this is exactly what we discussed to sum up the meeting.

If I am needing to include all details we discussed, then I need to be clear on that (including questions/answers discussed/my point of view etc as that took up a significant portion).

Please advise.

Thanks,

R

SC006930



**From:** Yessica Adriano
**Sent:** Friday, February 19, 2016 11:56 AM
**To:** Reena Mathew
**Cc:** Stephanie Elad
**Subject:** RE: Recap

Reena this summary is not what was requested or expected. We met for over an hour and this summary does not capture the main points of our discussion.  Specifically, we reviewed the time study and the Monisha investigation in detail.

The purpose of having you complete this assignment as part of your performance improvement plan is to ensure expectations and feedback are clear. The response below is not a good example of meeting the objective as it relates to this task.

Please review your notes again and add significantly more detail and submit to me no later than Monday, February 22 by 10 am.  Let me know if you have any questions.

Thank you,

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE    214.722.5667
MOBILE   214.215.5258
EMAIL    yadriano@santanderconsumerusa.com
WEB      www.santanderconsumerusa.com


**From:** Reena Mathew
**Sent:** Wednesday, February 17, 2016 5:17 PM
**To:** Yessica Adriano
**Subject:** Recap

Hi Yessica,

Per our conversation, this is what was discussed:

**Attendance**—I've been giving 48 hour notice; continue to do so with appts etc. I let you know starting next week I will have my appt every 2 weeks.

**Time Study**—You asked a few questions regarding some of the information. Asked me to quantify how many DA's, specify which investigation and add details ie IM's, door knocks etc. Any trends that we see such as so many corrections from TA or anything else we might notice coming to us. This way we can see where time is being spent (too much/too little) and possibly if something needs to be taken away or given to another team member.

**Consulting**—We've been meeting prior to investigations and other issues that may arise to discuss game plan. Continue to do so as well as consult with other departments if need be. If there are any changes with deadlines etc, please communicate that.

Thanks,

*SC Action Plan*

*Revised 01/2016*



Reena

## Reena Mathew, PHR

Santander Consumer USA Inc.
HR Business Partner

| | |
|---|---|
| PHONE | 214.292.2772 |
| MOBILE | 214.364.9136 |
| FAX | 214.630.0828 |
| EMAIL | rmathew@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |
| BENEFITS HOTLINE | 214.540.2010 |

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Sabrina Boyd <SBOYD@santanderconsumerusa.com>
**Subject:** FW: Attendance Recognition Program
**Date:** Wed, 16 Mar 2016 01:46:43 +0000
**Importance:** Normal

---

Sabrina,

Stephanie asked me yesterday to ask you if you would be able to pull from kronos or any other program the amount of people whom would have had perfect attendance for Q4, Kutiper was asking for these numbers, please see dialogue below.

I know Reena had reached out to HRIS for this, so I am unsure if we can pull this or it has to come from them. In case you can, please make this a priority tomorrow morning as she needs to get this to Tony pretty quick at this point.

Thanks

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE   214.722.5667
MOBILE  214.215.5258
EMAIL   yadriano@santanderconsumerusa.com
WEB     www.santanderconsumerusa.com

---

**From:** Stephanie Elad
**Sent:** Friday, March 11, 2016 4:59 PM
**To:** Reena Mathew
**Cc:** Yessica Adriano
**Subject:** RE: Attendance Recognition Program

Please have them sent to Yessica and me. I would like to review before sending to Tony.

---

**From:** Reena Mathew
**Sent:** Friday, March 11, 2016 4:49 PM
**To:** Stephanie Elad
**Cc:** Yessica Adriano
**Subject:** RE: Attendance Recognition Program

Ok, np. I will check with HRIS and ask them to email the numbers directly to you and Tony.

My guess is they should be able to do it by next week.

Thanks,
Reena

App.226                SC006781

**From:** Stephanie Elad
**Sent:** Friday, March 11, 2016 4:47 PM
**To:** Reena Mathew
**Cc:** Yessica Adriano
**Subject:** RE: Attendance Recognition Program

Is there any way we can get this done sooner than that? I'd like to get back to Tony next week if possible.

---

**From:** Reena Mathew
**Sent:** Friday, March 11, 2016 4:28 PM
**To:** Stephanie Elad
**Cc:** Yessica Adriano
**Subject:** RE: Attendance Recognition Program

HI Stephanie,

I will be OOO next week but will have those numbers when I return if that's ok.

I am also partnering with HRIS to assist but wanted to give you a status update before I left.

Thanks,
Reena

---

**From:** Reena Mathew
**Sent:** Thursday, March 10, 2016 9:18 AM
**To:** Anthony Kutiper; Stephanie Elad
**Subject:** RE: Attendance Recognition Program

Good Morning Tony/Stephanie,

I will get that count for you.

Thanks,
Reena

---

**From:** Anthony Kutiper
**Sent:** Thursday, March 10, 2016 8:25 AM
**To:** Stephanie Elad; Reena Mathew
**Subject:** RE: Attendance Recognition Program

I am fine with it. If we could get a count of how many people would have qualified in Q4 last year that would be great.

---

**From:** Stephanie Elad
**Sent:** Wednesday, March 09, 2016 3:27 PM
**To:** Anthony Kutiper
**Subject:** Attendance Recognition Program

Hi Tony – Reena Mathew (on my team at LEW) put this together at Brad's suggestion. Troy was on board with rolling it out, but I wanted to run it by you as well. Other than a concern about how we handle FMLA Associates (which we will have to sort out), I think we're good to go.

Please review and advise. If you are in agreement that we should move forward, I will discuss on an upcoming team call.

SC006782

Thanks!

**Stephanie Elad,** SPHR
Santander Consumer USA Inc.
Director, Human Resources

PHONE    214.237.3713
MOBILE   214.695.1278
EMAIL    selad@santanderconsumerusa.com
WEB      www.santanderconsumerusa.com

SC006783

**From:** "Reena Mathew" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=REENA MATHEW0CB>

**To:** "Stephanie Elad" <selad@santanderconsumerusa.com>

**Cc:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>

**Subject:** RE: Attendance Recognition Program

**Date:** Fri, 11 Mar 2016 23:00:46 +0000

**Importance:** Normal

---

Ok, will do…

---

**From:** Stephanie Elad
**Sent:** Friday, March 11, 2016 4:59 PM
**To:** Reena Mathew
**Cc:** Yessica Adriano
**Subject:** RE: Attendance Recognition Program

Please have them sent to Yessica and me. I would like to review before sending to Tony.

---

**From:** Reena Mathew
**Sent:** Friday, March 11, 2016 4:49 PM
**To:** Stephanie Elad
**Cc:** Yessica Adriano
**Subject:** RE: Attendance Recognition Program

Ok, np. I will check with HRIS and ask them to email the numbers directly to you and Tony.

My guess is they should be able to do it by next week.

Thanks,
Reena

---

**From:** Stephanie Elad
**Sent:** Friday, March 11, 2016 4:47 PM
**To:** Reena Mathew
**Cc:** Yessica Adriano
**Subject:** RE: Attendance Recognition Program

Is there any way we can get this done sooner than that? I'd like to get back to Tony next week if possible.

---

**From:** Reena Mathew
**Sent:** Friday, March 11, 2016 4:28 PM
**To:** Stephanie Elad
**Cc:** Yessica Adriano
**Subject:** RE: Attendance Recognition Program

HI Stephanie,

I will be OOO next week but will have those numbers when I return if that's ok.

SC002215

I am also partnering with HRIS to assist but wanted to give you a status update before then.

Thanks,
Reena

---

**From:** Reena Mathew
**Sent:** Thursday, March 10, 2016 9:18 AM
**To:** Anthony Kutiper; Stephanie Elad
**Subject:** RE: Attendance Recognition Program

Good Morning Tony/Stephanie,

I will get that count for you.

Thanks,
Reena

---

**From:** Anthony Kutiper
**Sent:** Thursday, March 10, 2016 8:25 AM
**To:** Stephanie Elad; Reena Mathew
**Subject:** RE: Attendance Recognition Program

I am fine with it.  If we could get a count of how many people would have qualified in Q4 last year that would be great.

---

**From:** Stephanie Elad
**Sent:** Wednesday, March 09, 2016 3:27 PM
**To:** Anthony Kutiper
**Subject:** Attendance Recognition Program

Hi Tony – Reena Mathew (on my team at LEW) put this together at Brad's suggestion. Troy was on board with rolling it out, but I wanted to run it by you as well. Other than a concern about how we handle FMLA Associates (which we will have to sort out), I think we're good to go.

Please review and advise. If you are in agreement that we should move forward, I will discuss on an upcoming team call.

Thanks!

**Stephanie Elad,** SPHR
Santander Consumer USA Inc.
Director, Human Resources

PHONE     214.237.3713
MOBILE    214.695.1278
EMAIL     selad@santanderconsumerusa.com
WEB       www.santanderconsumerusa.com

SC002216

**From:** "Reena Mathew" <rmathew@santanderconsumerusa.com>
**To:** "Paula Blayney" <pblayney@santanderconsumerusa.com>, "Maria Cruz"
<MACRUZ@santanderconsumerusa.com>, "Nelda Flores"
<NFLORES@santanderconsumerusa.com>
**Cc:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>
**Subject:** Re: Attendance Report
**Date:** Wed, 16 Mar 2016 00:51:31 +0000
**Importance:** Normal

Hi Ladies,

Have you had a chance to review the following request?

Thanks in advance...it's appreciated!

Reena

Sent from my iPhone

On Mar 11, 2016, at 5:07 PM, Reena Mathew <rmathew@santanderconsumerusa.com> wrote:

Hi ladies,

I need your assistance please!

I will be OOO and PB, not sure if you remember speaking about the perfect attendance proposal, but Tony Kutiper would like to see numbers for last quarter.

This would be perfect attendance for all Operational associates tied to the attendance policy for Q4/2015.

The criteria would be:

*Associates who have only taken pre-approved time off such as Vacation, Floating Holiday, Personal, FMLA/LOA.*

*If you could do one report with FMLA (consecutive or intermittent)/LOA and one without, I think that would be helpful too!*

Can you please run the report and send to Stephanie Elad/Yessica Adriano sometime next week as Tony would like to review asap?

Thanks so much and let me know if you all need any additional information.

Reena

**Reena Mathew, PHR**
Santander Consumer USA Inc.
HR Business Partner

PHONE    214.292.2772
MOBILE   214.364.9136

SC002027

FAX     214.890.8828
EMAIL   rmathew@santanderconsumerusa.com
WEB     www.santanderconsumerusa.com
BENEFITS HOTLINE   214.540.2010

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Stephanie Elad <selad@santanderconsumerusa.com>
**Subject:** RE: Attendance Report
**Date:** Thu, 17 Mar 2016 19:58:34 +0000
**Importance:** Normal
**Inline-Images:** image001.jpg

---

<mark>I know, this whole thing has become a nightmare.</mark>

**From:** Stephanie Elad
**Sent:** Thursday, March 17, 2016 1:44 PM
**To:** Yessica Adriano
**Subject:** FW: Attendance Report

<mark>This should not be this complicated. Sheesh!</mark>

**From:** Sabrina Boyd
**Sent:** Thursday, March 17, 2016 1:20 PM
**To:** Paula Blayney; Yessica Adriano; Maria Cruz; Nelda Flores
**Cc:** Stephanie Elad; Reena Mathew
**Subject:** RE: Attendance Report

Hi Paula,

Below is what we were able to pull as a list of cost centers under Tony.  We had to pull the Employee Detail Report from his Supv Org, transfer to Excel, filter, and screen shoot the list of cost centers from the cost center column.  Do you all have an easier way of pulling this information for future use?

SC006575

 Clear Filter From "Cost Centers"

Filter by Color

Text Filters

Search

- ☑ (Select All)
- ☑ 024004 SC Office of Consumer Practices
- ☑ 036002 Account Services Unit ASU
- ☑ 036003 Insurance
- ☑ 036004 Titles
- ☑ 036005 Bankruptcy
- ☑ 036202 CC Account Services Unit
- ☑ 036203 CC Insurance
- ☑ 036204 CC Titles
- ☑ 036205 CC Bankruptcy
- ☑ 038000 Specialized Services
- ☑ 046000 Customer Service Operations
- ☑ 046001 Customer Service
- ☑ 046003 OSP Vendor Management
- ☑ 046201 CC Customer Service Support
- ☑ 047000 Recovery Operations
- ☑ 047001 Reinstatements
- ☑ 047002 Vendor Oversight
- ☑ 047003 Collateral Recovery
- ☑ 047004 Non Collateral Deficiency
- ☑ 047201 CC Reinstatements
- ☑ 047202 CC Vdr Oversight
- ☑ 047203 CC Coll Recv
- ☑ 047204 CC Non Coll Recv
- ☑ 047301 Unsecured Credit Card
- ☑ 049000 Collections Operations
- ☑ 049001 Early Stage
- ☑ 049002 Late Stage
- ☑ 049201 CC Early Stage
- ☑ 049202 CC Late Stage
- ☑ 050001 Impounds
- ☑ 050201 CC Impounds

- ☑ 050203 CC Asset Remarketing
- ☑ 054000 Funding Operations
- ☑ 054001 Core Funding
- ☑ 054003 Core Call Center
- ☑ 054004 CarMax
- ☑ 054005 Funding Direct
- ☑ 054008 Funding Support
- ☑ 054011 Consumer Fraud Prevention
- ☑ 054201 CC Funding
- ☑ 054203 CC Call Center
- ☑ 054211 CC Consumer Fraud Prevention
- ☑ 054500 NMAC
- ☑ 056001 RL Orig Operations
- ☑ 056002 RL Sales

Please add the following cost centers to this list:

      024003 – Replevin
      031001 – Quality Control
      031008 – CBR
      031009 – OOP (SC Office of Consumer Practices)
      031209 -- OOP (SC Office of Consumer Practices)


Thank you,

*Sabrina*


**Sabrina Boyd**
Santander Consumer USA Inc.
HR Generalist

**PHONE**    214.261.1619
**MOBILE**  469.834.6208
**EMAIL**    sboyd@santanderconsumerusa.com
**WEB**      www.santanderconsumerusa.com

---

**From:** Paula Blayney
**Sent:** Thursday, March 17, 2016 12:31 PM
**To:** Sabrina Boyd; Yessica Adriano; Maria Cruz; Nelda Flores
**Cc:** Stephanie Elad; Reena Mathew
**Subject:** RE: Attendance Report

Hi Sabrina,
To ensure I included the correct cost centers with the recent moves, can you please send me a list of those?

Thank you,


Paula Blayney
Santander Consumer USA Inc.
HRIS Manager
Mobile–214–354–6913

---

**From:** Sabrina Boyd
**Sent:** Thursday, March 17, 2016 9:23 AM
**To:** Paula Blayney; Yessica Adriano; Maria Cruz; Nelda Flores
**Cc:** Stephanie Elad; Reena Mathew
**Subject:** RE: Attendance Report

Good Morning Paula,

We have highlighted the paycodes needed for the report.  We would need to include all cost centers under Tony Kutiper's group who are on the Operational Attendance Policy (Operations) for each site.  The dates we would like to include are Q4 Oct 1 – Dec 31 2015.

Please let us know if you have any questions, thank you for your assistance with this.

App.235

SC006577

# Sabrina Boyd

Santander Consumer USA Inc.
HR Generalist

PHONE   214.261.1619
MOBILE  469.834.6208
EMAIL   sboyd@santanderconsumerusa.com
WEB     www.santanderconsumerusa.com

---

**From:** Paula Blayney
**Sent:** Wednesday, March 16, 2016 5:46 PM
**To:** Yessica Adriano; Sabrina Boyd; Maria Cruz; Nelda Flores
**Cc:** Stephanie Elad
**Subject:** RE: Attendance Report

Hello Yessica,
I would be happy to assist.  I will need more detailed information. Please see below:

- Please confirm the date range for Q4- 2015 – Oct 1 to Dec 31
- We will need ALL of the pay codes, I asked prior wouldn't you want to include the regular holiday, do we also need to include PFML, BREV etc ( I have included a list that has all of the pay codes for you to review)?
- What cost centers do we need to include

    Please send us back this info so we can review and pull the requested data.


    Regards,


Reg
HOLWRKD
OVT
Vac Ex
Vac Unex
Sick
BERV
BERV-UNPD
BERV-EXCESS
BERV-PER
BERV-SICK
BERV-VAC
Jury
Per
Exc Hrs
Unpd Excus
Unpd Unex
Holiday Hrs
FlHol Unex
FL Hol Ex
No Call No Show
MILITARY LEAVE

SC006578

**Separate Report for FMLA Data as well as on the main report, please.** ☺

FMLA Vac
FMLA Sick
FMLA Pers
LOA Vac
LOA Sick
LOA Pers
LOA UnPd
FMLA UnPd
PFMLA VAC
PFMLA PER
PFMLA SIC
PFMLA PD
PFMLA UNPD
WK-COMP
FMLA-EXCESS
PFMLA-EXCESS
LV-CFRA
LV-EXCESS
LV-FMLA
LV-FMLAMIL
LV-LOA
LV-MILITARY
LV-PERSONAL
LV-SICK
LV-VACATION
LV-WK COMP

Paula Blayney
Santander Consumer USA Inc.
HRIS Manager
Mobile-214-354-6913

---

**From:** Yessica Adriano
**Sent:** Wednesday, March 16, 2016 4:57 PM
**To:** Sabrina Boyd; Paula Blayney; Maria Cruz; Nelda Flores
**Cc:** Stephanie Elad
**Subject:** RE: Attendance Report

Good evening Paula,

Tony Kutiper, our EVP for Call Center Operations, is requesting a report that reflects perfect attendance for associates under his realm for Q4. They are considering implementing a perfect attendance campaign, but first wanted to get a snap shot of what that would look like.

Sabrina spent three hours today reconciling a report from kronos, then manually eliminating department numbers….though she is having difficulty separating by the criteria requested to retrieve a clean list for a 3 month

This is the criteria:

- Associates who have only taken pre-approved time off such as Vacation, Floating Holiday, Personal, FMLA/LOA.
- If you could do one report with FMLA (consecutive or intermittent)/LOA and one without, I think that would be helpful too!

Will your group be able to pull this for us, or may you please guide us on how to do it.

Thank you,
Yessica

---

**From:** Sabrina Boyd
**Sent:** Wednesday, March 16, 2016 1:57 PM
**To:** Paula Blayney; Maria Cruz; Nelda Flores
**Cc:** Yessica Adriano
**Subject:** RE: Attendance Report

Hi Paula,

My apologies, I do not have very much background on this project as Reena was heading this one.  I was under the impression that you all had discussions regarding her request?

I will see what I can pull via Kronos and reach out to you all for any questions.

Thank you,

*Sabrina*


# Sabrina Boyd

Santander Consumer USA Inc.
HR Generalist

PHONE   214.261.1619
MOBILE  469.834.6208
EMAIL   sboyd@santanderconsumerusa.com
WEB     www.santanderconsumerusa.com

---

**From:** Paula Blayney
**Sent:** Wednesday, March 16, 2016 1:03 PM
**To:** Sabrina Boyd; Maria Cruz; Nelda Flores
**Cc:** Yessica Adriano
**Subject:** RE: Attendance Report

Hello Sabrina,
Not quite sure what the data request is.  The data would need to be pulled from Kronos (reconcile timecard).  You referenced Q4 so the dates would be Oct 1 to Dec 31?  Also what about the Holidays?

Tks


Paula Blayney
Santander Consumer USA Inc.
HRIS Manager

SC006580

**From:** Sabrina Boyd
**Sent:** Wednesday, March 16, 2016 7:44 AM
**To:** Paula Blayney; Maria Cruz; Nelda Flores
**Cc:** Yessica Adriano
**Subject:** FW: Attendance Report
**Importance:** High

Good Morning Ladies,

While Reena is out of the office, we wanted to follow up to see if you were able to pull the attendance information she requested?  We would like to pass this information along for review by Tony Kutiper as soon as possible.

Please let me know if you have any questions.

Thank you,

Sabrina

**Sabrina Boyd**
Santander Consumer USA Inc.
HR Generalist

PHONE   214.261.1619
MOBILE   469.834.6208
EMAIL   sboyd@santanderconsumerusa.com
WEB   www.santanderconsumerusa.com

**From:** Reena Mathew
**Sent:** Friday, March 11, 2016 5:08 PM
**To:** Paula Blayney; Maria Cruz; Nelda Flores
**Subject:** Attendance Report
**Importance:** High

Hi ladies,

I need your assistance please!

I will be OOO and PB, not sure if you remember speaking about the perfect attendance proposal, but Tony Kutiper would like to see numbers for last quarter.

This would be perfect attendance for all Operational associates tied to the attendance policy for Q4/2015.

The criteria would be:

***Associates who have only taken pre-approved time off such as Vacation, Floating Holiday, Personal, FMLA/LOA.***

***If you could do one report with FMLA (consecutive or intermittent)/LOA and one without, I think that would be helpful too!***

Can you please run the report and send to Stephanie Elad/Yessica Adriano sometime next week as Tony would like to review asap?

SC006581

Thanks so much and let me know if you all need any additional information.

Reena

## Reena Mathew, PHR

Santander Consumer USA Inc.
HR Business Partner

PHONE 214.292.2772

MOBILE 214.364.9136

FAX 214.630.0828

EMAIL rmathew@santanderconsumerusa.com

WEB www.santanderconsumerusa.com

BENEFITS HOTLINE 214.540.2010

SC006582

**From:** Holly Hanes <hhanes@santanderconsumerusa.com>
**To:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Stephanie Elad <selad@santanderconsumerusa.com>
**Subject:** RE: Recap of Meeting
**Date:** Mon, 21 Mar 2016 20:39:32 +0000
**Importance:** Normal

---

That works. Just let me know when you are available.  Thanks!

**Holly Hanes**
Santander Consumer USA Inc.
HR Operational Analyst III

| | |
|---|---|
| PHONE | 972.761.1039 |
| FAX | 972.759.5330 |
| EMAIL | hhanes@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |

**From:** Yessica Adriano
**Sent:** Monday, March 21, 2016 3:03 PM
**To:** Stephanie Elad; Holly Hanes
**Subject:** RE: Recap of Meeting

Jumping into interview now, im not available until after 4 pm.

thanks

**From:** Stephanie Elad
**Sent:** Monday, March 21, 2016 3:02 PM
**To:** Holly Hanes <hhanes@santanderconsumerusa.com>; Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Subject:** RE: Recap of Meeting

When are you thinking?

**From:** Holly Hanes
**Sent:** Monday, March 21, 2016 2:54 PM
**To:** Yessica Adriano
**Cc:** Stephanie Elad
**Subject:** RE: Recap of Meeting

Thanks Yessica.  Are you and Stephanie available for a quick call with the attorneys?

**Holly Hanes**
Santander Consumer USA Inc.
HR Operational Analyst III

| | |
|---|---|
| PHONE | 972.761.1039 |
| FAX | 972.759.5330 |

SC009550

EMAIL   mhanes@santanderconsumerusa.com
WEB   www.santanderconsumerusa.com

**From:** Yessica Adriano
**Sent:** Monday, March 21, 2016 9:02 AM
**To:** Holly Hanes
**Cc:** Stephanie Elad
**Subject:** FW: Recap of Meeting

Hi Holly,

Below is the recap we will be sending back, my comments are highlighted in blue.

Thanks

**From:** Reena Mathew <rmathew@santanderconsumerusa.com>
**Date:** March 8, 2016 at 3:58:02 PM CST
**To:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Subject: Recap of Meeting**

Hi Yessica,

Here is a recap of what we discussed today.

You asked me how things were going from my perspective—I said they were good so far and felt like you and I were working well together. I feel as though things are more clear on my end and I know what's expected of me. No issues so far.

**Attendance**—This has been going well; I've been giving enough notification for time off and to continue to do so. You also thanked me for scheduling appointments on WFH days.
Yes agreed.

**Time Management**—Been good here-if there has been additional time that I've been needing, I've been giving enough notice of that (a day extra etc). Last week Sabrina was out and we worked together and everyone jumped in to knock out the inbox and you said thank you for that. Investigation Summary—overall good—one additional item needed—don't forget recap and if there are DA's, specify what type of DA's they were (call model vs. attendance) and if there was a call that you had to listen to etc. so we have a breakdown of exactly what type of DA's we're drafting.
Yes thank you for you your help with admin tasks,  I also asked for specifics on your weekly recap that specified the investigations (names) and the type of DA's conducted.

**Consulting**—I've been touching base regarding decisions that had to be made—continue to do so. One thing you all would like to see is for me to make decisions so more of discussing thoughts regarding allegations at the beginning and then follow up with recommendation at the end of investigation. Would like to see me make more of the decisions vs. consulting with Manager to see if she agrees with recommendation along the way. I stated I don't have a problem doing that (I also stated that I disagree that I am touching base often per Stephanie), but during this time I would rather not because to me it may backfire and I don't feel comfortable in doing so. I would definitely be more than willing to strive to get there at some point if that is the direction we are headed with HRBP's and investigations. Obviously escalated issues would need more interaction between the Manager and HRBP.
Today, you consult with me (your manager) as issues arise in investigations or day to day, we would like to see you make more of these decisions on your own. I provided an example: during an investigation I consult with my manager

SC009551

and we discuss an action plan, during its execution different issues arise such as the need to investigate more people, another item unveiled, etc., I make judgment calls on next steps and review back with my manager at the end of the investigation with its final recommendation and then review additional steps that were taken and why.
We stated we understood your hesitation, however the end result would be for you to make independent decisions as an HRBP (consultant) and refer to me for escalated issues.

You all stated that I am more where I need to be as an HRBP.

Let me know if you need anything else.

Thanks,
Reena

**Reena Mathew, PHR**
Santander Consumer USA Inc.
HR Business Partner

PHONE          214.292.2772
MOBILE        214.364.9136
FAX            214.630.0828
EMAIL          rmathew@santanderconsumerusa.com
WEB            www.santanderconsumerusa.com
BENEFITS HOTLINE  214.540.2010

SC009552

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Reena Mathew <rmathew@santanderconsumerusa.com>
**Subject:** Recap of Meeting
**Date:** Tue, 22 Mar 2016 21:30:13 +0000
**Importance:** Normal

---

Reena,

Thanks for the recap, my comments are highlighted in blue.

Yessica

**From:** Reena Mathew <rmathew@santanderconsumerusa.com>
**Date:** March 8, 2016 at 3:58:02 PM CST
**To:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Subject: Recap of Meeting**

Hi Yessica,

Here is a recap of what we discussed today.

You asked me how things were going from my perspective—I said they were good so far and felt like you and I were working well together. I feel as though things are more clear on my end and I know what's expected of me. No issues so far.

**Attendance**—This has been going well; I've been giving enough notification for time off and to continue to do so. You also thanked me for scheduling appointments on WFH days.
Yes agreed.

**Time Management**—Been good here-if there has been additional time that I've been needing, I've been giving enough notice of that (a day extra etc). Last week Sabrina was out and we worked together and everyone jumped in to knock out the inbox and you said thank you for that. Investigation Summary—overall good—one additional item needed—don't forget recap and if there are DA's, specify what type of DA's they were (call model vs. attendance) and if there was a call that you had to listen to etc. so we have a breakdown of exactly what type of DA's we're drafting.
Yes thank you for you your help with admin tasks,  I also asked for specifics on your weekly recap that specified the investigations (names) and the type of DA's conducted.

**Consulting**—I've been touching base regarding decisions that had to be made—continue to do so. One thing you all would like to see is for me to make decisions so more of discussing thoughts regarding allegations at the beginning and then follow up with recommendation at the end of investigation. Would like to see me make more of the decisions vs. consulting with Manager to see if she agrees with recommendation along the way. I stated I don't have a problem doing that (I also stated that I disagree that I am touching base often per Stephanie), but during this time I would rather not because to me it may backfire and I don't feel comfortable in doing so. I would definitely be more than willing to strive to get there at some point if that is the direction we are headed with HRBP's and investigations. Obviously escalated issues would need more interaction between the Manager and HRBP.
Today, you consult with me (your manager) as issues arise in investigations or day to day, we would like to see you make more of these decisions on your own. I provided an example: during an investigation I consult with my manager and we discuss an action plan, during its execution different issues arise such as the need to investigate more people, another item unveiled, etc., I make judgment calls on next steps and review back with my manager at the end of the investigation with its final recommendation and then review additional steps that were taken and why.  For example, in the Janice Jones investigation we decided upon action plan, however as you speak to a witness you discover

SC005740

additional info and ask me if you should speak to more witnesses. This is an example of where I rely on your knowledge base to make the call.

We stated we understood your hesitation, however the expectation of our HRBPs as consultants is to work independently in anticipating and making judgment calls as necessary, and work with management in escalated situations.

You all stated that I am more where I need to be as an HRBP.

Let me know if you need anything else.

Thanks,
Reena

**Reena Mathew, PHR**
Santander Consumer USA Inc.
HR Business Partner

PHONE    214.292.2772
MOBILE    214.364.9136
FAX    214.630.0828
EMAIL    rmathew@santanderconsumerusa.com
WEB    www.santanderconsumerusa.com
BENEFITS HOTLINE    214.540.2010

SC005741

**From:** "Reena Mathew" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=REENA MATHEW0CB>

**To:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>

**Subject:** Recap

**Date:** Thu, 24 Mar 2016 18:21:06 +0000

**Importance:** Normal

---

Hi Yessica,

Here is a recap of our meeting yesterday:

**Attendance**—Continues to be good; continue to give enough notification.

**Time Management**—Give recap of DA's and investigations moving forward.

**Consulting**—Expectation of HRBP's is moving towards independent judgment calls; HRBP's are expected to formulate plan at the beginning and recommendation at the end; if additional steps need to be taken, use judgment call; you all said you understood my hesitation due to current situation but stated that is the direction we are moving; also to rely on past consulting and judgment calls—we've been on the same page 90% of the time. If there are escalated issues or if Manager is unavailable, we can go to other HR Managers. Want us to be confident in making decisions. Stephanie then proceeded to ask about the timeline of events regarding the Perfect Attendance proposal numbers. I stated I had sent an email on Friday but that was after I had asked her if she needed them before I left and she had stated yes. We had a lot going on and I wanted to tie up loose ends before I left. Because it was a basic report, I didn't think it would be so hard to retrieve from HRIS and stated we have issues in getting a timely response (and that goes for several of us). Stephanie stated she felt as though she was 'misled' and it was a 'misrepresentation' stating that I had been in contact with HRIS. I said that was not my intention and that what I meant was we've been working on this project back and forth for some time and Paula was aware of this upcoming proposal. That is all I meant from that statement. I sent the email on Friday and we only received a response that next Wednesday after Yessica sent another follow up email after I had informed her I wasn't getting a response (even if it just meant them sending us instructions). HRIS then stated they couldn't pull it and Sabrina and I spoke and she manually filtered the report but wasn't getting the information we needed and then HRIS stated they were able to after that. I even worked during my vacation to get this settled and I also mentioned that this was a project that I took on (after Brad Denetz and I have spoken for some time and Stephanie said I wasn't taking ownership) and it wasn't assigned so I wouldn't not allow this issue to paint me in a negative light. Stephanie mentioned she had concerns and that I wasn't meeting the expectation of an HRBP however I stated that is not what was said in the last meeting (stated I was where I needed to be as an HRBP).

**Just as a side note, we were waiting on Brad to respond with what pay codes the other business leaders approved and we received that yesterday. I sent it to HRIS and contacted Paula and she will be sending over the numbers we requested this afternoon. I will be sending those over.

**Reena Mathew, PHR**
Santander Consumer USA Inc.
HR Business Partner

PHONE      214.292.2772
MOBILE     214.364.9136
FAX        214.630.0828
EMAIL      rmathew@santanderconsumerusa.com
WEB        www.santanderconsumerusa.com
BENEFITS HOTLINE   214.540.2010

SC002148

SC002149

**From:** "Reena Mathew" <rmathew@santanderconsumerusa.com>
**To:** "Stephanie Elad" <selad@santanderconsumerusa.com>
**Cc:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>, "Edward Fabritiis"
<efabritiis@santanderconsumerusa.com>, "Kayla Liggett"
<kliggett@santanderconsumerusa.com>, "Angelina Hullum"
<AHULLUM@santanderconsumerusa.com>
**Subject:** Re: Attendance Recognition Program
**Date:** Mon, 28 Mar 2016 17:24:53 +0000
**Importance:** Normal

---

Hi Stephanie,

Will do for the 2015 report/talking points.

I'll also check with HRIS to see what the best course of action is to have the report run.

Please let me know if you need anything else.

Thanks,
Reena

Sent from my iPhone

On Mar 28, 2016, at 11:12 AM, Stephanie Elad <selad@santanderconsumerusa.com> wrote:

Hi Reena – I reviewed the HRIS report data with the SVP's today. They would like to see the information for all of 2015. Please work with HRIS to have that report run ASAP, but no later than Friday. If you need to escalate to Yessica or me, just let us know. They are trying to get an idea of how many YEI points to budget for this year.

The program will start Q1. So, we will need to get on a regular cadence with this quarterly report. I would think that we should be able to pull the data within 2 weeks of when the quarter ends. Is that feasible? Also, will we be able to run the report ourselves, now that it is built, or will we need to rely on HRIS every time? Please advise.

Finally, I'd like to provide the business with talking points to introduce and cascade this program. Please put something together for my review by EOD Friday. Yessica should review and provide input prior to sending to me. This communication will go to the Associate level.

Let me know if you have questions. Thank you.

**Stephanie Elad,** SPHR
Santander Consumer USA Inc.
Director, Human Resources

PHONE    214.237.3713
MOBILE   214.695.1278
EMAIL    selad@santanderconsumerusa.com
WEB      www.santanderconsumerusa.com

SC002038

**From:** Stephanie Elad <selad@santanderconsumerusa.com>
**To:** Holly Hanes <hhanes@santanderconsumerusa.com>
**Subject:** FW: Attendance Report
**Date:** Tue, 29 Mar 2016 17:43:24 +0000
**Importance:** Normal

---

Request sent to HRIS at 5:07pm on March 11.

---

**From:** Yessica Adriano
**Sent:** Wednesday, March 16, 2016 4:25 PM
**To:** Stephanie Elad <selad@santanderconsumerusa.com>
**Subject:** RE: Attendance Report

Tony submitted the request Thursday morning (8:25 am), and she submitted the request to HRIS on Friday at 5 pm- so two business days

**From:** Stephanie Elad
**Sent:** Wednesday, March 16, 2016 4:17 PM
**To:** Yessica Adriano
**Subject:** RE: Attendance Report

How long did she wait from the time Tony requested it until she asked HRIS for the info? Sounds like about 24 hours, but maybe I'm missing something.

**From:** Yessica Adriano
**Sent:** Wednesday, March 16, 2016 1:21 PM
**To:** Stephanie Elad
**Subject:** FW: Attendance Report

FYI..


**From:** Reena Mathew
**Sent:** Wednesday, March 16, 2016 10:59 AM
**To:** Yessica Adriano
**Subject:** Fwd: Attendance Report

Hi Yessica,

Geesh, I don't know why it takes them so long to respond. I sent the initial email on Friday.....or at least just give us instructions on how to pull the info.

Sent from my iPhone

Begin forwarded message:

**From:** Reena Mathew <rmathew@santanderconsumerusa.com>
**Date:** March 15, 2016 at 7:51:31 PM CDT
**To:** Paula Blayney <pblayney@santanderconsumerusa.com>, Maria Cruz <MACRUZ@santanderconsumerusa.com>, Nelda Flores <NFLORES@santanderconsumerusa.com>

SC000657

Cc: Yessica Adriano <yadriano@santanderconsumerusa.com>
Subject: Re: Attendance Report

Hi Ladies,

Have you had a chance to review the following request?

Thanks in advance...it's appreciated!

Reena

Sent from my iPhone

On Mar 11, 2016, at 5:07 PM, Reena Mathew <rmathew@santanderconsumerusa.com> wrote:

Hi ladies,

I need your assistance please!

I will be OOO and PB, not sure if you remember speaking about the perfect attendance proposal, but Tony Kutiper would like to see numbers for last quarter.

This would be perfect attendance for all Operational associates tied to the attendance policy for Q4/2015.

The criteria would be:

**Associates who have only taken pre-approved time off such as Vacation, Floating Holiday, Personal, FMLA/LOA.**

**If you could do one report with FMLA (consecutive or intermittent)/LOA and one without, I think that would be helpful too!**

Can you please run the report and send to Stephanie Elad/Yessica Adriano sometime next week as Tony would like to review asap?

Thanks so much and let me know if you all need any additional information.

Reena

## Reena Mathew, PHR
Santander Consumer USA Inc.
HR Business Partner

| | |
|---|---|
| PHONE | 214.292.2772 |
| MOBILE | 214.364.9136 |
| FAX | 214.630.0828 |
| EMAIL | rmathew@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |
| BENEFITS HOTLINE | 214.540.2010 |

SC000658

**From:** Stephen Shaffer <sshaffer@santanderconsumerusa.com>

**To:** Stephanie Elad <selad@santanderconsumerusa.com>

**Cc:** Holly Hanes <hhanes@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>

**Subject:** RE: Reena

**Date:** Fri, 01 Apr 2016 22:15:10 +0000

**Importance:** Normal

---

Sounds like a specific we need to document and I think you should say that it should not have taken more than 30 minutes.

<mark>In the future when we give her a task like this (until we can talk)  we should say.</mark>

I need you to do X,Y,Z and you should take no longer than x amount of time to do it and I expect it no later than 5:00pm on x date. This assignment should have in it the following points - a,b,c,d, e, and f.   We should not tell her how to do it

Stephen Shaffer
Santander Consumer USA Inc.
VP Human Resources Business Partnership


PHONE
214.722.4580
MOBILE
469.236.5931
EMAIL
sshaffer@santanderconsumerusa.com
WEB
www.santanderconsumerusa.com


-----Original Message-----
From: Stephanie Elad
Sent: <mark>Friday, April 01, 2016 5:11 PM</mark>
To: Stephen Shaffer <sshaffer@santanderconsumerusa.com>
Cc: Holly Hanes <hhanes@santanderconsumerusa.com>; Yessica Adriano <YADRIANO@santanderconsumerusa.com>
Subject: Reena

Just to let you know, I gave Reena a deadline of EOB today to send me some talking points around the Attendance Recognition program. I asked her to have Yessica provide feedback on this prior to sending to me.

<mark>As of right now, neither Yessica or I have received anything from Reena on this. I consider this a missed deadline.</mark> I was planning to review this information with Tony and team on Monday. At least 1 SVP is already asking. In my mind this should not have taken more than 30 minutes to complete since Reena had all of the information and created the program.

I believe I asked for this info on Tuesday. I will double check that before we provide feedback to Reena. And I will include this in our recap which we will send to Kristin for review on Monday.

Thanks!

Sent from my iPhone

SC009308

**From:** Stephanie Elad <selad@santanderconsumerusa.com>
**To:** Reena Mathew <rmathew@santanderconsumerusa.com>
**Cc:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Subject:** RE: Attendance Recognition Program
**Date:** Mon, 04 Apr 2016 21:47:07 +0000
**Importance:** Normal

---

Reena – A few items needed:

- Report for Q1 2016. Due by 5:00pm on Thursday.
- List of any Associates who had perfect attendance for all 4 quarters in 2015. Due by 5:00pm on Wednesday.

Starting with Q1, 2016, please include backup (Associate names) and also indicate, how many quarters the person achieved the threshold. For example, one Associate might achieve in Q1, and not again until Q3. Another Associate might achieve in Q2 and then not again during the year. The SVP's want to see how the Associates are trending. This list should only include those who achieved one time, and then indicate subsequent quarters where the threshold was reached as well.

Let me know if you have questions. Thanks!

---

**From:** Reena Mathew
**Sent:** Friday, April 01, 2016 7:17 PM
**To:** Stephanie Elad <selad@santanderconsumerusa.com>
**Cc:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Subject:** RE: Attendance Recognition Program

Hi Stephanie,

Please see the attached spreadsheet for Perfect Attendance for all four quarters in 2015 and the Perfect Attendance Talking Points.

Also, I did think about one thing—associates cannot be on any DA's for the quarter. There won't be any attendance DA's which are the majority of DA's, so I don't think the numbers will be skewed as much, however, this may be a manual process each site can do once the names are pulled (since there are over 400). Also, when we move forward with this, we will need to ensure that the associate is employed for the entire quarter as well….so that will be two things that may need to be checked on possibly manually by each site.

I spoke to Paula and she said either we (HR) can pull the report (Reconcile Timecard with the dates of quarters/pay codes) or they can assist us with it. A better idea is to have the report automated which is now possible with the updated version of Kronos and she said we can set up a call in May to work out all the kinks so that it is less manual.

Let me know if you need anything else.

Thanks,
Reena

---

**From:** Stephanie Elad
**Sent:** Monday, March 28, 2016 11:12 AM
**To:** Reena Mathew <rmathew@santanderconsumerusa.com>

SC002515

**Cc:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>; Edward Fabritiis
<efabritiis@santanderconsumerusa.com>; Kayla Liggett <kliggett@santanderconsumerusa.com>; Angelina Hullum
<AHULLUM@santanderconsumerusa.com>
**Subject:** Attendance Recognition Program

Hi Reena – I reviewed the HRIS report data with the SVP's today. They would like to see the information for all of 2015. Please work with HRIS to have that report run ASAP, but no later than Friday. If you need to escalate to Yessica or me, just let us know. They are trying to get an idea of how many YEI points to budget for this year.

The program will start Q1. So, we will need to get on a regular cadence with this quarterly report. I would think that we should be able to pull the data within 2 weeks of when the quarter ends. Is that feasible? Also, will we be able to run the report ourselves, now that it is built, or will we need to rely on HRIS every time? Please advise.

Finally, I'd like to provide the business with talking points to introduce and cascade this program. Please put something together for my review by EOD Friday. Yessica should review and provide input prior to sending to me. This communication will go to the Associate level.

Let me know if you have questions. Thank you.

**Stephanie Elad,** SPHR
Santander Consumer USA Inc.
Director, Human Resources

| | |
|---|---|
| PHONE | 214.237.3713 |
| MOBILE | 214.695.1278 |
| EMAIL | selad@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |

SC002516

**From:** Stephen Shaffer <sshaffer@santanderconsumerusa.com>

**To:** Stephanie Elad <selad@santanderconsumerusa.com>

**Cc:** Holly Hanes <hhanes@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>

**Subject:** RE: Reena

**Date:** Fri, 01 Apr 2016 22:15:10 +0000

**Importance:** Normal

---

Sounds like a specific we need to document and I think you should say that it should not have taken more than 30 minutes.

In the future when we give her a task like this (until we can talk)  we should say.

I need you to do X,Y,Z and you should take no longer than x amount of time to do it and I expect it no later than 5:00pm on x date. This assignment should have in it the following points - a,b,c,d, e, and f.   We should not tell her how to do it

Stephen Shaffer
Santander Consumer USA Inc.
VP Human Resources Business Partnership


PHONE
214.722.4580
MOBILE
469.236.5931
EMAIL
sshaffer@santanderconsumerusa.com
WEB
www.santanderconsumerusa.com


-----Original Message-----
From: Stephanie Elad
Sent: Friday, April 01, 2016 5:11 PM
To: Stephen Shaffer <sshaffer@santanderconsumerusa.com>
Cc: Holly Hanes <hhanes@santanderconsumerusa.com>; Yessica Adriano <YADRIANO@santanderconsumerusa.com>
Subject: Reena

Just to let you know, I gave Reena a deadline of EOB today to send me some talking points around the Attendance Recognition program. I asked her to have Yessica provide feedback on this prior to sending to me.

As of right now, neither Yessica or I have received anything from Reena on this. I consider this a missed deadline. I was planning to review this information with Tony and team on Monday. At least 1 SVP is already asking. In my mind this should not have taken more than 30 minutes to complete since Reena had all of the information and created the program.

I believe I asked for this info on Tuesday. I will double check that before we provide feedback to Reena. And I will include this in our recap which we will send to Kristin for review on Monday.

Thanks!

Sent from my iPhone

SC009308

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Stephanie Elad <selad@santanderconsumerusa.com>
**Cc:** Stephen Shaffer <sshaffer@santanderconsumerusa.com>
**Subject:** LEW Crew
**Date:** Fri, 01 Apr 2016 20:47:14 +0000
**Importance:** Normal

---

Good afternoon,

These are Sabrina's current responsibilities today:

- DA Creation and Entry into WD
- Kronos Audit follow up (Payroll Mondays)
- HR LEW lockbox
- Associate investigations
- Oversee Customer Service team
- @HR Help (rotation)
- HRSOL  class lists
- TWC report
- Kronos Vs DA Report (Nicole compiles but Sabrina filters and follows up with all LEW Mgrs)
- Ad hoc issues that arise: manager questions, 911, answer the door

If we could remove Sabrina's responsibilities around the Kronos vs DA report, @HR Help, HRSOL,  and the Kronos Audit followup (payroll) it would work. So, the ideal setting for us at LEW would be to have the two HRBPs, myself, and an HRG every Monday on site. Monday is our busiest day in regards to the HR inbox and payroll Mondays consumes a day of administration.

Thank you,
Yessica

Yessica Adriano, SPHR, SHRM-SCP
Santander Consumer USA Inc.
Manager Human Resources

PHONE    214.722.5667
MOBILE    214.215.5258
EMAIL    yadriano@santanderconsumerusa.com
WEB    www.santanderconsumerusa.com

SC005211

**From:** "Reena Mathew" <rmathew@santanderconsumerusa.com>
**To:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>, "Reena Mathew"
<rmathew@santanderconsumerusa.com>
**Subject:** Conversation with Yessica Adriano
**Date:** Wed, 06 Apr 2016 19:35:46 +0000
**Importance:** Normal

---

**Reena Mathew [10:47 AM]:**
GM Yessica
Quick question, did Dina go to Toyota or Exeter?

**Yessica Adriano [10:49 AM]:**
she went to exeter
gm :)

**Reena Mathew [10:50 AM]:**
Thanks!

**Reena Mathew [12:36 PM]:**
Have you by chance typed up your notes for Brittany Brodie?
Was just wondering what her main complaints were so I can add to the investigation summary......

**Yessica Adriano [1:20 PM]:**
Hi reena ...larry is here for a da for evelyn do you have it, if so i can print it for him

**Reena Mathew [1:22 PM]:**
Hmmm, I emailed Mr. V this am......I wonder if he's on vacay. Just sent it to you/Larry

**Reena Mathew [1:42 PM]:**
Did you by chance see my previous IM? :)

**Yessica Adriano [1:47 PM]:**
i yes sorry, im in back to back meetings.   i havent typed up britanny notes yet but i will tonight

**Reena Mathew [1:48 PM]:**
Ok--is it ok then if turn in my summary tomm?

**Yessica Adriano [2:33 PM]:**
yes that works

**Reena Mathew [2:33 PM]:**
Ok, thx

SC004245

**From:** "Reena Mathew" </O=D6ORG/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=REENA MATHEW0CB>
**To:** "Yessica Adriano" <YADRIANO@santanderconsumerusa.com>
**Subject:** RE: Investigation Summary--Brittany Brodie
**Date:** Wed, 13 Apr 2016 18:31:38 +0000
**Importance:** Normal

---

Will do, thanks....

**From:** Yessica Adriano
**Sent:** Wednesday, April 13, 2016 12:50 PM
**To:** Reena Mathew <rmathew@santanderconsumerusa.com>
**Subject:** FW: Investigation Summary--Brittany Brodie

Please attach to isight.

**From:** Reena Mathew
**Sent:** Friday, April 08, 2016 5:07 PM
**To:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Subject:** Investigation Summary--Brittany Brodie

Hi Yessica,

Please see the summary below and notes attached for the Brittany Brodie investigation.

**Date Complaint Received**: 4/1/2016
**Investigator:** Reena Mathew, HR Business Partner; Witness: N/A
**Associate:** Brittany Brodie; Early Stage Account Manager
**Involved Parties:** Emerial Woods; Latoria Chatman—Early Stage Account Managers
**Witnesses:** Karen Cantu/Bryson Gray—Early Stage Account Managers; Gerald Rahm—Early Stage Manager


**Timeline of Investigation:**
**4/1/2016:** AVP Jorge Munoz receives word from Manager Gerald Rahm that there was an incident during Gerald's jumpstart that morning; Jorge meets with HR Manager Yessica Adriano to discuss; Jorge and Yessica meet with Brittany to get her side of the story and associate is suspended until pending investigation is completed
**4/1/2016:** Reena Mathew meets with Emerial Woods/Karen Cantu to see what information they could provide regarding the incident
**4/7/2016**: Reena Mathew also meets with Bryson Gray

**Final Incident:** On 4/1/2016, Brittany Brodie states she was in their team jumpstart and Emerial and Latoria made a hygiene comment in reference to her, she snapped and yelled back at them "Lets take it outside", Gerald attempted to calm her down and ended the team meeting.

**DA History: Brittany Brodie**
Final- 03/25/2016 (Attendance)
Written- 02/25/2016 (Attendance)
Verbal – 02/23/2016 (Attendance)
Verbal- 02/11/2016 (Failure to Follow, careless account documentation)
Verbal- 10/14/2015 (Call Model Violation)

SC004461

**Confirmed Accusations:**

- Question regarding hygiene during jumpstart was made by Latoria to Gerald (Manager)
- High five was done between Emerial and Latoria
- Emerial did admit to allowing Latoria and vice versa to use her Workstation to clock herself in when she was running late; stated the last time it happened was a month ago
- Brittany did get assertive and stated 'We can take it outside and you can find out' towards Emerial
- One witness states LaToria and Emerial were snickering during the team meeting, and Brittany took offense to it

**Alleged and Unconfirmed Accusations:**

- Hygiene and high five were directed towards Brittany
- Emerial and Latoria use each other's login information (username/password) to clock each other in and out of Kronos when they're running late
- Emerial stated Latoria bumped her when she and Latoria were coming back into the building (Latoria was the only witness)
- Actions of LaToria and Emerial picking on Brittany

**Recommendation:** The investigation was able to prove that Brittany threatened LaToria and Emerial during the team meeting.   In addition, we were unable to prove that Brittany had previously been provoked by these two individuals, and during our initial meeting with Brittany both HR and her AVP had difficulty calming her down.  Due to her DA history and aggressive behavior we recommend termination  for Violation of Anti-Harassment/Hostile Work Environment.

Let me know if you need any additional information.

Thanks,
Reena

**Reena Mathew, PHR**
Santander Consumer USA Inc.
HR Business Partner

PHONE        214.292.2772
MOBILE       214.364.9136
FAX          214.630.0828
EMAIL        rmathew@santanderconsumerusa.com
WEB          www.santanderconsumerusa.com
BENEFITS HOTLINE   214.540.2010

SC004462

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Stephanie Elad <selad@santanderconsumerusa.com>
**Subject:** FYI
**Date:** Thu, 07 Apr 2016 17:53:48 +0000
**Importance:** Normal

---

Hi Stephanie,

I asked Reena today if she was ok, she looked very pale- she told me she has anemia and feels weak. She also said she was planning on leaving by mid-May or sooner depending on how she felt. I wouldn't be surprised if she decided to take leave in the next few weeks. Which takes me to my other point, when can we schedule Sabrina to meet with you and Stephen. If she does well, I would like to have her shadow Kristen prior to Reena leaving. Thoughts?

SC005759

**From:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**To:** Holly Hanes <hhanes@santanderconsumerusa.com>
**Subject:** FW: Rev. Reena 90 Day Action Plan - 90 Day Check In
**Date:** Thu, 14 Apr 2016 15:18:35 +0000
**Importance:** Normal
**Attachments:** Rev._Reena_90_Day_Action_Plan_-_90_Day_Check_In.docx

---

Holly,

Attached is our revised document.  We only made edits to the bottom portion under *90 day followup*, may you please have our legal team review.

Thanks
Yessica

SC006452

**From:** Stephen Shaffer <sshaffer@santanderconsumerusa.com>
**To:** Stephanie Elad <selad@santanderconsumerusa.com>
**Cc:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Stephen Shaffer <sshaffer@santanderconsumerusa.com>
**Subject:** RE: Reena Mathew
**Date:** Thu, 14 Apr 2016 21:20:41 +0000
**Importance:** Normal

---

Yes, as we agreed yesterday we should move to termination.
I will work on approvals so we can move forward.
Thank you to Yessica and you for your hard work.   As we discussed, it would have been great if Reena had been able to succeed, our ultimate goal, but it just has not panned out.

Regards,

**Stephen Shaffer**
Santander Consumer USA Inc.
VP Human Resources Business Partnership

PHONE       214.722.4580
MOBILE      469.236.5931
EMAIL       sshaffer@santanderconsumerusa.com
WEB         www.santanderconsumerusa.com

---

**From:** Stephanie Elad
**Sent:** Thursday, April 14, 2016 4:11 PM
**To:** Stephen Shaffer <sshaffer@santanderconsumerusa.com>
**Cc:** Yessica Adriano <YADRIANO@santanderconsumerusa.com>
**Subject:** Reena Mathew

Hi Stephen – To recap our discussion from the other day, we are at the end of the 90 day PIP and Reena is still failing to meet the expectations of the HR Business Partner role. Although her attendance has improved somewhat, there are still significant performance deficiencies in regards to the other areas identified in the PIP.

Yessica and I are planning to meet with Reena tomorrow to officially close out the PIP, and will let her know that her performance is still not meeting expectations.

At this point, I think that the appropriate next step is to terminate employment. Reena has not demonstrated that she can make the necessary improvements to her performance and remains unwilling to acknowledge that the deficiencies exist.

**Stephanie Elad,** SPHR
Santander Consumer USA Inc.
Director, Human Resources

PHONE       214.237.3713
MOBILE      214.695.1278
EMAIL       selad@santanderconsumerusa.com
WEB         www.santanderconsumerusa.com

SC008785

SC008786



**March 23, 2016 Meeting Recap: Reena Mathew (HRBP), Yessica Adriano (HRM), Stephanie Elad (HRD)**
*Note that Yessica's response was provided during the 90 day recap discussion on April 15*

<u>**Attendance**</u>—Continues to be good; continue to give enough notification. Agreed

<u>**Time Management**</u>—Give recap of DA's and investigations moving forward.
Please continue with the specifics of the DA's and investigations handled every week.

<u>**Consulting**</u>—<mark>Expectation of HRBP's is moving towards independent judgment calls</mark>; HRBP's are expected to formulate plan at the beginning and recommendation at the end; if additional steps need to be taken, use judgment call; you all said you understood my hesitation due to current situation but stated that is the direction we are moving; also to rely on past consulting and judgment calls—we've been on the same page 90% of the time. If there are escalated issues or if Manager is unavailable, we can go to other HR Managers. Want us to be confident in making decisions. Stephanie then proceeded to ask about the timeline of events regarding the Perfect Attendance proposal numbers. I stated I had sent an email on Friday but that was after I had asked her if she needed them before I left and she had stated yes. We had a lot going on and I wanted to tie up loose ends before I left. Because it was a basic report, I didn't think it would be so hard to retrieve from HRIS and stated we have issues in getting a timely response (and that goes for several of us). Stephanie stated she felt as though she was 'misled' and it was a 'misrepresentation' stating that I had been in contact with HRIS. I said that was not my intention and that what I meant was we've been working on this project back and forth for some time and Paula was aware of this upcoming proposal. That is all I meant from that statement. I sent the email on Friday and we only received a response that next Wednesday after Yessica sent another follow up email after I had informed her I wasn't getting a response (even if it just meant them sending us instructions). HRIS then stated they couldn't pull it and Sabrina and I spoke and she manually filtered the report but wasn't getting the information we needed and then HRIS stated they were able to after that. I even worked during my vacation to get this settled and I also mentioned that this was a project that I took on (after Brad Denetz and I have spoken for some time and Stephanie said I wasn't taking ownership) and it wasn't assigned so I wouldn't not allow this issue to paint me in a negative light. Stephanie mentioned she had concerns and that I wasn't meeting the expectation of an HRBP however I stated that is not what was said in the last meeting (stated I was where I needed to be as an HRBP).

Reena, in regards to the consulting, the expectation has always been that you are able to perform independently in your role. Although I have been providing more oversight as of late, due to the performance issues identified, with your background, experience and tenure with the company, you are expected to perform your job effectively, which means handling most of your tasks without oversight. I am available if you have questions or if you need support with more complex issues.

As it relates to the incident involving the Perfect Attendance Proposal, I wanted to outline the sequence of events:
March 9 (3:27pm)– Stephanie sends the proposal to EVP Tony Kutiper, asking him to review and advise if this is something he wants to implement in the call centers.
March 10 (8:25am)– Tony responds and says yes. He also requested additional information, which you responded (9:18am) and said you would provide.
March 11 (4:28pm)– You send an email to Stephanie stating that you will be out of the office the following week and will have the information that Tony requested when you return. You also stated "I am partnering with HRIS to assist but wanted to give you a status update". Stephanie replies back (4:46pm) and states she would like to get this information to Tony sooner, preferably the next week. You responded at 4:49 advising that you would ask HRIS to send the information directly to Stephanie and Tony. Stephanie replies at 4:59 stating that she would like the information sent to her, and to me, so that we could review prior to sending to Tony.
March 11 (5:07pm) – You send an email to HRIS requesting the information.



When asked about the timeline of events, your response was that you had been working with HRIS months ago on this project. However, upon further investigation, HRIS does not recall having any conversations with you about this particular report. They did recall you asking if Kronos could be updated to capture this specific information.

In any event, your statement that "you were partnering with HRIS to assist" was misleading and is considered a misrepresentation of the truth.

I don't believe that you prioritized this request properly as the request to HRIS should have been sent much sooner. This ties in with feedback we have provided to you regarding sense of urgency and ownership of your work. This is your project and you are expected to work through the challenges and escalate to your leadership when you are unable to do so. In this case, that didn't happen. In fact, someone on the team who is junior to your position was able to step in and identify issues and help to resolve them, which ultimately led to us being able to provide the report to Tony. Significant progress was made, in your absence, and none of the issues were surfaced by you. Your role in the project was to send the request to HRIS, and then wait for them to send you back the report. When that didn't happen, you sent several emails blaming them and complaining about their response time. Instead, what I would have expected was to ensure that the request was sent more timely, followed up with them to ensure understanding and collaborate to complete the task.

When we spoke with you regarding this incident, there was a lot of blame placed on the HRIS team, and at one point you even blamed Tony Kutiper, for not responding promptly. First of all, Tony did respond promptly (within a few business hours). Second of all, Tony is the client, and his response time is not of your concern. Our team is here to provide service to Tony and his team, so we need to prioritize his requests with a sense of urgency.

Since our discussion, another issue has arisen, in regards to the Perfect Attendance Proposal project, that I feel needs to be brought to your attention. On Monday, March 28 at 11:12am, Stephanie sent you an email requesting Talking Points for the program and an updated attendance report. The deadline was EOD that Friday (April 1). Stephanie also requested that you send it to me for review and feedback prior to sending to her. The information was not sent to me until 7:17pm on April 1. This did not meet the deadline that Stephanie sent. You called me at 5:45pm and 6:14pm on April 1. I called you back a little later that evening and you said that you were stuck in an investigation (Associate Brittany) with AVP Jorge Munoz. I reminded you that my direction was that you should complete the Perfect Attendance proposal on Friday and complete the investigation the following Monday.

Reena, the concern about your ability to make good decisions about how to utilize your time remains of significant concern. I was clear that the deadline to Stephanie was your primary task for Friday. The fact that you chose to spend time on the investigation instead, even after I told you specifically to hold that until Monday shows that you are continuing not to make good choices regarding how you spend your time, and also that you are not following specific instructions from your immediate supervisor and your director. Several expectations of your role are not being met here including ability to meet deadlines, ability to push back on the business, and ability to manage your time appropriately. The Talking Points should have taken no more then 20-30 minutes to complete. This was assigned on Monday, and not submitted until after 7:00pm on Friday and was not sent to me prior to going to Stephanie, as she specifically instructed you to do. Stephanie set this deadline because she was scheduled to review this information with Tony and the SVP's on Monday morning. The delay on your part created more work for Stephanie as she did not feel comfortable cascading this document to the SVP's during their scheduled meeting on Monday morning, as I had not had the chance to review and advise. Stephanie's intent was to provide this deliverable to the clients on Monday and she was unable to do so, because you missed your deadline.

Since then, the attendance report was submitted but had material errors and had to be sent back. Unfortunately, the information was sent to the business incorrectly because you didn't validate the information prior to sending to



Stephanie. It is your job to ensure the accuracy of the information you produce before you send it. These types of mistakes causes the business to lose credibility in their HR partners.

As it relates to the Brittany investigation, on April 6, you came to me to discuss. During that conversation, I provided you with feedback that you had not done as thorough of a job as needed in regards to this matter, and asked you to speak with 1 additional Associate. Your summary was not submitted to me until April 8, and was not complete as your notes were not attached and you did not provide all of the proper information (i.e. DA history). Reena, it's concerning that this investigation would take a week to complete and that you would need coaching on how to approach the situation, considering your tenure and experience. This is a fairly simple matter to address. This delay has created some concern with the business.

Finally, to clarify a point in our last meeting (March 8), when I stated that things were progressing well, I was referring to the 2 week period we were discussing. I did not state that meant that your performance was now at a "meets expectations" level. The issues highlighted in your PIP are still of concern, and at this point, you are still not meeting the expectations of an HR Business Partner.



**90 Day Review**
**April 15, 2016**

**Timeline**

| | |
|---|---|
| 01/15/2016: | Administer PIP/Action Plan |
| 01/29/2016: | 1st Biweekly follow up meeting |
| 02/17/2016: | 2nd Biweekly follow up meeting |
| 02/26/2016: | 30 Day Review |
| 03/08/2016: | 3rd Biweekly follow up meeting |
| 03/23/2016: | 4th Biweekly follow up meeting |
| 04/15/2016: | 90 Day Review |

**Attendance**
*Met Expectations*

You have been consistent in providing appropriate notice for requested time off. In most cases, additional hours were worked to offset the time you have left early/came in late.

**Time Management/Effective Work Habits**
*Does Not Meet Expectations*

During this 90 day period, we have discussed and provided you examples to illustrate the continued areas of opportunity in this category. We have provided you with feedback regarding:

- Providing more detail in the work you submit (time study, weekly recaps)
- Submitting work accurately
    - 2 term requests submitted incorrectly, 1 with incorrect data  and 1 without investigation summaries attached (Monisha 02/15, Brittany 04/08)
    - Incorrect data on attendance report (submitted to Stephanie on 04/06)
- Missing deadlines (missed deadline to Stephanie on attendance talking points/report, Monisha investigation notes)
    - The attendance talking points were assigned by Stephanie on 03/28 with a deadline of 04/01. In her email, Stephanie specifically requests that you have me review the document prior to sending her the final copy.  You submitted your documents to Stephanie at 7:17 pm that day, without my review.  In a later conversation, you stated you didn't know I was leaving early that day, I advised you I was available all day and did not leave until 4:45 pm.  Hence, the prior day 03/31 I had reminded you of this priority and again on 04/01. The document was sent back, so I could review (several edits had to be made) in order to deliver a finished product to Stephanie
    - Monisha Investigation- On 02/15 we had a discussion and edits for the document provided to you by Stephanie, she advised to have this completed first thing on the morning of 02/18, it was not received until that afternoon without the edits.
- Timely follow up (email response to Stephen, completing Brittany investigation timely, reaching out to HRIS timely to complete request from an EVP, DA's being completed within 24 hours)
- Thoroughness and Quality of Work (Monisha summary having to be sent back, Brittany investigation, attendance talking points)
    - Monisha summary was submitted without the edits that were provided



- o Brittany investigation was submitted without the investigation summaries, without DA history, and revisions had to be made to the Substantiated and Unsubstantiated categories to reflect what the interview notes reflected
- o The perfect attendance talking points document had to be revised in the following ways in order to be business presentable:  inserted introduction, added program objective, included sub topics (objective, eligibility, rewards), reworded and expanded rules of the program, and changed format/font.
- Importance of teamwork in completing administrative tasks that come in through the @HR_help inbox. Specifically, DA administration for LEW. In March/April, you entered only 16 DA's into WorkDay, compared to 568 total for the site. This does not meet the expectation to do your share of the work to support the team.

Also, you were coached on misrepresenting the truth in an email to Stephanie regarding the sequence of events in regards to the attendance report issue.

After you having decided that you did not want to continue with the time study, we agreed that you would just provide on a weekly basis (every Friday by 5 pm) a count of the number of DA's handled and investigations conducted. This has occurred regularly.


**Consulting**
*Does Not Meet Expectations*

For the first 2/3 of the PIP period, Yessica worked with you very closely and provided constant guidance. Even with that, there were some issues, as highlighted in the previous section. Additionally, we asked you on more than one occasion if there were development or training opportunities that you wanted to take advantage of. You declined those offers.

During this 90 day period, we have provided you with feedback regarding:

- Ability to push back on the business to ensure that you complete your job tasks/duties/deadlines (Brittany investigation)
- Lack of accountability for your behaviors (blaming HRIS, Tony). These things get in the way of us being able to serve our clients effectively.
- Addressing the business regarding feedback that they may have provided regarding your performance. Specifically, asking "who told on me?" This is unprofessional and negatively impacts your ability to provide consulting services to your client group.

Additionally, we received feedback from the business clients regarding your performance and how you interact with them. The comments we received are as follows:

- Limited interactions, but it has been better since January. I'd rather just go to someone else on the HR team to get it done right. They are always helpful and on point.
- I am getting DA's within 2 days. I never get it within 24 hours though, which is what I thought the expectation was.
- I enjoy working with her but notice that with difficult conversations she is timid and struggles. She asked me to sit in on a conversation and when it got difficult she said that I would take over. This wasn't my Associate and I was unprepared.
- She doesn't like making decisions without checking with her manager. She isn't confident when dealing with issues. She is scared to make decisions.
- I had to sit in on a term that Reena was supposed to handle. Reena got flustered and turned it back to me to handle. It's obvious that she can't handle conflict.



- She has had to ask for an extension (beyond 2 days) for a DA.
- I'm much more comfortable and confident working with others on the HR team because they respond timely and are confident in their decision making process.
- She is very nice. Just don't ask her for anything.
*As a reminder, it is not appropriate for you to go back to the business to discuss this feedback.*

At this point, you have not shown the ability or capacity to provide effective consulting services to the AVP group.

As we conclude the PIP process, it is important to state that you are still failing to meet the expectations for the HR Business Partner role.


_____          _____

**Associate Signature**                                                  **Discussion Date**


_____          _____

**Manager Signature**                                                  **Director Signature**

App.268          SC002427

**Don Uloth**

| | |
|---|---|
| **From:** | Reena Mathew <rmathew@santanderconsumerusa.com> |
| **Sent:** | Tuesday, April 19, 2016 3:18 PM |
| **To:** | Reen |
| **Subject:** | Fwd: Hello |
| **Attachments:** | RE: Attendance Recognition Program (12.7 KB); ATT00001.htm; Re: Attendance Report (7.70 KB); ATT00002.htm; Fwd: Attendance Report (9.08 KB); ATT00003.htm; RE: Attendance Report (289 KB); ATT00004.htm; Conversation with Yessica Adriano (13.2 KB); ATT00005.htm; Investigation Summary--Brittany Brodie (17.6 KB); ATT00006.htm; FW: Last Chance to Register for February Monthly Luncheon (432 KB); ATT00007.htm; Attendance Recognition Program (6.82 KB); ATT00008.htm; FW: DA's (2.99 KB); ATT00009.htm; Time Line of Events.docx; ATT00010.htm; 90 Day PIP--Reena's Notes.docx; ATT00011.htm |

Sent from my iPhone

Begin forwarded message:

> **From:** "Reena Mathew" <rmathew@santanderconsumerusa.com>
> **To:** "Eldridge Burns" <eburns@santanderconsumerusa.com>
> **Cc:** "Lisa Vanroekel" <lvanroekel@santanderconsumerusa.com>
> **Subject: FW: Hello**
>
> Hi Eldridge,
>
> Please see below.
>
> Thanks,
> Reena

---

**From:** Reena Mathew
**Sent:** Tuesday, April 19, 2016 2:49 PM
**To:** Pamela Blackburn <pblackburn@santanderconsumerusa.com>
**Cc:** Lisa Vanroekel <lvanroekel@santanderconsumerusa.com>
**Subject:** Hello

HI Pam,

I'm sorry to have to bring this up again, but I would like to make a complaint regarding how I have been treated by my direct management team in regards to making false accusations about my performance. The situation started after I informed mgmt. I was pregnant in October/2015 and has escalated ever since. I know you are somewhat familiar with what's happened, but would also like to include a breakdown of the last few months.

First, I was placed on a 30 day PIP in December 1, 2015 without **any** prior coaching's (which goes against our usual protocol and was given an inaccurate/false timeline a month later) and was then placed on a

Mathew 322

App.269

90 day PIP in January 15, 2016. Currently, my 90 day PIP ended on April 15, 2016, however, along the way, mgmt. brought issues to my attention for our follow up meetings with information that was inaccurate or completely untrue. This all has continued to snowball even though I have met my workload objectives, have not missed one day being pregnant and have continued to be harshly/critically judged for any work that I complete. I have been here 5.5 years (without ever having a performance issue or complaint) and have never been treated so **poorly** by anyone in this company.

I am currently 8 months pregnant and this has also brought on undue stress.  I escalated the issue to upper HR management back in December 2015/January 2016, and some things were looked into/corrected (reinstated my merit/bonus which they were going to initially take away and I received a Mets Expectations), however, the false accusations continue. I cannot in good conscience allow current mgmt. to continue to do this to someone and think it's ok.

I had my 90 day review Friday morning on April 15, 2016 and was taken aback by the information that was incorporated (it reminded me of the timeline all over again). I have attached for your review the initial timeline (please see email titled Timeline of Events) that was given to me a 1.5 months after I was placed on the initial PIP on December 1, 2015 (as you can see the first bullet is a false statement, in addition to others on the document, and I also made upper HR mgmt. aware—please see attachment titled FW: Last Chance to Register for February Monthly Luncheon) and I have also attached the 90 day recap which was given to me on Friday, April 15th (last attachment). I have included my notes in red and have also provided supporting documentation.

Pam, I have stated in the past that I have no issue taking accountability for mistakes I have made or working on areas of opportunity, however, it needs to be done fairly (follow protocol) and accurately (without false information). I have been very disheartened these last few months and cannot believe that Management in HR thinks it is ok to treat someone like this. We are HR and need to be held to a higher standard, follow our own policies/procedures and be ethical in our dealings if we are to set the example for the company.

Thank you for your time and please let me know if I can provide anything additional.

Sincerely,

Reena Mathew

**Reena Mathew, PHR**
Santander Consumer USA Inc.
HR Business Partner

PHONE          214.292.2772
MOBILE         214.364.9136
FAX            214.630.0828
EMAIL          rmathew@santanderconsumerusa.com
WEB            www.santanderconsumerusa.com
BENEFITS HOTLINE   214.540.2010

--------------------

Mathew 323

This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. The information contained in this e-mail is confidential and intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this message in error or there are any problems please notify the originator immediately.

The unauthorized use, disclosure, copying or alteration of this message is strictly forbidden. This mail and any attachments have been scanned for viruses prior to leaving sender's company network. Neither the sender nor the sender's company will be liable for direct, special, indirect or consequential damages arising from alteration of the contents of this message by a third party or as a result of any virus being passed on.

Sender's company accepts no liability for the content of this email or its attachments, or for the consequences of any actions taken on the basis of the information provided, unless that information is subsequently confirmed in writing.

3

Mathew 324



**March 23, 2016 Meeting Recap: Reena Mathew (HRBP), Yessica Adriano (HRM), Stephanie Elad (HRD)**
*Note that Yessica's response was provided during the 90 day recap discussion on April 15
**Reena's notes in red**

**Attendance**—Continues to be good; continue to give enough notification. Agreed

**Time Management**—Give recap of DA's and investigations moving forward.
Please continue with the specifics of the DA's and investigations handled every week.

**Consulting**—Expectation of HRBP's is moving towards independent judgment calls; HRBP's are expected to formulate plan at the beginning and recommendation at the end; if additional steps need to be taken, use judgment call; you all said you understood my hesitation due to current situation but stated that is the direction we are moving; also to rely on past consulting and judgment calls—we've been on the same page 90% of the time. If there are escalated issues or if Manager is unavailable, we can go to other HR Managers. Want us to be confident in making decisions. Stephanie then proceeded to ask about the timeline of events regarding the Perfect Attendance proposal numbers. I stated I had sent an email on Friday but that was after I had asked her if she needed them before I left and she had stated yes. We had a lot going on and I wanted to tie up loose ends before I left. Because it was a basic report, I didn't think it would be so hard to retrieve from HRIS and stated we have issues in getting a timely response (and that goes for several of us). Stephanie stated she felt as though she was 'misled' and it was a 'misrepresentation' stating that I had been in contact with HRIS. I said that was not my intention and that what I meant was we've been working on this project back and forth for some time and Paula was aware of this upcoming proposal. That is all I meant from that statement. I sent the email on Friday and we only received a response that next Wednesday after Yessica sent another follow up email after I had informed her I wasn't getting a response (even if it just meant them sending us instructions). HRIS then stated they couldn't pull it and Sabrina and I spoke and she manually filtered the report but wasn't getting the information we needed and then HRIS stated they were able to after that. I even worked during my vacation to get this settled and I also mentioned that this was a project that I took on (after Brad Denetz and I have spoken for some time and Stephanie said I wasn't taking ownership) and it wasn't assigned so I wouldn't not allow this issue to paint me in a negative light. Stephanie mentioned she had concerns and that I wasn't meeting the expectation of an HRBP however I stated that is not what was said in the last meeting (stated I was where I needed to be as an HRBP).


Reena, in regards to the consulting, the expectation has always been that you are able to perform independently in your role. Although I have been providing more oversight as of late, due to the performance issues identified, with your background, experience and tenure with the company, you are expected to perform your job effectively, which means handling most of your tasks without oversight. I am available if you have questions or if you need support with more complex issues.


As it relates to the incident involving the Perfect Attendance Proposal, I wanted to outline the sequence of events:
March 9 (3:27pm) – Stephanie sends the proposal to EVP Tony Kutiper, asking him to review and advise if this is something he wants to implement in the call centers.
March 10 (8:25am) – Tony responds and says yes. He also requested additional information, which you responded (9:18am) and said you would provide.
March 11 (4:28pm)– You send an email to Stephanie stating that you will be out of the office the following week and will have the information that Tony requested when you return I said **'if that's ok' at the end of that sentence *(Please see Email 1)***…..that makes a huge difference in the statement. Stephanie stated she would like it by next week and I stated I would get those numbers for her. Again, as I mentioned to Stephanie/Yessica, we had 3 investigations (which is very unusual to have so many in one week) and I was trying to wrap everything up before I left. We had only received the request from Tony Kutiper on Thursday asking if we could provide additional information. I sent an email to HRIS as soon as I heard back from Stephanie on Friday asking if they could pull the report and provide to Mgr/Director while I was gone and never heard back until Wednesday of the following week (after several of us, including myself on Vacation



followed up with them) *__Please see Email 2 and 3__*. It would've been nice if we could've received instructions on how to pull it. It turns out we were given a raw data spreadsheet and information was pulled but then in the end there were discrepancies and HRIS said they would have to rerun the information. Even if I did send an email on Thursday (before I left for vacation) to HRIS, it still would've taken time to receive the information, sort the information, present in a spreadsheet as this is a new and manual process to everyone. A day to turnaround the information would be impossible and that it why I stated I would have everything upon my return so that I could take care of everything and ensure everything looked correct. You also stated "I am partnering with HRIS to assist but wanted to give you a status update". Stephanie replies back (4:46pm) and states she would like to get this information to Tony sooner, preferably the next week. You responded at 4:49 advising that you would ask HRIS to send the information directly to Stephanie and Tony. Stephanie replies at 4:59 stating that she would like the information sent to her, and to me, so that we could review prior to sending to Tony.

March 11 (5:07pm) – You send an email to HRIS requesting the information.

When asked about the timeline of events, your response was that you had been working with HRIS months ago on this project. However, upon further investigation, HRIS does not recall having any conversations with you about this particular report. They did recall you asking if Kronos could be updated to capture this specific information. **This is a completely false statement**; I stated that I had mentioned to HRIS the Perfect Attendance proposal months ago and they were familiar with what the *project looked like and what our thoughts were re: the direction we were going*. We initially wanted to implement it in the Summer of 2015 but Kronos did not have the capabilities and with the new update we were receiving, I was told it was something we could request from Kronos.

In any event, your statement that "you were partnering with HRIS to assist" was misleading and is considered a misrepresentation of the truth.  Considering this whole PIP is a misrepresentation of me and my work ethic as well as the truth (placed on a PIP without ANY previous coachings during my tenure) as I have stated this numerous times when this whole issue was being investigated (this is not the first time there are blatant lies as documentation), this is an incredible insult to me and feel as though my words are being twisted to paint me in a negative light.

I don't believe that you prioritized this request properly as the request to HRIS should have been sent much sooner. This ties in with feedback we have provided to you regarding sense of urgency and ownership of your work. This is your project and you are expected to work through the challenges and escalate to your leadership when you are unable to do so. In this case, that didn't happen. In fact, someone on the team who is junior to your position was able to step in and identify issues and help to resolve them, which ultimately led to us being able to provide the report to Tony—False statement; report was provided by HRIS after we had given them pay codes, but I provided the end result. No one assisted me with that. Significant progress was made, in your absence, and none of the issues were surfaced by you. Report was only provided after I followed up, along with Manager, to get the ball rolling. This was while I was out on vacation. Your role in the project was to send the request to HRIS, and then wait for them to send you back the report. When that didn't happen, you sent several emails blaming them and complaining about their response time. Instead, what I would have expected was to ensure that the request was sent more timely, followed up with them to ensure understanding and collaborate to complete the task. I would've but the information was requested for the following week while I was out on vacation. Again, we had three major investigations and I only received the request on Thursday, I apologized for thinking it would be ok to have everything submitted when I returned as it's **not something that could be pulled in a day**. And yes, as HRIS, I would think that if we are requesting something from an EVP, we would at least get a response. I think that is a reasonable assumption and is not placing blame. If I hadn't followed up during vacation and then escalate to Manager, who knows how long it would've taken to hear back.

When we spoke with you regarding this incident, there was a lot of blame placed on the HRIS team, and at one point you even blamed Tony Kutiper, for not responding promptly. First of all, Tony did respond promptly (within a few business hours). Second of all, Tony is the client, and his response time is not of your concern. Our team is here to provide service to Tony and his team, so we need to prioritize his requests with a sense of urgency. **This is a complete lie**.



When/where/what time did this happen? This is made up information and I did not once mention Tony Kutiper's response time nor his name—why would I? I cannot even believe this would be placed in here as it is completely untrue. ***I would like to know who added this statement.***

Since our discussion, another issue has arisen, in regards to the Perfect Attendance Proposal project, that I feel needs to be brought to your attention. On Monday, March 28 at 11:12am, Stephanie sent you an email requesting Talking Points for the program and an updated attendance report. The deadline was EOD that Friday (April 1). Stephanie also requested that you send it to me for review and feedback prior to sending to her. The information was not sent to me until 7:17pm on April 1. This did not meet the deadline that Stephanie sent. You called me at 5:45pm and 6:14pm on April 1. I called you back a little later that evening and you said that you were stuck in an investigation (Associate Brittany) with AVP Jorge Munoz. I reminded you that my direction was that you should complete the Perfect Attendance proposal on Friday and complete the investigation the following Monday. Another false statement—I had taken my children to a Dr's appt that morning and only returned at 11:45am. As soon as I got in you had informed me with Jorge in my office that we had an issue come up and you needed me to look into it right away. We also had a one hour HR call and as soon as you and I spoke and I started the investigation right after. I also reminded you that day and the day before (**you did not remind me of anything**) that I was going to shut my door to work on the proposal for Stephanie and that you had to review it (this was Thursday). You said that was fine so for me to come in and you to ask me to start on this investigation is contradicting yourself. You knew before you left that I needed to review with you the proposal as I had mentioned it Thursday and Friday and you left while I was behind closed doors as I had been for a good portion of the afternoon and that is why I panicked and called you. I had no idea you would leave without consulting with me knowing I had that due. I stayed till 7:45pm to complete the numbers (which again is a manual process and takes time— we had only received the raw data Thursday afternoon; you even stated you would let Stephanie know that we received the data only a couple of days after her initial request on Monday (Stephanie's request was Monday, we received the data Thursday afternoon and we were in all day HR meetings Tuesday, dinner after/Wednesday of that week)—that is after HRIS said they could only get it to us COB Friday and I escalated to you and you intervened to get it by Thursday afternoon). ***Please see email attachment 4.***

Reena, the concern about your ability to make good decisions about how to utilize your time remains of significant concern. I was clear that the deadline to Stephanie was your primary task for Friday. The fact that you chose to spend time on the investigation instead, even after I told you specifically to hold that until Monday (Not true—you asked me to start this right away when I came in Friday) shows that you are continuing not to make good choices regarding how you spend your time, and also that you are not following specific instructions from your immediate supervisor and your director. Several expectations of your role are not being met here including ability to meet deadlines, ability to push back on the business, and ability to manage your time appropriately. The Talking Points should have taken no more then 20-30 minutes to complete (again, all day HR meeting Tues/Wed and Thurs playing catch up and started on numbers which were only provided Thursday afternoon). This was assigned on Monday, and not submitted until after 7:00pm on Friday and was not sent to me prior to going to Stephanie, as she specifically instructed you to do. Stephanie set this deadline because she was scheduled to review this information with Tony and the SVP's on Monday morning. The delay on your part created more work for Stephanie as she did not feel comfortable cascading this document to the SVP's during their scheduled meeting on Monday morning, as I had not had the chance to review and advise. Stephanie's intent was to provide this deliverable to the clients on Monday and she was unable to do so, because you missed your deadline. I did not miss my deadline—the only thing I missed was your review in which we did our best over the phone given the circumstances. Staying close to 8pm on a Friday evening shows good faith effort that I tried my best to get everything completed by EOD.

Since then, the attendance report was submitted but had material errors and had to be sent back. Unfortunately, the information was sent to the business incorrectly because you didn't validate the information prior to sending to Stephanie I in fact validated and let you know and Stephanie know that is a completely new process (I don't claim to be an Excel whiz and unfortunately when I deleted the FMLA/LOA columns, the totals still counted them. I did not know



Excel would do this. I immediately sent the revised version the next day that took away the one person who may have met the expectations. This was an honest mistake. It is your job to ensure the accuracy of the information you produce before you send it. These types of mistakes causes the business to lose credibility in their HR partners I'm sure they would understand that this is a completely new process (again, which I implemented myself) and mistakes are going to happen along the way.

As it relates to the Brittany investigation, on April 6, you came to me to discuss. During that conversation, I provided you with feedback that you had not done as thorough of a job as needed in regards to this matter Completely false—I IMed you that day (**I was WFH that day and we never had any *verbal conversations***) and asked if you had your notes ready so I could submit my summary to you and you said you didn't and that you would have them Thursday—I then asked if it would be ok to turn in the summary Thursday after I received your notes and you said that was fine. On Thursday, you stated Jorge wanted one more person interviewed and I stated that would be fine and I gave you my notes on Friday after speaking to the associate as she was an afternoon associate, and asked you to speak with 1 additional Associate. Your summary was not submitted to me until April 8, and was not complete as your notes were not attached and you did not provide all of the proper information (i.e. DA history) Yessica, I sent you my notes and asked you to include your part of the notes; I did not know you were going to send to Stephanie right away. In that case, your notes for Brittany would've been missing as well and at that point you should've asked me for all the notes before you sent it.  With every previous investigation, I have always sent my notes along with the summary. Reena, it's concerning that this investigation would take a week to complete and that you would need coaching on how to approach the situation, considering your tenure and experience. This is a fairly simple matter to address. This delay has created some concern with the business. Completely false again—I came to you on Wednesday done with interviewing associates and you were not done with your notes and asked if you could give them to me later. You still were not done on Thursday and that is why I sent everything to you on Friday stating **'Could you please fill this part in?' We even met-- you, me and Sabrina Friday afternoon and Sabrina is my witness. I told you during our meeting when you stated we had to be timely with investigations and that Stephanie was questioning why this particular investigation took a week—I even mentioned that I had everything ready on Wednesday and you had not (I smiled at this point letting you know that you who didn't have your part ready) and that you asked me to meet with one more person per Jorge. You even stated, 'Oh that's right'. *Please see email 5 and 6.*

Finally, to clarify a point in our last meeting (March 8), when I stated that things were progressing well, I was referring to the 2 week period we were discussing. I did not state that meant that your performance was now at a "meets expectations" level. The issues highlighted in your PIP are still of concern, and at this point, you are still not meeting the expectations of an HR Business Partner.

.



**90 Day Review**
**April 15, 2016**

**Timeline**

| | |
|---|---|
| 01/15/2016: | Administer PIP/Action Plan |
| 01/29/2016: | 1st Biweekly follow up meeting |
| 02/17/2016: | 2nd Biweekly follow up meeting |
| 02/26/2016: | 30 Day Review |
| 03/08/2016: | 3rd Biweekly follow up meeting |
| 03/23/2016: | 4th Biweekly follow up meeting |
| 04/15/2016: | 90 Day Review |

**Attendance**
*Met Expectations*

You have been consistent in providing appropriate notice for requested time off. In most cases, additional hours were worked to offset the time you have left early/came in late.

**Time Management/Effective Work Habits**
*Does Not Meet Expectations*

During this 90 day period, we have discussed and provided you examples to illustrate the continued areas of opportunity in this category. We have provided you with feedback regarding:

- Providing more detail in the work you submit (time study, weekly recaps)
- Submitting work accurately

*SC Action Plan*                                                                                   *Revised 01/2016*



- - 2 term requests submitted incorrectly, 1 with incorrect data  and 1 without investigation summaries attached (Monisha 02/15, Brittany 04/08)—Please see below re: Monisha; Please see above regarding Brittany
  - Incorrect data on attendance report (submitted to Stephanie on 04/06)—Please see notes above
- Missing deadlines (missed deadline to Stephanie on attendance talking points/report, Monisha investigation notes)
  - The attendance talking points were assigned by Stephanie on 03/28 with a deadline of 04/01. In her email, Stephanie specifically requests that you have me review the document prior to sending the final copy.  You submitted your documents to Stephanie at 7:17 pm that day, without my review.  In a later conversation, you stated you didn't know I was leaving early that day, I advised you I was available all day and did not leave until 4:45 pm. You may have been available but I was working on the investigation you had assigned me.  Hence, the prior day 03/31 I had reminded you of this priority and again on 04/01. You did not remind me of anything—I had come to you on 3/31 stating I was going to close my door as soon as I came back from the Dr's appt and I even told you that I needed you to review per Stephanie and that was my priority. The document was sent back, so I could review (several edits had to be made) in order to deliver a finished product to Stephanie
  - Monisha Investigation- On 02/15 we had a discussion and edits for the document provided to you by Stephanie, she advised to have this completed first thing on the morning of 02/18, it was not received until that afternoon without the edits Edits had to be made, but again, we had to meet with Monisha Hughes Trigg one more time, per you and Stephanie, to see if she would admit to anything else (calling or saying anything to John Leavell or his wife); AVP Mitzie Jefferson is my witness for this meeting.
- Timely follow up (email response to Stephen, completing Brittany investigation timely, reaching out to HRIS timely to complete request from an EVP, DA's being completed within 24 hours)-I have already explained to Stephen why I didn't feel comfortable putting things in writing—this document is a perfect example. Additional false statements being made about my work performance—previous one was the timeline provided much later after the initial 30 day PIP had no documentation attached. *__Please see email 7.__*
- Thoroughness and Quality of Work (Monisha summary having to be sent back, Brittany investigation, attendance talking points)
  - Monisha summary was submitted without the edits that were provided
  - Brittany investigation was submitted without the investigation summaries, without DA history, and revisions had to be made to the Substantiated and Unsubstantiated categories to reflect what the interview notes reflected
  - The perfect attendance talking points document had to be revised in the following ways in order to be business presentable:  inserted introduction, added program objective, included sub topics (objective, eligibility, and rewards), reworded and expanded rules of the program, and changed format/font. Per Stephanie, she said this communication would go out to the associate level and is how I drafted it. You told me that following Monday, she was going to present it to the Senior Mgmt. and it was for them and that is why we had to make it a little more formal. Miscommunication on mgmt.'s part on who it was going to. *__Please see email 8.__*
- Importance of teamwork in completing administrative tasks that come in through the @HR_help inbox. Specifically, DA administration for LEW. In March/April, you entered only 16 DA's into WorkDay, compared to 568 total for the site. This does not meet the expectation to do your share of the work to support the team.  This is primarily a Generalist duty and if the Generalist is out, I will always cover. Per previous follow up conversation, you stated you and I had knocked everything out when Generalist was out for a week. Again this is a Generalist duty unless there are extenuating circumstances. If that is the case, I shouldn't be penalized when I ask for assistance with DA's that come through during the week. No one helps me with those and I have asked several times in the past for assistance.



Also, you were coached on misrepresenting the truth in an email to Stephanie regarding the sequence of events in regards to the attendance report issue—False accusation—I already explained and stated I apologized that you interpreted it that way. You did not know the full history of the conversations HRIS and I have had. That is what I was referring to.

After you having decided that you did not want to continue with the time study, we agreed that you would just provide on a weekly basis (every Friday by 5 pm) a count of the number of DA's handled and investigations conducted. This has occurred regularly. **I did not** decide to discontinue, you both asked me if it was helpful and I said it actually took more time and took away from my job duties. You ALL decided that I didn't have to do it anymore because it was meant to be helpful and not take time away.


**Consulting**
*Does Not Meet Expectations*

For the first 2/3 of the PIP period, Yessica worked with you very closely and provided constant guidance There was never constant guidance—I came to you with status updates and to see if you were good with my recommendations. Even with that, there were some issues, as highlighted in the previous section. Additionally, we asked you on more than one occasion if there were development or training opportunities that you wanted to take advantage of. You declined those offers I haven't declined anything; I haven't had time to do much of anything, however, I even presented you with two Dallas HR courses I wanted to take along with a few Webinars I have signed up for and completed.

During this 90 day period, we have provided you with feedback regarding:

- Ability to push back on the business to ensure that you complete your job tasks/duties/deadlines (Brittany investigation) You asked me to start investigation.
- Lack of accountability for your behaviors (blaming HRIS—valid concerns with follow up/response time, Tony— **completely untrue**. These things get in the way of us being able to serve our clients effectively.
- Addressing the business regarding feedback that they may have provided regarding your performance. Specifically, asking "who told on me?"—Completely false—you came to me and stated Brad came to you about DA's that weren't completed while we were at the SHRM conference. I sent email to AVP's in advance and they were all ok. ***Please see email 9***. I did mention to AVP Sam Akins that if he ever needed anything, to please come to me. Even Brad said it was blown out of proportion and he was only checking on the Rhonda issue and generally asked if the DA's had been done. If I was so bad, why would the SVP/Site Director along with ***every single*** AVP send me YEI points stating how much they enjoyed working with me in the last year? When I brought this up in my 90 day meeting, Stephanie responded that YEI points received from our SVP/Site Director are 'irrelevant' when in fact, this is what speaks the most to our performance as Partners to the business. This is unprofessional and negatively impacts your ability to provide consulting services to your client group.

Additionally, we received feedback from the business clients regarding your performance and how you interact with them. The comments we received are as follows:

- Limited interactions, but it has been better since January. I'd rather just go to someone else on the HR team to get it done right. They are always helpful and on point.
- I am getting DA's within 2 days. I never get it within 24 hours though, which is what I thought the expectation was.
- I enjoy working with her but notice that with difficult conversations she is timid and struggles. She asked me to sit in on a conversation and when it got difficult she said that I would take over. This wasn't my Associate and I was unprepared.



- She doesn't like making decisions without checking with her manager. She isn't confident when dealing with issues. She is scared to make decisions.
- I had to sit in on a term that Reena was supposed to handle. Reena got flustered and turned it back to me to handle. It's obvious that she can't handle conflict.
- She has had to ask for an extension (beyond 2 days) for a DA.
- I'm much more comfortable and confident working with others on the HR team because they respond timely and are confident in their decision making process.
- She is very nice. Just don't ask her for anything.

*As a reminder, it is not appropriate for you to go back to the business to discuss this feedback. In previous conversations, you mentioned Jorge, Mitzie and Greg gave you feedback regarding issues and turnaround time. If this is the case, I would like something in writing because I believe this to be false information and a misrepresentation of me and the truth as this contradicts everything I was ever told by them in writing via YEI. You also won't inform me where this information came from and who said it in what context so therefore along with other inaccuracies in this document and the previous 'timeline' that was provided me, I find it faulty. It is my belief that this information was presented in a negative light and negative information was therefore given. I have never had any issues, prior to this, (with anyone complaining) with any of my Business Partners in the 5.5 years here at SC.*

At this point, you have not shown the ability or capacity to provide effective consulting services to the AVP group.

As we conclude the PIP process, it is important to state that you are still failing to meet the expectations for the HR Business Partner role.


_____      _____

**Associate Signature**                              **Discussion Date**


_____      _____

**Manager Signature**                                **Director Signature**

To:   Page 2 of 2                      2016-05-04 11:53:03 EDT                18665807499 From: Spielberger Law Group 2

Case 3:23-cv-01494-N   Document 36   Filed 09/20/24   Page 246 of 377   PageID 1071
May.04.2016   07:59 AM Philip&Reena Mathew        9724011826           PAGE.  2/  2

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☒ FEPA | |
| | ☒ EEOC | 450.2016.02634 |

| Texas Workforce Commission, Civil Rights Division | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

| Name (indicate Mr., Ms., Mrs.) | | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|---|
| Ms. Reena Mathew | | (214) 417-0821 | 10/27/1976 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 1355 Valley Vista Dr. | Irving, TX 75063 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Santander Consumer USA | 1000+ | (888) 222-4227 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 2701 Highpoint Oaks Dr. | Lewisville, TX 75067 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

RECEIVED

MAY 04 2016

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
DALLAS DISTRICT

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest — Latest |
| ☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN | 10/2015 — 04/19/2016 |
| ☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION | |
| ☒ OTHER (Specify)  Pregnancy | ☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**Statement of Harm:** Santander Consumer USA discriminated against me because of my sex and my pregnancy and terminated my employment in retaliation for concerns I raised to Human Resources. On October 30, 2015 I informed Santander Consumer USA HR Manager Yessica Adriano that I was pregnant. Prior to informing Santander Consumer USA of my pregnancy, I had never received any poor work performance evaluations nor had any disciplinary action levied against me. However, shortly thereafter, on December 1, 2015, I was placed on a thirty-day performance improvement plan without any warning or cause and raised my concerns in regards to the disparate treatment to Human Resources. I was initially denied my merit increase and annual bonus and upon the expiration of my first performance improvement plan, I was placed on a second, ninety-day performance improvement plan without cause. Subsequently, as a result of my pregnancy and my concerns raised to Human Resources, I was subjected to increased scrutiny as compared to other employees, in an effort to effectuate my termination.

**Statement of Discrimination:** I believe I have been discriminated against because of my sex in violation of Title VII of the Civil Rights Act of 1964 (Title VII) and because of my pregnancy in violation of the Pregnancy Discrimination Act of 1978 (PDA).

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 5/4/16 _____ *R S Mathew* _____ | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |

REENA MATHEW                          §
                                      §
VS.                                   §          EEOC CHARGE NO. 450-2016-02634
                                      §
SANTANDER CONSUMER USA INC.           §


## POSITION STATEMENT OF SANTANDER CONSUMER USA INC.

Santander Consumer USA Inc. ("Santander") categorically denies Reena Mathew's ("Mathew') allegations in her Charge of Discrimination ("Charge").  In her Charge, Mathew claims that she was discriminated against because of her gender and pregnancy, and was retaliated against for making a complaint of discrimination.[1]  Mathew's claims are based on a fantasy in which she was a model employee, and they ignore the reality of her own poor job performance.  The evidence demonstrates that Mathew consistently failed to meet expectations in her job performance.  This poor performance led to her supervisors placing her on a Performance Improvement Plan ("PIP").  However, despite receiving extensive coaching and direction at biweekly meetings to discuss her progress during her PIP, Mathew failed to demonstrate necessary improvement.  Accordingly, Mathew's employment was terminated due to her habitual poor performance.

### I.
#### FACTUAL BACKGROUND

#### A.    Santander

Santander is a full-service, technology-driven consumer finance company focused on making and servicing automobile loans.[2]  Santander is headquartered in Dallas, Texas.[3]

---

[1] *See* Reena Mathew's Charge of Discrimination, Charge No. 450-2016-02634.
[2] Santander Consumer USA Inc., Overview, http://www.santanderconsumerusa.com/about/overview (last visited January 21, 2016).
[3] *Id.*

App.281

### 1.    *Equal Opportunity Employer*

Santander is an equal opportunity employer, committed to providing equal opportunity to all persons regardless of race, color, sex, creed, gender (including identity and expression), religion, national origin or ancestry, ethnicity, age, marital status, registered domestic partner status, sexual orientation, disability, physical or mental disability, medical condition including genetic characteristics, veteran status or any other legally-protected basis.[4]

### 2.    *Anti-Harassment and Anti-Discrimination Policy*

In addition to equal opportunity policies, Santander has an Anti-Harassment and Anti-Discrimination Policy.[5]  The policy prohibits unlawful discrimination or harassment of any kind.[6]  Furthermore, the policy outlines a complaint procedure for associates who feel they have experienced job-related harassment.[7]  If an associate feels that he/she has been treated in an unlawful, discriminatory manner, he/she should promptly report the incident to his/her manager and/or Human Resources.[8]  Managers are required to immediately report any such claims to Human Resources as well.[9]  Human Resources then investigates the matter, takes the appropriate action if necessary, and is mindful to keep complaints confidential to the extent possible, consistent with Santander's need to conduct the investigation and take any necessary action.[10]  If an associate feels that he/she is experiencing any job-related harassment from a member of Human Resources, he/she is instructed to go immediately to Santander's Legal Department.[11]

---

[4] *See* Exhibit A.1, excerpts of the Santander Consumer USA Inc., Associate Handbook, 5-6 (2013) [hereinafter *Santander Handbook*], Exhibit A; Affidavit of Yessica Perez, ¶3.
[5] Exhibit A, Affidavit of Yessica Perez, ¶4.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*

Santander's Anti-Harassment and Anti-Discrimination Policy also specifically states that retaliation is prohibited by Santander's policies and the law.[12]  Associates are informed that if they think they have been retaliated against, they may file a complaint with the appropriate agency and that the nearest office can be located at www.eeoc.gov.[13]

### B.    Mathew's Employment With Santander

Mathew joined Santander in January 2011 as a Human Resources ("HR") Business Partner at Santander's Lewisville, Texas location.  In this role, Mathew was responsible for, among other things, managing employee relations issues, processing employee disciplinary actions, and conducting investigations into employee conduct as necessary.[14]  As an HR Business Partner, Mathew originally reported to HR Manager Angelina Hullum.[15]

### 1.   *Mathew Performed Poorly while Reporting to Ms. Hullum*

While reporting to Ms. Hullum, Mathew exhibited ongoing performance deficiencies.[16] Specifically, Ms. Hullum noted the following incidents in which Mathew's performance was either brought into question or failed to meet expectations:

- **April 9, 2015:** Mathew submitted a monthly recap that illustrated her lack of work.  The recap reflected that Mathew had participated in only two side-by-side meetings with managers and only four jumpstarts during the month.  Mathew also failed to indicate the number of meetings she had that month with business leaders.  It was expected that an HR Manager such as Mathew should participate in significantly more than two side-by-side meetings with managers over the course of a month.[17]

---

[12] *Id.* at ¶5.
[13] *Id.*
[14] *Id.* at ¶7.
[15] *Id.* at ¶10.
[16] *Id.*
[17] *Id.*

-3-

- **May 18, 2015:** Mathew submitted a monthly recap which reflected the fact that she did not attend *any* jumpstarts for the month, did not conduct *any* trainings, and the number of meetings with business leaders was again not included.[18]

- **July 1, 2015:** Mathew asked for permission to leave work early for a doctor's appointment, of which she had not previously advised.[19]

- **July 2, 2015:** Ms. Hullum asked Mathew to correct onboarding discrepancies in the Workday program, to which Mathew responded by asking if this project could be assigned to another department.[20]

- **July 10, 2015:** Ms. Hullum asked Mathew to support a department at another Santander office location due to a staff shortage and an unbalanced workload identified among the HR department, to which Mathew asked for assistance, noting that she felt overwhelmed with her current duties.[21]

- **August 13, 2015:** Mathew's monthly recap reflected that she held *only one* side-by-side meeting, attended three jumpstarts, and she had over 10 meetings with business leaders, and recapped only one training that she had with a manager.[22]

- **August 23, 2015:** Mathew texted Ms. Hullum to advise her that she would arrive late the next day, requiring Ms. Hullum to rearrange her schedule so that she could provide coverage for the HR department in Mathew's absence.[23]

- **July-August 2015:** Mathew complained to Ms. Hullum that her workload was heavy. Ms. Hullum responded by asking her to prepare a time study so that she could pinpoint how Mathew was allocating her time. The first time study submitted by Mathew did not include necessary specifics. As a result, Ms. Hullum had to ask Mathew to provide more specification, which she ultimately did in a revised time study.[24]

---

[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*

- **July-August 2015:** Ms. Hullum had to continually remind Mathew to work her full shift and to provide sufficient notice when requesting to leave early.[25]

- **July-August 2015:** Ms. Hullum advised Mathew that it was important that she submit disciplinary actions to the business in a timely manner and informed Mathew that she needed to assist the HR Team by entering disciplinary actions into the computer system, because everyone needed to assist with the workload.[26]

- **July-August 2015:** Mathew failed to timely finalize pending disciplinary actions and process terminations, requiring that Ms. Hullum regularly step in to complete these assignments.[27]

### 2.  *Mathew is Ranked Last Among all Santander HR Business Partners*

In early 2015, Santander's HR Managers met to discuss the HR Business Partners whom they supervised ("HR Business Partner Evaluation Meeting").[28]   In this meeting, the HR Managers ranked each of Santander's HR Business Partners.[29]   During this ranking process, Mathew was ranked last as a result of her poor performance.[30]

### 3.  *Mathew Continues to Perform Poorly while Reporting to Yessica Perez*

On September 1, 2015, Yessica Perez took over the HR Manager position at Santander's Lewisville, Texas office, and became Mathew's direct supervisor.[31]   As she was present at the HR Business Partner Evaluation Meeting, Ms. Perez was aware that Mathew had previously been ranked last among all of Santander's HR Business Partners.[32]   Additionally, shortly after Ms. Perez began to supervise Mathew, Ms. Hullum shared with Ms. Perez many of the incidents

---

[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *See id.* at ¶8.
[29] *Id.*
[30] *Id.*
[31] *Id.* at ¶6.
[32] *Id.* at ¶8.

in which Mathew's performance did not meet expectations while she was reporting to Ms. Hullum.[33]

Despite Mathew's history of poor performance, Ms. Perez wanted to give Mathew a clean start under her leadership.[34]  For that reason, when Ms. Perez started to supervise Mathew, she had one-on-one meetings with Mathew.[35]   During one of those meetings, Ms. Perez discussed her concerns about Mathew's past performance and encouraged her to seek improvement.[36]

Unfortunately, Mathew's performance did not improve after Ms. Perez began to supervise her, despite Ms. Perez's efforts to coach her.[37]   Rather, Mathew regularly failed to meet performance expectations, as demonstrated in the following incidents:

- **September 3, 2015:** Mathew requested on this Thursday to take off half of the following day.  Ms. Perez advised Mathew that she could leave early the next day, but she needed to provide greater notification for future requests, and she needed to do her best to work most of her shift the following day.  On the following day, Mathew arrived at 9:00 a.m., showing no interest in coming to work early, and she still left early at 2:00 p.m.[38]

- **September 17, 2015:** Mathew again provided Ms. Perez with last-minute notification that she was going to leave early, this time informing Ms. Perez that she needed to leave early that same day.[39]

- **September 28, 2015:** Mathew informed Ms. Perez that she felt overwhelmed with her workload.  Ms. Perez informed her that the HR Business Partner role requires a high level of efficiency.[40]

---

[33] *Id.* at ¶10.
[34] *Id.* at ¶9.
[35] *Id.*
[36] *Id.*
[37] *Id.* at ¶11.
[38] *Id.*
[39] *Id.*
[40] *Id.*

- **October 12, 2015:** Mathew again discussed her workload with Ms. Perez.  When Ms. Perez asked her what was consuming her time, she did not provide Ms. Perez with a quantified response.  Rather, Mathew asked that someone be assigned to assist her with a project in which she had been instructed to create an investigation checklist.[41]

- **October 29, 2015:** Ms. Perez was informed by a business client that Mathew had not completed 10 disciplinary actions that were submitted to her.  This surprised Ms. Perez because completing a disciplinary action is not difficult or time-consuming.  Indeed, completing a disciplinary action should take an HR Business Partner like Mathew no more than five minutes.  When Ms. Perez asked Mathew about the 10 disciplinary actions outstanding, she told Ms. Perez that she was behind and had asked the Assistant Vice Presidents, their business clients, to give her until that Friday to complete them.  Ms. Perez responded by telling Mathew that disciplinary actions are time-sensitive, and if she is ever behind in completing them, she needs to let her know.[42]

- **October 29, 2015:** Mathew again provided last-minute notification that she would miss work.  Specifically, she informed Ms. Perez that she would be arriving late the next day.  This late notice required Ms. Perez to rearrange her schedule to provide coverage for the site.  Mathew then arrived at the office the next day at noon, missing an entire half-day of work.[43]

- **November 6, 2015:** A Santander HR Director, Stephanie Elad, provided Mathew with specific instructions regarding how to respond to what appeared to be an invalid bereavement leave request made by a Santander associate.  Ignoring the specific instructions that Ms. Elad provided to her, Mathew took it upon herself to expend unnecessary time and resources handling what should have been a simple response.[44]

- **November 9, 2015:** Ms. Perez provided Mathew with feedback regarding what appeared to Ms. Perez to be poor time-management on her part.  Ms. Perez specifically addressed how Mathew should have followed Ms. Elad's instructions regarding the bereavement request, rather than expending unnecessary time addressing that issue.[45]

---

[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.*

- **November 16, 2015:** Mathew provided Ms. Perez with same-day notification that she needed to leave early, and asked for assistance with a project.  In her absence, the HR team had to work late to cover Mathew's workload.[46]

- **November 17, 2015:** Ms. Perez coached Mathew and again reminded her of the importance of providing advance notification when wanting to leave early, noting how one team member's absences impact the entire team.  Ms. Perez advised Mathew that the team had to come in early and stay late to cover her workload when she had left early the day before.[47]

- **November 17, 2015:** Mathew informed Ms. Perez that she again felt overwhelmed with her workload.  When Ms. Perez asked her what was consuming her time, she informed Ms. Perez that she had to complete five disciplinary actions, fill out forms for seven talent acquisitions, and respond to e-mail messages, and she was just busy overall.  Ms. Perez found Mathew's complaint unmerited, as Mathew had the lightest workload among all of HR Business Partners who reported to Ms. Perez.  Additionally, Mathew's complaint that she had five disciplinary actions was inconsequential, as each of those should take at most five minutes to complete.  Likewise, her seven talent acquisitions should take two to three minutes each to complete.[48]

- **November 20, 2015:** Mathew informed Ms. Perez that she felt she was extremely busy and needed help with her workload.  She asked Ms. Perez if another HR Business Partner, Hortensia Perez, could assist her with her workload.  Ms. Perez granted her request, and Hortensia Perez took over a pending investigation that was originally assigned to Mathew.[49]

- **November 23, 2015:** Despite receiving an employee's notice of resignation on Saturday, November 21, 2015, Mathew failed to process the termination timely.  Ms. Perez therefore had to process the termination in the afternoon of November 23, 2015.  Upon Ms. Perez's review, it came to her attention that the employee who resigned had previously filed a complaint against her manager, which Mathew had investigated.  Upon reviewing the investigation, Ms. Perez learned that the complaining employee alleged that she could not trust her Assistant Vice President ("AVP") because the AVP was good friends with the

---

[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.*

manager about whom the complaining employee was making allegations. When Mathew had assumed the responsibility of conducting the investigation, she obviously ignored the employee's allegation, demonstrated by the fact that Mathew interviewed the complaining employee and the AVP together. Mathew then concluded that none of the complaining employee's complaints was substantiated.[50]

After learning about the inadequacies of the initial investigation conducted by Mathew, Ms. Perez conducted her own investigation, which resulted in substantiating some of the allegations made by the complaining employee. When discussing the situation with her, Mathew informed Ms. Perez that she (1) did not read the e-mail message sent by the complaining employee in its entirety, and (2) did not believe the complaining employee during the investigation. In response, Ms. Perez reprimanded Mathew, informing her that she must always investigate complaints with an open and fair mind.[51]

- **November 24, 2015:** Mathew again complained about her workload, asking that someone assist her with a pending project.[52]

- **November 25, 2015:** Mathew again provided Ms. Perez with a same-day notification that she would be absent for part of the workday. Ms. Perez advised her, once again, that last-minute notifications like this one places a burden on the other members of the team, who must pick up her workload in her absence.

- **Week of December 12, 2015:** Ms. Perez was informed that a Vice President ("VP") and several AVPs were concerned with the timeliness of an investigation being conducted by Mathew, as well as how she was conducting the investigation. They felt that Mathew had already reached a conclusion prior to looking into the matter at hand. Accordingly, they asked Ms. Perez to assign a different HR representative to the matter, as they no longer trusted Mathew's judgment.

- **Week of December 18, 2015:** Ms. Perez received negative feedback regarding Mathew's work performance from Santander's senior leadership team. Ms. Perez provided Mathew with constructive criticism and coached her on how to improve her performance, consistent with the feedback that Ms. Perez had received from Santander's senior leadership team. After receiving

---

[50] *Id.*
[51] *Id.*
[52] *Id.*

this constructive criticism from Ms. Perez, Mathew approached members of Santander's senior leadership team to question them about the negative feedback that they had provided to Ms. Perez about her.  The senior leadership team then came to Ms. Perez to inform her that Mathew had questioned them, and told Ms. Perez that they felt uncomfortable and surprised by Mathew's approach.[53]

- **December 28, 2015:** Santander experienced a payroll issue that required an HR professional from every location to assist in resolving the issue.  Ms. Perez asked Mathew to work on this issue.  Mathew became very nervous and continually approached Ms. Perez to ask how to handle each step.  Therefore, Ms. Perez had to call Sabrina Boyd, an HR Generalist, to ask her to come in on her day off to handle the payroll issue.  Ms. Boyd arrived at the office, took over the payroll issue, and worked to find a resolution without difficulty.[54]

### 4. Mathew is Placed on a Performance Improvement Plan

Due to Mathew's ongoing performance issues, Ms. Perez consulted Ms. Elad about next steps regarding Mathew.[55]  Ms. Elad then consulted with her supervisor, Pamela Blackburn, Executive Vice President of HR.[56]  Although Ms. Elad recommended that Santander explore the possibility of offering Mathew a severance agreement to leave, Ms. Blackburn denied that recommendation.[57]  Rather, Ms. Blackburn suggested that Ms. Elad and Ms. Perez place Mathew on a Performance Improvement Plan ("PIP") to provide her with another opportunity to improve her performance.[58]

Accordingly, on January 15, 2016, Ms. Elad and Ms. Perez placed Mathew on a PIP, and provided her with a 90-day action plan.[59]  In this PIP, they identified performance standards for Mathew's job, along with a description of how her performance to date had failed to meet those

---

[53] *Id.*
[54] *Id.*
[55] *Id.* at ¶12.
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] *Id.* at ¶13.

standards.[60]    The 90-day action plan indicated three areas of focus: attendance; time management/effective work habits; and consulting.[61]    Ms. Elad and Ms. Perez then provided Mathew with tasks associated with each of these areas of focus, along with a description of any support or resources that were available to assist her in making the necessary improvements to her performance.[62]    For example, they offered to provide Mathew with additional training on a number of topics, and asked her to request the training by February 5, 2016.[63]    Additionally, in light of Mathew's continual complaints that her workload was too heavy to handle, they reassigned the work associated with Santander's 8585 location to another member of the team.[64]    Finally, they informed Mathew that she would have biweekly reviews with Ms. Perez to discuss her performance in each of the areas of focus.[65]

### 5.  *Mathew Continues to Perform Below Expectations*

On January 29, 2016, Ms. Perez met with Mathew to discuss her performance at a first biweekly follow-up meeting.[66]    Mathew noted that she had been properly providing Ms. Perez with 48 hours'-notice before taking time off, which met Ms. Perez's expectations as to the focus area of attendance.[67]    Ms. Perez and Mathew then discussed Mathew's time study, in which she had documented what she did throughout the day and how much time she devoted to each item.[68]    Ms. Perez reminded Mathew that when she received a project, it was important to respond

---

[60] *Id.*
[61] *Id.*
[62] *Id.*
[63] *Id.*
[64] *Id.*
[65] *Id.*
[66] *Id.* at ¶14.
[67] *Id.*
[68] *Id.*

timely.[69]   Further, if she found herself unable to complete an assignment on time, she needed to provide an update or explanation of what occurred, along with a new estimated time of completion.[70]

During the January 29, 2016 meeting, Ms. Perez asked Mathew if she would like to attend any type of class to assist her in meeting her PIP objectives, and asked her to identify any courses she would like to attend no later than February 5, 2016.[71]   Mathew responded by telling Ms. Perez that if she came across any classes she wanted to take, she would let her know.[72]

During the course of the next two weeks, Mathew failed to fully meet Ms. Perez's expectations in completing her work on a timely basis, and in following instructions.[73]   For example, in one instance, Ms. Elad had instructed Mathew to eliminate specific information from an investigation report.[74]   Yet, the investigation report submitted by Mathew contained the very information that Ms. Elad had asked her to not include.[75]   Additionally, the deficient report was submitted late.[76]

Accordingly, on February 17, 2016, Ms. Elad and Ms. Perez met with Mathew to further discuss her performance during a second biweekly follow-up meeting.[77]   In this conversation, Ms. Elad and Ms. Perez conveyed their observations that Mathew was still not completing her work on a timely basis, and that she had failed to follow instructions regarding employee investigations.[78]   Ms. Elad and Ms. Perez coached Mathew regarding their expectation that she timely complete her work and that she follow instructions when completing employee

---

[69] *Id.*
[70] *Id.*
[71] *Id.* at ¶15.
[72] *Id.*
[73] *Id.* at ¶16.
[74] *Id.*
[75] *Id.*
[76] *Id.*
[77] *Id.* at ¶17.
[78] *Id.*

investigations.[79]   Ms. Elad and Ms. Perez then further analyzed Mathew's recent failure to follow instructions when she submitted the report containing the very information that Ms. Elad asked her to remove.[80]   They also pointed out that Mathew submitted the (deficient) report after the deadline.[81]

Also at the February 17, 2016 meeting, Ms. Elad and Ms. Perez asked Mathew to provide them with more detail when identifying for them how she was utilizing her time.[82]   In particular, they asked that she identify the number of disciplinary actions and investigations that she completes each week, the process that she follows to intake disciplinary actions, and descriptions of other tasks that she completes throughout the week.[83]   This was necessary because Mathew continued to complain, in the meeting, that her workload was too heavy, despite the fact that she had one of the lightest, if not *the* lightest, workload of any of Santander's HR Business Partners.[84]

After the February 17, 2016 meeting, Ms. Perez asked Mathew to provide her with a written summary detailing their meeting.[85]   Ms. Perez made this request to ensure that Mathew understood and grasped the key takeaways from their meeting.[86]   This practice is not uncommon when administering a performance improvement plan.[87]

---

[79] *Id.*
[80] *Id.*
[81] *Id.*
[82] *Id.* at ¶18.
[83] *Id.*
[84] *Id.*
[85] *Id.* at ¶19.
[86] *Id.*
[87] *Id.*

Mathew provided to Ms. Perez a very cursory outline of their conversation, which fell below Ms. Perez's expectations.[88]  This outline did not even note the extensive coaching that Ms. Elad and Ms. Perez provided to Mathew regarding timeliness of her work and following instructions when conducting an investigation.[89]

Despite the coaching that Ms. Elad and Ms. Perez provided regarding timely submitting projects, Mathew continued to fail to timely meet deadlines.[90]  This untimeliness was not only burdensome to Ms. Perez; but also, it impacted the business clients whom they serve.[91]

Ms. Perez also found that, while Mathew was continuing to work on employee investigations as instructed, she was asking Ms. Perez to direct her in her own investigations far more frequently than someone at Mathew's level should have been.[92]  While Ms. Perez appreciated that Mathew was trying to ensure that she did not make any mistakes, Ms. Perez was constantly interrupted by Mathew, each time taking Ms. Perez away from whatever she was working on, to answer questions about investigations that she had expected Mathew to know.[93]  Ms. Perez was overwhelmed by these unnecessary interruptions.[94]  As a result of these interruptions, Ms. Perez was far less productive than she could otherwise be in her own job duties.[95]

---

[88] *Id.* at ¶20.
[89] *Id.*
[90] *Id.* at ¶21.
[91] *Id.*
[92] *Id.* at ¶22.
[93] *Id.*
[94] *Id.*
[95] *Id.*

On February 26, 2016, Ms. Elad and Ms. Perez met with Mathew to provide her with a 30-day review.[96]   In this meeting, Ms. Elad and Ms. Perez again focused on Mathew's need to improve on her time-management and effective work habits.[97]   In doing so, they discussed a recent instance when Mathew failed to submit the information requested of her by the deadline, and how her untimeliness impacted the business that they serve.[98]

Also at this February 26, 2016 meeting, Ms. Elad and Ms. Perez discussed with Mathew that she needed to take more initiative when conducting investigations.[99]   In particular, they discussed how Mathew had needlessly interrupted Ms. Perez in her work, prior to performing each of the four investigations that she conducted over the past 30 days.[100]   Ms. Elad and Ms. Perez told Mathew that they expected her to demonstrate more proficiency and confidence in conducting these investigations, and that Ms. Perez would remain available for consultation as needed.[101]   They further noted that, consistent with Mathew's PIP, they had offered her training opportunities, in which Mathew had not even expressed any interest.[102]

Unfortunately, Mathew did not grasp Ms. Elad and Ms. Perez's instruction that she should demonstrate more proficiency and confidence in conducting investigations.[103]   Rather, she continued to go to Ms. Perez seeking guidance at, what seemed to Ms. Perez, every juncture during Mathew's ongoing investigations.[104]

---

[96] *Id.* at ¶23.
[97] *Id.*
[98] *Id.*
[99] *Id.* at ¶24.
[100] *Id.*
[101] *Id.*
[102] *Id.*
[103] *Id.* at ¶25.
[104] *Id.*

Accordingly, on March 8, 2016, during Ms. Elad and Ms. Perez's third biweekly follow-up meeting with Mathew, they noted that Mathew asked for guidance from Ms. Perez every step of the way while conducting investigations.[105]  They told her that it was their expectation that Mathew would be able to make sound judgment calls on her own, and that she would begin to move toward managing her investigations on her own without constantly asking Ms. Perez for guidance.[106]  In this meeting, they also recognized that Mathew had made some improvements in handling administrative tasks and in being more thorough in investigations.[107]

Three days later, on Friday, March 11, 2016, Mathew engaged in behavior which Ms. Perez believe exemplified her poor time-management skills and called into question her integrity.[108]  Specifically, Mathew was working on a project related to rewarding perfect attendance for Santander associates.[109]  As part of that project, Mathew sent an e-mail message to Ms. Elad at 4:28 p.m., in which she told Ms. Elad that she was "partnering" with another department, HRIS, to obtain specific data related to the project.[110]  In this e-mail message, Mathew told Ms. Elad that she wanted to provide Ms. Elad with a "status update" before leaving for vacation that same day.[111]  Mathew asked Ms. Elad if it was okay if she sent Ms. Elad the requested data when she returned from her vacation.[112]  Ms. Elad responded to this e-mail message minutes later, asking if Mathew could get the data to her earlier, as she wanted to get the data to their business client the next week if possible.[113]  Ms. Elad and Ms. Perez later learned that Mathew had not actually "partnered" with HRIS to get the data, as Mathew had

---

[105] *Id.* at ¶26.
[106] *Id.*
[107] *Id.*
[108] *Id.* at ¶27.
[109] *Id.*
[110] *Id.*
[111] *Id.*
[112] *Id.*
[113] *Id.*

-16-

represented in her e-mail message.[114]  Rather, Mathew did not request the data from HRIS until *after* she received Ms. Elad's e-mail message requesting her to get the data to her by the next week.[115]

In addition to her poor time-management, Ms. Perez found that Mathew did not improve in conducting and managing her own employee investigations.[116]  Rather, despite Ms. Elad and Ms. Perez's continued instruction that she begin to manage her investigations on her own, Mathew continued to constantly seek Ms. Perez's assistance.[117]

On March 23, 2016, Ms. Elad and Ms. Perez met with Mathew for their fourth biweekly meeting.[118]  In this meeting, Ms. Elad and Ms. Perez expressed their continued expectation that, as an HR Business Partner, Mathew make independent judgment calls when handling investigations.[119]  They informed Mathew that they expected her to formulate a plan at the beginning of an investigation, and to then make a recommendation to Ms. Perez at the end of the investigation.[120]  They explained to her that, at this point, she was still seeking Ms. Perez's guidance more than they expect for someone at her level.[121]

At the March 23, 2016 meeting, Ms. Elad and Ms. Perez also addressed the situation in which Mathew communicated to Ms. Elad that she had "partnered" with HRIS, when in fact she had not yet contacted that department at all.[122]  When Ms. Elad and Ms. Perez pointed this discrepancy out to Mathew, she did not accept responsibility for her poor time-management or

---

[114] *Id.*
[115] *Id.*
[116] *Id.* at ¶28.
[117] *Id.*
[118] *Id.* at ¶29.
[119] *Id.*
[120] *Id.*
[121] *Id.*
[122] *Id.* at ¶30.

her misleading communication.[123]  Instead, Mathew blamed HRIS for not getting the data to her as quickly as she would have liked.[124]

Despite Ms. Perez's continued counseling and coaching, Mathew's performance simply did not improve.[125]  Rather, Mathew continued to seek Ms. Perez's guidance more than was appropriate, failed to timely submit work, and Ms. Perez received negative feedback from their business clients regarding Mathew's work for them.[126]

### 6.  *Mathew Fails to Meet Expectations at her 90 Day Review*

On April 15, 2016, Ms. Elad and Ms. Perez met with Mathew to provide her with her 90-day review.[127]  During this meeting, they discussed with Mathew her overall performance for the past 90 days, focusing on the three areas of focus that were identified in her 90-day action plan: attendance; time management/effective work habits; and consulting.[128]  They informed Mathew that they felt she met expectations as to attendance; but, she failed to meet expectations as to time management/effective work habits and consulting.[129]  They identified Mathew's performance failures in the following areas: (1) providing detail in the work she submitted; (2) submitting accurate work product; (3) meeting deadlines; (4) timely following up when working on a project; (5) providing thorough and quality work product; and (6) contributing to the team by completing administrative tasks as needed.[130]  They also informed her that they felt she did not meet expectations in her consulting, as exemplified by her (1) failure to push back on the business when necessary to complete her job, (2) demonstrating a lack of accountability for her own behaviors, and (3) inappropriately addressing the business clients after they provided

---

[123] *Id.*
[124] *Id.*
[125] *Id.* at ¶31.
[126] *Id.*
[127] *Id.* at ¶32.
[128] *Id.*
[129] *Id.*
[130] *Id.*

Ms. Perez with negative feedback regarding her performance, by challenging the feedback the business clients provided to Ms. Perez.[131]

Ms. Elad and Ms. Perez concluded the April 15, 2016 meeting by providing Mathew with some feedback they received from the business clients regarding her performance, which included the following:

- Limited interactions, but it has been better since January.  I'd rather just go to someone else on the HR team to get it done right.  They are always helpful and on point.

- I am getting [disciplinary actions] within 2 days.  I never get it within 24 hours though, which is what I thought the expectation was.

- I enjoy working with her but notice that with difficult conversations she is timid and struggles.  She asked me to sit in on a conversation and when it got difficult she said that I would take over.  This wasn't my Associate and I was unprepared.

- She doesn't like making decisions without checking with her manager.  She isn't confident when dealing with issues.  She is scared to make decisions.

- I had to sit in on a term that [Mathew] was supposed to handle.  [Mathew] got flustered and turned it back to me to handle.  It's obvious that she can't handle conflict.

- She has had to ask for an extension (beyond 2 days) for a [disciplinary action].

- I'm much more comfortable and confident working with others on the HR team because they respond timely and are confident in their decision making process.

- She is very nice.  Just don't ask her for anything.[132]

---

[131] *Id.*
[132] *Id.* at ¶33.

Throughout this meeting, Mathew was defensive and claimed that she was getting picked on for every mistake.[133]   Rather than accept responsibility for any of her actions, she blamed Ms. Perez, accusing her of being a bad manager.[134]   She said that Ms. Perez failed to check her work before sending it to Ms. Elad, did not ensure she met her deadlines, and did not often enough help her or remind her of things.[135]

### 7.  *Santander Terminates Mathew's Employment*

As a result of Mathew's ongoing performance issues and her failure to improve her performance despite receiving a 90-day action plan and a PIP, Ms. Elad, Stephen Shaffer (VP of Human Resources Business Partnership), and Ms. Perez decided to terminate Mathew's employment.[136]   On April 19, 2016, Ms. Elad and Ms. Perez met with Mathew to inform her that her employment with Santander was terminated because of her ongoing performance issues.[137]

### 8.  *Mathew is Replaced by a Female Colleague*

Mathew was replaced by Ms. Boyd, who had been promoted from the position of HR Generalist.[138]   Ms. Boyd has consistently met Ms. Perez's expectations as an Employee Relations Consultant (formerly "HR Business Partner").[139]

### C.    Mathew's Charge of Discrimination

On or about May 4, 2016, Mathew filed this Charge of Discrimination.[140]   In her Charge, Mathew claims that she was discriminated against because of her gender and pregnancy, and that she was wrongfully retaliated against.[141]

---

[133] *Id.*
[134] *Id.*
[135] *Id.*
[136] *Id.* at ¶34.
[137] *Id.* at ¶36.
[138] *Id.* at ¶37.
[139] *Id.*
[140] *See* Reena Mathew's Charge of Discrimination, Charge No. 450-2016-02634.
[141] *See id.*

## II.

### DISCUSSION

Mathew claims that Santander discriminated against her on the basis of her gender and pregnancy when she was placed on a PIP, and that she was then retaliated against when she was terminated for her poor performance.[142]  Yet, Mathew presents not one shred of evidence to support these allegations.  As explained below, Mathew cannot establish a claim for either discrimination or retaliation, and Santander nevertheless establishes legitimate and nondiscriminatory reasons for placing Mathew on a PIP and for terminating her employment when she failed to meet expectations.

### A.    The Legal Standard

To prove her discrimination and retaliation claims, Mathew has the initial burden of establishing a *prima facie* case.[143]  Texas federal and state courts routinely apply the burden-shifting analysis for discrimination and retaliation claims that was established by the U.S. Supreme Court in *McDonnell-Douglas v. Green*.[144]

Mathew must prove the following to establish a *prima facie* case of gender and/or pregnancy discrimination under Title VII of the Civil Rights Act of 1964, as amended: (1) she belonged to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by someone outside her protected class or was treated less favorably than other similarly-situated employees outside of her protected class (*i.e.* she must provide an inference of discrimination).[145]

---

[142] *See id.*

[143] *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (discrimination and retaliation); *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006) (discrimination); *Jespersen v. Sweetwater Ranch Apartments, et al.*, 390 S.W.3d 644, 654 (Tex. App.—Dallas 2012, no pet.) (discrimination); *Crutcher v. DISD*, 410 S.W.3d 487, 493 (Tex. App.—Dallas 2013, no pet.) (retaliation).

[144] *See, e.g. McCoy*, 492 F.3d at 556-57 and *Jespersen*, 390 S.W.3d at 654 (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802-05 (1973) and *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000)).

[145] *McCoy* v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007).

-21-

To establish a *prima facie* case of retaliation, Mathew must establish the following: (1) she participated in protected activity; (2) her employer took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse employment action.[146]  Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting or participating in any investigation, proceeding or hearing under Title VII.[147]

If Mathew presents sufficient evidence to establish her *prima facie* case of discrimination and/or retaliation, the burden of *production* shifts to Santander to show a legitimate, nondiscriminatory reason for the adverse employment action.[148]  This burden on Santander is one only of production, not persuasion, involving no credibility assessments.[149]

If Santander meets its burden of production, Mathew then bears the ultimate burden of proving that Santander's proffered reason is not true but is instead a pretext for the real discriminatory or retaliatory purpose.[150]  To carry this burden, Mathew must rebut each legitimate reason articulated by Santander.[151]  When evaluating whether an employer's decision was a pretext for discrimination or retaliation, the issue is not whether the employer made an incorrect decision, but whether the reason given was true.[152]

## B.  Mathew Cannot Establish a *Prima Facie* Case of Discrimination

Mathew cannot establish a *prima facie* case of gender or pregnancy discrimination because she cannot establish that: (1) she was subject to an adverse employment action when she received a PIP, (2) she was qualified for the position; or (3) she was replaced by someone outside

---

[146] *Id.* at 556-57.
[147] *Ackel v. National Communications, Inc.,* 339 F.3d 376, 385 (5th Cir. 2003).
[148] *See McCoy*, 492 F.3d at 557.
[149] *See id.*
[150] *See id.*
[151] *See id.*
[152] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

App.302

her protected class or was treated less favorably than other similarly-situated employees outside of her protected class.

First, Mathew did not suffer an adverse employment action when she was placed on a PIP. It is well established that TCHRA addresses only "ultimate employment decisions;" it does not address "every decision made by employers that arguably might have some tangential effect upon employment decisions."[153] Generally, an adverse employment action involves "hiring, granting leave, discharging, promoting, and compensating employees."[154]  Actions such as "supervisor's reprimands, poor performance reviews, hostility from fellow employees, verbal threats to fire, criticism of the employee's work, or negative employment evaluations" do not constitute adverse employment actions.[155]  Moreover, requiring that an employee participate in and complete a PIP is not an adverse employment action.[156]  Accordingly, because being placed on a PIP is not an adverse employment action, any claim that Santander discriminated against Mathew by placing her on a PIP must fail as a matter of law.[157]

Second, Mathew was not qualified for her position as an HR Generalist, as demonstrated by her repeated failures to meet her supervisor's expectations over an extended period of time. Indeed, beginning in April 2015, Mathew's supervisor, Ms. Hullum, noted the ways in which Mathew failed to meet expectations.[158]  Then, even after receiving a new manager and a fresh start, Mathew continued to perform poorly, resulting in her new manager placing her on a PIP.[159] Even then, after receiving biweekly feedback and constant instruction, Mathew still failed to

---

[153] *Anderson v. Houston Community College System,* 458 S.W.3d 633, 644 (Tex. App.—Houston [1st Dist.] 2015, no pet.).
[154] *Id.*
[155] *Id.*
[156] *See Wesley v. Yellow Transp., Inc.,* No. 3:05-cv-2266-D, 2008 WL 5220562 at *3 (N.D. Tex. Dec. 12, 2008).
[157] Mathew seems to complaint about not initially receiving a merit increase and annual bonus, which she seemingly admits to ultimately receiving.  Obviously, such an allegation would not amount to an adverse employment action. *See generally* Reena Mathew's Charge of Discrimination, Charge No. 450-2016-02634.
[158] Exhibit A, Affidavit of Yessica Perez, ¶10.
[159] *Id.* at ¶¶11-13.

adequately perform her job functions.[160]   Indeed, her performance was so poor that the business leaders whom she served complained about her poor performance, some even requesting that another HR professional be assigned to assist them instead of Mathew.[161]   Mathew's ongoing poor performance demonstrates the ways in which she was not qualified to perform in the HR Business Partner position.   Therefore, because Mathew was not qualified for her position, her claim fails as a matter of law.

Additionally, with regard to her gender discrimination claim, Mathew cannot establish that she was replaced by someone outside her protected class or was treated less favorably than other similarly-situated employees outside of her protected class.   As an initial matter, any allegation that Ms. Elad or Ms. Perez discriminated against Mathew on the basis of her gender is perplexing, *given that Ms. Elad and Ms. Perez are both females as well.*[162]   Moreover, it is undisputed that Mathew was replaced by Ms. Boyd, also a female.[163]

Finally, with regard to her pregnancy discrimination claim, Mathew cannot establish that she was treated less favorably than other similarly-situated employees outside of her protected class.   First, any allegation that Ms. Elad or Ms. Perez discriminated against Mathew on the basis of her pregnancy is again baffling, as both Ms. Elad and Ms. Perez are mothers and have been pregnant before themselves.[164]   Moreover, Mathew cannot point to a single individual who was similarly-situated to her and was treated more favorably.

---

[160] *Id.* at ¶¶11-34.
[161] *Id.* at ¶¶10 and 33.
[162] *See generally,* Exhibit A, Affidavit of Yessica Perez.
[163] *Id.* at ¶37.
[164] *Id.* at ¶35.

Accordingly, because Mathew was not subject to an adverse employment action when she was placed on a PIP, was not qualified for her position, and because she cannot show that she was treated less favorably than other similarly-situated employees outside of her protected class, she cannot establish a *prima facie* case of discrimination.

### C.    Mathew Cannot Establish a *Prima Facie* Case of Retaliation

Mathew cannot establish a *prima facie* case of retaliation because she cannot show a causal link between her purported engagement in protected activity and the decision to terminate her employment.   To show a causal link, Mathew must be able to prove that "but for" her engagement in protected activity, she would have never been terminated.[165]   In evaluating the causal link element, the following three factors may be considered: (1) the employee's past disciplinary record; (2) whether the employer followed its typical policies and procedures in dismissing the employee; and (3) the temporal relationship between the protected action and the termination.[166]   Quite importantly, Mathew must rely on more than her subjective belief that she was the victim of retaliation to establish a *prima facie* causal link.[167]   Here, Mathew cannot satisfy this "but for" causation element.

Mathew alleges in her Charge of Discrimination that she was terminated after she "raised [her] concerns in regards to the disparate treatment to Human Resources."   However, Mathew has not and cannot produce one shred of evidence to support this conclusory allegation.   Rather, the evidence shows that Mathew had an extensive history of poor performance before she was pregnant and before she could have possibly made any vague allegations of "disparate

---

[165] *See Crutcher*, 410 S.W.3d at 494.

[166] *See Nowlin v. Resolution Trust Corporation*, 33 F.3d 498, 508 (5th Cir. 1994); *see also Bacon v. EDS*, 219 Fed. Appx. 355, 357 (5th Cir. 2007).

[167] *Hanks v. Shinseki*, 2010 U.S. Dist. LEXIS 76660, at * 22 (N.D. Tex. July 28, 2010) (citing *Peace v. Harvey*, 207 F. App'x 366, 369 (5th Cir. 2006)).

treatment."[168]   Then, despite Ms. Perez's extensive efforts to coach and guide Mathew through a PIP designed to improve Mathew's performance, Mathew failed to correct her poor performance, necessitating her termination.   Mathew's complaints that she felt that she was being treated unfairly were not considered in the decisions made with regard to her employment, including the decision to terminate her employment.[169]   Accordingly, because Mathew cannot establish a *prima facie* case of retaliation, her claim fails as a matter of law.

### D.   Santander Terminated Mathew's Employment Based on Legitimate, Nondiscriminatory Reasons and Mathew Cannot Show Pretext

Despite Mathew's failure to make a *prima facie* showing of discrimination or retaliation, Santander identifies a legitimate, nondiscriminatory reason for its decision to terminate Mathew's employment—her habitual poor performance.   Despite Santander's extensive efforts to assist Mathew in improving her performance, Mathew continued to underperform.[170]   Indeed, her work was so deficient that business leaders approached Ms. Perez to inform her that they were unsatisfied with Mathew's performance, and even asked to have another HR professional assigned to assist them.[171]   Additionally, Mathew herself regularly complained that she could not handle the workload assigned to her, even though she had one of the lightest, if not the lightest, workload among all of Santander's HR Business Partners.[172]   Accordingly, because Mathew could not perform her job duties effectively, Santander had no choice but to terminate her employment.

---

[168] Santander is unaware of what, if any, allegations of "disparate treatment" Mathew purports to have made, as alleged in the vague assertion contained in her Charge of Discrimination.
[169] Exhibit A, Affidavit of Yessica Perez, ¶35.
[170] *See generally, id.* at ¶¶8-34.
[171] *Id.* at ¶¶10 and 33.
[172] *Id.* at ¶18.

Mathew would now be required to demonstrate that Santander's reasons are not true and are, in fact, designed to conceal a discriminatory purpose.[173]   However, Mathew can do nothing of the sort.  Indeed, she offers nothing to rebut the legitimacy of Santander's nondiscriminatory decision to terminate her employment based on her poor performance.   Therefore, Mathew's discrimination and retaliation claims must ultimately fail because she has no evidence of any discriminatory or retaliatory intent by Santander.

### III.
### CONCLUSION

Based on the foregoing, Mathew's allegations of gender and pregnancy discrimination and retaliation are completely unfounded and thus her Charge of Discrimination should be dismissed in its entirety.

---

[173] *See Jespersen*, 390 S.W.3d at 654 (discrimination); *Crutcher*, 410 S.W.3d at 493 (retaliation).

App.307

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Dallas District Office

207 S. Houston Street, 3rd Floor
Dallas, TX  75202-4726
Intake Information Group:  (800) 669-4000
Intake Information Group TTY:  (800) 669-6820
Dallas Direct Dial:  (972) 918-3580
FAX: (214) 253-2720
Website:  www.eeoc.gov

Dallas District Office
   San Antonio Field Office
   El Paso Area Office

February 14, 2022

**EEOC Charge No. 450-2016-02634**

Reena Mathew                            **CHARGING PARTY**
1355 Valley Vista Drive
Irving, TX 75063

                                          **RESPONDENT**

Santander Consumer USA, Inc.
c/o Monte K. Hurst, Partner
Hallett & Perrin, P.C.
1445 Ross Avenue, Suite 2400
Dallas, TX 75202

### <u>DETERMINATION</u>

Under the authority vested in me by the Commission, I issue the following determination as to the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

All requirements for coverage have been met. Respondent is an employer within the meaning of Title VII, and the timeliness and all other jurisdictional requirements for coverage are satisfied.

Charging Party claims that she was subjected to different terms and conditions of employment and discharged because of her sex: female and pregnancy. Charging Party also contends that she was subjected to different terms and conditions of employment and discharged in retaliation for her complaints about discrimination.

During the investigation, the parties were afforded an opportunity to offer evidence in support of their respective positions. The evidence shows that Charging Party joined Respondent in January 2011. Yessica Adriano (Perez) became Charging Party's manager on September 1, 2015. Prior to being under the supervision of Ms. Perez, Charging Party received positive performance reviews from her previous supervisor, Angelina Hullum, with Ms. Hullum giving Charging Party a positive mid-year review. Charging Party received positive feedback from internal and external stakeholders, including a positive comment from Ms. Perez as late as October 23, 2015, for a "job well done," related to a project Charging Party had completed. On or around October 30,

2015, Charging Party verbally informed Ms. Perez of her pregnancy. On December 1, 2015, Charging Party was placed on 30-day Performance Improvement Plan (PIP), which was subsequently removed after Charging Party informed Respondent it would be tough to accomplish. It was determined that a 90-day PIP would be more appropriate, which was to start on January 15, 2016. Ms. Perez completed Charging Party's 2015 Annual Performance Review on February 11, 2016, where Charging Party was rated overall as "Consistently Met Expectations." On April 19, 2016, Stephanie Elad, Director, and Ms. Perez met with Charging Party to inform her that her employment with Santander was terminated because of her ongoing performance issues.

Based on this evidence, the Commission finds that there is reasonable cause to believe that Charging Party was discriminated against because of her sex (pregnancy) when Respondent discharged her from her position.

The Commission issues no finding, at this time, in connection with Charging Party's remaining claims of sex discrimination (female) and retaliation under Title VII.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation (i.e., settlement). Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. If you wish to participate in conciliation, please email kelly.melton@eeoc.gov, within 10 days from the date of this Letter of Determination.

When the Respondent declines to enter into conciliation discussions, or when the Commission's representative for any reason is unable to secure a settlement acceptable to the Commission, the Commission shall so inform the parties in writing and advise them of the court enforcement alternative available to the Charging Party, aggrieved persons and the Commission. The confidentiality provisions of the statute and Commission Regulations apply to information discussed or given during conciliation.

You are reminded that Federal Law prohibits retaliation against persons who exercised their rights to inquire or complain about matters they believe may violate the law. Discrimination against persons who have cooperated in Commission investigations is also prohibited. These protections apply regardless of the Commission's determination on the merits of the charge.

On Behalf of the Commission:

DEIDRA HENRY
Digitally signed by
DEIDRA HENRY
Date: 2022.02.14
13:50:53 -06'00'

For Linda Sales-Long
Acting District Director

Mathew 169

**From:** Nicole Heinicke <nheinicke@santanderconsumerusa.com>

**To:** Kristen Lagunes <klagunes@santanderconsumerusa.com>, Misty Donnell <mdonnell@santanderconsumerusa.com>, Whitney Andres <wandres@santanderconsumerusa.com>, Jeanette Rodriguez <JRODRIGUEZ@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Melissa Lawson <MLAWSON@santanderconsumerusa.com>, Hortensia Perez <hperez@santanderconsumerusa.com>

**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Kayla Liggett <kliggett@santanderconsumerusa.com>

**Subject:** Headcount

**Date:** Wed, 16 Sep 2015 17:09:48 +0000

**Importance:** Normal

**Attachments:** Headcount_by_Department.xlsm

---

Hello!

I finally updated the headcount to reflect the recent changes in the team and business structure. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

Thanks!
Nicole

**Nicole Heinicke**
Santander Consumer USA Inc.
HR Generalist

PHONE     214.452.7016
MOBILE    214.212.8260
EMAIL     nheinicke@santanderconsumerusa.com
WEB       www.santanderconsumerusa.com

SC007406

| | | | | Sabrina | Misty | Reena | Melissa | Whitney | Kristen | Tensya | Jeanette |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 102 | 659 | 659 | 393 | 662 | 215 | 385 | 28 |

Combined   3103

| SVP | Cost Center | Departments | Headcount | Corporate | Denver | Lewisville | North Richland Hills | Remote Office | Corporate THX | Subtotal | Match |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mark Mooney | 047 | Reinstatements | 35 | 0 | 1 | 3 | 31 | 0 | 0 | 35 | Yes |
| | | CC Reinstatements | 10 | 0 | 0 | 10 | 0 | 0 | 0 | 10 | Yes |
| | | Recovery Operations | 13 | 0 | 0 | 0 | 5 | 0 | 8 | 13 | Yes |
| | | Dealer Control | 65 | 0 | 0 | 0 | 0 | 0 | 65 | 65 | Yes |
| | | Collateral Recovery | 50 | 0 | 0 | 13 | 37 | 0 | 0 | 50 | Yes |
| | | CC Coll Recv | 8 | 0 | 0 | 0 | 8 | 0 | 0 | 8 | Yes |
| | | Non Collateral Deficiency | 7 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes |
| | | Vendor Oversight | 45 | 0 | 0 | 4 | 41 | 0 | 0 | 45 | Yes |
| | | CC Vdr Oversight | 6 | 0 | 0 | 2 | 4 | 0 | 0 | 6 | Yes |
| | | | 239 | | | | | | | | |
| Dominique Doyenard | 031 | Dialer Administration | 9 | 6 | 0 | 3 | 0 | 0 | 0 | 9 | Yes |
| | | Business Process Optimization | 10 | 0 | 0 | 1 | 7 | 2 | 0 | 10 | Yes |
| | | Operational Analytics | 8 | 0 | 0 | 3 | 0 | 5 | 0 | 8 | Yes |
| | | | 27 | | | | | | | | |
| Linda Vrazel | 031 | Quality Assurance | 51 | 0 | 0 | 0 | 9 | 1 | 41 | 51 | Yes |
| | | CC Dealer Advocacy and Maintenance | 19 | 0 | 0 | 0 | 19 | 0 | 0 | 19 | Yes |
| | | Credit Bureau Advocacy | 18 | 0 | 0 | 10 | 0 | 0 | 8 | 18 | Yes |
| | | Advocacy Analytics | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | Yes |
| | | Customer Advocacy | 28 | 0 | 0 | 0 | 28 | 0 | 0 | 28 | Yes |
| | | | 117 | | | | | | | | |
| Graham Anderson | 036 | Titles | 73 | 0 | 0 | 0 | 73 | 0 | 0 | 73 | Yes |
| | | CC Titles | 10 | 0 | 0 | 0 | 10 | 0 | 0 | 10 | Yes |
| | | Insurance | 45 | 0 | 0 | 0 | 45 | 0 | 0 | 45 | Yes |
| | | CC Insurance | 15 | 0 | 0 | 0 | 15 | 0 | 0 | 15 | Yes |
| | | Account Services Unit ASU | 46 | 0 | 0 | 0 | 46 | 0 | 0 | 46 | Yes |
| | | CC Account Services Unit | 5 | 0 | 0 | 0 | 5 | 0 | 0 | 5 | Yes |
| | 050 | Impounds | 30 | 0 | 0 | 0 | 30 | 0 | 0 | 30 | Yes |
| | | CC Impounds | 7 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes |
| | | | 231 | | | | | | | | |
| Scott Dieckman | 047 | Unsecured Credit Card | 61 | 60 | 0 | 0 | 1 | 0 | 0 | 61 | Yes |
| | | | 61 | | | | | | | | |
| James Hart | 031 | Quality Control | 75 | 1 | 0 | 0 | 29 | 0 | 45 | 75 | Yes |
| | | Strategic Operations | 19 | 1 | 0 | 2 | 2 | 0 | 14 | 19 | Yes |
| | | | 94 | | | | | | | | |
| Tamika Carr | 034 | Program Management | 63 | 0 | 0 | 0 | 19 | 0 | 44 | 63 | Yes |
| | | Program Management CCAR | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes |
| | | | 64 | | | | | | | | |
| Kim Thorndyke | 046 | Customer Service | 157 | 0 | 42 | 44 | 71 | 0 | 0 | 157 | Yes |
| | | Customer Service Operations | 5 | 0 | 0 | 0 | 5 | 0 | 0 | 5 | Yes |
| | | OSP Vendor Management | 5 | 0 | 0 | 1 | 1 | 2 | 0 | 5 | Yes |
| | | CC Customer Service Support | 228 | 0 | 37 | 58 | 133 | 0 | 0 | 228 | Yes |
| | | | 395 | | | | | | | | |
| Brent Huisman | 050 | Asset Remarketing | 58 | 0 | 0 | 0 | 56 | 2 | 0 | 58 | Yes |
| | | CC Asset Remarketing | 45 | 0 | 0 | 2 | 43 | 0 | 0 | 45 | Yes |
| | | Auctions | 30 | 0 | 0 | 0 | 3 | 27 | 0 | 30 | Yes |
| | | CC Auctions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | | 133 | | | | | | | | |
| Brad Quick | 038 | Specialized Services | 73 | 0 | 0 | 0 | 73 | 0 | 0 | 73 | Yes |
| | 038 | Cease and Desist | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | 035 | Bankruptcy | 86 | 0 | 1 | 0 | 85 | 0 | 0 | 86 | Yes |
| | | CC Bankruptcy | 6 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | | | 165 | | | | | | | | |
| Wayne Nightengale | 049 | Late Stage | 818 | 0 | 211 | 312 | 295 | 0 | 0 | 818 | Yes |
| | | Early Stage | 129 | 0 | 34 | 43 | 52 | 0 | 0 | 129 | Yes |
| | | CC Late Stage | 158 | 0 | 0 | 87 | 71 | 0 | 0 | 158 | Yes |
| | | CC Early Stage | 157 | 0 | 58 | 69 | 30 | 0 | 0 | 157 | Yes |
| | | Collections Operations | 6 | 0 | 2 | 2 | 2 | 0 | 0 | 6 | Yes |
| | | | 1268 | | | | | | | | |
| Scott Rundle | 056 | RL Orig Operations | 2 | 1 | 0 | 0 | 1 | 0 | 0 | 2 | Yes |
| | | RL Sales | 27 | 0 | 0 | 0 | 25 | 2 | 0 | 27 | Yes |
| | | | 29 | | | | | | | | |
| Tony Kutiper | 054 | Funding Operations | 4 | 1 | 0 | 0 | 0 | 0 | 3 | 4 | Yes |
| | | Core Funding | 56 | 56 | 0 | 0 | 0 | 0 | 0 | 56 | Yes |
| | | Core Call Center | 18 | 18 | 0 | 0 | 0 | 0 | 0 | 18 | Yes |
| | | CarMax | 15 | 15 | 0 | 0 | 0 | 0 | 0 | 15 | Yes |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Funding Direct | 11 | 11 | 0 | 0 | 0 | | 0 | 11 | Yes |
| | | Chrysler Subvention | 1 | 1 | 0 | 0 | 0 | | 0 | 1 | Yes |
| | | Fifth Third | 4 | 4 | 0 | 0 | 0 | | 0 | 4 | Yes |
| | | Funding Support | 16 | 16 | 0 | 0 | 0 | | 0 | 16 | Yes |
| | | CC Funding | 123 | 123 | 0 | 0 | 0 | | 0 | 123 | Yes |
| | | CC Call Center | 15 | 15 | 0 | 0 | 0 | | 0 | 15 | Yes |
| | | NMAC | 13 | 13 | 0 | 0 | 0 | | 0 | 13 | Yes |
| | 048 | Credit | 92 | 0 | 0 | 0 | 0 | 4 | 88 | 92 | Yes |
| | | Credit Operations | 4 | 0 | 0 | 0 | 0 | 0 | 4 | 4 | Yes |
| | | | 372 | | | | | | | | |
| Michael Hedlund | 040 | Accounting | 120 | 0 | 0 | 0 | 42 | 0 | 78 | 120 | Yes |
| | | | 120 | | | | | | | | |
| Jim Brewster | 045 | IT Service Support | 60 | 4 | 5 | 6 | 32 | 0 | 13 | 60 | Yes |
| | | IT Call Center Office | 20 | 0 | 1 | 15 | 4 | 0 | 0 | 20 | Yes |
| | | IT Client Services | 14 | 0 | 0 | 8 | 5 | 0 | 1 | 14 | Yes |
| | | | 94 | | | | | | | | |
| Tobin Page | 055 | Profitability Analytics | 7 | 0 | 0 | 0 | 2 | 0 | 5 | 7 | Yes |
| | | Data Reporting | 14 | 0 | 0 | 2 | 8 | 2 | 2 | 14 | Yes |
| | | | 21 | | | | | | | | |
| Raymond Scott | 024 | Legal & Regulatory Profes | 21 | 0 | 0 | 0 | 1 | 3 | 17 | 21 | Yes |
| | | Legal & Regulatory Suppor | 37 | 0 | 0 | 0 | 1 | 1 | 35 | 37 | Yes |
| | | Replevin | 11 | 0 | 0 | 0 | 11 | 0 | 0 | 11 | Yes |
| | | | 69 | | | | | | | | |

**Total** 3499          **THX Total** 396

**From:** Nicole Heinicke <nheinicke@santanderconsumerusa.com>

**To:** Kristen Lagunes <klagunes@santanderconsumerusa.com>, Misty Donnell <mdonnell@santanderconsumerusa.com>, Whitney Andres <wandres@santanderconsumerusa.com>, Jeanette Rodriguez <JRODRIGUEZ@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Melissa Lawson <MLAWSON@santanderconsumerusa.com>, Hortensia Perez <hperez@santanderconsumerusa.com>

**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Kayla Liggett <kliggett@santanderconsumerusa.com>

**Subject:** Headcount

**Date:** Mon, 21 Sep 2015 14:04:41 +0000

**Importance:** Normal

**Attachments:** Headcount_by_Department.xlsm

---

Hello!

We have updated the Headcount report for this week. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

Thanks!
Nicole

**Nicole Heinicke**
Santander Consumer USA Inc.
HR Generalist

PHONE    214.452.7016
MOBILE   214.212.8260
EMAIL    nheinicke@santanderconsumerusa.com
WEB      www.santanderconsumerusa.com

SC009194

| | | | | Sabrina | Misty | Reena | Melissa | Whitney | Kristen | Tensya | Jeanette |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 102 | 650 | 654 | 339 | 660 | 215 | 386 | 28 |

Combined  3034

| SVP | Cost Center | Departments | Headcount | Corporate | Denver | Lewisville | North Richland Hills | Remote Office | Corporate THX | Subtotal | Match |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mark Mooney | 047 | Reinstatements | 35 | 0 | 1 | 3 | 31 | 0 | 0 | 35 | Yes |
| | | CC Reinstatements | 9 | 0 | 0 | 9 | 0 | 0 | 0 | 9 | Yes |
| | | Recovery Operations | 13 | 0 | 0 | 0 | 5 | 0 | 8 | 13 | Yes |
| | | Dealer Control | 65 | 0 | 0 | 0 | 0 | 0 | 65 | 65 | Yes |
| | | Collateral Recovery | 49 | 0 | 0 | 13 | 36 | 0 | 0 | 49 | Yes |
| | | CC Coll Recv | 8 | 0 | 0 | 0 | 8 | 0 | 0 | 8 | Yes |
| | | Non Collateral Deficiency | 7 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes |
| | | Vendor Oversight | 45 | 0 | 0 | 4 | 41 | 0 | 0 | 45 | Yes |
| | | CC Vdr Oversight | 6 | 0 | 0 | 2 | 4 | 0 | 0 | 6 | Yes |
| | | | 237 | | | | | | | | |
| Dominique Doyenard | 031 | Dialer Administration | 9 | 6 | 0 | 3 | 0 | 0 | 0 | 9 | Yes |
| | | Business Process Optimization | 10 | 0 | 0 | 1 | 7 | 2 | 0 | 10 | Yes |
| | | Operational Analytics | 8 | 0 | 0 | 3 | 0 | 5 | 0 | 8 | Yes |
| | | | 27 | | | | | | | | |
| Linda Vrazel | 031 | Quality Assurance | 52 | 0 | 0 | 0 | 9 | 1 | 42 | 52 | Yes |
| | | CC Dealer Advocacy and Maintenance | 19 | 0 | 0 | 0 | 0 | 0 | 19 | 19 | Yes |
| | | Credit Bureau Advocacy | 19 | 0 | 0 | 10 | 0 | 0 | 9 | 19 | Yes |
| | | Advocacy Analytics | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | Yes |
| | | Customer Advocacy | 27 | 0 | 0 | 0 | 27 | 0 | 0 | 27 | Yes |
| | | | 118 | | | | | | | | |
| Graham Anderson | 036 | Titles | 72 | 0 | 0 | 0 | 72 | 0 | 0 | 72 | Yes |
| | | CC Titles | 10 | 0 | 0 | 0 | 10 | 0 | 0 | 10 | Yes |
| | | Insurance | 44 | 0 | 0 | 0 | 44 | 0 | 0 | 44 | Yes |
| | | CC Insurance | 16 | 0 | 0 | 0 | 16 | 0 | 0 | 16 | Yes |
| | | Account Services Unit ASU | 46 | 0 | 0 | 0 | 46 | 0 | 0 | 46 | Yes |
| | | CC Account Services Unit | 5 | 0 | 0 | 0 | 5 | 0 | 0 | 5 | Yes |
| | 050 | Impounds | 31 | 0 | 0 | 0 | 31 | 0 | 0 | 31 | Yes |
| | | CC Impounds | 7 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes |
| | | | 231 | | | | | | | | |
| Scott Dieckman | 047 | Unsecured Credit Card | 61 | 60 | 0 | 0 | 1 | 0 | 0 | 61 | Yes |
| | | | 61 | | | | | | | | |
| James Hart | 031 | Quality Control | 75 | 1 | 0 | 0 | 29 | 0 | 45 | 75 | Yes |
| | | Strategic Operations | 19 | 0 | 0 | 2 | 2 | 0 | 15 | 19 | Yes |
| | | | 94 | | | | | | | | |
| Tamika Carr | 034 | Program Management | 63 | 0 | 0 | 0 | 19 | 0 | 44 | 63 | Yes |
| | | Program Management CCAR | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes |
| | | | 64 | | | | | | | | |
| Kim Thorndyke | 046 | Customer Service | 156 | 0 | 42 | 44 | 70 | 0 | 0 | 156 | Yes |
| | | Customer Service Operations | 5 | 0 | 0 | 0 | 5 | 0 | 0 | 5 | Yes |
| | | OSP Vendor Management | 5 | 0 | 1 | 1 | 1 | 2 | 0 | 5 | Yes |
| | | CC Customer Service Support | 227 | 0 | 36 | 58 | 133 | 0 | 0 | 227 | Yes |
| | | | 393 | | | | | | | | |
| Brent Huisman | 050 | Asset Remarketing | 59 | 0 | 0 | 1 | 55 | 2 | 1 | 59 | Yes |
| | | CC Asset Remarketing | 45 | 0 | 0 | 0 | 37 | 0 | 8 | 45 | Yes |
| | | Auctions | 30 | 0 | 0 | 0 | 3 | 27 | 0 | 30 | Yes |
| | | CC Auctions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | | 134 | | | | | | | | |
| Brad Quick | 038 | Specialized Services | 72 | 0 | 0 | 0 | 72 | 0 | 0 | 72 | Yes |
| | 038 | Cease and Desist | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | 035 | Bankruptcy | 86 | 0 | 1 | 0 | 85 | 0 | 0 | 86 | Yes |
| | | CC Bankruptcy | 6 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | | | 164 | | | | | | | | |
| Wayne Nightengale | 049 | Late Stage | 766 | 0 | 161 | 310 | 295 | 0 | 0 | 766 | Yes |
| | | Early Stage | 126 | 0 | 32 | 43 | 51 | 0 | 0 | 126 | Yes |
| | | CC Late Stage | 158 | 0 | 0 | 87 | 71 | 0 | 0 | 158 | Yes |
| | | CC Early Stage | 155 | 0 | 57 | 68 | 30 | 0 | 0 | 155 | Yes |
| | | Collections Operations | 6 | 0 | 2 | 2 | 2 | 0 | 0 | 6 | Yes |
| | | | 1211 | | | | | | | | |
| Scott Rundle | 056 | RL Orig Operations | 2 | 1 | 0 | 0 | 1 | 0 | 0 | 2 | Yes |
| | | RL Sales | 27 | 0 | 0 | 0 | 25 | 2 | 0 | 27 | Yes |
| | | | 29 | | | | | | | | |
| Tony Kutiper | 054 | Funding Operations | 4 | 1 | 0 | 0 | 0 | 0 | 3 | 4 | Yes |
| | | Core Funding | 56 | 56 | 0 | 0 | 0 | 0 | 0 | 56 | Yes |
| | | Core Call Center | 17 | 17 | 0 | 0 | 0 | 0 | 0 | 17 | Yes |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | CarMax | 15 | | 15 | 0 | 0 | 0 | 0 | 0 | 15 | Yes |
| | | Funding Direct | 11 | | 11 | 0 | 0 | 0 | 0 | 0 | 11 | Yes |
| | | Chrysler Subvention | 1 | | 1 | 0 | 0 | 0 | 0 | 0 | 1 | Yes |
| | | Fifth Third | 4 | | 4 | 0 | 0 | 0 | 0 | 0 | 4 | Yes |
| | | Funding Support | 18 | | 18 | 0 | 0 | 0 | 0 | 0 | 18 | Yes |
| | | CC Funding | 123 | | 123 | 0 | 0 | 0 | 0 | 0 | 123 | Yes |
| | | CC Call Center | 15 | | 15 | 0 | 0 | 0 | 0 | 0 | 15 | Yes |
| | | NMAC | 13 | | 13 | 0 | 0 | 0 | 0 | 0 | 13 | Yes |
| | 048 | Credit | 93 | | 0 | 0 | 0 | 0 | 4 | 89 | 93 | Yes |
| | | Credit Operations | 4 | | 0 | 0 | 0 | 0 | 0 | 4 | 4 | Yes |
| | | | 374 | | | | | | | | | |
| Michael Hedlund | 040 | Accounting | 123 | | 0 | 0 | 0 | 43 | 0 | 80 | 123 | Yes |
| | | | 123 | | | | | | | | | |
| Jim Brewster | 045 | IT Service Support | 60 | | 4 | 5 | 6 | 32 | 0 | 13 | 60 | Yes |
| | | IT Call Center Office | 20 | | 0 | 1 | 15 | 4 | 0 | 0 | 20 | Yes |
| | | IT Client Services | 14 | | 0 | 0 | 8 | 5 | 0 | 1 | 14 | Yes |
| | | | 94 | | | | | | | | | |
| Tobin Page | 055 | Profitability Analytics | 7 | | 0 | 0 | 0 | 2 | 0 | 5 | 7 | Yes |
| | | Data Reporting | 14 | | 0 | 0 | 2 | 8 | 2 | 2 | 14 | Yes |
| | | | 21 | | | | | | | | | |
| Raymond Scott | 024 | Legal & Regulatory Profes | 19 | | 0 | 0 | 0 | 1 | 3 | 15 | 19 | Yes |
| | | Legal & Regulatory Suppor | 37 | | 0 | 0 | 0 | 1 | 1 | 35 | 37 | Yes |
| | | Replevin | 11 | | 0 | 0 | 0 | 11 | 0 | 0 | 11 | Yes |
| | | | 67 | | | | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Total | 3442 | | | THX Total | 408 | |

**From:** Nicole Heinicke <nheinicke@santanderconsumerusa.com>
**To:** Kristen Lagunes <klagunes@santanderconsumerusa.com>, Misty Donnell <mdonnell@santanderconsumerusa.com>, Whitney Andres <wandres@santanderconsumerusa.com>, Jeanette Rodriguez <JRODRIGUEZ@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Melissa Lawson <MLAWSON@santanderconsumerusa.com>, Hortensia Perez <hperez@santanderconsumerusa.com>
**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Kayla Liggett <kliggett@santanderconsumerusa.com>
**Subject:** Headcount
**Date:** Mon, 28 Sep 2015 14:13:53 +0000
**Importance:** Normal
**Attachments:** Headcount_by_Department.xlsm

---

Hello!

We have updated the Headcount report for this week. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

Thanks!
Nicole

**Nicole Heinicke**
Santander Consumer USA Inc.
HR Generalist

PHONE    214.452.7016
MOBILE   214.212.8260
EMAIL    nheinicke@santanderconsumerusa.com
WEB      www.santanderconsumerusa.com

SC008103

| SVP | Cost Center | Departments | Headcount | Corporate | Denver | Lewisville | North Richland Hills | Remote Office | Corporate THX | Subtotal | Match |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mark Mooney | 047 | Reinstatements | 36 | 0 | 1 | 3 | 32 | 0 | 0 | 36 | Yes |
| | | CC Reinstatements | 9 | 0 | 0 | 9 | 0 | 0 | 0 | 9 | Yes |
| | | Recovery Operations | 14 | 0 | 0 | 0 | 5 | 0 | 9 | 14 | Yes |
| | | Dealer Control | 67 | 0 | 0 | 0 | 0 | 0 | 67 | 67 | Yes |
| | | Collateral Recovery | 49 | 0 | 0 | 13 | 36 | 0 | 0 | 49 | Yes |
| | | CC Coll Recv | 8 | 0 | 0 | 0 | 8 | 0 | 0 | 8 | Yes |
| | | Non Collateral Deficiency | 7 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes |
| | | Vendor Oversight | 45 | 0 | 0 | 4 | 0 | 41 | 0 | 45 | Yes |
| | | CC Vdr Oversight | 6 | 0 | 0 | 2 | 4 | 0 | 0 | 6 | Yes |
| | | | **241** | | | | | | | | |
| Dominique Doyenard | 031 | Dialer Administration | 10 | 6 | 0 | 4 | 0 | 0 | 0 | 10 | Yes |
| | | Business Process Optimization | 10 | 0 | 0 | 1 | 7 | 2 | 0 | 10 | Yes |
| | | Operational Analytics | 8 | 0 | 0 | 3 | 0 | 5 | 0 | 8 | Yes |
| | | | **28** | | | | | | | | |
| Linda Vrazel | 031 | Quality Assurance | 51 | 0 | 0 | 0 | 9 | 1 | 41 | 51 | Yes |
| | | CC Dealer Advocacy and Maintenance | 19 | 0 | 0 | 0 | 0 | 0 | 19 | 19 | Yes |
| | | Credit Bureau Advocacy | 19 | 0 | 0 | 10 | 9 | 0 | 0 | 19 | Yes |
| | | Advocacy Analytics | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | Yes |
| | | Customer Advocacy | 20 | 0 | 0 | 0 | 20 | 0 | 0 | 20 | Yes |
| | | | **110** | | | | | | | | |
| Graham Anderson | 036 | Titles | 71 | 0 | 0 | 0 | 71 | 0 | 0 | 71 | Yes |
| | | CC Titles | 10 | 0 | 0 | 0 | 10 | 0 | 0 | 10 | Yes |
| | | Insurance | 43 | 0 | 0 | 0 | 43 | 0 | 0 | 43 | Yes |
| | | CC Insurance | 17 | 0 | 0 | 0 | 17 | 0 | 0 | 17 | Yes |
| | | Account Services Unit ASU | 45 | 0 | 0 | 0 | 45 | 0 | 0 | 45 | Yes |
| | | CC Account Services Unit | 5 | 0 | 0 | 0 | 5 | 0 | 0 | 5 | Yes |
| | 050 | Impounds | 33 | 0 | 0 | 0 | 33 | 0 | 0 | 33 | Yes |
| | | CC Impounds | 7 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes |
| | | | **231** | | | | | | | | |
| Scott Dieckman | 047 | Unsecured Credit Card | 59 | 58 | 0 | 0 | 1 | 0 | 0 | 59 | Yes |
| | | | **59** | | | | | | | | |
| James Hart | 031 | Quality Control | 78 | 1 | 0 | 0 | 31 | 0 | 46 | 78 | Yes |
| | | Strategic Operations | 19 | 0 | 0 | 2 | 2 | 0 | 15 | 19 | Yes |
| | | | **97** | | | | | | | | |
| Tamika Carr | 034 | Program Management | 63 | 0 | 0 | 0 | 19 | 0 | 44 | 63 | Yes |
| | | Program Management CCAR | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes |
| | | | **64** | | | | | | | | |
| Kim Thorndyke | 046 | Customer Service | 154 | 0 | 42 | 43 | 69 | 0 | 0 | 154 | Yes |
| | | Customer Service Operations | 5 | 0 | 0 | 0 | 5 | 0 | 0 | 5 | Yes |
| | | OSP Vendor Management | 5 | 0 | 1 | 1 | 2 | 0 | 0 | 5 | Yes |
| | | CC Customer Service Support | 225 | 0 | 36 | 57 | 132 | 0 | 0 | 225 | Yes |
| | | | **389** | | | | | | | | |
| Brent Huisman | 050 | Asset Remarketing | 57 | 0 | 0 | 1 | 54 | 1 | 1 | 57 | Yes |
| | | CC Asset Remarketing | 45 | 0 | 0 | 0 | 37 | 0 | 8 | 45 | Yes |
| | | Auctions | 31 | 0 | 0 | 0 | 3 | 28 | 0 | 31 | Yes |
| | | CC Auctions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | | **133** | | | | | | | | |
| Brad Quick | 038 | Specialized Services | 73 | 0 | 0 | 0 | 73 | 0 | 0 | 73 | Yes |
| | 038 | Cease and Desist | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | 035 | Bankruptcy | 83 | 0 | 1 | 0 | 82 | 0 | 0 | 83 | Yes |
| | | CC Bankruptcy | 6 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | | | **162** | | | | | | | | |
| Wayne Nightengale | 049 | Late Stage | 775 | 0 | 174 | 310 | 291 | 0 | 0 | 775 | Yes |
| | | Early Stage | 122 | 0 | 30 | 42 | 50 | 0 | 0 | 122 | Yes |
| | | CC Late Stage | 159 | 0 | 0 | 87 | 72 | 0 | 0 | 159 | Yes |
| | | CC Early Stage | 151 | 0 | 56 | 66 | 29 | 0 | 0 | 151 | Yes |
| | | Collections Operations | 6 | 0 | 2 | 2 | 2 | 0 | 0 | 6 | Yes |
| | | | **1213** | | | | | | | | |
| Scott Rundle | 056 | RL Orig Operations | 2 | 1 | 0 | 0 | 1 | 0 | 0 | 2 | Yes |
| | | RL Sales | 27 | 0 | 0 | 0 | 25 | 2 | 0 | 27 | Yes |
| | | | **29** | | | | | | | | |
| Tony Kutiper | 054 | Funding Operations | 14 | 11 | 0 | 0 | 0 | 0 | 3 | 14 | Yes |
| | | Core Funding | 56 | 56 | 0 | 0 | 0 | 0 | 0 | 56 | Yes |
| | | Core Call Center | 17 | 17 | 0 | 0 | 0 | 0 | 0 | 17 | Yes |

| | Sabrina | Misty | Reena | Melissa | Whitney | Kristen | Tensya | Jeanette |
|---|---|---|---|---|---|---|---|---|
| | 100 | 648 | 650 | 349 | 653 | 210 | 384 | 28 |

Combined 3022

| Name | Code | Department | Count | 1 | 2 | 3 | 4 | 5 | 6 | Total | Yes |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | CarMax | 15 | 15 | 0 | 0 | 0 | 0 | 0 | 15 | Yes |
| | | Funding Direct | 11 | 11 | 0 | 0 | 0 | 0 | 0 | 11 | Yes |
| | | Chrysler Subvention | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | Yes |
| | | Fifth Third | 4 | 4 | 0 | 0 | 0 | 0 | 0 | 4 | Yes |
| | | Funding Support | 18 | 18 | 0 | 0 | 0 | 0 | 0 | 18 | Yes |
| | | CC Funding | 111 | 111 | 0 | 0 | 0 | 0 | 0 | 111 | Yes |
| | | CC Call Center | 15 | 15 | 0 | 0 | 0 | 0 | 0 | 15 | Yes |
| | 048 | NMAC | 13 | 13 | 0 | 0 | 0 | 0 | 0 | 13 | Yes |
| | | Credit | 93 | 0 | 0 | 0 | 0 | 4 | 89 | 93 | Yes |
| | | Credit Operations | 4 | 0 | 0 | 0 | 0 | 0 | 4 | 4 | Yes |
| | | | 372 | | | | | | | | |
| Michael Hedlund | 040 | Accounting | 123 | 0 | 0 | 0 | 43 | 0 | 80 | 123 | Yes |
| | | | 123 | | | | | | | | |
| Jim Brewster | 045 | IT Service Support | 60 | 4 | 5 | 6 | 32 | 0 | 13 | 60 | Yes |
| | | IT Call Center Office | 20 | 0 | 1 | 15 | 4 | 0 | 0 | 20 | Yes |
| | | IT Client Services | 14 | 0 | 0 | 8 | 5 | 0 | 1 | 14 | Yes |
| | | | 94 | | | | | | | | |
| Tobin Page | 055 | Profitability Analytics | 7 | 0 | 0 | 0 | 2 | 0 | 5 | 7 | Yes |
| | | Data Reporting | 14 | 0 | 0 | 2 | 8 | 2 | 2 | 14 | Yes |
| | | | 21 | | | | | | | | |
| Raymond Scott | 024 | Legal & Regulatory Profes | 19 | 0 | 0 | 0 | 1 | 3 | 15 | 19 | Yes |
| | | Legal & Regulatory Suppor | 37 | 0 | 0 | 0 | 1 | 1 | 35 | 37 | Yes |
| | | Replevin | 11 | 0 | 0 | 0 | 11 | 0 | 0 | 11 | Yes |
| | | | 67 | | | | | | | | |

Total   3433                    THX Total   411

**From:** Nicole Heinicke <nheinicke@santanderconsumerusa.com>
**To:** Kristen Lagunes <klagunes@santanderconsumerusa.com>, Misty Donnell <mdonnell@santanderconsumerusa.com>, Whitney Andres <wandres@santanderconsumerusa.com>, Jeanette Rodriguez <JRODRIGUEZ@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Melissa Lawson <MLAWSON@santanderconsumerusa.com>, Hortensia Perez <hperez@santanderconsumerusa.com>
**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Kayla Liggett <kliggett@santanderconsumerusa.com>
**Subject:** Headcount
**Date:** Mon, 05 Oct 2015 13:25:05 +0000
**Importance:** Normal
**Attachments:** Headcount_by_Department.xlsm

---

Hello!

We have updated the Headcount report for this week. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

Thanks!
Nicole

**Nicole Heinicke**
Santander Consumer USA Inc.
HR Generalist

PHONE       214.452.7016
MOBILE      214.212.8260
EMAIL       nheinicke@santanderconsumerusa.com
WEB         www.santanderconsumerusa.com

SC007498

| SVP | Cost Center | Departments | Headcount | Corporate | Denver | Lewisville | North Richland Hills | Remote Office | Corporate THX | Subtotal | Match | Sabrina 100 | Misty 652 | Reena 642 | Melissa 376 | Whitney 697 | Kristen 208 | Tensya 384 | Jeanette 28 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mark Mooney | 047 | Reinstatements | 40 | 0 | 4 | 3 | 33 | 0 | 0 | 40 | Yes | | | | | | | | |
| | | CC Reinstatements | 9 | 0 | 0 | 9 | 0 | 0 | 0 | 9 | Yes | | | | Combined 3087 | | | | |
| | | Recovery Operations | 13 | 0 | 0 | 0 | 5 | 0 | 8 | 13 | Yes | | | | | | | | |
| | | Dealer Control | 66 | 0 | 0 | 0 | 0 | 0 | 66 | 66 | Yes | | | | | | | | |
| | | Collateral Recovery | 49 | 0 | 0 | 14 | 35 | 0 | 0 | 49 | Yes | | | | | | | | |
| | | CC Coll Recv | 9 | 0 | 0 | 0 | 9 | 0 | 0 | 9 | Yes | | | | | | | | |
| | | Non Collateral Deficiency | 11 | 0 | 0 | 0 | 7 | 0 | 0 | 11 | Yes | | | | | | | | |
| | | Vendor Oversight | 48 | 0 | 0 | 4 | 0 | 44 | 0 | 48 | Yes | | | | | | | | |
| | | CC Vdr Oversight | 6 | 0 | 0 | 2 | 4 | 0 | 0 | 6 | Yes | | | | | | | | |
| | | | 251 | | | | | | | | | | | | | | | | |
| Dominique Doyenard | 031 | Dialer Administration | 10 | 6 | 0 | 4 | 0 | 0 | 0 | 10 | Yes | | | | | | | | |
| | | Business Process Optimization | 9 | 0 | 0 | 1 | 6 | 2 | 0 | 9 | Yes | | | | | | | | |
| | | Operational Analytics | 9 | 0 | 0 | 4 | 0 | 5 | 0 | 9 | Yes | | | | | | | | |
| | | | 28 | | | | | | | | | | | | | | | | |
| Linda Vrazel | 031 | Quality Assurance | 54 | 1 | 0 | 0 | 9 | 1 | 43 | 54 | Yes | | | | | | | | |
| | | CC Dealer Advocacy and Maintenance | 19 | 0 | 0 | 0 | 0 | 0 | 19 | 19 | Yes | | | | | | | | |
| | | Credit Bureau Advocacy | 19 | 0 | 0 | 10 | 0 | 0 | 9 | 19 | Yes | | | | | | | | |
| | | Advocacy Analytics | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | Yes | | | | | | | | |
| | | Customer Advocacy | 20 | 0 | 0 | 0 | 20 | 0 | 0 | 20 | Yes | | | | | | | | |
| | | | 113 | | | | | | | | | | | | | | | | |
| Graham Anderson | 036 | Titles | 78 | 0 | 6 | 0 | 72 | 0 | 0 | 78 | Yes | | | | | | | | |
| | | CC Titles | 10 | 0 | 0 | 0 | 10 | 0 | 0 | 10 | Yes | | | | | | | | |
| | | Insurance | 43 | 0 | 0 | 0 | 43 | 0 | 0 | 43 | Yes | | | | | | | | |
| | | CC Insurance | 17 | 0 | 0 | 0 | 17 | 0 | 0 | 17 | Yes | | | | | | | | |
| | | Account Services Unit ASU | 46 | 0 | 0 | 0 | 46 | 0 | 0 | 46 | Yes | | | | | | | | |
| | | CC Account Services Unit | 5 | 0 | 0 | 0 | 5 | 0 | 0 | 5 | Yes | | | | | | | | |
| | 050 | Impounds | 33 | 0 | 0 | 0 | 33 | 0 | 0 | 33 | Yes | | | | | | | | |
| | | CC Impounds | 7 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes | | | | | | | | |
| | | | 239 | | | | | | | | | | | | | | | | |
| Scott Dieckman | 047 | Unsecured Credit Card | 56 | 55 | 0 | 0 | 1 | 0 | 0 | 56 | Yes | | | | | | | | |
| | | | 56 | | | | | | | | | | | | | | | | |
| James Hart | 031 | Quality Control | 78 | 1 | 0 | 0 | 30 | 0 | 47 | 78 | Yes | | | | | | | | |
| | | Strategic Operations | 19 | 0 | 0 | 2 | 2 | 0 | 15 | 19 | Yes | | | | | | | | |
| | | | 97 | | | | | | | | | | | | | | | | |
| Tamika Carr | 034 | Program Management | 64 | 0 | 0 | 0 | 19 | 0 | 45 | 64 | Yes | | | | | | | | |
| | | Program Management CCAR | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes | | | | | | | | |
| | | | 65 | | | | | | | | | | | | | | | | |
| Kim Thorndyke | 046 | Customer Service | 147 | 0 | 35 | 43 | 69 | 0 | 0 | 147 | Yes | | | | | | | | |
| | | Customer Service Operations | 5 | 0 | 0 | 0 | 5 | 0 | 0 | 5 | Yes | | | | | | | | |
| | | OSP Vendor Management | 5 | 0 | 1 | 1 | 2 | 1 | 0 | 5 | Yes | | | | | | | | |
| | | CC Customer Service Support | 223 | 0 | 35 | 57 | 131 | 0 | 0 | 223 | Yes | | | | | | | | |
| | | | 380 | | | | | | | | | | | | | | | | |
| Brent Huisman | 050 | Asset Remarketing | 56 | 0 | 0 | 1 | 53 | 1 | 1 | 56 | Yes | | | | | | | | |
| | | CC Asset Remarketing | 46 | 0 | 0 | 0 | 37 | 0 | 9 | 46 | Yes | | | | | | | | |
| | | Auctions | 31 | 0 | 0 | 0 | 3 | 28 | 0 | 31 | Yes | | | | | | | | |
| | | CC Auctions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes | | | | | | | | |
| | | | 133 | | | | | | | | | | | | | | | | |
| Brad Quick | 038 | Specialized Services | 72 | 0 | 0 | 0 | 72 | 0 | 0 | 72 | Yes | | | | | | | | |
| | 038 | Cease and Desist | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes | | | | | | | | |
| | 035 | Bankruptcy | 89 | 0 | 7 | 0 | 82 | 0 | 0 | 89 | Yes | | | | | | | | |
| | | CC Bankruptcy | 6 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes | | | | | | | | |
| | | | 167 | | | | | | | | | | | | | | | | |
| Wayne Nightengale | 049 | Late Stage | 801 | 0 | 171 | 307 | 323 | 0 | 0 | 801 | Yes | | | | | | | | |
| | | Early Stage | 147 | 0 | 42 | 40 | 65 | 0 | 0 | 147 | Yes | | | | | | | | |
| | | CC Late Stage | 160 | 0 | 1 | 87 | 72 | 0 | 0 | 160 | Yes | | | | | | | | |
| | | CC Early Stage | 159 | 0 | 68 | 64 | 27 | 0 | 0 | 159 | Yes | | | | | | | | |
| | | Collections Operations | 6 | 0 | 0 | 2 | 2 | 0 | 0 | 6 | Yes | | | | | | | | |
| | | | 1273 | | | | | | | | | | | | | | | | |
| Scott Rundle | 056 | RL Orig Operations | 2 | 1 | 0 | 0 | 1 | 0 | 0 | 2 | Yes | | | | | | | | |
| | | RL Sales | 27 | 0 | 0 | 0 | 25 | 2 | 0 | 27 | Yes | | | | | | | | |
| | | | 29 | | | | | | | | | | | | | | | | |
| Tony Kutiper | 054 | Funding Operations | 15 | 12 | 0 | 0 | 0 | 0 | 3 | 15 | Yes | | | | | | | | |
| | | Core Funding | 56 | 56 | 0 | 0 | 0 | 0 | 0 | 56 | Yes | | | | | | | | |
| | | Core Call Center | 18 | 18 | 0 | 0 | 0 | 0 | 0 | 18 | Yes | | | | | | | | |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | CarMax | 15 | 15 | 0 | 0 | 0 | 0 | 0 | 15 | Yes |
| | | Funding Direct | 11 | 11 | 0 | 0 | 0 | 0 | 0 | 11 | Yes |
| | | Chrysler Subvention | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | Yes |
| | | Fifth Third | 4 | 4 | 0 | 0 | 0 | 0 | 0 | 4 | Yes |
| | | Funding Support | 18 | 18 | 0 | 0 | 0 | 0 | 0 | 18 | Yes |
| | | CC Funding | 110 | 110 | 0 | 0 | 0 | 0 | 0 | 110 | Yes |
| | | CC Call Center | 15 | 15 | 0 | 0 | 0 | 0 | 0 | 15 | Yes |
| | | NMAC | 12 | 12 | 0 | 0 | 0 | 0 | 0 | 12 | Yes |
| | 048 | Credit | 93 | 0 | 0 | 0 | 0 | 0 | 4 | 89 | 93 | Yes |
| | | Credit Operations | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 4 | Yes |
| | | | 372 | | | | | | | | |
| Michael Hedlund | 040 | Accounting | 124 | 0 | 0 | 0 | 43 | 0 | 81 | 124 | Yes |
| | | | 124 | | | | | | | | |
| Jim Brewster | 045 | IT Service Support | 60 | 4 | 5 | 6 | 32 | 0 | 13 | 60 | Yes |
| | | IT Call Center Office | 20 | 0 | 1 | 15 | 4 | 0 | 0 | 20 | Yes |
| | | IT Client Services | 14 | 0 | 0 | 8 | 5 | 0 | 1 | 14 | Yes |
| | | | 94 | | | | | | | | |
| Tobin Page | 055 | Profitability Analytics | 7 | 0 | 0 | 0 | 2 | 0 | 5 | 7 | Yes |
| | | Data Reporting | 14 | 0 | 0 | 2 | 8 | 2 | 2 | 14 | Yes |
| | | | 21 | | | | | | | | |
| Raymond Scott | 024 | Legal & Regulatory Profes | 19 | 0 | 0 | 0 | 1 | 3 | 15 | 19 | Yes |
| | | Legal & Regulatory Suppor | 36 | 0 | 0 | 0 | 1 | 1 | 34 | 36 | Yes |
| | | Replevin | 11 | 0 | 0 | 0 | 11 | 0 | 0 | 11 | Yes |
| | | | 66 | | | | | | | | |

| | | | |
|---|---|---|---|
| Total | 3508 | THX Total | 414 |

**From:** Nicole Heinicke <nheinicke@santanderconsumerusa.com>
**To:** Kristen Lagunes <klagunes@santanderconsumerusa.com>, Misty Donnell <mdonnell@santanderconsumerusa.com>, Whitney Andres <wandres@santanderconsumerusa.com>, Jeanette Rodriguez <JRODRIGUEZ@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Melissa Lawson <MLAWSON@santanderconsumerusa.com>, Hortensia Perez <hperez@santanderconsumerusa.com>
**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Kayla Liggett <kliggett@santanderconsumerusa.com>
**Subject:** Headcount
**Date:** Mon, 12 Oct 2015 13:54:30 +0000
**Importance:** Normal
**Attachments:** Headcount_by_Department.xlsm

---

Hello!

We have updated the Headcount report for this week. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

Thanks!
Nicole

## Nicole Heinicke
Santander Consumer USA Inc.
HR Generalist

PHONE   214.452.7016
MOBILE   214.212.8260
EMAIL   nheinicke@santanderconsumerusa.com
WEB   www.santanderconsumerusa.com

SC008199

| | | | | Location | | | | | | Subtotal | Match | Sabrina | Misty | Reena | Melissa | Whitney | Kristen | Tensya | Jeanette |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SVP | Cost Center | Departments | Headcount | Corporate | Denver | Lewisville | North Richland Hills | Remote Office | Corporate THX | | | 100 | 650 | 637 | 369 | 701 | 202 | 384 | 28 |
| Mark Mooney | 047 | Reinstatements | 40 | 0 | 4 | 3 | 33 | 0 | 0 | 40 | Yes | | | | | | | | |
| | | CC Reinstatements | 9 | 0 | 0 | 9 | 0 | 0 | 0 | 9 | Yes | | | Combined | 3071 | | | | | |
| | | Recovery Operations | 13 | 0 | 0 | 0 | 5 | 0 | 8 | 13 | Yes | | | | | | | | |
| | | Dealer Control | 66 | 0 | 0 | 0 | 0 | 0 | 66 | 66 | Yes | | | | | | | | |
| | | Collateral Recovery | 49 | 0 | 0 | 14 | 35 | 0 | 0 | 49 | Yes | | | | | | | | |
| | | CC Coll Recv | 9 | 0 | 0 | 0 | 9 | 0 | 0 | 9 | Yes | | | | | | | | |
| | | Non Collateral Deficiency | 11 | 0 | 4 | 0 | 7 | 0 | 0 | 11 | Yes | | | | | | | | |
| | | Vendor Oversight | 48 | 0 | 4 | 0 | 44 | 0 | 0 | 48 | Yes | | | | | | | | |
| | | CC Vdr Oversight | 5 | 0 | 0 | 2 | 3 | 0 | 0 | 5 | Yes | | | | | | | | |
| | | | 250 | | | | | | | | | | | | | | | | |
| Dominique Doyenard | 031 | Dialer Administration | 10 | 6 | 0 | 4 | 0 | 0 | 0 | 10 | Yes | | | | | | | | |
| | | Business Process Optimization | 9 | 0 | 0 | 1 | 7 | 1 | 0 | 9 | Yes | | | | | | | | |
| | | Operational Analytics | 9 | 0 | 0 | 4 | 0 | 5 | 0 | 9 | Yes | | | | | | | | |
| | | | 28 | | | | | | | | | | | | | | | | |
| Linda Vrazel | 031 | Quality Assurance | 54 | 1 | 0 | 0 | 7 | 1 | 45 | 54 | Yes | | | | | | | | |
| | | CC Dealer Advocacy and Maintenance | 19 | 0 | 0 | 19 | 0 | 0 | 0 | 19 | Yes | | | | | | | | |
| | | Credit Bureau Advocacy | 18 | 0 | 0 | 10 | 0 | 0 | 8 | 18 | Yes | | | | | | | | |
| | | Advocacy Analytics | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | Yes | | | | | | | | |
| | | Customer Advocacy | 18 | 0 | 0 | 0 | 18 | 0 | 0 | 18 | Yes | | | | | | | | |
| | | | 110 | | | | | | | | | | | | | | | | |
| Graham Anderson | 036 | Titles | 78 | 0 | 6 | 0 | 72 | 0 | 0 | 78 | Yes | | | | | | | | |
| | | CC Titles | 10 | 0 | 0 | 0 | 10 | 0 | 0 | 10 | Yes | | | | | | | | |
| | | Insurance | 44 | 0 | 0 | 0 | 44 | 0 | 0 | 44 | Yes | | | | | | | | |
| | | CC Insurance | 17 | 0 | 0 | 0 | 17 | 0 | 0 | 17 | Yes | | | | | | | | |
| | | Account Services Unit ASU | 44 | 0 | 0 | 0 | 44 | 0 | 0 | 44 | Yes | | | | | | | | |
| | | CC Account Services Unit | 5 | 0 | 0 | 0 | 5 | 0 | 0 | 5 | Yes | | | | | | | | |
| | 050 | Impounds | 33 | 0 | 0 | 0 | 33 | 0 | 0 | 33 | Yes | | | | | | | | |
| | | CC Impounds | 7 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes | | | | | | | | |
| | | | 238 | | | | | | | | | | | | | | | | |
| Scott Dieckman | 047 | Unsecured Credit Card | 55 | 54 | 0 | 0 | 1 | 0 | 0 | 55 | Yes | | | | | | | | |
| | | | 55 | | | | | | | | | | | | | | | | |
| James Hart | 031 | Quality Control | 80 | 1 | 0 | 0 | 31 | 0 | 48 | 80 | Yes | | | | | | | | |
| | | Strategic Operations | 19 | 0 | 0 | 2 | 2 | 0 | 15 | 19 | Yes | | | | | | | | |
| | | | 99 | | | | | | | | | | | | | | | | |
| Tamika Carr | 034 | Program Management | 61 | 0 | 0 | 0 | 16 | 0 | 45 | 61 | Yes | | | | | | | | |
| | | Program Management CCAR | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes | | | | | | | | |
| | | | 62 | | | | | | | | | | | | | | | | |
| Kim Thorndyke | 046 | Customer Service | 147 | 0 | 35 | 43 | 69 | 0 | 0 | 147 | Yes | | | | | | | | |
| | | Customer Service Operations | 5 | 0 | 0 | 0 | 5 | 0 | 0 | 5 | Yes | | | | | | | | |
| | | OSP Vendor Management | 5 | 0 | 1 | 1 | 1 | 2 | 0 | 5 | Yes | | | | | | | | |
| | | CC Customer Service Support | 223 | 0 | 35 | 57 | 131 | 0 | 0 | 223 | Yes | | | | | | | | |
| | | | 380 | | | | | | | | | | | | | | | | |
| Brent Huisman | 050 | Asset Remarketing | 58 | 0 | 0 | 1 | 53 | 3 | 1 | 58 | Yes | | | | | | | | |
| | | CC Asset Remarketing | 46 | 0 | 0 | 0 | 37 | 0 | 9 | 46 | Yes | | | | | | | | |
| | | Auctions | 29 | 0 | 0 | 0 | 3 | 26 | 0 | 29 | Yes | | | | | | | | |
| | | CC Auctions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes | | | | | | | | |
| | | | 133 | | | | | | | | | | | | | | | | |
| Brad Quick | 038 | Specialized Services | 71 | 0 | 0 | 0 | 71 | 0 | 0 | 71 | Yes | | | | | | | | |
| | 038 | Cease and Desist | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes | | | | | | | | |
| | 035 | Bankruptcy | 90 | 0 | 0 | 7 | 83 | 0 | 0 | 90 | Yes | | | | | | | | |
| | | CC Bankruptcy | 6 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes | | | | | | | | |
| | | | 167 | | | | | | | | | | | | | | | | |
| Wayne Nightengale | 049 | Late Stage | 820 | 0 | 180 | 313 | 327 | 0 | 0 | 820 | Yes | | | | | | | | |
| | | Early Stage | 127 | 0 | 29 | 32 | 66 | 0 | 0 | 127 | Yes | | | | | | | | |
| | | CC Late Stage | 172 | 0 | 11 | 89 | 72 | 0 | 0 | 172 | Yes | | | | | | | | |
| | | CC Early Stage | 141 | 0 | 55 | 60 | 26 | 0 | 0 | 141 | Yes | | | | | | | | |
| | | Collections Operations | 6 | 0 | 2 | 2 | 2 | 0 | 0 | 6 | Yes | | | | | | | | |
| | | | 1266 | | | | | | | | | | | | | | | | |
| Scott Rundle | 056 | RL Orig Operations | 2 | 1 | 0 | 0 | 1 | 0 | 0 | 2 | Yes | | | | | | | | |
| | | RL Sales | 27 | 0 | 0 | 0 | 25 | 2 | 0 | 27 | Yes | | | | | | | | |
| | | | 29 | | | | | | | | | | | | | | | | |
| Tony Kutiper | 054 | Funding Operations | 15 | 12 | 0 | 0 | 0 | 0 | 3 | 15 | Yes | | | | | | | | |
| | | Core Funding | 56 | 56 | 0 | 0 | 0 | 0 | 0 | 56 | Yes | | | | | | | | |
| | | Core Call Center | 18 | 18 | 0 | 0 | 0 | 0 | 0 | 18 | Yes | | | | | | | | |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | CarMax | 15 | | 15 | 0 | 0 | 0 | 0 | 0 | 15 | Yes |
| | | Funding Direct | 11 | | 11 | 0 | 0 | 0 | 0 | 0 | 11 | Yes |
| | | Chrysler Subvention | 1 | | 1 | 0 | 0 | 0 | 0 | 0 | 1 | Yes |
| | | Fifth Third | 4 | | 4 | 0 | 0 | 0 | 0 | 0 | 4 | Yes |
| | | Funding Support | 18 | | 18 | 0 | 0 | 0 | 0 | 0 | 18 | Yes |
| | | CC Funding | 110 | | 110 | 0 | 0 | 0 | 0 | 0 | 110 | Yes |
| | | CC Call Center | 15 | | 15 | 0 | 0 | 0 | 0 | 0 | 15 | Yes |
| | | NMAC | 12 | | 12 | 0 | 0 | 0 | 0 | 0 | 12 | Yes |
| | 048 | Credit | 93 | | 0 | 0 | 0 | 0 | 4 | 89 | 93 | Yes |
| | | Credit Operations | 4 | | 0 | 0 | 0 | 0 | 0 | 4 | 4 | Yes |
| | | | 372 | | | | | | | | | |
| Michael Hedlund | 040 | Accounting | 123 | | 0 | 0 | 0 | 43 | 0 | 80 | 123 | Yes |
| | | | 123 | | | | | | | | | |
| Jim Brewster | 045 | IT Service Support | 60 | | 4 | 5 | 6 | 32 | 0 | 13 | 60 | Yes |
| | | IT Call Center Office | 20 | | 0 | 1 | 15 | 4 | 0 | 0 | 20 | Yes |
| | | IT Client Services | 14 | | 0 | 0 | 8 | 5 | 0 | 1 | 14 | Yes |
| | | | 94 | | | | | | | | | |
| Tobin Page | 055 | Profitability Analytics | 7 | | 0 | 0 | 0 | 2 | 0 | 5 | 7 | Yes |
| | | Data Reporting | 15 | | 0 | 0 | 2 | 8 | 2 | 3 | 15 | Yes |
| | | | 22 | | | | | | | | | |
| Raymond Scott | 024 | Legal & Regulatory Profes | 21 | | 0 | 0 | 0 | 1 | 3 | 17 | 21 | Yes |
| | | Legal & Regulatory Suppor | 36 | | 0 | 0 | 0 | 1 | 1 | 34 | 36 | Yes |
| | | Replevin | 11 | | 0 | 0 | 0 | 11 | 0 | 0 | 11 | Yes |
| | | | 68 | | | | | | | | | |
| | | Total | 3496 | | | | | THX Total | | 418 | | |

**From:** Nicole Heinicke <nheinicke@santanderconsumerusa.com>
**To:** Kristen Lagunes <klagunes@santanderconsumerusa.com>, Misty Donnell <mdonnell@santanderconsumerusa.com>, Whitney Andres <wandres@santanderconsumerusa.com>, Jeanette Rodriguez <JRODRIGUEZ@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Melissa Lawson <MLAWSON@santanderconsumerusa.com>, Hortensia Perez <hperez@santanderconsumerusa.com>
**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Kayla Liggett <kliggett@santanderconsumerusa.com>
**Subject:** Headcount
**Date:** Tue, 20 Oct 2015 20:33:15 +0000
**Importance:** Normal
**Attachments:** Headcount_by_Department.xlsm

---

Hello!

We have updated the Headcount report for this week. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

P.S. Sorry this is later than usual – it took me a bit to get everything updated with Arapahoe I & II.

Thanks!
Nicole

**Nicole Heinicke**
Santander Consumer USA Inc.
HR Generalist

PHONE    214.452.7016
MOBILE   214.212.8260
EMAIL    nheinicke@santanderconsumerusa.com
WEB      www.santanderconsumerusa.com

SC007942

| Sabrina | Misty | Reena | Melissa | Whitney | Kristen | Tonya | Jeanette |
|---|---|---|---|---|---|---|---|
| 99 | 650 | 633 | 379 | 696 | 194 | 385 | 28 |

**Combined 3064**

| SVP | Cost Center | Departments | Headcount | Corporate | Arapahoe I | Arapahoe II | Lewisville | North Richland Hills | Remote Office | Corporate THX | Subtotal | Match |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mark Mooney | 047 | Reinstatements | 39 | 0 | 4 | 0 | 3 | 32 | 0 | 0 | 39 | Yes |
| | | CC Reinstatements | 10 | 0 | 0 | 0 | 10 | 0 | 0 | 0 | 10 | Yes |
| | | Recovery Operations | 12 | 0 | 0 | 0 | 0 | 4 | 0 | 8 | 12 | Yes |
| | | Dealer Control | 67 | 0 | 0 | 0 | 0 | 0 | 0 | 67 | 67 | Yes |
| | | Collateral Recovery | 49 | 0 | 0 | 0 | 14 | 35 | 0 | 0 | 49 | Yes |
| | | CC Coll Recv | 9 | 0 | 0 | 0 | 0 | 9 | 0 | 0 | 9 | Yes |
| | | Non Collateral Deficiency | 12 | 0 | 4 | 0 | 0 | 8 | 0 | 0 | 12 | Yes |
| | | Vendor Oversight | 50 | 0 | 0 | 0 | 4 | 44 | 0 | 2 | 50 | Yes |
| | | CC Vdr Oversight | 6 | 0 | 0 | 0 | 2 | 4 | 0 | 0 | 6 | Yes |
| | | | 254 | | | | | | | | | |
| Dominique Doyenard | 031 | Dialer Administration | 10 | 6 | 0 | 0 | 4 | 0 | 0 | 0 | 10 | Yes |
| | | Business Process Optimization | 9 | 0 | 0 | 0 | 1 | 7 | 1 | 0 | 9 | Yes |
| | | Operational Analytics | 9 | 0 | 0 | 0 | 4 | 0 | 5 | 0 | 9 | Yes |
| | | | 28 | | | | | | | | | |
| Linda Vrazel | 031 | Quality Assurance | 53 | 1 | 0 | 0 | 0 | 1 | 1 | 50 | 53 | Yes |
| | | CC Dealer Advocacy and Maintenance | 18 | 0 | 0 | 0 | 0 | 0 | 0 | 18 | 18 | Yes |
| | | Credit Bureau Advocacy | 18 | 0 | 0 | 0 | 10 | 0 | 0 | 8 | 18 | Yes |
| | | Advocacy Analytics | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | Yes |
| | | Customer Advocacy | 16 | 0 | 0 | 0 | 0 | 16 | 0 | 0 | 16 | Yes |
| | | | 106 | | | | | | | | | |
| Graham Anderson | 036 | Titles | 78 | 0 | 0 | 7 | 0 | 71 | 0 | 0 | 78 | Yes |
| | | CC Titles | 10 | 0 | 0 | 0 | 0 | 10 | 0 | 0 | 10 | Yes |
| | | Insurance | 47 | 0 | 0 | 0 | 0 | 47 | 0 | 0 | 47 | Yes |
| | | CC Insurance | 17 | 0 | 0 | 0 | 0 | 17 | 0 | 0 | 17 | Yes |
| | | Account Services Unit ASU | 44 | 0 | 0 | 0 | 0 | 44 | 0 | 0 | 44 | Yes |
| | | CC Account Services Unit | 6 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | 050 | Impounds | 31 | 0 | 0 | 0 | 0 | 31 | 0 | 0 | 31 | Yes |
| | | CC Impounds | 8 | 0 | 0 | 0 | 0 | 8 | 0 | 0 | 8 | Yes |
| | | | 241 | | | | | | | | | |
| Scott Dieckman | 047 | Unsecured Credit Card | 55 | 54 | 0 | 0 | 0 | 1 | 0 | 0 | 55 | Yes |
| | | | 55 | | | | | | | | | |
| James Hart | 031 | Quality Control | 80 | 1 | 0 | 0 | 0 | 31 | 0 | 48 | 80 | Yes |
| | | Strategic Operations | 19 | 0 | 0 | 0 | 2 | 2 | 0 | 15 | 19 | Yes |
| | | | 99 | | | | | | | | | |
| Tamika Carr | 034 | Program Management | 61 | 0 | 0 | 0 | 0 | 16 | 0 | 45 | 61 | Yes |
| | | Program Management CCAR | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes |
| | | | 62 | | | | | | | | | |
| Kim Thorndyke | 046 | Customer Service | 147 | 0 | 35 | 0 | 43 | 69 | 0 | 0 | 147 | Yes |
| | | Customer Service Operations | 5 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 5 | Yes |
| | | OSP Vendor Management | 5 | 0 | 1 | 0 | 0 | 1 | 2 | 0 | 5 | Yes |
| | | CC Customer Service Support | 221 | 0 | 35 | 0 | 56 | 130 | 0 | 0 | 221 | Yes |
| | | | 378 | | | | | | | | | |
| Brent Huisman | 050 | Asset Remarketing | 61 | 0 | 0 | 0 | 1 | 54 | 5 | 1 | 61 | Yes |
| | | CC Asset Remarketing | 49 | 0 | 3 | 0 | 0 | 36 | 0 | 10 | 49 | Yes |
| | | Auctions | 28 | 0 | 0 | 0 | 0 | 2 | 26 | 0 | 28 | Yes |
| | | CC Auctions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | | 138 | | | | | | | | | |
| Brad Quick | 038 | Specialized Services | 69 | 0 | 0 | 0 | 0 | 69 | 0 | 0 | 69 | Yes |
| | 038 | Cease and Desist | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | 035 | Bankruptcy | 90 | 0 | 8 | 0 | 0 | 82 | 0 | 0 | 90 | Yes |
| | | CC Bankruptcy | 6 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | | | 165 | | | | | | | | | |
| Wayne Nightengale | 049 | Late Stage | 817 | 0 | 179 | 0 | 312 | 326 | 0 | 0 | 817 | Yes |
| | | Early Stage | 109 | 0 | 29 | 0 | 30 | 50 | 0 | 0 | 109 | Yes |
| | | CC Late Stage | 170 | 0 | 11 | 0 | 88 | 71 | 0 | 0 | 170 | Yes |
| | | CC Early Stage | 154 | 0 | 55 | 0 | 59 | 40 | 0 | 0 | 154 | Yes |
| | | Collections Operations | 6 | 0 | 2 | 0 | 2 | 2 | 0 | 0 | 6 | Yes |
| | | | 1256 | | | | | | | | | |
| Scott Rundle | 056 | RL Orig Operations | 2 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 2 | Yes |
| | | RL Sales | 27 | 0 | 0 | 0 | 0 | 25 | 2 | 0 | 27 | Yes |
| | | | 29 | | | | | | | | | |
| Tony Kutiper | 054 | Funding Operations | 4 | 1 | 0 | 0 | 0 | 0 | 0 | 3 | 4 | Yes |
| | | Core Funding | 56 | 56 | 0 | 0 | 0 | 0 | 0 | 0 | 56 | Yes |
| | | Core Call Center | 18 | 18 | 0 | 0 | 0 | 0 | 0 | 0 | 18 | Yes |
| | | CarMax | 15 | 15 | 0 | 0 | 0 | 0 | 0 | 0 | 15 | Yes |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Funding Direct | 11 | 11 | 0 | 0 | 0 | 0 | 0 | 0 | 11 | Yes |
| | | Chrysler Subvention | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | Yes |
| | | Fifth Third | 4 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | Yes |
| | | Funding Support | 18 | 18 | 0 | 0 | 0 | 0 | 0 | 0 | 18 | Yes |
| | | CC Funding | 121 | 121 | 0 | 0 | 0 | 0 | 0 | 0 | 121 | Yes |
| | | CC Call Center | 15 | 15 | 0 | 0 | 0 | 0 | 0 | 0 | 15 | Yes |
| | | NMAC | 12 | 12 | 0 | 0 | 0 | 0 | 0 | 0 | 12 | Yes |
| | 048 | Credit | 93 | 0 | 0 | 0 | 0 | 0 | 4 | 89 | 93 | Yes |
| | | Credit Operations | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 4 | Yes |
| | | | 372 | | | | | | | | | |
| | | | | | | | | | | | | |
| Michael Hedlund | 040 | Accounting | 122 | 0 | 0 | 0 | 0 | 43 | 0 | 79 | 122 | Yes |
| | | | 122 | | | | | | | | | |
| | | | | | | | | | | | | |
| Jim Brewster | 045 | IT Service Support | 60 | 4 | 5 | 0 | 6 | 32 | 0 | 13 | 60 | Yes |
| | | IT Call Center Office | 20 | 0 | 1 | 0 | 15 | 4 | 0 | 0 | 20 | Yes |
| | | IT Client Services | 14 | 0 | 0 | 0 | 8 | 5 | 0 | 1 | 14 | Yes |
| | | | 94 | | | | | | | | | |
| | | | | | | | | | | | | |
| Tobin Page | 055 | Profitability Analytics | 7 | 0 | 0 | 0 | 0 | 2 | 0 | 5 | 7 | Yes |
| | | Data Reporting | 15 | 0 | 0 | 0 | 2 | 8 | 2 | 3 | 15 | Yes |
| | | | 22 | | | | | | | | | |
| | | | | | | | | | | | | |
| Raymond Scott | 024 | Legal & Regulatory Profes | 21 | 0 | 0 | 0 | 0 | 1 | 3 | 17 | 21 | Yes |
| | | Legal & Regulatory Suppor | 36 | 0 | 0 | 0 | 0 | 1 | 1 | 34 | 36 | Yes |
| | | Replevin | 11 | 0 | 0 | 0 | 0 | 11 | 0 | 0 | 11 | Yes |
| | | | 68 | | | | | | | | | |

| | Total | 3489 | Gray Total | 0 | THX Total | 425 |
|---|---|---|---|---|---|---|

**From:** Nicole Heinicke <nheinicke@santanderconsumerusa.com>
**To:** Kristen Lagunes <klagunes@santanderconsumerusa.com>, Misty Donnell <mdonnell@santanderconsumerusa.com>, Whitney Andres <wandres@santanderconsumerusa.com>, Jeanette Rodriguez <JRODRIGUEZ@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Melissa Lawson <MLAWSON@santanderconsumerusa.com>, Hortensia Perez <hperez@santanderconsumerusa.com>
**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Kayla Liggett <kliggett@santanderconsumerusa.com>
**Subject:** Headcount
**Date:** Mon, 26 Oct 2015 16:21:04 +0000
**Importance:** Normal
**Attachments:** Headcount_by_Department.xlsm

---

Hello!

We have updated the Headcount report for this week. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

Thanks!
Nicole

**Nicole Heinicke**
Santander Consumer USA Inc.
HR Generalist

PHONE      214.452.7016
MOBILE     214.212.8260
EMAIL      nheinicke@santanderconsumerusa.com
WEB        www.santanderconsumerusa.com

SC007404

| SVP | Cost Center | Departments | Headcount | Corporate | Arapahoe I | Arapahoe II | Lewisville | North Richland Hills | Remote Office | Corporate THX | Subtotal | Match |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Location | | | | | |
| | | | | | | | | | | | 98 651 646 392 696 191 385 28 | |
| | | | | | | | | | | | Combined 3087 | |
| Mark Mooney | 047 | Reinstatements | 39 | 0 | 4 | 0 | 3 | 32 | 0 | 0 | 39 | Yes |
| | | CC Reinstatements | 10 | 0 | 0 | 0 | 10 | 0 | 0 | 0 | 10 | Yes |
| | | Recovery Operations | 12 | 0 | 0 | 0 | 0 | 4 | 0 | 8 | 12 | Yes |
| | | Dealer Control | 67 | 0 | 0 | 0 | 0 | 0 | 0 | 67 | 67 | Yes |
| | | Collateral Recovery | 49 | 0 | 0 | 0 | 14 | 35 | 0 | 0 | 49 | Yes |
| | | CC Coll Recv | 9 | 0 | 0 | 0 | 0 | 9 | 0 | 0 | 9 | Yes |
| | | Non Collateral Deficiency | 12 | 0 | 4 | 0 | 0 | 8 | 0 | 0 | 12 | Yes |
| | | Vendor Oversight | 50 | 0 | 0 | 0 | 4 | 44 | 0 | 2 | 50 | Yes |
| | | CC Vdr Oversight | 6 | 0 | 0 | 0 | 2 | 4 | 0 | 0 | 6 | Yes |
| | | | 254 | | | | | | | | | |
| Dominique Doyenard | 031 | Dialer Administration | 10 | 6 | 0 | 0 | 4 | 0 | 0 | 0 | 10 | Yes |
| | | Business Process Optimization | 9 | 0 | 0 | 0 | 1 | 7 | 1 | 0 | 9 | Yes |
| | | Operational Analytics | 10 | 0 | 0 | 0 | 5 | 0 | 5 | 0 | 10 | Yes |
| | | | 29 | | | | | | | | | |
| Linda Vrazel | 031 | Quality Assurance | 53 | 1 | 0 | 0 | 0 | 0 | 1 | 51 | 53 | Yes |
| | | CC Dealer Advocacy and Maintenance | 18 | 0 | 0 | 0 | 0 | 0 | 0 | 18 | 18 | Yes |
| | | Credit Bureau Advocacy | 18 | 0 | 0 | 0 | 10 | 0 | 0 | 8 | 18 | Yes |
| | | Advocacy Analytics | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | Yes |
| | | Customer Advocacy | 16 | 0 | 0 | 0 | 0 | 16 | 0 | 0 | 16 | Yes |
| | | | 106 | | | | | | | | | |
| Graham Anderson | 036 | Titles | 78 | 0 | 0 | 8 | 0 | 70 | 0 | 0 | 78 | Yes |
| | | CC Titles | 10 | 0 | 0 | 0 | 0 | 10 | 0 | 0 | 10 | Yes |
| | | Insurance | 47 | 0 | 0 | 0 | 0 | 47 | 0 | 0 | 47 | Yes |
| | | CC Insurance | 17 | 0 | 0 | 0 | 0 | 17 | 0 | 0 | 17 | Yes |
| | | Account Services Unit ASU | 45 | 0 | 0 | 0 | 0 | 45 | 0 | 0 | 45 | Yes |
| | | CC Account Services Unit | 6 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | 050 | Impounds | 32 | 0 | 0 | 0 | 0 | 32 | 0 | 0 | 32 | Yes |
| | | CC Impounds | 8 | 0 | 0 | 0 | 0 | 8 | 0 | 0 | 8 | Yes |
| | | | 243 | | | | | | | | | |
| Scott Dieckman | 047 | Unsecured Credit Card | 55 | 54 | 0 | 0 | 0 | 1 | 0 | 0 | 55 | Yes |
| | | | 55 | | | | | | | | | |
| James Hart | 031 | Quality Control | 80 | 1 | 0 | 0 | 0 | 31 | 0 | 48 | 80 | Yes |
| | | Strategic Operations | 19 | 0 | 0 | 0 | 2 | 2 | 0 | 15 | 19 | Yes |
| | | | 99 | | | | | | | | | |
| Tamika Carr | 034 | Program Management | 61 | 0 | 0 | 0 | 0 | 16 | 0 | 45 | 61 | Yes |
| | | Program Management CCAR | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes |
| | | | 62 | | | | | | | | | |
| Kim Thorndyke | 046 | Customer Service | 158 | 0 | 47 | 0 | 42 | 69 | 0 | 0 | 158 | Yes |
| | | Customer Service Operations | 5 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 5 | Yes |
| | | OSP Vendor Management | 5 | 0 | 1 | 0 | 3 | 1 | 0 | 0 | 5 | Yes |
| | | CC Customer Service Support | 221 | 0 | 35 | 0 | 56 | 130 | 0 | 0 | 221 | Yes |
| | | | 389 | | | | | | | | | |
| Brent Huisman | 050 | Asset Remarketing | 63 | 0 | 1 | 0 | 1 | 55 | 5 | 1 | 63 | Yes |
| | | CC Asset Remarketing | 49 | 0 | 3 | 0 | 0 | 36 | 0 | 10 | 49 | Yes |
| | | Auctions | 28 | 0 | 0 | 0 | 0 | 2 | 26 | 0 | 28 | Yes |
| | | CC Auctions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | | 140 | | | | | | | | | |
| Brad Quick | 038 | Specialized Services | 68 | 0 | 0 | 0 | 0 | 68 | 0 | 0 | 68 | Yes |
| | 038 | Cease and Desist | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | 035 | Bankruptcy | 90 | 0 | 8 | 0 | 0 | 82 | 0 | 0 | 90 | Yes |
| | | CC Bankruptcy | 6 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | | | 164 | | | | | | | | | |
| Wayne Nightengale | 049 | Late Stage | 817 | 0 | 179 | 0 | 312 | 326 | 0 | 0 | 817 | Yes |
| | | Early Stage | 109 | 0 | 29 | 0 | 30 | 50 | 0 | 0 | 109 | Yes |
| | | CC Late Stage | 169 | 0 | 11 | 0 | 87 | 71 | 0 | 0 | 169 | Yes |
| | | CC Early Stage | 166 | 0 | 54 | 0 | 72 | 40 | 0 | 0 | 166 | Yes |
| | | Collections Operations | 6 | 0 | 2 | 0 | 2 | 2 | 0 | 0 | 6 | Yes |
| | | | 1267 | | | | | | | | | |
| Scott Rundle | 056 | RL Orig Operations | 2 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 2 | Yes |
| | | RL Sales | 27 | 0 | 0 | 0 | 0 | 25 | 2 | 0 | 27 | Yes |
| | | | 29 | | | | | | | | | |
| Tony Kutiper | 054 | Funding Operations | 4 | 1 | 0 | 0 | 0 | 0 | 0 | 3 | 4 | Yes |
| | | Core Funding | 56 | 56 | 0 | 0 | 0 | 0 | 0 | 0 | 56 | Yes |
| | | Core Call Center | 19 | 19 | 0 | 0 | 0 | 0 | 0 | 0 | 19 | Yes |
| | | CarMax | 15 | 15 | 0 | 0 | 0 | 0 | 0 | 0 | 15 | Yes |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Funding Direct | 11 | 11 | 0 | 0 | 0 | 0 | 0 | 0 | 11 | Yes |
| | | Chrysler Subvention | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | Yes |
| | | Fifth Third | 4 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | Yes |
| | | Funding Support | 18 | 18 | 0 | 0 | 0 | 0 | 0 | 0 | 18 | Yes |
| | | CC Funding | 120 | 120 | 0 | 0 | 0 | 0 | 0 | 0 | 120 | Yes |
| | | CC Call Center | 15 | 15 | 0 | 0 | 0 | 0 | 0 | 0 | 15 | Yes |
| | | NMAC | 12 | 12 | 0 | 0 | 0 | 0 | 0 | 0 | 12 | Yes |
| | 048 | Credit | 93 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 89 | 93 | Yes |
| | | Credit Operations | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 4 | Yes |
| | | | 372 | | | | | | | | | |
| Michael Hedlund | 040 | Accounting | 122 | 0 | 0 | 0 | 0 | 41 | 0 | 81 | 122 | Yes |
| | | | 122 | | | | | | | | | |
| Jim Brewster | 045 | IT Service Support | 60 | 4 | 5 | 0 | 6 | 32 | 0 | 13 | 60 | Yes |
| | | IT Call Center Office | 20 | 0 | 1 | 0 | 15 | 4 | 0 | 0 | 20 | Yes |
| | | IT Client Services | 14 | 0 | 0 | 0 | 8 | 5 | 0 | 1 | 14 | Yes |
| | | | 94 | | | | | | | | | |
| Tobin Page | 055 | Profitability Analytics | 5 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 5 | Yes |
| | | Data Reporting | 17 | 0 | 0 | 0 | 2 | 10 | 2 | 3 | 17 | Yes |
| | | | 22 | | | | | | | | | |
| Raymond Scott | 024 | Legal & Regulatory Profes | 20 | 0 | 0 | 0 | 0 | 1 | 3 | 16 | 20 | Yes |
| | | Legal & Regulatory Suppor | 36 | 0 | 0 | 0 | 0 | 1 | 1 | 34 | 36 | Yes |
| | | Replevin | 11 | 0 | 0 | 0 | 0 | 11 | 0 | 0 | 11 | Yes |
| | | | 67 | | | | | | | | | |
| | | Total | 3514 | | Gray Total | 0 | | THX Total | 427 | | | |

**From:** Nicole Heinicke <nheinicke@santanderconsumerusa.com>

**To:** Kristen Lagunes <klagunes@santanderconsumerusa.com>, Misty Donnell <mdonnell@santanderconsumerusa.com>, Whitney Andres <wandres@santanderconsumerusa.com>, Jeanette Rodriguez <JRODRIGUEZ@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Melissa Lawson <MLAWSON@santanderconsumerusa.com>, Hortensia Perez <hperez@santanderconsumerusa.com>

**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Kayla Liggett <kliggett@santanderconsumerusa.com>

**Subject:** RE: Headcount

**Date:** Mon, 02 Nov 2015 16:06:55 +0000

**Importance:** Normal

**Attachments:** Headcount_by_Department.xlsm

---

Hello!

We have updated the Headcount report for this week. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

Thanks!
Nicole

**Nicole Heinicke**
Santander Consumer USA Inc.
HR Generalist

PHONE    214.452.7016
MOBILE   214.212.8260
EMAIL    nheinicke@santanderconsumerusa.com
WEB      www.santanderconsumerusa.com

SC009498

| SVP | Cost Center | Departments | Headcount | Corporate | Arapahoe I | Arapahoe II | Lewisville | North Richland Hills | Remote Office | Corporate THX | Subtotal | Match | Sabrina | Misty | Reena | Melissa | Whitney | Kristen | Tenaya | Jeanette |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Location | | | | | | | 97 | 618 | 640 | 398 | 690 | 193 | 386 | 28 |
| | | | | | | | | | | | | | | | Combined | 3050 | | | | |
| Mark Mooney | 047 | Reinstatements | 45 | 0 | 2 | 8 | 3 | 32 | 0 | 0 | 45 | Yes | | | | | | | | |
| | | CC Reinstatements | 10 | 0 | 0 | 0 | 10 | 0 | 0 | 0 | 10 | Yes | | | | | | | | |
| | | Recovery Operations | 12 | 0 | 0 | 0 | 0 | 4 | 0 | 8 | 12 | Yes | | | | | | | | |
| | | Dealer Control | 67 | 0 | 0 | 0 | 0 | 0 | 0 | 67 | 67 | Yes | | | | | | | | |
| | | Collateral Recovery | 47 | 0 | 0 | 0 | 14 | 33 | 0 | 0 | 47 | Yes | | | | | | | | |
| | | CC Coll Recv | 9 | 0 | 0 | 0 | 0 | 9 | 0 | 0 | 9 | Yes | | | | | | | | |
| | | Non Collateral Deficiency | 14 | 0 | 4 | 2 | 0 | 8 | 0 | 0 | 14 | Yes | | | | | | | | |
| | | Vendor Oversight | 41 | 0 | 0 | 0 | 4 | 35 | 0 | 2 | 41 | Yes | | | | | | | | |
| | | CC Vdr Oversight | 6 | 0 | 0 | 0 | 2 | 4 | 0 | 0 | 6 | Yes | | | | | | | | |
| | | | 251 | | | | | | | | | | | | | | | | | |
| Dominique Doyenard | 031 | Dialer Administration | 10 | 6 | 0 | 0 | 4 | 0 | 0 | 0 | 10 | Yes | | | | | | | | |
| | | Business Process Optimization | 9 | 0 | 0 | 0 | 1 | 7 | 1 | 0 | 9 | Yes | | | | | | | | |
| | | Operational Analytics | 10 | 0 | 0 | 0 | 5 | 0 | 5 | 0 | 10 | Yes | | | | | | | | |
| | | | 29 | | | | | | | | | | | | | | | | | |
| Linda Vrazel | 031 | Quality Assurance | 53 | 1 | 0 | 0 | 0 | 0 | 1 | 51 | 53 | Yes | | | | | | | | |
| | | CC Dealer Advocacy and Maintenance | 18 | 0 | 0 | 0 | 0 | 0 | 0 | 18 | 18 | Yes | | | | | | | | |
| | | Credit Bureau Advocacy | 18 | 0 | 0 | 0 | 10 | 0 | 0 | 8 | 18 | Yes | | | | | | | | |
| | | Advocacy Analytics | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | Yes | | | | | | | | |
| | | Customer Advocacy | 18 | 0 | 0 | 0 | 0 | 18 | 0 | 0 | 18 | Yes | | | | | | | | |
| | | | 108 | | | | | | | | | | | | | | | | | |
| Graham Anderson | 036 | Titles | 85 | 0 | 0 | 15 | 0 | 70 | 0 | 0 | 85 | Yes | | | | | | | | |
| | | CC Titles | 10 | 0 | 0 | 0 | 0 | 10 | 0 | 0 | 10 | Yes | | | | | | | | |
| | | Insurance | 48 | 0 | 0 | 0 | 0 | 48 | 0 | 0 | 48 | Yes | | | | | | | | |
| | | CC Insurance | 17 | 0 | 0 | 0 | 0 | 17 | 0 | 0 | 17 | Yes | | | | | | | | |
| | | Account Services Unit ASU | 45 | 0 | 0 | 0 | 0 | 45 | 0 | 0 | 45 | Yes | | | | | | | | |
| | | CC Account Services Unit | 6 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes | | | | | | | | |
| | 050 | Impounds | 34 | 0 | 0 | 0 | 0 | 34 | 0 | 0 | 34 | Yes | | | | | | | | |
| | | CC Impounds | 7 | 0 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes | | | | | | | | |
| | | | 252 | | | | | | | | | | | | | | | | | |
| Scott Dieckman | 047 | Unsecured Credit Card | 54 | 53 | 0 | 0 | 0 | 1 | 0 | 0 | 54 | Yes | | | | | | | | |
| | | | 54 | | | | | | | | | | | | | | | | | |
| James Hart | 031 | Quality Control | 80 | 1 | 0 | 0 | 0 | 31 | 0 | 48 | 80 | Yes | | | | | | | | |
| | | Strategic Operations | 19 | 0 | 0 | 0 | 2 | 2 | 0 | 15 | 19 | Yes | | | | | | | | |
| | | | 99 | | | | | | | | | | | | | | | | | |
| Tamika Carr | 034 | Program Management | 59 | 0 | 0 | 0 | 0 | 16 | 0 | 43 | 59 | Yes | | | | | | | | |
| | | Program Management CCAR | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes | | | | | | | | |
| | | | 60 | | | | | | | | | | | | | | | | | |
| Kim Thorndyke | 046 | Customer Service | 156 | 0 | 45 | 0 | 42 | 69 | 0 | 0 | 156 | Yes | | | | | | | | |
| | | Customer Service Operations | 5 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 5 | Yes | | | | | | | | |
| | | OSP Vendor Management | 5 | 0 | 1 | 0 | 1 | 3 | 0 | 0 | 5 | Yes | | | | | | | | |
| | | CC Customer Service Support | 215 | 0 | 32 | 0 | 55 | 128 | 0 | 0 | 215 | Yes | | | | | | | | |
| | | | 381 | | | | | | | | | | | | | | | | | |
| Brent Huisman | 050 | Asset Remarketing | 64 | 0 | 1 | 4 | 1 | 55 | 2 | 1 | 64 | Yes | | | | | | | | |
| | | CC Asset Remarketing | 52 | 0 | 3 | 3 | 0 | 36 | 0 | 10 | 52 | Yes | | | | | | | | |
| | | Auctions | 5 | 0 | 0 | 0 | 0 | 2 | 3 | 0 | 5 | Yes | | | | | | | | |
| | | CC Auctions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes | | | | | | | | |
| | | | 121 | | | | | | | | | | | | | | | | | |
| Brad Quick | 038 | Specialized Services | 68 | 0 | 0 | 0 | 0 | 68 | 0 | 0 | 68 | Yes | | | | | | | | |
| | 038 | Cease and Desist | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes | | | | | | | | |
| | 035 | Bankruptcy | 98 | 0 | 8 | 7 | 0 | 83 | 0 | 0 | 98 | Yes | | | | | | | | |
| | | CC Bankruptcy | 7 | 0 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes | | | | | | | | |
| | | | 173 | | | | | | | | | | | | | | | | | |
| Wayne Nightengale | 049 | Late Stage | 802 | 0 | 165 | 0 | 311 | 328 | 0 | 0 | 802 | Yes | | | | | | | | |
| | | Early Stage | 79 | 0 | 2 | 0 | 29 | 48 | 0 | 0 | 79 | Yes | | | | | | | | |
| | | CC Late Stage | 166 | 0 | 11 | 0 | 85 | 70 | 0 | 0 | 166 | Yes | | | | | | | | |
| | | CC Early Stage | 186 | 0 | 77 | 0 | 70 | 39 | 0 | 0 | 186 | Yes | | | | | | | | |
| | | Collections Operations | 6 | 0 | 2 | 0 | 2 | 2 | 0 | 0 | 6 | Yes | | | | | | | | |
| | | | 1239 | | | | | | | | | | | | | | | | | |
| Scott Rundle | 056 | RL Orig Operations | 2 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 2 | Yes | | | | | | | | |
| | | RL Sales | 27 | 0 | 0 | 0 | 0 | 25 | 2 | 0 | 27 | Yes | | | | | | | | |
| | | | 29 | | | | | | | | | | | | | | | | | |
| Tony Kutiper | 054 | Funding Operations | 4 | 1 | 0 | 0 | 0 | 0 | 0 | 3 | 4 | Yes | | | | | | | | |
| | | Core Funding | 56 | 56 | 0 | 0 | 0 | 0 | 0 | 0 | 56 | Yes | | | | | | | | |
| | | Core Call Center | 19 | 19 | 0 | 0 | 0 | 0 | 0 | 0 | 19 | Yes | | | | | | | | |
| | | CarMax | 15 | 15 | 0 | 0 | 0 | 0 | 0 | 0 | 15 | Yes | | | | | | | | |

App.332

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Funding Direct | 11 | 11 | 0 | 0 | 0 | 0 | 0 | 0 | 11 Yes |
| | | Chrysler Subvention | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 Yes |
| | | Fifth Third | 4 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 4 Yes |
| | | Funding Support | 18 | 18 | 0 | 0 | 0 | 0 | 0 | 0 | 18 Yes |
| | | CC Funding | 120 | 120 | 0 | 0 | 0 | 0 | 0 | 0 | 120 Yes |
| | | CC Call Center | 16 | 16 | 0 | 0 | 0 | 0 | 0 | 0 | 16 Yes |
| | | NMAC | 12 | 12 | 0 | 0 | 0 | 0 | 0 | 0 | 12 Yes |
| | 048 | Credit | 94 | 0 | 0 | 0 | 0 | 0 | 4 | 90 | 94 Yes |
| | | Credit Operations | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 4 Yes |
| | | | 374 | | | | | | | | |
| Michael Hedlund | 040 | Accounting | 123 | 0 | 0 | 0 | 0 | 41 | 0 | 82 | 123 Yes |
| | | | 123 | | | | | | | | |
| Jim Brewster | 045 | IT Service Support | 59 | 3 | 5 | 0 | 6 | 32 | 0 | 13 | 59 Yes |
| | | IT Call Center Office | 20 | 0 | 1 | 0 | 15 | 4 | 0 | 0 | 20 Yes |
| | | IT Client Services | 15 | 0 | 0 | 0 | 9 | 5 | 0 | 1 | 15 Yes |
| | | | 94 | | | | | | | | |
| Tobin Page | 055 | Profitability Analytics | 5 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 5 Yes |
| | | Data Reporting | 17 | 0 | 0 | 0 | 2 | 10 | 2 | 3 | 17 Yes |
| | | | 22 | | | | | | | | |
| Raymond Scott | 024 | Legal & Regulatory Profes | 19 | 0 | 0 | 0 | 0 | 1 | 3 | 15 | 19 Yes |
| | | Legal & Regulatory Suppor | 37 | 0 | 0 | 0 | 0 | 1 | 1 | 35 | 37 Yes |
| | | Replevin | 11 | 0 | 0 | 0 | 0 | 11 | 0 | 0 | 11 Yes |
| | | | 67 | | | | | | | | |

Total   3476        Gray Total   0        THX Total   426

**From:** Nicole Heinicke <nheinicke@santanderconsumerusa.com>

**To:** Kristen Lagunes <klagunes@santanderconsumerusa.com>, Whitney Andres <wandres@santanderconsumerusa.com>, Jeanette Rodriguez <JRODRIGUEZ@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Melissa Lawson <MLAWSON@santanderconsumerusa.com>, Hortensia Perez <hperez@santanderconsumerusa.com>

**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Kayla Liggett <kliggett@santanderconsumerusa.com>

**Subject:** Headcount

**Date:** Mon, 09 Nov 2015 20:14:24 +0000

**Importance:** Normal

**Attachments:** Headcount_by_Department.xlsm

---

Hello!

We have updated the Headcount report for this week. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

Thanks!
Nicole

## Nicole Heinicke

Santander Consumer USA Inc.
HR Generalist

PHONE      214.452.7016
MOBILE     214.212.8260
EMAIL      nheinicke@santanderconsumerusa.com
WEB        www.santanderconsumerusa.com

| SVP | Cost Center | Departments | Headcount | Corporate | Arapahoe I | Arapahoe II | Lewisville | North Richland Hills | Remote Office | Corporate THX | Subtotal | Match |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mark Mooney | 047 | Reinstatements | 45 | 0 | 2 | 8 | 3 | 32 | 0 | 0 | 45 | Yes |
| | | CC Reinstatements | 11 | 0 | 0 | 0 | 11 | 0 | 0 | 0 | 11 | Yes |
| | | Recovery Operations | 12 | 0 | 0 | 0 | 0 | 4 | 0 | 8 | 12 | Yes |
| | | Dealer Control | 67 | 0 | 0 | 0 | 0 | 0 | 0 | 67 | 67 | Yes |
| | | Collateral Recovery | 50 | 0 | 0 | 0 | 15 | 35 | 0 | 0 | 50 | Yes |
| | | CC Coll Recv | 11 | 0 | 0 | 0 | 0 | 11 | 0 | 0 | 11 | Yes |
| | | Non Collateral Deficiency | 15 | 0 | 4 | 3 | 0 | 8 | 0 | 0 | 15 | Yes |
| | | Vendor Oversight | 51 | 0 | 0 | 0 | 4 | 45 | 0 | 2 | 51 | Yes |
| | | CC Vdr Oversight | 6 | 0 | 0 | 0 | 2 | 4 | 0 | 0 | 6 | Yes |
| | | | 268 | | | | | | | | | |
| Dominique Doyenard | 031 | Dialer Administration | 10 | 6 | 0 | 0 | 4 | 0 | 0 | 0 | 10 | Yes |
| | | Business Process Optimization | 9 | 0 | 0 | 0 | 1 | 7 | 1 | 0 | 9 | Yes |
| | | Operational Analytics | 10 | 0 | 0 | 0 | 5 | 0 | 5 | 0 | 10 | Yes |
| | | | 29 | | | | | | | | | |
| Linda Vrazel | 031 | Quality Assurance | 53 | 1 | 0 | 0 | 0 | 0 | 1 | 51 | 53 | Yes |
| | | CC Dealer Advocacy and Maintenance | 18 | 0 | 0 | 0 | 0 | 0 | 0 | 18 | 18 | Yes |
| | | Credit Bureau Advocacy | 19 | 0 | 0 | 0 | 10 | 0 | 0 | 9 | 19 | Yes |
| | | Advocacy Analytics | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | Yes |
| | | Customer Advocacy | 18 | 0 | 0 | 0 | 0 | 18 | 0 | 0 | 18 | Yes |
| | | | 109 | | | | | | | | | |
| Graham Anderson | 036 | Titles | 85 | 0 | 0 | 15 | 0 | 70 | 0 | 0 | 85 | Yes |
| | | CC Titles | 10 | 0 | 0 | 0 | 0 | 10 | 0 | 0 | 10 | Yes |
| | | Insurance | 49 | 0 | 0 | 0 | 0 | 49 | 0 | 0 | 49 | Yes |
| | | CC Insurance | 18 | 0 | 0 | 0 | 0 | 18 | 0 | 0 | 18 | Yes |
| | | Account Services Unit ASU | 44 | 0 | 0 | 0 | 0 | 44 | 0 | 0 | 44 | Yes |
| | | CC Account Services Unit | 6 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | 050 | Impounds | 35 | 0 | 0 | 0 | 0 | 35 | 0 | 0 | 35 | Yes |
| | | CC Impounds | 6 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | | | 253 | | | | | | | | | |
| Scott Dieckman | 047 | Unsecured Credit Card | 54 | 53 | 0 | 0 | 0 | 1 | 0 | 0 | 54 | Yes |
| | | | 54 | | | | | | | | | |
| James Hart | 031 | Quality Control | 78 | 1 | 0 | 0 | 0 | 30 | 0 | 47 | 78 | Yes |
| | | Strategic Operations | 19 | 0 | 0 | 0 | 2 | 2 | 0 | 15 | 19 | Yes |
| | | | 97 | | | | | | | | | |
| Tamika Carr | 034 | Program Management | 14 | 0 | 0 | 0 | 0 | 7 | 0 | 7 | 14 | Yes |
| | | Program Management CCAR | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes |
| | | | 15 | | | | | | | | | |
| Kim Thorndyke | 046 | Customer Service | 162 | 0 | 39 | 0 | 44 | 79 | 0 | 0 | 162 | Yes |
| | | Customer Service Operations | 5 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 5 | Yes |
| | | OSP Vendor Management | 5 | 0 | 1 | 0 | 1 | 3 | 0 | 0 | 5 | Yes |
| | | CC Customer Service Support | 233 | 0 | 38 | 0 | 55 | 140 | 0 | 0 | 233 | Yes |
| | | | 405 | | | | | | | | | |
| Brent Huisman | 050 | Asset Remarketing | 62 | 0 | 1 | 0 | 1 | 56 | 3 | 1 | 62 | Yes |
| | | CC Asset Remarketing | 64 | 0 | 3 | 6 | 9 | 36 | 0 | 10 | 64 | Yes |
| | | Auctions | 30 | 0 | 0 | 0 | 0 | 2 | 28 | 0 | 30 | Yes |
| | | CC Auctions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | | 156 | | | | | | | | | |
| Brad Quick | 038 | Specialized Services | 68 | 0 | 0 | 0 | 0 | 68 | 0 | 0 | 68 | Yes |
| | 038 | Cease and Desist | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | 035 | Bankruptcy | 97 | 0 | 8 | 7 | 0 | 82 | 0 | 0 | 97 | Yes |
| | | CC Bankruptcy | 7 | 0 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes |
| | | | 172 | | | | | | | | | |
| Wayne Nightengale | 049 | Late Stage | 768 | 0 | 137 | 0 | 310 | 321 | 0 | 0 | 768 | Yes |
| | | Early Stage | 110 | 0 | 35 | 0 | 27 | 48 | 0 | 0 | 110 | Yes |
| | | CC Late Stage | 165 | 0 | 11 | 0 | 83 | 71 | 0 | 0 | 165 | Yes |
| | | CC Early Stage | 165 | 0 | 58 | 0 | 70 | 37 | 0 | 0 | 165 | Yes |
| | | Collections Operations | 6 | 0 | 2 | 0 | 2 | 2 | 0 | 0 | 6 | Yes |
| | | | 1214 | | | | | | | | | |
| Scott Rundle | 056 | RL Orig Operations | 2 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 2 | Yes |
| | | RL Sales | 27 | 0 | 0 | 0 | 0 | 25 | 2 | 0 | 27 | Yes |
| | | | 29 | | | | | | | | | |
| Tony Kutiper | 054 | Funding Operations | 4 | 1 | 0 | 0 | 0 | 0 | 0 | 3 | 4 | Yes |
| | | Core Funding | 55 | 55 | 0 | 0 | 0 | 0 | 0 | 0 | 55 | Yes |
| | | Core Call Center | 19 | 19 | 0 | 0 | 0 | 0 | 0 | 0 | 19 | Yes |
| | | CarMax | 15 | 15 | 0 | 0 | 0 | 0 | 0 | 0 | 15 | Yes |

| Sabrina | OPEN | Reena | Melissa | Whitney | Kristen | Tenaya | Jeanette |
|---|---|---|---|---|---|---|---|
| 99 | 659 | 646 | 384 | 706 | 182 | 385 | 28 |

Combined   3089

App.335

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Funding Direct | 11 | 11 | 0 | 0 | 0 | 0 | 0 | 0 | 11 | Yes |
| | | Chrysler Subvention | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | Yes |
| | | Fifth Third | 4 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | Yes |
| | | Funding Support | 18 | 18 | 0 | 0 | 0 | 0 | 0 | 0 | 18 | Yes |
| | | CC Funding | 120 | 120 | 0 | 0 | 0 | 0 | 0 | 0 | 120 | Yes |
| | | CC Call Center | 16 | 16 | 0 | 0 | 0 | 0 | 0 | 0 | 16 | Yes |
| | | NMAC | 12 | 12 | 0 | 0 | 0 | 0 | 0 | 0 | 12 | Yes |
| | 048 | Credit | 94 | 0 | 0 | 0 | 0 | 0 | 4 | 90 | 94 | Yes |
| | | Credit Operations | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 4 | Yes |
| | | | 373 | | | | | | | | | |
| Michael Hedlund | 040 | Accounting | 124 | 0 | 0 | 0 | 0 | 40 | 0 | 84 | 124 | Yes |
| | | | 124 | | | | | | | | | |
| Jim Brewster | 045 | IT Service Support | 59 | 3 | 5 | 0 | 6 | 32 | 0 | 13 | 59 | Yes |
| | | IT Call Center Office | 20 | 0 | 1 | 0 | 15 | 4 | 0 | 0 | 20 | Yes |
| | | IT Client Services | 15 | 0 | 0 | 0 | 9 | 5 | 0 | 1 | 15 | Yes |
| | | | 94 | | | | | | | | | |
| Tobin Page | 055 | Profitability Analytics | 5 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 5 | Yes |
| | | Data Reporting | 17 | 0 | 0 | 0 | 2 | 10 | 2 | 3 | 17 | Yes |
| | | | 22 | | | | | | | | | |
| Raymond Scott | 024 | Legal & Regulatory Profes | 19 | 0 | 0 | 0 | 0 | 1 | 3 | 15 | 19 | Yes |
| | | Legal & Regulatory Suppor | 37 | 0 | 0 | 0 | 0 | 1 | 1 | 35 | 37 | Yes |
| | | Replevin | 11 | 0 | 0 | 0 | 0 | 11 | 0 | 0 | 11 | Yes |
| | | | 67 | | | | | | | | | |

|  | Total | 3481 | Gray Total | 0 | THX Total | 392 |
|---|---|---|---|---|---|---|

**From:** Nicole Heinicke <nheinicke@santanderconsumerusa.com>

**To:** Kristen Lagunes <klagunes@santanderconsumerusa.com>, Whitney Andres <wandres@santanderconsumerusa.com>, Jeanette Rodriguez <JRODRIGUEZ@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Melissa Lawson <MLAWSON@santanderconsumerusa.com>, Hortensia Perez <hperez@santanderconsumerusa.com>

**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Kayla Liggett <kliggett@santanderconsumerusa.com>

**Subject:** RE: Headcount

**Date:** Mon, 16 Nov 2015 16:26:00 +0000

**Importance:** Normal

**Attachments:** Headcount_by_Department.xlsm

---

Hello!

We have updated the Headcount report for this week. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

Thanks!
Nicole

**Nicole Heinicke**
Santander Consumer USA Inc.
HR Generalist

PHONE    214.452.7016
MOBILE   214.212.8260
EMAIL    nheinicke@santanderconsumerusa.com
WEB      www.santanderconsumerusa.com

SC008814

| | | | | Sabrina | OPEN | Reena | Melissa | Whitney | Kristen | Tanya | Jeanette |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 99 | 658 | 661 | 396 | 702 | 180 | 384 | 28 |

**Combined   3108**

| SVP | Cost Center | Departments | Headcount | Corporate | Arapahoe I | Arapahoe II | Lewisville | North Richland Hills | Remote Office | Corporate THX | Subtotal | Match |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mark Mooney | 047 | Reinstatements | 45 | 0 | 2 | 8 | 3 | 32 | 0 | 0 | 45 | Yes |
| | | CC Reinstatements | 11 | 0 | 0 | 0 | 11 | 0 | 0 | 0 | 11 | Yes |
| | | Recovery Operations | 12 | 0 | 0 | 0 | 0 | 4 | 0 | 8 | 12 | Yes |
| | | Dealer Control | 66 | 0 | 0 | 0 | 0 | 0 | 0 | 66 | 66 | Yes |
| | | Collateral Recovery | 50 | 0 | 0 | 0 | 15 | 35 | 0 | 0 | 50 | Yes |
| | | CC Coll Recv | 11 | 0 | 0 | 0 | 0 | 11 | 0 | 0 | 11 | Yes |
| | | Non Collateral Deficiency | 15 | 0 | 4 | 3 | 0 | 8 | 0 | 0 | 15 | Yes |
| | | Vendor Oversight | 52 | 0 | 0 | 0 | 4 | 46 | 0 | 2 | 52 | Yes |
| | | CC Vdr Oversight | 6 | 0 | 0 | 0 | 2 | 4 | 0 | 0 | 6 | Yes |
| | | | 268 | | | | | | | | | |
| Dominique Doyenard | 031 | Dialer Administration | 10 | 6 | 0 | 0 | 4 | 0 | 0 | 0 | 10 | Yes |
| | | Business Process Optimization | 9 | 0 | 0 | 0 | 1 | 7 | 1 | 0 | 9 | Yes |
| | | Operational Analytics | 10 | 0 | 0 | 0 | 5 | 0 | 5 | 0 | 10 | Yes |
| | | | 29 | | | | | | | | | |
| Linda Vrazel | 031 | Quality Assurance | 53 | 0 | 0 | 0 | 0 | 0 | 1 | 52 | 53 | Yes |
| | | CC Dealer Advocacy and Maintenance | 17 | 0 | 0 | 0 | 0 | 0 | 0 | 17 | 17 | Yes |
| | | Credit Bureau Advocacy | 19 | 0 | 0 | 0 | 10 | 0 | 0 | 9 | 19 | Yes |
| | | Advocacy Analytics | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | Yes |
| | | Customer Advocacy | 17 | 0 | 0 | 0 | 0 | 17 | 0 | 0 | 17 | Yes |
| | | | 107 | | | | | | | | | |
| Graham Anderson | 036 | Titles | 85 | 0 | 0 | 15 | 0 | 70 | 0 | 0 | 85 | Yes |
| | | CC Titles | 10 | 0 | 0 | 0 | 0 | 10 | 0 | 0 | 10 | Yes |
| | | Insurance | 50 | 0 | 0 | 0 | 0 | 50 | 0 | 0 | 50 | Yes |
| | | CC Insurance | 18 | 0 | 0 | 0 | 0 | 18 | 0 | 0 | 18 | Yes |
| | | Account Services Unit ASU | 44 | 0 | 0 | 0 | 0 | 44 | 0 | 0 | 44 | Yes |
| | | CC Account Services Unit | 6 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | 050 | Impounds | 35 | 0 | 0 | 0 | 0 | 35 | 0 | 0 | 35 | Yes |
| | | CC Impounds | 6 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | | | 254 | | | | | | | | | |
| Scott Dieckman | 047 | Unsecured Credit Card | 54 | 53 | 0 | 0 | 0 | 1 | 0 | 0 | 54 | Yes |
| | | | 54 | | | | | | | | | |
| James Hart | 031 | Quality Control | 78 | 1 | 0 | 0 | 0 | 30 | 0 | 47 | 78 | Yes |
| | | Strategic Operations | 19 | 0 | 0 | 0 | 2 | 2 | 0 | 15 | 19 | Yes |
| | | | 97 | | | | | | | | | |
| Tamika Carr | 034 | Program Management | 14 | 0 | 0 | 0 | 0 | 7 | 0 | 7 | 14 | Yes |
| | | Program Management CCAR | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes |
| | | | 15 | | | | | | | | | |
| Kim Thorndyke | 046 | Customer Service | 171 | 0 | 48 | 0 | 44 | 79 | 0 | 0 | 171 | Yes |
| | | Customer Service Operations | 5 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 5 | Yes |
| | | OSP Vendor Management | 5 | 0 | 1 | 0 | 1 | 3 | 0 | 0 | 5 | Yes |
| | | CC Customer Service Support | 238 | 0 | 44 | 0 | 55 | 139 | 0 | 0 | 238 | Yes |
| | | | 419 | | | | | | | | | |
| Brent Huisman | 050 | Asset Remarketing | 60 | 0 | 1 | 0 | 1 | 54 | 3 | 1 | 60 | Yes |
| | | CC Asset Remarketing | 65 | 0 | 3 | 6 | 8 | 38 | 0 | 10 | 65 | Yes |
| | | Auctions | 30 | 0 | 0 | 0 | 0 | 2 | 28 | 0 | 30 | Yes |
| | | CC Auctions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | | 155 | | | | | | | | | |
| Brad Quick | 038 | Specialized Services | 65 | 0 | 0 | 0 | 0 | 65 | 0 | 0 | 65 | Yes |
| | 038 | Cease and Desist | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | 035 | Bankruptcy | 97 | 0 | 8 | 7 | 0 | 82 | 0 | 0 | 97 | Yes |
| | | CC Bankruptcy | 7 | 0 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes |
| | | | 169 | | | | | | | | | |
| Wayne Nightengale | 049 | Late Stage | 766 | 0 | 137 | 0 | 310 | 319 | 0 | 0 | 766 | Yes |
| | | Early Stage | 115 | 0 | 31 | 0 | 37 | 47 | 0 | 0 | 115 | Yes |
| | | CC Late Stage | 165 | 0 | 11 | 0 | 83 | 71 | 0 | 0 | 165 | Yes |
| | | CC Early Stage | 172 | 0 | 59 | 0 | 76 | 37 | 0 | 0 | 172 | Yes |
| | | Collections Operations | 6 | 0 | 2 | 0 | 2 | 2 | 0 | 0 | 6 | Yes |
| | | | 1224 | | | | | | | | | |
| Scott Rundle | 056 | RL Orig Operations | 2 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 2 | Yes |
| | | RL Sales | 27 | 0 | 0 | 0 | 0 | 25 | 2 | 0 | 27 | Yes |
| | | | 29 | | | | | | | | | |
| Tony Kutiper | 054 | Funding Operations | 4 | 1 | 0 | 0 | 0 | 0 | 0 | 3 | 4 | Yes |
| | | Core Funding | 60 | 60 | 0 | 0 | 0 | 0 | 0 | 0 | 60 | Yes |
| | | Core Call Center | 19 | 19 | 0 | 0 | 0 | 0 | 0 | 0 | 19 | Yes |
| | | CarMax | 15 | 15 | 0 | 0 | 0 | 0 | 0 | 0 | 15 | Yes |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Funding Direct | 11 | 11 | 0 | 0 | 0 | 0 | 0 | 0 | 11 | Yes |
| | | Chrysler Subvention | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Fifth Third | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Funding Support | 17 | 17 | 0 | 0 | 0 | 0 | 0 | 0 | 17 | Yes |
| | | CC Funding | 120 | 120 | 0 | 0 | 0 | 0 | 0 | 0 | 120 | Yes |
| | | CC Call Center | 16 | 16 | 0 | 0 | 0 | 0 | 0 | 0 | 16 | Yes |
| | | NMAC | 12 | 12 | 0 | 0 | 0 | 0 | 0 | 0 | 12 | Yes |
| | 048 | Credit | 95 | 0 | 0 | 0 | 0 | 0 | 4 | 91 | 95 | Yes |
| | | Credit Operations | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 4 | Yes |
| | | | 373 | | | | | | | | | |
| Michael Hedlund | 040 | Accounting | 123 | 0 | 0 | 0 | 0 | 40 | 0 | 83 | 123 | Yes |
| | | | 123 | | | | | | | | | |
| Jim Brewster | 045 | IT Service Support | 58 | 3 | 5 | 0 | 6 | 31 | 0 | 13 | 58 | Yes |
| | | IT Call Center Office | 20 | 0 | 1 | 0 | 15 | 4 | 0 | 0 | 20 | Yes |
| | | IT Client Services | 15 | 0 | 0 | 0 | 9 | 5 | 0 | 1 | 15 | Yes |
| | | | 93 | | | | | | | | | |
| Tobin Page | 055 | Profitability Analytics | 5 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 5 | Yes |
| | | Data Reporting | 17 | 0 | 0 | 0 | 2 | 10 | 2 | 3 | 17 | Yes |
| | | | 22 | | | | | | | | | |
| Raymond Scott | 024 | Legal & Regulatory Profes | 19 | 0 | 0 | 0 | 0 | 1 | 3 | 15 | 19 | Yes |
| | | Legal & Regulatory Suppor | 37 | 0 | 0 | 0 | 0 | 1 | 1 | 35 | 37 | Yes |
| | | Replevin | 11 | 0 | 0 | 0 | 0 | 11 | 0 | 0 | 11 | Yes |
| | | | 67 | | | | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | Total | 3498 | Gray Total | 0 | THX Total | 390 |

**From:** Nicole Heinicke <nheinicke@santanderconsumerusa.com>
**To:** Kristen Lagunes <klagunes@santanderconsumerusa.com>, Whitney Andres <wandres@santanderconsumerusa.com>, Jeanette Rodriguez <JRODRIGUEZ@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Melissa Lawson <MLAWSON@santanderconsumerusa.com>, Hortensia Perez <hperez@santanderconsumerusa.com>
**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Kayla Liggett <kliggett@santanderconsumerusa.com>
**Subject:** Headcount
**Date:** Mon, 23 Nov 2015 15:37:28 +0000
**Importance:** Normal
**Attachments:** Headcount_by_Department.xlsm

---

Hello!

We have updated the Headcount report for this week. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

Thanks!
Nicole

**Nicole Heinicke**
Santander Consumer USA Inc.
HR Generalist

PHONE   214.452.7016
MOBILE   214.212.8260
EMAIL   nheinicke@santanderconsumerusa.com
WEB   www.santanderconsumerusa.com

SC007435

| SVP | Cost Center | Departments | Headcount | Corporate | Arapahoe I | Arapahoe II | Lewisville | North Richland Hills | Remote Office | Corporate THX | Subtotal | Match |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Location | | | | |
| Mark Mooney | 047 | Reinstatements | 45 | 0 | 2 | 8 | 3 | 32 | 0 | 0 | 45 | Yes |
| | | CC Reinstatements | 11 | 0 | 0 | 0 | 11 | 0 | 0 | 0 | 11 | Yes |
| | | Recovery Operations | 12 | 0 | 0 | 0 | 0 | 3 | 0 | 9 | 12 | Yes |
| | | Dealer Control | 66 | 0 | 0 | 0 | 0 | 0 | 0 | 66 | 66 | Yes |
| | | Collateral Recovery | 50 | 0 | 0 | 0 | 15 | 35 | 0 | 0 | 50 | Yes |
| | | CC Coll Recv | 11 | 0 | 0 | 0 | 0 | 11 | 0 | 0 | 11 | Yes |
| | | Non Collateral Deficiency | 15 | 0 | 4 | 3 | 0 | 8 | 0 | 0 | 15 | Yes |
| | | Vendor Oversight | 52 | 0 | 0 | 0 | 4 | 46 | 0 | 2 | 52 | Yes |
| | | CC Vdr Oversight | 6 | 0 | 0 | 0 | 2 | 4 | 0 | 0 | 6 | Yes |
| | | | 268 | | | | | | | | | |
| Dominique Doyenard | 031 | Dialer Administration | 10 | 6 | 0 | 0 | 4 | 0 | 0 | 0 | 10 | Yes |
| | | Business Process Optimization | 9 | 0 | 0 | 0 | 1 | 7 | 1 | 0 | 9 | Yes |
| | | Operational Analytics | 10 | 0 | 0 | 0 | 5 | 0 | 5 | 0 | 10 | Yes |
| | | | 29 | | | | | | | | | |
| Linda Vrazel | 031 | Quality Assurance | 52 | 0 | 0 | 0 | 0 | 0 | 1 | 51 | 52 | Yes |
| | | CC Dealer Advocacy and Maintenance | 18 | 0 | 0 | 0 | 0 | 0 | 0 | 18 | 18 | Yes |
| | | Credit Bureau Advocacy | 19 | 0 | 0 | 0 | 10 | 0 | 0 | 9 | 19 | Yes |
| | | Advocacy Analytics | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | Yes |
| | | Customer Advocacy | 17 | 0 | 0 | 0 | 0 | 17 | 0 | 0 | 17 | Yes |
| | | | 107 | | | | | | | | | |
| Graham Anderson | 036 | Titles | 79 | 0 | 0 | 15 | 0 | 64 | 0 | 0 | 79 | Yes |
| | | CC Titles | 16 | 0 | 0 | 0 | 0 | 16 | 0 | 0 | 16 | Yes |
| | | Insurance | 50 | 0 | 0 | 0 | 0 | 50 | 0 | 0 | 50 | Yes |
| | | CC Insurance | 18 | 0 | 0 | 0 | 0 | 18 | 0 | 0 | 18 | Yes |
| | | Account Services Unit ASU | 44 | 0 | 0 | 0 | 0 | 44 | 0 | 0 | 44 | Yes |
| | | CC Account Services Unit | 6 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | 050 | Impounds | 35 | 0 | 0 | 0 | 0 | 35 | 0 | 0 | 35 | Yes |
| | | CC Impounds | 6 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | | | 254 | | | | | | | | | |
| Scott Dieckman | 047 | Unsecured Credit Card | 53 | 52 | 0 | 0 | 0 | 1 | 0 | 0 | 53 | Yes |
| | | | 53 | | | | | | | | | |
| James Hart | 031 | Quality Control | 78 | 1 | 0 | 0 | 0 | 30 | 0 | 47 | 78 | Yes |
| | | Strategic Operations | 19 | 0 | 0 | 0 | 2 | 2 | 0 | 15 | 19 | Yes |
| | | | 97 | | | | | | | | | |
| Tamika Carr | 034 | Program Management | 43 | 0 | 0 | 0 | 0 | 16 | 0 | 27 | 43 | Yes |
| | | Program Management CCAR | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes |
| | | | 44 | | | | | | | | | |
| Kim Thorndyke | 046 | Customer Service | 169 | 0 | 46 | 0 | 44 | 79 | 0 | 0 | 169 | Yes |
| | | Customer Service Operations | 5 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 5 | Yes |
| | | OSP Vendor Management | 5 | 0 | 1 | 0 | 1 | 3 | 0 | 0 | 5 | Yes |
| | | CC Customer Service Support | 235 | 0 | 43 | 0 | 54 | 138 | 0 | 0 | 235 | Yes |
| | | | 414 | | | | | | | | | |
| Brent Huisman | 050 | Asset Remarketing | 54 | 0 | 0 | 0 | 0 | 51 | 3 | 0 | 54 | Yes |
| | | CC Asset Remarketing | 72 | 0 | 3 | 7 | 11 | 40 | 0 | 11 | 72 | Yes |
| | | Auctions | 30 | 0 | 0 | 0 | 0 | 2 | 28 | 0 | 30 | Yes |
| | | CC Auctions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | | 156 | | | | | | | | | |
| Brad Quick | 038 | Specialized Services | 65 | 0 | 0 | 0 | 0 | 65 | 0 | 0 | 65 | Yes |
| | 038 | Cease and Desist | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | 035 | Bankruptcy | 96 | 0 | 8 | 7 | 0 | 81 | 0 | 0 | 96 | Yes |
| | | CC Bankruptcy | 7 | 0 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes |
| | | | 168 | | | | | | | | | |
| Wayne Nightengale | 049 | Late Stage | 763 | 0 | 136 | 0 | 309 | 318 | 0 | 0 | 763 | Yes |
| | | Early Stage | 104 | 0 | 31 | 0 | 27 | 46 | 0 | 0 | 104 | Yes |
| | | CC Late Stage | 165 | 0 | 11 | 0 | 83 | 71 | 0 | 0 | 165 | Yes |
| | | CC Early Stage | 176 | 0 | 57 | 0 | 83 | 36 | 0 | 0 | 176 | Yes |
| | | Collections Operations | 6 | 0 | 2 | 0 | 2 | 2 | 0 | 0 | 6 | Yes |
| | | | 1214 | | | | | | | | | |
| Scott Rundle | 056 | RL Orig Operations | 2 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 2 | Yes |
| | | RL Sales | 27 | 0 | 0 | 0 | 0 | 25 | 2 | 0 | 27 | Yes |
| | | | 29 | | | | | | | | | |
| Tony Kutiper | 054 | Funding Operations | 4 | 1 | 0 | 0 | 0 | 0 | 0 | 3 | 4 | Yes |
| | | Core Funding | 60 | 60 | 0 | 0 | 0 | 0 | 0 | 0 | 60 | Yes |
| | | Core Call Center | 20 | 20 | 0 | 0 | 0 | 0 | 0 | 0 | 20 | Yes |
| | | CarMax | 14 | 14 | 0 | 0 | 0 | 0 | 0 | 0 | 14 | Yes |

| Sabrina | OPEN | Reena | Melissa | Whitney | Kristen | Tensya | Jeanette |
|---|---|---|---|---|---|---|---|
| 98 | 655 | 658 | 390 | 698 | 189 | 382 | 28 |

Combined   3098

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Funding Direct | 11 | 11 | 0 | 0 | 0 | 0 | 0 | 0 | 11 | Yes |
| | | Chrysler Subvention | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Fifth Third | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Funding Support | 17 | 17 | 0 | 0 | 0 | 0 | 0 | 0 | 17 | Yes |
| | | CC Funding | 119 | 119 | 0 | 0 | 0 | 0 | 0 | 0 | 119 | Yes |
| | | CC Call Center | 16 | 16 | 0 | 0 | 0 | 0 | 0 | 0 | 16 | Yes |
| | | NMAC | 12 | 12 | 0 | 0 | 0 | 0 | 0 | 0 | 12 | Yes |
| | 048 | Credit | 94 | 0 | 0 | 0 | 0 | 0 | 4 | 90 | 94 | Yes |
| | | Credit Operations | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 4 | Yes |
| | | | 371 | | | | | | | | | |
| | | | | | | | | | | | | |
| Michael Hedlund | 040 | Accounting | 123 | 0 | 0 | 0 | 0 | 40 | 0 | 83 | 123 | Yes |
| | | | 123 | | | | | | | | | |
| | | | | | | | | | | | | |
| Jim Brewster | 045 | IT Service Support | 58 | 3 | 5 | 0 | 6 | 31 | 0 | 13 | 58 | Yes |
| | | IT Call Center Office | 20 | 0 | 1 | 0 | 15 | 4 | 0 | 0 | 20 | Yes |
| | | IT Client Services | 15 | 0 | 0 | 0 | 9 | 5 | 0 | 1 | 15 | Yes |
| | | | 93 | | | | | | | | | |
| | | | | | | | | | | | | |
| Tobin Page | 055 | Profitability Analytics | 5 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 5 | Yes |
| | | Data Reporting | 17 | 0 | 0 | 0 | 2 | 10 | 2 | 3 | 17 | Yes |
| | | | 22 | | | | | | | | | |
| | | | | | | | | | | | | |
| Raymond Scott | 024 | Legal & Regulatory Profes | 19 | 0 | 0 | 0 | 0 | 1 | 3 | 15 | 19 | Yes |
| | | Legal & Regulatory Suppor | 37 | 0 | 0 | 0 | 0 | 1 | 1 | 35 | 37 | Yes |
| | | Replevin | 11 | 0 | 0 | 0 | 0 | 11 | 0 | 0 | 11 | Yes |
| | | | 67 | | | | | | | | | |

| | Total | 3509 | Gray Total | 0 | THX Total | 411 |
|---|---|---|---|---|---|---|

**From:** Nicole Heinicke <nheinicke@santanderconsumerusa.com>

**To:** Kristen Lagunes <klagunes@santanderconsumerusa.com>, Whitney Andres <wandres@santanderconsumerusa.com>, Jeanette Rodriguez <JRODRIGUEZ@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Melissa Lawson <MLAWSON@santanderconsumerusa.com>, Hortensia Perez <hperez@santanderconsumerusa.com>

**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Kayla Liggett <kliggett@santanderconsumerusa.com>, Stephanie Elad <selad@santanderconsumerusa.com>

**Subject:** Headcount

**Date:** Mon, 30 Nov 2015 22:45:56 +0000

**Importance:** Normal

**Attachments:** Headcount_by_Department.xlsm

---

Hello!

We have updated the Headcount report for this week. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

Thanks!
Nicole

**Nicole Heinicke**
Santander Consumer USA Inc.
HR Generalist

PHONE      214.452.7016
MOBILE     214.212.8260
EMAIL      nheinicke@santanderconsumerusa.com
WEB        www.santanderconsumerusa.com

SC007696

| | | | | Sabrina | OPEN | Reena | Melissa | Whitney | Kristen | Tensya | Jeanette |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 97 | 650 | 652 | 416 | 702 | 193 | 381 | 28 |
| | | | | | | Combined | 3119 | | | | |

| SVP | Cost Center | Departments | Headcount | Corporate | Arapahoe I | Arapahoe II | Lewisville | North Richland Hills | Remote Office | Corporate THX | Subtotal | Match |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mark Mooney | 047 | Reinstatements | 45 | 0 | 2 | 8 | 3 | 32 | 0 | 0 | 45 | Yes |
| | | CC Reinstatements | 11 | 0 | 0 | 0 | 11 | 0 | 0 | 0 | 11 | Yes |
| | | Recovery Operations | 12 | 0 | 0 | 0 | 0 | 3 | 0 | 9 | 12 | Yes |
| | | Dealer Control | 67 | 0 | 0 | 0 | 0 | 0 | 0 | 67 | 67 | Yes |
| | | Collateral Recovery | 48 | 0 | 0 | 0 | 14 | 34 | 0 | 0 | 48 | Yes |
| | | CC Coll Recv | 11 | 0 | 0 | 0 | 0 | 11 | 0 | 0 | 11 | Yes |
| | | Non Collateral Deficiency | 12 | 0 | 4 | 4 | 0 | 4 | 0 | 0 | 12 | Yes |
| | | Vendor Oversight | 52 | 0 | 0 | 0 | 4 | 46 | 0 | 2 | 52 | Yes |
| | | CC Vdr Oversight | 6 | 0 | 0 | 0 | 2 | 4 | 0 | 0 | 6 | Yes |
| | | | 264 | | | | | | | | | |
| Dominique Doyenard | 031 | Dialer Administration | 10 | 6 | 0 | 0 | 4 | 0 | 0 | 0 | 10 | Yes |
| | | Business Process Optimization | 8 | 0 | 0 | 0 | 1 | 6 | 1 | 0 | 8 | Yes |
| | | Operational Analytics | 11 | 0 | 0 | 0 | 5 | 1 | 5 | 0 | 11 | Yes |
| | | | 29 | | | | | | | | | |
| Linda Vrazel | 031 | Quality Assurance | 51 | 0 | 0 | 0 | 0 | 0 | 1 | 50 | 51 | Yes |
| | | CC Dealer Advocacy and Maintenance | 18 | 0 | 0 | 0 | 0 | 0 | 0 | 18 | 18 | Yes |
| | | Credit Bureau Advocacy | 19 | 0 | 0 | 0 | 10 | 0 | 0 | 9 | 19 | Yes |
| | | Advocacy Analytics | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | Yes |
| | | Customer Advocacy | 20 | 0 | 0 | 0 | 0 | 20 | 0 | 0 | 20 | Yes |
| | | | 109 | | | | | | | | | |
| Graham Anderson | 036 | Titles | 82 | 0 | 0 | 20 | 0 | 62 | 0 | 0 | 82 | Yes |
| | | CC Titles | 16 | 0 | 0 | 0 | 0 | 16 | 0 | 0 | 16 | Yes |
| | | Insurance | 50 | 0 | 0 | 0 | 0 | 50 | 0 | 0 | 50 | Yes |
| | | CC Insurance | 18 | 0 | 0 | 0 | 0 | 18 | 0 | 0 | 18 | Yes |
| | | Account Services Unit ASU | 43 | 0 | 0 | 0 | 0 | 43 | 0 | 0 | 43 | Yes |
| | | CC Account Services Unit | 6 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | 050 | Impounds | 38 | 0 | 0 | 0 | 0 | 38 | 0 | 0 | 38 | Yes |
| | | CC Impounds | 7 | 0 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes |
| | | | 260 | | | | | | | | | |
| Scott Dieckman | 047 | Unsecured Credit Card | 52 | 51 | 0 | 0 | 0 | 1 | 0 | 0 | 52 | Yes |
| | | | 52 | | | | | | | | | |
| James Hart | 031 | Quality Control | 79 | 1 | 0 | 0 | 0 | 30 | 0 | 48 | 79 | Yes |
| | | Strategic Operations | 19 | 0 | 0 | 0 | 2 | 2 | 0 | 15 | 19 | Yes |
| | | | 98 | | | | | | | | | |
| Tamika Carr | 034 | Program Management | 44 | 0 | 0 | 0 | 0 | 17 | 0 | 27 | 44 | Yes |
| | | Program Management CCAR | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes |
| | | | 45 | | | | | | | | | |
| Kim Thorndyke | 046 | Customer Service | 173 | 0 | 42 | 0 | 42 | 89 | 0 | 0 | 173 | Yes |
| | | Customer Service Operations | 5 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 5 | Yes |
| | | OSP Vendor Management | 5 | 0 | 1 | 0 | 1 | 3 | 0 | 0 | 5 | Yes |
| | | CC Customer Service Support | 235 | 0 | 41 | 0 | 55 | 139 | 0 | 0 | 235 | Yes |
| | | | 418 | | | | | | | | | |
| Brent Huisman | 050 | Asset Remarketing | 53 | 0 | 0 | 0 | 0 | 50 | 3 | 0 | 53 | Yes |
| | | CC Asset Remarketing | 73 | 0 | 3 | 7 | 11 | 41 | 0 | 11 | 73 | Yes |
| | | Auctions | 30 | 0 | 0 | 0 | 0 | 2 | 28 | 0 | 30 | Yes |
| | | CC Auctions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | | 156 | | | | | | | | | |
| Brad Quick | 038 | Specialized Services | 64 | 0 | 0 | 0 | 0 | 64 | 0 | 0 | 64 | Yes |
| | 038 | Cease and Desist | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | 035 | Bankruptcy | 96 | 0 | 8 | 7 | 0 | 81 | 0 | 0 | 96 | Yes |
| | | CC Bankruptcy | 7 | 0 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes |
| | | | 167 | | | | | | | | | |
| Wayne Nightengale | 049 | Late Stage | 753 | 0 | 134 | 0 | 308 | 311 | 0 | 0 | 753 | Yes |
| | | Early Stage | 132 | 0 | 59 | 0 | 27 | 46 | 0 | 0 | 132 | Yes |
| | | CC Late Stage | 166 | 0 | 11 | 0 | 84 | 71 | 0 | 0 | 166 | Yes |
| | | CC Early Stage | 173 | 0 | 57 | 0 | 80 | 36 | 0 | 0 | 173 | Yes |
| | | Collections Operations | 6 | 0 | 2 | 0 | 2 | 2 | 0 | 0 | 6 | Yes |
| | | | 1230 | | | | | | | | | |
| Scott Rundle | 056 | RL Orig Operations | 2 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 2 | Yes |
| | | RL Sales | 27 | 0 | 0 | 0 | 0 | 25 | 2 | 0 | 27 | Yes |
| | | | 29 | | | | | | | | | |
| Tony Kutiper | 054 | Funding Operations | 4 | 1 | 0 | 0 | 0 | 0 | 0 | 3 | 4 | Yes |
| | | Core Funding | 60 | 60 | 0 | 0 | 0 | 0 | 0 | 0 | 60 | Yes |
| | | Core Call Center | 20 | 20 | 0 | 0 | 0 | 0 | 0 | 0 | 20 | Yes |
| | | CarMax | 14 | 14 | 0 | 0 | 0 | 0 | 0 | 0 | 14 | Yes |

App.344

| Name | # | Function | Count | | | | | | | | Total | Yes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Funding Direct | 11 | 11 | 0 | 0 | 0 | 0 | 0 | 0 | 11 | Yes |
| | | Chrysler Subvention | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Fifth Third | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Funding Support | 16 | 16 | 0 | 0 | 0 | 0 | 0 | 0 | 16 | Yes |
| | | CC Funding | 119 | 119 | 0 | 0 | 0 | 0 | 0 | 0 | 119 | Yes |
| | | CC Call Center | 16 | 16 | 0 | 0 | 0 | 0 | 0 | 0 | 16 | Yes |
| | | NMAC | 12 | 12 | 0 | 0 | 0 | 0 | 0 | 0 | 12 | Yes |
| | 048 | Credit | 94 | 0 | 0 | 0 | 0 | 0 | 4 | 90 | 94 | Yes |
| | | Credit Operations | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 4 | Yes |
| | | | 370 | | | | | | | | | |
| Michael Hedlund | 040 | Accounting | 122 | 0 | 0 | 0 | 0 | 40 | 0 | 82 | 122 | Yes |
| | | | 122 | | | | | | | | | |
| Jim Brewster | 045 | IT Service Support | 58 | 3 | 5 | 0 | 6 | 31 | 0 | 13 | 58 | Yes |
| | | IT Call Center Office | 20 | 0 | 1 | 0 | 15 | 4 | 0 | 0 | 20 | Yes |
| | | IT Client Services | 14 | 0 | 0 | 0 | 8 | 5 | 0 | 1 | 14 | Yes |
| | | | 92 | | | | | | | | | |
| Tobin Page | 055 | Profitability Analytics | 5 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 5 | Yes |
| | | Data Reporting | 17 | 0 | 0 | 0 | 2 | 10 | 2 | 3 | 17 | Yes |
| | | | 22 | | | | | | | | | |
| Raymond Scott | 024 | Legal & Regulatory Profes | 19 | 0 | 0 | 0 | 0 | 1 | 3 | 15 | 19 | Yes |
| | | Legal & Regulatory Suppor | 37 | 0 | 0 | 0 | 0 | 1 | 1 | 35 | 37 | Yes |
| | | Replevin | 11 | 0 | 0 | 0 | 0 | 11 | 0 | 0 | 11 | Yes |
| | | | 67 | | | | | | | | | |

| Total | 3530 | Gray Total | 0 | THX Total | 411 |
|---|---|---|---|---|---|

**From:** Nicole Heinicke <nheinicke@santanderconsumerusa.com>

**To:** Kristen Lagunes <klagunes@santanderconsumerusa.com>, Whitney Andres <wandres@santanderconsumerusa.com>, Jeanette Rodriguez <JRODRIGUEZ@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Melissa Lawson <MLAWSON@santanderconsumerusa.com>, Hortensia Perez <hperez@santanderconsumerusa.com>

**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Kayla Liggett <kliggett@santanderconsumerusa.com>, Stephanie Elad <selad@santanderconsumerusa.com>, Edward Fabritiis <efabritiis@santanderconsumerusa.com>

**Subject:** Headcount

**Date:** Mon, 07 Dec 2015 20:21:04 +0000

**Importance:** Normal

**Attachments:** Headcount_by_Department.xlsm

---

Hello!

We have updated the Headcount report for this week. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

Thanks!
Nicole

### Nicole Heinicke
Santander Consumer USA Inc.
HR Generalist

PHONE     214.452.7016
MOBILE    214.212.8260
EMAIL      nheinicke@santanderconsumerusa.com
WEB        www.santanderconsumerusa.com

SC009027

| SVP | Cost Center | Departments | Headcount | Corporate | Arapahoe I | Arapahoe II | Lewisville | North Richland Hills | Remote Office | Corporate THX | Subtotal | Match |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mark Mooney | 047 | Reinstatements | 45 | 0 | 2 | 8 | 3 | 32 | 0 | 0 | 45 | Yes |
| | | CC Reinstatements | 11 | 0 | 0 | 0 | 11 | 0 | 0 | 0 | 11 | Yes |
| | | Recovery Operations | 13 | 0 | 0 | 0 | 0 | 4 | 0 | 9 | 13 | Yes |
| | | Dealer Control | 67 | 0 | 0 | 0 | 0 | 0 | 0 | 67 | 67 | Yes |
| | | Collateral Recovery | 48 | 0 | 0 | 0 | 14 | 34 | 0 | 0 | 48 | Yes |
| | | CC Coll Recv | 11 | 0 | 0 | 0 | 0 | 11 | 0 | 0 | 11 | Yes |
| | | Non Collateral Deficiency | 12 | 0 | 4 | 4 | 0 | 4 | 0 | 0 | 12 | Yes |
| | | Vendor Oversight | 52 | 0 | 0 | 0 | 4 | 46 | 0 | 2 | 52 | Yes |
| | | CC Vdr Oversight | 6 | 0 | 0 | 0 | 2 | 4 | 0 | 0 | 6 | Yes |
| | | | 265 | | | | | | | | | |
| Dominique Doyenard | 031 | Dialer Administration | 10 | 6 | 0 | 0 | 4 | 0 | 0 | 0 | 10 | Yes |
| | | Business Process Optimization | 7 | 0 | 0 | 0 | 0 | 6 | 1 | 0 | 7 | Yes |
| | | Operational Analytics | 12 | 0 | 0 | 0 | 6 | 1 | 5 | 0 | 12 | Yes |
| | | | 29 | | | | | | | | | |
| Linda Vrazel | 031 | Quality Assurance | 51 | 0 | 0 | 0 | 0 | 0 | 1 | 50 | 51 | Yes |
| | | CC Dealer Advocacy and Maintenance | 18 | 0 | 0 | 0 | 0 | 0 | 0 | 18 | 18 | Yes |
| | | Credit Bureau Advocacy | 18 | 0 | 0 | 0 | 10 | 0 | 0 | 8 | 18 | Yes |
| | | Advocacy Analytics | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | Yes |
| | | Customer Advocacy | 20 | 0 | 0 | 0 | 0 | 20 | 0 | 0 | 20 | Yes |
| | | | 108 | | | | | | | | | |
| Graham Anderson | 036 | Titles | 82 | 0 | 0 | 20 | 0 | 62 | 0 | 0 | 82 | Yes |
| | | CC Titles | 15 | 0 | 0 | 0 | 0 | 15 | 0 | 0 | 15 | Yes |
| | | Insurance | 49 | 0 | 0 | 0 | 0 | 49 | 0 | 0 | 49 | Yes |
| | | CC Insurance | 18 | 0 | 0 | 0 | 0 | 18 | 0 | 0 | 18 | Yes |
| | | Account Services Unit ASU | 43 | 0 | 0 | 0 | 0 | 43 | 0 | 0 | 43 | Yes |
| | | CC Account Services Unit | 6 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | 050 | Impounds | 40 | 0 | 0 | 0 | 0 | 40 | 0 | 0 | 40 | Yes |
| | | CC Impounds | 7 | 0 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes |
| | | | 260 | | | | | | | | | |
| Scott Dieckman | 047 | Unsecured Credit Card | 52 | 51 | 0 | 0 | 0 | 1 | 0 | 0 | 52 | Yes |
| | | | 52 | | | | | | | | | |
| James Hart | 031 | Quality Control | 78 | 1 | 0 | 0 | 0 | 29 | 0 | 48 | 78 | Yes |
| | | Strategic Operations | 19 | 0 | 0 | 0 | 2 | 2 | 0 | 15 | 19 | Yes |
| | | | 97 | | | | | | | | | |
| Tamika Carr | 034 | Program Management | 46 | 0 | 0 | 0 | 0 | 17 | 0 | 29 | 46 | Yes |
| | | Program Management CCAR | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes |
| | | | 47 | | | | | | | | | |
| Kim Thorndyke | 046 | Customer Service | 172 | 0 | 42 | 0 | 42 | 88 | 0 | 0 | 172 | Yes |
| | | Customer Service Operations | 5 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 5 | Yes |
| | | OSP Vendor Management | 5 | 0 | 1 | 0 | 1 | 3 | 0 | 0 | 5 | Yes |
| | | CC Customer Service Support | 233 | 0 | 41 | 0 | 54 | 138 | 0 | 0 | 233 | Yes |
| | | | 415 | | | | | | | | | |
| Brent Huisman | 050 | Asset Remarketing | 54 | 0 | 0 | 0 | 0 | 51 | 3 | 0 | 54 | Yes |
| | | CC Asset Remarketing | 77 | 0 | 3 | 10 | 11 | 41 | 0 | 12 | 77 | Yes |
| | | Auctions | 30 | 0 | 0 | 0 | 0 | 2 | 28 | 0 | 30 | Yes |
| | | CC Auctions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | | 161 | | | | | | | | | |
| Brad Quick | 038 | Specialized Services | 64 | 0 | 0 | 0 | 0 | 64 | 0 | 0 | 64 | Yes |
| | 038 | Cease and Desist | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | 035 | Bankruptcy | 97 | 0 | 8 | 7 | 0 | 82 | 0 | 0 | 97 | Yes |
| | | CC Bankruptcy | 7 | 0 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes |
| | | | 168 | | | | | | | | | |
| Wayne Nightengale | 049 | Late Stage | 754 | 0 | 141 | 0 | 308 | 303 | 0 | 0 | 754 | Yes |
| | | Early Stage | 112 | 0 | 40 | 0 | 26 | 46 | 0 | 0 | 112 | Yes |
| | | CC Late Stage | 167 | 0 | 11 | 0 | 84 | 72 | 0 | 0 | 167 | Yes |
| | | CC Early Stage | 177 | 0 | 61 | 0 | 80 | 36 | 0 | 0 | 177 | Yes |
| | | Collections Operations | 4 | 0 | 1 | 0 | 1 | 2 | 0 | 0 | 4 | Yes |
| | | | 1214 | | | | | | | | | |
| Scott Rundle | 056 | RL Orig Operations | 2 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 2 | Yes |
| | | RL Sales | 27 | 0 | 0 | 0 | 0 | 25 | 2 | 0 | 27 | Yes |
| | | | 29 | | | | | | | | | |
| Tony Kutiper | 054 | Funding Operations | 4 | 1 | 0 | 0 | 0 | 0 | 0 | 3 | 4 | Yes |
| | | Core Funding | 60 | 60 | 0 | 0 | 0 | 0 | 0 | 0 | 60 | Yes |
| | | Core Call Center | 22 | 20 | 1 | 0 | 1 | 0 | 0 | 0 | 22 | Yes |
| | | CarMax | 14 | 14 | 0 | 0 | 0 | 0 | 0 | 0 | 14 | Yes |

Location

| Sabrina | OPEN | Reena | Melissa | Whitney | Kristen | Tenaya | Jeanette |
|---|---|---|---|---|---|---|---|
| 96 | 653 | 649 | 410 | 696 | 192 | 379 | 28 |

Combined 3103

App.347

| Name | Code | Department | Total | | | | | | | | Final | Yes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Funding Direct | 11 | 11 | 0 | 0 | 0 | 0 | 0 | 0 | 11 | Yes |
| | | Chrysler Subvention | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Fifth Third | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Funding Support | 16 | 16 | 0 | 0 | 0 | 0 | 0 | 0 | 16 | Yes |
| | | CC Funding | 118 | 118 | 0 | 0 | 0 | 0 | 0 | 0 | 118 | Yes |
| | | CC Call Center | 14 | 14 | 0 | 0 | 0 | 0 | 0 | 0 | 14 | Yes |
| | | NMAC | 12 | 12 | 0 | 0 | 0 | 0 | 0 | 0 | 12 | Yes |
| | 048 | Credit | 95 | 0 | 0 | 0 | 0 | 0 | 4 | 91 | 95 | Yes |
| | | Credit Operations | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | |
| | | | 370 | | | | | | | | | |
| Michael Hedlund | 040 | Accounting | 119 | 0 | 0 | 0 | 0 | 40 | 0 | 79 | 119 | Yes |
| | | | 119 | | | | | | | | | |
| Jim Brewster | 045 | IT Service Support | 58 | 3 | 5 | 0 | 6 | 31 | 0 | 13 | 58 | Yes |
| | | IT Call Center Office | 20 | 0 | 1 | 0 | 15 | 4 | 0 | 0 | 20 | Yes |
| | | IT Client Services | 14 | 0 | 0 | 0 | 8 | 5 | 0 | 1 | 14 | Yes |
| | | | 92 | | | | | | | | | |
| Tobin Page | 055 | Profitability Analytics | 5 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 5 | Yes |
| | | Data Reporting | 17 | 0 | 0 | 0 | 2 | 10 | 2 | 3 | 17 | Yes |
| | | | 22 | | | | | | | | | |
| Raymond Scott | 024 | Legal & Regulatory Profes | 19 | 0 | 0 | 0 | 0 | 1 | 3 | 15 | 19 | Yes |
| | | Legal & Regulatory Suppor | 37 | 0 | 0 | 0 | 0 | 1 | 1 | 35 | 37 | Yes |
| | | Replevin | 11 | 0 | 0 | 0 | 0 | 11 | 0 | 0 | 11 | Yes |
| | | | 67 | | | | | | | | | |

Total 3515        Gray Total 2        THX Total 410

**From:** Nicole Heinicke <nheinicke@santanderconsumerusa.com>

**To:** Kristen Lagunes <klagunes@santanderconsumerusa.com>, Whitney Andres <wandres@santanderconsumerusa.com>, Jeanette Rodriguez <JRODRIGUEZ@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Melissa Lawson <MLAWSON@santanderconsumerusa.com>, Hortensia Perez <hperez@santanderconsumerusa.com>

**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Kayla Liggett <kliggett@santanderconsumerusa.com>, Stephanie Elad <selad@santanderconsumerusa.com>, Edward Fabritiis <efabritiis@santanderconsumerusa.com>

**Subject:** Headcount

**Date:** Tue, 15 Dec 2015 18:39:22 +0000

**Importance:** Normal

**Attachments:** Headcount_by_Department.xlsm

---

Hello!

We have updated the Headcount report for this week. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

Thanks!
Nicole

## Nicole Heinicke
Santander Consumer USA Inc.
HR Generalist

PHONE    214.452.7016
MOBILE   214.212.8260
EMAIL    nheinicke@santanderconsumerusa.com
WEB    www.santanderconsumerusa.com

SC009955

| SVP | Cost Center | Departments | Headcount | Corporate | Arapahoe I | Arapahoe II | Lewisville | Mesa AZ | North Richland Hills | Remote Office | Corporate THX | Subtotal | Match |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mark Mooney | 047 | Reinstatements | 45 | 0 | 2 | 8 | 3 | 0 | 32 | 0 | 0 | 45 | Yes |
| | | CC Reinstatements | 11 | 0 | 0 | 0 | 11 | 0 | 0 | 0 | 0 | 11 | Yes |
| | | Recovery Operations | 12 | 0 | 0 | 0 | 0 | 0 | 3 | 0 | 9 | 12 | Yes |
| | | Dealer Control | 67 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 67 | 67 | Yes |
| | | Collateral Recovery | 47 | 0 | 0 | 0 | 14 | 0 | 33 | 0 | 0 | 47 | Yes |
| | | CC Coll Recv | 12 | 0 | 0 | 0 | 0 | 0 | 12 | 0 | 0 | 12 | Yes |
| | | Non Collateral Deficiency | 14 | 0 | 5 | 5 | 0 | 0 | 4 | 0 | 0 | 14 | Yes |
| | | Vendor Oversight | 52 | 0 | 0 | 0 | 0 | 0 | 43 | 0 | 5 | 52 | Yes |
| | | CC Vdr Oversight | 6 | 0 | 0 | 0 | 2 | 0 | 4 | 0 | 0 | 6 | Yes |
| | | | 266 | | | | | | | | | | |
| Dominique Doyenard | 031 | Dialer Administration | 11 | 6 | 0 | 0 | 5 | 0 | 0 | 0 | 0 | 11 | Yes |
| | | Business Process Optimization | 6 | 0 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | | Operational Analytics | 13 | 0 | 0 | 0 | 6 | 0 | 1 | 6 | 0 | 13 | Yes |
| | | | 30 | | | | | | | | | | |
| Linda Vrazel | 031 | Quality Assurance | 52 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 51 | 52 | Yes |
| | | CC Dealer Advocacy and Maintenance | 18 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 18 | 18 | Yes |
| | | Credit Bureau Advocacy | 18 | 0 | 0 | 0 | 10 | 0 | 0 | 0 | 8 | 18 | Yes |
| | | Advocacy Analytics | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | Yes |
| | | Customer Advocacy | 21 | 0 | 0 | 0 | 0 | 0 | 21 | 0 | 0 | 21 | Yes |
| | | | 110 | | | | | | | | | | |
| Graham Anderson | 036 | Titles | 82 | 0 | 0 | 20 | 0 | 0 | 62 | 0 | 0 | 82 | Yes |
| | | CC Titles | 15 | 0 | 0 | 0 | 1 | 0 | 14 | 0 | 0 | 15 | Yes |
| | | Insurance | 49 | 0 | 0 | 0 | 0 | 0 | 49 | 0 | 0 | 49 | Yes |
| | | CC Insurance | 18 | 0 | 0 | 0 | 0 | 0 | 18 | 0 | 0 | 18 | Yes |
| | | Account Services Unit ASU | 43 | 0 | 0 | 0 | 0 | 0 | 43 | 0 | 0 | 43 | Yes |
| | | CC Account Services Unit | 6 | 0 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | 050 | Impounds | 41 | 0 | 0 | 0 | 0 | 0 | 41 | 0 | 0 | 41 | Yes |
| | | CC Impounds | 7 | 0 | 0 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes |
| | | | 261 | | | | | | | | | | |
| Scott Dieckman | 047 | Unsecured Credit Card | 52 | 51 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 52 | Yes |
| | | | 52 | | | | | | | | | | |
| James Hart | 031 | Quality Control | 78 | 1 | 0 | 1 | 0 | 0 | 28 | 0 | 48 | 78 | Yes |
| | | Strategic Operations | 18 | 0 | 0 | 0 | 1 | 0 | 2 | 0 | 15 | 18 | Yes |
| | | | 96 | | | | | | | | | | |
| Mark Smith | 034 | Program Management | 46 | 0 | 0 | 0 | 0 | 0 | 17 | 0 | 29 | 46 | Yes |
| | | Program Management CCAR | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes |
| | | | 47 | | | | | | | | | | |
| Kim Thorndyke | 046 | Customer Service | 170 | 0 | 42 | 0 | 43 | 0 | 85 | 0 | 0 | 170 | Yes |
| | | Customer Service Operations | 5 | 0 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 5 | Yes |
| | | OSP Vendor Management | 5 | 0 | 1 | 0 | 1 | 0 | 1 | 2 | 0 | 5 | Yes |
| | | CC Customer Service Support | 231 | 0 | 41 | 0 | 53 | 0 | 137 | 0 | 0 | 231 | Yes |
| | | | 411 | | | | | | | | | | |
| Brent Huisman | 050 | Asset Remarketing | 53 | 0 | 0 | 0 | 0 | 0 | 51 | 2 | 0 | 53 | Yes |
| | | CC Asset Remarketing | 78 | 0 | 3 | 10 | 13 | 0 | 40 | 0 | 12 | 78 | Yes |
| | | Auctions | 31 | 0 | 0 | 0 | 0 | 0 | 2 | 29 | 0 | 31 | Yes |
| | | CC Auctions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | | 162 | | | | | | | | | | |
| Brad Quick | 038 | Specialized Services | 63 | 0 | 0 | 0 | 0 | 0 | 63 | 0 | 0 | 63 | Yes |
| | 038 | Cease and Desist | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | 035 | Bankruptcy | 98 | 0 | 1 | 14 | 0 | 0 | 83 | 0 | 0 | 98 | Yes |
| | | CC Bankruptcy | 7 | 0 | 0 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes |
| | | | 168 | | | | | | | | | | |
| Wayne Nightengale | 049 | Late Stage | 752 | 0 | 109 | 29 | 308 | 0 | 306 | 0 | 0 | 752 | Yes |
| | | Early Stage | 77 | 0 | 7 | 0 | 24 | 0 | 46 | 0 | 0 | 77 | Yes |
| | | CC Late Stage | 180 | 0 | 25 | 0 | 84 | 0 | 71 | 0 | 0 | 180 | Yes |
| | | CC Early Stage | 197 | 0 | 84 | 0 | 79 | 0 | 34 | 0 | 0 | 197 | Yes |
| | | Collections Operations | 4 | 0 | 1 | 0 | 1 | 0 | 2 | 0 | 0 | 4 | Yes |
| | | | 1210 | | | | | | | | | | |
| Scott Rundle | 056 | RL Orig Operations | 2 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 2 | Yes |
| | | RL Sales | 27 | 0 | 0 | 0 | 0 | 0 | 25 | 2 | 0 | 27 | Yes |
| | | | 29 | | | | | | | | | | |
| Tony Kutiper | 054 | Funding Operations | 5 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 5 | Yes |
| | | Core Funding | 59 | 26 | 0 | 0 | 33 | 0 | 0 | 0 | 0 | 59 | Yes |
| | | Core Call Center | 22 | 10 | 1 | 0 | 11 | 0 | 0 | 0 | 0 | 22 | Yes |
| | | CarMax | 14 | 14 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 14 | Yes |
| | | Funding Direct | 11 | 10 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 11 | Yes |
| | | Chrysler Subvention | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Fifth Third | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Funding Support | 16 | 13 | 0 | 0 | 3 | 0 | 0 | 0 | 0 | 16 | Yes |
| | | CC Funding | 118 | 81 | 0 | 0 | 37 | 0 | 0 | 0 | 0 | 118 | Yes |
| | | CC Call Center | 14 | 0 | 0 | 0 | 14 | 0 | 0 | 0 | 0 | 14 | Yes |

Column totals (header): Sabrina 96 | OPEN 648 | Reena 749 | Melissa 416 | Whitney 689 | Kristen 193 | Tensya 280 | Jeanette 28

Combined 3099

| Name | Code | Department | Count | | | | | | | | | | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | NMAC | 12 | 12 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 12 | Yes |
| | 048 | Credit | 94 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 4 | 90 | 94 | Yes |
| | | Credit Operations | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 | 4 | 4 | Yes |
| | | | 369 | | | | | | | | | | | | |
| Jennifer Davis | 040 | Accounting | 117 | 0 | 0 | 0 | 0 | 0 | 41 | 0 | 76 | | | 117 | Yes |
| | | | 117 | | | | | | | | | | | | |
| Jim Brewster | 045 | IT Service Support | 59 | 3 | 5 | 0 | 6 | 1 | 31 | 0 | 13 | | | 59 | Yes |
| | | IT Call Center Office | 20 | 0 | 1 | 0 | 15 | 0 | 4 | 0 | 0 | | | 20 | Yes |
| | | IT Client Services | 14 | 0 | 0 | 0 | 8 | 0 | 5 | 0 | 1 | | | 14 | Yes |
| | | | 93 | | | | | | | | | | | | |
| Tobin Page | 055 | Profitability Analytics | 5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | | | 5 | Yes |
| | | Data Reporting | 17 | 0 | 0 | 0 | 2 | 0 | 10 | 2 | 3 | | | 17 | Yes |
| | | | 22 | | | | | | | | | | | | |
| Raymond Scott | 024 | Legal & Regulatory Profes | 19 | 0 | 0 | 0 | 0 | 0 | 1 | 3 | 15 | | | 19 | Yes |
| | | Legal & Regulatory Suppor | 37 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 35 | | | 37 | Yes |
| | | Replevin | 11 | 0 | 0 | 0 | 0 | 0 | 11 | 0 | 0 | | | 11 | Yes |
| | | | 67 | | | | | | | | | | | | |

| | | | |
|---|---|---|---|
| Total | 3510 | Gray Total | 0 |
| | | THX Total | 411 |

**From:** Nicole Heinicke <nheinicke@santanderconsumerusa.com>

**To:** Kristen Lagunes <klagunes@santanderconsumerusa.com>, Whitney Andres <wandres@santanderconsumerusa.com>, Jeanette Rodriguez <JRODRIGUEZ@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Melissa Lawson <MLAWSON@santanderconsumerusa.com>, Hortensia Perez <hperez@santanderconsumerusa.com>

**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Kayla Liggett <kliggett@santanderconsumerusa.com>, Stephanie Elad <selad@santanderconsumerusa.com>, Edward Fabritiis <efabritiis@santanderconsumerusa.com>

**Subject:** Headcount

**Date:** Mon, 21 Dec 2015 16:24:05 +0000

**Importance:** Normal

**Attachments:** Headcount_by_Department.xlsm

---

Hello!

We have updated the Headcount report for this week. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

Thanks!
Nicole

## Nicole Heinicke
Santander Consumer USA Inc.
HR Generalist

PHONE     214.452.7016
MOBILE    214.212.8260
EMAIL     nheinicke@santanderconsumerusa.com
WEB       www.santanderconsumerusa.com

SC009833

| SVP | Cost Center | Departments | Headcount | Corporate | Arapahoe I | Arapahoe II | Lewisville | Mesa AZ | North Richland Hills | Remote Office | Corporate THX | Subtotal | Match |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Location | | | | | |
| Mark Mooney | 047 | Reinstatements | 45 | 0 | 2 | 8 | 3 | 0 | 32 | 0 | 0 | 45 | Yes |
| | | CC Reinstatements | 11 | 0 | 0 | 0 | 11 | 0 | 0 | 0 | 0 | 11 | Yes |
| | | Recovery Operations | 12 | 0 | 0 | 0 | 0 | 0 | 3 | 0 | 9 | 12 | Yes |
| | | Dealer Control | 67 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 67 | 67 | Yes |
| | | Collateral Recovery | 47 | 0 | 0 | 0 | 14 | 0 | 33 | 0 | 0 | 47 | Yes |
| | | CC Coll Recv | 12 | 0 | 0 | 0 | 0 | 0 | 12 | 0 | 0 | 12 | Yes |
| | | Non Collateral Deficiency | 14 | 0 | 5 | 5 | 0 | 0 | 4 | 0 | 0 | 14 | Yes |
| | | Vendor Oversight | 52 | 0 | 0 | 0 | 0 | 0 | 42 | 0 | 6 | 52 | Yes |
| | | CC Vdr Oversight | 6 | 0 | 0 | 0 | 2 | 0 | 4 | 0 | 0 | 6 | Yes |
| | | | 266 | | | | | | | | | | |
| Dominique Doyenard | 031 | Dialer Administration | 11 | 6 | 0 | 0 | 5 | 0 | 0 | 0 | 0 | 11 | Yes |
| | | Business Process Optimization | 6 | 0 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | | Operational Analytics | 13 | 0 | 0 | 0 | 6 | 0 | 1 | 0 | 6 | 13 | Yes |
| | | | 30 | | | | | | | | | | |
| Linda Vrazel | 031 | Quality Assurance | 50 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 49 | 50 | Yes |
| | | CC Dealer Advocacy and Maintenance | 18 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 18 | 18 | Yes |
| | | Credit Bureau Advocacy | 18 | 0 | 0 | 0 | 9 | 0 | 0 | 0 | 9 | 18 | Yes |
| | | Advocacy Analytics | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | Yes |
| | | Customer Advocacy | 21 | 0 | 0 | 0 | 0 | 0 | 21 | 0 | 0 | 21 | Yes |
| | | | 108 | | | | | | | | | | |
| Graham Anderson | 036 | Titles | 82 | 0 | 0 | 20 | 0 | 0 | 62 | 0 | 0 | 82 | Yes |
| | | CC Titles | 15 | 0 | 0 | 0 | 1 | 0 | 14 | 0 | 0 | 15 | Yes |
| | | Insurance | 49 | 0 | 0 | 0 | 0 | 0 | 49 | 0 | 0 | 49 | Yes |
| | | CC Insurance | 18 | 0 | 0 | 0 | 0 | 0 | 18 | 0 | 0 | 18 | Yes |
| | | Account Services Unit ASU | 43 | 0 | 0 | 0 | 0 | 0 | 43 | 0 | 0 | 43 | Yes |
| | | CC Account Services Unit | 6 | 0 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | 050 | Impounds | 39 | 0 | 0 | 0 | 0 | 0 | 39 | 0 | 0 | 39 | Yes |
| | | CC Impounds | 8 | 0 | 0 | 0 | 0 | 0 | 8 | 0 | 0 | 8 | Yes |
| | | | 260 | | | | | | | | | | |
| Scott Dieckman | 047 | Unsecured Credit Card | 52 | 51 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 52 | Yes |
| | | | 52 | | | | | | | | | | |
| James Hart | 031 | Quality Control | 79 | 1 | 0 | 1 | 0 | 0 | 29 | 0 | 48 | 79 | Yes |
| | | Strategic Operations | 18 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 16 | 18 | Yes |
| | | | 97 | | | | | | | | | | |
| Mark Smith | 034 | Program Management | 46 | 0 | 0 | 0 | 0 | 0 | 17 | 0 | 29 | 46 | Yes |
| | | Program Management CCAR | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes |
| | | | 47 | | | | | | | | | | |
| Kim Thorndyke | 046 | Customer Service | 169 | 0 | 42 | 0 | 42 | 0 | 85 | 0 | 0 | 169 | Yes |
| | | Customer Service Operations | 5 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 0 | 5 | Yes |
| | | OSP Vendor Management | 5 | 0 | 1 | 0 | 1 | 0 | 1 | 2 | 0 | 5 | Yes |
| | | CC Customer Service Support | 228 | 0 | 40 | 0 | 54 | 0 | 134 | 0 | 0 | 228 | Yes |
| | | | 407 | | | | | | | | | | |
| Brent Huisman | 050 | Asset Remarketing | 56 | 0 | 0 | 0 | 0 | 0 | 44 | 2 | 10 | 56 | Yes |
| | | CC Asset Remarketing | 77 | 0 | 1 | 12 | 13 | 0 | 38 | 0 | 13 | 77 | Yes |
| | | Auctions | 31 | 0 | 0 | 0 | 0 | 0 | 2 | 29 | 0 | 31 | Yes |
| | | CC Auctions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | | 164 | | | | | | | | | | |
| Brad Quick | 038 | Specialized Services | 62 | 0 | 0 | 0 | 0 | 0 | 62 | 0 | 0 | 62 | Yes |
| | 038 | Cease and Desist | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | 035 | Bankruptcy | 98 | 0 | 1 | 14 | 0 | 0 | 83 | 0 | 0 | 98 | Yes |
| | | CC Bankruptcy | 7 | 0 | 0 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes |
| | | | 167 | | | | | | | | | | |
| Wayne Nightengale | 049 | Late Stage | 827 | 0 | 184 | 30 | 306 | 0 | 308 | 0 | 0 | 827 | Yes |
| | | Early Stage | 72 | 0 | 2 | 0 | 24 | 0 | 46 | 0 | 0 | 72 | Yes |
| | | CC Late Stage | 182 | 0 | 27 | 0 | 84 | 0 | 71 | 0 | 0 | 182 | Yes |
| | | CC Early Stage | 199 | 0 | 86 | 0 | 79 | 0 | 34 | 0 | 0 | 199 | Yes |
| | | Collections Operations | 4 | 0 | 1 | 0 | 1 | 0 | 2 | 0 | 0 | 4 | Yes |
| | | | 1284 | | | | | | | | | | |
| Scott Rundle | 056 | RL Orig Operations | 2 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 2 | Yes |
| | | RL Sales | 27 | 0 | 0 | 0 | 0 | 0 | 25 | 2 | 0 | 27 | Yes |
| | | | 29 | | | | | | | | | | |
| Tony Kutiper | 054 | Funding Operations | 5 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 5 | Yes |
| | | Core Funding | 59 | 26 | 0 | 0 | 33 | 0 | 0 | 0 | 0 | 59 | Yes |
| | | Core Call Center | 23 | 10 | 1 | 0 | 11 | 0 | 1 | 0 | 0 | 23 | Yes |
| | | CarMax | 14 | 14 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 14 | Yes |
| | | Funding Direct | 11 | 10 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 11 | Yes |
| | | Chrysler Subvention | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Fifth Third | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Funding Support | 16 | 13 | 0 | 0 | 3 | 0 | 0 | 0 | 0 | 16 | Yes |
| | | CC Funding | 118 | 81 | 0 | 0 | 37 | 0 | 0 | 0 | 0 | 118 | Yes |
| | | CC Call Center | 14 | 0 | 0 | 0 | 14 | 0 | 0 | 0 | 0 | 14 | Yes |

Name totals: Sabrina 96 | OPEN 636 | Reena 747 | Melissa 490 | Whitney 685 | Kristen 194 | Tenya 281 | Jeanette 28

Combined 3157

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | NMAC | 12 | 12 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 12 | Yes |
| | 048 | Credit | 95 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 91 | 95 | Yes |
| | | Credit Operations | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 4 | Yes |
| | | | 371 | | | | | | | | | | |
| Jennifer Davis | 040 | Accounting | 117 | 0 | 0 | 0 | 0 | 40 | 0 | 77 | | 117 | Yes |
| | | | 117 | | | | | | | | | | |
| Jim Brewster | 045 | IT Service Support | 59 | 3 | 5 | 0 | 6 | 1 | 31 | 0 | 13 | 59 | Yes |
| | | IT Call Center Office | 20 | 0 | 1 | 0 | 15 | 0 | 4 | 0 | 0 | 20 | Yes |
| | | IT Client Services | 14 | 0 | 0 | 0 | 8 | 0 | 5 | 0 | 1 | 14 | Yes |
| | | | 93 | | | | | | | | | | |
| Tobin Page | 055 | Profitability Analytics | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 4 | Yes |
| | | Data Reporting | 17 | 0 | 0 | 0 | 1 | 0 | 11 | 2 | 3 | 17 | Yes |
| | | | 21 | | | | | | | | | | |
| Raymond Scott | 024 | Legal & Regulatory Profes | 19 | 0 | 0 | 0 | 0 | 1 | 3 | 15 | | 19 | Yes |
| | | Legal & Regulatory Suppor | 37 | 0 | 0 | 0 | 0 | 1 | 1 | 35 | | 37 | Yes |
| | | Replevin | 11 | 0 | 0 | 0 | 0 | 11 | 0 | 0 | | 11 | Yes |
| | | | 67 | | | | | | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Total | 3580 | Gray Total | 0 | THX Total | 423 |

**From:** Nicole Heinicke <nheinicke@santanderconsumerusa.com>
**To:** Kristen Lagunes <klagunes@santanderconsumerusa.com>, Whitney Andres <wandres@santanderconsumerusa.com>, Jeanette Rodriguez <JRODRIGUEZ@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Melissa Lawson <MLAWSON@santanderconsumerusa.com>, Andrew Scordo <ascordo@santanderconsumerusa.com>
**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Kayla Liggett <kliggett@santanderconsumerusa.com>, Stephanie Elad <selad@santanderconsumerusa.com>, Edward Fabritiis <efabritiis@santanderconsumerusa.com>
**Subject:** Headcount
**Date:** Mon, 11 Jan 2016 16:55:50 +0000
**Importance:** Normal
**Attachments:** Headcount_by_Department.xlsm

---

Hello!

We have updated the Headcount report for this week. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

Thanks!
Nicole

## Nicole Heinicke
Santander Consumer USA Inc.
HR Generalist

| | |
|---|---|
| PHONE | 214.452.7016 |
| MOBILE | 214.212.8260 |
| EMAIL | nheinicke@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |

SC010154

| Sabrina | OPEN | Reena | Melissa | Whitney | Kristen | Jeanette | AJ |
|---|---|---|---|---|---|---|---|
| 93 | 607 | 904 | 10 | 673 | 197 | 26 | 524 |

Combined 3034

| SVP | Cost Center | Departments | Headcount | Corporate | Arapahoe I | Arapahoe II | Lewisville | Mesa AZ | North Richland Hills | Remote Office | Corporate THX | Subtotal | Match |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mark Mooney | 047 | Reinstatements | 45 | 0 | 5 | 10 | 0 | 0 | 30 | 0 | 0 | 45 | Yes |
| | | CC Reinstatements | 14 | 0 | 0 | 0 | 14 | 0 | 0 | 0 | 0 | 14 | Yes |
| | | Recovery Operations | 13 | 0 | 0 | 0 | 0 | 0 | 4 | 0 | 9 | 13 | Yes |
| | | Dealer Control | 67 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 67 | 67 | Yes |
| | | Collateral Recovery | 48 | 0 | 0 | 0 | 0 | 15 | 33 | 0 | 0 | 48 | Yes |
| | | CC Coll Recv | 12 | 0 | 0 | 0 | 0 | 0 | 12 | 0 | 0 | 12 | Yes |
| | | Non Collateral Deficiency | 17 | 0 | 5 | 11 | 0 | 0 | 1 | 0 | 0 | 17 | Yes |
| | | Vendor Oversight | 52 | 0 | 0 | 0 | 0 | 4 | 44 | 0 | 4 | 52 | Yes |
| | | CC Vdr Oversight | 5 | 0 | 0 | 0 | 2 | 0 | 3 | 0 | 0 | 5 | Yes |
| | | | 273 | | | | | | | | | | |
| Dominique Doyenard | 031 | Dialer Administration | 11 | 6 | 0 | 0 | 5 | 0 | 0 | 0 | 0 | 11 | Yes |
| | | Business Process Optimization | 6 | 0 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | | Operational Analytics | 13 | 0 | 0 | 0 | 6 | 0 | 1 | 6 | 0 | 13 | Yes |
| | | | 30 | | | | | | | | | | |
| Linda Vrazel | 031 | Quality Assurance | 50 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 48 | 50 | Yes |
| | | CC Dealer Advocacy and Maintenance | 18 | 0 | 0 | 0 | 18 | 0 | 0 | 0 | 0 | 18 | Yes |
| | | Credit Bureau Advocacy | 21 | 0 | 0 | 0 | 10 | 0 | 0 | 0 | 11 | 21 | Yes |
| | | Advocacy Analytics | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | Yes |
| | | Customer Advocacy | 21 | 0 | 0 | 0 | 0 | 0 | 21 | 0 | 0 | 21 | Yes |
| | | | 111 | | | | | | | | | | |
| Graham Anderson | 036 | Titles | 79 | 0 | 0 | 20 | 0 | 0 | 59 | 0 | 0 | 79 | Yes |
| | | CC Titles | 16 | 0 | 0 | 0 | 0 | 0 | 16 | 0 | 0 | 16 | Yes |
| | | Insurance | 50 | 0 | 0 | 0 | 0 | 0 | 50 | 0 | 0 | 50 | Yes |
| | | CC Insurance | 18 | 0 | 0 | 0 | 0 | 0 | 18 | 0 | 0 | 18 | Yes |
| | | Account Services Unit ASU | 43 | 0 | 0 | 0 | 0 | 0 | 43 | 0 | 0 | 43 | Yes |
| | | CC Account Services Unit | 6 | 0 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | 050 | Impounds | 43 | 0 | 0 | 0 | 0 | 0 | 43 | 0 | 0 | 43 | Yes |
| | | CC Impounds | 8 | 0 | 0 | 0 | 0 | 0 | 8 | 0 | 0 | 8 | Yes |
| | | | 263 | | | | | | | | | | |
| Scott Dieckman | 047 | Unsecured Credit Card | 50 | 49 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 50 | Yes |
| | | | 50 | | | | | | | | | | |
| James Hart | 031 | Quality Control | 80 | 1 | 0 | 1 | 0 | 0 | 28 | 0 | 50 | 80 | Yes |
| | | Strategic Operations | 17 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 15 | 17 | Yes |
| | | | 97 | | | | | | | | | | |
| Mark Smith | 034 | Program Management | 48 | 0 | 0 | 0 | 0 | 0 | 18 | 0 | 30 | 48 | Yes |
| | | Program Management CCAR | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes |
| | | | 49 | | | | | | | | | | |
| Kim Thorndyke | 046 | Customer Service | 186 | 0 | 47 | 13 | 41 | 0 | 85 | 0 | 0 | 186 | Yes |
| | | Customer Service Operations | 4 | 0 | 0 | 0 | 0 | 0 | 4 | 0 | 0 | 4 | Yes |
| | | OSP Vendor Management | 4 | 0 | 1 | 0 | 0 | 0 | 1 | 2 | 0 | 4 | Yes |
| | | CC Customer Service Support | 229 | 0 | 40 | 0 | 52 | 5 | 132 | 0 | 0 | 229 | Yes |
| | | | 423 | | | | | | | | | | |
| Brent Huisman | 050 | Asset Remarketing | 59 | 0 | 0 | 0 | 0 | 0 | 11 | 2 | 46 | 59 | Yes |
| | | CC Asset Remarketing | 77 | 0 | 0 | 13 | 13 | 0 | 38 | 13 | 0 | 77 | Yes |
| | | Auctions | 30 | 0 | 0 | 0 | 0 | 0 | 1 | 29 | 0 | 30 | Yes |
| | | CC Auctions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | | 166 | | | | | | | | | | |
| Brad Quick | 038 | Specialized Services | 64 | 0 | 0 | 0 | 0 | 0 | 64 | 0 | 0 | 64 | Yes |
| | 038 | Cease and Desist | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | 035 | Bankruptcy | 100 | 0 | 0 | 1 | 14 | 0 | 85 | 0 | 0 | 100 | Yes |
| | | CC Bankruptcy | 7 | 0 | 0 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes |
| | | | 171 | | | | | | | | | | |
| Wayne Nightengale | 049 | Late Stage | 825 | 0 | 170 | 54 | 303 | 0 | 298 | 0 | 0 | 825 | Yes |
| | | Early Stage | 71 | 0 | 2 | 0 | 23 | 0 | 46 | 0 | 0 | 71 | Yes |
| | | CC Late Stage | 185 | 0 | 32 | 0 | 83 | 0 | 70 | 0 | 0 | 185 | Yes |
| | | CC Early Stage | 185 | 0 | 77 | 0 | 75 | 0 | 33 | 0 | 0 | 185 | Yes |
| | | Collections Operations | 4 | 0 | 1 | 0 | 1 | 0 | 2 | 0 | 0 | 4 | Yes |
| | | | 1270 | | | | | | | | | | |
| Scott Rundle | 056 | RL Orig Operations | 2 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | Yes |
| | | RL Sales | 25 | 0 | 0 | 0 | 0 | 0 | 0 | 23 | 2 | 25 | Yes |
| | | | 27 | | | | | | | | | | |
| Tony Kutiper | 054 | Funding Operations | 9 | 2 | 0 | 0 | 0 | 4 | 0 | 0 | 3 | 9 | Yes |
| | | Core Funding | 55 | 25 | 0 | 0 | 0 | 30 | 0 | 0 | 0 | 55 | Yes |
| | | Core Call Center | 22 | 10 | 0 | 1 | 0 | 11 | 0 | 0 | 0 | 22 | Yes |
| | | CarMax | 16 | 16 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 16 | Yes |
| | | Funding Direct | 10 | 9 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 10 | Yes |
| | | Chrysler Subvention | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Fifth Third | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Funding Support | 16 | 13 | 0 | 0 | 0 | 3 | 0 | 0 | 0 | 16 | Yes |
| | | CC Funding | 113 | 77 | 0 | 0 | 0 | 36 | 0 | 0 | 0 | 113 | Yes |
| | | CC Call Center | 14 | 0 | 0 | 0 | 0 | 14 | 0 | 0 | 0 | 14 | Yes |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | NMAC | 12 | 12 | 0 | 0 | 0 | 0 | 0 | | 0 | 0 | 12 | Yes |
| | 048 | Credit | 94 | 0 | 0 | 0 | 0 | 0 | 0 | | 4 | 90 | 94 | Yes |
| | | Credit Operations | 4 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 | 4 | 4 | Yes |
| | | | 365 | | | | | | | | | | | |
| Jennifer Davis | 040 | Accounting | 117 | 0 | 0 | 0 | 0 | 0 | 40 | | 0 | 77 | 117 | Yes |
| | | | 117 | | | | | | | | | | | |
| Jim Brewster | 045 | IT Service Support | 59 | 3 | 5 | 0 | 6 | 1 | 31 | | 0 | 13 | 59 | Yes |
| | | IT Call Center Office | 20 | 0 | 1 | 0 | 15 | 0 | 4 | | 0 | 0 | 20 | Yes |
| | | IT Client Services | 13 | 0 | 0 | 0 | 8 | 0 | 5 | | 0 | 0 | 13 | Yes |
| | | | 92 | | | | | | | | | | | |
| Tobin Page | 055 | Profitability Analytics | 3 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 | 3 | 3 | Yes |
| | | Data Reporting | 18 | 0 | 0 | 0 | 1 | 0 | 11 | | 2 | 4 | 18 | Yes |
| | | | 21 | | | | | | | | | | | |
| Raymond Scott | 024 | Legal & Regulatory Profes | 20 | 0 | 0 | 0 | 0 | 0 | 2 | | 3 | 15 | 20 | Yes |
| | | Legal & Regulatory Suppor | 37 | 0 | 0 | 0 | 0 | 0 | 1 | | 1 | 35 | 37 | Yes |
| | | Replevin | 12 | 0 | 0 | 0 | 0 | 0 | 12 | | 0 | 0 | 12 | Yes |
| | | | 69 | | | | | | | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Total | 3594 | Gray Total | 0 | THX Total | 560 |

**From:** Nicole Heinicke <nheinicke@santanderconsumerusa.com>

**To:** Kristen Lagunes <klagunes@santanderconsumerusa.com>, Whitney Andres <wandres@santanderconsumerusa.com>, Jeanette Rodriguez <JRODRIGUEZ@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Melissa Lawson <MLAWSON@santanderconsumerusa.com>, Andrew Scordo <ascordo@santanderconsumerusa.com>

**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Kayla Liggett <kliggett@santanderconsumerusa.com>, Stephanie Elad <selad@santanderconsumerusa.com>, Edward Fabritiis <efabritiis@santanderconsumerusa.com>

**Subject:** Headcount

**Date:** Mon, 18 Jan 2016 16:44:24 +0000

**Importance:** Normal

**Attachments:** Headcount_by_Department.xlsm

---

Happy Monday All!

We have updated the Headcount report for this week. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

Thanks!
Nicole

## Nicole Heinicke
Santander Consumer USA Inc.
HR Generalist

PHONE       214.452.7016
MOBILE      214.212.8260
EMAIL       nheinicke@santanderconsumerusa.com
WEB         www.santanderconsumerusa.com

SC009102

| SVP | Cost Center | Departments | Headcount | Corporate | Arapahoe I | Arapahoe II | Lewisville | Mesa AZ | North Richland Hills | Remote Office | Corporate THX | Subtotal | Match |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mark Mooney | 047 | Reinstatements | 45 | 0 | 5 | 10 | 0 | 0 | 30 | 0 | 0 | 45 | Yes |
| | | CC Reinstatements | 13 | 0 | 0 | 0 | 13 | 0 | 0 | 0 | 0 | 13 | Yes |
| | | Recovery Operations | 15 | 0 | 0 | 0 | 0 | 0 | 5 | 0 | 10 | 15 | Yes |
| | | Dealer Control | 68 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 68 | 68 | Yes |
| | | Collateral Recovery | 49 | 0 | 0 | 0 | 16 | 0 | 33 | 0 | 0 | 49 | Yes |
| | | CC Coll Recv | 12 | 0 | 0 | 0 | 0 | 0 | 12 | 0 | 0 | 12 | Yes |
| | | Non Collateral Deficiency | 17 | 0 | 5 | 11 | 0 | 0 | 1 | 0 | 0 | 17 | Yes |
| | | Vendor Oversight | 52 | 0 | 0 | 0 | 4 | 0 | 44 | 0 | 4 | 52 | Yes |
| | | CC Vdr Oversight | 5 | 0 | 0 | 0 | 2 | 0 | 3 | 0 | 0 | 5 | Yes |
| | | | 276 | | | | | | | | | | |
| Dominique Doyenard | 031 | Dialer Administration | 11 | 6 | 0 | 0 | 5 | 0 | 0 | 0 | 0 | 11 | Yes |
| | | Business Process Optimization | 6 | 0 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | | Operational Analytics | 13 | 0 | 0 | 0 | 6 | 0 | 1 | 6 | 0 | 13 | Yes |
| | | | 30 | | | | | | | | | | |
| Linda Vrazel | 031 | Quality Assurance | 51 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 49 | 51 | Yes |
| | | CC Dealer Advocacy and Maintenance | 18 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 18 | 18 | Yes |
| | | Credit Bureau Advocacy | 22 | 0 | 0 | 0 | 10 | 0 | 0 | 0 | 12 | 22 | Yes |
| | | Advocacy Analytics | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | Yes |
| | | Customer Advocacy | 21 | 0 | 0 | 0 | 0 | 0 | 21 | 0 | 0 | 21 | Yes |
| | | | 113 | | | | | | | | | | |
| Graham Anderson | 036 | Titles | 79 | 0 | 0 | 20 | 0 | 0 | 59 | 0 | 0 | 79 | Yes |
| | | CC Titles | 16 | 0 | 0 | 0 | 0 | 0 | 16 | 0 | 0 | 16 | Yes |
| | | Insurance | 49 | 0 | 0 | 0 | 0 | 0 | 49 | 0 | 0 | 49 | Yes |
| | | CC Insurance | 19 | 0 | 0 | 0 | 0 | 0 | 19 | 0 | 0 | 19 | Yes |
| | | Account Services Unit ASU | 43 | 0 | 0 | 0 | 0 | 0 | 43 | 0 | 0 | 43 | Yes |
| | | CC Account Services Unit | 6 | 0 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | 050 | Impounds | 44 | 0 | 0 | 0 | 0 | 0 | 44 | 0 | 0 | 44 | Yes |
| | | CC Impounds | 8 | 0 | 0 | 0 | 0 | 0 | 8 | 0 | 0 | 8 | Yes |
| | | | 264 | | | | | | | | | | |
| Scott Dieckman | 047 | Unsecured Credit Card | 49 | 49 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 49 | Yes |
| | | | 49 | | | | | | | | | | |
| James Hart | 031 | Quality Control | 81 | 1 | 0 | 1 | 0 | 0 | 28 | 0 | 51 | 81 | Yes |
| | | Strategic Operations | 17 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 15 | 17 | Yes |
| | | | 98 | | | | | | | | | | |
| Mark Smith | 034 | Program Management | 48 | 0 | 0 | 0 | 0 | 0 | 19 | 0 | 29 | 48 | Yes |
| | | Program Management CCAR | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes |
| | | | 49 | | | | | | | | | | |
| Kim Thorndyke | 046 | Customer Service | 185 | 0 | 47 | 12 | 41 | 0 | 85 | 0 | 0 | 185 | Yes |
| | | Customer Service Operations | 4 | 0 | 0 | 0 | 0 | 0 | 4 | 0 | 0 | 4 | Yes |
| | | OSP Vendor Management | 4 | 0 | 1 | 0 | 0 | 0 | 1 | 2 | 0 | 4 | Yes |
| | | CC Customer Service Support | 248 | 0 | 38 | 0 | 53 | 28 | 126 | 0 | 0 | 248 | Yes |
| | | | 441 | | | | | | | | | | |
| Brent Huisman | 050 | Asset Remarketing | 59 | 0 | 0 | 0 | 0 | 0 | 7 | 2 | 50 | 59 | Yes |
| | | CC Asset Remarketing | 75 | 0 | 0 | 13 | 11 | 0 | 38 | 0 | 13 | 75 | Yes |
| | | Auctions | 29 | 0 | 0 | 0 | 0 | 0 | 0 | 29 | 0 | 29 | Yes |
| | | CC Auctions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | | 163 | | | | | | | | | | |
| Brad Quick | 038 | Specialized Services | 64 | 0 | 0 | 0 | 0 | 0 | 64 | 0 | 0 | 64 | Yes |
| | 038 | Cease and Desist | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | 035 | Bankruptcy | 100 | 0 | 1 | 14 | 0 | 0 | 85 | 0 | 0 | 100 | Yes |
| | | CC Bankruptcy | 7 | 0 | 0 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes |
| | | | 171 | | | | | | | | | | |
| Wayne Nightengale | 049 | Late Stage | 822 | 0 | 170 | 53 | 302 | 0 | 297 | 0 | 0 | 822 | Yes |
| | | Early Stage | 71 | 0 | 2 | 0 | 23 | 0 | 46 | 0 | 0 | 71 | Yes |
| | | CC Late Stage | 185 | 0 | 32 | 0 | 83 | 0 | 70 | 0 | 0 | 185 | Yes |
| | | CC Early Stage | 182 | 0 | 76 | 0 | 73 | 0 | 33 | 0 | 0 | 182 | Yes |
| | | Collections Operations | 4 | 0 | 1 | 0 | 1 | 0 | 2 | 0 | 0 | 4 | Yes |
| | | | 1264 | | | | | | | | | | |
| Scott Rundle | 056 | RL Orig Operations | 2 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 2 | Yes |
| | | RL Sales | 25 | 0 | 0 | 0 | 0 | 0 | 23 | 2 | 0 | 25 | Yes |
| | | | 27 | | | | | | | | | | |
| Tony Kutiper | 054 | Funding Operations | 35 | 2 | 0 | 0 | 0 | 30 | 0 | 0 | 3 | 35 | Yes |
| | | Core Funding | 55 | 25 | 0 | 0 | 30 | 0 | 0 | 0 | 0 | 55 | Yes |
| | | Core Call Center | 22 | 10 | 1 | 0 | 11 | 0 | 0 | 0 | 0 | 22 | Yes |
| | | CarMax | 14 | 14 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 14 | Yes |
| | | Funding Direct | 10 | 9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 10 | Yes |
| | | Chrysler Subvention | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Fifth Third | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Funding Support | 16 | 13 | 0 | 0 | 0 | 3 | 0 | 0 | 0 | 16 | Yes |
| | | CC Funding | 99 | 75 | 0 | 0 | 24 | 0 | 0 | 0 | 0 | 99 | Yes |
| | | CC Call Center | 14 | 0 | 0 | 0 | 14 | 0 | 0 | 0 | 0 | 14 | Yes |

Location (column group header spanning Corporate through Corporate THX)

| Sabrina | OPEN | Reena | Melissa | Whitney | Kristen | Jeanette | AJ |
|---|---|---|---|---|---|---|---|
| 94 | 604 | 884 | 60 | 669 | 196 | 26 | 519 |

Combined   3052

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 048 | NMAC | 13 | 13 | 0 | 0 | 0 | 0 | | 0 | 0 | 0 | 13 Yes |
| | | | Credit | 91 | 0 | 0 | 0 | 0 | 0 | | 0 | 4 | 87 | 91 Yes |
| | | | Credit Operations | 4 | 0 | 0 | 0 | 0 | 0 | | 0 | 0 | 4 | 4 Yes |
| | | | | 373 | | | | | | | | | | |
| Jennifer Davis | 040 | | Accounting | 115 | 0 | 0 | 0 | 0 | | 40 | | 0 | 75 | 115 Yes |
| | | | | 115 | | | | | | | | | | |
| Jim Brewster | 045 | | IT Service Support | 60 | 3 | 5 | 0 | 6 | 2 | 31 | | 0 | 13 | 60 Yes |
| | | | IT Call Center Office | 20 | 0 | 1 | 0 | 15 | 0 | 4 | | 0 | 0 | 20 Yes |
| | | | IT Client Services | 14 | 0 | 0 | 0 | 8 | 0 | 5 | | 0 | 1 | 14 Yes |
| | | | | 94 | | | | | | | | | | |
| Tobin Page | 055 | | Profitability Analytics | 3 | 0 | 0 | 0 | 0 | 0 | | 0 | 0 | 3 | 3 Yes |
| | | | Data Reporting | 18 | 0 | 0 | 0 | 1 | 0 | 11 | | 1 | 5 | 18 Yes |
| | | | | 21 | | | | | | | | | | |
| Raymond Scott | 024 | | Legal & Regulatory Profes | 20 | 0 | 0 | 0 | 0 | 0 | 2 | 3 | 15 | 20 Yes |
| | | | Legal & Regulatory Suppor | 37 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 35 | 37 Yes |
| | | | Replevin | 12 | 0 | 0 | 0 | 0 | 0 | 12 | 0 | 0 | 12 Yes |
| | | | | 69 | | | | | | | | | | |

| | Total | 3617 | Gray Total | 0 | THX Total | 565 |
|---|---|---|---|---|---|---|

**From:** Nicole Heinicke <nheinicke@santanderconsumerusa.com>

**To:** Kristen Lagunes <klagunes@santanderconsumerusa.com>, Whitney Andres <wandres@santanderconsumerusa.com>, Jeanette Rodriguez <JRODRIGUEZ@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Melissa Lawson <MLAWSON@santanderconsumerusa.com>, Andrew Scordo <ascordo@santanderconsumerusa.com>

**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Kayla Liggett <kliggett@santanderconsumerusa.com>, Stephanie Elad <selad@santanderconsumerusa.com>, Edward Fabritiis <efabritiis@santanderconsumerusa.com>

**Subject:** Headcount

**Date:** Mon, 25 Jan 2016 16:21:24 +0000

**Importance:** Normal

**Attachments:** Headcount_by_Department.xlsm

---

Hello!

We have updated the Headcount report for this week. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

Thanks!
Nicole

## Nicole Heinicke
Santander Consumer USA Inc.
HR Generalist

PHONE    214.452.7016
MOBILE   214.212.8260
EMAIL    nheinicke@santanderconsumerusa.com
WEB      www.santanderconsumerusa.com

SC009623

| SVP/EVP | Cost Center | Departments | Headcount | Corporate | Arapahoe I | Arapahoe II | Lewisville | Mesa AZ | North Richland Hills | Remote Office | Corporate THX | Subtotal | Match |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mark Mooney | 047 | Reinstatements | 45 | 0 | 5 | 10 | 0 | 0 | 30 | 0 | 0 | 45 | Yes |
| | | CC Reinstatements | 13 | 0 | 0 | 0 | 13 | 0 | 0 | 0 | 0 | 13 | Yes |
| | | Recovery Operations | 15 | 0 | 0 | 0 | 0 | 0 | 6 | 0 | 9 | 15 | Yes |
| | | Dealer Control | 67 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 67 | 67 | Yes |
| | | Collateral Recovery | 49 | 0 | 0 | 0 | 16 | 0 | 33 | 0 | 0 | 49 | Yes |
| | | CC Coll Recv | 12 | 0 | 0 | 0 | 0 | 0 | 12 | 0 | 0 | 12 | Yes |
| | | Non Collateral Deficiency | 16 | 0 | 5 | 10 | 0 | 0 | 1 | 0 | 0 | 16 | Yes |
| | | Vendor Oversight | 53 | 0 | 0 | 0 | 4 | 0 | 45 | 0 | 4 | 53 | Yes |
| | | CC Vdr Oversight | 5 | 0 | 0 | 0 | 2 | 0 | 3 | 0 | 0 | 5 | Yes |
| | | | 275 | | | | | | | | | | |
| Dominique Doyenard | 031 | Dialer Administration | 11 | 6 | 0 | 0 | 5 | 0 | 0 | 0 | 0 | 11 | Yes |
| | | Business Process Optimization | 6 | 0 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | | Operational Analytics | 13 | 0 | 0 | 0 | 6 | 0 | 1 | 6 | 0 | 13 | Yes |
| | | | 30 | | | | | | | | | | |
| Linda Vrazel | 031 | Quality Assurance | 51 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 49 | 51 | Yes |
| | | CC Dealer Advocacy and Maintenance | 18 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 18 | 18 | Yes |
| | | Credit Bureau Advocacy | 23 | 0 | 0 | 0 | 10 | 0 | 0 | 0 | 13 | 23 | Yes |
| | | Advocacy Analytics | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | Yes |
| | | Customer Advocacy | 21 | 0 | 0 | 0 | 0 | 0 | 21 | 0 | 0 | 21 | Yes |
| | | | 114 | | | | | | | | | | |
| Graham Anderson | 036 | Titles | 80 | 0 | 0 | 20 | 0 | 0 | 60 | 0 | 0 | 80 | Yes |
| | | CC Titles | 16 | 0 | 0 | 0 | 0 | 0 | 16 | 0 | 0 | 16 | Yes |
| | | Insurance | 49 | 0 | 0 | 0 | 0 | 0 | 49 | 0 | 0 | 49 | Yes |
| | | CC Insurance | 19 | 0 | 0 | 0 | 0 | 0 | 19 | 0 | 0 | 19 | Yes |
| | | Account Services Unit ASU | 43 | 0 | 0 | 0 | 0 | 0 | 43 | 0 | 0 | 43 | Yes |
| | | CC Account Services Unit | 6 | 0 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | 050 | Impounds | 44 | 0 | 0 | 0 | 0 | 0 | 44 | 0 | 0 | 44 | Yes |
| | | CC Impounds | 8 | 0 | 0 | 0 | 0 | 0 | 8 | 0 | 0 | 8 | Yes |
| | | | 265 | | | | | | | | | | |
| Scott Dieckman | 047 | Unsecured Credit Card | 49 | 49 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 49 | Yes |
| | | | 49 | | | | | | | | | | |
| Mark Smith | 031 | Quality Control | 81 | 1 | 0 | 1 | 0 | 0 | 28 | 0 | 51 | 81 | Yes |
| | | Strategic Operations | 17 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 15 | 17 | Yes |
| | 034 | Program Management | 48 | 0 | 0 | 0 | 0 | 0 | 19 | 0 | 29 | 48 | Yes |
| | | Program Management CCAR | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes |
| | | | 147 | | | | | | | | | | |
| Troy Miller | 046 | Customer Service | 183 | 0 | 46 | 12 | 41 | 0 | 84 | 0 | 0 | 183 | Yes |
| | | Customer Service Operations | 4 | 0 | 0 | 0 | 0 | 0 | 4 | 0 | 0 | 4 | Yes |
| | | OSP Vendor Management | 4 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 4 | Yes |
| | | CC Customer Service Support | 246 | 0 | 38 | 0 | 53 | 27 | 128 | 0 | 0 | 246 | Yes |
| | | | 437 | | | | | | | | | | |
| Brent Huisman | 050 | Asset Remarketing | 59 | 0 | 0 | 0 | 0 | 0 | 7 | 2 | 50 | 59 | Yes |
| | | CC Asset Remarketing | 75 | 0 | 0 | 13 | 11 | 0 | 38 | 0 | 13 | 75 | Yes |
| | | Auctions | 32 | 0 | 0 | 0 | 0 | 0 | 0 | 32 | 0 | 32 | Yes |
| | | CC Auctions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | | 166 | | | | | | | | | | |
| Brad Quick | 038 | Specialized Services | 62 | 0 | 0 | 0 | 0 | 0 | 62 | 0 | 0 | 62 | Yes |
| | 038 | Cease and Desist | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | 035 | Bankruptcy | 100 | 0 | 1 | 14 | 0 | 0 | 85 | 0 | 0 | 100 | Yes |
| | | CC Bankruptcy | 7 | 0 | 0 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes |
| | | | 169 | | | | | | | | | | |
| Wayne Nightengale | 049 | Late Stage | 819 | 0 | 169 | 53 | 302 | 0 | 295 | 0 | 0 | 819 | Yes |
| | | Early Stage | 71 | 0 | 2 | 0 | 23 | 0 | 46 | 0 | 0 | 71 | Yes |
| | | CC Late Stage | 185 | 0 | 32 | 0 | 83 | 0 | 70 | 0 | 0 | 185 | Yes |
| | | CC Early Stage | 176 | 0 | 71 | 0 | 71 | 0 | 34 | 0 | 0 | 176 | Yes |
| | | Collections Operations | 4 | 0 | 1 | 0 | 1 | 0 | 2 | 0 | 0 | 4 | Yes |
| | | | 1255 | | | | | | | | | | |
| Tony Kutiper | 056 | RL Orig Operations | 2 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 2 | Yes |
| | | RL Sales | 25 | 0 | 0 | 0 | 0 | 0 | 23 | 2 | 0 | 25 | Yes |
| | 054 | Funding Operations | 34 | 2 | 0 | 0 | 29 | 0 | 0 | 0 | 3 | 34 | Yes |
| | | Core Funding | 54 | 24 | 0 | 0 | 30 | 0 | 0 | 0 | 0 | 54 | Yes |
| | | Core Call Center | 22 | 10 | 1 | 0 | 11 | 0 | 0 | 0 | 0 | 22 | Yes |
| | | CarMax | 14 | 14 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 14 | Yes |
| | | Funding Direct | 9 | 9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 9 | Yes |
| | | Chrysler Subvention | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Fifth Third | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Funding Support | 17 | 14 | 0 | 0 | 3 | 0 | 0 | 0 | 0 | 17 | Yes |
| | | CC Funding | 98 | 74 | 0 | 0 | 24 | 0 | 0 | 0 | 0 | 98 | Yes |
| | | CC Call Center | 14 | 0 | 0 | 0 | 14 | 0 | 0 | 0 | 0 | 14 | Yes |
| | | NMAC | 13 | 13 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 13 | Yes |
| | 048 | Credit | 90 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 86 | 90 | Yes |
| | | Credit Operations | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 4 | Yes |
| | | | 396 | | | | | | | | | | |

Sabrina 94 | OPEN 608 | Reena 660 | Melissa 58 | Whitney 666 | Kristen 415 | Jeanette 26 | AJ 511

Combined 3038

App.362

| Name | Code | Department | Count | | | | | | | | | | Total | Yes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Jennifer Davis | 040 | Accounting | 121 | 0 | 0 | 0 | 0 | 0 | 41 | 0 | 80 | | 121 | Yes |
| | | | 121 | | | | | | | | | | | |
| Jim Brewster | 045 | IT Service Support | 59 | 3 | 5 | 0 | 6 | 2 | 30 | 0 | 13 | | 59 | Yes |
| | | IT Call Center Office | 20 | 0 | 1 | 0 | 15 | 0 | 4 | 0 | 0 | | 20 | Yes |
| | | IT Client Services | 14 | 0 | 0 | 0 | 8 | 0 | 5 | 0 | 1 | | 14 | Yes |
| | | | 93 | | | | | | | | | | | |
| Tobin Page | 055 | Profitability Analytics | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | | 3 | Yes |
| | | Data Reporting | 18 | 0 | 0 | 0 | 1 | 0 | 11 | 1 | 5 | | 18 | Yes |
| | | | 21 | | | | | | | | | | | |
| Raymond Scott | 024 | Legal & Regulatory Profes | 19 | 0 | 0 | 0 | 0 | 0 | 1 | 3 | 15 | | 19 | Yes |
| | | Legal & Regulatory Suppor | 37 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 35 | | 37 | Yes |
| | | Replevin | 12 | 0 | 0 | 0 | 0 | 0 | 12 | 0 | 0 | | 12 | Yes |
| | | | 68 | | | | | | | | | | | |

| | Total | 3606 | | Gray Total | 0 | | THX Total | 568 |
|---|---|---|---|---|---|---|---|---|

**From:** Nicole Heinicke <nheinicke@santanderconsumerusa.com>

**To:** Kristen Lagunes <klagunes@santanderconsumerusa.com>, Whitney Andres <wandres@santanderconsumerusa.com>, Jeanette Rodriguez <JRODRIGUEZ@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Melissa Lawson <MLAWSON@santanderconsumerusa.com>, Andrew Scordo <ascordo@santanderconsumerusa.com>

**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Kayla Liggett <kliggett@santanderconsumerusa.com>, Stephanie Elad <selad@santanderconsumerusa.com>, Edward Fabritiis <efabritiis@santanderconsumerusa.com>

**Subject:** Headcount

**Date:** Mon, 01 Feb 2016 18:58:53 +0000

**Importance:** Normal

**Attachments:** Headcount_by_Department.xlsm

---

Hello!

We have updated the Headcount report for this week. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

Thanks!
Nicole

## Nicole Heinicke
Santander Consumer USA Inc.
HR Generalist

PHONE   214.452.7016
MOBILE   214.212.8260
EMAIL   nheinicke@santanderconsumerusa.com
WEB   www.santanderconsumerusa.com

SC009988

| SVP/EVP | Cost Center | Departments | Headcount | Corporate | Arapahoe I | Arapahoe II | Lewisville | Mesa AZ | North Richland Hills | Remote Office | Corporate THX | Subtotal | Match |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mark Mooney | 047 | Reinstatements | 45 | 0 | 5 | 10 | 0 | 0 | 30 | 0 | 0 | 45 | Yes |
| | | CC Reinstatements | 13 | 0 | 0 | 13 | 0 | 0 | 0 | 0 | 0 | 13 | Yes |
| | | Recovery Operations | 16 | 0 | 0 | 0 | 0 | 1 | 6 | 0 | 9 | 16 | Yes |
| | | Dealer Control | 67 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 67 | 67 | Yes |
| | | Collateral Recovery | 49 | 0 | 0 | 0 | 16 | 0 | 33 | 0 | 0 | 49 | Yes |
| | | CC Coll Recv | 12 | 0 | 0 | 0 | 0 | 0 | 12 | 0 | 0 | 12 | Yes |
| | | Non Collateral Deficiency | 14 | 0 | 5 | 9 | 0 | 0 | 0 | 0 | 0 | 14 | Yes |
| | | Vendor Oversight | 5 | 0 | 0 | 0 | 4 | 0 | 46 | 0 | 4 | 5 | Yes |
| | | CC Vdr Oversight | 5 | 0 | 0 | 0 | 2 | 0 | 3 | 0 | 0 | 5 | Yes |
| | | | 275 | | | | | | | | | | |
| Dominique Doyenard | 031 | Dialer Administration | 11 | 6 | 0 | 0 | 5 | 0 | 0 | 0 | 0 | 11 | Yes |
| | | Business Process Optimization | 6 | 0 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | | Operational Analytics | 13 | 0 | 0 | 0 | 6 | 0 | 1 | 6 | 0 | 13 | Yes |
| | | | 30 | | | | | | | | | | |
| Linda Vrazel | 031 | Quality Assurance | 51 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 49 | Yes |
| | | CC Dealer Advocacy and Maintenance | 18 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 18 | Yes |
| | | Credit Bureau Advocacy | 23 | 0 | 0 | 0 | 11 | 0 | 0 | 0 | 0 | 12 | Yes |
| | | Advocacy Analytics | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | Yes |
| | | Customer Advocacy | 21 | 0 | 0 | 0 | 0 | 0 | 21 | 0 | 0 | 21 | Yes |
| | | | 114 | | | | | | | | | | |
| Graham Anderson | 036 | Titles | 81 | 0 | 0 | 20 | 0 | 0 | 61 | 0 | 0 | 81 | Yes |
| | | CC Titles | 16 | 0 | 0 | 0 | 0 | 0 | 16 | 0 | 0 | 16 | Yes |
| | | Insurance | 49 | 0 | 0 | 0 | 0 | 0 | 49 | 0 | 0 | 49 | Yes |
| | | CC Insurance | 19 | 0 | 0 | 0 | 0 | 0 | 19 | 0 | 0 | 19 | Yes |
| | | Account Services Unit ASU | 43 | 0 | 0 | 0 | 0 | 0 | 43 | 0 | 0 | 43 | Yes |
| | | CC Account Services Unit | 6 | 0 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | 050 | Impounds | 46 | 0 | 0 | 0 | 0 | 0 | 46 | 0 | 0 | 46 | Yes |
| | | CC Impounds | 8 | 0 | 0 | 0 | 0 | 0 | 8 | 0 | 0 | 8 | Yes |
| | | | 268 | | | | | | | | | | |
| Scott Dieckman | 047 | Unsecured Credit Card | 49 | 49 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 49 | Yes |
| | | | 49 | | | | | | | | | | |
| Mark Smith | 031 | Quality Control | 81 | 1 | 0 | 1 | 0 | 0 | 28 | 0 | 0 | 51 | Yes |
| | | Strategic Operations | 17 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 16 | Yes |
| | 034 | Program Management | 49 | 0 | 0 | 0 | 0 | 0 | 20 | 0 | 29 | 49 | Yes |
| | | Program Management CCAR | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes |
| | | | 148 | | | | | | | | | | |
| Troy Miller | 046 | Customer Service | 186 | 0 | 46 | 10 | 42 | 0 | 88 | 0 | 0 | 186 | Yes |
| | | Customer Service Operations | 4 | 0 | 0 | 0 | 0 | 0 | 4 | 0 | 0 | 4 | Yes |
| | | OSP Vendor Management | 4 | 0 | 1 | 0 | 0 | 0 | 1 | 2 | 0 | 4 | Yes |
| | | CC Customer Service Support | 249 | 0 | 41 | 0 | 54 | 26 | 128 | 0 | 0 | 249 | Yes |
| | | | 443 | | | | | | | | | | |
| Brent Huisman | 050 | Asset Remarketing | 58 | 0 | 0 | 0 | 0 | 0 | 7 | 2 | 0 | 58 | Yes |
| | | CC Asset Remarketing | 75 | 0 | 0 | 13 | 10 | 0 | 39 | 0 | 13 | 75 | Yes |
| | | Auctions | 33 | 0 | 0 | 0 | 0 | 0 | 0 | 33 | 0 | 33 | Yes |
| | | CC Auctions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | | 166 | | | | | | | | | | |
| Brad Quick | 038 | Specialized Services | 62 | 0 | 0 | 0 | 0 | 0 | 62 | 0 | 0 | 62 | Yes |
| | 038 | Cease and Desist | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | 035 | Bankruptcy | 100 | 0 | 1 | 14 | 0 | 0 | 85 | 0 | 0 | 100 | Yes |
| | | CC Bankruptcy | 7 | 0 | 0 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes |
| | | | 169 | | | | | | | | | | |
| Wayne Nightengale | 049 | Late Stage | 831 | 0 | 168 | 52 | 302 | 0 | 309 | 0 | 0 | 831 | Yes |
| | | Early Stage | 81 | 0 | 2 | 0 | 23 | 0 | 56 | 0 | 0 | 81 | Yes |
| | | CC Late Stage | 185 | 0 | 32 | 0 | 83 | 0 | 70 | 0 | 0 | 185 | Yes |
| | | CC Early Stage | 172 | 0 | 69 | 0 | 69 | 0 | 34 | 0 | 0 | 172 | Yes |
| | | Collections Operations | 4 | 0 | 1 | 0 | 1 | 0 | 2 | 0 | 0 | 4 | Yes |
| | | | 1273 | | | | | | | | | | |
| Tony Kutiper | 056 | RL Orig Operations | 2 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 2 | Yes |
| | | RL Sales | 27 | 0 | 0 | 0 | 0 | 0 | 25 | 2 | 0 | 27 | Yes |
| | 054 | Funding Operations | 34 | 2 | 0 | 0 | 0 | 29 | 0 | 0 | 3 | 34 | Yes |
| | | Core Funding | 54 | 24 | 0 | 0 | 30 | 0 | 0 | 0 | 0 | 54 | Yes |
| | | Core Call Center | 22 | 10 | 1 | 0 | 11 | 0 | 0 | 0 | 0 | 22 | Yes |
| | | CarMax | 14 | 14 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 14 | Yes |
| | | Funding Direct | 9 | 9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 9 | Yes |
| | | Chrysler Subvention | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Fifth Third | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Funding Support | 17 | 14 | 0 | 0 | 3 | 0 | 0 | 0 | 0 | 17 | Yes |
| | | CC Funding | 97 | 74 | 0 | 0 | 23 | 0 | 0 | 0 | 0 | 97 | Yes |
| | | CC Call Center | 14 | 0 | 0 | 0 | 14 | 0 | 0 | 0 | 0 | 14 | Yes |
| | | NMAC | 13 | 13 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 13 | Yes |
| | 048 | Credit | 90 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 86 | 90 | Yes |
| | | Credit Operations | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 4 | Yes |
| | | | 397 | | | | | | | | | | |

Name column totals: Sabrina 96, OPEN 613, Reena 657, Melissa 58, Whitney 694, Kristen 415, Jeanette 28, AJ 507

Combined 3068

| Name | Code | Department | Count | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Jennifer Davis | 040 | Accounting | 121 | 0 | 0 | 0 | 0 | 0 | 41 | 0 | 80 | 121 | Yes |
| | | | 121 | | | | | | | | | | |
| Jim Brewster | 045 | IT Service Support | 59 | 3 | 5 | 0 | 6 | 2 | 30 | 0 | 13 | 59 | Yes |
| | | IT Call Center Office | 20 | 0 | 1 | 0 | 15 | 0 | 4 | 0 | 0 | 20 | Yes |
| | | IT Client Services | 14 | 0 | 0 | 0 | 8 | 0 | 5 | 0 | 1 | 14 | Yes |
| | | | 93 | | | | | | | | | | |
| Tobin Page | 055 | Profitability Analytics | 5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 5 | Yes |
| | | Data Reporting | 19 | 0 | 0 | 0 | 1 | 0 | 11 | 1 | 6 | 19 | Yes |
| | | | 24 | | | | | | | | | | |
| Raymond Scott | 024 | Legal & Regulatory Profes | 19 | 0 | 0 | 0 | 0 | 0 | 1 | 3 | 15 | 19 | Yes |
| | | Legal & Regulatory Suppor | 37 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 35 | 37 | Yes |
| | | Replevin | 12 | 0 | 0 | 0 | 0 | 0 | 12 | 0 | 0 | 12 | Yes |
| | | | 68 | | | | | | | | | | |

**Total** 3638          **Gray Total** 0          **THX Total** 570

**From:** Nicole Heinicke <nheinicke@santanderconsumerusa.com>

**To:** Kristen Lagunes <klagunes@santanderconsumerusa.com>, Whitney Andres <wandres@santanderconsumerusa.com>, Jeanette Rodriguez <JRODRIGUEZ@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Melissa Lawson <MLAWSON@santanderconsumerusa.com>, Andrew Scordo <ascordo@santanderconsumerusa.com>

**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Kayla Liggett <kliggett@santanderconsumerusa.com>, Stephanie Elad <selad@santanderconsumerusa.com>, Edward Fabritiis <efabritiis@santanderconsumerusa.com>

**Subject:** Headcount

**Date:** Mon, 08 Feb 2016 17:36:23 +0000

**Importance:** Normal

**Attachments:** Headcount_by_Department.xlsm

---

Hello!

We have updated the Headcount report for this week. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

Thanks!
Nicole

## Nicole Heinicke
Santander Consumer USA Inc.
HR Generalist

PHONE     214.452.7016
MOBILE    214.212.8260
EMAIL     nheinicke@santanderconsumerusa.com
WEB       www.santanderconsumerusa.com

SC010258

| | | | | Sabrina | OPEN | Reena | Melissa | Whitney | Kristen | Jeanette | AJ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 96 | 614 | 656 | 59 | 703 | 414 | 28 | 505 |

| SVP/EVP | Cost Center | Departments | Headcount | Corporate | Arapahoe I | Arapahoe II | Lewisville | Mesa AZ | North Richland Hills | Remote Office | Corporate THX | Subtotal | Match |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mark Mooney | 047 | Reinstatements | 45 | 0 | 5 | 10 | 0 | 0 | 30 | 0 | 0 | 45 | Yes |
| | | CC Reinstatements | 13 | 0 | 0 | 0 | 13 | 0 | 0 | 0 | 0 | 13 | Yes |
| | | Recovery Operations | 16 | 0 | 0 | 0 | 0 | 1 | 6 | 0 | 9 | 16 | Yes |
| | | Dealer Control | 68 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 68 | 68 | Yes |
| | | Collateral Recovery | 49 | 0 | 0 | 0 | 16 | 0 | 33 | 0 | 0 | 49 | Yes |
| | | CC Coll Recv | 12 | 0 | 0 | 0 | 0 | 0 | 12 | 0 | 0 | 12 | Yes |
| | | Non Collateral Deficiency | 14 | 0 | 5 | 9 | 0 | 0 | 0 | 0 | 0 | 14 | Yes |
| | | Vendor Oversight | 55 | 0 | 0 | 1 | 4 | 0 | 46 | 0 | 4 | 55 | Yes |
| | | CC Vdr Oversight | 5 | 0 | 0 | 0 | 2 | 0 | 3 | 0 | 0 | 5 | Yes |
| | | | 277 | | | | | | | | | | |
| Dominique Doyenard | 031 | Dialer Administration | 11 | 6 | 0 | 0 | 5 | 0 | 0 | 0 | 0 | 11 | Yes |
| | | Business Process Optimization | 6 | 0 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | | Operational Analytics | 13 | 0 | 0 | 0 | 5 | 0 | 1 | 7 | 0 | 13 | Yes |
| | | | 30 | | | | | | | | | | |
| Linda Vrazel | 031 | Quality Assurance | 51 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 49 | 51 | Yes |
| | | CC Dealer Advocacy and Maintenance | 18 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 18 | 18 | Yes |
| | | Credit Bureau Advocacy | 23 | 0 | 0 | 0 | 11 | 0 | 0 | 0 | 12 | 23 | Yes |
| | | Advocacy Analytics | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | Yes |
| | | Customer Advocacy | 21 | 0 | 0 | 0 | 0 | 0 | 21 | 0 | 0 | 21 | Yes |
| | | | 114 | | | | | | | | | | |
| Graham Anderson | 036 | Titles | 82 | 0 | 0 | 20 | 0 | 0 | 62 | 0 | 0 | 82 | Yes |
| | | CC Titles | 17 | 0 | 0 | 0 | 0 | 0 | 17 | 0 | 0 | 17 | Yes |
| | | Insurance | 48 | 0 | 0 | 0 | 0 | 0 | 48 | 0 | 0 | 48 | Yes |
| | | CC Insurance | 19 | 0 | 0 | 0 | 0 | 0 | 19 | 0 | 0 | 19 | Yes |
| | | Account Services Unit ASU | 43 | 0 | 0 | 0 | 0 | 0 | 43 | 0 | 0 | 43 | Yes |
| | | CC Account Services Unit | 6 | 0 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | 050 | Impounds | 46 | 0 | 0 | 0 | 0 | 0 | 46 | 0 | 0 | 46 | Yes |
| | | CC Impounds | 8 | 0 | 0 | 0 | 0 | 0 | 8 | 0 | 0 | 8 | Yes |
| | | | 269 | | | | | | | | | | |
| Scott Dieckman | 047 | Unsecured Credit Card | 47 | 47 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 47 | Yes |
| | | | 47 | | | | | | | | | | |
| Mark Smith | 031 | Quality Control | 82 | 1 | 0 | 1 | 0 | 0 | 29 | 0 | 51 | 82 | Yes |
| | | Strategic Operations | 17 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 16 | 17 | Yes |
| | 034 | Program Management | 49 | 0 | 0 | 0 | 0 | 0 | 20 | 0 | 29 | 49 | Yes |
| | | Program Management CCAR | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes |
| | | | 149 | | | | | | | | | | |
| Troy Miller | 046 | Customer Service | 186 | 0 | 43 | 8 | 42 | 0 | 93 | 0 | 0 | 186 | Yes |
| | | Customer Service Operations | 4 | 0 | 0 | 0 | 0 | 0 | 4 | 0 | 0 | 4 | Yes |
| | | OSP Vendor Management | 3 | 0 | 0 | 0 | 0 | 0 | 1 | 2 | 0 | 3 | Yes |
| | | CC Customer Service Support | 248 | 0 | 40 | 0 | 54 | 26 | 128 | 0 | 0 | 248 | Yes |
| | | | 441 | | | | | | | | | | |
| Brent Huisman | 050 | Asset Remarketing | 63 | 0 | 0 | 5 | 0 | 1 | 6 | 2 | 0 | 63 | Yes |
| | | CC Asset Remarketing | 76 | 0 | 0 | 13 | 10 | 0 | 40 | 0 | 13 | 76 | Yes |
| | | Auctions | 33 | 0 | 0 | 0 | 0 | 0 | 0 | 33 | 0 | 33 | Yes |
| | | CC Auctions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | | 172 | | | | | | | | | | |
| Brad Quick | 038 | Specialized Services | 61 | 0 | 0 | 0 | 0 | 0 | 61 | 0 | 0 | 61 | Yes |
| | 038 | Cease and Desist | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | 035 | Bankruptcy | 108 | 0 | 0 | 1 | 21 | 0 | 86 | 0 | 0 | 108 | Yes |
| | | CC Bankruptcy | 7 | 0 | 0 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes |
| | | | 176 | | | | | | | | | | |
| Wayne Nightengale | 049 | Late Stage | 845 | 0 | 174 | 53 | 301 | 0 | 317 | 0 | 0 | 845 | Yes |
| | | Early Stage | 82 | 0 | 2 | 0 | 25 | 0 | 55 | 0 | 0 | 82 | Yes |
| | | CC Late Stage | 180 | 0 | 32 | 0 | 81 | 0 | 67 | 0 | 0 | 180 | Yes |
| | | CC Early Stage | 157 | 0 | 54 | 0 | 69 | 0 | 34 | 0 | 0 | 157 | Yes |
| | | Collections Operations | 4 | 0 | 1 | 0 | 1 | 0 | 2 | 0 | 0 | 4 | Yes |
| | | | 1268 | | | | | | | | | | |
| Tony Kutiper | 056 | RL Orig Operations | 2 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 2 | Yes |
| | | RL Sales | 27 | 0 | 0 | 0 | 0 | 0 | 25 | 2 | 0 | 27 | Yes |
| | 054 | Funding Operations | 33 | 2 | 0 | 0 | 28 | 0 | 0 | 0 | 3 | 33 | Yes |
| | | Core Funding | 54 | 24 | 0 | 0 | 30 | 0 | 0 | 0 | 0 | 54 | Yes |
| | | Core Call Center | 22 | 10 | 0 | 1 | 11 | 0 | 0 | 0 | 0 | 22 | Yes |
| | | CarMax | 14 | 14 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 14 | Yes |
| | | Funding Direct | 9 | 9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 9 | Yes |
| | | Chrysler Subvention | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Fifth Third | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Funding Support | 17 | 14 | 0 | 0 | 3 | 0 | 0 | 0 | 0 | 17 | Yes |
| | | CC Funding | 97 | 73 | 0 | 0 | 24 | 0 | 0 | 0 | 0 | 97 | Yes |
| | | CC Call Center | 14 | 0 | 0 | 0 | 14 | 0 | 0 | 0 | 0 | 14 | Yes |
| | | NMAC | 13 | 13 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 13 | Yes |
| | 048 | Credit | 91 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 87 | 91 | Yes |
| | | Credit Operations | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 4 | Yes |
| | | | 397 | | | | | | | | | | |

Combined 3075

| Name | Code | Department | Total | | | | | | | | | | Status |
|------|------|-----------|-------|---|---|---|---|---|---|---|---|---|--------|
| Jennifer Davis | 040 | Accounting | 126 | 0 | 0 | 0 | 0 | 0 | 41 | 0 | 85 | 126 Yes |
| | | | 126 | | | | | | | | | |
| Jim Brewster | 045 | IT Service Support | 59 | 3 | 5 | 0 | 6 | 3 | 29 | 0 | 13 | 59 Yes |
| | | IT Call Center Office | 20 | 0 | 1 | 0 | 15 | 0 | 4 | 0 | 0 | 20 Yes |
| | | IT Client Services | 14 | 0 | 0 | 0 | 8 | 0 | 5 | 0 | 1 | 14 Yes |
| | | | 93 | | | | | | | | | |
| Tobin Page | 055 | Profitability Analytics | 5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 5 Yes |
| | | Data Reporting | 18 | 0 | 0 | 0 | 1 | 0 | 11 | 1 | 5 | 18 Yes |
| | | | 23 | | | | | | | | | |
| Raymond Scott | 024 | Legal & Regulatory Profes | 18 | 0 | 0 | 0 | 0 | 0 | 1 | 3 | 14 | 18 Yes |
| | | Legal & Regulatory Suppor | 37 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 35 | 37 Yes |
| | | Replevin | 13 | 0 | 0 | 0 | 0 | 0 | 13 | 0 | 0 | 13 Yes |
| | | | 68 | | | | | | | | | |

| | **Total** | **3650** | **Gray Total** | **0** | **THX Total** | **575** |
|---|-----------|----------|----------------|-------|---------------|---------|

**From:** Nicole Heinicke <nheinicke@santanderconsumerusa.com>

**To:** Kristen Lagunes <klagunes@santanderconsumerusa.com>, Whitney Andres <wandres@santanderconsumerusa.com>, Jeanette Rodriguez <JRODRIGUEZ@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Melissa Lawson <MLAWSON@santanderconsumerusa.com>, Andrew Scordo <ascordo@santanderconsumerusa.com>

**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Kayla Liggett <kliggett@santanderconsumerusa.com>, Stephanie Elad <selad@santanderconsumerusa.com>, Edward Fabritiis <efabritiis@santanderconsumerusa.com>

**Subject:** Headcount

**Date:** Mon, 15 Feb 2016 19:41:33 +0000

**Importance:** Normal

**Attachments:** Headcount_by_Department.xlsm

---

Hello!

We have updated the Headcount report for this week. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

Thanks!
Nicole

## Nicole Heinicke
Santander Consumer USA Inc.
HR Generalist

PHONE    214.452.7016
MOBILE    214.212.8260
EMAIL    nheinicke@santanderconsumerusa.com
WEB    www.santanderconsumerusa.com

SC008897

| SVP/EVP | Cost Center | Departments | Headcount | Corporate | Arapahoe I | Arapahoe II | Lewisville | Mesa AZ | North Richland Hills | Remote Office | Corporate THX | Subtotal | Match |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Location | | | | | |
| Mark Mooney | 047 | Reinstatements | 45 | 0 | 5 | 10 | 0 | 0 | 30 | 0 | 0 | 45 | Yes |
| | | CC Reinstatements | 13 | 0 | 0 | 13 | 0 | 0 | 0 | 0 | 0 | 13 | Yes |
| | | Recovery Operations | 16 | 0 | 0 | 0 | 0 | 1 | 5 | 0 | 10 | 16 | Yes |
| | | Dealer Control | 68 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 68 | 68 | Yes |
| | | Collateral Recovery | 49 | 0 | 0 | 0 | 16 | 0 | 33 | 0 | 0 | 49 | Yes |
| | | CC Coll Recv | 12 | 0 | 0 | 0 | 0 | 0 | 12 | 0 | 0 | 12 | Yes |
| | | Non Collateral Deficiency | 14 | 0 | 5 | 9 | 0 | 0 | 0 | 0 | 0 | 14 | Yes |
| | | Vendor Oversight | 55 | 0 | 0 | 1 | 4 | 0 | 46 | 0 | 4 | 55 | Yes |
| | | CC Vdr Oversight | 6 | 0 | 0 | 0 | 3 | 0 | 3 | 0 | 0 | 6 | Yes |
| | | | 278 | | | | | | | | | | |
| Dominique Doyenard | 031 | Dialer Administration | 11 | 6 | 0 | 0 | 5 | 0 | 0 | 0 | 0 | 11 | Yes |
| | | Business Process Optimization | 6 | 0 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | | Operational Analytics | 12 | 0 | 0 | 0 | 4 | 0 | 1 | 7 | 0 | 12 | Yes |
| | | | 29 | | | | | | | | | | |
| Patrick Connor | 031 | Quality Assurance | 51 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 50 | 51 | Yes |
| | | CC Dealer Advocacy and Maintenance | 19 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 19 | 19 | Yes |
| | | Credit Bureau Advocacy | 23 | 0 | 0 | 0 | 11 | 0 | 0 | 0 | 12 | 23 | Yes |
| | | Advocacy Analytics | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | Yes |
| | | Customer Advocacy | 21 | 0 | 0 | 0 | 0 | 0 | 21 | 0 | 0 | 21 | Yes |
| | 024 | Legal & Regulatory Profes | 18 | 0 | 0 | 0 | 0 | 0 | 1 | 3 | 14 | 18 | Yes |
| | | Legal & Regulatory Suppor | 36 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 34 | 36 | Yes |
| | | Replevin | 13 | 0 | 0 | 0 | 0 | 0 | 13 | 0 | 0 | 13 | Yes |
| | | | 182 | | | | | | | | | | |
| Graham Anderson | 036 | Titles | 82 | 0 | 0 | 20 | 0 | 0 | 62 | 0 | 0 | 82 | Yes |
| | | CC Titles | 18 | 0 | 0 | 0 | 0 | 0 | 18 | 0 | 0 | 18 | Yes |
| | | Insurance | 48 | 0 | 0 | 0 | 0 | 0 | 48 | 0 | 0 | 48 | Yes |
| | | CC Insurance | 19 | 0 | 0 | 0 | 0 | 0 | 19 | 0 | 0 | 19 | Yes |
| | | Account Services Unit ASU | 43 | 0 | 0 | 0 | 0 | 0 | 43 | 0 | 0 | 43 | Yes |
| | | CC Account Services Unit | 6 | 0 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | 050 | Impounds | 46 | 0 | 0 | 0 | 0 | 0 | 46 | 0 | 0 | 46 | Yes |
| | | CC Impounds | 8 | 0 | 0 | 0 | 0 | 0 | 8 | 0 | 0 | 8 | Yes |
| | | | 270 | | | | | | | | | | |
| Scott Dieckman | 047 | Unsecured Credit Card | 46 | 46 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 46 | Yes |
| | | | 46 | | | | | | | | | | |
| Mark Smith | 031 | Quality Control | 83 | 1 | 0 | 1 | 0 | 0 | 29 | 0 | 52 | 83 | Yes |
| | | Strategic Operations | 17 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 16 | 17 | Yes |
| | 034 | Program Management | 50 | 0 | 0 | 0 | 0 | 0 | 20 | 0 | 30 | 50 | Yes |
| | | Program Management CCAR | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes |
| | | | 151 | | | | | | | | | | |
| Troy Miller | 046 | Customer Service | 191 | 0 | 46 | 6 | 42 | 4 | 93 | 0 | 0 | 191 | Yes |
| | | Customer Service Operations | 4 | 0 | 0 | 0 | 0 | 0 | 4 | 0 | 0 | 4 | Yes |
| | | OSP Vendor Management | 3 | 0 | 0 | 0 | 0 | 0 | 1 | 2 | 0 | 3 | Yes |
| | | CC Customer Service Support | 260 | 0 | 40 | 0 | 54 | 38 | 128 | 0 | 0 | 260 | Yes |
| | | | 458 | | | | | | | | | | |
| Brent Huisman | 050 | Asset Remarketing | 58 | 0 | 0 | 0 | 0 | 1 | 6 | 2 | 49 | 58 | Yes |
| | | CC Asset Remarketing | 87 | 0 | 0 | 18 | 10 | 7 | 39 | 0 | 13 | 87 | Yes |
| | | Auctions | 33 | 0 | 0 | 0 | 0 | 0 | 0 | 33 | 0 | 33 | Yes |
| | | CC Auctions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | | 178 | | | | | | | | | | |
| Brad Quick | 038 | Specialized Services | 61 | 0 | 0 | 0 | 0 | 0 | 61 | 0 | 0 | 61 | Yes |
| | 038 | Cease and Desist | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | 035 | Bankruptcy | 107 | 0 | 1 | 21 | 0 | 0 | 85 | 0 | 0 | 107 | Yes |
| | | CC Bankruptcy | 7 | 0 | 0 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes |
| | | | 175 | | | | | | | | | | |
| Wayne Nightengale | 049 | Late Stage | 840 | 0 | 171 | 53 | 300 | 0 | 316 | 0 | 0 | 840 | Yes |
| | | Early Stage | 86 | 0 | 7 | 0 | 25 | 0 | 54 | 0 | 0 | 86 | Yes |
| | | CC Late Stage | 181 | 0 | 31 | 0 | 83 | 0 | 67 | 0 | 0 | 181 | Yes |
| | | CC Early Stage | 182 | 0 | 83 | 0 | 67 | 0 | 32 | 0 | 0 | 182 | Yes |
| | | Collections Operations | 4 | 0 | 1 | 0 | 1 | 0 | 2 | 0 | 0 | 4 | Yes |
| | | | 1293 | | | | | | | | | | |
| Tony Kutiper | 056 | RL Orig Operations | 2 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 2 | Yes |
| | | RL Sales | 27 | 0 | 0 | 0 | 0 | 0 | 25 | 0 | 0 | 27 | Yes |
| | 054 | Funding Operations | 57 | 2 | 0 | 0 | 0 | 52 | 0 | 0 | 3 | 57 | Yes |
| | | Core Funding | 54 | 24 | 0 | 0 | 30 | 0 | 0 | 0 | 0 | 54 | Yes |
| | | Core Call Center | 22 | 10 | 1 | 0 | 11 | 0 | 0 | 0 | 0 | 22 | Yes |
| | | CarMax | 14 | 14 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 14 | Yes |
| | | Funding Direct | 9 | 9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 9 | Yes |
| | | Chrysler Subvention | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Fifth Third | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Funding Support | 17 | 14 | 0 | 0 | 3 | 0 | 0 | 0 | 0 | 17 | Yes |
| | | CC Funding | 96 | 73 | 0 | 0 | 23 | 0 | 0 | 0 | 0 | 96 | Yes |
| | | CC Call Center | 14 | 0 | 0 | 0 | 14 | 0 | 0 | 0 | 0 | 14 | Yes |
| | | NMAC | 13 | 13 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 13 | Yes |

| Sabrina | OPEN | Reena | Melissa | Whitney | Kristen | Jeanette | AJ |
|---|---|---|---|---|---|---|---|
| 96 | 612 | 653 | 106 | 699 | 412 | 28 | 536 |

Combined 3142



| | 048 | Credit | 90 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 86 | 90 Yes |
| | | Credit Operations | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 4 Yes |
| | | | 419 | | | | | | | | | |
| Jennifer Davis | 040 | Accounting | 127 | 0 | 0 | 0 | 0 | 0 | 40 | 0 | 87 | 127 Yes |
| | | | 127 | | | | | | | | | |
| Jim Brewster | 045 | IT Service Support | 59 | 3 | 5 | 0 | 6 | 3 | 29 | 0 | 13 | 59 Yes |
| | | IT Call Center Office | 20 | 0 | 1 | 0 | 14 | 0 | 5 | 0 | 0 | 20 Yes |
| | | IT Client Services | 14 | 0 | 0 | 0 | 8 | 0 | 5 | 0 | 1 | 14 Yes |
| | | | 93 | | | | | | | | | |
| Tobin Page | 055 | Profitability Analytics | 5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 5 Yes |
| | | Data Reporting | 18 | 0 | 0 | 0 | 1 | 0 | 11 | 1 | 5 | 18 Yes |
| | | | 23 | | | | | | | | | |

**Total** 3722      **Gray Total** 0      **THX Total** 580

**From:** Nicole Heinicke <nheinicke@santanderconsumerusa.com>

**To:** Kristen Lagunes <klagunes@santanderconsumerusa.com>, Whitney Andres <wandres@santanderconsumerusa.com>, Jeanette Rodriguez <JRODRIGUEZ@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Melissa Lawson <MLAWSON@santanderconsumerusa.com>, Andrew Scordo <ascordo@santanderconsumerusa.com>

**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Kayla Liggett <kliggett@santanderconsumerusa.com>, Stephanie Elad <selad@santanderconsumerusa.com>, Edward Fabritiis <efabritiis@santanderconsumerusa.com>

**Subject:** Headcount

**Date:** Mon, 22 Feb 2016 17:07:12 +0000

**Importance:** Normal

**Attachments:** Headcount_by_Department.xlsm

---

Hello!

We have updated the Headcount report for this week. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

Thanks!
Nicole

## Nicole Heinicke
Santander Consumer USA Inc.
HR Generalist

PHONE 214.452.7016
MOBILE 214.212.8260
EMAIL nheinicke@santanderconsumerusa.com
WEB www.santanderconsumerusa.com

| SVP/EVP | Cost Center | Departments | Headcount | Corporate |
|---|---|---|---|---|
| Mark Mooney | 047 | Reinstatements | 45 | 0 |
| | | CC Reinstatements | 13 | 0 |
| | | Recovery Operations | 16 | 0 |
| | | Dealer Control | 68 | 0 |
| | | Collateral Recovery | 50 | 0 |
| | | CC Coll Recv | 12 | 0 |
| | | Non Collateral Deficiency | 14 | 0 |
| | | Vendor Oversight | 54 | 0 |
| | | CC Vdr Oversight | 6 | 0 |
| | | | 278 | |
| Dominique Doyenard | 031 | Dialer Administration | 11 | 6 |
| | | Business Process Optimization | 6 | 0 |
| | | Operational Analytics | 12 | 0 |
| | | | 29 | |
| Patrick Connor | 031 | Quality Assurance | 52 | 0 |
| | | CC Dealer Advocacy and Maintenance | 19 | 0 |
| | | Credit Bureau Advocacy | 24 | 0 |
| | | Advocacy Analytics | 1 | 0 |
| | | Customer Advocacy | 21 | 0 |
| | 024 | Legal & Regulatory Profes | 18 | 0 |
| | | Legal & Regulatory Suppor | 36 | 0 |
| | | Replevin | 13 | 0 |
| | | | 184 | |
| Graham Anderson | 036 | Titles | 82 | 0 |
| | | CC Titles | 18 | 0 |
| | | Insurance | 49 | 0 |
| | | CC Insurance | 19 | 0 |
| | | Account Services Unit ASU | 43 | 0 |
| | | CC Account Services Unit | 6 | 0 |
| | 050 | Impounds | 46 | 0 |
| | | CC Impounds | 8 | 0 |
| | | | 271 | |
| Scott Dieckman | 047 | Unsecured Credit Card | 45 | 45 |
| | | | 45 | |
| Mark Smith | 031 | Quality Control | 82 | 1 |
| | | Strategic Operations | 17 | 0 |
| | 034 | Program Management | 51 | 0 |
| | | Program Management CCAR | 1 | 0 |
| | | | 151 | |
| Tony Kutiper | 046 | Customer Service | 182 | 0 |
| | | Customer Service Operations | 4 | 0 |
| | | OSP Vendor Management | 3 | 0 |
| | | CC Customer Service Support | 262 | 0 |
| | | | 451 | |
| Brent Huisman | 050 | Asset Remarketing | 59 | 0 |
| | | CC Asset Remarketing | 85 | 0 |

| | | | | |
|---|---|---|---|---|
| | | Auctions | 33 | 0 |
| | | CC Auctions | 0 | 0 |
| | | | 177 | |
| | | | | |
| Brad Quick | 038 | Specialized Services | 61 | 0 |
| | 038 | Cease and Desist | 0 | 0 |
| | 035 | Bankruptcy | 107 | 0 |
| | | CC Bankruptcy | 7 | 0 |
| | | | 175 | |
| | | | | |
| Wayne Nightengale | 049 | Late Stage | 835 | 0 |
| | | Early Stage | 84 | 0 |
| | | CC Late Stage | 183 | 0 |
| | | CC Early Stage | 178 | 0 |
| | | Collections Operations | 4 | 0 |
| | | | 1284 | |
| | | | | |
| Lana Johnson | 056 | RL Orig Operations | 2 | 1 |
| | | RL Sales | 27 | 0 |
| | 054 | Funding Operations | 60 | 2 |
| | | Core Funding | 53 | 24 |
| | | Core Call Center | 22 | 10 |
| | | CarMax | 14 | 14 |
| | | Funding Direct | 9 | 9 |
| | | Chrysler Subvention | 0 | 0 |
| | | Fifth Third | 0 | 0 |
| | | Funding Support | 17 | 14 |
| | | CC Funding | 94 | 72 |
| | | CC Call Center | 14 | 0 |
| | | NMAC | 13 | 13 |
| | 048 | Credit | 91 | 0 |
| | | Credit Operations | 4 | 0 |
| | | | 420 | |
| | | | | |
| Jennifer Davis | 040 | Accounting | 126 | 0 |
| | | | 126 | |
| | | | | |
| Jim Brewster | 045 | IT Service Support | 59 | 3 |
| | | IT Call Center Office | 20 | 0 |
| | | IT Client Services | 14 | 0 |
| | | | 93 | |
| | | | | |
| Tobin Page | 055 | Profitability Analytics | 5 | 0 |
| | | Data Reporting | 19 | 0 |
| | | | 24 | |

| | | | |
|---|---|---|---|
| | | Total | 3708 |

| Location | | | | | | |
|---|---|---|---|---|---|---|
| Arapahoe I | Arapahoe II | Lewisville | Mesa AZ | North Richland Hills | Remote Office | Corporate THX |
| 5 | 10 | 0 | 0 | 30 | 0 | 0 |
| 0 | 0 | 13 | 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 1 | 4 | 0 | 11 |
| 0 | 0 | 0 | 0 | 0 | 0 | 68 |
| 1 | 0 | 16 | 0 | 33 | 0 | 0 |
| 0 | 0 | 0 | 0 | 12 | 0 | 0 |
| 5 | 9 | 0 | 0 | 0 | 0 | 0 |
| 0 | 0 | 4 | 0 | 46 | 0 | 4 |
| 0 | 0 | 3 | 0 | 3 | 0 | 0 |
| 0 | 0 | 5 | 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 | 6 | 0 | 0 |
| 0 | 0 | 4 | 0 | 1 | 7 | 0 |
| 0 | 0 | 0 | 0 | 1 | 1 | 50 |
| 0 | 0 | 0 | 0 | 0 | 0 | 19 |
| 0 | 0 | 11 | 0 | 0 | 0 | 13 |
| 0 | 0 | 0 | 0 | 1 | 0 | 0 |
| 0 | 0 | 0 | 0 | 21 | 0 | 0 |
| 0 | 0 | 0 | 0 | 1 | 3 | 14 |
| 0 | 0 | 0 | 0 | 1 | 1 | 34 |
| 0 | 0 | 0 | 0 | 13 | 0 | 0 |
| 0 | 20 | 0 | 0 | 62 | 0 | 0 |
| 0 | 0 | 0 | 0 | 18 | 0 | 0 |
| 0 | 0 | 0 | 0 | 49 | 0 | 0 |
| 0 | 0 | 0 | 0 | 19 | 0 | 0 |
| 0 | 0 | 0 | 0 | 43 | 0 | 0 |
| 0 | 0 | 0 | 0 | 6 | 0 | 0 |
| 0 | 0 | 0 | 0 | 46 | 0 | 0 |
| 0 | 0 | 0 | 0 | 8 | 0 | 0 |
| 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 0 | 1 | 0 | 0 | 29 | 0 | 51 |
| 0 | 0 | 1 | 0 | 0 | 0 | 16 |
| 0 | 0 | 0 | 0 | 20 | 0 | 31 |
| 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| 48 | 0 | 41 | 0 | 93 | 0 | 0 |
| 0 | 0 | 0 | 0 | 3 | 0 | 1 |
| 0 | 0 | 0 | 0 | 1 | 2 | 0 |
| 39 | 0 | 53 | 42 | 128 | 0 | 0 |
| 0 | 0 | 0 | 1 | 6 | 3 | 49 |
| 0 | 18 | 10 | 5 | 38 | 0 | 14 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 0 | 0 | 0 | 0 | 0 | 33 | 0 |
| 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | |
| 0 | 0 | 0 | 0 | 61 | 0 | 0 |
| 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 1 | 21 | 0 | 0 | 85 | 0 | 0 |
| 0 | 0 | 0 | 0 | 7 | 0 | 0 |
| | | | | | | |
| 172 | 54 | 297 | 0 | 312 | 0 | 0 |
| 6 | 0 | 24 | 0 | 54 | 0 | 0 |
| 31 | 0 | 84 | 0 | 68 | 0 | 0 |
| 81 | 0 | 65 | 0 | 32 | 0 | 0 |
| 1 | 0 | 1 | 0 | 1 | 0 | 1 |
| | | | | | | |
| 0 | 0 | 0 | 0 | 1 | 0 | 0 |
| 0 | 0 | 0 | 0 | 25 | 2 | 0 |
| 0 | 0 | 0 | 55 | 0 | 0 | 3 |
| 0 | 0 | 29 | 0 | 0 | 0 | 0 |
| 1 | 0 | 11 | 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 0 | 0 | 3 | 0 | 0 | 0 | 0 |
| 0 | 0 | 22 | 0 | 0 | 0 | 0 |
| 0 | 0 | 14 | 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 | 0 | 4 | 87 |
| 0 | 0 | 0 | 0 | 0 | 0 | 4 |
| | | | | | | |
| 0 | 0 | 0 | 0 | 42 | 0 | 84 |
| | | | | | | |
| 5 | 0 | 6 | 3 | 29 | 0 | 13 |
| 1 | 0 | 14 | 0 | 5 | 0 | 0 |
| 0 | 0 | 9 | 0 | 5 | 0 | 0 |
| | | | | | | |
| 0 | 0 | 0 | 0 | 0 | 0 | 5 |
| 0 | 0 | 1 | 0 | 11 | 2 | 5 |

| **Gray Total** | 0 | | **THX Total** | 582 |
|---|---|---|---|---|

| Subtotal | Match | Sabrina | OPEN | Reena | Melissa | Whitney | Kristen | Jeanette | AJ |
|---|---|---|---|---|---|---|---|---|---|
| | | 94 | 612 | 647 | 107 | 694 | 414 | 28 | 530 |
| 45 | Yes | | | | | | | | |
| 13 | Yes | | | Combined 3126 | | | | | |
| 16 | Yes | | | | | | | | |
| 68 | Yes | | | | | | | | |
| 50 | Yes | | | | | | | | |
| 12 | Yes | | | | | | | | |
| 14 | Yes | | | | | | | | |
| 54 | Yes | | | | | | | | |
| 6 | Yes | | | | | | | | |
| 11 | Yes | | | | | | | | |
| 6 | Yes | | | | | | | | |
| 12 | Yes | | | | | | | | |
| 52 | Yes | | | | | | | | |
| 19 | Yes | | | | | | | | |
| 24 | Yes | | | | | | | | |
| 1 | Yes | | | | | | | | |
| 21 | Yes | | | | | | | | |
| 18 | Yes | | | | | | | | |
| 36 | Yes | | | | | | | | |
| 13 | Yes | | | | | | | | |
| 82 | Yes | | | | | | | | |
| 18 | Yes | | | | | | | | |
| 49 | Yes | | | | | | | | |
| 19 | Yes | | | | | | | | |
| 43 | Yes | | | | | | | | |
| 6 | Yes | | | | | | | | |
| 46 | Yes | | | | | | | | |
| 8 | Yes | | | | | | | | |
| 45 | Yes | | | | | | | | |
| 82 | Yes | | | | | | | | |
| 17 | Yes | | | | | | | | |
| 51 | Yes | | | | | | | | |
| 1 | Yes | | | | | | | | |
| 182 | Yes | | | | | | | | |
| 4 | Yes | | | | | | | | |
| 3 | Yes | | | | | | | | |
| 262 | Yes | | | | | | | | |
| 59 | Yes | | | | | | | | |
| 85 | Yes | | | | | | | | |

33 Yes
0 Yes

61 Yes
0 Yes
107 Yes
7 Yes

835 Yes
84 Yes
183 Yes
178 Yes
4 Yes

2 Yes
27 Yes
60 Yes
53 Yes
22 Yes
14 Yes
9 Yes
0 Yes
0 Yes
17 Yes
94 Yes
14 Yes
13 Yes
91 Yes
4 Yes

126 Yes

59 Yes
20 Yes
14 Yes

5 Yes
19 Yes

**From:** Nicole Heinicke <nheinicke@santanderconsumerusa.com>
**To:** Kristen Lagunes <klagunes@santanderconsumerusa.com>, Whitney Andres <wandres@santanderconsumerusa.com>, Jeanette Rodriguez <JRODRIGUEZ@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Melissa Lawson <MLAWSON@santanderconsumerusa.com>, Andrew Scordo <ascordo@santanderconsumerusa.com>
**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Kayla Liggett <kliggett@santanderconsumerusa.com>, Stephanie Elad <selad@santanderconsumerusa.com>, Edward Fabritiis <efabritiis@santanderconsumerusa.com>
**Subject:** Headcount March 2016
**Date:** Mon, 14 Mar 2016 16:34:06 +0000
**Importance:** Normal
**Attachments:** Headcount_by_Department.xlsm

---

Hello!

We have updated the Headcount report. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

Thanks!
Nicole

## Nicole Heinicke
Santander Consumer USA Inc.
HR Generalist

PHONE     214.452.7016
MOBILE    214.212.8260
EMAIL     nheinicke@santanderconsumerusa.com
WEB       www.santanderconsumerusa.com

SC009470

| SVP/EVP | Cost Center | Departments | Headcount | Corporate | Arapahoe I | Arapahoe II | Lewisville | Mesa AZ | North Richland Hills | Remote Office | Corporate THX | Subtotal | Match |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mark Mooney | 047 | Reinstatements | 46 | 0 | 5 | 11 | 0 | 0 | 30 | 0 | 0 | 46 | Yes |
| | | CC Reinstatements | 13 | 0 | 0 | 0 | 13 | 0 | 0 | 0 | 0 | 13 | Yes |
| | | Recovery Operations | 15 | 0 | 0 | 0 | 0 | 1 | 3 | 0 | 11 | 11 | Yes |
| | | Dealer Control | 52 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 52 | 52 | Yes |
| | | Collateral Recovery | 56 | 0 | 0 | 12 | 16 | 0 | 28 | 0 | 0 | 56 | Yes |
| | | CC Coll Recv | 16 | 0 | 0 | 0 | 0 | 0 | 16 | 0 | 0 | 16 | Yes |
| | | Non Collateral Deficiency | 13 | 0 | 3 | 10 | 0 | 0 | 0 | 0 | 0 | 13 | Yes |
| | | Vendor Oversight | 57 | 0 | 0 | 0 | 0 | 4 | 49 | 0 | 4 | 57 | Yes |
| | | CC Vdr Oversight | 6 | 0 | 0 | 0 | 3 | 0 | 3 | 0 | 0 | 6 | Yes |
| | | | 274 | | | | | | | | | | |
| Dominique Doyenard | 031 | Dialer Administration | 11 | 5 | 0 | 0 | 5 | 0 | 1 | 0 | 0 | 11 | Yes |
| | | Business Process Optimization | 6 | 0 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | | Operational Analytics | 12 | 0 | 0 | 0 | 4 | 0 | 1 | 7 | 0 | 12 | Yes |
| | | | 29 | | | | | | | | | | |
| Patrick Connor | 031 | Quality Assurance | 60 | 0 | 1 | 0 | 0 | 1 | 2 | 1 | 55 | 60 | Yes |
| | | CC Dealer Advocacy and Maintenance | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 3 | Yes |
| | | Credit Bureau Advocacy | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Advocacy Analytics | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Customer Advocacy | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes |
| | 024 | Legal & Regulatory Profes | 18 | 0 | 0 | 0 | 0 | 0 | 1 | 3 | 14 | 18 | Yes |
| | | Legal & Regulatory Suppor | 18 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 16 | 18 | Yes |
| | | Replevin | 13 | 0 | 0 | 0 | 0 | 0 | 13 | 0 | 0 | 13 | Yes |
| | | | 113 | | | | | | | | | | |
| Graham Anderson | 036 | Titles | 82 | 0 | 0 | 21 | 0 | 0 | 61 | 0 | 0 | 82 | Yes |
| | | CC Titles | 18 | 0 | 0 | 0 | 0 | 0 | 18 | 0 | 0 | 18 | Yes |
| | | Insurance | 50 | 0 | 0 | 0 | 0 | 0 | 50 | 0 | 0 | 50 | Yes |
| | | CC Insurance | 18 | 0 | 0 | 0 | 0 | 0 | 18 | 0 | 0 | 18 | Yes |
| | | Account Services Unit ASU | 43 | 0 | 0 | 0 | 0 | 0 | 43 | 0 | 0 | 43 | Yes |
| | | CC Account Services Unit | 6 | 0 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 6 | Yes |
| | 050 | Impounds | 43 | 0 | 0 | 0 | 0 | 0 | 43 | 0 | 0 | 43 | Yes |
| | | CC Impounds | 11 | 0 | 0 | 0 | 0 | 0 | 11 | 0 | 0 | 11 | Yes |
| | | | 271 | | | | | | | | | | |
| Scott Dieckman | 047 | Unsecured Credit Card | 38 | 38 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 38 | Yes |
| | | | 38 | | | | | | | | | | |
| Mark Smith | 031 | Quality Control | 67 | 1 | 0 | 1 | 0 | 0 | 29 | 0 | 36 | 67 | Yes |
| | | Strategic Operations | 2 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 2 | Yes |
| | 034 | Program Management | 51 | 0 | 0 | 0 | 0 | 0 | 20 | 0 | 31 | 51 | Yes |
| | | Program Management CCAR | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes |
| | | | 121 | | | | | | | | | | |
| Troy Miller | 046 | Customer Service | 199 | 0 | 50 | 1 | 41 | 16 | 91 | 0 | 0 | 199 | Yes |
| | | Customer Service Operations | 5 | 0 | 0 | 0 | 0 | 1 | 3 | 1 | 0 | 5 | Yes |
| | | OSP Vendor Management | 4 | 0 | 0 | 0 | 1 | 0 | 1 | 2 | 0 | 4 | Yes |
| | | CC Customer Service Support | 277 | 0 | 44 | 3 | 51 | 53 | 126 | 0 | 0 | 277 | Yes |
| | | | 485 | | | | | | | | | | |
| Brent Huisman | 050 | Asset Remarketing | 61 | 0 | 0 | 0 | 0 | 1 | 7 | 3 | 50 | 61 | Yes |
| | | CC Asset Remarketing | 87 | 0 | 0 | 18 | 10 | 6 | 38 | 0 | 15 | 87 | Yes |
| | | Auctions | 33 | 0 | 0 | 0 | 0 | 0 | 0 | 33 | 0 | 33 | Yes |
| | | CC Auctions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | | 181 | | | | | | | | | | |
| Brad Quick | 038 | Specialized Services | 55 | 0 | 0 | 0 | 0 | 0 | 55 | 0 | 0 | 55 | Yes |
| | 038 | Cease and Desist | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | 035 | Bankruptcy | 107 | 0 | 1 | 21 | 0 | 0 | 85 | 0 | 0 | 107 | Yes |
| | | CC Bankruptcy | 7 | 0 | 0 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes |
| | | | 169 | | | | | | | | | | |
| Wayne Nightengale | 049 | Late Stage | 826 | 0 | 169 | 56 | 296 | 0 | 305 | 0 | 0 | 826 | Yes |
| | | Early Stage | 72 | 0 | 1 | 0 | 22 | 0 | 49 | 0 | 0 | 72 | Yes |
| | | CC Late Stage | 182 | 0 | 32 | 0 | 81 | 0 | 69 | 0 | 0 | 182 | Yes |
| | | CC Early Stage | 189 | 0 | 84 | 0 | 68 | 0 | 37 | 0 | 0 | 189 | Yes |
| | | Collections Operations | 6 | 0 | 1 | 0 | 3 | 0 | 1 | 0 | 1 | 6 | Yes |
| | | | 1275 | | | | | | | | | | |
| Lana Johnson | 056 | RL Orig Operations | 2 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 2 | Yes |
| | | RL Sales | 27 | 0 | 0 | 0 | 0 | 0 | 25 | 0 | 2 | 27 | Yes |
| | 054 | Funding Operations | 74 | 0 | 0 | 0 | 1 | 71 | 0 | 0 | 2 | 74 | Yes |
| | | Core Funding | 51 | 22 | 0 | 0 | 29 | 0 | 0 | 0 | 0 | 51 | Yes |
| | | Core Call Center | 21 | 10 | 1 | 0 | 10 | 0 | 0 | 0 | 0 | 21 | Yes |
| | | CarMax | 14 | 14 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 14 | Yes |
| | | Funding Direct | 9 | 9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 9 | Yes |
| | | Chrysler Subvention | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Fifth Third | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Funding Support | 17 | 14 | 0 | 0 | 3 | 0 | 0 | 0 | 0 | 17 | Yes |
| | | CC Funding | 89 | 68 | 0 | 0 | 21 | 0 | 0 | 0 | 0 | 89 | Yes |
| | | CC Call Center | 13 | 0 | 0 | 0 | 13 | 0 | 0 | 0 | 0 | 13 | Yes |
| | | NMAC | 13 | 13 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 13 | Yes |

Name totals: Sabrina 92 | OPEN 607 | Reena 634 | Melissa 153 | Whitney 684 | Kristen 378 | Jeanette 28 | AJ 552 — Combined 3128

| | 048 | Credit | 92 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 88 | 92 | Yes |
| | | Credit Operations | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 3 | Yes |
| | | | 425 | | | | | | | | | | |
| Jennifer Davis | 040 | Accounting | 121 | 0 | 0 | 0 | 0 | 0 | 40 | 0 | 81 | 121 | Yes |
| | | | 121 | | | | | | | | | | |
| Jim Brewster | 045 | IT Service Support | 59 | 3 | 5 | 0 | 6 | 3 | 29 | 0 | 13 | 59 | Yes |
| | | IT Call Center Office | 20 | 0 | 1 | 0 | 14 | 0 | 5 | 0 | 0 | 20 | Yes |
| | | IT Client Services | 14 | 0 | 0 | 0 | 9 | 0 | 5 | 0 | 0 | 14 | Yes |
| | | | 93 | | | | | | | | | | |
| Tobin Page | 055 | Profitability Analytics | 7 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 7 | 7 | Yes |
| | | Data Reporting | 20 | 0 | 0 | 0 | 1 | 0 | 12 | 2 | 5 | 20 | Yes |
| | | | 27 | | | | | | | | | | |

|  | Total | 3622 | | Gray Total | 0 | | THX Total | 494 |

**From:** Nicole Heinicke <nheinicke@santanderconsumerusa.com>

**To:** Kristen Lagunes <klagunes@santanderconsumerusa.com>, Whitney Andres <wandres@santanderconsumerusa.com>, Jeanette Rodriguez <JRODRIGUEZ@santanderconsumerusa.com>, Reena Mathew <rmathew@santanderconsumerusa.com>, Sabrina Boyd <SBOYD@santanderconsumerusa.com>, Melissa Lawson <MLAWSON@santanderconsumerusa.com>, Andrew Scordo <ascordo@santanderconsumerusa.com>

**Cc:** Angelina Hullum <AHULLUM@santanderconsumerusa.com>, Yessica Adriano <YADRIANO@santanderconsumerusa.com>, Kayla Liggett <kliggett@santanderconsumerusa.com>, Stephanie Elad <selad@santanderconsumerusa.com>, Edward Fabritiis <efabritiis@santanderconsumerusa.com>

**Subject:** Headcount

**Date:** Mon, 11 Apr 2016 13:43:25 +0000

**Importance:** Normal

**Attachments:** Headcount_by_Department.xlsm

---

Hello!

We have updated the Headcount report. Please let me know if you have any questions. It can be found in the headcount folder on the G Drive. (G:\HR Site Folders\NRH\Headcount)

Thanks!
Nicole

## Nicole Heinicke
Santander Consumer USA Inc.
HR Generalist

PHONE       214.452.7016
MOBILE      214.212.8260
EMAIL       nheinicke@santanderconsumerusa.com
WEB         www.santanderconsumerusa.com

SC002446

| SVP/EVP | Cost Center | Departments | Headcount | Corporate | Arapahoe I | Arapahoe II | Lewisville | Mesa AZ | North Richland Hills | Remote Office | Corporate THX | Subtotal | Match |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | Sabrina 93 | OPEN 605 | Reena 643 | Melissa 180 | Whitney 671 | Kristen 334 | Jeanette 28 | AJ 530 |
| Mark Mooney | 047 | Reinstatements | 44 | 0 | 5 | 9 | | | 30 | | 0 | 44 | Yes |
| | | CC Reinstatements | 13 | 0 | 0 | 0 | 13 | 0 | | 0 | 0 | 13 | Yes |
| | | Recovery Operations | 17 | 0 | 0 | 0 | 0 | 1 | 4 | 0 | 12 | 17 | Yes |
| | | Dealer Control | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes |
| | | Collateral Recovery | 56 | 0 | 0 | 15 | 15 | 0 | 26 | 0 | 0 | 56 | Yes |
| | | CC Coll Recv | 29 | 0 | 0 | 13 | 0 | 0 | 16 | 0 | 0 | 29 | Yes |
| | | Non Collateral Deficiency | 12 | 0 | 0 | 12 | 0 | 0 | 0 | 0 | 0 | 12 | Yes |
| | | Vendor Oversight | 56 | 0 | 0 | 0 | 4 | 0 | 48 | 0 | 4 | 56 | Yes |
| | | CC Vdr Oversight | 6 | 0 | 0 | 0 | 3 | 0 | 3 | 0 | 0 | 6 | Yes |
| | | | 234 | | | | | | | | | | |
| Dominique Doyenard | 031 | Dialer Administration | 11 | 0 | 0 | 0 | 5 | 0 | 6 | 0 | 0 | 11 | Yes |
| | | Business Process Optimization | 6 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 5 | 6 | Yes |
| | | Operational Analytics | 13 | 0 | 0 | 0 | 1 | 0 | 1 | 6 | 5 | 13 | Yes |
| | | | 30 | | | | | | | | | | |
| Patrick Conner | 031 | Quality Assurance | 61 | 0 | 1 | 0 | 1 | 1 | 2 | 1 | 55 | 61 | Yes |
| | | CC Dealer Advocacy and Maintenance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Credit Bureau Advocacy | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Advocacy Analytics | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Customer Advocacy | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | 024 | Legal & Regulatory Profes | 23 | 0 | 0 | 0 | 0 | 0 | 2 | 3 | 18 | 23 | Yes |
| | | Legal & Regulatory Suppor | 19 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 17 | 19 | Yes |
| | | Replevin | 13 | 0 | 0 | 0 | 0 | 0 | 13 | 0 | 0 | 13 | Yes |
| | | | 116 | | | | | | | | | | |
| Graham Anderson | 036 | Titles | 71 | 0 | 0 | 23 | 0 | 0 | 48 | 0 | 0 | 71 | Yes |
| | | CC Titles | 31 | 0 | 0 | 0 | 0 | 0 | 31 | 0 | 0 | 31 | Yes |
| | | Insurance | 48 | 0 | 0 | 0 | 0 | 0 | 48 | 0 | 0 | 48 | Yes |
| | | CC Insurance | 17 | 0 | 0 | 0 | 0 | 0 | 17 | 0 | 0 | 17 | Yes |
| | | Account Services Unit ASU | 40 | 0 | 0 | 0 | 0 | 0 | 40 | 0 | 0 | 40 | Yes |
| | | CC Account Services Unit | 10 | 0 | 0 | 0 | 0 | 0 | 10 | 0 | 0 | 10 | Yes |
| | 050 | Impounds | 44 | 0 | 0 | 0 | 0 | 0 | 44 | 0 | 0 | 44 | Yes |
| | | CC Impounds | 10 | 0 | 0 | 0 | 0 | 0 | 10 | 0 | 0 | 10 | Yes |
| | | | 271 | | | | | | | | | | |
| Scott Dieckman | 047 | Unsecured Credit Card | 2 | 0 | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 2 | Yes |
| | | | 2 | | | | | | | | | | |
| Mark Smith | 031 | Quality Control | 58 | 0 | 0 | 1 | 0 | 0 | 29 | 0 | 27 | 58 | Yes |
| | 034 | Strategic Operations | 2 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 2 | Yes |
| | | Program Management | 52 | 0 | 0 | 0 | 0 | 0 | 20 | 0 | 32 | 52 | Yes |
| | | Program Management CCAR | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Yes |
| | | | 113 | | | | | | | | | | |
| Troy Miller | 046 | Customer Service | 193 | 0 | 48 | 1 | 41 | 15 | 88 | 0 | 0 | 193 | Yes |
| | | Customer Service Operations | 6 | 0 | 0 | 0 | 0 | 0 | 4 | 1 | 1 | 6 | Yes |
| | | OSP Vendor Management | 3 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 1 | 3 | Yes |
| | | CC Customer Service Support | 266 | 0 | 39 | 3 | 52 | 52 | 120 | 0 | 0 | 266 | Yes |
| | | | 468 | | | | | | | | | | |
| Brent Huisman | 050 | Asset Remarketing | 64 | 0 | 0 | 0 | 0 | 0 | 10 | 3 | 51 | 64 | Yes |
| | | CC Asset Remarketing | 86 | 0 | 0 | 17 | 8 | 7 | 39 | 1 | 14 | 86 | Yes |
| | | Auctions | 32 | 0 | 0 | 0 | 0 | 0 | 0 | 32 | 0 | 32 | Yes |
| | | CC Auctions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | | 182 | | | | | | | | | | |
| Brad Quick | 038 | Specialized Services | 56 | 0 | 0 | 0 | 0 | 0 | 56 | 0 | 0 | 56 | Yes |
| | 038 | Cease and Desist | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | 035 | Bankruptcy | 108 | 0 | 1 | 25 | 0 | 0 | 82 | 0 | 0 | 108 | Yes |
| | | CC Bankruptcy | 7 | 0 | 0 | 0 | 0 | 0 | 7 | 0 | 0 | 7 | Yes |
| | | | 171 | | | | | | | | | | |
| Wayne Nightengale | 049 | Late Stage | 828 | 0 | 170 | 52 | 300 | 0 | 306 | 0 | 0 | 828 | Yes |
| | | Early Stage | 88 | 0 | 0 | 0 | 37 | 1 | 50 | 0 | 0 | 88 | Yes |
| | | CC Late Stage | 177 | 0 | 31 | 0 | 81 | 0 | 65 | 0 | 0 | 177 | Yes |
| | | CC Early Stage | 179 | 0 | 55 | 0 | 64 | 24 | 36 | 0 | 0 | 179 | Yes |
| | | Collections Operations | 6 | 0 | 1 | 0 | 3 | 0 | 1 | 0 | 1 | 6 | Yes |
| | | | 1278 | | | | | | | | | | |
| Lana Johnson | 056 | RL Orig Operations | 2 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 2 | Yes |
| | | RL Sales | 27 | 0 | 0 | 0 | 0 | 0 | 25 | 2 | 0 | 27 | Yes |
| | 054 | Funding Operations | 78 | 0 | 0 | 0 | 1 | 74 | 0 | 0 | 3 | 78 | Yes |
| | | Core Funding | 49 | 21 | 0 | 0 | 28 | 0 | 0 | 0 | 0 | 49 | Yes |
| | | Core Call Center | 21 | 9 | 1 | 0 | 11 | 0 | 0 | 0 | 0 | 21 | Yes |
| | | CarMax | 12 | 12 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 12 | Yes |
| | | Funding Direct | 9 | 9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 9 | Yes |
| | | Chrysler Subvention | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Fifth Third | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | Yes |
| | | Funding Support | 17 | 14 | 0 | 0 | 3 | 0 | 0 | 0 | 0 | 17 | Yes |
| | | CC Funding | 87 | 68 | 0 | 0 | 19 | 0 | 0 | 0 | 0 | 87 | Yes |
| | | CC Call Center | 13 | 0 | 0 | 0 | 13 | 0 | 0 | 0 | 0 | 13 | Yes |
| | | NMAC | 13 | 13 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 13 | Yes |

Combined 3084

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 048 | Credit | 91 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 87 | 91 | Yes |
| | | Credit Operations | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 3 | Yes |
| | | | 422 | | | | | | | | | | |
| Jennifer Davis | 040 | Accounting | 120 | 0 | 0 | 0 | 0 | 0 | 40 | 0 | 80 | 120 | Yes |
| | | | 120 | | | | | | | | | | |
| Jim Brewster | 045 | IT Service Support | 63 | 3 | 5 | 0 | 6 | 4 | 32 | 0 | 13 | 63 | Yes |
| | | IT Call Center Office | 21 | 0 | 2 | 0 | 14 | 0 | 4 | 0 | 1 | 21 | Yes |
| | | IT Client Services | 14 | 0 | 0 | 0 | 8 | 0 | 6 | 0 | 0 | 14 | Yes |
| | | | 98 | | | | | | | | | | |
| Tobin Page | 055 | Profitability Analytics | 7 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 7 | 7 | Yes |
| | | Data Reporting | 21 | 0 | 0 | 0 | 1 | 0 | 12 | 2 | 6 | 21 | Yes |
| | | | 28 | | | | | | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Total | 3533 | Gray Total | 0 | THX Total | 449 |

| Date | Sender First Name | Sender Last Name | Receiver | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|
| 8/28/2015 | Kristen | Lagunes | Misty Donnell | 150 | | Welcome to the team - yo | public | award_points |
| 9/9/2015 | Nicole | Heinicke | Misty Donnell | 50 | | You've been a great additic | public | award_points |
| 9/14/2015 | Angelina | Hullum | Misty Donnell | 100 | Excellence | Thank you for all your hard | public | award_points |
| 11/4/2015 | Kendra | Howard | Misty Donnell | 10000 | | Thank you for assisting me getting all my reorganizations done; not just helping but teaching me how to do it and keeping the parntership open. I appreciate all you do! | private | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|
| 9/29/2015 | Nicole | Prior | Susan Haynes | 20 | Service | Your constant follow up ar | public | award_points |
| 10/12/2015 | Ruth | Reagan | Susan Haynes | 250 | | Happy Birthday! | public | award_points |
| 10/13/2015 | Stephanie | Bayley | Susan Haynes | 5 | Respect | Happy Belated Birthday! T | public | award_points |
| 11/9/2015 | Angelina | Hullum | Susan Haynes | 200 | Our People | Thank you for your assista | public | award_points |
| 11/13/2015 | Ruth | Reagan | Susan Haynes | 200 | Service | Thank you so much for helping us at Six Flags! From all of us on the Events Team! | public | award_points |
| 12/16/2015 | Stephanie | Elad | Susan Haynes | 1000 | | Thank you for the great pr | public | award_points |
| 12/24/2015 | Ken | Chung | Susan Haynes | 1000 | Service | Thank you for your guidanc | public | award_points |
| 12/28/2015 | Kyshia | Gibbons | Susan Haynes | 65 | Excellence | Thank you for your help | public | award_points |
| 12/29/2015 | Priyadarshini | Chitraputhran | Susan Haynes | 10 | | Thank you for your guidanc | public | award_points |
| 12/30/2015 | Krystal | Ricks | Susan Haynes | 10 | Our People | Thank you for all your support | public | award_points |
| 3/4/2016 | Talent | Engagement | Susan Haynes | 10 | | Happy Employee Appreciat | public | award_points |
| 3/16/2016 | Edward | Fabritiis | Susan Haynes | 50 | Service | Thank you for figuring out | public | award_points |
| 4/22/2016 | Talent | Engagement | Susan Haynes | 1 | Our People | Thanks for joining the YEI t | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|
| 6/9/2015 | Tobin | Page | Tina Mohan | 100 | Service | Thanks for all your help wit | public | award_points |
| 6/9/2015 | Premodh | Mohan | Tina Mohan | 1 | Our People | You are awesome, I adore | public | award_points |
| 6/9/2015 | Phuc | Lam | Tina Mohan | 10 | | Thanks for helping me with | private | award_points |
| 6/10/2015 | Susan | Odom | Tina Mohan | 5 | Excellence | Thanks for all your Help!! | public | award_points |
| 6/10/2015 | Sarah | Skinner | Tina Mohan | 15 | Performan | Thank you for your partner | public | award_points |
| 6/11/2015 | Nicole | Prior | Tina Mohan | 15 | Our People | Thanks for all you do for m | public | award_points |
| 6/11/2015 | Fatma | Rizvan | Tina Mohan | 5 | Respect | Thank you for being such a | public | award_points |
| 6/11/2015 | Yessica | Adriano | Tina Mohan | 100 | Our People | For doing such a great job i | private | award_points |
| 6/12/2015 | Taniqua | Clay | Tina Mohan | 5 | Performan | Thank you for your partner | public | award_points |
| 8/28/2015 | Teara | Helsel | Tina Mohan | 20 | Excellence | Thanks for all the hard wor | public | award_points |
| 11/13/2015 | Stephanie | Elad | Tina Mohan | 2000 | Excellence | Tina - Thank you for your a | public | award_points |
| 12/24/2015 | Dana | Tucker | Tina Mohan | 1000 | Performan | Tina, Thank you for all you | public | award_points |
| 12/29/2015 | Vincent | Meglio | Tina Mohan | 5000 | Excellence | thanks for a great year and | public | award_points |
| 1/4/2016 | Christy | Miller | Tina Mohan | 150 | Service | Thank you all so much for y | public | award_points |
| 2/3/2016 | Michelle | Latham | Tina Mohan | 50 | Respect | Thanks for your partnership | public | award_points |
| 2/18/2016 | Katie | Strait | Tina Mohan | 10 | Excellence | Thank you for everything y | public | award_points |
| 3/3/2016 | Susan | Haynes | Tina Mohan | 25 | Our People | Thank you Tina for your he | public | award_points |
| 3/4/2016 | Talent | Engagement | Tina Mohan | 10 | | Happy Employee Appreciat | public | award_points |
| 6/9/2016 | Tammie | Ross | Tina Mohan | 100 | Excellence | Thank you for all that you c | public | award_points |
| 6/17/2016 | Christy | Miller | Tina Mohan | 50 | Service | Congrats on 3 years!! | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|
| 6/10/2015 | Susan | Odom | Jonathan Morse | 5 | | Thanks for being "Payroll's | public | award_points |
| 6/10/2015 | Lisa | Fidler | Jonathan Morse | 5 | Performa | Thank you for all of your s | public | award_points |
| 6/10/2015 | Nicole | Prior | Jonathan Morse | 15 | Respect | Thanks for your ongoing su | public | award_points |
| 6/10/2015 | Premodh | Mohan | Jonathan Morse | 2 | Our Peopl | For watching Mavs Game v | public | award_points |
| 6/12/2015 | Taniqua | Clay | Jonathan Morse | 5 | Our Peopl | Thank you for your partner | public | award_points |
| 9/1/2015 | Angelina | Hullum | Jonathan Morse | 5 | | | | high_five |
| 9/1/2015 | Stephanie | Elad | Jonathan Morse | 2500 | Service | Jonathan - Thank you for y | public | award_points |
| 11/13/2015 | Ruth | Reagan | Jonathan Morse | 200 | Service | Thank you so much for helping us at Six Flags! From all of us on the Events Team! | public | award_points |
| 3/3/2016 | Kristina | Carbonneau | Jonathan Morse | 10 | Our Peopl | Thank you all your help | public | award_points |
| 3/4/2016 | Talent | Engagement | Jonathan Morse | 10 | | Happy Employee Appreciat | | award_points |
| 6/7/2016 | Graham | Cameron | Jonathan Morse | 100 | Respect | Thanks to your support to t | public | award_points |
| 6/9/2016 | Neeshta | Kewada | Jonathan Morse | 10 | Excellence | Thank you for your hard | private | award_points |
| 6/13/2016 | Kristi | Cervantes | Jonathan Morse | 5 | Service | Thanks for all your help wit | public | award_points |
| 6/15/2016 | Stephen | Shaffer | Jonathan Morse | 500 | Service | Jonathan, You have been invaluable in your assistance and help to me.  I know it has been tough carrying a big load.  I really appreciate it! | private | award_points |
| 7/1/2016 | Jonathan | Rose | Jonathan Morse | 25 | Service | Happy Anniversary!!!! | public | award_points |
| 7/1/2016 | Edward | Fabritiis | Jonathan Morse | 3000 | Service | Happy 3 years! | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|
| 6/8/2015 | Alicia | Feller | Hortensia Perez | 100 | Excellence | Thank you for all you do fo | public | award_points |
| 6/9/2015 | Susan | Odom | Hortensia Perez | 5 | Excellence | Ten Thank you for all your | public | award_points |
| 6/11/2015 | Fatma | Rizvan | Hortensia Perez | 5 | Performa | Thank you for always help | public | award_points |
| 6/11/2015 | Yessica | Adriano | Hortensia Perez | 100 | Service | Thanks for always staying i | private | award_points |
| 6/12/2015 | Dee | Walker | Hortensia Perez | 25 | Excellence | Everything you do! | public | award_points |
| 6/12/2015 | Taniqua | Clay | Hortensia Perez | 5 | Excellence | Thanks for being so aweso | public | award_points |
| 6/12/2015 | Corley | Cowan | Hortensia Perez | 500 | Our Peopl | Add a message... | private | award_points |
| 7/22/2015 | Yessica | Adriano | Hortensia Perez | 229 | | Happy Bday !!! | private | award_points |
| 8/28/2015 | Kristen | Lagunes | Hortensia Perez | 50 | | Thanks for the assistance a | public | award_points |
| 11/5/2015 | Reena | Mathew | Hortensia Perez | 100 | Performa | Reunited.....it's been great | public | award_points |
| 11/18/2015 | Gabriela | Perez | Hortensia Perez | 5 | Respect | Great leadership! | public | award_points |

| Date | Sender First Name | Sender Last Name | Receiver | Points | Tags | Message | Visibility | Type |
|---|---|---|---|---|---|---|---|---|
| 11/9/2015 | Angelina | Hullum | Russell Tookes | 200 | Our Peopl | Thank you for your assistar | public | award_points |
| 11/12/2015 | Susan | Haynes | Russell Tookes | 50 | Our Peopl | Thank you Russell for assis | public | award_points |
| 11/12/2015 | John | McAchran | Russell Tookes | 25 | Our Peopl | Thank you for trying to ma | public | award_points |
| 11/13/2015 | Jade | Wiland | Russell Tookes | 5 | | | | high_five |
| 11/13/2015 | Ruth | Reagan | Russell Tookes | 200 | Service | Thank you so much for helping us at Six Flags! From all of us on the Events Team! | public | award_points |
| 1/5/2016 | Sara | Lane | Russell Tookes | 5 | Excellence | Thanks for all you do to su | public | award_points |
| 1/19/2016 | Nicole | Prior | Russell Tookes | 10 | Our Peopl | Thank you for your continu | public | award_points |
| 3/4/2016 | Talent | Engagement | Russell Tookes | 10 | | Happy Employee Appreciat | public | award_points |





# Holly Hanes, SHRM-CP ✅ (She/Her) · 2nd

Human Resources | People Operations | Employee Relations | Adaptability

Keller, Texas, United States · **Contact info**

500+ connections

 **Harry Jones** is a mutual connection

**🔗 Connect** | **✈ Message** | **More**

 **Exploring New Opportunities**

 **Tarleton State University**

## About

SHRM-CP certified Human Resources professional with 14 years of experience including People Operations, Employee Relations, Compliance and Recruiting. I am enthusiastic about creating positive employee experiences, being a trusted teammate and optimizing HR processes while supporting organizational growth and development. I am currently in an operations generalist role where I work to continually optimize processes and resolve complex issues by leveragi ...see more

 **Top skills**
Labor and Employment Law • Onboarding • Employee Relations • people operations • Collaborative Problem → Solving

 **Holly Hanes, SHRM-CP** (She/Her)
Human Resources | People Operations | Employee Relations | Adaptability

532 followers

 **Posts**    Comments    Images

Holly Hanes, SHRM-CP posted this • 1mo

 I'm happy to share that I've completed my Bachelor of Business Administration - BBA at Tarleton State University!

 31                                                                                      7 comments

Holly Hanes, SHRM-CP posted this • 1mo

 I'm very excited to share I have earned my Bachelors Degree!
After a very long journey of college that has included earning credits at 4 different institutions, spending a semester studying abroad in Italy, changing my major 3 times and two attempts at night classes,   ...show more

 87                                                                                      42 comments

Show all posts →

## Experience

 **SHRM-CP Certified | Human Resources | Employee Relations | Collaboration | Adaptability**
Exploring New Opportunities
Sep 2022 - Present · 2 yrs 1 mo

 **People Operations Specialist**
Cruise · Contract
Aug 2022 - Present · 2 yrs 2 mos
Remote

CRUISE, LLC, contract, Remote 8/2022 – curent
HR Operations Generalist ...                                                         ...see more

◈ Onboarding, Global Human Resources Management and +13 skills

**Santander Consumer USA**

11 yrs 9 mos

**Senior Employee Relations Consultant**

Full-time

Jul 2016 - Jan 2022 · 5 yrs 7 mos

Dallas, Texas

• Primary case manager handling all legal investigations and claims, becoming a trusted partner to inside and outside counsel as well liaising between all business lines.

• Developed in-depth knowledge of all systems to gather all pertinent information, providing critical data to drive positive outcomes for the company.

• Served as primary contact and project manager for i-Sight (internal case management system for claims and investigations) implementation and continued as administrator and SME for ongoing system improvement and assistance for entire Employee Relations department.

• Developed and improved the process for scanning and categorizing electronic personnel files. Supervised team of student workers responsible for accurately converting all paper files to electronic system.

• Employee Relations SME, providing guidance and direction to team and other lines of business.

• Communicated delicate information in a sensitive manner including executing the severance process from beginning to completion.

• Professional Certified Mentor (June 2021).

▽ Case Management, Employee Relations and +9 skills

**Human Resources Compliance Analyst**

Jun 2013 - Jul 2016 · 3 yrs 2 mos

• Managed all legal investigations and claims, partnering with inside and outside counsel as well liaising between all business lines.

• Collaborated with internal human resources (HR) groups to identify potential gaps and areas of opportunity in business processes, ensuring corrective steps were taken while mitigating risks.

• Ensured HR department operated in compliance with applicable laws and regulations as well as policies and procedures.

• Led compliance examinations independently of HR data, providing comprehensive compliance reporting.

• Maintained confidentiality with a high level of discretion and professionalism.

▽ Business Process Improvement, Subject Matter Experts and +8 skills

**Talent Acquisition Specialist**

Full-time

Sep 2011 - Jun 2013 · 1 yr 10 mos

• Managed the recruiting process for external candidates including exempt positions and high-volume non-exempt positions....                                                   ...see more

▽ Recruiting, Onboarding and +4 skills

Show all 4 experiences →

**Don Uloth**

| | |
|---|---|
| **From:** | Reena Mathew <rmathew@santanderconsumerusa.com> |
| **Sent:** | Friday, April 8, 2016 11:03 AM |
| **To:** | Yessica Adriano |
| **Subject:** | Investigation Summary--Brittany Brodie |

Hi Yessica,

Please see the summary below and notes attached for the Brittany Brodie investigation.

**Date Complaint Received**: 4/1/2016
**Investigator:** Reena Mathew, HR Business Partner; Witness: N/A
**Complainant:** Brittany Brodie; Early Stage Account Manager
**Accused:** Emerial Woods; Latoria Chatman—Early Stage Account Managers
**Witnesses:** Karen Cantu/Bryson Gray—Early Stage Account Managers; Gerald Rahm—Early Stage Manager

**Timeline of Investigation:**
**4/1/2016:** AVP Jorge Munoz receives word from Manager Gerald Rahm that there was an incident during Gerald's jumpstart that morning; Jorge meets with HR Manager Yessica Adriano to discuss; Jorge and Yessica meet with Brittany to get her side of the story and associate is suspended until pending investigation is completed
**4/1/2016:** Reena Mathew meets with Emerial Woods/Karen Cantu to see what information they could provide regarding the incident
**4/7/2016**: Reena Mathew also meets with an additional witness, Bryson Gray, to see what information he could provide

**Final Incident that led Complainant(s) to complain:** On 4/1/2016, Brittany Brodie states she was in their team jumpstart ==*(Yessica, could you pls fill this part in?)*==

**Confirmed Accusations:**
- Question regarding hygiene during jumpstart was made by Latoria
- High five was done between Emerial and Latoria
- Emerial did admit to allowing Latoria and vice versa to use her Workstation to clock herself in when she was running late; stated the last time it happened was a month ago
- Brittany did get assertive and stated 'We can take it outside and you can find out' towards Emerial
- Emerial didn't respond back to Latoria
- One witness stated that Emerial/Latoria were instigating with Brittany as they've had previous issues and that the hygiene comment was directed towards Brittany

**Alleged and Unconfirmed Accusations:**
- Hygiene and high five were directed towards Brittany
- Emerial and Latoria use each other's login information (username/password) to clock each other in and out of Kronos when they're running late
- Emerial stated Latoria bumped her when she and Latoria were coming back into the building (Latoria was the only witness)
- One witness states that he has heard Emerial talking on the phone with Latoria and stating 'hurry up, I think Jerry knows' regarding Emerial clocking Latoria in when Latoria hadn't arrived to work yet; said it's happened numerous times—even before the team moved to the other side of the building; Reena Mathew asked witness for specific dates so that the business can further look into but hasn't received anything as of yet.

Mathew 320
App.391

**Recommendation:** Based on confirmed accusations, I would recommend termination at this point in time for Brittany Brodie. We have a Manager and more than one witness say her behavior towards Emerial was aggressive and threatening. Although there seems to be some validity to Emerial/Latoria instigating, we are unable to prove it 100% because no one ever heard Brittany's name mentioned. Based on the Kronos findings, we can determine how to move forward with Emerial/Latoria, if there is in fact anything there.

Let me know if you need any additional information.

Thanks,
Reena

## Reena Mathew, PHR

Santander Consumer USA Inc.
HR Business Partner

| | |
|---|---|
| PHONE | 214.292.2772 |
| MOBILE | 214.364.9136 |
| FAX | 214.630.0828 |
| EMAIL | rmathew@santanderconsumerusa.com |
| WEB | www.santanderconsumerusa.com |
| BENEFITS HOTLINE | 214.540.2010 |

Mathew 321

Yessica Perez
8/21/2024

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

REENA S. MATHEW,                    )

     Plaintiff                     )

                            )   Civil Action No.

vs.                                 )   3:23-cv-01494-N

                            )

SANTANDER CONSUMER USA INC.,        )

     Defendant                     )

\* \* \* \* \* \* \* \* \* \* \* \*

ORAL DEPOSITION OF YESSICA PEREZ,

INDIVIDUALLY AND AS THE

CORPORATE REPRESENTATIVE OF

SANTANDER CONSUMER USA INC.

AUGUST 21, 2024

\* \* \* \* \* \* \* \* \* \* \* \*

ORAL DEPOSITION OF YESSICA PEREZ, produced as a
witness at the instance of the Plaintiff and duly sworn,
was taken in the above-styled and numbered cause on
August 21, 2024, from 9:38 a.m. to 3:41 p.m., before
Christy Fagan, CSR, CRR, RMR, TMR, RPR in and for the
State of Texas, reported by a Texas certified machine
shorthand reporter at the offices of Hallett & Perrin,
P.C., 1445 Ross Avenue, Suite 2400, Dallas, Texas,
pursuant to the Federal Rules of Civil Procedure.

Yessica Perez
8/21/2024

```
                                                           Page 2
 1                      APPEARANCES
 2   FOR THE PLAINTIFF:
 3            Mr. Donald E. Uloth
              Donald E. Uloth, P.C.
 4            18208 Preston Road
              Suite D-9 #261
 5            Dallas, Texas 75252
              (214) 989-4396
 6            (866) 462-6179 Fax
              don.uloth@uloth.pro
 7
     FOR THE DEFENDANT:
 8
              Mr. Monte Hurst
 9            Hallett & Perrin, P.C.
              1445 Ross Avenue
10            Suite 2400
              Dallas, Texas 75202
11            (214) 922-4111
              (214) 922-4142 Fax
12            monte.hurst@hallettperrin.com
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Yessica Perez
8/21/2024

                                                      Page 3

 1                    I N D E X

 2                                                      PAGE

 3  APPEARANCES . . . . . . . . . . . . . . . . . . . 2

 4  YESSICA PEREZ

 5  Examination by Mr. Uloth  . . . . . . . . . . . . 11

 6  Signature Page  . . . . . . . . . . . . . . . .176

 7  Court Reporter's Certificate  . . . . . . . . .178

 8                         * * *

 9                  E X H I B I T S

10  NO.   DESCRIPTION                                PAGE

11  1     Plaintiff's Notice of Intent to Take the     5
          Oral Deposition of Santander Consumer USA
12        Inc.

13  2     email dated August 20, 2024                  5

14  3     Santander Consumer USA Inc. Progressive     17
          Discipline Policy 2013 Bates stamped
15        SC010464-470

16  4     emails Bates stamped SC005910-13            45

17  5     emails Bates stamped SC009897-99            52

18  6     email Bates stamped SC001690                66

19  7     email Bates stamped SC001066                67

20  8     Reena Mathew PIP Bates stamped SC005409-12  83

21  9     2015 Mid-Year Review Bates stamped          90
          SC001484-95

22
    10    Final Report for HR - Reena Mathew Bates    93
23        stamped SC000021-30

24  11    Reena Mathew PIP Bates stamped Mathew 049-55 99

25

Yessica Perez
8/21/2024

Page 4

1                        EXHIBITS (cont.)

2    NO.   DESCRIPTION                                      PAGE

3    12    emails Bates stamped SC004058-60                 100

4    13    90 Day Action Plan Bates stamped Mathew          116
           047-48
5

     14    30 Day Review Bates stamped SC006924-32          122
6

     15    emails Bates stamped SC005740-41                 127
7

     16    March 23, 2016 Meeting Recap: Reena Mathew        134
8          (HRBP), Yessica Adriano (HRM), Stephanie
           Elad (HRD) Bates stamped SC002422-27
9

     17    Letter dated January 19, 2016, to Santander       165
10         Consumer USA from Spielberger Law Group
           Bates stamped Mathew 081-83
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 5

1                    P R O C E E D I N G S

2                    (Exhibit Nos. 1 & 2 marked.)

3                    THE REPORTER:  Today is August 21, 2024.

4    The time is approximately 9:38 a.m.  We are located in

5    Dallas, Texas.

6                         This is the deposition of Yessica Perez,

7    individually and as the corporate representative of

8    Santander Consumer USA Inc. in the matter of Reena

9    Mathew v. Santander Consumer USA Inc. and in the United

10   States District Court for the Northern District of

11   Texas, Dallas Division, Civil Action No.

12   3:23-cv-01494-N.

13                        My name is Christy Fagan, certified

14   shorthand reporter, representing Legal Solutions Court

15   Reporting.

16                        Will all counsel please state their

17   appearances and whom they represent and then I will

18   swear in the witness.

19                        MR. ULOTH:  Donald Uloth for Reena S.

20   Mathew, the plaintiff.

21                        MR. HURST:  Monte Hurst for Santander

22   Consumer USA.

23                        (Witness sworn.)

24                        MR. ULOTH:  Ms. Perez, bear with me for

25   one moment.

Yessica Perez
8/21/2024

Page 21

1      Q    The one that was not completed by Ms. Angela

2  Hullum until sometime in August; is that correct?

3      A    I don't know the exact date of when it was

4  completed.  I know that I reviewed the results with her

5  in September.

6      Q    If a Santander employee thought he or she was

7  being discriminated against, what was that employee

8  supposed to do?

9      A    They were supposed to take this to human

10  resources.

11      Q    And, if that happened, what was human

12  resources supposed to do?

13      A    So human resources would receive the

14  grievance, the complaint.  They would assign an

15  investigator, and then at that point the investigator

16  would follow up with -- follow up and have interviews.

17           The practice is you start with the person

18  making the complaint.  Then you interview the accused.

19  You interview any pertaining witnesses.  The next step

20  is to collect all relevant documentation.  It could be

21  emails, it could be reviews, all communication, all

22  documentation related to that case.

23           At that time they decide if they need to

24  have follow-up interviews.  If follow-up interviews are

25  required, then that is conducted.  Then a time line is

Yessica Perez
8/21/2024

Page 22

1  created.  A recommendation for -- a recommendation and a

2  final summary.

3          Once that is done, then that is taken to

4  the senior HR leader.  So, for example, sir, if I

5  conduct an investigation as HR manager, I would go to my

6  director.  If my director did it, they would review that

7  with the vice president and so on.

8          Upon reviewing the interview summaries

9  and recommendations, they discuss it and decide the best

10  course of action based on what they have.

11      Q    Is it important to assign a neutral and

12  unbiased investigator?

13      A    Yes, sir.

14      Q    Why is that important?

15      A    Because, as HR, we play a very important role

16  in being objective.  We need to uphold the standards of

17  being fair.

18      Q    Did you do investigations during your time at

19  Santander?

20      A    Yes, sir.

21      Q    Did you ever disagree with the impressions or

22  conclusions that a manager had about an employee's

23  performance?

24      A    Yes, sir.

25      Q    Bad question, so I'm going to try this again.

Yessica Perez
8/21/2024

Page 178

1           IN THE UNITED STATES DISTRICT COURT

            FOR THE NORTHERN DISTRICT OF TEXAS

2                    DALLAS DIVISION

3    REENA S. MATHEW,              )

         Plaintiff                 )

4                                  )     Civil Action No.

     vs.                           )       3:23-cv-01494-N

5                                  )

     SANTANDER CONSUMER USA INC.,  )

6        Defendant                 )

7               REPORTER'S CERTIFICATE

                ORAL DEPOSITION OF

8            YESSICA PEREZ, INDIVIDUALLY

            AND AS CORPORATE REPRESENTATIVE

9           OF SANTANDER CONSUMER USA INC.

                  AUGUST 21, 2024

10

11       I, Christy Fagan, CSR, CRR, RMR, TMR, RPR,

12   Certified Shorthand Reporter in and for the State of

13   Texas, hereby certify to the following:

14       That the witness, YESSICA PEREZ, was duly sworn and

15   that the transcript of the deposition is a true record

16   of the testimony given by the witness;

17       I further certify that pursuant to FRCP Rule

18   30(f)(1) that the signature of the deponent:

19       __X___ was requested by the deponent or a party

20   before the completion of the deposition and is to be

21   returned within 30 days from date of receipt of the

22   transcript.  If returned, the attached Changes and

23   Signature Pages contain any changes and the reasons

24   therefor;

25       _____ was not requested by the deponent or a party

Yessica Perez
8/21/2024

Page 179

1    before the completion of the deposition.
2         That pursuant to information given to the
3    deposition officer at the time said testimony was taken,
4    the following includes all parties of record and the
5    amount of time used by each party at the time of the
6    deposition:
7    FOR THE PLAINTIFF:
8              Mr. Donald E. Uloth (4 hours 16 minutes)
               Donald E. Uloth, P.C.
9              18208 Preston Road
               Suite D-9 #261
10             Dallas, Texas 75252
               (214) 989-4396
11             (866) 462-6179 Fax
               don.uloth@uloth.pro
12
     FOR THE DEFENDANT:
13
               Mr. Monte Hurst (0 hours 0 minutes)
14             Hallett & Perrin, P.C.
               1445 Ross Avenue
15             Suite 2400
               Dallas, Texas 75202
16             (214) 922-4111
               (214) 922-4142 Fax
17             monte.hurst@hallettperrin.com
18
19        That $_____ is the deposition officer's charges
20   to the Plaintiff for preparing the original deposition
21   and any copies of exhibits.
22        I further certify that I am neither counsel for,
23   related to, nor employed by any of the parties in the
24   action in which this proceeding was taken, and further
25   that I am not financially or otherwise interested in the

Yessica Perez
8/21/2024

Page 180

1    outcome of this action.

2        Certified to by me on this 6th day of September,

3    2024.

4

5

6

7

8    _____

Christy Fagan, CSR, CRR, RMR, TMR, RPR

9    Texas CSR 5459

Expiration:  10/31/25

10   Legal Solutions Court Reporting

Firm Registration No. 424

11   2626 Cole Avenue

Suite 300

12   Dallas, Texas 75204

(866) 830-1717

13   www.LegalSolutionsCourtReporting.com

14

15

16

17

18

19

20

21

22

23

24

25

SABRINA BOYD

```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF TEXAS
                        DALLAS DIVISION

REENA S. MATHEW,              )
                              )
      Plaintiff,              )
                              )
VS.                           ) Civil Action No.
                              ) 3:23-cv-01494-N
                              )
SANTANDER CONSUMER USA,       )
INC.,                         )
                              )
      Defendant.              )


  ****************************************************
                   ORAL DEPOSITION OF
                     SABRINA BOYD
                   AUGUST 29, 2024
  ****************************************************
```

ORAL DEPOSITION OF SABRINA BOYD, produced as a witness at the instance of the Plaintiff, and duly sworn, was taken in the above-styled and numbered cause on the 29th of August, 2024, from 1:52 p.m. to 2:26 p.m., before Laurie Purdy, CSR, in and for the State of Texas, reported by machine shorthand, at the offices of Hallett & Perrin, PC, 1445 Ross Avenue, Suite 2400, in the City of Dallas, County of Dallas, State of Texas, pursuant to the Federal Rules of Civil Procedure, and the provisions stated on the record or attached hereto.

SABRINA BOYD

```
1                    A P P E A R A N C E S

2    FOR THE PLAINTIFF:
          MR. DONALD E. ULOTH
3         Law Office of Donald E. Uloth
          18208 Preston Road, Suite D-9 #261
4         Dallas, Texas 75252
          T 214-989-4396
5         don.uloth@uloth.pro

6
     FOR THE DEFENDANT:
7         MR. MONTE K. HURST
          Hallett & Perrin, PC
8         1445 Ross Avenue, Suite 2400
          Dallas, Texas 75202
9         T 214-922-4111
          monte.hurst@hallettperrin.com
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

SABRINA BOYD

```
 1                    I N D E X

 2                                              PAGE

 3   Appearances  . . . . . . . . . . . . . . .   2
     Stipulations . . . . . . . . . . . . . . .   4
 4

 5        SABRINA BOYD

 6            Examination by Mr. Uloth . . . . . .   4

 7            Examination by Mr. Hurst . . . . . .  22

 8

 9   Signature and Changes  . . . . . . . . . .  25
     Reporter's Certificate . . . . . . . . . .  27
10

11

12                    EXHIBITS

13   NO.                DESCRIPTION              PAGE

14   1    Litigation Hold Directive,              6
          Bates SC010472 to SC010473

15

16

17                 REPORTER'S NOTE
          Quotation marks are used for clarity and do not
18        necessarily reflect a direct quote.

19

20

21

22

23

24

25
```

Legal Solutions Court Reporting

SABRINA BOYD

```
 1                 P R O C E E D I N G S
 2                 MR. ULOTH:  Under the Federal Rules.
 3  No stipulations or agreements needed.
 4                      SABRINA BOYD,
 5  having been first duly sworn, testified as follows:
 6                      EXAMINATION
 7  BY MR. ULOTH:
 8       Q.   Hello, Ms. Boyd.  I'm Don Uloth.  Nice to
 9  meet you.
10       A.   Nice to meet you.
11       Q.   I don't think this will be very long.
12       A.   Okay.
13       Q.   So it's my understanding you worked at
14  Santander Consumer USA, Inc., at the same time as the
15  plaintiff in this case, Reena Mathew, right?
16       A.   Sure.  Correct.
17       Q.   And for today, you've been selected to talk
18  about two topics that I wanted to ask the company
19  about.  Do you understand that?
20       A.   I do.
21       Q.   And one of the topics, defendant's efforts
22  to preserve relevant evidence from January 29, 2016,
23  to the present.
24       A.   Okay.
25       Q.   And have you studied up so that you're
```

SABRINA BOYD

1    A.   It's my understanding that it was.

2    Q.   Where is that Outlook file today?

3    A.   I don't know.  It's my understanding that

4  it was provided to -- there were some documents that

5  you guys requested, and those documentations was

6  provided to you-all.

7    Q.   But you're not sure?

8    A.   Correct.

9    Q.   In the 2015, 2016 time frame, how were

10  company policies kept in the usual course of

11  Santander's business?

12    A.   We have a policy -- I guess we call it an

13  intranet where internal policies are kept.

14    Q.   Does Santander still have all of the

15  policies that were in effect back in 2015?

16    A.   I don't know.

17    Q.   Do you know why they would not?

18         MR. HURST:  Objection, form.

19    A.   I don't know.

20    Q.   (By Mr. Uloth)  So it's possible that

21  somebody could have deleted policies that were in

22  effect back in 2015, correct?

23         MR. HURST:  Objection, form.

24    A.   I don't know.

25    Q.   (By Mr. Uloth)  Are you familiar with what

SABRINA BOYD

1  the company called back in 2015 and 2016 disciplinary

2  actions?

3      A.   I am.

4      Q.   What did that term mean to you in that time

5  frame?

6      A.   Disciplinary action is a corrective action

7  that's provided to an employee for doing something --

8  for doing something incorrectly or something that

9  they've been coached on previously.  It's just

10 basically corrective action to resolve whatever

11 action they took that wasn't under company policy or

12 procedure.

13     Q.   When Santander did that and provided a

14 disciplinary action to an employee, was there always

15 a document created?

16     A.   Yes.

17     Q.   Okay.  Those disciplinary action documents,

18 how were those kept in the usual course of

19 Santander's business back in 2015?

20     A.   They were scanned into Optica.

21     Q.   Do you know if all of the DAs from 2015 are

22 still preserved?

23     A.   I don't know.

24     Q.   Do you know if any of the DAs that Reena

25 Mathew worked on in 2015 have been preserved?

SABRINA BOYD

```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF TEXAS
 2                        DALLAS DIVISION

 3   REENA S. MATHEW,            )
                                 )
 4        Plaintiff,             )
                                 )
 5   VS.                         )  Civil Action No.
                                 )  3:23-cv-01494-N
 6                               )
     SANTANDER CONSUMER USA,     )
 7   INC.,                       )
                                 )
 8        Defendant.             )

 9                   REPORTER'S CERTIFICATION

10                    ORAL DEPOSITION OF

11                       SABRINA BOYD

12                      AUGUST 29, 2024

13

14

15        I, Laurie Purdy, CSR, in and for the State of

16   Texas, hereby certify to the following:

17        That the witness, SABRINA BOYD, was duly sworn

18   by the officer and that the transcript of the oral

19   deposition is a true record of the testimony given by

20   the witness;

21        That the deposition transcript was submitted on

22   _____, 2024, to Monte K. Hurst, Attorney

23   for the Witness, for the review and signature by the

24   witness, to be returned to the reporter within 30

25   days;
```

Legal Solutions Court Reporting

SABRINA BOYD

1      That the amount of time used by each party at

2  the deposition is as follows:

3           Mr. Uloth:  25 minutes

4           Mr. Hurst:  2 minutes

5      That pursuant to information given to the

6  deposition officer at the time said testimony was

7  taken, the following includes counsel for all parties

8  of record:

9

FOR THE PLAINTIFF:
10      MR. DONALD E. ULOTH
        Law Office of Donald E. Uloth
11      18208 Preston Road, Suite D-9 #261
        Dallas, Texas 75252
12      T 214-989-4396
        don.uloth@uloth.pro
13

14  FOR THE DEFENDANT:
        MR. MONTE K. HURST
15      Hallett & Perrin, PC
        1445 Ross Avenue, Suite 2400
16      Dallas, Texas 75202
        T 214-922-4111
17      monte.hurst@hallettperrin.com

18      That $_____ is the deposition officer's

19  charges to the Plaintiff for preparing the original

20  deposition transcript and any copies of exhibits;

21      I further certify that I am neither counsel for,

22  related to, nor employed by any of the parties or

23  attorneys in the action in which proceeding was

24  taken, and further that I am not financially or

25  otherwise interested in the outcome of the action.

SABRINA BOYD

```
 1        Certified to by me this 29th day of August,
 2  2024.
 3
 4
 5
 6        _____
 7        LAURIE PURDY, CSR 5933
         Legal Solutions Court Reporting & Video
 8        2626 Cole Avenue, Suite 300
         Dallas, Texas 75204
 9        (866) 830-1717
         www.LegalSolutionsCourtReporting.com
10        Firm ID Number:  424
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

