IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REENA S. MATHEW, | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 3:23-cv-01494-N |
| | § | |
| SANTANDER CONSUMER USA INC., | § | |
| Defendant | § | |

**PLAINTIFF'S MOTION TO COMPEL**

Donald E. Uloth
Law Office of Donald E. Uloth
Texas Bar No. 20374200
18208 Preston Rd. Suite D-9 # 261
Dallas, Texas 75252
Phone: (214) 989-4396
Email: don.uloth@uloth.pro
Counsel for Plaintiff

**Table of Contents**

I.  Summary of the Motion ……………………………………………….. 1

II. Background Facts …………………………………………………………1

    A.  Plaintiff's employment and her termination ………………………….. 1

    B.  Plaintiff sought performance reviews in discovery …………………………... 2

    C.  Plaintiff sought information by noticing a 30(b)(6) deposition ……………… 4

    D.  Perez was unprepared to provide performance review scores
        as required by topic 5 ……………………………………………………… 6

    E.  Boyd knew nothing about topic 7, efforts to preserve relevant evidence …….. 7

III. Argument ………………………………………………………………… 9

    A.  The Court deserves answers to determine if it needs to act …………………... 9

    B.  Rule 30(b)(6) procedures ………………………………………………… 10

    C.  Santander's failure to comply with Rule 30(b)(6) resulted in the equivalent
        of two non-appearances ……………………………………………….   11

    D.  The relief requested ……………………………………………………..   12

## Table of Authorities

<u>Cases</u>                                                                                        <u>Page(s)</u>

Brazos River Auth. v. GE Ionics, Inc.,
    469 F.3d 416 (5th Cir. 2006) …………………………………………… 11

Robinson v. Nexion Health at Terrell, Inc.
    312 F.R.D. 438 (N.D. Tex. 2014) …………………………………………. 11

Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.,
    No. 3:06-CV-0271-B, 2007 U.S. Dist. LEXIS 91947 (N.D. Tex. 2007) …..… 11

United States v. Taylor,
    166 F.R.D. 356 (M.D.N.C. 1996) ……………………………………….. 11

<u>Rules</u>

Fed. R. Civ. P. 30(b)(6) …………………………………………………... 10 - 13

Fed. R. Civ. P. 37 ……………………………………………………….. 13

Plaintiff Reena S. Mathew requests an order compelling Santander to provide information it should have disclosed in a 30(b)(6) deposition, and an appropriate sanction for the company's failure to present witnesses to testify on two of the topics.

## I.  Summary of the Motion

In an employment case such as this one, where Defendant claims it terminated an employee for poor performance, the performance reviews of the plaintiff and her comparators are relevant and discoverable.  Defendant failed to produce many (if not most) of these performance reviews, even after being ordered to do so by this Court.  Defendant appears to claim it does not have these reviews.

Plaintiff therefore scheduled a 30(b)(6) deposition asking for: (a) a witness to say what each person's review score was, and (b) a witness to explain what efforts Defendant took to preserve relevant evidence, such as performance reviews.  Defendant failed to prepare the witnesses on these topics, and they were unable to provide answers.  Plaintiff therefore moves for an order compelling this discovery, and awarding sanctions for Defendant's violation of its basic discovery obligations.

## Background Facts

### A.    Plaintiff's employment and her termination

Plaintiff Reena Mathew worked for Santander as a Human Resources Business Partner ("HRBP") for over five years.  After telling her supervisor she was pregnant, Santander placed Mathew on back-to-back performance improvement plans.  Mathew complained this was pregnancy discrimination.

1

On January 19, 2016, Mathew's attorney sent a letter to Santander's outside counsel, Monte Hurst (Defendant's lead counsel in this case). The letter accused Santander of pregnancy discrimination and formally notified Santander of its legal duty to preserve all relevant documents, ESI, and information. App. 3-5.

On February 16, 2016, an in-house attorney issued a Litigation Hold Directive to one employee: Stephen Shaffer, Vice President Human Resources Business Partnership. The Directive mentioned Mathew's claim of pregnancy discrimination, and it told him to preserve all documents potentially related to her claims, such as:

- Ms. Mathew's employment with SCUSA, including her hiring, training, pay, and benefits;
- Any document or correspondence authored by or sent to Ms. Mathew;
- SCUSA's decision to place Ms. Mathew on a performance improvement plan; and
- Ms. Mathew's job performance, including her performance reviews.

App. 6-7.

