IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

REENA S. MATHEW,                    §
                                    §
        Plaintiff,                  §
                                    §
v.                                  §        Civil Action No. 3:23-CV-01494-N
                                    §
SANTANDER CONSUMER USA, INC.,       §
                                    §
        Defendant.                  §

**MEMORANDUM OPINION AND ORDER**

This Order addresses Defendant Santander Consumer USA, Inc.'s ("Santander")
motion for summary judgment [23] and motion to strike portions of Plaintiff Reena
Mathew's declaration [45].  As an initial matter, the Court grants in part and denies in part
the motion to strike.  Then, because Mathew raised a triable issue of pretext, the Court
denies the motion for summary judgment on the pregnancy discrimination claim.
However, because Mathew did not establish a prima facie case of retaliation, the Court
grants the motion for summary judgment on that claim.

**I. ORIGINS OF THE DISPUTE**

This is an employment discrimination case arising from Mathew's employment at
Santander.  Mathew brings pregnancy discrimination and retaliation claims under Title VII
of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  Pl.'s Compl. ¶¶ 44–55 [1].
Mathew was a Human Resources Business Partner ("HRBP") at Santander's Lewisville
location from February 2011 to April 2016.  Pl.'s App. 002 [80].  As an HRBP, Mathew
was responsible for assisting with human resources functions, including leading employee

relations; identifying human resources needs; ensuring compliance with company policies and procedures; and handling disciplinary actions, investigations into employee conduct, and terminations. *Id.* at 064–65.

Angelina Hullum was Mathew's direct supervisor until September 2015. *Id.* at 002–03. In her 2014 performance review, Hullum marked Mathew as consistently meeting expectations and wrote that Mathew "is an excellent mentor" and "works well with her business partners and is supportive to their needs." *Id.* at 052, 062. Hullum also commented that Mathew "has a strong sense of urgency and provides [clients] with timely feedback." *Id.* at 057. Similarly, in Mathew's 2015 mid-year review, Hullum identified several positive aspects of Mathew's work, such as noting that Mathew "does a great job with her day to day duties," "does an excellent job of building rapport with all levels of employees," "maintains consitancy [sic] when applying policy/procedure," and "completes her compliance training as scheduled." *Id.* at 067–71. Hullum also noted room for improvement, including that Mathew could "continue her growth . . . by focusing on helping new managers develop and by working on completing her goals/projects." *Id.* at 071. Mathew's workload increased in July 2015 when Hullum assigned her to work at another location once a week while continuing to oversee the Lewisville location. *Id.* at 079–80.

In September 2015, Santander realigned its structure, and Yessica Adriano became Mathew's direct supervisor. *Id.* at 081. Adriano and Mathew scheduled several one-on-one meetings in September and October 2015. Def.'s App. 152–57 [25]. The parties dispute what they discussed at these meetings. Adriano states that she planned these

MEMORANDUM OPINION AND ORDER – PAGE 2

meetings so that she could help Mathew in reaching her goals and address performance issues identified in her mid-year performance review. *Id.* at 004. Mathew perceived these meetings differently, stating that the meetings were intended to get Adriano acquainted and to discuss work issues. Pl.'s App. 003. Mathew states that they did not discuss how Adriano could help Mathew improve her work performance. *Id.* Mathew further states that between September and December, she and Adriano never met to discuss her performance, and Adriano never coached her or said there were areas in which she was performing poorly. *Id.* Further, Mathew did not receive any formal disciplinary actions, which are supposed to be written, reviewed, and entered into tracking software. *Id.* at 408 (Sabrina Boyd Deposition: "When Santander . . . provided a disciplinary action to an employee, was there always a document created?" "Yes.").

Between September and November, Mathew made several last-minute requests to take off parts of workdays. Def.'s App. 171 (September 17), 172–73 (October 30), 176 (November 16), 264 (November 24). Adriano states that Mathew also made several comments about needing help with her workload. *Id.* at 004 (September 28), 005 (November 20), 006 (November 24). Further, in late October, another employee told Adriano that he had several pending disciplinary actions that he needed handled as soon as possible, and when Adriano asked Mathew about them, Mathew said she would complete them by the afternoon of the next day. *Id.* at 004, 174. Then, on October 30, Mathew told Adriano that she was pregnant. Pl.'s App. 005. In early November, Stephanie Elad — Director of Human Resources and direct supervisor of Adriano — overheard Mathew and Sabrina Boyd, who at the time reported to Mathew, discussing an employee's bereavement

MEMORANDUM OPINION AND ORDER – PAGE 3

request.  Def.'s App. 021, 175.  Elad thought that they spent an excessive amount of time on the request and could have spent their time on more productive matters.  *Id.* at 175.

