IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

REENA S. MATHEW,                          §
     Plaintiff                          §
                                         §
v.                                        §          Civil Action No. 3:23-cv-01494-N
                                         §
SANTANDER CONSUMER USA INC.,              §
     Defendant                          §

**APPENDIX IN SUPPORT OF PLAINTIFF'S OBJECTIONS
TO DEFENDANT'S PROPOSED TRIAL EXHIBITS**

| Ex. # | App. Pages | Description |
|-------|-----------|-------------|
| 1 | 3-16 | Declaration of Yessica Perez |
| 2 | 17-21 | Declaration of Sabrina Boyd |
| 3 | 22-30 | Declaration of Stephanie Elad |
| 4 | 31-33 | Declaration of Tina Mohan |
| 5 | 34-35 | Declaration of Fatma Rizvan |
| 6 | 36-38 | Declaration of Nicole Prior |
| 7 | 39-41 | Declaration of Christina Sout |
| 8 | 42-44 | Declaration of Whitney Andres |
| 72 | 45-46 | Declaration of Sabrina Boyd |
| 106 | 47-58 | Pages related to a deposition on written questions to Baylor Scott & White for medical records |
| 107 | 59-69 | Pages related to a deposition on written questions to Baylor Scott & White for billing records |
| 109 | 70-72 | Facebook messages between Mathew and Heather Hutto- Leon |
| 110 | 73-76 | Facebook messages between Mathew and Demetrice Vasquez-Patton |
| 111 | 77-78 | Facebook messages between Mathew and Lyndy Parnell |

Respectfully submitted,


/s/ Donald E. Uloth
Donald E. Uloth
Texas Bar No. 20374200
Law Office of Donald E. Uloth
18208 Preston Road, Suite D-9 # 261
Dallas, Texas 75252
Phone: (214) 989-4396
Fax: (972) 777-6951
Email: don.uloth@uloth.pro
Counsel for Plaintiff


CERTIFICATE OF SERVICE

I certify that on February 14, 2025 I am filing this motion electronically using the Court's ECF filing system, which will email a file-marked copy of this motion to all counsel of record.


/s/ Donald E. Uloth
Donald E. Uloth

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **REENA S. MATHEW,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| V. | § | **CIVIL ACTION NO. 3:23-cv-01494-N** |
| | § | |
| **SANTANDER CONSUMER USA INC.,** | § | |
| | § | |
| *Defendant*. | § | |

## <u>DECLARATION OF YESSICA PEREZ</u>

I, Yessica Perez, declare that the following statements are true and correct, based on my personal knowledge:

1.  My name is Yessica Perez.  I am over 18 years of age, of sound mind, and have never been convicted of a felony.  I am personally acquainted with the facts stated herein and I affirm the following is true and correct.  I previously went by the name Yessica Adriano.

2.  From January 2015 until June 2017, I was employed with Santander Consumer USA Inc. ("Santander") as an HR Manager.  As an HR Manager, I served as a liaison between employees and management.  I managed a team of Employee Relations Consultants (formerly "HR Business Partners"), and I was involved in employee disciplinary actions, employee relations issues, and terminations.

3.  Santander is a consumer finance company focused on vehicle finance and third-party servicing.  Santander is headquartered in Dallas, Texas.

4.  Santander is an equal opportunity employer, committed to providing equal opportunity to all persons regardless of race, color, sex, creed, gender (including identity and expression), religion, national origin or ancestry, ethnicity, age, marital status, registered domestic partner status, sexual orientation, disability, physical or mental disability, medical condition including genetic characteristics, veteran status or any other legally-protected basis.  *See* Santander Consumer USA Inc. Associate Handbook, 5–6 (2013) ("Associate Handbook").

-1-

5.     In addition to equal opportunity policies, Santander has an Anti-Harassment and Anti-Discrimination Policy. *See* Associate Handbook, 10–12. The policy prohibits unlawful discrimination or harassment of any kind. Furthermore, the policy outlines a complaint procedure for associates who feel they have experienced job-related harassment. If an associate feels that he/she has been treated in an unlawful, discriminatory manner, he/she should promptly report the incident to his/her manager and/or Human Resources. Managers are required to immediately report any such claims to Human Resources as well. Human Resources then investigates the matter, takes the appropriate action if necessary, and is mindful to keep complaints confidential to the extent possible, consistent with Santander's need to conduct the investigation and take any necessary action. If an associate feels that he/she is experiencing any job-related harassment from a member of Human Resources, he/she is instructed to go immediately to Santander's Legal Department.

6.     Santander's Anti-Harassment and Anti-Discrimination Policy also specifically states that retaliation is prohibited by Santander's policies and the law. Associates are informed that if they think they have been retaliated against, they may file a complaint with the appropriate agency and that the nearest office can be located at www.eeoc.gov.

7.     HR Business Partners and HR Generalists would report to HR Managers. Each HR Manager reported to a Director, Human Resources, which was my role. Each Director, Human Resources reported to the VP Human Resources. The VP Human Resources reported to the Executive VP of Human Resources.

8.     Reena Mathew ("Mathew") worked as an HR Business Partner in Santander's HR department at the Lewisville office. In this role, Mathew was responsible for, among other things, managing employee relations issues, processing employee disciplinary actions, and conducting investigations into employee conduct as necessary.

9.     During the relevant time periods, Mathew reported to HR Manager Angelina Hullum then to me. I then reported to Stephanie Elad, Director, Human Resources. Ms. Elad then reported to Stephen Shaffer, VP Human Resources. Mr. Shaffer then reported to Pam Blackburn, Executive VP of Human Resources.

10.    On September 8, 2015, I met with my new team to discuss my expectations for the team and what our schedules would be. I emphasized that we should be working together as one, which would include sharing the workload and helping each other out. I also emphasized the importance of working full days and being productive while at the office so that we could maintain a

healthy work-life balance.  *See* e-mail message from me to Sabrina Boyd, Mathew and Hortensia Perez ("Tensya") on September 9, 2015.

11.     When I took over as Mathew's supervisor, I learned from Ms. Hullum some of Mathew's specific performance deficiencies.  Specifically, Ms. Hullum shared with me the following incidents in which Mathew's performance was either brought into question or failed to meet expectations:

- **April 9, 2015:** Mathew submitted her March recap to Ms. Hullum four days late, and only after Ms. Hullum followed up with her. Mathew's monthly recap reflected significantly less meetings with business personnel than her HR Business Partner counterparts, and failed to quantify the meetings with business leaders as was requested by Ms. Hullum.  The recap reflected that Mathew had participated in only two side-by-side meetings with managers and only four jumpstarts during the month.  Mathew also failed to indicate the number of meetings she had that month with business leaders. Although I was not working with Mathew in April 2015, I could appreciate why Ms. Hullum identified these deficiencies. From my perspective, an HR Business Partner should participate in significantly more than two side-by-side meetings with managers over the course of a month.

- **May 18, 2015:** Mathew submitted a monthly recap which reflected the fact that she did not attend *any* jumpstarts for the month, did not conduct *any* trainings, and the number of meetings with business leaders was again not included.

- **July 1, 2015:** Mathew asked for permission to leave work early that day for a doctor's appointment, of which she had not previously advised.

- **July 10, 2015:** Ms. Hullum asked Mathew to support a department at another Santander office location due to a staff shortage and an unbalanced workload identified among the HR department, to which Mathew asked for assistance, noting that she felt overwhelmed with her current duties.

- **August 13, 2015:** Mathew's monthly recap reflected that she held *only one* side-by-side meeting, attended three jumpstarts, and she had over 10 meetings with business leaders, and recapped only one training that she had with a manager.

- **July-August 2015:** Ms. Hullum asked Mathew to complete a time study to determine what she was spending her time on, in light of her insistence that her workload was too heavy.  Ms. Hullum had to

-3-

ask Mathew to complete the study twice because Mathew's first attempt did not meet her expectations. The time study reveals inefficiencies, such as Mathew spending 3 hours and 15 minutes to draft the "July Recap," which was an e-mail message consisting of less than one page.

12. Despite Mathew's history of poor performance, I wanted to give her a clean start under my leadership. For that reason, shortly after I began to supervise her, I met with Mathew one-on-one to discuss her 2015 Mid-Year Review and assess how I could help her in reaching her goals and improving. As a result, I set up weekly one-on-one coaching meetings with Mathew. *See* Outlook calendar appointments for my one-on-one meetings with Mathew.

13. During these one-on-one meetings, I coached Mathew on areas she was performing poorly and provided guidance on how Mathew could improve. *See* my handwritten notes taken during each one-on-one meeting with Mathew.

14. Mathew's performance did not improve after I began to supervise her, despite my efforts to coach her. Rather, Mathew regularly failed to meet performance expectations, as demonstrated in the following incidents:

- **September 17, 2015:** Mathew again provided me with last-minute notification that she was going to leave early, this time informing me that she needed to leave early that same day. *See* Instant Message conversation between Mathew and me on September 17, 2015.

- **September 28, 2015:** Mathew informed me that she felt overwhelmed with her workload. I informed her that the HR Business Partner role requires a high level of efficiency. *See* my handwritten notes taken during my one-on-one meeting with Mathew on September 28, 2015.

- **October 29, 2015:** Brad Denetz, the Site Director, came to my office to discuss having approximately 10 disciplinary actions outstanding that he needed as soon as possible. When I asked Mathew about those disciplinary actions, she stated that she would have them to Mr. Denetz by that Friday. *See* Instant Message conversation between Mathew and me on October 29, 2015.

- **October 29, 2015:** Mathew again provided last-minute notification that she would miss work. Specifically, she informed me in the late afternoon that she has a doctor's appointment in the morning. This late notice required me to rearrange my schedule to provide

-4-

coverage at the office. *See* e-mail message from me to Ms. Elad on October 29, 2015.

- **November 2, 2015:** Ms. Elad overheard Mathew and Ms. Boyd spend an inappropriate amount of time on a bereavement request. Ms. Elad sent an e-mail message to me discussing her concern that Mathew's and Ms. Boyd's time could have been better spent on more productive matters. *See* e-mail message from Ms. Elad to me on November 2, 2015.

- **November 16, 2015:** Mathew sends me an instant message at 9:53 a.m. asking if she could leave at 3:00 p.m. that day, providing same day notification. *See* Instant Message conversation between Mathew and me on November 16, 2015.

- **November 20, 2015:** Mathew informed me that she felt she was extremely busy and needed help with her workload. She asked me if another HR Business Partner, Hortensia Perez ("Tensya"), could assist her with her workload. I granted her request, and Tensya took over a pending investigation that was originally assigned to Mathew. *See* Instant Message conversation between Mr. Dieckmann and Mathew on November 20, 2015.

- **November 23, 2015:** Despite receiving an employee's notice of resignation on Saturday, November 21, 2015, Mathew failed to process the termination timely. Upon my review, it came to my attention that the employee who resigned had previously filed a complaint against her manager, which Mathew had investigated. Upon reviewing the investigation, I learned that the complaining employee alleged that she could not trust her Assistant Vice President ("AVP") because the AVP was good friends with the manager about whom the complaining employee was making allegations. When Mathew had assumed the responsibility of conducting the investigation, she obviously ignored the employee's allegation, demonstrated by the fact that Mathew interviewed the complaining employee and the AVP together. Mathew then concluded that none of the complaining employee's complaints were substantiated.

  After learning about the inadequacies of the initial investigation conducted by Mathew, I conducted my own investigation, which resulted in substantiating some of the allegations made by the complaining employee. When discussing the situation with her, Mathew informed me that she (1) did not read the e-mail message sent by the complaining employee in its entirety, and (2) did not believe the complaining employee during the investigation. In

response, I reprimanded Mathew, informing her that she must always investigate complaints with an open and fair mind.

- **November 24, 2015:** Mathew sent me an instant message at 11:19 a.m. informing me that she would be taking a long lunch to go to a doctor's appointment, providing same day notification. *See* Instant Message conversation between Mathew and me on November 24, 2015.

- **November 24, 2015:** Mathew again complained about her workload, asking that someone assist her with a pending project. When I explained the busy workloads of the rest of the team members and asked what Mathew had going on, she says she overwhelmed and had to leave to go to a doctor appointment. *See* e-mail message exchange between Ms. Elad and me on November 24, 2015.

15.  Due to my ongoing concerns with Mathew's performance, in November 2015, I consulted Ms. Elad to assist in formally addressing Mathew's poor performance. I forwarded an instant message I received from Mathew stating that Mathew was overwhelmed by the number of compliance e-mail messages she had to complete. Ms. Elad expressed that she did not believe compliance e-mail messages should take very long. *See* e-mail message exchange between Ms. Elad and me on November 24, 2015.

16.  Ms. Elad then consulted with her supervisor, Pamela Blackburn, Executive Vice President of HR. Although Ms. Elad recommended that Santander explore the possibility of offering Mathew a severance agreement to leave, Ms. Blackburn denied that recommendation. Rather, Ms. Blackburn suggested that we place Mathew on a Performance Improvement Plan ("PIP") to provide her with another opportunity to improve her performance. Santander determined that, based on Mathew's poor performance in a number of categories, a PIP was the appropriate mechanism by which to manage her performance, as a written warning on her poor performance on a specific category would not capture the bigger picture of how she needed to improve her performance in a number of categories.