Santander terminated Mathew on April 19, 2016. She filed a Charge of Discrimination, and her case languished with the EEOC for years before the agency issued a Determination finding that Santander discriminated against Mathew because of her pregnancy. Still more time passed before Mathew received a right to sue, and she filed this lawsuit on July 6, 2023.

**B.     Plaintiff sought performance reviews in discovery**

In an interrogatory answer, Santander said this about Mathew's performance and the reason for her termination: Mathew "consistently failed to meet expectations in her job performance," and she was eventually terminated "due to her habitual poor performance." App. 53 (answer to Interrogatory No 2).

Plaintiff therefore sought discovery about her own performance, and the performance of a few other HRBPs – her comparators. Plaintiff limited her comparator search as to both scope

and time.  She sought information concerning HRBPs who (a) worked at one of four locations, or (b) reported up to one or more of the persons who decided to terminate Plaintiff's employment.  App. 9, 84.  As for time, she limited her discovery requests to the three-year period preceding Plaintiff's termination on April 19, 2016.  App. 10, 84.

Using these criteria, Plaintiff's served an interrogatory asking for the names of the HRBPs who fit the criteria described above, plus their dates of employment.  App. 84.  In its answer to this interrogatory, Santander identified 22 HRBPs (Plaintiff, and 21 others).  App. 88-91.

Plaintiff also served a request for production asking Santander to produce the performance reviews for these HRBPs for the three years preceding her termination.  App. 10.  Defendant initially objected, but later withdrew the objection and agreed to produce the reviews.  App. 27.  All 2014 and 2015 performance reviews should have been produced, but Defendant produced only eight reviews:

- Zero 2014 Mid-Year Reviews
- Two 2014 Annual Performance Reviews (Plaintiff's and Hortensia Perez);
- Three 2015 Mid-Year Reviews (Whitney Andres, Agustin Perez, and Jerry Holt); and
- Three 2015 Annual Performance Reviews (Whitney Andres, Hortensia Perez, and Tina Mohan).[1]

Turnover explains why there would not be 22 reviews for each review period.  However, based on the dates of employment listed in the interrogatory answer, there are possibly as many as 25 reviews that were not produced.  In the following chart, "p" indicates reviews that were produced, "n/a" indicates the HRBP was not working at this review time, and "x" indicates the person was employed at review time, but no review has been produced:

---

[1] If there are any more performance reviews than this, the undersigned counsel has so far not located them within Defendant's disorganized and repetitive/duplicative document production.

|  | 2014 | | 2015 | |
|---|---|---|---|---|
|  | Mid-Year | Annual | Mid-Year | Annual |
| Plaintiff | x | p | x | x |
| Whitney Andres | x | x | p | p |
| Bo Bottger | n/a | n/a | n/a | x |
| Julie Dolan | n/a | x | n/a | n/a |
| Amanda Glazer | n/a | n/a | n/a | x |
| Susan Haynes | n/a | n/a | n/a | x |
| Jerry Holt | n/a | n/a | p | n/a |
| Kristen Lagunes | n/a | n/a | x | x |
| Jonathan Morse | x | x | x | x |
| Tina Mohan | x | x | x | p |
| Taylor Palace | n/a | n/a | n/a | x |
| Agustin Pastrana | x | x | p | x |
| Hortensia Perez | x | p | x | p |
| Russell Tookes | n/a | n/a | n/a | x |
| Ann Vo | n/a | n/a | x | n/a |

Plaintiff sought explanations from Defendant about the missing performance reviews, and none were provided.  Plaintiff therefore filed a motion to compel.  Doc. 14.  This Court granted the motion and ordered Defendant to produce these missing reviews no later than July 5, 2024. App. 92-93.

Defendant did not produce any additional performance reviews, and in an amended response to Request for Production No. 12, dated July 5, 2024, Santander said: "Santander has produced all responsive documents in its possession, custody, or control."  App. 63.  This appears to be Santander's way of asserting that it does not have any of the missing reviews, but Santander has never explained why, and we do not know which reviews once existed but are no longer available.

**C.     Plaintiff sought information by noticing a 30(b)(6) deposition**

Plaintiff therefore pursued another option.  Even if the performance reviews were no longer available, it was possible the company retained the annual review scores somewhere.  The

4

mid-year reviews did not include a numerical score or other rating (such as meets/does not meet expectations) but the annual reviews included both a numerical score on a scale of one to five, and a rating of meets, fails to meet, or exceeds expectations.  App. 121-123 (Perez deposition, pages 158-160).