Then, on November 24, an employee who had previously made complaints about her boss submitted her resignation notice to Santander.  *Id.* at 180–81.  Mathew had conducted the prior investigation into the employee's earlier complaints.  *Id.* at 199–201. Michelle Whatley, Elad's supervisor, asked Elad to look into the validity of the issues the employee raised in the resignation notice.  *Id.* at 184.  Elad responded to Whatley, "We are having significant issues with [Mathew]. . . . Long story short — I think it's time to consider severance. She is overwhelmed with the workload (which isn't higher than the rest of my team) and making a lot of mistakes."  *Id.* at 184.  A few weeks later, upon further investigation of the employee's earlier complaints, Adriano determined that Mathew had not fully reviewed the emails highlighting the employee's concerns and did not thoroughly investigate the employee's claims.  *Id.* at 199–201.

Also on November 24, Elad emailed Pamela Blackburn, another of Elad's supervisors, to suggest terminating Mathew and offering her a severance package.  Pl.'s App. 097.  She also noted, "[a] few weeks ago, [Mathew] shared with [Adriano] that she's pregnant, which may make this a bit more complex."  *Id.*  Later that day, Adriano emailed Elad that she would "work on a formalized timeline of events and discussion that [she] ha[s] had with [Mathew] since September" and would "ask [Hullum] for documentation prior to that."  *Id.* at 098.

On December 1, Santander placed Mathew on a 30-day performance improvement plan ("PIP").  Pl.'s App. 100–03.  Adriano thought that because of "Mathew's poor

performance in a number of categories, a PIP was the appropriate mechanism by which to manage her performance, as a written warning on her poor performance on a specific category would not capture the bigger picture of how she needed to improve her performance."    Def.'s App. 006.    The PIP included information on the asserted performance concerns with the comment: "See Addendum for specifics."  Pl.'s App. 101. However, the PIP did not include an addendum.

Mathew believed that going "from no documented coaching or warning to a PIP was unprecedented for any employee at Santander based on [her] experience."  Pl.'s App. 008; *see also* Pl.'s App. 106 (email from another human-resources employee: "I have never worked on a PIP without the proper documentation . . . It's just like any other disciplinary action you need documentation to validate the PIP"); *id.* at 127 (Stephen Shaffer: "a PIP document was a 'last straw' reaction").  Based on Adriano's notes, Mathew questioned on December 1 if Santander placed her on a PIP because she was pregnant.  Def.'s App. 167. Mathew emailed Elad the next day, stating that she was "completely shocked and upset" with being placed on a PIP as she had "gotten along great with peers/[her] managers, ha[d] received positive reviews and ha[d] never had any type of formal coaching or discussion about negative performance issues."  Pl.'s App. 104.

Then, on December 9, Mathew talked on the phone with Elad's immediate supervisor, Stephen Shaffer, about her concerns with the PIP.  *Id.* at 112.  On the call, she emphasized that she had "been provided with no dates, documentation or addendum with specifics (as stated on the PIP document) to substantiate" the performance issues and, in her time at Santander, had "not come across associates being placed on a PIP without clear

documentation." *Id.* at 112, 116–17.  On December 11, Mathew emailed Blackburn and Shaffer, stating:

> I am also pregnant (15 weeks) and cannot help but wonder if this has any bearing on my review because I mentioned it to my mgmt when I was 8 weeks pregnant out of courtesy and a month later I'm on a PIP after never being formally coached in my 5 year career. I've been told that I've been coached (after stating I hadn't been) and have asked for documentation numerous times to no avail.

*Id.* at 114.  There is no evidence that Santander investigated Mathew's complaint of pregnancy discrimination.