17.  On December 1, 2015, I met with Mathew to discuss her poor performance and provide her with the 30-day PIP. Despite being placed on a PIP, Mathew's poor performance continued, as demonstrated in the following incidents:

- **December 8, 2015:** Scott Dieckmann (SVP Loan Servicing, Consumer Lending) wrote to me, expressing his concerns with Mathew's performance as his department's HR Business Partner.

Specially, he described Mathew's behavior as "bullying," complained that Mathew did not involve management in areas in which he believed management should have been involved, and explained why he believed her investigation into an employee complaint was flawed. In particular, in the instance he described, Mathew had told a manager that she was "sure" an event that the complaining employee described occurred, despite having found no corroborating evidence, and in fact being told by witnesses that the event alleged by the complaining employee did not occur.

- **December 28, 2015:** Santander experienced a payroll issue that required an HR professional from every location to assist in resolving the issue. I asked Mathew to work on this issue. Mathew was unable to complete this task on her own, resulting in me having to ask Sabrina Boyd, the HR Generalist, to assist with the payroll issue. Ms. Boyd worked to find a resolution without difficulty.

18. Accordingly, on January 15, 2016, Ms. Elad and I placed Mathew on a 90-day PIP, and provided her with a 90-day action plan. In this PIP, we identified performance standards for her job, along with a description of how her performance to date had failed to meet those standards. The 90-day action plan indicated three areas of focus: attendance; time management/effective work habits; and consulting. We then provided her with tasks associated with each of these areas of focus, along with a description of any support or resources that were available to assist her in making the necessary improvements to her performance. For example, we offered to provide Mathew with additional training on a number of topics, and asked her to request the training by February 5, 2016. Additionally, in light of Mathew's continual complaints that her workload was too heavy to handle, we reassigned the work associated with Santander's 8585 location to another member of the team. Finally, we informed Mathew that she would have biweekly reviews with me to discuss her performance in each of the areas of focus. *See* Mathew's 90-day PIP and 90-day action plan.

19. On January 18, 2016, I sent Ms. Elad an e-mail message summarizing our January 15, 2016, meeting with Mathew. Ms. Elad had minimal comments to add and expressed that I accurately captured the meeting. *See* E-mail message exchange between Ms. Elad and me on January 18, 2016.

20. On January 29, 2016, I met with Mathew to discuss her performance at our first biweekly follow-up meeting. I noted that she had been properly providing me with 48 hours'-notice before taking time off, which met my expectations as to the focus area of attendance. We then discussed her time study, in which she had documented what she did throughout the day and how much time she devoted to each item. I reminded her that when she received a project, it was important to respond timely. Further, if she found

-7-

herself unable to complete an assignment on time, she needed to provide an update or explanation of what occurred, along with a new estimated time of completion. *See* E-mail message from Mathew to me on February 1, 2016.

21.     During the January 29, 2016, meeting, I asked Mathew if she would like to attend any type of class to assist her in meeting her PIP objectives, and I asked her to identify any courses she would like to attend no later than February 5, 2016. She responded by telling me that if she came across any classes she wanted to take, she would let me know. *See* E-mail message from Mathew to me on February 1, 2016.

22.     During the course of the next two weeks, Mathew failed to fully meet my expectations in completing her work on a timely basis, and in following instructions. For example, in one instance, Ms. Elad had instructed Mathew to eliminate specific information from an investigation report. Yet, the investigation report submitted by Mathew contained the very information that Ms. Elad had asked her to not include. Additionally, the deficient report was submitted late.

23.     Accordingly, on February 17, 2016, Ms. Elad and I met with Mathew to further discuss her performance during our second biweekly follow-up meeting. In this conversation, Ms. Elad and I conveyed our observations that she was still not completing her work on a timely basis, and that she had failed to follow instructions regarding employee investigations. Ms. Elad and I coached Mathew regarding our expectation that she timely complete her work and that she follow instructions when completing employee investigations. We then further analyzed Mathew's recent failure to follow instructions when she submitted the report containing the very information that Ms. Elad asked her to eliminate. We also pointed out that she submitted the (deficient) report after the deadline. *See* E-mail message exchange between Ms. Elad, Mathew and me between February 17–22, 2016.

24.     Also at the February 17, 2016 meeting, Ms. Elad and I asked Mathew to provide us with more detail when identifying for us how she was utilizing her time. In particular, we asked that she identify the number of disciplinary actions and investigations that she completes each week, the process that she follows to intake disciplinary actions, and descriptions of other tasks that she completes throughout the week. This was necessary because Mathew continued to complain, in the meeting, that her workload was too heavy, despite the fact that she had one of the lightest, if not *the* lightest, workload of any of Santander's HR Business Partners. *See* E-mail message exchange between Ms. Elad, Mathew and me between February 17–22, 2016.

25.     After our February 17, 2016 meeting, I asked Mathew to provide me with a written summary detailing our meeting.  I made this request to ensure that Mathew understood and grasped the key takeaways from our meeting.  This practice is not uncommon when administering a performance improvement plan.  *See* E-mail message exchange between Ms. Elad, Mathew and me between February 17–19, 2016.

26.     Mathew provided to me a very cursory outline of our conversation, which fell below my expectations.  This outline did not even note the extensive coaching that Ms. Elad and I provided to her regarding timeliness of her work and following instructions when conducting an investigation.  *See* E-mail message exchange between Ms. Elad, Mathew and me between February 17–19, 2016.

27.     Despite the coaching that Ms. Elad and I provided regarding timely submitting projects, Mathew continued to untimely meet deadlines.  This untimeliness was not only burdensome to me; but also, it impacted the business clients whom we serve.

28.     I also found that, while Mathew was continuing to work on employee investigations as instructed, she was asking me to direct her in her own investigations far more frequently than someone at her level should have been.  While I appreciated that she was trying to ensure that she did not make any mistakes, I was constantly interrupted by Mathew, each time taking me away from whatever I was working on, to answer questions about investigations that I had expected her to know.  I was overwhelmed by these unnecessary interruptions.  As a result of these interruptions, I was far less productive than I could otherwise be in my job duties.

29.     On February 26, 2016, Ms. Elad and I met with Mathew to provide her with a 30-day review.  In this meeting, Ms. Elad and I again focused on Mathew's need to improve on her time-management and effective work habits.  In doing so, we discussed a recent instance when Mathew failed to submit the information requested of her by the deadline, and how her untimeliness impacted the business that we serve.

30.     Also at this February 26, 2016 meeting, Ms. Elad and I discussed with Mathew that she needed to take more initiative when conducting investigations.  In particular, we discussed how Mathew had needlessly interrupted me in my work, prior to performing each of the four investigations that she conducted over the past 30 days.  Ms. Elad and I told her that we expected her to demonstrate more proficiency and confidence in conducting these investigations, and that I would remain available for consultation as needed.  We further noted that, consistent with her PIP, we had offered her training opportunities, in which she had not expressed any interest.

-9-

31.     Unfortunately, Mathew did not grasp our instruction that she should demonstrate more proficiency and confidence in conducting investigations. Rather, she continued to come to me seeking guidance at what seemed like to me every juncture during her ongoing investigations.

32.     Accordingly, on March 8, 2016, during Ms. Elad and my third biweekly follow-up meeting with Mathew, we noted that Mathew asked for guidance from me every step of the way while conducting investigations. We told her that it was our expectation that she would be able to make sound judgment calls on her own, and that she would begin to move toward managing her investigations on her own without constantly asking me for guidance. In this meeting, we also recognized that Mathew had made some improvements in handling administrative tasks and in being more thorough in investigations.

33.     Three days later, on Friday, March 11, 2016, Mathew engaged in behavior which I believe exemplified her poor time-management skills and called into question her integrity. Specifically, Mathew was working on a project related to rewarding perfect attendance for Santander associates. As part of that project, Mathew sent an e-mail message to Ms. Elad at 4:28 p.m., in which she told Ms. Elad that she was "partnering" with another department, HRIS, to obtain specific data related to the project. In this e-mail message, Mathew told Ms. Elad that she wanted to provide Ms. Elad with a "status update" before leaving for vacation that same day. Mathew asked Ms. Elad if it was okay if she sent Ms. Elad the requested data when she returned from her vacation. Ms. Elad responded to this e-mail message minutes later, asking if Mathew could get the data to her earlier, as she wanted to get the data to their business client the next week if possible. Ms. Elad and I later learned that Mathew had not actually "partnered" with HRIS to get the data, as Mathew had represented in her e-mail message. Rather, Mathew did not request the data from HRIS until *after* she received Ms. Elad's e-mail message requesting her to get the data to her by the next week.

34.     In addition to her poor time-management, I found that Mathew did not improve in conducting and managing her own employee investigations. Rather, despite our continued instruction that she begin to manage her investigations on her own, Mathew continued to constantly seek my assistance.

-10-

35.    On March 23, 2016, Ms. Elad and I met with Mathew for our fourth biweekly meeting. In this meeting, we expressed our continued expectation that, as an HR Business Partner, she make independent judgment calls when handling investigations. We informed Mathew that we expected her to formulate a plan at the beginning of an investigation, and to then make a recommendation to me at the end of the investigation. We explained to her that, at this point, she was still seeking my guidance more than we expect for someone at her level.

36.    At the March 23, 2016 meeting, Ms. Elad and I also addressed the situation in which Mathew communicated to Ms. Elad that she had "partnered" with HRIS, when in fact she had not yet contacted them. When we pointed this discrepancy out to Mathew, she did not accept responsibility for her poor time-management or her misleading communication. Instead, Mathew blamed HRIS for not getting the data to her as quickly as she would have liked.

37.    Despite my continued counseling and coaching, Mathew's performance simply did not improve. Rather, Mathew continued to seek my guidance more than was appropriate, failed to timely submit work, and I received negative feedback from our business clients regarding her work for them.

38.    On April 15, 2016, Ms. Elad and I met with Mathew to provide her with her 90-day review. During this meeting, we discussed with Mathew her overall performance for the past 90 days, focusing on the three areas of focus that were identified in her 90-day action plan: attendance; time management/effective work habits; and consulting. We informed Mathew that we felt she met expectations as to attendance; but, she failed to meet expectations as to time management/effective work habits and consulting. We identified Mathew's failure to perform in the following areas: (1) providing detail in the work she submitted; (2) submitting accurate work product; (3) meeting deadlines; (4) timely following up when working on a project; (5) providing thorough and quality work product; and (6) contributing to the team by completing administrative tasks as needed. We also informed her that we felt she did not meet expectations in her consulting, as exemplified by her (1) failure to push back on the business when necessary to complete her job, (2) demonstrating a lack of accountability for her own behaviors, and (3) inappropriately addressing the business clients after they provided me with negative feedback regarding her performance, by challenging the feedback the business clients provided to me.

39.     We concluded our April 15, 2016 meeting by providing Mathew with some feedback we received from the business clients regarding her performance, which included the following:

- Limited interactions, but it has been better since January. I'd rather just go to someone else on the HR team to get it done right. They are always helpful and on point.
- I am getting [disciplinary actions] within 2 days. I never get it within 24 hours though, which is what I thought the expectation was.
- I enjoy working with her but notice that with difficult conversations she is timid and struggles. She asked me to sit in on a conversation and when it got difficult she said that I would take over. This wasn't my Associate and I was unprepared.
- She doesn't like making decisions without checking with her manager. She isn't confident when dealing with issues. She is scared to make decisions.
- I had to sit in on a term that [Mathew] was supposed to handle. [Mathew] got flustered and turned it back to me to handle. It's obvious that she can't handle conflict.
- She has had to ask for an extension (beyond 2 days) for a [disciplinary action].
- I'm much more comfortable and confident working with others on the HR team because they respond timely and are confident in their decision making process.
- She is very nice. Just don't ask her for anything.

Throughout this meeting, Mathew was defensive and claimed that she was getting picked on for every mistake. Rather than accept responsibility for any of her actions, she blamed me, stating that I was a bad manager. She said that I failed to check her work before sending it to Ms. Elad, did not ensure she met her deadlines, and did not help her or remind her of things enough.

40.     As a result of Mathew's ongoing performance issues and her inability to improve her performance despite receiving a 90-day action plan and PIP, Ms. Elad, Stephen Shaffer (VP Human Resources Business Partners), and I decided to terminate Mathew's employment.

41.     Mathew's complaints that she felt that she was being treated unfairly were not considered in the decisions made with regard to her employment, including the decision to terminate her employment. Likewise, Mathew's sex and pregnancy were not considered in the decisions made with regard to her employment, including the decision to terminate her employment. Indeed, any allegation that we considered Mathew's sex or pregnancy in our employment decisions would seem preposterous to me, as both Ms. Elad and I have been pregnant and are mothers ourselves! Furthermore, I did not

-12-

even know that Mathew was pregnant until November 2015, at which point I had already identified and had started to document her ongoing performance deficiencies.

42. On April 19, 2016, Ms. Elad and I met with Mathew to inform her that her employment with Santander was terminated because of her ongoing performance issues.

43. Mathew was replaced by Ms. Boyd, who had been promoted from the position of HR Generalist. Ms. Boyd has consistently met my expectations as an Employee Relations Consultant (formerly "HR Business Partner").