Therefore, on July 23, 2024, Plaintiff emailed a proposed list of 30(b)(6) deposition topics to counsel for Defendant.  App. 94-96.  Topic 5 asked for a witness to testify about each HRBP's performance review score for 2013, 2014, and 2015, and to give the Bates numbers of the reviews.  App. 95.  Topic 7 asked for a witness to testify about "Defendant's efforts to preserve relevant evidence, from 1/29/16 to the present."  App. 95.

On July 31, 2024, counsel for Defendant replied to the proposed topics, stating: "We will be objecting to your asking a corporate representative to recite to you specific bates numbers for documents that support their points. You are more than welcome to present relevant documents to them during the deposition. With exception to that point, we are okay with your proposed deposition topics."  App. 105.  Later that day, Plaintiff served a 30(b)(6) deposition notice to Defendant.  App. 109-112 (the deposition notice).  The topics listed were the same as the proposed topics sent to counsel for the Defendant on July 23, 2024.  App. 109-110.  The deposition on all topics was scheduled for August 21, 2024.  App. 109.

On August 20, 2024, counsel for Defendant sent an email designating Yessica Adriano (who was now Known as Yessica Perez) as its representative on topic 5, and its current employee Sabrina Boyd as its representative on topic 7.  App. 103.

**D.      Perez was unprepared to provide performance review scores as required by topic 5**

On August 21, 2024, Santander presented Perez first.  Perez is a former employee who has not worked for Santander since 2017.  She was unable to provide any information responsive to topic 5:

> Q:    All right. So let me just make sure I've touched each part of this. For the HRBPs that are described in topic 5, isn't it correct that you're not able to tell me what any one person's annual performance review score was in 2013?
> A:    That is correct.
> Q:    For the HRBPs listed in topic 5, you're not able to tell me what any HRBP scored on their annual 2014 review, correct?
> A:    Correct.
> Q:    And for 2015, same question, isn't it true that you're not able to tell me the HRBP scores for all those folks in 2015?
> A:    The numerical scores for all those folks, no.

App. 123-124 (Perez deposition page 160, line 24 to page 161, line 11).

To prepare for her deposition, Perez said she "reviewed the performance reviews that were given in discovery, so I can give you the best assessment I can."  App. 118.  However, because so many performance reviews were not produced, this was not adequate to prepare her to provide each HRBP's review score for the three years in question.  For example, Perez testified that Whitney Andres and Tina Mohan each received a 2014 annual performance review. These reviews were not produced in discovery.  Perez said she could not remember what their review scores were, but she did not claim that Santander does not have this information.  App. 120, 123.

Perez testified that Santander's HRIS Department (Human Resources Information Systems) used computer systems for performance reviews – the company had one system, and then transitioned to using WorkDay.  App. 119-120.  From this testimony, one can infer that there is, or once was, electronically-stored information (ESI) that includes the performance reviews in

question, and possibly other data compilations that could include the annual review scores.

Perez did not review any systems or ESI to prepare for her deposition.

It is possible that Santander no longer has this information, but the company's spokesperson on this topic did not say this. To determine if the information was preserved or has been lost, Plaintiff wanted to depose a representative concerning the company's efforts to preserve evidence. Santander presented Boyd to testify on this issue, topic 7 in the deposition notice.

**E.     Boyd knew nothing about topic 7, efforts to preserve relevant evidence**

Boyd was confused about who issued the litigation hold, and who documents were given to for preservation:

> Q.   Okay. Tell me what the company has done to preserve relevant evidence.
> A.   Well, it's my understanding that you-all sent out litigation holds to, you know, provide specific documentation in reference to this case.
> Q.   Something that the plaintiff sent?
> A.   No, you-all, the -- your company sent litigation holds to --
> Q.   I'm not with a company, ma'am. I'm the attorney for the plaintiff.
> A.   Right. Your attorney -- your -- your law firm. Right? You work for a law firm? Are you --
> Q.   No. I'm a solo attorney.
> A.   Okay. **Well, whomever**. Outside counsel requested a litigation hold for materials such as -- any materials that they may have that could help out in this case.
> Q.   Okay. And so what action was taken by the Santander employees to make that happen?
> A.   Upon request, Santander provided all documentation that they were able to produce and find in our systems, and they provided those documentations **to the plaintiff's attorney**.
> Q.   And when did that occur?
> A.   I don't know.