Shaffer then investigated Mathew's performance history and concerns regarding lack of documentation.  *See* Pl.'s App. 123–32.  He commented that "the management team could have been clearer in their expectations and potential consequences due to [Mathew's] performance issues," and "there were times that the management team should have followed up or pushed harder on issues."  *Id.* at 124.  He recommended creating "SMART (Specific, Measurable, Achievable, Results-oriented, and time bound)" goals for Mathew and making a 90-day PIP with weekly check-ins and monthly reviews to provide Mathew with additional time to address her performance gaps.  *Id.* at 127–28.  He also recommended that Santander not consider the PIP for her 2015 bonus but to take it into account for 2016 performance reviews.  *Id.* at 128.  Based on Shaffer's investigation, Blackburn emailed Elad on December 31 and said, "documentation isn't sufficiently robust to take formal action, so [we are] extending PIP to end of Q1 with weekly check-ins that will be documented."  *Id.* at 139.  She stated that this plan "would stack up our favor in Arbitration or open hearing."  *Id.*

Also in December, a client of Santander emailed Adriano with concerns about Mathew's performance, specifically questioning her impartiality in a human-resources investigation. Def.'s App. 193–94.

The second iteration of the PIP went into effect on January 15, 2016. *Id.* at 210–18. Instead of Shaffer's recommended weekly check-ins, the PIP called for biweekly meetings. *Id.* at 214. Adriano and Mathew met for biweekly check-ins on January 29 and February 17. *Id.* at 244, 251–52. After the February 17 meeting, Adriano informed Mathew that Mathew's summary of the meeting was "not what was requested or expected" as the "summary [did] not capture the main points of [the] discussion." *Id.* at 251. Mathew forwarded Adriano's email to Elad and stated that her February 17 summary was similar to her January 29 summary and that Adriano had not made clear that she expected more detail. *Id.* at 250–51. Elad responded that she agreed with Adriano that the summary did not include enough detail and raised concern that Mathew was "either not able to identify the key concepts and coaching opportunities that were provided to [her] . . . or [was] not able to communicate them effectively." *Id.* at 250.

The 30-day review meeting took place on February 26. Pl.'s App. 217–18. Santander reported that Mathew continued to have performance deficiencies, including (1) sending emails that did not include the level of detail Adriano expected; and (2) submitting an investigation summary that was late and included information she had been advised to remove. *Id.* Mathew had additional check-ins with Adriano on March 8 and 23. *Id.* at 244, 246. Adriano responded to Mathew's summary emails weeks after Mathew sent them. *Id.* at 244 (sent response two weeks after Mathew sent summary of March 8 meeting); 263–

MEMORANDUM OPINION AND ORDER – PAGE 7

265 (provided response at 90-day review, which was about three weeks after Mathew sent summary of March 23 meeting).

In early April, Elad told Shaffer that Mathew was continuing to fail to meet the expectations of the HRBP role and recommended termination, and Shaffer agreed. Pl.'s App. 261. Mathew's 90-day review took place on April 15. *Id.* at 266–68. Santander reported that, despite providing guidance and discussing areas of opportunity, Mathew did not meet expectations regarding time management and work habits or consulting. *Id.* Santander also provided complaints from business clients regarding her performance. *Id.* at 267–68. On April 19, Elad and Adriano informed Mathew that Santander was terminating her because of her performance issues. *Id.* at 002; *see also* Def.'s App. 013, 026. Boyd, a nonpregnant employee who had previously reported to Mathew, replaced Mathew as an HRBP. Def.'s App. 013.

Santander now moves for summary judgment on both Mathew's pregnancy discrimination and retaliation claims. Def.'s Br. 1 [24]. Santander also moves to strike portions of Mathew's declaration. Def.'s Mot. Strike 1 [45].

## II. The Court Grants in Part and Denies in Part the Motion to Strike

Santander moves to strike portions of Mathew's declaration as contradictory or lacking personal knowledge. Under Rule 56(c)(4), a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). District courts may strike declarations that do not comply with Rule 56's standards. *Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 530 (5th Cir. 1992) (citation

omitted). Further, under the sham affidavit doctrine, "a district court may refuse to consider statements made in an affidavit that are 'so markedly inconsistent' with a prior statement as to 'constitute an obvious sham.'" *Winzer v. Kaufman Cnty.*, 916 F.3d 464, 472 (5th Cir. 2019) (quoting *Clark v. Resistoflex Co.*, 854 F.2d 762, 766 (5th Cir. 1988)). But there is no sham when an inconsistency can be reconciled. *Id.* at 472–73. The Court addresses each of the statements Santander challenges in turn.