-13-

Docusign Envelope ID: 7C0779E9-64D8-4821-A25C-C8AD697325AB

My name is Yessica Perez.

My date of birth is     Yessica Perez
_____.

My address is     06/05/1979
_____

    560 lockton ln, 75078
_____

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in   Collin   County, State of Texas, on the   22   day of August, 2024.

_Yessica Perez_
C8D64CC0C5F5480
_____
YESSICA PEREZ

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REENA S. MATHEW, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:23-cv-01494-N |
| | § | |
| SANTANDER CONSUMER USA INC., | § | |
| | § | |
| *Defendant*. | § | |

## <u>DECLARATION OF SABRINA BOYD</u>

I, Sabrina Boyd, declare that the following statements are true and correct, based on my personal knowledge:

1.  My name is Sabrina Boyd. I am over 18 years of age, of sound mind, and have never been convicted of a felony. I am personally acquainted with the facts stated herein based on my employment with Santander Consumer USA Inc. ("Santander"), and my review of the business records of Santander related to Reena Mathew ("Mathew"), and I affirm that the following is true and correct.

2.  I began my employment with Santander in November 2004, as a Front End Account Manager. From 2004 until 2011, I held three roles in Santander's Servicing Department, including Front End Manager and Customer Service Manager. In October 2011, I transitioned to Santander's Human Resources ("HR") Department, as a Training Specialist III. In July 2013, I transitioned to the role of HR Generalist. In May 2016, I was promoted to the role of HR Business Partner to replace Mathew. In July 2016, my job title changed to Employee Relations Consultant. This is the position I hold today.

3.  Santander is a consumer finance company focused on vehicle finance and third-party servicing. Santander is headquartered in Dallas, Texas.

4.  Santander is an equal opportunity employer, committed to providing equal opportunity to all persons regardless of race, color, sex, creed, gender (including identity and expression), religion, national origin or ancestry, ethnicity, age, marital status, registered domestic partner status, sexual orientation, disability, physical or mental disability, medical condition including genetic characteristics, veteran status or any other legally-

-1-

protected basis.  *See* Santander Consumer USA Inc. Associate Handbook, 5–6 (2013) ("Associate Handbook").

5.      In addition to equal opportunity policies, Santander has an Anti-Harassment and Anti-Discrimination Policy.  *See* Associate Handbook, 10–12.  The policy prohibits unlawful discrimination or harassment of any kind.  Furthermore, the policy outlines a complaint procedure for associates who feel they have experienced job-related harassment.  If an associate feels that he/she has been treated in an unlawful, discriminatory manner, he/she should promptly report the incident to his/her manager and/or Human Resources.  Managers are required to immediately report any such claims to Human Resources as well.  Human Resources then investigates the matter, takes the appropriate action if necessary, and is mindful to keep complaints confidential to the extent possible, consistent with Santander's need to conduct the investigation and take any necessary action.  If an associate feels that he/she is experiencing any job-related harassment from a member of Human Resources, he/she is instructed to go immediately to Santander's Legal Department.

6.      Santander's Anti-Harassment and Anti-Discrimination Policy also specifically states that retaliation is prohibited by Santander's policies and the law.  Associates are informed that if they think they have been retaliated against, they may file a complaint with the appropriate agency and that the nearest office can be located at www.eeoc.gov.

7.      HR Business Partners and HR Generalists would report to HR Managers.  Each HR Manager reported to a Director, Human Resources.  Each Director, Human Resources reported to the VP Human Resources.  The VP Human Resources reported to the Executive VP of Human Resources.

8.      During the relevant time periods in 2015 and 2016, I worked as an HR Generalist at Santander's Lewisville location.  The HR team at the Lewisville location at that time consisted of Stephanie Elad (Director, Human Resources), Yessica Perez (HR Manager), Mathew (HR Business Partner), and myself.  Ms. Perez supervised both Mathew and me, and Ms. Elad supervised Ms. Perez.

9.      As the HR Generalist, I was responsible for the day-to-day administrative tasks in the HR department.  I was also given the opportunity to expand my work and did some work that would be more typically associated with Mathew's role as the HR Business Partner.  For example, I would draft disciplinary actions, have conversations with business leaders about their HR concerns, and offer recommendations on how to handle HR related issues.

10.    My desk at that time was at a cubicle in the HR office at Santander's
       Lewisville location.  Mathew's office was approximately 10 steps further
       into the HR office past my cubicle.

11.    I was not always aware of what Mathew did on a daily basis, as we each
       had our own responsibilities.  Of course, Mathew and I would speak
       frequently about work and our personal lives.

12.    Sometime in late 2015, Mathew shared with the department that she was
       pregnant.  From my perspective, everyone in the office, including Ms. Elad
       and Ms. Perez, was very happy for Mathew and her pregnancy.  I never saw
       anyone discriminate against Mathew or otherwise treat her poorly because
       of her pregnancy.  To the contrary, Ms. Perez and I planned to throw
       Mathew a baby shower.  We never had the opportunity to throw the shower
       because Mathew's employment with Santander ended.

13.    Mathew never complained to me about being mistreated at Santander.  She
       never told me that she felt she was being treated differently because of her
       pregnancy.

14.    I understand that Mathew testified that I was "coasting."  But, that is not
       true.  In reality, Mathew often asked me to handle tasks that had been
       assigned to her, including asking me to prepare disciplinary actions that had
       been assigned to her and/or entering disciplinary actions into the system.
       For example, on November 20, 2015, Mathew asked me, at the end of the
       workday, to follow up with a business partner who had reached out to her
       that morning to prepare a disciplinary action.  *See* e-mail message from
       Mathew to me on November 20, 2015.

15.    I appreciate working in a team environment, which is one of the reasons I
       like HR so much.  With that, I am happy to take on additional tasks as a
       willing team player.  But, the way in which Mathew asked me to handle
       tasks that had been assigned to her, and the frequency of those requests,
       made me feel like she regarded me as her assistant, and not her teammate.
       There seemed to be disconnect between Ms. Perez's instructions that we all
       help each other out on drafting and entering disciplinary actions, and
       Mathew's perspective that drafting and entering disciplinary actions was
       beneath her.

16.    I was pregnant and had a child while working at Santander, albeit several
       years prior to Mathew's pregnancy.  I never felt as though anyone at
       Santander treated me poorly or discriminated against me because of my
       pregnancy.

17.     Multiple other women within the Human Resources department were pregnant at or around the time that Mathew was pregnant in 2016. Based on what I have personally observed over the past 20 years at Santander, I have never witnessed anyone in Santander's HR department or elsewhere being mistreated because of her pregnancy. To the contrary, based on my personal experience being pregnant at Santander and my observations of how other pregnant employees have been treated, I have nothing but positive things to say about how I and those other expecting mothers were treated by Santander, both during and after our pregnancies.

18.     Each of the documents included in Defendant's Appendix in Support of Its Motion for Summary Judgments, pages APP063–APP278, were made and kept in the regular course of Santander's business. It was the regular practice of Santander to make each record. Each record was made at or near the time of the event it records. Each record was made by, or from information transmitted by, a person with knowledge acting in the regular course of Santander's business.

My name is Sabrina Boyd.

My date of birth is       March 11, 1980.

My address is             3125 Dawn Oaks Drive.

                          Denton, Texas 76208.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in _____ County, State of Texas, on the _____ day of August, 2024.
                          Denton                                                    22

Signed by:

*Sabrina Boyd*

F023D26C561A49F...

SABRINA BOYD

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REENA S. MATHEW, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:23-cv-01494-N |
| | § | |
| SANTANDER CONSUMER USA INC., | § | |
| | § | |
| *Defendant*. | § | |

## <u>DECLARATION OF STEPHANIE ELAD</u>

I, Stephanie Elad, declare that the following statements are true and correct, based on my personal knowledge:

1.  My name is Stephanie Elad.  I am over 18 years of age, of sound mind, and have never been convicted of a felony.  I am personally acquainted with the facts stated herein and I affirm the following is true and correct.

2.  From October 2014 until March 2019, I was employed by Santander Consumer USA Inc. ("Santander") as Director, Human Resources.  As Director, Human Resources, I was responsible for Human Resources ("HR") related risk management and compliance processes for Santander. In this role, I advised Santander's HR professionals and senior business leaders regarding employment policies and processes.  I was also responsible for developing and managing HR strategies, programs, systems, policies and processes.  Additionally, I was involved in escalated employee relations issues and reductions in force.

3.  HR Business Partners and HR Generalists would report to HR Managers. Each HR Manager reported to a Director, Human Resources, which was my role.  Each Director, Human Resources reported to the VP Human Resources.  The VP Human Resources reported to the Executive VP of Human Resources.

4.  Reena Mathew ("Mathew") worked as an HR Business Partner in Santander's HR department at the Lewisville office.  In this role, Mathew was responsible for, among other things, managing employee relations issues, processing employee disciplinary actions, and conducting investigations into employee conduct as necessary.

-1-

5.     During the relevant time periods, Mathew reported to HR Manager Angelina Hullum then to HR Manager Yessica Perez.  Ms. Perez then reported to me, Director, Human Resources.  I then reported to Stephen Shaffer, VP Human Resources.   Mr. Shaffer then reported to Pam Blackburn, Executive VP of Human Resources.

6.     In January 2015, I learned that Mathew did not process a termination timely.  As this had been an ongoing issue, Jessica Gleason, another Santander Director, Human Resources, and I made the decision to have Melissa Lawson, an HR Generalist, process all terminations going forward.   I advised Mathew's supervisor, Ms. Hullum, of this and suggested that she have a conversation with Mathew about this.  *See* e-mail message exchange between Ms. Hullum and me on January 22, 2015.

7.     In August 2015, I received a call from Scott Dieckmann (SVP Loan Servicing, Consumer Lending), because Mathew sent one of his associates an e-mail message requesting that she acknowledge her receipt and understanding of Santander's Security Policy.  Mr. Dieckmann was upset because Mathew's request was interpreted by the business and associate as if the associate had done something wrong.  In reality, the issue was related to a gap in Santander's processes.  I coached Mathew on this and stated that you have to think critically to evaluate situations and not blindly follow process.  I had to go over this several times with Mathew.

8.     In September 2015, Ms. Perez took over as HR Manager for Santander office in Lewisville, Texas.

9.     I was aware that Ms. Perez had concerns about Mathew's performance and productivity and that she met with Mathew to discuss these deficiencies.  On September 25, 2015, I asked Ms. Perez if we could discuss how her meeting with Mathew went.  *See* e-mail message exchange between Ms. Perez and me on September 25, 2015.

10.    On November 2, 2015, I coached Mathew and Sabrina Boyd, an HR Generalist, on the way they were handling an employee's bereavement request.  I found that they spent an excessive amount of time researching this employee and trying to determine if the documentation submitted was valid.  I was concerned that their time could have been better spent on more productive matters.  I advised Ms. Perez of the discussion I had with Mathew and Ms. Boyd so that we could discuss how to quickly address this issue.  *See* e-mail message from me to Ms. Perez on November 2, 2015.

-2-

11.    While she kept me apprised of her ongoing concerns with Mathew's performance, in November 2015, Ms. Perez asked me to assist in formally addressing Mathew's poor performance.  Ms. Perez also forwarded an instant message she received from Mathew stating that Mathew was overwhelmed by the number of compliance e-mail messages she had to complete.  I expressed to Ms. Perez that I did not believe compliance e-mail messages should take very long.  *See* e-mail message exchange between Ms. Perez and me on November 24, 2015.

12.    On November 24, 2015, I presented my concerns about Mathew's ongoing performance deficiencies and recommended to Ms. Blackburn that we begin discussing Mathew's separation from Santander.  *See* e-mail message from me to Ms. Blackburn on November 24, 2015.

13.    On December 3, 2015, I met with Mathew, at her request.  In this meeting, Mathew expressed her concerns about the Performance Improvement Plan and was adamant that she was never coached.  I explained to Mathew that Ms. Perez, Ms. Hullum and I had each coached her on several different occasions.  During this meeting, Mathew assumed no responsibility for her performance deficiencies and was wholly unreceptive to the feedback being given.  I explained my observation to Mathew and stated that her behavior in this meeting is consistent with Ms. Perez and Ms. Hullum's struggles in coaching her.  *See* my December 10, 2015, notes from the December 3, 2015, meeting.

14.    In early December 2015, I asked Ms. Hullum to provide her notes regarding the performance discussions she had with Mathew.  *See* December 10, 2015, e-mail message from Ms. Hullum to me attaching her notes regarding Mathew's performance.

15.    On December 22, 2015, I received an e-mail message from Ms. Hullum recapping a situation where an AVP approached her in the Lewisville office regarding Mathew.  The AVP advised Ms. Hullum that Mathew approached them and asked why the AVP "told on her."  After speaking with Ms. Hullum and Ms. Perez on this situation, I forwarded this recap to Mr. Shaffer so that he was aware of the situation.  *See* e-mail message exchange between Mr. Shaffer and me on December 22, 2015.