App. 132-134 (emphasis added). This conflicts with the Litigation Hold Directive, which said:

"We are not presently disclosing the electronic or paper data to anyone other than our retained

7

outside counsel." App. 7. Furthermore, no documents were provided to Mathew's attorneys in 2016. Mathew first received documents from Santander on ___, 2023.

Boyd did not know if anyone other than Stephen Shaffer received the Litigation Hold Directive. App. 134. It is therefore possible no one told the HRIS Department or any IT employees to preserve evidence. Boyd did not know if Shaffer collected and preserved any performance reviews. App. 134.

Next, Boyd was asked questions about the specific documents and categories of things the Litigation Hold Directive told Shaffer to preserve (listed in the four bullet-points near the bottom of the first page, App. 6), but Boyd did not know anything about any efforts taken to preserve these documents:

> Q.    What did Mr. Shaffer do to preserve Ms. Mathew's employment-related records related to her hiring, training, pay, and benefits?
> A.    I do not know.
>
> Q.    Do you know if another Santander employee took efforts to preserve documents related to Reena Mathew's hiring, training, pay, and benefits?
> A.    I do not know.
>
> Q.    Did a Santander employee do anything to preserve documents or correspondence authored by or sent to Ms. Mathew?
> A.    Can you repeat the question?
> Q.    Did any Santander employee do anything to preserve any document or correspondence authored by or sent to Ms. Mathew?
> A.    I don't know.
>
> Q.    Did a Santander employee do anything to preserve documents related to Santander's decision to place Ms. Mathew on a performance improvement plan?
> A.    I do not know.
>
> Q.    Did any Santander employee do anything to preserve documents related to Ms. Mathew's job performance?
> A.    I do not know.

8

> Q.      Did any Santander employee do anything to preserve Ms. Mathew's performance reviews?
>
> A.      I do not know.
>
> Q.      In February of 2016, do you know if the performance reviews were solely on paper, or do you know if there was some electronic version of those as well?
>
> A.      In 2016, I do not recall.

App. 135-136 (Boyd deposition, page 8 line 2 to page 9 line 8).

Boyd testified that she did the following to prepare for her testimony: "Just reviewed in my head the process that we take for document preservation." App. 137.  When asked to describe this process, she said "we hold any of those documents that we have that could be relevant to the information requested" until the litigation hold is released, and then "we are able to then, you know, do away, delete emails or whatever we have." App. 138.  Boyd did not know whether the litigation hold memo marked as Exhibit 1 to her deposition has been released, and documents (such as the performance reviews) deleted.  App. 138-139.

## Argument

### A.      The Court deserves answers to determine if it needs to act

Defendant's 30(b)(6) witnesses should have been able to say whether Santander did performance reviews on the other HRBPs in 2013, 2014, and 2015, and if so, to state what their review scores were.  Perez only reviewed the documents that were produced, so she was not prepared to say whether the missing reviews were done, and whether the company still had the review scores.  Boyd was not properly prepared to say whether the company did anything to preserve performance reviews, or why reviews that once existed in WorkDay (or the predecessor system) are no longer available.

9

The Court needs this information to determine if Santander should be barred from offering information at trial that it should have disclosed in discovery, and to determine if a spoliation instruction is warranted.   By failing to produce witnesses prepared to answer these questions, Santander failed to meet its obligations under Fed. R. Civ. P. 30(b)(6).

**B.      Rule 30(b)(6) procedures**

Rule 30(b)(6) describes the procedure for taking the deposition of a corporation. The party seeking to depose the corporation must first describe, with reasonable particularity, the matters on which testimony is requested. The parties must then confer about the matters for examination, and then the corporation "must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf." Fed. R. Civ. P. 30(b)(6).

Plaintiff complied with this rule by sending a list of proposed topics, and counsel for Defendant responded that there would be one objection, but the topics were otherwise all okay. App. 105.  Plaintiff then served the deposition notice on July 31, 2024.  App. 109-11.

The next step in this process required Defendant to present one or more witnesses to "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6).  A witness being deposed in his or her personal capacity is only required to testify about matters known to them, and the inability to remember some facts is inevitable.  However, a 30(b)(6) witness speaking for a corporation must be prepared to testify as to all information readily available to the corporation.