### A. Paragraph 16

Santander challenges ¶ 16 of Mathew's declaration as contradicting testimony she gave in her deposition. In her declaration, Mathew stated that her relationship with Adriano and Elad changed right after she told Adriano that she was pregnant, which happened on October 30. Def.'s Mot. Strike App. 006 [46]. In her deposition, she stated that she started having a problem with Elad after being placed on the PIP, which happened on December 1. Def.'s Mot. Strike App. 039. The Court determines that these statements are not so markedly inconsistent as to constitute an obvious sham and denies the motion to strike ¶ 16.

### B. Paragraphs 25 & 31

Next, Santander challenges portions of ¶ 25 and ¶ 31 relating to Mathew's knowledge of Santander's historical practice of utilizing PIPs. Santander argues that Mathew does not lay foundation that she has personal knowledge of Santander's complete history of PIP issuances. Def.'s Mot. Strike 5–6. A district court may reasonably infer personal knowledge based on a person's employment position and "sphere of responsibility." *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005). Here,

MEMORANDUM OPINION AND ORDER – PAGE 9

because Mathew presented evidence regarding her role as an HRBP at Santander and a conversation with a coworker discussing Santander's PIP practice, *see* Def.'s Mot. Strike App. 003, 008, the Court finds that Mathew established that she has personal knowledge of Santander's practice of utilizing PIPs. Accordingly, the Court denies the motion to strike portions of ¶ 25 and ¶ 31.

### C.  Paragraphs 43(a) and 46

Santander further argues that the Court should strike portions of ¶ 43(a) and ¶ 46 of Mathew's declaration because they contradict statements made by other witnesses. Def.'s Mot. Strike 3–4. Santander analogizes these statements to the to the inconsistent statements the Fifth Circuit considered in *Matter of Highland Capital Management, L.P.*, 116 F.4th 422 (5th Cir. 2024). However, in that case, the Fifth Circuit was not reviewing a motion to strike, but instead analyzing the statements in the context of the strength of evidence to defeat a motion for summary judgment. *Id.* at 431. And the Fifth Circuit clarified that it was not excluding the declarations at issue under the sham-affidavit doctrine. *Id.* at 433. The Court accordingly determines that *Highland Capital* does not apply here. The fact that Mathew's statements contradict statements made by other witnesses raises a question of credibility, and such credibility determinations "are for the trier of fact, not the district court." *Winzer*, 916 F.3d at 473. Thus, the Court denies the motion to strike portions of ¶ 43(a) and ¶ 46.

### D.  Paragraph 93

Santander also challenges a portion of ¶ 93, in which Mathew stated, "even Elad did not see a problem with the fact that I did it the next day." Def.'s Mot. Strike 5. Santander

asserts that "Mathew does not lay foundation that she has personal knowledge that [] Elad did not see a problem with the timing." *Id.* Mathew responds that her statement is based on a reasonable inference drawn from an email Elad sent to Adriano (not to Mathew). Pl.'s Resp. Mot. Strike 5 [54]. The Court strikes this portion of ¶ 93 because Mathew did not base it on her own personal observation and experience. *See Garcia v. Delta Co.*, 2023 WL 2950632, at *12 (N.D. Tex. 2023) (stating personal knowledge "may include references and opinions so long as they are grounded in personal observation and experience").

### E.  Paragraph 105

In ¶ 105, Mathew stated that she "was the only HRBP that was pregnant during th[e] period" of December 1, 2015, to April 19, 2016, which Santander moves to strike as contradictory. Def.'s Mot. Strike 3. Mathew concedes that this is contradictory. Pl.'s Resp. Mot. Strike 2. Accordingly, the Court strikes this portion of ¶ 105.

Thus, the Court grants Santander's motion to strike portions of ¶ 93 and ¶ 105 of Mathew's declaration from the record but denies Santander's motion to strike portions of ¶ 16, ¶ 25, ¶ 31, ¶ 43(a), and ¶ 46 of Mathew's declaration.