-3-

16.     In late December 2015, Mr. Shaffer requested to meet with Ms. Perez, Ms. Hullum and me to discuss his findings with regard to his investigation of Mathew's claims.  I requested that Mr. Shaffer and I discuss his findings privately, before bringing Ms. Perez and Ms. Hullum into the conversation. I felt that I would feel more comfortable sharing my thoughts to Mr. Shaffer outside the presence of my direct reports.  I advised Ms. Blackburn of this, and she agreed with my approach.  Ms. Blackburn also let me know that she and Mr. Shaffer had already discussed his findings and ultimately agreed on the appropriate approach to take.  *See* e-mail message from Ms. Blackburn to me on December 31, 2015.

17.     On January 15, 2016, Ms. Perez and I met with Mathew to place her on a PIP and to provide her with a 90-day action plan.  In this PIP, we identified performance standards for her job, along with a description of how her performance to date had failed to meet those standards.  The 90-day action plan indicated three areas of focus: attendance; time management/effective work habits; and consulting.  We then provided her with tasks associated with each of these areas of focus, along with a description of any support or resources that were available to assist her in making the necessary improvements to her performance.  For example, we offered to provide Mathew with additional training on a number of topics and asked her to request the training by February 5, 2016.  Additionally, in light of Mathew's continual complaints that her workload was too heavy for her to handle, we reassigned the work associated with Santander's 8585 location to another member of the team.  Finally, we informed Mathew that she would have biweekly reviews with Ms. Perez to discuss her performance in each of the areas of focus.  *See* Mathew's PIP and 90-day action plan.

18.     On January 18, 2016, Ms. Perez sent me an e-mail message summarizing our January 15, 2016, meeting with Mathew.  I felt that Ms. Perez accurately captured the meeting, and I sent Ms. Perez a few additional points to include.  *See* e-mail message exchange between Ms. Perez and me on January 18, 2016.

19.     On February 19, 2016, Mathew sent me an e-mail message complaining that Ms. Perez was unhappy with Mathew's recap of their meeting due to its lack of detail and accuracy.  I informed Mathew that I had the same reaction to Mathew's recap that Ms. Perez had, and that the recap did not meet expectations.  I reminded Mathew that the whole purpose of Mathew sending these meeting recaps is to ensure she is understanding the direction and feedback we are providing.  *See* e-mail message exchange between Mathew and me on February 19, 2016.

20.     After receiving feedback from Mathew that the weekly time study task assigned to her was "insulting" and not a good use of time, I made the decision to make the time study optional.  However, I still believed that the

APP023

time study was a valuable exercise that could assist Mathew in identifying where her time was being spent. *See* e-mail message from me to Mathew and Ms. Perez on February 23, 2016.

21. In March 2016, Mathew represented that she was "partnering with HRIS to assist but wanted to give [me] a status update before [she] left." This was not true. Mathew did not reach out to the HRIS team until after I informed her that we need the information sooner. *See* e-mail message from me to Holly Hanes forwarding the e-mail message exchange between Mathew and me in March 2016.

22. As a result of Mathew's ongoing performance issues and her inability to improve her performance despite receiving a 90-day action plan and PIP, Ms. Perez, Mr. Shaffer, and I decided to terminate Mathew's employment. *See* e-mail message exchange between Mr. Shaffer and me on April 14, 2016.

23. On April 15, 2016, Ms. Perez and I met with Mathew to provide her with her 90-day review. During this meeting, we discussed with Mathew her overall performance for the past 90 days, focusing on the three areas of focus that were identified in her 90-day action plan: attendance; time management/effective work habits; and consulting. We informed Mathew that we felt she met expectations as to attendance; but, she failed to meet expectations as to time management/effective work habits and consulting. We identified Mathew's failure to perform in the following areas: (1) providing detail in the work she submitted; (2) submitting accurate work product; (3) meeting deadlines; (4) timely following up when working on a project; (5) providing thorough and quality work product; and (6) contributing to the team by completing administrative tasks as needed. We also informed her that we felt she did not meet expectations in her consulting, as exemplified by her (1) failure to push back on the business when necessary to complete her job, (2) demonstrating a lack of accountability for her own behaviors, and (3) inappropriately addressing the business clients after they provided Ms. Perez with negative feedback regarding her performance, by challenging the feedback the business clients provided to Ms. Perez. *See* Mathew's 90 Day Review.

24.     We concluded our April 15, 2016, meeting by providing Mathew with some feedback we received from the business clients regarding her performance, which included the following:

- "Limited interactions, but it has been better since January. I'd rather just go to someone else on the HR team to get it done right.  They are always helpful and on point."

- "I am getting [disciplinary actions] within 2 days.  I never get it within 24 hours though, which is what I thought the expectation was."

- "I enjoy working with her but notice that with difficult conversations she is timid and struggles.  She asked me to sit in on a conversation and when it got difficult she said that I would take over.  This wasn't my Associate and I was unprepared."

- "She doesn't like making decisions without checking with her manager.  She isn't confident when dealing with issues. She is scared to make decisions."

- "I had to sit in on a term that [Mathew] was supposed to handle.  [Mathew] got flustered and turned it back to me to handle.  It's obvious that she can't handle conflict."

- "She has had to ask for an extension (beyond 2 days) for a [disciplinary action]."

- "I'm much more comfortable and confident working with others on the HR team because they respond timely and are confident in their decision making process."

- "She is very nice.  Just don't ask her for anything."

Throughout this meeting, Mathew was defensive and claimed that she was getting picked on for every mistake.  Rather than accept responsibility for any of her actions, Mathew blamed Ms. Perez, stating that Ms. Perez was a bad manager.  Mathew said that Ms. Perez failed to check her work before sending it to me, did not ensure she met her deadlines, and did not help her or remind her of things enough.

25.    Mathew's complaints that she felt that she was being treated unfairly were not considered in the decisions made with regard to her employment, including the decision to terminate her employment.  Likewise, Mathew's sex and pregnancy were not considered in the decisions made with regard to her employment, including the decision to terminate her employment.  Indeed, Mathew's allegation that we considered her sex or pregnancy in our employment decisions seems preposterous to me, as both Ms. Perez and I have been pregnant and are mothers ourselves.

26.    On April 19, 2016, Ms. Perez and I met with Mathew to inform her that her employment with Santander was terminated because of her ongoing performance issues.

My name is Stephanie Elad.

My date of birth is     _____.

My address is     _____

    _____

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in _____ County, State of Texas, on the \_\_\_\_\_ day of August, 2024.

_____
STEPHANIE ELAD

My name is Stephanie Elad.

My date of birth is        July 5, 1970
_____.

My address is        15251 Camden Lane
_____

Frisco, TX 75035
_____

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in _____ County, State of Texas, on the _____ day of August, 2024.
Collin                                                                22

Signed by:
*Stephanie Elad*
D99B25A1E0954E4...
_____
STEPHANIE ELAD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **REENA S. MATHEW,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| V. | § | **CIVIL ACTION NO. 3:23-cv-01494-N** |
| | § | |
| **SANTANDER CONSUMER USA INC.,** | § | |
| | § | |
| *Defendant*. | § | |

## <u>DECLARATION OF TINA MOHAN</u>

I, Tina Mohan, declare that the following statements are true and correct, based on my personal knowledge:

1.  My name is Tina Mohan. I am over 18 years of age, of sound mind, and have never been convicted of a felony. I am personally acquainted with the facts stated herein and I affirm that the following is true and correct.

2.  I have been a Human Resources professional for over 20 years and have served in this capacity. I am currently employed as a Senior Human Resources Generalist at Texas A&M University. From June 2013 until July 2016, I was employed at Santander Consumer USA Inc. ("Santander") as a Human Resources Business Partner in the Talent Management department.

3.  In late 2015, I learned that I was pregnant. I was due to have my child in July 2016. Early in my pregnancy, I informed my colleagues at Santander that I was pregnant. My colleagues in the Talent Management department treated me with kindness and compassion during my pregnancy. In any instance when I was not feeling well or had a doctor's appointment, my team was very accommodating and supported me. There were times during my pregnancy when I felt stress from my job. The stress was due to the pressure associated with the HR position itself, and not from any of my colleagues. The work I was assigned at Santander, both before and during my pregnancy, was a fair amount based on my qualifications and experience.

-1-

4.   After my baby was born, Santander continued to be very accommodating and compassionate toward me and my needs. My son was born approximately three months premature, and I could not be happier with how I was treated by Santander during that stressful time.

5.   I met Reena Mathew when we worked together in Santander's Human Resources department. Reena and I had much in common. We were pregnant at Santander at the same time. I still consider Reena a friend.

6.   I worked under Yessica Perez, Human Resources Manager, for a brief period of time at Santander. Yessica is one of the best people I have ever worked with, and given the opportunity, I would love to work with her again. I found Yessica to be a strong HR professional who is kind, passionate, and cares for the growth of those she supervises—both professionally and personally.

7.   I understand that Reena is claiming that Yessica discriminated against her because of her pregnancy and/or retaliated against her because she complained about pregnancy discrimination. I was not involved in conversations between Reena and Yessica, so I cannot say what was discussed between them. But, I can say that the idea that Yessica would discriminate against someone because of her pregnancy or retaliate against her because she complained about pregnancy discrimination is not in alignment with my experiences with Yessica.

8.   When I was pregnant at Santander, Steve Schaeffer was VP Human Resources Business Partner. My last boss at Santander, Jonathan Morse, as well as Yessica reported to a Director, Human Resources, who reported to Steve. I found Steve to be a strong HR professional who is kind and understanding. Steve was compassionate and kind to me when we remained in communication after I went out on leave during my difficult pregnancy.

9.   I ultimately made the decision to resign from Santander after having my son, so that I could stay home and care for his needs. My decision to resign was based solely on my son and family's needs at the time.

10.  Multiple other women within the Talent Management department were pregnant during my employment with Santander. Based on what I personally observed, I never witnessed any of those women being mistreated because of her pregnancy. To the contrary, based on my personal experience being pregnant at Santander, I have nothing but positive things to say about how I was treated by Santander, both during and after my pregnancy.

-2-

Docusign Envelope ID: 76E14A19-5574-430D-A7F1-826660DDFD9E

My name is Tina Mohan.

My date of birth is     November 8, 1981.

My address is         7010 Statford Drive

                     Rowlett, Texas 75089, USA

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in Dallas County, State of Texas, on the 22 \_\_\_\_\_ day of August, 2024.

TINA MOHAN

## <u>DECLARATION OF FATMA RIZVAN</u>

I, Fatma Rizvan, declare that the following statements are true and correct, based on my

personal knowledge:

1.     My name is Fatma Rizvan.  I am over 18 years of age, of sound mind, and have never been convicted of a felony.  I am personally acquainted with the facts stated herein based on my employment with Santander Consumer USA Inc. ("Santander") and I affirm that the following is true and correct.

2.     From October 2014 until July 2017, I was employed at Santander as a Human Resources Generalist in the Talent Management department.

3.     In 2016, I learned that I was pregnant.  Early in my pregnancy, I informed my colleagues at Santander that I was pregnant.  My colleagues in the Talent Management department treated me with kindness and compassion during my pregnancy.  In any instance when I was not feeling well or had a doctor's appointment, my team was very accommodating and supported me.

4.     After my baby was born, Santander continued to be very accommodating and compassionate toward me and my needs.  After taking maternity leave, I returned to work at Santander.

5.     I ultimately made the decision to resign from Santander in 2017, solely because I had found a position with a company that was closer to my house.  My decision to resign from Santander was based solely on my commute and family's needs at the time.

6.     Multiple other women within the Talent Management department were pregnant at or around the time that I was pregnant.  Based on what I personally observed, I never witnessed any of those women being mistreated because of her pregnancy.  To the contrary, based on my personal experience being pregnant at Santander, I have nothing but positive things to say about how I was treated by Santander, both during and after my pregnancy.

-1-

SC000165

My name is Fatma Rizvan.

My date of birth is  12/12/1990 .

My address is          537 Seminole Trail

                       Murphy, Texas 75094 USA

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in Collin County, State of Texas, on the  2  day of March, 2022.

*Fatma Rizvan*
Fatma Rizvan (Mar 2, 2022 07:55 CST)
_____
FATMA RIZVAN

-2-

SC000166

## DECLARATION OF NICOLE PRIOR

I, Nicole Prior, declare that the following statements are true and correct, based on my personal knowledge:

1. My name is Nicole Prior.  I am over 18 years of age, of sound mind, and have never been convicted of a felony.  I am personally acquainted with the facts stated herein based on my employment with Santander Consumer USA Inc. ("Santander") and I affirm that the following is true and correct.

2. I began working for Santander in 2012 as a Recruiting Coordinator.  In October 2016, I moved into the Human Resources department as a Human Resources Business Partner ("HRBP").  I remain in a similar role now, although the name of the position has changed overtime.

3. In late 2016, I learned that I was pregnant.  I was working as an HRBP at the time.  I shared that I was pregnant with my colleagues at Santander in approximately November 2016.

4. All of my colleagues at Santander were wonderful, celebrated my pregnancy with me, and treated me very well during my pregnancy.  My supervisor was very supportive and flexible when I needed to be out of the office due to my pregnancy.

5. After my baby was born, Santander continued to be very accommodating and compassionate toward me and my needs.  I returned to my position in the Human Resources department after taking maternity leave.

6. In late 2018, I learned that I was pregnant with my second child.  I shared that I was pregnant with my colleagues at Santander.  My colleagues and supervisor were, just as they were with my first pregnancy, very accommodating and wonderful.