To meet this obligation, the corporation has an affirmative duty to prepare the witness. "The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved.  The

10

deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (internal quotation marks and footnotes omitted).  The organization must prepare the designated witness to "answer fully, completely, unevasively, the questions posed . . . as to the relevant subject matters." *Id.*

A witness who reviewed some documents, but during the deposition cannot remember what they said, is not prepared as required by Rule 30(b)(6).  When the designated witness is not able to testify about relevant facts within the scope of the topic on which he or she is designated, "the appearance is essentially no appearance at all, and sanctions may be imposed." *Robinson v. Nexion Health at Terrell, Inc.,* 312 F.R.D. 438, 441 (N.D. Tex. 2014).

A company can claim that it no longer has information.  *See, e.g.*, *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996) ("the corporation may plead lack of memory"). However, that has consequences.  If a corporation claims to have no knowledge on a particular topic, the corporation must present a witness who will say so under oath.  This precludes the corporation from presenting surprise evidence on the matter at trial. *Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*, No. 3: 06-CV-0271-B, 2007 U.S. Dist. LEXIS 91947, at *27-29 (N.D. Tex. 2007).

**C.      Santander's failure to comply with Rule 30(b)(6) resulted in the equivalent of two non-appearances**

If Santander is unable to say what the review scores were, it should be candid and just say so.  After the unproductive deposition of Yessica Perez, counsel for Plaintiff emailed counsel for Defendant asking if Santander even knew what the review scores were for 2013, 2014, and 2015. App. 98.  Counsel for Defendant did not respond, so counsel for Plaintiff asked again eight day later.  App. 97.  Once again, counsel for Defendant did not respond.

Instead of being candid, Santander has been evasive and presented a former employee who thinks she saw all of these performance reviews, and then during her deposition could not remember the scores. She could therefore not fulfill the corporation's duty to answer fully, completely, and unevasively. Perez's appearance on topic 5 was essentially a failure to produce a witness on this topic.

As for Boyd, other than knowing a Litigation Hold Directive sent to one lone employee, Boyd could not state a single specific step taken by any company employee to preserve evidence. She did not know what, if anything, the one employee who received the Directive did to comply. She did not know if the litigation hold was released at some point and all documents destroyed. Boyd's testimony was essentially a non-appearance on topic 7.

**D.    The relief requested**

Plaintiff therefore requests the following relief, or such other relief as the Court deems appropriate.

First, the Court should order Santander to produce one or more 30(b)(6) witnesses who can say whether Santander did any of the missing performance reviews (those that correlate to each "x" in the chart on page 4 of this motion) and for each performance review that was done, what each person's score was. The Court should order that Santander's representative must state whether the company has this information, and if it does not, that the representative state on the record that the company does not have this information.

Second, the Court should order Santander to produce one or more 30(b)(6) witnesses who can provide information about the missing performance reviews that once existed: what (if anything) was done to collect and preserve them, were the reviews or any part thereof (such as

12

the review scores) once in the form of ESI, and why are these reviews and this ESI are no longer available, naming names and saying who is responsible.

Third, Plaintiff requests an appropriate sanction. Rule 37 of the Federal Rules of Civil Procedure authorizes a party to move for an order compelling discovery, and specifically authorizes motions to compel where a corporation "fails to make a designation under Rule 30(b)(6)." Fed. R. Civ. P. 37(a)(3)(B)(ii). The appearances of Perez and Boyd on topics 5 and 7 were the equivalent of no appearances at all, and sanctions are warranted. *Robinson,* 312 F.R.D. 438 at 441.

Rule 37(a)(5)(A) provides that if the motion to compel is granted, the court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

Santander cannot show that any of the three exceptions to this mandatory requirement apply in this case. Plaintiff has made good faith efforts to obtain the discovery without court action, Santander's nondisclosure is not substantially justified, and there are no circumstances making an award of expenses unjust. See Fed. R. Civ. P. 37(a)(5)(A), subsections (i) through (iii).

<div style="margin-left:40%">

Respectfully submitted,


/s/ Donald E. Uloth
Donald E. Uloth
Texas Bar No. 20374200
Law Office of Donald E. Uloth
18208 Preston Road, Suite D-9 # 261
Dallas, Texas 75252
Phone: (214) 989-0260
Email: don.uloth@uloth.pro
Counsel for Plaintiff

</div>

CERTIFICATE OF SERVICE

       I certify that on September 27, 2024, I am filing this motion electronically using the Court's ECF filing system, which will email a file-marked copy of this motion to all counsel of record.

<div style="text-align:right">

/s/ Donald E. Uloth\
Donald E. Uloth

</div>

14