### III.  SUMMARY JUDGMENT LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial

burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Bargher v. White*, 928 F.3d 439, 444 (5th Cir. 2019) (citation omitted). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

#### IV. THE COURT DENIES THE MOTION FOR SUMMARY JUDGMENT ON THE PREGNANCY DISCRIMINATION CLAIM

Mathew claims that Santander discriminated against her based on her pregnancy in violation of Title VII. She does not provide direct evidence of discrimination, so the Court applies the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001) (citation omitted). First, Mathew must establish a prima facie case of discrimination. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). If she can do so, Santander then "must articulate a legitimate, non-discriminatory reason for its decision to terminate" Mathew. *Id.* If Santander meets this burden of production, then the burden finally shifts back to Mathew to "offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is a pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Id.* at 412. The "burden of persuasion remains with the employee throughout." *Saketkoo v. Adm'rs of Tulane Ed. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022) (citation omitted).

### A. Mathew Established a Prima Facie Case of Discrimination

First, Mathew must establish a prima facie case of discrimination. To do so, she must show that she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group." *Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 429 (5th Cir. 2023) (citations omitted). The parties

dispute whether Mathew has established the third and fourth elements of her prima facie case.

The Court determines that Mathew established the third element of her prima facie case as her termination constitutes an adverse employment action.  *See, e.g.*, *Lewis v. Bd. of Supers. of La. State. Univ.*, 2023 WL 8370096, at *6 n.78 (M.D. La. 2023) ("Termination is considered an 'adverse employment action' under Title VII." (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006))).

Next, the Court addresses the fourth element of Mathew's prima facie case — whether Santander replaced her with someone outside her protected group or treated her less favorably than similarly situated employees outside her protected group.  The parties provided evidence that Santander replaced Mathew with Sabrina Boyd.  Def.'s App. 013 ("Mathew was replaced by Ms. Boyd").  Boyd was not pregnant at the time she replaced Mathew, Pl.'s Resp. 17 [35], so Santander replaced Mathew with someone outside her protected group.  Accordingly, Mathew established the fourth element of her prima facie case.  The Court thus holds that Mathew established a prima facie case of pregnancy discrimination.

### B.  Santander Articulated a Legitimate, Nondiscriminatory Reason for the Termination

Because Mathew produced sufficient evidence to establish her prima facie case, the burden shifts to Santander to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action.  *McDonnell Douglas*, 411 U.S. at 802.  Santander claims that it terminated Mathew because of her ongoing poor job performance and provided

specific examples of the performance issues. *See* Def.'s Br. 38–41. The Court holds that this is a legitimate, nondiscriminatory reason for Mathew's termination. *See, e.g.*, *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015) ("We have repeatedly held that a charge of 'poor work performance' is an adequate when coupled with specific examples." (citations omitted)).

### C. *Mathew Raises a Triable Issue of Pretext*

Mathew claims that Santander's articulated reason for her termination is pretextual. Pl.'s Resp. 19. She may show pretext either (1) "through evidence of disparate treatment" or (2) "by showing that [Santander's] proffered explanation is false or unworthy of credence." *Jackson v. Cal W. Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). "'An explanation is false or unworthy of credence,' and thus pretextual, 'if it is not the real reason for the adverse employment action.'" *Burton*, 798 F.3d at 233 (quoting *Laxton*, 333 F.3d at 578).

Mathew asserts that Santander's "lack of contemporaneously-created documentation" of performance issues raises a fact issue regarding the true reason for her placement on the PIPs and eventual termination. Pl.'s Resp. 20–21. "Evidence of a sudden and unprecedented campaign to document [an employee's] deficiencies and thus justify a decision that had already made . . . could raise an inference of pretext." *Burton*, 798 F.3d at 236; *see also Laxton*, 333 F.3d at 582. In *Burton*, the Fifth Circuit reversed the district court's grant of summary judgment with respect to the employee's discrimination claim because, after deciding to terminate the employee, the employer "acted to create an exculpatory paper trail." *Burton*, 798 F.3d at 237. The employer asked for the employee's

supervisors to provide documentation supporting the decision, and the supervisors responded with an email stating "Here is what I have on [the employee]" and setting "forth a laundry list of violations to justify [the] predetermined decision to terminate" her. *Id.* Further, the employee's "only truly negative performance review was completed and submitted just *after* the decision to fire her." *Id.* The employer "relied on the retrospective laundry list of violations [the] supervisors created at [their boss's] behest." *Id.* The Fifth Circuit held that a "fair-minded juror could reasonably conclude this is evidence of pretext." *Id.*

Here, like in *Burton*, there is evidence that Santander acted to create an exculpatory paper trail justifying its decision to terminate Mathew. First, on November 24, 2015,[1] Elad — the supervisor of Adriano, Mathew's direct supervisor — suggested terminating Mathew. Pl.'s App. 097. On the same day, Adriano emailed Elad that she would "work on a formalized timeline of events and discussions that [she] ha[s] had with [Mathew] since September." *Id.* at 098. Adriano also emailed Mathew's former supervisor, Hullum, soliciting documentation. *Id.* at 097. Further, and also like in *Burton*, Mathew did not receive any negative performance reviews from Santander until after Elad suggested terminating Mathew. *Compare id.* at 052–62 (positive 2014 review), 067–71 (positive 2015 mid-year review) *with id.* at 100–03 (negative December 2015 review and PIP).