7. Based on my positive experiences working at Santander while pregnant and after returning from my first maternity leave, I returned to work at Santander after taking my second maternity leave.  I continue to work at Santander now, while mothering two young children.

8. Multiple other women within the Human Resources department were pregnant at or around the time that I was pregnant in 2016 and 2017.  Based on what I have personally observed over the past decade, I have never witnessed anyone at Santander being mistreated because of her pregnancy.  To the contrary, based on my personal experience being pregnant at Santander, I have nothing but positive things to say about how I was treated by Santander, both during and after my pregnancy.

-1-

SC000210

My name is Nicole Prior.

My date of birth is       March 11, 1983.

My address is             7901 Trixie Trail Drive.

                          McKinney, Texas 75070.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in ____Dallas____ County, State of Texas, on the __7__ day of March, 2022.

*Nicole Prior*
Nicole Prior (Mar 7, 2022 08:53 CST)
_____
NICOLE PRIOR

-2-

SC000211

# Nicole Prior Declaration

Final Audit Report                                                          2022-03-07

| | |
|---|---|
| Created: | 2022-03-04 |
| By: | Ceicili DiMarco (cdimarco@hallettperrin.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAKvHBXnPWWAGpSeH6jhrOaAFdVGPb031t |

## "Nicole Prior Declaration" History

Document created by Ceicili DiMarco (cdimarco@hallettperrin.com)
2022-03-04 - 9:18:55 PM GMT- IP address: 67.78.115.106

Document emailed to Nicole Prior (nprior@santanderconsumerusa.com) for signature
2022-03-04 - 9:19:52 PM GMT

Email viewed by Nicole Prior (nprior@santanderconsumerusa.com)
2022-03-07 - 2:52:57 PM GMT- IP address: 97.107.126.36

Document e-signed by Nicole Prior (nprior@santanderconsumerusa.com)
Signature Date: 2022-03-07 - 2:53:36 PM GMT - Time Source: server- IP address: 97.107.126.36

Agreement completed.
2022-03-07 - 2:53:36 PM GMT



SC000212

## <u>DECLARATION OF CHRISTINA STOUT</u>

I, Christina Stout, declare that the following statements are true and correct, based on my personal knowledge:

1.    My name is Christina Stout.  I am over 18 years of age, of sound mind, and have never been convicted of a felony.  I am personally acquainted with the facts stated herein based on my employment with Santander Consumer USA Inc. ("Santander") and I affirm that the following is true and correct.

2.    I began working for Santander in 2013 as a Human Resources ("HR") Clerk. Over the past several years, I have been promoted to other roles within the HR department, including Document Specialist, and Senior Specialist Immigration and Mobility, the latter of which is the position I hold today.

3.    In late 2015, I learned that I was pregnant.  I shared that I was pregnant with my colleagues at Santander shortly after I learned that I was pregnant.

4.    I had numerous complications throughout my pregnancy, one of which resulted in me spending several days in the hospital.  My colleagues at Santander were amazing and very supportive.  My supervisor made it possible for me to work from home when I needed to do so due to my pregnancy-related complications.

5.    After my baby was born, Santander continued to be very accommodating and compassionate toward me and my needs.  I returned to my position in the Human Resources department after taking maternity leave.  As a mother of a small child, I have, of course, had days that I have had to take unexpected absences to care for my child's needs.  I have never felt uncomfortable asking about taking time off to care for my child.  To the contrary, I feel everyone at Santander has always been very kind and accommodating of my needs.

6.    Multiple other women within the Human Resources department were pregnant at or around the time that I was pregnant in 2016.  Based on what I have personally observed over the past decade, I have never witnessed anyone at Santander being mistreated because of her pregnancy.  To the contrary, based on my personal experience being pregnant at Santander, I have nothing but positive things to say about how I was treated by Santander, both during and after my pregnancy.

-1-

SC000203

My name is Christina Stout.

My date of birth is January 31, 1989.

My address is  5601 Andalusia Trail, Arlington, Texas 76017.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in _____Tarrant_____ County, State of Texas, on the __7th__ day of March, 2022.

*Christina Stout*
<span style="font-size: smaller">Christina Stout (Mar 7, 2022 15:12 CST)</span>
_____
CHRISTINA STOUT

-2-

SC000204

# Christina Stout Declaration

**Final Audit Report**                                                                        2022-03-07

| | |
|---|---|
| Created: | 2022-03-07 |
| By: | Ceicili DiMarco (cdimarco@hallettperrin.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAJZTybEVs0gL1YZlZgqnbY7uZmVvV1lEa |

## "Christina Stout Declaration" History

📄 Document created by Ceicili DiMarco (cdimarco@hallettperrin.com)
2022-03-07 - 6:06:05 PM GMT- IP address: 67.78.115.106

📧 Document emailed to Christina Stout (cstout@santanderconsumerusa.com) for signature
2022-03-07 - 6:06:25 PM GMT

📄 Email viewed by Christina Stout (cstout@santanderconsumerusa.com)
2022-03-07 - 6:07:11 PM GMT- IP address: 97.107.126.36

✒️ Document e-signed by Christina Stout (cstout@santanderconsumerusa.com)
Signature Date: 2022-03-07 - 9:12:46 PM GMT - Time Source: server- IP address: 97.107.126.36

✅ Agreement completed.
2022-03-07 - 9:12:46 PM GMT

 Adobe Sign

SC000205

## <u>DECLARATION OF WHITNEY ANDRES</u>

I, Whitney Andres, declare that the following statements are true and correct, based on my personal knowledge:

1. My name is Whitney Andres. I am over 18 years of age, of sound mind, and have never been convicted of a felony. I am personally acquainted with the facts stated herein based on my employment with Santander Consumer USA Inc. ("Santander") and I affirm that the following is true and correct.

2. I began working for Santander in May 2013 as a HR Generalist in the Human Resources department. I have worked for Santander for nearly nine years. In addition to the HR Generalist role, I have also worked as a Human Resources Business Partner ("HRBP") and as an Employee Relations Consultant.

3. In February 2016, I learned that I was pregnant. I was working as an HRBP at the time. I shared that I was pregnant with my colleagues at Santander, all of whom treated me with kindness and compassion during my pregnancy. In any instance when I was not feeling well or had a doctor's appointment, my team was very accommodating and supported me.

4. My supervisors in 2016 were Angelina Hullum and Kristen Lagunes. Both Angelina and Kristen were very supportive of me through-out my pregnancy.

5. After my baby was born, Santander continued to be very accommodating and compassionate toward me and my needs. I returned to my position in the Human Resources department after taking maternity leave. I continue, to this day, to work in Santander's Human Resources department.

6. Multiple other women within the Human Resources department were pregnant at or around the time that I was pregnant. Based on what I have personally observed over the nearly past nine years, I have never witnessed anyone at Santander being mistreated because of her pregnancy. To the contrary, based on my personal experience being pregnant at Santander, I have nothing but positive things to say about how I was treated by Santander, both during and after my pregnancy.

-1-

SC000167

My name is Whitney Andres.

My date of birth is ___07/24/1986___.

My address is ___154  Oak Grove Dr___
___Rhome, TX 76078___.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in ___Wise___ County, State of Texas, on the ___7th___ day of March, 2022.

*Whitney Andres*
Whitney Andres (Mar 7, 2022 11:27 CST)
_____
WHITNEY ANDRES

-2-

SC000168

# Whitney Andres Declaration

Final Audit Report                                    2022-03-07

| | |
|---|---|
| Created: | 2022-03-04 |
| By: | Ceicili DiMarco (cdimarco@hallettperrin.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA8z3Oq6UKB9SGm9Y7ypGCGTBglWjuJERo |

## "Whitney Andres Declaration" History

Document created by Ceicili DiMarco (cdimarco@hallettperrin.com)
2022-03-04 - 9:47:56 PM GMT- IP address: 67.78.115.106

Document emailed to Whitney Andres (wandres@santanderconsumerusa.com) for signature
2022-03-04 - 9:48:27 PM GMT

Email viewed by Whitney Andres (wandres@santanderconsumerusa.com)
2022-03-07 - 5:25:49 PM GMT- IP address: 97.107.126.36

Document e-signed by Whitney Andres (wandres@santanderconsumerusa.com)
Signature Date: 2022-03-07 - 5:27:21 PM GMT - Time Source: server- IP address: 97.107.126.36

Agreement completed.
2022-03-07 - 5:27:21 PM GMT

**Adobe Sign**

SC000169

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **REENA S. MATHEW,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 3:23-cv-01494-N** |
| | § | |
| **SANTANDER CONSUMER USA INC.,** | § | |
| | § | |
| *Defendant*. | § | |

## <u>DECLARATION OF SABRINA BOYD</u>

I, Sabrina Boyd, declare that the following statements are true and correct, based on my personal knowledge:

1. My name is Sabrina Boyd. I am over 18 years of age, of sound mind, and have never been convicted of a felony. I am personally acquainted with the facts stated herein based on my employment with Santander Consumer USA Inc. ("Santander"), and my review of the business records of Santander related to Reena Mathew ("Mathew"), and I affirm that the following is true and correct.

2. Each of the documents included in Defendant's Supplemental Appendix in Support of Its Motion for Summary Judgments, pages APP286–APP305, were made and kept in the regular course of Santander's business. It was the regular practice of Santander to make each record. Each record was made at or near the time of the event it records. Each record was made by, or from information transmitted by, a person with knowledge acting in the regular course of Santander's business.

APP279

Docusign Envelope ID: FA133FF3-C24A-4F1A-9600-310290775D63

My name is Sabrina Boyd.

My date of birth is      March 11, 1980.

My address is            3125 Dawn Oaks Drive.

                         Denton, Texas 76208.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in ___Denton_____ County, State of Texas, on the __11th___ day of October, 2024.

Signed by:

*Sabrina Boyd*
E023D28C561A49E

SABRINA BOYD

-2-

ARC_EDA Medical Center

1355 VALLEY VISTA DR
IRVING, TX 75063
MATHEW, REENA S

# ITEMIZED STATEMENT

**Account #: 100705142-811**

| Transaction Code | Proc Code | Description | Transaction Date | Quantity | Amount | Physician Name | Physician Number | Admit Date | Discharge Date |
|---|---|---|---|---|---|---|---|---|---|
| A852 | | ONLINE PAYMENTSAFE | 5/4/2017 | 0 | ($37.54) | | | 4/4/2017 | 4/4/2017 |

| | | |
|---|---|---|
| **Account Total** | | **$0.00** |
| Total Balances | | $0.00 |
| Total Charges | | $638.07 |
| Total Payments | | $375.44 |
| Total Adjustments | | $262.63 |
| Total Refunds | | $0.00 |

Created on 8/23/2024

Page 2 of 2

SC011292



# Attorney Copy

STYLE OF
CASE : **REENA S. MATHEW**

**VS.**

**SANTANDER CONSUMER USA INC.**

CAUSE NO. : **3:23-CV-01494-N**

PERTAIN TO : **REENA MATHEW**

FROM : **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY -
FRISCO
MEDICAL**

**Civil Action No.: 3:23-CV-01494-N**

Order No.  65215.003

**www.TLC-TEXAS.com
Toll Free: 855.327.7901**

SC011293

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF
## DALLAS DIVISION

REENA S. MATHEW                                :
                                               :
                                               :
VS.                                            :           CIVIL ACTION NO. **3:23-CV-01494-N**
                                               :
                                               :
SANTANDER CONSUMER USA INC.                    :

## NOTICE OF INTENTION
## TO TAKE DEPOSITION BY WRITTEN QUESTIONS

To the parties by and through their attorney(s) of record: **Donald E. 'Don' Uloth (LAW OFFICE OF DONALD E. ULOTH), ,** and to the non-party witness(es) listed below.

You will please take notice that pursuant to Rule 31, Federal Rules of Civil Procedure, fourteen (14) days from the service of a copy hereof with attached questions, a deposition by written questions will be taken of Custodian of Records for

**BAYLOR SCOTT & WHITE DALLAS DIAGNOSTIC ASSOCIATION - PLANO (MEDICAL)**
**Including but not limited to records of: JULIE SHARAD PAREKH, M.D.**
**4716 Alliance Blvd**
**Ste 600**
**Plano, TX 75093**

**BAYLOR SCOTT & WHITE DALLAS DIAGNOSTIC ASSOCIATION - PLANO (BILLING)**
**Including but not limited to records of: JULIE SHARAD PAREKH, M.D.**
**4716 Alliance Blvd**
**Ste 600**
**Plano, TX 75093**

**BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO (MEDICAL)**
**Including but not limited to records of: KRISTEN RICHESON CARMICHAEL, M.D.**
**4461 Coit Road, Suite 301**
**Frisco, TX 75035**

**BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO (BILLING)**
**Including but not limited to records of: KRISTEN RICHESON CARMICHAEL, M.D.**
**4461 Coit Road, Suite 301**
**Frisco, TX 75035**

before a Notary Public for          **THE LEGAL CONNECTION**
                                    **8656 W Hwy 71, Bldg F, Suite 200**
                                    **Austin, TX 78735**
                                    **512.892.5700   Fax 512.892.5703**

or its designated agent, which deposition with attached questions may be used in evidence upon the trial of the above-styled and numbered cause pending in the above named court. Notice is further given that request is hereby made as authorized under Rule 45, Federal Rules of Civil Procedure, to the officer taking this deposition to issue a subpoena duces tecum and cause it to be served on the witness to produce any and all records as described on the attached questions and/or Exhibit(s) and any other such record in the possession, custody or control of the said witness, and every such record to which the witness may have access, pertaining to:

### REENA MATHEW; DATE OF BIRTH: 10/27/1976;

and to turn all such records over to the officer authorized to take this deposition so that photographic reproductions of the same may be made and attached to said deposition.