And there is no documentation of disciplinary actions against Mathew before Elad suggested terminating her and Santander placed her on a PIP, even though several

---

[1] This date is less than a month after Mathew disclosed her pregnancy to Adriano. *See* Pl.'s App. 005.

MEMORANDUM OPINION AND ORDER – PAGE 16

employees stated that Santander always documents disciplinary actions. *Id.* at 408 (Boyd Deposition: "When Santander . . . provided a disciplinary action to an employee, was there always a document created?" "Yes."), 106 (email from human-resources employee: "I have never worked on a PIP without the proper documentation . . . It's just like any other disciplinary action you need documentation to validate the PIP"). A lack of contemporaneous documentation despite evidence that the employer abides by rigorous record-keeping policies suggests pretext. *See Laxton*, 333 F.3d at 580.

Accordingly, the Court determines that Santander's reliance on a retrospective list of performance issues combined with its lack of contemporaneous documentation raises a fact issue regarding pretext. Because there is sufficient evidence to create a genuine issue of material fact as to whether Santander's proffered explanation was unworthy of credence and thus pretextual, the Court denies summary judgment on Mathew's pregnancy discrimination claim.

## V. THE COURT GRANTS THE MOTION FOR SUMMARY JUDGMENT ON THE RETALIATION CLAIM

"The analytical framework for a retaliation claim is the same as that used in the employment discrimination context." *Goudaeu v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 480, 478 (5th Cir. 2015) (quoting *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001)). If Mathew successfully makes out a prima facie case, the burden shifts to Santander to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). Then, the

burden shifts back to Mathew to show that there is a genuine issue of material fact as to whether Santander's reason is a pretext for retaliation. *Id.*

To establish a prima facie retaliation case, Mathew must show that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *Goudaeu*, 793 F.3d at 478. The Fifth Circuit suggested that three months in temporal proximity between the protected activity and the adverse employment action is insufficient to show causation. *Garcia v. Prof. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)).

Mathew first engaged in a protected activity on December 1, 2015, when she claimed that Santander unlawfully discriminated against her by placing her on the first PIP. Def.'s App. 167. The parties dispute the date of the adverse employment action. Mathew argues the date of the adverse employment action is December 31 — when Santander placed Mathew on the second PIP — while Santander argues it is April 19, 2016 — when Santander terminated Mathew. Def.'s Br. 49; Pl.'s Resp. 18.

Placement on "a PIP does not constitute an adverse employment action unless it affects job, title, grade, hours, salary, or benefits or causes a diminution in prestige or change in standing among coworkers." *Lemonia v. Westlake Mgmt. Servs., Inc.*, 2023 WL 6878915, at *7 (5th Cir. 2023) (unpub.) (cleaned up) (citations omitted). Mathew has not presented evidence that Mathew's placement on a second PIP affected her in a way that would constitute an adverse employment action. So, the Court uses April 19, the date of Mathew's termination, as the operative date for the adverse employment action. More than

three months passed between the protected activity and the adverse employment action, which is insufficient to show causation. *See Garcia*, 938 F.3d at 243. Accordingly, because Mathew cannot establish a prima facie case of retaliation, the Court grants summary judgment on this claim.

CONCLUSION

First, the Court grants in part Santander's motion to strike and strikes a portion of ¶ 93 and ¶ 105 of Mathew's declaration from the record. Then, because Mathew raised a genuine issue of material fact regarding whether Santander's reason for her termination was pretextual, the Court denies Santander's motion for summary judgment on the pregnancy discrimination claim. However, because Mathew cannot establish a prima facie case of retaliation, the Court grants summary judgment on the retaliation claim.

Signed February 4, 2025.

David C. Godbey
Chief United States District Judge