Order No. 65215                         Ntc-Fed-Standard                         SC011294

**/s/ Monte K. Hurst**
**Monte K. Hurst**
SBN: 00796802
**Clayton S. Carter**
SBN: 24120750
**HALLETT & PERRIN PC**
**1445 Ross Ave., Suite 2400**
**Dallas, TX 75202**
**214.953.0053    Fax 214.922.4142**
**monte.hurst@hallettperrin.com**
**CCarter@hallettperrin.com**
Attorney for **Defendant(s), SANTANDER CONSUMER USA INC.**

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all Counsel of Record by hand delivery, FAX, e-mail, e-service, and/or certified mail, return receipt requested, on this day.

Dated: _8_ / _10_ /2024                    by **/s/ Monte K. Hurst**

# United States District Court

## FOR THE NORTHERN DISTRICT OF
## DALLAS DIVISION

REENA S. MATHEW

SUBPOENA IN A CIVIL CASE

VS.

CASE NUMBER:  3:23-CV-01494-N
(ON FILE IN THE NORTHERN DISTRICT OF
, DALLAS DIVISION)

SANTANDER CONSUMER USA INC.

TO:      Custodian of Records for:      **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO**
**4461 Coit Road, Suite 301**
**Frisco, TX 75035**

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time  specified below to testify at the taking of deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| The office of the custodian: **4461 Coit Road, Suite 301, Frisco TX  75035** | 9 / 2 /2024 |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Any and all MEDICAL RECORDS, FROM JANUARY 1, 2015 TO DECEMBER 30, 2017, PERTAINING TO: REENA MATHEW (DOB: 10/27/1976) (Including but not limited to records of: KRISTEN RICHESON CARMICHAEL, M.D.) including but not limited to, inpatient, outpatient and emergency room treatment, all clinical charts, reports, notes, tests, test results, diagnoses, prognoses, office records, therapy records, order sheets, progress notes, nurse's notes, clinic records, evaluations, treatment plans, admission records, discharge summaries, requests for and report of consultations, documents, prescriptions or medication records, photographs (color photographs should be reproduced in color), notes regarding prescriptions or medications, correspondence, test results, statements, questionnaires/histories, office and doctor's handwritten notes, records received by other physicians, or any other medical records in the custody or control of said custodian, whether in electronic or written form.  (IF RECORDS ARE MAINTAINED DIGITALLY AND/OR ELECTRONICALLY, PLEASE PRODUCE IN ELECTRONIC FORMAT.)

| PLACE | DATE AND TIME |
|---|---|
| The office of the custodian: **4461 Coit Road, Suite 301,Frisco,  TX  75035** | 9 / 2 /2024 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b) (6).

| ISSUING OFFICER SIGNATURE AND TITLE (Attorney For Defendant(s)) | DATE |
|---|---|
| /s/ Monte K. Hurst<br>**Attorney for SANTANDER CONSUMER USA INC.** | 8 / 16 /2024 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

**Monte Hurst , Attorney at Law**
HALLETT & PERRIN PC
1445 Ross Ave., Suite 2400
Dallas, TX  75202
Phone: 214.953.0053; Fax: 214.922.4142

Order No.  65215.003

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

SC011296

## PROOF OF SERVICE

| SERVED | DATE 8, 16 /2024 | PLACE **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO** **4461 Coit Road, Suite 301** **Frisco, TX 75035** |
|---|---|---|

| SERVED ON (PRINT NAME) **Custodian of Record for BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO** | MANNER OF SERVICE MAIL |
|---|---|
| SERVED BY (PRINT NAME) **Miranda Leal, The Legal Connection, Inc.** | TITLE **Firm Representative** |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on

8, 16 /2024
DATE

_Signature of Server_

8656 W Hwy 71, Bldg F, Suite 200
ADDRESS OF SERVER

Austin, TX  78735

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

**(i)** is a party or a party's officer; or

**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:

**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

SC011298

TO:    **Donald E. 'Don' Uloth**
FROM:   The Legal Connection, Inc.
Re:    **3:23-CV-01494-N; REENA S. MATHEW v. SANTANDER CONSUMER USA INC.**

## WAIVER OF NOTICE AND REQUEST FOR COPIES OF RECORDS

Our client, **Monte Hurst** of **HALLETT & PERRIN PC** has/have commissioned **THE LEGAL CONNECTION, INC.** (**"TLC"**) to obtain records on **REENA MATHEW** from the following custodian(s) for use in the above referenced case. You will find a copy of the Notice of Intention to Take Deposition Upon Written Questions and said Questions attached thereto.

___X___ **I DO AGREE TO WAIVE THE NOTICE PERIOD.**    _____ I DO NOT AGREE TO WAIVE THE NOTICE PERIOD.

TLC would like to offer you this opportunity to obtain a copy of the documents received from the Custodian(s) of Record listed below. If you choose to obtain copies (whether in paper or digital format), the cost will involve a $65 base fee, $20 delivery fee, and $.55/page for exhibits/scans. Photographs, videotapes, audiotapes, medical imaging exhibits and CD duplications will be provided and will incur additional charges. If the Custodian(s) of Record produces supplemental records after the initial production, your order below will stand.

Please indicate what type of copies (Paper or Digital or Both) you would like BY MARKING "Y" for "YES" OR "N" for "NO" beside each location below:

| PAPER | DIGITAL | |
|---|---|---|
| | N | **BAYLOR SCOTT & WHITE DALLAS DIAGNOSTIC ASSOCIATION - PLANO** |
| (MEDICAL) | | |
| _____ | N | **BAYLOR SCOTT & WHITE DALLAS DIAGNOSTIC ASSOCIATION - PLANO (BILLING)** |
| _____ | N | **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO (MEDICAL)** |
| _____ | N | **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO (BILLING)** |

Digital records will be provided in PDF format. If you checked "digital" above, please indicate how you want them provided to your office:

[  ] **Email RECORDS** to this address: _____not applicable, no records are being requested_____

Unless otherwise indicated, photographs, videotapes, audiotapes, medical imaging exhibits and CD duplications will be provided in the same format provided by the Custodian of Record and will incur additional charges.

**THE LEGAL CONNECTION, INC.** also offers direct billing to most insurance companies.

I agree that I and/or my firm will be responsible for payment of any copies of records ordered on this waiver. I acknowledge that invoices are due and payable within 30 days of receipt and that actions for collection of services are performable and payable in Travis County, Texas. **Email INVOICE** to this address: _____not applicable_____

RETURN TO:                                    AGREED BY:
**THE LEGAL CONNECTION**
**ATTN: Madison Carter**                       /s/ Donald E. Uloth
**8656 W Hwy 71, Bldg F, Suite 200**           Date: ___August 16, 2024___
**Austin, TX 78735**                           **Donald E. 'Don' Uloth**
**Phone: 512.892.5700**                         **LAW OFFICE OF DONALD E. ULOTH**
**Fax: 512.892.5703**                           **18208 Preston Rd. Suite D-9 #261**
**Email: orders@tlc-texas.com**                 **Dallas, TX 75252**
                                              **214.989.4396 Fax 866.462.6179**
                                              Attorney(s) for Plaintiff(s)

**NOTE:   RETURN OF THIS FORM IS REQUIRED WITHIN FOURTEEN (14) DAYS TO PROCESS YOUR REQUEST. ANY CANCELLATION OF THE ABOVE MUST BE IN WRITING. IF THE RECORDS HAVE ALREADY BEEN COPIED AND FEES INCURRED, THEN BILLING WILL BE PRORATED ACCORDINGLY.**

Order No. **65215**

SC011299

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF
## DALLAS DIVISION

REENA S. MATHEW                              :
                                             :
                                             :
VS.                                          :          CIVIL ACTION NO. **3:23-CV-01494-N**
                                             :
                                             :
SANTANDER CONSUMER USA INC.                  :

## STATEMENT OF ASSURANCE

I hereby provide
**BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO (MEDICAL)**
**4461 Coit Road, Suite 301**
**Frisco, TX 75035**

with the following assurances for purposes of compliance with the requirements of 45 C.F.R. 164.512(e):

**RE:    REENA MATHEW; Date of Birth: 10/27/1976**

1.  I have caused a Notice to be given to the individual, or his attorney, whose information has been requested in a Subpoena issued to you in the above-captioned matter.

2.  The Notice included sufficient information about the litigation or proceeding in which the Protected Health Information (hereinafter "PHI") is being requested to permit the individual, or his attorney, to raise an objection to the Court or administrative tribunal.

3.  The time for the individual, or his attorney, to raise objections to the Court or administrative tribunal has elapsed and no objections were filed.

4.  PHI will be used for litigation only and then will be disposed in accordance with HIPAA compliance procedures.

I have read and executed the above document and assert this to be true and correct.

Dated this the **3rd** day of **September**, 2024.

By:  **/s/ Monte K. Hurst**
**Monte K. Hurst**
**HALLETT & PERRIN PC**
**1445 Ross Ave., Suite 2400**
**Dallas, TX 75202**
**214.953.0053   Fax 214.922.4142**
**monte.hurst@hallettperrin.com**
Attorney for Defendant(s)
SBN: 00796802

Order No. **65215.003 Statement of Assurance**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF
### DALLAS DIVISION

REENA S. MATHEW                                      :
                                                     :
                                                     :
VS.                                                  :                  Civil Action No.: 3:23-CV-01494-N
                                                     :
                                                     :
SANTANDER CONSUMER USA INC.                          :

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS

Custodian of Records for:  **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO**
Records Pertaining To: **REENA MATHEW**
Type of Records:  Any and all MEDICAL RECORDS, FROM JANUARY 1, 2015 TO DECEMBER 30, 2017,
             PERTAINING TO: REENA MATHEW (DOB: 10/27/1976) (Including but not limited to records
             of: KRISTEN RICHESON CARMICHAEL, M.D.) including but not limited to, inpatient,
             outpatient and emergency room treatment, all clinical charts, reports, notes, tests, test results,
             diagnoses, prognoses, office records, therapy records, order sheets, progress notes, nurse's notes,
             clinic records, evaluations, treatment plans, admission records, discharge summaries, requests for
             and report of consultations, documents, prescriptions or medication records, photographs (color
             photographs should be reproduced in color), notes regarding prescriptions or medications,
             correspondence, test results, statements, questionnaires/histories, office and doctor's handwritten
             notes, records received by other physicians, or any other medical records in the custody or control
             of said custodian, whether in electronic or written form.  (IF RECORDS ARE MAINTAINED
             DIGITALLY AND/OR ELECTRONICALLY, PLEASE PRODUCE IN ELECTRONIC
             FORMAT.)

1.   What is your full name, official title, address, and telephone number?

Answer:     SHARI MITCHELL, CUSTODIAN OF RECORDS 972-817-1249  4461 COIT RD, STE 205 FRISCO, TX 75035

2.   Did you receive a **DEPOSITION SUBPOENA TO TESTIFY OR PRODUCE DOCUMENTS OR THINGS** for the
     production of **MEDICAL RECORDS** and other tangible documents pertaining to **REENA MATHEW**? *(Note: Please
     look at all the documents received in the package sent.)*

Answer:     YES

3.   Has **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO** made or caused to be made any
     memorandum, reports, records, notes, photographs, or data compilations, in any form, regarding **REENA MATHEW**?

Answer:     THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

Order No. 65215.003                              Int-State-Direct-Adm-Medical (limited scope)

SC011301

4.  Were the entries made on these memorandum, reports, records, notes, photographs, or data compilations made at the time or shortly after the time of the transaction recorded by these entries? *(Note: "Entries" as used here is defined as notes, documents, written items or anything printed or inputted into standard system of your business, regardless of who entered or created the entry.)*

    Answer:    THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

5.  Were these memoranda, reports, records, notes, photographs, or data compilations under your care, supervision, direction, custody, and./or control?

    Answer:    THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

6.  Was it in the regular course of business of **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO** for an employee, representative, or person with knowledge of the acts or events recorded to make or create the record or transmit information thereof to be included in such record?

    Answer:    THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

7.  Do you understand the subpoena requests all the records and documents pertaining to **REENA MATHEW**, and is limited in scope or time or as to the type of record or document?

    Answer:    THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

8.  Are the records being produced kept in the regular course of business? *(Meaning: Are the records created by your staff as part of their daily duties?)*

    Answer:    THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

9.  Are the records provided the original records or exact duplicates of the original records?

    Answer:    THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

10. Has **REENA MATHEW** been treated, examined by, or received services from **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO**?

    Answer:    THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

11. Have you provided all the records and documents requested, including those that may be on microfilm, in any other departments, kept by other employees, or in any other storage medium?

    Answer:    THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

12. If you answered "no" to Question Number 11, what records and documents did you not include, and why did you not produce those records?

    Answer:    THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

13. Who has the records you did not produce and listed in Question Number 12 (list name, business name, and telephone number, if available)?

    Answer:    THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

Order No. 65215.003                                    Int-State-Direct-Adm-Medical (limited scope)

SC011302

14. Are the records attached clear, legible, and the best possible copies available? If any copies of the attached records are of poor quality, please explain why.

Answer: _____ THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE. _____

15. Was a Medical Narrative Report created at the request of the patient or patient's attorney? *(Note: "Medical Narrative Report" is defined as any report which sets forth in story form the doctor's assessment of the patient's history, diagnosis, and treatment.)*

Answer: _____ NO _____

16. If you answered "yes" to Question Number 15, the following must be answered:

   a. What was the date of the Medical Narrative Report written?

   Answer: _____ N/A _____

   b. Who requested a copy of the Medical Narrative Report? Please include a copy of all written requests. if not requested in writing, who requested? (include name, firm name, and telephone number, if available.)

   Answer: _____ N/A _____

17. In the event no records can be found, or a portion of the records cannot be found, are there document archives (i.e., microfiche), document retention or destruction policies which explain their absence? *(Note: if all records have been provided, "N/A" is acceptable.)*

Answer: _____ THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE. _____

18. What is the retention policy for **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO?**

Answer: _____ RECORDS ARE MAINTAINED A MINIMUM OF 7 YEARS, AS REQUIRED BY LAW _____


_____ *Shari Mitchell* _____
WITNESS (Custodian of Records)

Before me, the undersigned authority, on this day personally appeared _____ SHARI MITCHELL _____, known to me to be the person whose name is subscribed to the foregoing instrument in the capacity therein stated, who being first duly sworn, stated upon his/her oath that the answers to the foregoing questions are true and correct. I further certify that the records attached hereto are exact duplicates of the original records.

SWORN TO AND SUBSCRIBED before me this _____ 26 _____ day of _____ SEPTEMBER _____, 20 24 _____

LORI SKINNER
Notary Public, State of Texas
Comm. Expires 01-08-2026
Notary ID 131400973

_____ *Lori Skinner* _____
NOTARY PUBLIC
My Commission Expires: _____ 01/08/2026 _____



# Attorney Copy

STYLE OF
CASE : **REENA S. MATHEW**

        **VS.**

        **SANTANDER CONSUMER USA INC.**

CAUSE NO. : **3:23-CV-01494-N**

PERTAIN TO : **REENA MATHEW**

     FROM : **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY -**
               **FRISCO**
               **BILLING**

**Civil Action No.: 3:23-CV-01494-N**

Order No.  65215.004

**www.TLC-TEXAS.com**
**Toll Free: 855.327.7901**

SC011304

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF
## DALLAS DIVISION

REENA S. MATHEW                                    :
                                                   :
                                                   :
VS.                                                :          CIVIL ACTION NO. **3:23-CV-01494-N**
                                                   :
                                                   :
SANTANDER CONSUMER USA INC.                        :

## NOTICE OF INTENTION
## TO TAKE DEPOSITION BY WRITTEN QUESTIONS

To the parties by and through their attorney(s) of record: **Donald E. 'Don' Uloth (LAW OFFICE OF DONALD E. ULOTH), ,** and to the non-party witness(es) listed below.

You will please take notice that pursuant to Rule 31, Federal Rules of Civil Procedure, fourteen (14) days from the service of a copy hereof with attached questions, a deposition by written questions will be taken of Custodian of Records for

**BAYLOR SCOTT & WHITE DALLAS DIAGNOSTIC ASSOCIATION - PLANO (MEDICAL)**
**Including but not limited to records of: JULIE SHARAD PAREKH, M.D.**
**4716 Alliance Blvd**
**Ste 600**
**Plano, TX 75093**

**BAYLOR SCOTT & WHITE DALLAS DIAGNOSTIC ASSOCIATION - PLANO (BILLING)**
**Including but not limited to records of: JULIE SHARAD PAREKH, M.D.**
**4716 Alliance Blvd**
**Ste 600**
**Plano, TX 75093**

**BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO (MEDICAL)**
**Including but not limited to records of: KRISTEN RICHESON CARMICHAEL, M.D.**
**4461 Coit Road, Suite 301**
**Frisco, TX 75035**

**BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO (BILLING)**
**Including but not limited to records of: KRISTEN RICHESON CARMICHAEL, M.D.**
**4461 Coit Road, Suite 301**
**Frisco, TX 75035**

before a Notary Public for        **THE LEGAL CONNECTION**
                                  **8656 W Hwy 71, Bldg F, Suite 200**
                                  **Austin, TX 78735**
                                  **512.892.5700    Fax 512.892.5703**

or its designated agent, which deposition with attached questions may be used in evidence upon the trial of the above-styled and numbered cause pending in the above named court. Notice is further given that request is hereby made as authorized under Rule 45, Federal Rules of Civil Procedure, to the officer taking this deposition to issue a subpoena duces tecum and cause it to be served on the witness to produce any and all records as described on the attached questions and/or Exhibit(s) and any other such record in the possession, custody or control of the said witness, and every such record to which the witness may have access, pertaining to:

## REENA MATHEW; DATE OF BIRTH: 10/27/1976;

and to turn all such records over to the officer authorized to take this deposition so that photographic reproductions of the same may be made and attached to said deposition.

Order No. 65215                        Ntc-Fed-Standard                        SC011305

**/s/ Monte K. Hurst**
**Monte K. Hurst**
SBN: 00796802
**Clayton S. Carter**
SBN: 24120750
**HALLETT & PERRIN PC**
**1445 Ross Ave., Suite 2400**
**Dallas, TX 75202**
**214.953.0053    Fax 214.922.4142**
**monte.hurst@hallettperrin.com**
**CCarter@hallettperrin.com**
Attorney for **Defendant(s), SANTANDER CONSUMER USA INC.**

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all Counsel of Record by hand delivery, FAX, e-mail, e-service, and/or certified mail, return receipt requested, on this day.

Dated: _8_ / _10_ /2024                    by **/s/ Monte K. Hurst**

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises In a Civil Action (Page 3)

**Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)**

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

SC011307

TO:    **Donald E. 'Don' Uloth**
FROM:  The Legal Connection, Inc.
Re:    **3:23-CV-01494-N; REENA S. MATHEW v. SANTANDER CONSUMER USA INC.**

## WAIVER OF NOTICE AND REQUEST FOR COPIES OF RECORDS

Our client, **Monte Hurst** of **HALLETT & PERRIN PC** has/have commissioned **THE LEGAL CONNECTION, INC.** (**"TLC"**) to obtain records on **REENA MATHEW** from the following custodian(s) for use in the above referenced case. You will find a copy of the Notice of Intention to Take Deposition Upon Written Questions and said Questions attached thereto.

___X___ **I DO AGREE TO WAIVE THE NOTICE PERIOD.**   _____ I DO NOT AGREE TO WAIVE THE NOTICE PERIOD.

TLC would like to offer you this opportunity to obtain a copy of the documents received from the Custodian(s) of Record listed below. If you choose to obtain copies (whether in paper or digital format), the cost will involve a $65 base fee, $20 delivery fee, and $.55/page for exhibits/scans. Photographs, videotapes, audiotapes, medical imaging exhibits and CD duplications will be provided and will incur additional charges. If the Custodian(s) of Record produces supplemental records after the initial production, your order below will stand.

Please indicate what type of copies (Paper or Digital or Both) you would like BY MARKING "Y" for "YES" OR "N" for "NO" beside each location below:

| PAPER | DIGITAL | |
|---|---|---|
| | N | **BAYLOR SCOTT & WHITE DALLAS DIAGNOSTIC ASSOCIATION - PLANO** |
| **(MEDICAL)** | | |
| | N | **BAYLOR SCOTT & WHITE DALLAS DIAGNOSTIC ASSOCIATION - PLANO (BILLING)** |
| | N | **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO (MEDICAL)** |
| | N | **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO (BILLING)** |

Digital records will be provided in PDF format. If you checked "digital" above, please indicate how you want them provided to your office:

[  ] **Email RECORDS** to this address:  _not applicable, no records are being requested_

Unless otherwise indicated, photographs, videotapes, audiotapes, medical imaging exhibits and CD duplications will be provided in the same format provided by the Custodian of Record and will incur additional charges.

**THE LEGAL CONNECTION, INC.** also offers direct billing to most insurance companies.

I agree that I and/or my firm will be responsible for payment of any copies of records ordered on this waiver. I acknowledge that invoices are due and payable within 30 days of receipt and that actions for collection of services are performable and payable in Travis County, Texas. **Email INVOICE** to this address:  _not applicable_

RETURN TO:                              AGREED BY:
**THE LEGAL CONNECTION**
**ATTN: Madison Carter**                 _/s/ Donald E. Uloth_
**8656 W Hwy 71, Bldg F, Suite 200**     Date: _August 16, 2024_
**Austin, TX 78735**                     **Donald E. 'Don' Uloth**
**Phone: 512.892.5700**                  **LAW OFFICE OF DONALD E. ULOTH**
**Fax: 512.892.5703**                    **18208 Preston Rd. Suite D-9 #261**
**Email: orders@tlc-texas.com**          **Dallas, TX 75252**
                                         **214.989.4396  Fax 866.462.6179**
                                         Attorney(s) for Plaintiff(s)

**NOTE:  RETURN OF THIS FORM IS REQUIRED WITHIN FOURTEEN (14) DAYS TO PROCESS YOUR REQUEST. ANY CANCELLATION OF THE ABOVE MUST BE IN WRITING. IF THE RECORDS HAVE ALREADY BEEN COPIED AND FEES INCURRED, THEN BILLING WILL BE PRORATED ACCORDINGLY.**

Order No.  **65215**

SC011308

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF**
**DALLAS DIVISION**

REENA S. MATHEW       :
            :
            :
VS.           :    CIVIL ACTION NO. **3:23-CV-01494-N**
            :
            :
SANTANDER CONSUMER USA INC.   :

## STATEMENT OF ASSURANCE

I hereby provide
**BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO (BILLING)**
**4461 Coit Road, Suite 301**
**Frisco, TX 75035**

with the following assurances for purposes of compliance with the requirements of 45 C.F.R. 164.512(e):

**RE:**   **REENA MATHEW; Date of Birth: 10/27/1976**

1.  I have caused a Notice to be given to the individual, or his attorney, whose information has been requested in a Subpoena issued to you in the above-captioned matter.

2.  The Notice included sufficient information about the litigation or proceeding in which the Protected Health Information (hereinafter "PHI") is being requested to permit the individual, or his attorney, to raise an objection to the Court or administrative tribunal.

3.  The time for the individual, or his attorney, to raise objections to the Court or administrative tribunal has elapsed and no objections were filed.

4.  PHI will be used for litigation only and then will be disposed in accordance with HIPAA compliance procedures.

I have read and executed the above document and assert this to be true and correct.

Dated this the **3rd** day of **September**, 2024.

           By:   **/s/ Monte K. Hurst**
              **Monte K. Hurst**
              **HALLETT & PERRIN PC**
              **1445 Ross Ave., Suite 2400**
              **Dallas, TX 75202**
              **214.953.0053   Fax 214.922.4142**
              **monte.hurst@hallettperrin.com**
              Attorney for Defendant(s)
              SBN: 00796802

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF
## DALLAS DIVISION

REENA S. MATHEW                                     :
                                                    :
                                                    :
VS.                                                 :         CIVIL ACTION NO.  **3:23-CV-01494-N**
                                                    :
                                                    :
SANTANDER CONSUMER USA INC.                         :

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS

Custodian of Records for:  **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO**
Records Pertaining To: **REENA MATHEW**
Type of Records:  Any and all BILLING RECORDS, FROM JANUARY 1, 2015 TO DECEMBER 30, 2017, PERTAINING TO: **REENA MATHEW (DOB: 10/27/1976) (Including but not limited to records of: KRISTEN RICHESON CARMICHAEL, M.D.)** including but not limited to:  insurance records, itemized statements, payments, adjustments, write offs, billing journals, any type of correspondence, whether in electronic form or reduced to writing, including, but not limited to, records contained in your files from other sources.

1.  What is your full name, official title, address and telephone number?

    Answer:  JASON CHAPMAN, AUTHORIZED WITNESS FOR BILLING   972-817-1249
    _____
             4461 COIT RD, STE 205  FRISCO, TX 75035
2.  Did you receive a **DEPOSITION SUBPOENA TO TESTIFY TO PRODUCE DOCUMENTS OR THINGS** for the production of BILLING **RECORDS** and other documents pertaining to **REENA MATHEW**? (Note: Please look at all the documents received in the package sent.)

    Answer:  YES
    _____

3.  Has **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO** made or caused to be made any memorandum, reports, records, notes, photographs, or data compilations, in any form, regarding **REENA MATHEW**?

    Answer:  THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.
    _____

4.  Were the entries made on these memorandum, reports, records, notes, photographs or data compilations made at the time or shortly after the time of the transaction recorded by these entries? (Note: "Entries" as used here is defined as notes, documents, written items, or anything printed or inputted into standard system of your business, regardless of who entered or created the entry)

    Answer:  THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.
    _____

5.  Were these memoranda, reports, records, notes, photographs, or data compilations under your care, supervision, direction, custody, and/or control?

    Answer:  THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.
    _____

Order No.: 65215.004                    Int-Federal-Direct-Adm-Billing (Pd v Incurred)

SC011310

6. Please state whether or not it was in the regular course of business of **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO** for an employee, representative, or person with knowledge of the acts or events recorded to make the record or transmit information thereof to be included in such record.

   Answer:    THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

7. Do you understand the subpoena requests all the records and documents pertaining to **REENA MATHEW**, and is not limited in scope or time or as to the type of record or document?

   Answer:    THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.    1/1/2015 - 12/30/2017

8. Are the records being produced kept in the regular course of business? (Meaning: Are these records created by your staff as part of their daily duties?)

   Answer:    THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

9. Are the records provided the original records or exact duplicate of the original records?

   Answer:    THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

10. Has **REENA MATHEW** been treated, examined by, or received services from **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO**?

    Answer:    THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

11. Have you provided all the records and documents requested, including those that may be on microfilm, in any other departments, kept by other employees, or in any other storage medium?

    Answer:    THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

12. If you answered "no" to Question Number 11, what kind of records did you not include, and why did you not produce those records?

    Answer:    N/A

13. Who has the records you did not produce and listed on Question Number 12? (List name, business name, and telephone number, if available)

    Answer:    N/A

14. Are the records attached clear, legible and the best possible copies available? If any of the copies of the attached records are of poor quality, please explain why.

    Answer:    THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

Order No.: 65215.004                    Int-Federal-Direct-Adm-Billing (Pd v Incurred)

15. Has **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO** made or caused to be made any billing and accounting records for services rendered to **REENA MATHEW** which set out the complete billing history including, but not limited to, the amount that **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO** has adjusted, discounted, and/or written off, any third party adjustments, and any payments made by **REENA MATHEW?**

Answer:     THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

16. What is the total dollar amount of the charges for the services rendered to **REENA MATHEW** for the dates of service listed in the scope of the subpoena ONLY requested as reflected in the billing and accounting records? **(Note: This amount should not include the fees for any BILLING RECORDS or reports and should be in $0.00 format.)**

Answer:     THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

17. What is the total dollar amount of the charges for the services rendered for the period indicated, as reflected in the **BILLING RECORDS,** which have been paid by **REENA MATHEW** and not by a private insurance company or some other person or entity? **(Note: This amount will only include patient payments and should be in $0.00 format)**

Answer:     THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

18. Has any amount of the charges for services rendered to **REENA MATHEW** during the dates of service listed in the scope of the subpoena ONLY indicated herein been paid by private insurance company or by any person or entity other than **REENA MATHEW?**

Answer:     THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

19. If your answer to the preceding question was "YES", please write the name of the private insurer, person or entity, and the total amount paid by each for services rendered to **REENA MATHEW** during the time period indicated.

Answer:     THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

20. If you provided a name or names and the amount(s) in response to the preceding questions, please state whether **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO** has a managed or contractual agreement with any private insurance, person, and/or entity listed in said responses.

Answer:     THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

21. If the answer to the preceding question was "Yes" as to any private insurer, person , or entity listed, please state the total amount of the charge from services rendered to **REENA MATHEW** during the time period indicated, as reflected in the billing and accounting records, which have been adjusted, discounted, written off by **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO** as a result of the managed care or contractual arrangement which each private insurer, person or entity listed. **(Note: this amount should be in $0.00 format)**

Answer:     THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

SC011312

22. For each entity listed in the preceding three questions, please state whether **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO** has managed care or contractual arrangement with the listed private insurer, person or entity which prohibits **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO** from seeking reimbursement from **REENA MATHEW** for any of the amounts which have been adjusted, discounted, or written off, as a result of that managed care or contractual arrangement?

Answer: _____THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE._____

23. Does **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO** accept Medicare and/or Medicaid?

Answer: _____YES, BUT PATIENT ISN'T A MC/MC PATIENT_____

24. If the answer to the previous questions is "Yes", is it true that **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO's** contract with Medicare and/or Medicaid requires that a patient not be held legally responsible for the payment of any portion of the charges for treatment of services not covered by Medicare and/or Medicaid?

Answer: _____PATIENT IS NOT A MC/MC PATIENT_____

25. If the answer to the preceding questions is "NO", state all the terms of insurance coverage or the healthcare expenses reflected on **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO's BILLING RECORDS** which allows **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO** to bill **REENA MATHEW** for amounts not covered by Medicare/Medicaid.

Answer: _____N/A_____

26. What is the amount of charges for treatment or services rendered for **REENA MATHEW** as reflected in the billing and accounting records, which have been paid by Medicare and/or Medicaid. **(Note: This amount should be in $0.00 format.)**

Answer: _____THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE._____

27. What is the current balance, if any, owed on **REENA MATHEW's** bill for the dates of service listed in the scope of the subpoena? **(Note: This amount should be in $0.00 format.)**

Answer: _____THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE._____

28. What amount, if any, of the said current balance does **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO** continue to seek as payment from **REENA MATHEW** as the patients legal obligation to pay beyond what Medicare/Medicaid, private insurance or other person or entity has already paid? **(Note: This amount should be in $0.00 format.)**

Answer: _____THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE._____

29. Please fill in the following blanks with the requested information concerning medical treatment provided to **REENA MATHEW**: **(Note: This amount should be in $0.00 format.)**

   1. Total amount charged by **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO** (Note: Reference Response from Question # 16):

   Answer: _____THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE._____

2. Total amount paid by private insurance (**Note: Reference Response from Question # 18**):

Answer:   THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

3. Total amount paid by Medicare/Medicaid (**Note: Reference Response from Question # 26**):

Answer:   THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

4. Total amount paid by **REENA MATHEW** (**Note: Reference Response from Question # 17**):

Answer:   THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

5. Total amount written off or adjusted off (**Note: Reference Response from Question # 21**):

Answer:   THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

6. Total amount still owed and by whom (**Note: Reference Response from Question # 27**):

Answer:   THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

7. If there is an amount owed on the account, who is responsible for that amount?

Answer:   THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

30. In the event no records can be found, or a portion of the records cannot be found, are there document archives (i.e., microfiche), document retention or destruction policies which explain their absence? (**Note: if all records have been provided "N/A" is acceptable.**)

Answer:   THERE ARE NO RECORDS FOR THE REQUESTED DATES OF SERVICE.

31. What is the retention policy for **BAYLOR SCOTT & WHITE OBSTETRICS & GYNECOLOGY - FRISCO?**

Answer:   RECORDS ARE MAINTAINED A MINIMUM OF 7 YEARS, AS REQUIRED BY LAW

_____ AUTHORIZED WITNESS
WITNESS (Custodian of Records)

Before me, the undersigned authority, on this day personally appeared   JASON CHAPMAN   known to me to be the person whose name is subscribed to the foregoing instrument in the capacity therein stated, who being first duly sworn, stated upon his/her oath that the answers to the foregoing questions are true and correct. I further certify that the records attached hereto are exact duplicates of the original records.

SWORN TO AND SUBSCRIBED before me this   26   day of   SEPTEMBER   , 20 24 .

```
LORI SKINNER
Notary Public, State of Texas
Comm. Expires 01-08-2026
Notary ID 131400973
```

_____
NOTARY PUBLIC

My Commission Expires:   01/08/2026

Order No.: 65215.004                                    Int-Federal-Direct-Adm-Billing (Pd v Incurred)

SC011314

 **Heather Hutto-Leon**
Active 1h ago

MAY 05, 2016 AT 9:48 AM



 What the heck!!!  I just found out yesterday that you are gone!!!

MAY 05, 2016 AT 10:28 AM

Awww, dude long story. But I'm better off preggo and not dealing w the HR mgmt there and being stressed out. They are terrible! A-holes, lol! Tell them to Git for me!!!!! Hopefully we can catch up one day...I'm doing ok though 🙂 Hope you are well!

MAY 05, 2016 AT 11:24 AM

 Well glad you are doing good. How are you feeling?  Don't let that baby forget about me. Haha

MAY 05, 2016 AT 10:24 PM

Aa

 **Heather Hutto-Leon**
Active 1h ago



Thanks....feeling good, thank God. Countdown is officially on, lol! Me or baby could never forget about you! Miss ya and keep in touch 😉

JUL 31, 2016 AT 10:41 PM

Omg! What does former Events Planner mean?! Did you leave SC? 😳

JUL 31, 2016 AT 11:34 PM

 Hey. Yes they laid me off. Did a way with my position

AUG 04, 2016 AT 5:31 PM

Oh wow! You ok? I really don't understand the new mgmt there.... 😬 I'm sorry to hear but you will get something else soon!

AUG 04, 2016 AT 5:48 PM

 I know. But honestly it wasn't the same so I know God has a better plan.

    Aa  

AUG 04, 2016 AT 6:43 PM

Yes, He always does! MW's at Exeter....maybe they're looking 😉



She knows. She will call me when she has something. I hope. Ha



      Aa    



**Demetrice Vasque...**
Active 46m ago





# Demetrice Vasquez-Patton

Facebook

You're friends on Facebook

Studied Organizational leadership at Texas A&M
University-Commerce

**View profile**

APR 25, 2016 AT 11:45 AM

 Please call me. <u>469-571-8894</u>

Ok will do...lots to catch up on 🔲

OCT 05, 2018 AT 1:10 PM

Hey lady!  I moved back to
Lewisville a few months ago, but
I lost your number.

Give me a call so we can meet
for lunch or coffee.

 <u>972-946-4112</u> 

      Aa    

6:16



**Demetrice Vasque...**
Active 46m ago





D!!!!!

Oh how I've missed you! Think about you often..and there are only a few ppl that I think of often, Lolol! How are you my friend?! So glad you are back and we are def getting together. My number is 214.417.0821. Baby girl now goes to school on Tu/Th...would either of those work for lunch? I can't wait to see you! 😘

 

Recent pics of kids!

OCT 06, 2018 AT 8:33 AM

Oh Reena!  They are beautiful, just like their Mama. 😍

I WFH on Wednesday's and Thursdays, so your Thursday works for me

   Aa  

Mathew 341

**6:16**



**Demetrice Vasque...**
Active 46m ago

 

OCT 06, 2018 AT 8:33 AM



Oh Reena!  They are beautiful, just like their Mama. 😍

I WFH on Wednesday's and Thursdays, so yes Thursday works for me.

OCT 06, 2018 AT 8:31 PM

Thank you D! 😘 Let's do it! Can we shoot for lunch next Thursday?

MAY 22, 2019 AT 12:29 PM



Hey Pretty Lady!!!  Call me.
972-946-4112

Hi D! I have so missed you! Ok if I do later this afternoon? Just running a few errands 😍

MAY 30, 2019 AT 12:25 PM

By the way, I haven't forgotten ab our meet up 🙂 Next week ok? S...guring out summer sche... lol

     Aa   

6:16

 **Demetrice Vasque...**     
47m

MAY 30, 2019 AT 2:37 PM

 Absolutely. Let me know what works.

Will do 😘

JUL 22, 2019 AT 12:24 PM

D! Are you still able to meet up? If so would Wed work? Not sure if you're working now....😍

JUL 22, 2019 AT 1:16 PM

 Hi Reena!  Still not working.  I'm out of town this week; how about next week?

JUL 22, 2019 AT 2:56 PM

Yay, but of course I want you to get a job at some point😀 Yes, next week should work!

JUL 22, 2019 AT 6:19 PM

Yes. Me too add me to the prayer list, 😂

6:11



**Lyndy Parnell**
Active 1h ago





# Lyndy Parnell

Facebook

You're friends on Facebook

Lives in Dallas, Texas

**View profile**

AUG 28, 2016 AT 1:13 PM



Hey Reena!! I hope all is well with the new baby girl, she sure is cute!! Rodney and I are traveling to Greece in April and I remembered, I think, that you and your family went a couple years ago?? Any advice, suggestions, recommendations? Where all did y'all visit? Thanks in advance!!

SEP 01, 2016 AT 6:04 PM

Hi Lyndy! Hope you're doing well too. We're doing great and baby girl as sweet as can

       Aa     

Mathew 355

App. 77

2:26



**Lyndy Parnell**
Active 20h ago



SEP 01, 2016 AT 6:04 PM

Hi Lyndy! Hope you're doing well too. We are doing great and baby girl is as sweet as can be...not sure if I told you but I'm now staying home. Left SC due to all the changes and it's just not what it used to be ❓ How is your current job going?

As far as Greece goes, we loved it!!!! We went to Athens, Crete, Mykonos and Santorini. Athens is obviously more historic and there is a lot to see. Crete and Mykonos have beautiful beaches and Santorini is known for the blue domes which are breathtaking. Mykonos also has a great night life and is so much fun! Overall it was an awesome trip and the food is delicious. I think you and Rodney will really enjoy. Look at you world travelers! Hopefully that answers your questions and let me know if I can help with any additional information. Take care, Reena

    Aa   

Mathew 356